IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No.: 3-09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, and LAURA PENDERGEST-HOLT, | § § § § § § § | |
| Defendants. | § | |

**APPENDIX TO RECEIVER'S MOTION TO COMPEL**

# BAKER BOTTS LLP

1500 SAN JACINTO CENTER
98 SAN JACINTO BLVD.
AUSTIN, TEXAS
78701-4078

TEL +1 512.322.2500
FAX +1 512.322.2501
www.bakerbotts.com

AUSTIN
BEIJING
DALLAS
DUBAI
HONG KONG
HOUSTON
LONDON
MOSCOW
NEW YORK
PALO ALTO
RIYADH
WASHINGTON

February 24, 2009

*Attorney-Client Communication*
*Privileged & Confidential*

Kevin Sadler
TEL +1 512.322.2589
FAX +1 512.322.8332
kevin.sadler@bakerbotts.com

Carlos Loumiet
Hunton & Williams LLP
1111 Brickell Ave., Ste. 2500
Miami, FL 33131
FAX: 305.810.2460

200 Park Ave.
NY, NY 10166-0091
FAX: 212.309.1100

Re:   *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*; Case No. 3-09-cv-00298-N in the United States District Court for the Northern District of Texas, Dallas Division.

Dear Mr. Loumiet:

On February 16, 2009 Ralph S. Janvey was appointed Receiver in the above-referenced case. I have enclosed the Order Appointing Receiver for your review. The Receiver was appointed for Defendants Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, and all entities they own or control (collectively "Stanford related entities"). *See* Order at 1 & ¶1. The Receiver has the duty and authority to take possession of all assets, property, and records of the Stanford related entities, and to exercise all legally recognized privileges of the Stanford related entities. *See* Order at ¶1.

I am the lead attorney representing the Receiver in this case. The initial investigation of the Stanford related entities' corporate records indicates that you and Hunton & Williams have provided legal counsel to Stanford related entities and/or officers, directors, agents, and employees in the past. All original files you possess in regard to that representation, of whatever kind and wherever located, are the property of the Receiver.

Please preserve all electronic files, electronic records, and electronic documents for all matters in which you and/or Hunton & Williams have represented any of the named Defendants, any entities they have ever owned or controlled, and any officer, director, employee, agent, or representative thereof. I will contact you to make arrangements regarding access to, and inspection and copying of those materials.

Please ship the following materials to Ralph S. Janvey, Receiver for Stanford Financial Group, 5050 Westheimer Blvd., Houston, Texas 77056.

1

**BAKER BOTTS** LLP

- 2 -                                                                 February 24, 2009

1. The original files for all matters in which you and/or Hunton & Williams have represented any of the Stanford related entities, as defined herein.

2. All detailed billing records and invoices for services rendered to the Stanford related entities for the period January 1, 2008 to present. Please include documents that reflect (a) all amounts billed; (b) all amounts paid; and (c) all amounts unpaid.

3. Please provide documentation of any retainer that you and/or Hunton & Williams have held or hold currently, indicate whether there is a balance remaining, and if so, in what amount.

Please send these materials as quickly as possible, even if on a rolling basis. For example, send all documents on site immediately and provide an estimate of when off-site or archived materials will be delivered. Upon the last delivery, please include a letter representing that all original files and the requested billing information for all Stanford related work have been delivered to the Receiver.

Sincerely,

*/s/ Kevin M. Sadler*
Kevin Sadler
Counsel to Receiver, Ralph S. Janvey

*/s/ Ralph S. Janvey*
Ralph S. Janvey
Receiver for Stanford Financial Group

SDA:sda
Enclosure

2



HUNTON & WILLIAMS LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL     804 • 788 • 8200
FAX     804 • 788 • 8218

ROBERT M. ROLFE
DIRECT DIAL: 804-788-8466
EMAIL: rrolfe@hunton.com

March 17, 2009

FILE NO: 99999.000310

**BY EMAIL AND OVERNIGHT COURIER**

Kevin Sadler, Esq.
Baker Botts LLP
1500 San Jacinto Center
98 San Jacinto Boulevard
Austin, Texas 78701-4078

Re:    *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*
       **Case No. 3-09-cv-00298-N in the United States District Court for the Northern District of Texas, Dallas Division**

Dear Kevin:

As General Counsel of Hunton & Williams LLP ("H&W"), I respond further to your February 24, 2009 letter to H&W partner Carlos Loumiet asking H&W to preserve and produce all original files in our possession related to H&W's representation of "Stanford related entities and/or officers, directors, agents, and employees in the past." As defined in your letter, "Stanford related entities" include Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC and all entities they own or control. This letter, however, uses "Stanford related entities" to include only entities, not individuals.

As Stacy Colvin and I advised you by phone on March 3, 2009, H&W has taken steps to preserve its files regarding its representation of Stanford related entities and R. Allen Stanford, both hard copy and electronic.

We also confirm that H&W does not currently hold any money from Allen Stanford or any Stanford entity in a trust or escrow account. In fact, Stanford and Stanford related entities owe H&W $180,231.41 for past services and expenses. We will send you supporting documentation for this financial information this week.

The remainder of this letter addresses the files you have requested that we send to you. Based on our review of our files, it appears that H&W provided legal advice to R. Allen Stanford in his individual capacity, as well as to various Stanford related entities. We have not represented James Davis or Laura Pendergest-Holt. The Stanford related entities to which we provided legal representation include:

ATLANTA  AUSTIN  BANGKOK  BEIJING  BRUSSELS  CHARLOTTE  DALLAS  HOUSTON  LONDON
LOS ANGELES  McLEAN  MIAMI  NEW YORK  NORFOLK  RALEIGH  RICHMOND  SAN FRANCISCO  SINGAPORE  WASHINGTON
www.hunton.com

3

# HUNTON& WILLIAMS

Kevin Sadler, Esq.
March 17, 2009
Page 2

A. Stanford Group Company (Texas) (Zepeda and Kadir litigation)

B. Stanford Financial Group Company (Florida) (Guizzetti litigation; $40 million loan to the Government of Antigua and Barbuda)

C. Stanford Venture Capital Holdings, Inc. (Delaware) (Senesco Technologies, Inc. acquisition; Intercallnet, Inc. acquisition; recapitalization and reorganization of Intercallnet transaction; and Golden Mortgage investment)

D. Stanford Puerto Rico, Inc (Delaware) (proposed $10 million investment in Vanquish International Bank)

E. Stanford Trust Company Limited, (Antigua) d/b/a Stanford Fiduciary Investment Services (Florida) (legal advice related to Florida Office of Financial Regulation's investigation and subpoena to Stanford Fiduciary Investment Services)

F. Stanford Trust Company (Louisiana) (miscellaneous legal research and advice primarily regarding regulatory matters)

G. Stanford Financial Partners, Inc. (Delaware) (legal advice regarding potential development of a brokerage house)

H. Stanford Latin America LLC (Florida) (miscellaneous legal research and advice)

I. Stanford Financial Group Services LLC, (Florida) (legal advice regarding corporate name change and possible relocation/reorganization of Latin American operations)

J. Stanford Group Holdings, Inc. (Delaware) (legal advice regarding potential acquisition of Consulting Services Group LLC)

K. Stanford International Bank, Ltd. (Antigua) (Zepeda and Kadir litigation; Guizzetti litigation; bridge financing in Golden Mortgage transaction)

L. Stanford Trust Company Limited, (Antigua) d/b/a Stanford Fiduciary Investment Services (Florida) (legal advice related to Florida Office of Financial Regulation's investigation and subpoena to Stanford Fiduciary Investment Services)

M. Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A. (Ecuador) (legal advice regarding Lehman Brothers bonds in connection with Lehman bankruptcy proceeding)

4

# HUNTON& WILLIAMS

Kevin Sadler, Esq.
March 17, 2009
Page 3

N. Stanford Development Company (Grenada) Limited and Stanford Development Company Limited (Antigua) (due diligence and negotiations in connection with potential acquisition of land development and resort property in Grenada)

O. Stanford International Bank (Panama) S.A. (miscellaneous legal research and advice)

P. Stanford Advisory Board (Carlos Loumiet served as legal counsel to the board commencing in 2007)

Q. Miller Golf -- (401K advice)

We do not know whether some transactions were ever finalized. As a result, our files and the list above may contain references to Stanford entities that do not exist.

We are aware of the breadth of the February 16, 2009 Order appointing the Receiver. We nevertheless do not believe that we can produce to the Receiver all files in our possession without further proceedings to determine who controls the client's right to privileged information regarding certain of our representations. As we discuss below, we believe different considerations may apply to different representations, which fall into three groups:

1) <u>Personal Representation of R. Allen Stanford</u>: Based on our research, it appears that the Receiver does not have the right to receive privileged information regarding Allen Stanford personally. We will, therefore, produce to the Receiver the non-privileged information from such files.[1]

2) <u>Stanford Related Entities in the United States</u>: Based on our research, the Receiver does control the privilege owned by the Stanford related entities. We will produce all such files to you.

3) <u>Stanford Related Entities Outside of the United States</u>: Based on our research, United States courts may lack jurisdiction to compel production of the property of foreign entities. Without further proceedings, we will not produce these files to the Receiver.

Additionally, we represented Frans Vingerhoedt, an executive at a Stanford entity, on a personal matter. We consider those files outside of the Receiver's request.

---

[1] We are aware of three entities established in connection with personal real estate transactions of Stanford: (a) Harbor Key Corp. II; (b) Casuarina Holdings, Inc.; and (c) 20 Casuarina LLC.

5

HUNTON&
WILLIAMS

Kevin Sadler, Esq.
March 17, 2009
Page 4

Finally, beginning in February 2009, H&W has spent considerable time and effort on its own behalf considering various issues related to the Stanford entities and the Receiver's request for files. We will not produce our internal files regarding such effort, the bulk of which are privileged, and which, in any event, do not come within the Receiver's request to us.

### Representation of R. Allen Stanford

H&W cannot produce privileged documents associated with our representation of Allen Stanford personally because a receiver for an individual (as opposed to a receiver for an entity corporation) does not control the individual's attorney-client privilege.

Various cases have held that the trustee of an individual debtor does not control the debtor's person. Instead, a trustee's control over a debtor's assets is analogous to the control asserted by a purchaser of assets: the control extends *only* to the assets. "The mere transfer of assets from one person to another does not entail the transfer of the individual's attorney-client privilege as well." *In re Hunt*, 153 B.R. 445, 453 (Bankr. N.D. Tex. 1992).

In *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 358 (1985), the Supreme Court explicitly declined to extend its ruling regarding the rights of trustees for corporations to include trustees for individual debtors. *Weintraub*, 471 U.S. at 356-57. Similarities between trustees in bankruptcy and court-appointed receivers have led courts to apply similar analysis of the privilege in both contexts. *See SEC v. Marker*, 2006 WL 288426 *4 (M.D.N.C.); SEC v. Elfindepan, 169 F.Supp.2d 420, 430-31 (M.D.N.C. 2001); *Odmark v. Westside Bancorporation, Inc.*, 636 F.Supp. 552, 554 (W.D. Wash. 1986). Following *Weintraub*, other courts generally chose to bar the receiver's exercise of individual privilege outright or apply a balancing test to determine who held the privilege. *See Foster v. Hill (In re Hill)*, 188 F.3d 1259 (10th Cir. 1999); *In re Silvio*, 27 B.R. 28 (Bankr. S.D. Fla. 1982); *In re Bazemore*, 216 B.R. 1020 (Bankr. S.D. Ga. 1998); *In re Hunt*, 153 B.R. 445 (N.D. Tex. 1992).

Analyzing the privilege issue, several courts have balanced the potential for harm to the individual against the receiver's duty to preserve the estate. *SEC v. Marker*, 2006 WL 288426 *4 (M.D.N.C.); *In re Silvio*, 27 B.R. 28; *In re Bazemore*, 216 B.R. at 1024-25; *In re Hill*, 188 F.3d at 1268. The cases that determined a trustee or receiver did not have the power to waive an individual's privilege "focused on the potential for personal harm to the [individual] and the risk of chilling attorney-client communication." *Id.* at *4 n.9. *See also In re Silvio*, 27 B.R. 28 ("An individual can be sent to prison on the testimony of his attorney divulging a confidence. A corporation cannot suffer any penalty greater than the loss of its fiscal assets. There is no reason why the trustee cannot waive a corporate debtor's attorney-client privilege. There is every reason . . . why the trustee cannot waive an individual debtor's attorney-client privilege."); *In re Miller*, 247 B.R. 704, 710 (Bankr. N.D. Ohio

6

HUNTON&
WILLIAMS

Kevin Sadler, Esq.
March 17, 2009
Page 5

2000) (finding a trustee was not entitled to privilege because the trustee was in an adversarial relationship with the debtor and was seeking to use privileged information against the debtor in later proceedings).

As you know, once the privilege is waived, it is waived generally as to all counsel and all matters. Here, the potential harm to Stanford from a waiver of his fundamental right to control his attorney-client privilege is great given the nature of the charges against him.

Moreover, Stanford has publicly refused to waive his legal privileges. Stanford has asserted his privilege against self-incrimination under the Fifth Amendment, and has stated he declines and will continue to decline to produce documents related to this case. Without Stanford's waiver of his attorney-client privilege, we cannot release privileged documents related to his personal representation.

**Stanford Related Entities Organized in the United States**

We do not challenge the Receiver's right to receive all documents, including privileged documents, related to H&W's representation of Stanford related entities organized in the United States. A receiver appointed for a corporation has the right to waive that corporation's attorney-client privilege. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 358 (1985). Because a receiver succeeds to the rights and powers of a company and its management, the receiver also succeeds to the attorney-client privilege between the corporation and its former counsel. *Odmark v. Westside Bancorporation, Inc.*, 636 F.Supp. 552, 554 (W.D. Wash. 1986).

We will therefore produce complete files regarding our representation of the following entities: Stanford Group Company (Texas); Stanford Financial Group Company (Florida); Stanford Venture Capital Holdings, Inc. (Delaware); Stanford Puerto Rico, Inc. (Delaware); Stanford Fiduciary Investment Services (Florida)[2]; Stanford Trust Company (Louisiana); Stanford Financial Partners, Inc. (Delaware); Stanford Latin America LLC (Florida); Stanford Financial Group Services LLC (Florida); Stanford Group Holdings, Inc. (Delaware); Stanford Advisory Board; and Miller Golf. Again, we do not know if some of the transactions in which we were involved ever closed, or whether all of these entities came into being.

---

[2] Though Stanford Fiduciary Investment Services ("SFIS") is a branch of Stanford Trust Company Limited, an Antiguan entity, SFIS set up an office and conducted business in the state of Florida. We believe that satisfies the minimum contacts requirement described below, and will therefore produce documents related to SFIS.

7



Kevin Sadler, Esq.
March 17, 2009
Page 6

### Stanford Related Entities Organized Outside the United States

We believe the following Stanford related entities are organized outside the United States: Stanford International Bank, Ltd. (Antigua); Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A. (Ecuador); Stanford Development Company (Grenada) Limited; Stanford Development Company Limited (Antigua); and Stanford International Bank (Panama) S.A. ("Non-U.S. Stanford Entities"). With respect to these Non-U.S. Stanford Entities, it appears that the Court, and thus the Court-appointed Receiver, may lack jurisdiction over the property of those entities, including the files the Receiver seeks from H&W.

Pursuant to 28 U.S.C. § 745, a receiver exercises *in rem* jurisdiction over property of the receivership estate located within any U.S. district in which the receiver has filed the requisite copy of the complaint and order appointing receiver within ten days of entry of the order. We believe that the Receiver has taken these steps.

Pursuant to the principles set forth in *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977), however, a court's *in rem* jurisdiction is subject to the same due process requirements of minimum contacts as is its exercise of *in personam* jurisdiction. As explained in *Shaffer*, an adverse judgment *in rem* directly affects the property owner by divesting him of his rights in property before the court. Accordingly, traditional notions of fair play and substantial justice require that the defendant have sufficient minimum contacts with the forum, under the principles set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), before the court can exercise *in rem* jurisdiction and affect the defendant's rights to his property. The mere presence of property of the defendant within the forum does not establish a sufficient relationship between the owner of the property and the forum to support the exercise of jurisdiction over an unrelated cause of action. *See generally Shaffer*, 433 U.S. at 205-12; *see also Cable News Networks L.P., L.L.L.P. v. Cnnews.com*, 162 F.Supp.2d 484, 489-91 (E.D.Va. 2001) (declining to extend *Shaffer* to "true *in rem*" or "quasi *in rem* I" matters, where the underlying claim relates to the property on which jurisdiction is based, but noting *Shaffer*'s continued application in "quasi *in rem* II" matters, where the underlying cause of action is unrelated to the property on which jurisdiction is based.)

The Receiver's request for all original files of the Non-U.S. Stanford Entities would alter those entities' rights with respect to the files by divesting the entities of control of privileges applicable to certain documents within the files. Further, the underlying causes of action alleged in the SEC's complaint do not relate to the files and associated privileges. Except for Stanford International Bank, Ltd., none of the Non-U.S. Stanford Entities is named as a defendant in the SEC's complaint. In short, the Court seeks to exercise jurisdiction over these entities' files of the quasi *in rem* type that *Shaffer* and its progeny hold cannot be exercised unless the foreign entities maintain sufficient minimum contacts with the U.S.

# Hunton & Williams

Kevin Sadler, Esq.
March 17, 2009
Page 7

We have located no authority that alters these principles in the context of a receivership. Although several post-*Shaffer* decisions have held that courts had jurisdiction to appoint receivers for the in-state assets of a foreign entity, in each of those decisions, the foreign entity maintained its principal place of business, or otherwise conducted business, in the forum jurisdiction. *See, e.g., Johnson v. Johnson*, 720 N.W.2d 20 (Neb. 2006) (principal place of business in Nebraska); *Horton v. Hydra Systems International, Inc.*, 547 A.2d 926 (Conn. 1988) (principal place of business in Connecticut); *Saluki Investors v. GP Station Partners*, 1993 WL 229766 (Conn. Super.) (same); *Walczak v. TCK Mechanical, Inc.*, 1990 WL 283725 (Conn. Super.) (same). Thus, the foreign entities maintained minimum contacts with the forum sufficient to establish jurisdiction under the principles in *International Shoe*. We would, however, be happy to consider any contrary authority you may be able to offer with respect to this issue.

H&W has no knowledge that the Non-U.S. Stanford Entities for which we performed legal work maintain minimum contacts with the U.S. sufficient to support a finding of jurisdiction under the principles of *Shaffer* and *International Shoe*. Again, we welcome you to provide any such facts that the Receiver contends establishes such contacts.

We are also aware that receivers have been appointed for Stanford International Bank, Ltd. and certain other Non-U.S. Stanford Entities by courts in the countries under which they are organized. We have not researched the facts or law, but must assume at this point that those receivers have jurisdiction over the relevant entities' legal files, and are entitled to request files from us for the limited work we did for those entities. Accordingly, if you were able to obtain letters from those receivers directing H&W to turn over its legal files for the Non-U.S. Stanford Entities to the Receiver, we would be willing to comply with such written requests.

In closing, we will cooperate as fully as possible with the Receiver's request for files, subject to our professional obligations. We look forward to receiving from the Receiver (1) any additional information or authorities that bear on the issues discussed above, and (2) the Receiver's suggestions, if any, about how we can have any disagreements resolved by the Court in the most expeditious and efficient manner that effects the rights and obligations of all parties. In the interim, consistent with our discussion above, we will begin producing files to you on a rolling basis.

Sincerely yours,

Robert M. Rolfe

cc:   Stacy M. Colvin, Esq.

9