# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3-09CV0298-N |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, | § § § § § § | |
| Defendants, | § § | |
| and JAMES R. ALGUIRE, ET AL., | § § | |
| Relief Defendants. | § § | |

---

## RECEIVER'S COMPLAINT NAMING STANFORD FINANCIAL GROUP ADVISORS AS RELIEF DEFENDANTS

---

## SUMMARY

1.      Receiver Ralph S. Janvey files this Complaint to add as relief defendants a group of financial advisors formerly employed by Defendant Stanford Group Company ("SGC") and paid huge commissions, front-end loans, and other compensation for soliciting their clients to purchase fraudulent certificates of deposit from SGC's affiliate, Defendant Stanford International Bank, Ltd. ("SIB").  The U.S. Securities and Exchange Commission has alleged in its suit against Defendants that the CDs sold to Stanford

customers were not genuine investments, but rather, part of a massive Ponzi scheme that defrauded investors out of billions of dollars. Receiver Janvey seeks to recover more than $40,000,000 transferred to 66 financial advisors in connection with the scheme.

2. The monies paid by Defendants to the financial advisors named herein (collectively, the "Relief Defendants") for the sale of CDs were not in payment for legitimate services rendered by Relief Defendants. The Defendants kept their fraudulent scheme going by using the Relief Defendants to lure new investors and then diverting the investors' funds to the Defendants' own illicit purposes. The commissions, loans, and other compensation paid to Relief Defendants came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors. Relief Defendants are in possession of assets traceable to Defendants' fraudulent scheme. Relief Defendants have no legitimate ownership interest in these assets; they necessarily hold the assets in trust for the Receivership Estate for the benefit of defrauded investors.

3. Paragraph 4 of the Amended Order Appointing Receiver, entered by the Court on February 16, 2009, authorizes Receiver Janvey "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." Paragraph 5(c) of the Order specifically authorizes Receiver Janvey to "[i]nstitute such actions or proceedings [in this Court] to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate."

4.     To carry out his duties, including the marshalling of Receivership Estate assets for distribution to those defrauded by the Defendants, Receiver Janvey must have complete control over all such assets.   Receiver Janvey therefore seeks an order of disgorgement against the Relief Defendants directing them to turn over to the Estate all commissions and other compensation they received for sales of SIB CDs.

## JURISDICTION & VENUE

5.     This Court has jurisdiction over this action, and venue is proper, under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and under Chapter 49 of Title 28, Judiciary and Judicial Procedure, 28 U.S.C. § 754.

## RELIEF DEFENDANTS

6.     The Receiver names the following Stanford Financial Group advisors as Relief Defendants.   Over just a two-year period, these financial advisors received commissions ranging in amounts from $2.6 million to $200,000, along with other incentive compensation, to promote the sales of CDs.   The Relief Defendants are listed here in alphabetical order:

7.     **James R. Alguire** resides at 46 Iviers Drive, Little Rock, AR, 72223. During the period relevant to this Complaint, Alguire was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Alguire received approximately $273,669 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.   Alguire is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

8. **Victoria Anctil** resides at 17002 S.W. 79th Place, Palmetto Bay, FL, 33157. During the period relevant to this Complaint, Anctil was employed by SGC as a financial advisor. Between January 2007 and January 2009, Anctil received approximately $242,811 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Anctil is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

9. **Tiffany Angelle** resides at 403 Boulder Creek Parkway, Lafayette, LA, 70508. During the period relevant to this Complaint, Angelle was employed by SGC as a financial advisor. Between January 2007 and January 2009, Angelle received approximately $675,664 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Angelle is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

10. **Sylvia Aquino** resides at 423 Alhambra Circle, Coral Gables, FL, 33134. During the period relevant to this Complaint, Aquino was employed by SGC as a financial advisor. Between January 2007 and January 2009, Aquino received approximately $1,351,172 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Aquino is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

11. **Jonathan Barrack** resides at 785 Valleybrook, Memphis, TN, 38120. During the period relevant to this Complaint, Barrack was employed by SGC as a financial advisor. Between January 2007 and January 2009, Barrack received approximately $241,751 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Barrack is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

12. **Marie Bautista** resides at 5325 S.W. 132nd Avenue, Miramar, FL, 33027. During the period relevant to this Complaint, Bautista was employed by SGC as a financial advisor. Between January 2007 and January 2009, Bautista received approximately $682,504 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Bautista is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

13. **Teral Bennett** resides at 4733 Redstart, Houston, TX, 77035. During the period relevant to this Complaint, Bennett was employed by SGC as a financial advisor. Between January 2007 and January 2009, Bennett received approximately $309,342 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Bennett is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

14.     **Andrea Berger** resides at 4300 Mildred, Bellaire, TX, 77401. During the period relevant to this Complaint, Berger was employed by SGC as a financial advisor. Between January 2007 and January 2009, Berger received approximately $235,020 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Berger is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

15.     **Norman Blake** resides at 4381 Tuckahoe Road, Memphis, TN, 38117. During the period relevant to this Complaint, Blake was employed by SGC as a financial advisor. Between January 2007 and January 2009, Blake received approximately $233,858 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Blake is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

16.     **Nigel Bowman** resides at 1915 Holly Hill Drive, Austin, TX, 78746. During the period relevant to this Complaint, Bowman was employed by SGC as a financial advisor. Between January 2007 and January 2009, Bowman received approximately $202,005 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Bowman is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

17.     **Charles Brickey** resides at 7580 Chapel Ridge Drive, Cordova, TN, 38016. During the period relevant to this Complaint, Brickey was employed by SGC as a

financial advisor. Between January 2007 and January 2009, Brickey received approximately $212,709 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Brickey is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

18.     **Susana Cisneros** resides at 502 Woodbend Lane, Houston, TX, 77079. During the period relevant to this Complaint, Cisneros was employed by SGC as a financial advisor. Between January 2007 and January 2009, Cisneros received approximately $278,322 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Cisneros is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

19.     **Ron Clayton** resides at 2621 Cedar Lodge Drive, Baton Rouge, LA, 70809. During the period relevant to this Complaint, Clayton was employed by SGC as a financial advisor. Between January 2007 and January 2009, Clayton received approximately $383,225 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Clayton is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

20.     **Neal Clement** resides at 113 Cotton Gin Lane, Saltillo, MS, 38866. During the period relevant to this Complaint, Clement was employed by SGC as a financial advisor. Between January 2007 and January 2009, Clement received approximately

$260,640 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Clement is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

21. **Jay Comeaux** resides at 2211 Augusta, #18, Houston, TX, 77057. During the period relevant to this Complaint, Comeaux was employed by SGC as a financial advisor. Between January 2007 and January 2009, Comeaux received approximately $528,659 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Comeaux is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

22. **Patrick Cruickshank** resides at 9001 Marly Cove, Austin, TX, 78733. During the period relevant to this Complaint, Cruickshank was employed by SGC as a financial advisor. Between January 2007 and January 2009, Cruickshank received approximately $727,477 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Cruickshank is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

23. **Arturo R. Diaz** resides at 11390 S.W. 95th Street, Miami, FL, 33176. During the period relevant to this Complaint, Diaz was employed by SGC as a financial advisor. Between January 2007 and January 2009, Diaz received approximately $425,405 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well

as other tainted "compensation" traceable to the fraud. Diaz is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

24. **Matthew Drews** resides at 3761 Eagle Hammock Drive, Sarasota, FL, 34240. During the period relevant to this Complaint, Drews was employed by SGC as a financial advisor. Between January 2007 and January 2009, Drews received approximately $333,866 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Drews is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

25. **Thomas Espy** resides at 8625 Hopewell Road, Cincinnati, OH, 45242. During the period relevant to this Complaint, Espy was employed by SGC as a financial advisor. Between January 2007 and January 2009, Espy received approximately $2,024,512 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Espy is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

26. **James Fontenot** resides at 9902 Hillon Hood Road, Denham Springs, LA, 70726. During the period relevant to this Complaint, Fontenot was employed by SGC as a financial advisor. Between January 2007 and January 2009, Fontenot received approximately $418,726 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Fontenot is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

27.    **Attlee Gaal** resides at 555 N.E. 34th Street, Apt. 310, Miami, FL, 33137. During the period relevant to this Complaint, Gaal was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Gaal received approximately $203,905 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.  Gaal is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

28.    **Mark Groesbeck** resides at 1229 Ridgeley Drive, Houston, TX, 77055. During the period relevant to this Complaint, Groesbeck was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Groesbeck received approximately $799,882 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.  Groesbeck is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

29.    **David Haggard** resides at 5885 Cumming Highway 108, PMB 282, Sugar Hill, GA, 30518.  During the period relevant to this Complaint, Haggard was employed by SGC as a financial advisor.  Between January 2007 and January 2009, Haggard received approximately $654,034 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Haggard is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

30.     **Gary Haindel** resides at 3106 McClendon Court, Baton Rouge, LA, 70810. During the period relevant to this Complaint, Haindel was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Haindel received approximately $206,150 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.   Haindel is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

31.     **Daniel Hernandez** resides at 7260 S.W. 119th Court, Miami, FL, 33183. During the period relevant to this Complaint, Hernandez was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Hernandez received approximately $252,032 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.   Hernandez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

32.     **Patricia Herr** resides at 5935 S.W. 32nd Street, Miami, FL, 33155.   During the period relevant to this Complaint, Herr was employed by SGC as a financial advisor. Between January 2007 and January 2009, Herr received approximately $485,557 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.   Herr is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

33.     **Charles Hughes** resides at 1142 Willow Bend Drive, Collierville, TN, 38017.   During the period relevant to this Complaint, Hughes was employed by SGC as a

financial advisor. Between January 2007 and January 2009, Hughes received approximately $301,074 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Hughes is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

34. **Charles Jantzi** resides at 723 Troutbeck, Baton Rouge, LA, 70810. During the period relevant to this Complaint, Jantzi was employed by SGC as a financial advisor. Between January 2007 and January 2009, Jantzi received approximately $210,665 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Jantzi is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

35. **Grady Layfield** resides at 18772 Amen Corner Court, Baton Rouge, LA, 70810. During the period relevant to this Complaint, Layfield was employed by SGC as a financial advisor. Between January 2007 and January 2009, Layfield received approximately $642,263 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Layfield is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

36. **James LeBaron** resides at 1907 Harbour Links Circle, Longboat Key, FL, 34228. During the period relevant to this Complaint, LeBaron was employed by SGC as a financial advisor. Between January 2007 and January 2009, LeBaron received approximately $228,006 in fraudulent commissions traceable to Defendants' fraudulent

scheme, as well as other tainted "compensation" traceable to the fraud. LeBaron is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

37. **Trevor Ling** resides at 4736 Post Oak Timber, #5, Houston, TX, 77056. During the period relevant to this Complaint, Ling was employed by SGC as a financial advisor. Between January 2007 and January 2009, Ling received approximately $822,198 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Ling is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

38. **Manuel Malvaez** resides at 9200 Westheimer, #1502, Houston, TX, 77063. During the period relevant to this Complaint, Malvaez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Malvaez received approximately $607,192 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Malvaez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

39. **Michael Mansur** resides at 5919 Vanderbilt Avenue, Dallas, TX, 75206. During the period relevant to this Complaint, Mansur was employed by SGC as a financial advisor. Between January 2007 and January 2009, Mansur received approximately $230,013 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Mansur is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

40. **Claudia Martinez** resides at 5118 Chevy Chase Drive, Houston, TX, 77056. During the period relevant to this Complaint, Martinez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Martinez received approximately $674,380 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Martinez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

41. **Gerardo Meave-Flores** resides at 8726 Hollow Banks Lane, Houston, TX, 77095. During the period relevant to this Complaint, Meave-Flores was employed by SGC as a financial advisor. Between January 2007 and January 2009, Meave-Flores received approximately $440,152 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Meave-Flores is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

42. **Lawrence Messina** resides at 717 Bluff Ridge Drive, Cedar Hill, TX, 75104. During the period relevant to this Complaint, Messina was employed by SGC as a financial advisor. Between January 2007 and January 2009, Messina received approximately $230,013 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Messina is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

43.     **Donald Miller** resides at 1529 Bering Drive, Houston, TX, 77057.  During the period relevant to this Complaint, Miller was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Miller received approximately $264,077 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.  Miller is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

44.     **Trenton Miller** resides at 5321 Catamaran Drive, Plano, TX, 75093. During the period relevant to this Complaint, Miller was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Miller received approximately $346,094 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.  Miller is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

45.     **Hank Mills** resides at 2623 Kleinert Avenue, Baton Rouge, LA, 70806. During the period relevant to this Complaint, Mills was employed by SGC as a financial advisor.   Between January 2007 and January 2009, Mills received approximately $1,406,450 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.   Mills is therefore in

possession of assets that are the rightful property of and should be returned to the Receivership Estate.

46.    **David Nanes** resides at 848 Brickell Key Drive, Apt. 801, Miami, FL, 33131.  During the period relevant to this Complaint, Nanes was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Nanes received approximately $503,093 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Nanes is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

47.    **Lupe Northam** resides at 613 Fairbanks, Houston, TX, 77009.  During the period relevant to this Complaint, Northam was employed by SGC as a financial advisor. Between January 2007 and January 2009, Northam received approximately $955,859 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Northam is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

48.    **Scott Notowich** resides at 6446 Corsica Drive, Memphis, TN, 38120. During the period relevant to this Complaint, Notowich was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Notowich received approximately $679,932 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Notowich is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

49.     **Monica Novitsky** resides at 17920 S.W. 88th Court, Miami, FL, 33157. During the period relevant to this Complaint, Novitsky was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Novitsky received approximately $203,905 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Novitsky is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

50.     **Tim Parsons** resides at 10533 Oakley Trace, Baton Rouge, LA, 70809. During the period relevant to this Complaint, Parsons was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Parsons received approximately $308,642 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Parsons is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

51.     **Roberto Pena** resides at 1717 N. Bayshore Drive, #1140, Miami, FL, 33132.    During the period relevant to this Complaint, Pena was employed by SGC as a financial advisor.    Between January 2007 and January 2009, Pena received approximately $248,686 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud.    Pena is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

52.     **Roberto A. Pena** resides at 11420 S. Point Drive, Cooper City, FL, 33026. During the period relevant to this Complaint, Pena was employed by SGC as a financial

advisor. Between January 2007 and January 2009, Pena received approximately $250,174 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Pena is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

53. **Saraminta Perez** resides at 3901 S.W. 185th Avenue, Miramar, FL, 33029. During the period relevant to this Complaint, Perez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Perez received approximately $369,319 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Perez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

54. **Tony Perez** resides at 12707 Boheme Drive, #602, Houston, TX, 77024. During the period relevant to this Complaint, Perez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Perez received approximately $2,261,269 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Perez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

55. **Elsida Prieto** resides at 601 N.E. 36th Street, Unit 2209, Miami, FL, 33137. During the period relevant to this Complaint, Prieto was employed by SGC as a financial advisor. Between January 2007 and January 2009, Prieto received approximately $1,027,425 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Prieto is therefore

in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

56. **Judith Quinones** resides at 870 N.W. 115th Avenue, Plantation, FL, 33325. During the period relevant to this Complaint, Quinones was employed by SGC as a financial advisor. Between January 2007 and January 2009, Quinones received approximately $250,203 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Quinones is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

57. **Leonor Ramirez** resides at 601 N.E. 36th Street, Unit 1310, Miami, FL, 33137. During the period relevant to this Complaint, Ramirez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Ramirez received approximately $1,105,045 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Ramirez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

58. **Nelson Ramirez** resides at 862 Washington Street, Hollywood, FL, 33019. During the period relevant to this Complaint, Ramirez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Ramirez received approximately $310,502 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Ramirez is

therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

59. **Walter Ricardo** resides at 6843 N.W. 113th Place, Miami, FL, 33178. During the period relevant to this Complaint, Ricardo was employed by SGC as a financial advisor. Between January 2007 and January 2009, Ricardo received approximately $289,017 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Ricardo is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

60. **Steve Robinson** resides at 3336 Hanover, Dallas, TX, 75225. During the period relevant to this Complaint, Robinson was employed by SGC as a financial advisor. Between January 2007 and January 2009, Robinson received approximately $346,094 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Robinson is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

61. **Rocky Roys** resides at 5402 China Doll Court, Houston, TX, 77041. During the period relevant to this Complaint, Roys was employed by SGC as a financial advisor. Between January 2007 and January 2009, Roys received approximately $1,243,886 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Roys is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

62. **John Schwab** resides at 2446 June Street, Baton Rouge, LA, 70808. During the period relevant to this Complaint, Schwab was employed by SGC as a financial advisor. Between January 2007 and January 2009, Schwab received approximately $974,492 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Schwab is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

63. **Doug Shaw** resides at 510 Longwoods Lane, Houston, TX, 77024. During the period relevant to this Complaint, Shaw was employed by SGC as a financial advisor. Between January 2007 and January 2009, Shaw received approximately $1,260,532 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Shaw is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

64. **Steve Slewitzke** resides at 12935 Old Course Drive, Roswell, GA, 30075. During the period relevant to this Complaint, Slewitzke was employed by SGC as a financial advisor. Between January 2007 and January 2009, Slewitzke received approximately $320,673 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Slewitzke is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

65. **Al Trullenque** resides at 5118 West Oak Mews, Houston, TX, 77056. During the period relevant to this Complaint, Trullenque was employed by SGC as a

financial advisor. Between January 2007 and January 2009, Trullenque received approximately $528,659 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Trullenque is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

66.     **Roberto Ulloa** resides at 7420 S.W. 132nd Street, Pine Crest, FL, 33156. During the period relevant to this Complaint, Ulloa was employed by SGC as a financial advisor. Between January 2007 and January 2009, Ulloa received approximately $2,599,582 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Ulloa is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

67.     **Miguel Valdez** resides at 13406 Sand Mountain Lane, Houston, TX, 77044. During the period relevant to this Complaint, Valdez was employed by SGC as a financial advisor. Between January 2007 and January 2009, Valdez received approximately $281,532 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Valdez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

68.     **Tim Vanderver** resides at 1282 Paces Forest Drive, Atlanta, GA, 30327. During the period relevant to this Complaint, Vanderver was employed by SGC as a financial advisor. Between January 2007 and January 2009, Vanderver received

approximately $442,634 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Vanderver is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

69. **Pete Vargas** resides at 13120 S.W. 33rd Court, Fort Lauderdale, FL, 33330. During the period relevant to this Complaint, Vargas was employed by SGC as a financial advisor. Between January 2007 and January 2009, Vargas received approximately $837,211 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Vargas is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

70. **Maria Villanueva** resides at 11281 N.W. 59th Terrace, Miami, FL, 33178. During the period relevant to this Complaint, Villanueva was employed by SGC as a financial advisor. Between January 2007 and January 2009, Villanueva received approximately $2,122,513 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Villanueva is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

71. **Charles Vollmer** resides at 826 Norsota Way, Sarasota, FL, 34242. During the period relevant to this Complaint, Vollmer was employed by SGC as a financial advisor. Between January 2007 and January 2009, Vollmer received approximately $367,000 in fraudulent commissions traceable to Defendants' fraudulent

scheme, as well as other tainted "compensation" traceable to the fraud. Vollmer is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

72. **Michael Word** resides at 2404 St. Andrews Avenue, Zachary, LA, 70791. During the period relevant to this Complaint, Word was employed by SGC as a financial advisor. Between January 2007 and January 2009, Word received approximately $1,298,531 in fraudulent commissions traceable to Defendants' fraudulent scheme, as well as other tainted "compensation" traceable to the fraud. Word is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

## STATEMENT OF FACTS

### *Defendants Operated a Fraudulent Scheme*

73. In its First Amended Complaint and other submissions to the Court, the SEC has laid out the particulars of the Defendants' multi-billion dollar fraudulent scheme. Based upon the SEC's allegations, this Court has already found good cause to issue a Preliminary Injunction to preserve the status quo and to protect the assets of the Receivership Estate for the benefit of defrauded investors. The factual allegations set forth in the SEC's First Amended Complaint ("FAC") are incorporated herein.

74. As alleged by the SEC, the Defendants marketed fraudulent CDs to investors in the United States exclusively through SGC financial advisers, such as Relief Defendants, pursuant to a Regulation D private placement. (FAC ¶ 23.)

75.     In selling the CDs to investors, Defendants repeatedly touted the CDs' safety and security and SIB's consistent, double-digit returns on its investment portfolio. (FAC ¶ 31.)

76.     In its brochure, SIB told investors, under the heading "Depositor Security," that its investment philosophy is "anchored in time-proven conservative criteria, promoting stability in [the bank's] certificate of deposit." SIB also emphasized that its "prudent approach and methodology translate into deposit security for our customers." (FAC ¶ 32.) Further, SIB stressed the importance of investing in "marketable" securities, saying that "maintaining the highest degree of liquidity" was a "protective factor for our depositors." (FAC ¶ 45.)

77.     In its 2006 and 2007 Annual Reports, SIB told investors that the bank's assets were invested in a "well-balanced global portfolio of marketable financial instruments, namely U.S. and international securities and fiduciary placements." More specifically, SIB represented that its 2007 portfolio allocation was 58.6% equity, 18.6% fixed income, 7.2% precious metals and 15.6% alternative investments. (FAC ¶ 44.)

78.     Consistent with its Annual Reports and brochures, SIB trained SGC financial advisers, in February 2008, that "liquidity/marketability of SIB's invested assets" was the "most important factor to provide security to SIB clients." (FAC ¶ 46.) In training materials, Defendants also claimed that SIB had earned consistently high returns on its investment of deposits (ranging from 11.5% in 2005 to 16.5% in 1993). Relief Defendants used these "facts" to convince their clients to purchase the CDs. (FAC ¶ 24.)

79.     Contrary to Defendants' representations regarding the liquidity of its portfolio, SIB did not invest in a "well-diversified portfolio of highly marketable securities." Instead, significant portions of the bank's portfolio were misappropriated by Defendant Allen Stanford and used by him to acquire private equity investments and real estate. In fact, at year-end 2008, the largest segments of the bank's portfolio were: (i) at least $1.6 billion in undocumented "loans" to Defendant Allen Stanford; (ii) private equity investments; and (iii) over-valued real estate. (FAC ¶ 48.)

80.     In an effort to conceal their fraud and ensure that investors continued to purchase the CD, Defendants fabricated the performance of SIB's investment portfolio. (FAC ¶ 35.)

81.     SIB's financial statements, including its investment income, are fictional. In calculating SIB's investment income, Defendants Stanford and James Davis provided to SIB's internal accountants a pre-determined return on investment for the bank's portfolio. Using this pre-determined number, SIB's accountants reverse-engineered the bank's financial statements to reflect investment income that SIB did not actually earn. (FAC ¶ 37.)

82.     For a time, Defendants were able to keep the fraud going by using a portion of the funds from current sales of SIB CDs to make interest and redemption payments on pre-existing CDs. However, in late 2008 and early 2009, CD redemptions increased to the point that new CD sales were inadequate to cover redemptions and normal operating expenses. As the depletion of liquid assets accelerated, the fraudulent scheme collapsed.

### Defendants Transferred Proceeds from the Fraudulent Scheme to Relief Defendants

83.     The Defendants used an elaborate and sophisticated incentive program to keep financial advisors such as Relief Defendants highly motivated to sell SIB CDs to bring in new money and to minimize redemptions of CDs previously sold. The program included high commission rates, bonuses, and forgivable loans, all closely tied to maintaining the Defendants' portfolio of CDs.  (FAC ¶¶ 27-28.)

84.     For example, Relief Defendants could receive a 1% commission upon the sale of a CD and as much as an additional 1% trailing commission during the term of the CD.  (FAC ¶ 27.)  In 2007, SIB paid SGC and its affiliates more than $291 million in management fees and commissions on CD sales, up from $211 million in 2006.  (FAC ¶ 29.)

85.     Proceeds from the fraudulent scheme described above were transferred by Defendants to Relief Defendants solely for the purpose of luring new victims to invest in the scheme.  Because the scheme was fraudulent, the brokerage services performed by the Relief Defendants in exchange for these payments were neither legitimate, nor did they confer any benefit on their customers, and therefore Relief Defendants have no rightful ownership interest that could justify their retaining possession of these funds.

### Receiver Entitled to Disgorgement of Assets Held by Relief Defendants

86.     As alleged above, each of the Relief Defendants is in possession of assets of the Receivership Estate.

87.	In order to carry out the duties delegated to him by this Court, Receiver Janvey seeks complete and exclusive control, possession and custody of the Receivership Estate assets currently in the possession of Relief Defendants.

## RELIEF SOUGHT

88.	As alleged above, each Relief Defendant is the recipient of ill-gotten proceeds from a fraudulent scheme as to which he or she has no legitimate ownership claim.  Pursuant to the equity powers of this Court, Relief Defendants must disgorge all such ill-gotten proceeds transferred to them by Defendants.

## PRAYER

Receiver Janvey respectfully requests the following:

(a)	A summary adjudication of the amount of ill-gotten proceeds transferred by Defendants to each Relief Defendant in connection with the sale of fraudulent SIB CDs;

(b)	An order that Relief Defendants disgorge such ill-gotten proceeds;

(c)	An order modifying the conference requirement under the local rules and providing that, as nominal parties named solely for the purpose of facilitating relief, Relief Defendants need not be conferred with on matters that do not directly affect their interests; and

(d)	Such other and further relief as the Court deems proper under the circumstances.

Dated: April 15, 2009

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: /s/ Kevin M. Sadler
    Kevin M. Sadler
    Texas Bar No. 17512450
    kevin.sadler@bakerbotts.com
    Robert I. Howell
    Texas Bar No. 10107300
    robert.howell@bakerbotts.com
    David T. Arlington
    Texas Bar No. 00790238
    david.arlington@bakerbotts.com
    1500 San Jacinto Center
    98 San Jacinto Blvd.
    Austin, Texas 78701-4078
    Tel: 512.322.2500
    Fax: 512.322.2501

    Timothy S. Durst
    Texas Bar No. 00786924
    tim.durst@bakerbotts.com
    2001 Ross Avenue
    Suite 600
    Dallas, Texas 75201-2980
    Tel: 214.953.6500
    Fax: 214.953.6503

    **ATTORNEYS FOR RECEIVER**
    **RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On April 15, 2009, I electronically submitted the foregoing pleading to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kevin M. Sadler
Kevin M. Sadler