**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: 3-09-CV-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | |
| R. ALLEN STANFORD, JAMES M. DAVIS, and | § | |
| LAURA PENDERGEST-HOLT, | § | |
| | § | |
| Defendants. | § | |

**RECEIVER'S REPLY TO RESPONSE OF HUNTON & WILLIAMS LLP IN**
**OPPOSITION TO RECEIVER'S MOTION TO COMPEL**

Kevin Sadler
Texas Bar No. 17512450
kevin.sadler@bakerbotts.com
Robert I. Howell
Texas Bar No. 10107300
robert.howell@bakerbotts.com
David T. Arlington
Texas Bar No. 00790238
david.arlington@bakerbotts.com
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, Texas 78701-4039
(512) 322-2500
(512) 322-2501 (Facsimile)

Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500
(214) 953-6503 (Facsimile)

**ATTORNEYS FOR RECEIVER RALPH S. JANVEY**

TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................................... ii

I.   ARGUMENT & AUTHORITIES ...................................................................................... 2

    A.   The Receiver has exclusive jurisdiction over all property located within the districts where he has complied with section 754. ......................................... 2

    B.   Stanford International Bank, Ltd. has expressly consented to personal jurisdiction in this district. ...................................................................... 3

    C.   SIBL and all other Stanford entities have had sufficient minimum contacts with the United States........................................................................... 4

    D.   This Court possesses personal jurisdiction of all Stanford entities as alter egos of Stanford and SIBL.................................................................. 10

II.   PRAYER....................................................................................................................... 11

CERTIFICATE OF SERVICE .............................................................................................. 12

INDEX OF AUTHORITIES

**Page(s)**

CASES

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)..................................................................................... 4

*Busch v. Buchman, Buchman & O'Brien, Law Firm,*
    11 F.3d 1255 (5th Cir. 1994) ....................................................................... 5

*Carlmont Capital Special Purpose Corp. v. Anderson,*
    285 Fed. Appx. 185 (5th Cir. 2008)........................................................... 10

*G2 Enter., LLC v. Nee,*
    2006 WL 1647518 (N.D. Ill. 2006) ......................................................... 3, 4

*Leasco Data Processing Equip. Corp. v. Isidore Kerman,*
    468 F.2d 1326 (2d Cir. 1972) ...................................................................... 5

*Luallen v. Higgs,*
    277 Fed. Appx. 402 (5th Cir. 2008).............................................................. 5

*Remington Rand Corp.-Delaware v. Business Sys. Inc.,*
    830 F.2d 1260 (3d Cir. 1987) ...................................................................... 3

*SEC v. Marimuthu,*
    552 F. Supp. 2d 969 (D. Neb. 2008)............................................................ 5

*SEC v. Montle,*
    65 Fed. Appx. 749 (2d Cir. 2003).............................................................. 10

*SEC v. VTR, Inc.,*
    39 F.R.D. 19 (S.D.N.Y. 1966)..................................................................... 5

*U.S. v. Ross,*
    302 F.2d 831 (2d Cir. 1962) ........................................................................ 3

*Warfield v. Arpe,*
    2007 WL 549467 (N.D. Tex. 2007)............................................................. 2

STATUTES

15 U.S.C. § 77v(a)............................................................................................ 4

15 U.S.C. § 78aa............................................................................................... 5

15 U.S.C. § 80a-43 ........................................................................................... 5

15 U.S.C. § 80b-14 ............................................................................................................. 5

28 U.S.C. § 754 ............................................................................................................. 1, 2

**Receiver's Reply to Response of Hunton & Williams**
**LLP in Opposition to Receiver's Motion to Compel**

The SEC's Complaint and First Amended Complaint alleged that defendants, including Stanford International Bank, Ltd. ("SIBL"), executed a massive Ponzi scheme, in which they offered and sold securities throughout the United States in general, and in the Northern District of Texas in particular. This Court found that it possessed personal jurisdiction over the defendants, assumed exclusive jurisdiction over all assets and records of the defendants and all entities they own or control, and appointed Ralph S. Janvey the Receiver ("Janvey" or "the Receiver") for the Receivership Estate. Janvey complied with the requirements of 28 U.S.C. § 754 in twenty-nine districts, which vested him "with complete jurisdiction and control" over receivership property in those districts, "with the right to take possession thereof."

Hunton & Williams is in possession of files in its U.S. offices related to its representation of SIBL and four other Stanford entities, but has refused to produce the files to Janvey based on "information and belief" that the entities are organized outside of the United States and Janvey's alleged failure to demonstrate that each entity has had sufficient minimum contacts with the United States to subject it to this Court's personal jurisdiction.

First, Hunton & Williams does not cite a single case which holds that a receiver lacks jurisdiction over property within a district where he had complied with section 754. Second, as Hunton & Williams is aware, SIBL has expressly consented to personal jurisdiction in Texas. Third, even a cursory review of the SEC's original filings provides ample evidence of SIBL's minimum contacts with the U.S. During the Receivership, Janvey has adduced additional evidence of contacts between the Stanford entities and the U.S., which is set forth herein. Finally, because this Court possesses personal jurisdiction over SIBL, it also possesses personal jurisdiction over its corporate alter egos, including the four other Stanford entities to which Hunton & Williams provided legal services.

The Receiver believes that information regarding valuable assets belonging to these five Stanford entities may be found in the files retained by Hunton & Williams. The refusal to produce these files jeopardizes the Receiver's ability to manage and conserve the Receivership Estate. Such interference with the Receiver's possession of Receivership property also constitutes a violation of the Amended Order Appointing Receiver. The Receiver asks the Court to order Hunton & Williams to produce to the Receiver all of its files for all Stanford entities. Moreover, in light of competing requests for these materials, Hunton & Williams should also be enjoined from producing any information to third parties, such as foreign receivers.

## I.      Argument & Authorities

### A.      The Receiver has exclusive jurisdiction over all property located within the districts where he has complied with section 754.

Section 754 was enacted more than sixty years ago. This statute "gives the appointing court and the receiver exclusive jurisdiction and control over all of defendant's property in whatever district it may be situated, provided that the receiver files copies of the complaint and his or her order of appointment in each district in which property is located." Wright, Miller & Marcus, Fed. Prac. & Proc. at 44 § 2985 (1997); *see Warfield v. Arpe*, 2007 WL 549467, *11 (N.D. Tex. 2007) (together sections 1692 and 754 give a receivership court "both *in rem* and *in personam* jurisdiction in all districts where property of the receivership estate may be located"). Hunton & Williams has failed to cite a single case which holds that there is any exception which divests a receiver of jurisdiction over property located in a district where section 754 has been satisfied. Because there is no dispute that Janvey filed the complaint and order appointing receiver in the relevant districts in which the legal files are located, Hunton & Williams must relinquish exclusive possession and control to Janvey.

The fact that the Stanford entities were chartered in foreign countries, or that foreign receivers have been appointed over those entities by foreign courts,[1] has no effect on this court's jurisdiction over Stanford assets located within the U.S.  *See Remington Rand Corp.- Delaware v. Business Sys. Inc.*, 830 F.2d 1260, 1272 (3d Cir. 1987) ("To the extent that the district court order seeks to attach BSI assets in the United States, it will not be disturbed.  No international trappings surround the district court's imposition of a constructive trust over assets located in the United States.  We see no aspects of comity implicated here.").  Moreover, this Court's personal jurisdiction over Allen Stanford, the sole owner of the five Stanford entities involved in this dispute, gives the Court power over assets under his control regardless of where they are located.  *U.S. v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962) (court ordered U.S. citizen, resident of Bahamas, to turn over to receiver stock certificates located in Bahamas for Bahamian corporation and Liberian corporation, neither of which conducted any business in U.S.).

**B.     Stanford International Bank, Ltd. has expressly consented to personal jurisdiction in this district.**

Parties may consent in advance to submit their controversies to a particular forum.  Consent may be implied or express.  *G2 Enter., LLC v. Nee*, 2006 WL 1647518, *2 (N.D. Ill. 2006).  In filings with the Texas Securities Commission, SIBL expressly consented to personal jurisdiction in Texas.  In January 2004 and March 2007 SIBL filed a Form U-2 Uniform Consent to Service of Process.  Appdx. at 19-21; 30-32.  In it, SIBL consented to personal jurisdiction in every district court in the United States, District of Columbia, and Puerto Rico:

Know All Men By These Presents:

That the undersigned STANFORD INTERNATIONAL BANK LIMITED (a corporation) organized under the laws of

---

[1]     The foreign receiverships have not been recognized in the United States and none of the foreign receivers have made an appearance in this case.

Antigua and Barbuda, for purposes of complying with the laws of the States indicated hereunder relating to either the registration or sale of securities, hereby irrevocably appoints the officers of the States so designated hereunder and their successors in such offices, its attorney in those States so designated upon whom may be served any notice, process or pleading in any action or proceeding against it arising out of, or in connection with, the sale of securities or out of violation of the aforesaid laws of the States so designated; and *the undersigned does hereby consent that any such action or proceeding against it may be commenced in any court of competent jurisdiction and proper venue within the States so designated hereunder* by service of process upon the officers so designated with the same effect as if the undersigned was organized or created under the laws of that State and have been served lawfully with process in that State.

*Id*. at 19; 30 (emphasis added).  SIBL "designated" Texas in its Form U-2.  *Id*. at 20; 31.  SIBL's express consent to personal jurisdiction in this district renders irrelevant any minimum contacts analysis.  *G2 Enter*., 2006 WL at *2 ("Consent to suit in a particular forum is an independent ground for the exercise of personal jurisdiction, separate and distinct from any personal jurisdiction based on a minimum contacts analysis."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (enforcement of forum selection clauses does not offend due process).

**C.     SIBL and all other Stanford entities have had sufficient minimum contacts with the United States.**

In its Complaint and First Amended Complaint, the SEC alleged violations of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Advisors Act of 1940, and Investment Company Act of 1940.  SEC Complaint, Doc. 1; SEC First Amended Complaint, Doc. 48 at 3-4, ¶¶ 7-11.  Each statute expressly provides for nationwide service of process.  15 U.S.C. § 77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other

district of which the defendant is an inhabitant or wherever the defendant may be found."); *see* 15 U.S.C. §§ 78aa, 80a-43 & 80b-14.

When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry, in the absence of a consent to jurisdiction, is whether the defendant has had minimum contacts with the United States. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Luallen v. Higgs*, 277 Fed. Appx. 402, 404-05 (5th Cir. 2008); *Leasco Data Processing Equip. Corp. v. Isidore Kerman*, 468 F.2d 1326, 1340 (2d Cir. 1972); *SEC v. VTR, Inc.*, 39 F.R.D. 19 (S.D.N.Y. 1966) (court possessed personal jurisdiction over bank and its director, each of which were served in Munich; fact that New York intermediaries were used to effect securities sales was irrelevant); *SEC v. Marimuthu*, 552 F. Supp. 2d 969, 973 (D. Neb. 2008) (court possessed personal jurisdiction over Indian national, residing in Malaysia and arrested in Hong Kong, based on allegations that he manipulated stocks of U.S. companies from overseas using investment accounts he opened with U.S. broker-dealers).

In its memorandum in support of emergency relief, the SEC alleged that the offer and sale of SIBL's certificates of deposit ("CDs") were violations of the securities laws and submitted 1,126 pages of evidence in support of those allegations.  SEC Memorandum of Law in Support of Motion for Ex Parte Temporary Restraining Order, Preliminary Injunction and Other Emergency Relief, Doc. 6 at 10-14; SEC Appendix in Support of Application for Ex Parte Temporary Restraining Order, Preliminary Injunction and Other Emergency Relief, Doc 7. During his investigation, Janvey has learned additional details of the Stanford entities' operations and SIBL CD sales, which are set forth herein, in part.  Because the Stanford entities engaged in

substantial conduct within the U.S. and because their conduct both within and without the U.S. caused substantial harm to U.S. investors, this Court possesses personal jurisdiction. Such substantial conduct included:

- Robert Allen Stanford is the chairman and a director of SIBL. Doc. 6 at 5; Declaration of Karyl Van Tassel, Appdx. 3, at ¶ 8. Stanford is sole owner of Stanford International Bank Holdings, Ltd., which is sole owner of SIBL. Appdx. at 3, ¶ 8. Stanford is U.S. citizen with a U.S. residence. Doc. 6 at 5; Appdx. at 3, ¶ 8.

- James M. Davis is chief financial officer and a director of SIBL. Doc. 6 at 6; Appdx. at 3, ¶ 9. Davis is U.S. citizen with a U.S. residence. Doc. 6 at 6; Appdx. at 3, ¶ 9.

- Laura Pendergest-Holt is a member of SIBL's investment committee. Doc. 6 at 6; Appdx. at 3, ¶ 10. Holt is U.S. citizen with a U.S. residence. Appdx. at 3, ¶ 10.

- Six of the seven SIBL directors are U.S. citizens. Appdx. at 3, ¶ 11. Board member O.Y. Goswick is a Texas resident. Doc. No. 6 at 3.

- In addition to Hunton & Williams, SIBL engaged other U.S. attorneys, such as Proskauer Rose in Washington, D.C. Doc. No. 6 at 4.[2]

- SIBL's multi-billion portfolio of cash and investments was actually managed and controlled by Stanford and Davis, apparently with assistance from Holt, from various locations within the U.S. Doc. 6 at 6-7; Appdx. at 3, ¶ 12. It appears that major cash transfers were directed and controlled by Stanford, Davis, and Holt. Appdx. at 3, ¶ 12.

- Investors were told that research analysts in Tennessee and Mississippi monitored SIBL's investments. SEC's Memo. of Law (Doc. No. 6) at 6 & 7, n.3.

- SIBL "head office functions" such as managing investments, directing fund flows, devising investment strategy, and managing legal and human resources were directed from the U.S. Appdx. at 3, ¶ 13.

- Essential support functions for SIBL were provided from the U.S. by employees of other Stanford entities. *Id.* at ¶ 14. These functions included treasury services, accounting, legal, and payroll. *Id.* They were

---

[2]     In support of its memorandum of law, the SEC filed an appendix that contains a letter from SIBL's outside counsel at Proskauer Rose in Washington, D.C., at page 1121.

**Receiver's Reply to Response of Hunton & Williams**
**LLP in Opposition to Receiver's Motion to Compel**

provided by Stanford entity employees in Texas, Tennessee, Mississippi, Florida and the U.S. Virgin Islands. *Id.*

• SIBL's investments were divided into three tiers, each managed differently, although all ultimately controlled by Stanford, Davis and, at least to the extent of Tier 2 assets, Holt. Doc 6 at 9-10; 12-13; Appdx. at 3, ¶ 15.

• Tier 3 was by far the most significant financially and was controlled entirely from the U.S. Appdx. at 3, ¶ 16. There is no indication that SIBL managers and employees in Antigua had significant involvement in investment activities. *Id.*

• Approximately $1.2 billion of Tier 3 value (as apparently valued by Stanford and/or Davis or others acting in concert with them) was in merchant banking assets, many of which have headquarters in the U.S. These investments were managed out of Stanford's Miami offices and reported to Davis. *Id.* at 4, ¶ 17.

• Records indicate that another $1.8 billion in Tier 3 assets consisted of notes receivable from Robert Allen Stanford. *Id.* at ¶ 18.

• Tier 2 principally consisted of investments placed with a variety of investment firms or funds located in the U.S. and Europe, together with a small amount of cash or cash equivalents. *Id.* at ¶ 19. It was managed by Holt, the Chief Investment Officer for Stanford Group Company, from within Mississippi, Tennessee, and Texas. *Id.* Holt reported to Davis and Stanford. *Id.*

• Tier 1, the smallest tier in dollar value, consisted of cash and cash equivalents. *Id.* at ¶ 20. It was primarily managed from Houston by Patricia Maldonado, Stanford Financial Group Company Treasurer, who worked at Davis's direction. *Id.*

• SIBL sold CDs to U.S. investors exclusively through Stanford Group Company ("SGC"), a Texas corporation with offices throughout the U.S. Doc. No. 6 at 5.

• SGC is a wholly owned subsidiary of Stanford Group Holdings, Inc., which in turn is owned by Stanford. Doc. No. 6 at 5.

• SGC provided SIBL with financial consulting and advisory services, including management of SIBL's merchant banking portfolio. Appdx. at 4, ¶ 21.

• Substantially more CD sales, by dollar amount, were generated from the U.S. than from any other country, including Antigua. *Id.* at ¶ 22. During

2008, almost one-half of CD sales were generated by Stanford brokers located in the U.S.  *Id.*

- It appears that more CDs, by total value, are held by U.S. residents than by residents of any other country.  *Id.* at ¶ 23.

- Checks in U.S. or Canadian dollars for the purchase of CDs were bundled and sent frequently from Antigua to Trustmark Bank in Houston, Texas for deposit there.  The checks deposited at Trustmark include checks from Latin American residents.  *Id.* at ¶ 24.

- U.S., Latin American, and Canadian CD customers could also wire payment in U.S. or Canadian dollars to SIBL accounts at Toronto-Dominion Bank.  Appdx. at 35-36.  Toronto-Dominion wire transferred SIBL funds to a Stanford account at Bank of Houston, in Houston, Texas. Appdx. at 4, ¶ 25.

- As of December 31, 2008 SIBL listed as assets on its balance sheet approximately $172 million in notes receivable from clients.  *Id.* at ¶ 26. Detailed records for these loan accounts reside in Stanford's offices in Houston.  *Id.*  My analysis indicates that approximately $100 million of the total outstanding loan balances are owed by U.S. residents.  *Id.*

- SIBL and SGC entered a Joint Marketing Agreement.  Appdx. at 37-40. The parties agreed that their officers and representatives would cooperate in the joint marketing of certain products.  *Id.* at 37.  SIBL was responsible for providing SGC with "adequate and sufficient promotional materials, information and purchase/subscription forms relating to [SIBL's] product in order to properly market it to [SGC's] customers."  *Id.* at ¶1.  The Agreement is governed by the laws of Texas.  *Id.* at 39, ¶ 14.

- SGC's principal business consisted of sales of SIBL's CDs.  Doc 6 at 5; Appdx. at 4, ¶ 27.

- SGC's U.S. financial advisors received generous commissions on the sale of SIBL's CDs.  Doc. No. 6 at 9.  In 2006 SIBL paid SGC and its affiliates $211 million in commissions.  *Id.* at 9, n.5.  In 2007 SIBL paid more than $291 million in commissions.  *Id.*

- Financial advisors who received commissions for the sale of CDs live in Florida, Texas, Colorado, Louisiana, Tennessee and other locations throughout the United States.  Appdx. at 4, ¶ 28.

- SIBL's CDs were sold in the U.S. pursuant to a Regulation D private placement.  Doc. No. 6 at 7, n.4.  In connection with the private placement, SIBL filed a Form D with the SEC.  *Id.*

- In its Form D Notice of Sale of Securities, SIBL described its Certificate of Deposit Program as "(for U.S. Accredited Investors only)." Appdx. at 23. SIBL identified all 50 states, the District of Columbia, and Puerto Rico as locations in which it had solicited or intended to solicit purchasers for up to $200,000,000 in certificates of deposit. *Id.* at 26.

- SIBL records, including records of investments, cash balances, and client information, were kept in the U.S. Appdx. at 4, ¶ 29.

- Pershing, a New Jersey corporation, was SGC's clearing broker. Between 2006 and December 12, 2008, Pershing sent SIBL 1,635 wire transfers, totaling approximately $517 million, from approximately 1,199 customer accounts. Doc. No. 6 at 14.

- SIBL invested directly in the following U.S. portfolio companies/funds: Elandia Solutions, Inc.; Forefront Holdings, Inc.; Reignmaker Communications; Louisiana Ventures, Health System Solutions, Inc.; and US Farm and Ranch Company. Appdx. at 5, ¶ 30.

- SIBL invested in Meridian, a New York-based hedge fund that used Tremont Partners as its asset manager. Doc. No. 6 at 13-14. Tremont invested some SIBL assets in Bernard L. Madoff Investment Securities LLC. *Id.* at 14.

- SIBL and Stanford Bank (Panama), S.A. own accounts with Charles Schwab domiciled in the U.S. Appdx. at 5, ¶ 31.

- Of the Pershing brokerage accounts that remain subject to the asset hold, more than 90 are owned by residents of this district. *Id.* at ¶ 32.

- Robert Allen Stanford is the sole owner, CEO, and only director of Stanford Development Company (Grenada). *Id.* at ¶ 33.

- Robert Allen Stanford is the sole owner, Chairman, a director of Stanford Development Company Limited. *Id.* at ¶ 34.

- Robert Allen Stanford is the sole owner of Stanford International Holdings (Panama) S.A., which is the sole owner of Stanford Bank (Panama), S.A. (formerly Stanford International Bank (Panama), S.A.). *Id.* at ¶ 35.

- Robert Allen Stanford is the sole owner of Stanford Trust Company Administradora de Fondos y Fideicomisos S.A. (Ecuador). *Id.* at ¶ 36. James M. Davis is Chairman of the Board of Directors. *Id.* Laura Pendergest-Holt is a principal. *Id.*

Because Defendants operated and controlled all of the Stanford entities from within the United States and because sales of SIBL's CDs have caused substantial harm to U.S. investors, this Court possesses personal jurisdiction over all Stanford entities.

**D.      This Court possesses personal jurisdiction of all Stanford entities as alter egos of Stanford and SIBL.**

When a court possesses jurisdiction over one defendant, personal jurisdiction exists over that defendant's corporate alter egos as well. *Carlmont Capital Special Purpose Corp. v. Anderson*, 285 Fed. Appx. 185, 186-87 (5th Cir. 2008) ("We find no reversible error in the district court's denial of Appellant Anthony Anderson's motion to dismiss for lack of personal jurisdiction.  In particular, the record fully supports the district court's finding that Anderson was the 'alter ego' of Health II of Texas LLC ('Health II'), an entity indisputably subject to personal jurisdiction in that court.  The district court therefore properly exercised personal jurisdiction over Anderson."); *SEC v. Montle*, 65 Fed. Appx. 749 (2d Cir. 2003) (jurisdiction existed over individual defendant and thus over foreign corporation owned and controlled solely by him).

The evidence adduced by the Receiver's investigation indicates that SIBL, and more than 140 other Stanford Entities, were owned and controlled virtually 100%, directly or indirectly, by Stanford.  Appdx. at 5, ¶ 37.  These entities were operated as a single scheme to perpetrate a massive fraud.  *Id*.  Because this Court has personal jurisdiction over Robert Allen Stanford and SIBL, it likewise possesses personal jurisdiction over their corporate alter egos, including the Stanford Trust Company (Ecuador), Stanford Development Company (Grenada), Stanford Development Company (Antigua), and Stanford International Bank (Panama).

## II.     Prayer

The Receiver asks this Court to order Hunton & Williams to deliver all files of all Stanford entities, including Stanford International Bank, Ltd. (Antigua); Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A. (Ecuador); Stanford Development Company Limited (Grenada); Stanford Development Company Limited (Antigua); and Stanford International Bank (Panama) S.A. to the exclusive jurisdiction, possession, and control of the Receiver and to enjoin Hunton & Williams from providing any information regarding any Stanford entities to any third party, including any receiver or liquidator appointed by a foreign court, and any other relief to which the Receiver is entitled.

Dated:  April 17 2009

Respectfully submitted,

BAKER BOTTS L.L.P.

By: /s/ Kevin M. Sadler
    Kevin Sadler
    Texas Bar No. 17512450
    kevin.sadler@bakerbotts.com
    Robert I. Howell
    Texas Bar No. 10107300
    robert.howell@bakerbotts.com
    David T. Arlington
    Texas Bar No. 00790238
    david.arlington@bakerbotts.com
    98 San Jacinto Blvd., Suite 1500
    Austin, Texas 78701-4039
    (512) 322-2500
    (512) 322-2501 (Facsimile)

    Timothy S. Durst
    Texas Bar No. 00786924
    tim.durst@bakerbotts.com
    2001 Ross Avenue
    Dallas, Texas 75201
    (214) 953-6500
    (214) 953-6503 (Facsimile)
    **ATTORNEYS FOR RECEIVER**
    **RALPH S. JANVEY**

### CERTIFICATE OF SERVICE

On April 17, 2009, I electronically submitted the foregoing response with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ Kevin M. Sadler
Kevin M. Sadler