IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:09-CV-298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § § | |
| Defendant. | § | |

## **ORDER**

This Order addresses motions to intervene and for related relief [18], [21], [30], [31], [33], [38], [42], [47], [52], [62], [64], [66], [71], [75], [78], [84], [85], [86], [87], [90], [92], [97], [98], [99], [100], [101], [102], [115], [116], [123], [124], [125], [129], [130], [133], [134], [135], [136], [137], [138], [141], [145], [148], [152], [164]. Because intervention by movants is unnecessary and would only impede the effective administration of the enforcement action and the Receivership estate, the Court denies all motions to intervene.[1]

### I. FACTUAL BACKGROUND

On February 16, 2009, the Court entered a Temporary Restraining Order freezing assets, requiring an accounting, requiring preservation of documents and authorizing

---

[1]The Court denies certain motions to intervene [31] [33] [42] [52] [58] [84] [85] [86] [87] [92] [97] [98] [99] [100] [101] [115] [116] [124] [125] [133] [135] [169] as moot because those movants' accounts are authorized for release. *See* Orders Authorizing Release of Certain Customer Accounts , dated March 5, 2009 and March 12, 2009.

expedited discovery against Defendants Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital management, LLC, R. Allen Stanford, James M. Davis and Laura Pendergest-Holt. On that date, the Court also appointed Ralph Janvey as the Receiver over the assets of all entities owned or controlled by Defendants, or in the possession of their agents or employees. After the Court appointed the Receiver, investors began filing motions seeking to obtain possession of assets in the frozen accounts or to intervene in the enforcement action.

## II. ALL MOVANTS' ACCOUNTS ARE SUBJECT TO THE FREEZE

As an initial matter, the Court finds that all the movants' accounts were properly frozen. The initial Temporary Restraining Order froze assets in accounts held "in the name, on behalf or for the benefit of the Entity Defendants." Order of February 17, 2009, granting Issuance of a Temporary Restraining Order. Many of the movants who have accounts with Pershing and J.P. Morgan for which Stanford was the introducing broker claim that their accounts fall outside the scope of the TRO, because they are not in any respect held "in the name, on behalf, or for the benefit of any of the Stanford Defendants." The Receiver counters that any account with these two institutions for which Stanford was the introducing broker is, by definition, held on behalf of Stanford. Regardless whether this is the case, the Receiver's account freeze properly applies to all the movants' accounts.

Stanford exercised significant control over these accounts. With limited exceptions, Pershing and J.P. Morgan could execute transactions in the accounts only upon Stanford's instructions, rather than the movants' instructions. *See* Fully Disclosed Clearing Agreement

of Pershing LLC ¶ 12.1 (App. to Receiver's Consolidated Resp. 30-63); *see also* Bear Stearns Letter Agreement[2] ¶ 11(b) (stating that Stanford Group Company is solely responsible for the conduct of the accounts held at J.P. Morgan) (App. to Receiver's Consolidated Resp. 64-78). Without a hold on the accounts, the Stanford employees, who in many cases had discretionary authority to control customer accounts, could have transferred millions of dollars from those accounts. Thus, even if the J.P. Morgan or Pershing accounts are not held on behalf of Stanford, in requesting a freeze on all of these accounts, the Receiver acted within the authority the Court granted him to "take custody, control, and possession" of all assets of the Defendants and the entities they control. *See* Order Appointing Receiver, February 17, 2009 ¶ 5. The hold therefore properly applied to all movants' accounts.

### III. INTERVENTION IS NOT WARRANTED

The Movants do not meet the requirements of Rule 24 for intervention as of right. Because there is no federal statute giving the unconditional right to intervene, intervention under Rule 24(a)(1) is unavailable in this case. *See* FED. R. CIV. P. 24(a)(1). Otherwise, an application for intervention as of right under Federal Rule 24(a)(2) must meet four requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be

---

[2] J.P. Morgan acquired Bear Stearns.

inadequately represented by the existing parties to the suit. *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (internal citation omitted); FED. R. CIV. P. 24(a)(2). If a movant fails to satisfy any one of the requirements, it precludes intervention as a matter of right. *Id.*

The Court finds that the putative intervenors fail to satisfy the last two requirements. First, the Court finds that the SEC and Receiver adequately represent the movants' interests in the underlying suit. Additionally, the Court has, by separate Order appointed an examiner specifically to present the collective interests of Stanford investors to the Court. Accordingly, movants' interests are adequately represented. Second, the Receiver has adopted procedures for movants to present their claims to the Receiver, so, as a practical matter, disposition of this action does not impair or impede movants' ability to protect their interests.

The SEC provides adequate representation for any interest the Movants may have in this litigation. A party seeking to intervene in an action bears the burden of establishing the inadequate representation requirement of Rule 24. *Haspel & Davis*, 493 F.3d at 578. Here, adequate representation is presumed because of the involvement of the SEC as Plaintiff in the litigation. *See Baker v. Wade*, 743 F.2d 236, 241 (5th Cir. 1984) (holding that when a government entity is a party, it is presumed that the government adequately represents the interests of the public); *see also Johnson v. City of Dallas*, 155 F.R.D. 581, 586 (N.D. Tex. 1994) (holding that "where, as here, the existing representative in the suit is the government, there is a presumption of adequate representation which may be overcome . . . only upon a

showing of adversity of interest, the representative's collusion with the opposing party, or nonfeasance by the representative"). None of the intervenors allege adversity of interest, collusion, or nonfeasance on part of the SEC to overcome this presumption. Thus, intervention is unwarranted on this ground.

To the extent that movants seek to intervene in this case because of the Receiver's actions related to their accounts, intervention is also unnecessary. One brief characterizes the various putative intervenors' motions thus:

> While [the Receiver] may represent the interests of investors who lost money to SIB, the Intervenors are not just victims in this case. They filed motions to intervene because the Receiver--not the Defendants--decided in his discretion to freeze their personal property; namely, funds that could never be traceable to the fraud and should not be frozen. In that regard, the Receiver is actually adverse to the interests of the Intervenors. Unlike cases cited by the Receiver, the claims process does not provide a forum for Intervenors to challenge the asset freeze or the Receiver's discretion. The Intervenors' interests in their personal property, wholly unrelated to the fraud, can only be protected by the Intervenors themselves, and these issues can only be addressed by the Court.

Intervenors' Joint Reply 5-6 [docket no. 202]. The Receiver's decision to freeze the movants' personal property was due to the inability to determine, at the outset, which funds were traceable to the fraud and which were not. As the Receiver determines that specific categories of accounts are not connected to the fraud, they have been authorized for release. The Receiver's interest is therefore not adverse to the interests of the putative intervenors insofar as they are possible creditors of Stanford or potential victims of fraud. *See SEC v. Cook*, 2001 WL 256172, at *2 (N.D. Tex. 2001) (holding that "A receiver represents not only the entity in receivership, but also the interests of its creditors" because "the very

purpose of receivership is to secure the assets of the corporation for ultimate payment to the creditors").

Perhaps most significantly, the Court has by separate Order this day appointed an Examiner. The Examiner is directed to present the interests of the Stanford investors to the Court. In that connection, the Examiner is authorized to seek relief from the Court on behalf of the investors by making appropriate Report and Recommendations to the Court. The Examiner is further authorized to file briefs in response to any other motions filed in this action. Finally, the Examiner is authorized to conduct such investigation as may be needed to present those interests to the Court, including the ability to utilize the discovery mechanisms that the Federal Rules of Civil Procedure make available to a party. Accordingly, considering the SEC, the Receiver, and the Examiner, the Court finds that movants' interests are adequately represented.

Secondly, movants fail to establish that disposition of this action without their intervention would impair or impede their interests. The Receiver has established a certification process for movants to challenge the asset freeze with respect to their individual accounts. *See* Order of March 27, 2009, granting the request for approval of procedures for applying for review and potential release of accounts. Given the certification process, a temporary freeze on accounts is not a sufficient impairment of movants' property interest under the third requirement of Rule 24(a)(2) to warrant intervention. *See SEC v. Funding Res. Group*, 2000 WL 1468823, at *4 n.8 (5th Cir. 2000) (unpub.) (recognizing that an asset freeze impaired the proposed intervenor's ability to recover funds but holding that they could

not "bootstrap an impairment caused by the enforcement action of an interest not at issue in the enforcement action into a right to intervene"); *id.* n.9 (noting ensuing orderly procedures for disposition of claims as argument against intervention); *United States v. Alisal Water Corp.*, 370 F.3d 915, 924 (9th Cir. 2004) (affirming denial of intervention in part because of claim procedures established by receiver). Because of the existence of the certification process, movants cannot show that the disposition of this action would impair or impede movants' ability to protect their interests. Moreover, to the extent the procedures presently established do not adequately protect movants' interests, that is an issue that the Examiner can present to the Court.

Because movants have not demonstrated two of the requirements for intervention of right, the Court denies the motions to intervene under Rule 24(a)(2).

Finally, the potential intervention of hundreds or even thousands of similarly situated investors would cause needless inefficiencies and delay in the adjudication of the underlying dispute between the SEC and the Defendants. For all the reasons stated above, the Court therefore also denies permissive intervention under Rule 24(b).

### IV. Conclusion

In light of the measures taken by the Court and the Receiver to protect the interests of the movants, intervention is unnecessary and will only cause delay in the enforcement of the underlying action. Accordingly, the Court denies all the identified motions to intervene.

Signed April 20, 2009.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 8