IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Securities and Exchange | § | Case No. 3:09-cv-0298-N |
| Commission, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Stanford International Bank, Ltd., | § | |
| Stanford Group Company, | § | |
| Stanford Capital Management, LLC, | § | |
| R. Allen Stanford, James M. Davis | § | |
| And Laura Pendergest-Holt, | § | |
| | § | |
| Defendants. | § | |

**STANFORD CONDOMINIUM OWNERS ASSOCIATION'S REPLY
TO THE RECIVER'S RESPONSE TO STANFORD CONDOMINIUM
OWNERS ASSOCIATION'S MOTION FOR LEAVE TO INTERVENE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Stanford Condominium Owners Association ("SCOA"), by and through

the undersigned attorneys, and files this its Reply to the Receiver's Response to SCOA's Motion

for Leave to Intervene (the "Response") and states in support thereof as follows:

**I.     INTRODUCTION**

SCOA has certain construction-defect and other related claims against a company named

Stanford Development Corporation ("SDC").  These claims are based on, among other things, a

substantial number of documented defects for which SDC is responsible.  None of SCOA's

claims—which were being actively prosecuted long before this Receivership was initiated—are

related to the alleged securities fraud in this case.  SCOA has filed litigation and a demand for

arbitration against SDC related to these claims.

This Court's order has stayed all legal proceedings against any part of the Receivership Estate. Because it appears that SDC is part of the Receivership Estate, SCOA has been prevented from pursuing any of its claims against SDC, despite the numerous severe difficulties and ongoing damages SCOA's members are experiencing due to the construction defects and damages. SCOA's condo building is continuing to deteriorate because the owners cannot afford to make needed repairs on their own; they need to proceed with the pending arbitration so that they can satisfy their claims and begin to move on with their lives.

## II.   ARGUMENT & AUTHORITIES

### A.   SCOA Has the Right to Intervene in This Case As a Matter of Law.

#### 1.   SCOA has an undisputed interest in property subject to this action.

To intervene as of right in a federal case, the intervenor must, among other requirements, have "an interest relating to the property or transaction which is the subject of the action." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996); *see also* FED. R. CIV. P. 24(a)(2).

As SCOA demonstrated in its Motion for Leave to Intervene (the "Motion"), its claims against SDC are an interest in the property subject to this action because, if SDC is part of the Receivership Estate, SCOA will be unable to satisfy its claims if the Receiver distributes the Receivership Assets to the defrauded investors to the detriment of the SCOA members. Motion (Doc. No. 350) at 5; *see also SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947-48 (8th Cir. 1983) ("Here, if the District Court orders [the defendant's] frozen assets 'disgorged' to defrauded investors, [intervenor] will be unable to obtain satisfaction of its claim. [Intervenor] has a sufficiently direct interest to support intervention."). Significantly, the Receiver does not dispute that SCOA has claims against SDC. *See generally* Response (Doc. No. 410).

The Receiver attempts to argue that SCOA's interest is insufficient to intervene in this case by referring to SCOA's claims as a mere "economic interest." *See id.* at 8.  But the cases cited by the Receiver do not apply here, where SCOA is moving to intervene into a receivership proceeding that purports to implicate all of the assets of SDC and the Receivership Estate.  First, the Receiver cites *Rigco, Inc. v. Rascher Pierce Refsnes, Inc.*, which addressed an intervention motion by the shareholders of a corporation in bankruptcy.  110 F.R.D. 180, 182 (N. D. Tex. 1986).

The issue presented in *Rigco* is entirely different from the issue in this case.  In *Rigco*, the shareholders were attempting to intervene in a breach of contract suit brought by the bankrupt corporation.  *Id.*  The shareholders argued that because they were personally liable for certain guaranties they had made to secure loans for the corporation, they had an interest in helping to obtain the largest possible recovery for the bankruptcy estate in the contract suit so that their personal liabilities for their guaranties would be as low as possible after the bankruptcy liquidation.  *Id.*  The court ruled against the shareholders, stating, "The possibility of a benefit because a party may have more money available at the conclusion of a lawsuit does not constitute a direct, substantial, legally protectable interest under Rule 24(a)(2)."  *Id.* at 184.

SCOA's Motion presents an entirely different question.  In this case, the issue is not simply whether SCOA will have relatively more money if it intervenes; the issue is that SCOA's *entire interest* in its claims against SDC has been subsumed into the Receivership, giving it an interest in the "property or transaction that is the subject of [this Receivership] action."  *See* FED. R. CIV. P. 24(a)(2).  Its interest is not merely limited to a particular amount of money being litigated by two other parties, as the "economic interest" was in *Rigco*; its interest is entirely within SDC's assets and insurance, which the Receiver maintains are entirely within the

Receivership Estate. Such an interest is sufficient for intervention of right. *See Flight*, 699 F.2d at 947-48.

Further, the other case cited by the Receiver, *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*, actually supports SCOA's position. 72 F.3d 361, 366-68 (3d Cir. 1995). While the court in *Mountain Top Condo* did state that a "mere economic interest" is insufficient for intervention of right, it ruled that a couple's interest in a specific fund held in the district court's registry was a sufficient interest to intervene of right since "they . . . have an interest in the property over which the court has taken jurisdiction." *Id.* SCOA's case is no different: its interest is in SDC and its assets and insurance, which the Receiver argues are under the jurisdiction of this Court. As such, SCOA's interest is more than merely "economic" and it has the right to intervene. *Id.*; *see also Flight*, 699 F.2d at 947-48.

Finally, the Receiver's attempt to distinguish *Flight* from SCOA's case fails. The Receiver states that the court in that case permitted intervention because the intervenor, along with its unliquidated claim, had a "reversionary property interest" in certain airplanes held by the receiver. Response (Doc. No. 410) at 9. But the Receiver's argument overlooks the fact that the court in *Flight* allowed intervention *after* the intervenor had already regained possession of the planes—i.e., the only interest the intervenor in *Flight* had left was its unliquidated claim against the corporation in receivership. *See Flight*, 699 F.2d at 947-48 (allowing intervention even when the intervenor had "only an unliquidated claim for damages for breach of [a] lease").

In the end, despite his briefing on "economic interests," the Receiver has simply not cited any case contradicting the holding of *Flight* directly applicable here: a creditor of a company in receivership in an SEC action has the right to intervene as a matter of law to protect its interests when its claim has been subsumed entirely into the receivership. *Flight*, 699 F.2d at 947-48.

## 2.    SCOA's interest will be impaired by its inability to protect that interest if it is not allowed to intervene.

Under the FEDERAL RULES, SCOA must also show that "the disposition of [this] action may, as a practical matter, impair or impede [SCOA's] ability to protect [its] interest." *Edwards*, 78 F.3d at 999; *see also* FED. R. CIV. P. 24(a)(2).  It is this "impairment of interest" that is the only other element of SCOA's intervention of right that the Receiver disputes.[1]  However, the Receiver's arguments in this regard also fail.

Essentially, the Receiver argues that SCOA's interest in this case is not impaired because of the alleged existence of alternative forums, such as SCOA's arbitration against SDC.  *See* Response (Doc. No. 410) at 8-9.  That arbitration, of course, has been stayed by order of this Court.  And as the court in *Flight* recognized, a stayed proceeding gives a claimant no rights at all in that proceeding.  *See Flight*, 699 F.2d at 947-48 (allowing intervention when the district court had "prohibited [the intervenor] from prosecuting any other action").  That is especially true in this case, where the condo owners are caught in a legal limbo of no apparent end.  They cannot make the needed repairs; they cannot refinance their mortgages; they cannot sell their units.  Their condos are not mere investments like CDs—these are their homes.

The Receiver also argues that the district court in *Flight* never "establish[ed] any procedure for filing claims with the receiver."  Response (Doc. No. 410) at 9.  However, this assertion is not backed up anywhere in the text of the decision in *Flight*:  the court never refers to the lack of a procedure for filing claims with the receiver, and certainly never uses it as a basis for its decision.  *See generally Flight*, 699 F.2d 943.

The Receiver cites a Seventh Circuit case, *Commodity Futures Trading Commission v. Heritage Capital Advisory Services*, to support its contention that the "availability" of an

---

1.    The Receiver disputes neither the timeliness of SCOA's Motion nor that the current parties to this suit do not adequately represent SCOA's interest.  *See generally* Response (Doc. No. 410).

alternative forum "militates against intervention as a matter of right."  Response (Doc. No. 410) at 8-9; *see also Heritage*, 736 F.2d 384, 386 (7th Cir. 1984).  The Receiver's reliance on *Heritage* is misplaced, however, because there was no court order staying other proceedings in *Heritage*.  *See* 736 F.2d at 386 ("[S]ince there is no stay imposed on actions against the receiver, [the intervenor] may sue the receiver directly.").  In this case, SCOA is prohibited by Court order from taking such action in other forums against the Receiver or against the Receivership Estate.  Accordingly, it can only protect its interest in this Court, and so it has the right to intervene.  *See Flight*, 699 F.2d at 947-48 (allowing intervention in an SEC case because actions in other forums had been stayed and all of the assets at issue were held by a receiver).

Finally, the Receiver's contention that some sort of "Court-approved asset distribution and claims resolution process" constitutes an alternative forum to the current proceedings before this Court is disingenuous.  *See* Response (Doc. No. 410) at 8-9 (discussing the "claims resolution process" as an "alternative" forum to the proceedings in this Court).  First, such a "process" has not been designed, let alone implemented; because it does not exist, it cannot constitute an alternative forum.  Second, the "process" would necessarily have to take place under this Court's supervision and would therefore not be a separate forum at all, but a part of the forum before this Court.  Finally, if it cannot intervene, SCOA will have no say in how the Receiver's "process" is designed, implemented, or administered; accordingly, its inability to protect its interest will simply be carried forward into that allegedly "alternative" forum.  If SCOA is not allowed to prosecute its claims, it will not be allowed to share in the disposition of those assets.  It will be denied all relief without due process.  *See Perry v. Sinderman*, 408 U.S. 593, 601-03 (1972) (holding that property interests that are intangible but protected by rules or the law are "subject to procedural due process protection"); *see also* U.S. CONST. amend. V.

### B. Alternatively, SCOA Should be Allowed to Permissively Intervene.

The Receiver's arguments against SCOA's permissive intervention also fail. RULE 24 allows for timely "permissive" intervention so long the intervenor's claim shares a "common question of law or fact" with the pending suit. FED. R. CIV. P. 24(b)(1)(B). The standard for determining whether a "common question of law or fact" exists is a liberal one. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (discussing case law on permissive intervention pursuant to an earlier version of RULE 24). The factors the Fifth Circuit has listed for courts to consider in deciding motions to intervene are "whether the intervenors' interests are adequately represented by other parties . . . and whether intervention will unduly delay the proceedings or prejudice existing parties." *Kneeland v. NCAA*, 806 F.2d 1285, 1289 (5th Cir. 1987) (internal citations omitted).

Despite the liberal standard for deciding the existence of "common questions," the Receiver argues that there are no such common questions, stating boldly that SCOA's action against SDC "will not address" the issues of "the disposition of estate assets." Response (Doc. No. 410) at 10. This is of course untrue. If SDC is a part of the Receivership Estate, the damages that SDC owes SCOA fall precisely into that question: i.e., how and when will SDC assets be allocated to satisfy SCOA's claims?

Further, why should claimants against Stanford Financial have any rights to SDC assets at all? SCOA dealt directly with SDC and should have the first shot at SDC assets and insurance. The Receiver has not alleged—let alone shown—that monies from securities fraud were transferred to SDC. The Receiver's securities beneficiaries had no dealings with SDC at all, and should not be given any priority over SCOA. Denying SCOA's intervention would have that very effect, without an adjudication on the merits.

The Receiver next argues that allowing SCOA's permissive intervention would "severely disrupt" the Receivership proceedings, alluding to several different legal actions that have been filed in various courts across the country, and states that he would have to devote time and resources to addressing such legal actions if SCOA is allowed to intervene. *Id.* at 11-12. However, it is obvious that SCOA's Motion did not cause these other legal actions to be filed; the Receiver would have had to spend money addressing those actions with or without SCOA's Motion. In fact, the Receiver makes no attempt to address how these other actions, which are completely unrelated to SCOA's claims and Motion, are in any way relevant to the *Kneeland* factors of whether: 1) the intervenor's interests are represented by other parties; 2) there will be delay to the case; and 3) there will be prejudice to the parties to the case. 806 F.2d at 1289.

Furthermore, the Receiver also never discusses how many of the actions filed around the country are directly or indirectly related to the alleged securities fraud in this case, as distinguished from SCOA's claims against SDC, which have nothing whatsoever to do with Defendants' alleged securities fraud. *See* Affidavit of Brady Lotridge, Exhibit "A" in the Appendix attached hereto. If the collateral actions that the Receiver complains of are related to securities fraud, there is little danger of those claimants permissively intervening in this case since their interests are already sufficiently represented by the SEC and the Receiver. *See Flight*, 699 F.2d at 948 (noting that the SEC protects the public from securities violations and that the Receiver marshals assets for claimants).

C.      **Alternatively, SCOA Should Be Able to Prosecute Its Claims against SDC in the Pending Arbitration.**

The Receiver cites a variety of non-Fifth-Circuit law to argue that SCOA should not be allowed to proceed in its arbitration against SDC. Receiver's Motion (Doc. No. 410) at 14-18. But even under the Ninth Circuit's *SEC v. Wencke* cases, "a blanket stay should not be used to

prejudice the rights which innocent and legitimate creditors may have against the receivership entities." 622 F.2d 1363, 1373 (9th Cir. 1980) ("*Wencke I*"). Further, the first *Wencke I* factor (preventing substantial injury to the moving party *versus* preserving the status quo) favors the moving party when it could be irreparably injured by the stay. *See SEC v. Wencke*, 742 F.2d 130, 1232 (9th Cir. 1984) ("*Wencke II*").

If it cannot intervene in this receivership proceeding, and it cannot proceed in arbitration, SCOA will be irreparably injured because it will have no say in how or when SDC's assets are liquidated or distributed when those assets may be the only way to satisfy SCOA's claims. *See generally* SCOA's Response in Opposition to the Receiver's Motion to Approve Procedures for Sales of Real Property (Doc. No. 450)). Further, SCOA will not be able to assert any of its claims against SDC while the defects and injuries caused by SDC's behavior multiply and worsen, condemning the condos' individual owners to a fate of steadily deteriorating real property for an indefinitely long period of time with the very real possibility that their claims may never be fully satisfied. In short, SCOA would be substantially and irreparably injured.

Moreover, under the Receiver's third *Wencke I* factor (the merits of the underlying case), SCOA need not prove its case before the stay is lifted; it need only demonstrate that it has a "*colorable claim*" against SDC entitling it to a trial on the merits. *Wencke II*, 742 F.2d at 1232 (emphasis in original). SCOA's claims, which are based on documented defects among other things, easily meet this requirement. *See* Affidavit of Brady Lotridge, Exhibit "A" in the Appendix attached hereto (describing SCOA's claims).

At its heart, the Receivership is a proceeding in equity. *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982) (discussing "the broad powers inherent in a federal court

supervising an equity receivership"). However, the Receiver never addresses the equities present in this case. *See* Response (Doc. No. 410) at 14-18. Here, the equities favor SCOA.

The fact of the matter is that the construction of the Stanford Condos is deficient in several respects and deteriorating. Affidavit of Brady Lotridge, Exhibit "A" in the Appendix attached hereto. In addition to the cost of repairing these construction defects, the defects have caused many other injuries to the real property and financial situations of the condo owners. *Id.*

Further, these defects and damages have had severe effects on the individuals and families owning units of the Stanford Condos: owners are unable to refinance damaged units, let alone sell them. *Id.* Forty families or individual owners—and their financial wellbeing—are in limbo due to the stay ordered by this Court, with claims that have nothing to do with the alleged securities fraud in this case, other than the fact that they are the victims of a corporation that may be owned by one of the Defendants. Their legal costs are being increased dramatically by having to deal with this Receivership, which is unfair since they make no claims against the Stanford financial or securities entities. This Court would do equity for these families by allowing SCOA to proceed in its arbitration against SDC and its insurers. It will not harm or disrupt the Receiver's other activities. SCOA hereby requests such an order.

## III.   CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, SCOA respectfully requests that this Court enter an Order:

    a.    allowing SCOA to intervene in this suit for the purposes described above, or, in the alternative, allowing SCOA to continue prosecuting this claim against SDC in its pending Arbitration; and

    b.    for such other and further relief, in law or equity, as this Court deems just and necessary.

Respectfully submitted,

**PORTER & HEDGES, L.L.P.**

By: /s/ David D. Peden
       **DAVID D. PEDEN**
       State Bar No. 15713500
       **PETER G. IROT**
       State Bar No. 24059997
       1000 Main Street, 36th Floor
       Houston, Texas  77002
       (713) 226-6000
       (713) 228-1331 FAX
       dpeden@porterhedges.com

       **ATTORNEYS FOR INTERVENOR,
       STANFORD CONDOMINIUM
       OWNERS ASSOCIATION**

LOCAL COUNSEL:

**CANTERBURY, STUBER, ELDER,
GOOCH & SURRATT**
W. Kyle Gooch
State Bar No. 8138500
Occidental Tower
5005 LBJ Freeway
Suite 1000
Dallas, Texas  75244
(972) 239-7493
(972) 490-7739 FAX
kgooch@canterburylaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and complete copy of the foregoing document was duly served on all counsel of record electronically through the CM/ECF System on this 11th day of June 2009.


 /s/ Peter G. Irot
Peter G. Irot