**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** Plaintiff, | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 3:09CV0298-N** |
| **STANFORD INTERNATIONAL BANK, LTD., ET AL.,** Defendants | § § § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY BAKER BOTTS, LLP.**

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway, Ste. 2360
Houston, TX 77027
(713) 622-9700

Ruth Brewer Schuster
Texas Bar No. 24047346
1201 Connecticut Ave, NW, Ste. 500
Washington, DC 20036
(202) 683-3160

Christina Sarchio
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
202-457-7527
*Pro hac vice to be submitted*
*Counsel for R. Allen Stanford only*

Patton Boggs LLP
2001 Ross Avenue, Ste. 3000
Dallas, Texas 75201
214-758-1500

**ATTORNEY IN CHARGE FOR DEFENDANT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I. Summary of Argument ........................................................................................1

II. Baker Botts Formed Stanford International Bank and Provided Advice on the Formation of the Certificates of Deposit at Issue in This Case ........................2

III. Baker Botts Should Be Disqualified From Representation Based On A Clear and Apparent Conflict of Interest ..............................................................5

IV. Fifth Circuit Precedent Mandates Disqualification of Baker Botts ...........................6

V. Baker Botts Attorneys Have Been Disqualified in Other Matters ...........................10

VI. The Court Must Disqualify Baker Botts as it is a Potential Witness for Mr. Stanford ........................................................................................10

VII. Conclusion ........................................................................................................12

**TABLE OF AUTHORITIES**

i

**CASES**

*Brennan's Inc. v. Brennan's Restaurants, Inc.*
590 F.2d 168 (5th Cir. 1979) ....................10

*E.F. Hutton & Co. v. Brown*
305 F. Supp. 371 (S.D. Tex. 1969) ....................9

*In re Corrugated Container Antitrust Litigation*
659 F.2d 1341 (5th Cir. 1980) (5th Cir. 1981) ....................5, 6, 7, 8

*In re American Airlines, Inc.*
972 F.2d 605 (5th Cir. 1992) .................... 1, 2, 5, 6, 7, 8, 9, 10

*Johnston v. Harris County Flood Control Dist*
869 F. 2d 1565 (5th Cir. 1998) ....................6

*T.C. Theater Corp. v. Warner Bros. Pictures, Inc.*
113 F. Supp. 265 (S.D.N.Y. 1953).................... 9

*National Medical Enterprises, Inc. v. Godbey*
924 S.W.2d 123 (Tex. 1996) ....................11

*Tesco American, Inc. v. Strong Industries*
221 S.W.3d 550 (Tex. 2006) ....................11

*U.S v. Locascio*
6 F.3d 924 (2nd Cir. 1993).................... 11

*U.S v. DeFazio*
899 F.2d 626 (7th Cir. 1990) ....................11

*U.S. v. Reeves*
892 F.2d 1223 (5th Cir. 1990) ....................12

*United States v. Merlino*
349 F.3d 144 (3d Cir. 2003) ....................11

*Wheat v. U.S.*
486 U.S. 53 (1988).................... 12

*Williamson v. United States*
207 U.S. 425 (1908).................... 11

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY BAKER BOTTS L.L.P.**

TO THE HONORABLE JUDGE:

COMES NOW, DEFENDANTS, STANFORD INTERNATIONAL BANK, LTD., STANFORD FINANCIAL GROUP COMPANY, STANFORD GROUP COMPANY, and R. ALLEN STANFORD, (hereinafter "Defendants"), who file this Motion to Disqualify Baker Botts L.L.P., and respectfully show the Court as follows:

## I. Summary of the Argument

The United States Court of Appeals for the Fifth Circuit articulated the proper interpretation and application of ethical standards in disqualification cases in *In re American Airlines, Inc*.[1] In the Fifth Circuit, disqualification of an attorney or a law firm is not discretionary.[2] A former client has an absolute right to disqualify a law firm which seeks to represent an adverse party in a case substantially related to a matter in which the law firm previously represented the client.[3]

In the Fifth Circuit, a party-litigant should employ a motion for disqualification of counsel in order to bring issues of conflict of interest or breach of ethical duties to the Court's attention.[4] Motions to disqualify are substantive motions affecting the rights of parties and are determined by applying standards developed under federal law rather than any disciplinary rules.[5]

---

[1] 972 F.2d 605, 609 (5th Cir. 1992).
[2] *See id.*
[3] *See id.* at 619.
[4] *See id.* at 611.
[5] *See id.* at 610.

The Fifth Circuit determined that a single inquiry into whether past and present representations are **substantially related** provides the best means to protect not only the integrity of a particular matter, but also the duty of loyalty owed by an attorney to his client.[6] Under this test, an attorney who has given advice in a substantially related matter, ***must*** be disqualified, regardless of whether he has been privy to confidential information.[7] Once a substantial relationship between the former and current representation is established, the Court must irrebuttably presume that confidential information was exchanged.[8] Hence, a lawyer who has given advice in a substantially related matter ***must*** be disqualified, whether or not he actually has gained confidences.[9]

In the instant case, Baker Botts represented Defendant R. Allen Stanford in the formation of Defendant Stanford International Bank and, establishing and approving its structure. Baker Botts then undertook the representation of the Receiver, filing a Report on the Receiver's behalf alleging that the very structure of the Bank that Baker Botts set up is a Ponzi scheme.[10] Baker Botts' flagrant violation of its duty of loyalty to the Stanford Defendants warrants its immediate disqualification from the instant litigation.

## II. Baker Botts Formed Stanford International Bank and Provided Advice on the Formation of the Certificates of Deposit at Issue in This Case

From 1985 to 1987, Baker Botts represented R. Allen Stanford and his father, James Stanford, in organizing Stanford International Bank (formerly known as Guardian Bank) on the

---

6 *See id.* at 619.
7 *See id.*
8 *See id.* at 614.
9 *See id.* at 619.
10 *See* Rec. Doc. 336.

island of Montserrat.[11] The bank was established to provide depositors with certificates of deposit.[12] Baker Botts organized the bank, prepared its bylaws, and qualified the Bank to do business under the banking regulations of the United States Federal Government, and under the regulations of the State of Texas.[13] Furthermore, Baker Botts was involved in setting up the basic business model of the Bank from the beginning. It was planned that the Bank would sell Certificates of Deposit and reinvest the money in real estate, bonds, CDs issued by U.S. banks, and other investments. In short, Baker Botts was, "intimately involved in all aspects of the organization of the [B]ank and its sale of CDs, the utilization of funds from the sale of such CDs, and the relationships between the Bank, Stanford Financial Group, and other related, but independent, companies."[14] Bills for establishing the Bank, qualifying the Bank to do business under federal and state law, and setting up its business plan were paid by Stanford Financial Group and the Stanfords.[15]

Despite having represented Allen Stanford and the Bank in this substantially related matter, Baker Botts undertook the representation of the Receiver in the instant action to provide, "essential legal expertise and manpower related to nearly all aspects of the receivership."[16] Baker Botts is acting as the principal counsel for the Receiver who was appointed to "preserve the assets" of Stanford International Bank, Stanford Financial Group, and R. Allen Stanford (among others).[17] Baker Bott's activity in the instant litigation, however, clearly has been in contravention of the mandate to preserve the assets. Baker Botts has actually assisted in the

---

[11] *See* Baker Botts Stanford file to be produced upon request *in camera*.
[12] *See* Baker Botts Stanford file.
[13] *See* Baker Botts Stanford file.
[14] *See* Baker Botts Stanford file.
[15] *See* Baker Botts Stanford file. It should be noted that Baker Botts' attorneys met with and provided legal advice to the Stanfords via office visits and teleconferences wherein business strategy was discussed and made an appearance with Mr. Allen Stanford before the Register of the High Court of Justice for the Colony of Montserrat to finalize approval for the formation of the Bank.
[16] Rec. Doc. 384 at § II(B)(2).
[17] Rec. Doc. 157.

dismantling of the very entity that it incorporated and is assisting in the investigation of that entity with the SEC, DOJ, FBI, USPS, DOL and DEA.[18] Indeed, Baker Botts assisted the Receiver "in the closing of 14 Stanford offices"[19] and "established protocols to allow liquidating orders."[20] It is unconscionable that Baker Botts could turn on its former client to dismantle and disembowel the very corporate structures and product lines the law firm created, likely using privileged information in the process.

Moreover, Baker Botts filed the April 23, 2009 Report of the Receiver in which it alleges that the Stanford companies were designed to "attract and funnel outside investor funds . . . through the sale of CDs issued by Stanford's offshore entity SIBL [the Bank]."[21] The Report notes that the heart of the SEC's lawsuit is its allegation "against the Defendants that the CDs were sold in a Ponzi scheme, in which money from sales of new CDs were used to make payments on older CDs instead of invested on the new purchaser's behalf."[22] The Receiver has employed Baker Botts to question the validity of the very Bank and banking services that Baker Botts itself constructed on behalf of R. Allen Stanford.

It is of grave concern in this matter that Baker Botts is aiding the SEC, the Plaintiff in this matter, in its investigation. Clearly, the Plaintiff is adverse to the Defendants who previously employed Baker Botts to organize their businesses and who previously consulted Baker Botts concerning the legality and propriety of selling CDs and reinvesting the money in financial instruments issued by other institutions.

---

[18] Rec. Doc. 385 at 70-86; *see generally* Rec. Doc. 384.
[19] Rec. Doc. 385 at 70.
[20] Rec. Doc. 385 at 72.
[21] Rec. Doc. 336.
[22] *Id.* at p. 13.

## III. Baker Botts Should Be Disqualified From Representation Based On A Clear And Apparent Conflict Of Interest.

Under United States Fifth Circuit Court of Appeals precedent, a former client has an absolute right to disqualify a law firm which seeks to represent an adverse party in a case substantially related to a matter in which the law firm previously represented the client.[23] The Court of Appeals outlined the proper interpretation and application of ethical standards in disqualification cases in *In re American Airlines, Inc*.[24]

*Under American Airlines,* a motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the Court's attention.[25] Specifically, the Court held that motions to disqualify are substantive motions affecting the rights of parties and are determined by applying standards developed under federal law rather than any disciplinary rules.[26] The Court drew from federal common law precedent[27] to hold that a single inquiry into whether past and present representations are **substantially related** provides the best means to protect the integrity of a particular matter and the duty of loyalty owed by an attorney to his client.[28]

Under the substantial relationship test, a party seeking to disqualify opposing counsel must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations.[29]

---

[23] *See American*, 972 F.2d at 619; *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir. 1980).
[24] 972 F.2d at 609.
[25] *Id.* at 611.
[26] *See id.* at 610.
[27] *See id.* at 617 (stating, the Texas Disciplinary Rules of Professional Conduct (TDRPC) did not supplant, but adopted, the common law substantial relationship test).
[28] *See American*, 972 F.2d at 619.
[29] *See id.* at 614, citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989).

Under this test, the Court must not concern itself with whether the law firm's involvement in the present case threatens to taint the proceedings. Furthermore, the Court must not concern itself with whether the law firm actually gained any client confidences during the course of the prior representation. Rather, the **substantial relationship test focuses on both a lawyer's duty of confidentiality *and* his duty of loyalty**.[30]

The Stanford Defendants seek disqualification of Baker Botts due to the conflict, especially in light of the irreparable harm caused by their actions and advices against the interest of the Stanford Defendants. This is particularly so given the firm's unique privity and the knowledge it had regarding the entities, individuals, and product lines at issue in this case. There can be no distinction between the original representation and the current case. In fact, if anything, Baker Botts should be advising Stanford at this time. The law of this Circuit mandates disqualification.

## IV. Fifth Circuit Precedent Mandates Disqualification of Baker Botts

Disqualification of an attorney or a law firm is not discretionary.[31] Rather, the Fifth Circuit mandates that "a lawyer who has given advice in a substantially related matter ***must*** be disqualified, whether or not he has gained confidences."[32] Indeed, once it is established that the two matters are substantially related it is irrebuttably presumed that confidential information was exchanged during the former period of representation.[33]

As previously noted, the leading case in the Fifth Circuit concerning the disqualification of a law firm is *In re American Airlines*.[34] In that case, American Airlines ("American") petitioned to have the law firm of Vinson & Elkins disqualified from representing Respondent

30 *See e.g. American*, 972 F.2d 605.
31 *See id.* at 609.
32 *Id.* at 619, emphasis added; *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir. 1980).
33 *See American*, 972 F.2d at 614.
34 *Id. at* 605.

Northwest Airlines ("Northwest") because the firm had previously represented American Airlines in antitrust matters and the matter at issue before the Court was a consolidated antitrust action wherein Continental Airlines ("Continental") and Northwest were the plaintiffs and American was the defendant.[35] It further came to light that American's counsel in the present matter, the law firm of Weil, Gotshal & Manges, had previously represented Continental and Northwest.[36] After an exchange of conflicts was rejected, American and Northwest each filed motions to disqualify counsel.[37] The District court denied the motions, and American filed a petition for mandamus.[38]

In forming its ruling, the Fifth Circuit emphasized that motions to disqualify are to be determined by standards of federal law. Federal courts may adopt state or American Bar Association (ABA) rules as ethical standards, "but whether and how these rules are to be applied are questions of federal law" not state law.[39] The Court found that the Fifth Circuit applied the substantial relationship test, which did not have its source from state or ABA rules but, rather, was developed at common law.[40] Accordingly, it held that the rules adopted but did not supplant the common law substantial relationship test.[41]

The essence of the Court's holding is that it is unethical for counsel to represent interests adverse to those of a former client where the two matters are "substantially related."[42] Adopting *In re Corrugated Container Antitrust Litigation*, the Court held that advice does not need to be relevant in the evidentiary sense to be substantially related, "**[i]t need only be akin to the**

---

[35] *See id.* at 607.
[36] *See id.*
[37] *See id.* at 608.
[38] *See id.*
[39] *See id.* at 610.
[40] *See id.* at 617.
[41] *See id*.
[42] *See id.* at 614.

**present action in a way reasonable persons would understand as important to the issues involved.**"[43] Any reasonable person can discern that the original matter which Baker Botts undertook to represent the Bank and the Stanfords is intimately connected with the facts of the instant case – so much so that it is curious why this relationship presumably was not disclosed to the Court or to the Receiver prior to undertaking the representation.

Once it is established that the two matters are substantially related, it is irrebuttably presumed that confidential information was exchanged during the former period of representation.[44] Citing *T.C. Theater Corp. v. Warner Bros. Pictures, Inc.*, the Fifth Circuit held,

> [t]he court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature or extent. *Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.*[45]

In the instant case, the rapid dismantling of the Defendant's holdings strongly suggests a familiarity with the operation of the businesses involved. This would make sense given that the businesses, principles, and products involved were conceived and formed at Baker Botts.

Furthermore, the Fifth Circuit's substantial relationship test is not solely concerned with the adverse use of confidential information or the appearance of impropriety, it is also concerned with the law firm's *duty of loyalty*. For "'[i]f courts protect only a client's disclosures to his attorney, and fail to safeguard the attorney-client relationship itself – a relationship which must be one of trust and reliance – they can only undermine the public's confidence in the legal system as a means for adjudicating disputes."[46] Any reasonable person would cringe at the

---

[43] *See id.* at 619, emphasis added, citing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981)).
[44] *See American*, 972 F.2d at 619.
[45] *Id.* at 618, citing *T.C. Theater Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268-69 (S.D. N.Y. 1953).
[46] *American*, 972 F.2d at 618 (citing E.F. Hutton & Co. v. Brown, 305 F. Supp. 371, 395 (S.D. Tex. 1969)).

concept of their law firm turning on them and upon the very advice the client relied. To allow this to happen annihilates the very core principles and purpose of the attorney-client privilege and the incumbent duty of loyalty a law firm has to its client.

The Fifth Circuit went on to expressly hold that "a lawyer who has given advice in a substantially related matter ***must*** be disqualified, whether or not he has gained confidences."[47] Under *Brennan's Inc. v. Brennan's Restaurants, Inc.*, the Fifth Circuit held that

> [t]he obligation of an attorney not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys. A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the clients . . . this would undermine public confidence in the legal system as a means for adjudicating disputes.[48]

Hence, the Fifth Circuit is not only concerned with the protection of confidential information but also with the protection of legal advice.[49] This is exemplified by the fact that the Court in *American* essentially asked, "what confidence would American have placed in Vinson & Elkin's antitrust advice if it had suspected that the firm would soon represent one of American's competitor's in an antitrust action?"[50]

Once the former client demonstrates an attorney-client relationship between itself and opposing counsel and establishes a substantial relationship between the former and current representations, the Court must disqualify the opposing party's counsel. Plaintiffs have conclusively shown that the Receiver's counsel, Baker Botts L.L.P., previously represented Defendants Stanford International Bank, Ltd. and Allen Stanford in substantially related matters. Therefore, Baker Botts, L.L.P. must be disqualified from representing Receiver Ralph Janvey.

---

47 *American*, 972 F.2d at 619 (emphasis added); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341 (5th Cir. 1980).
48 *Brennan's Inc.* ,590 F.2d 168 (5th Cir. 1979).
49 *American*, 972 F.2d at 605.
50 *See id.* at 620.

**V. Baker Botts Attorneys Have Been Disqualified in Other Matters**

Baker Botts was previously disqualified as opposing counsel in *National Medical Enterprises, Inc. v. Godbey*.[51] In *NME*, the Supreme Court of Texas held that Baker Botts was disqualified from representing plaintiffs in a lawsuit against a corporation because another lawyer at Baker Botts was retained by the corporation to represent an ex-employee in matters substantially related to the lawsuit.[52] The Court's opinion was grounded in federal common law.[53] Similarly, in *Tesco American, Inc. v. Strong Industries*, a Justice formerly employed by Baker Botts was disqualified from the *Tesco* appeal, because she was an attorney at Baker Botts at the same time another attorney with the firm served as counsel in the appeal.[54]

**VI. The Court Must Disqualify Baker Botts as it is a Potential Witness for Mr. Stanford**

Based on legal precedent and as a matter of justice, Mr. Stanford is entitled to raise an "advice of counsel" defense. It is well-established that a defendant who seeks and reasonably relies in good faith upon the advice of counsel may, "not be convicted of a crime which involves willful and unlawful intent."[55] Evidence to support such a defense may include producing privileged documents and calling lawyers at witnesses. Accordingly, when an advice of counsel defense is raised, courts have not hesitated to disqualify counsel based on the potential that counsel may be a witness. [56]

---

[51] 924 S.W.2d 123, 134 (Tex. 1996).
[52] *See id*. at 123.
[53] *See id*. at 129-30.
[54] 221 S.W.3d 550, 554 (Tex. 2006).
[55] *See generally, United States v. Peterson*, 101 F.3d 375, 381-82 (5th Cir. 1996); *Williamson v. United States*, 207 U.S. 425, 453 (1908).
[56] *See United States v. Locascio*, 6 F.3d 924, 934-35 (2nd Cir. 1993) (affirming disqualification of counsel due to potential that counsel would be unsworn witness based on first-hand knowledge of some evidence); *United States v. Merlino*, 349 F.3d 144, 150-51 (3d Cir. 2003) (potential for counsel to be subject to disciplinary sanctions and witness at trial warranted disqualification); *U.S. v. DeFazio*, 899 F.2d 626, 631 (7th Cir. 1990) (disqualification claim not examined with "the advantage of hindsight"; failure to call counsel as a witness at trial is "unimportant" to upholding disqualification).

Disqualifying a lawyer from participating in a case where he may be a witness is appropriate, because, as the Supreme Court explained, "[f]ederal courts have an independent interest in ensuring that [] trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."[57] Indeed, courts are cautious in acting not only in situations "where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."[58] Such action is not only appropriate but necessary here.

Baker Bott's legal recommendations to Mr. Stanford place it squarely as a witness in this case. As described above, Baker Botts provided Mr. Stanford with certain legal advice related to his banking. Mr. Stanford could use that advice as part of his defense, which may include introducing Baker Botts' documents as evidence and calling its lawyers as witnesses. Thus, Baker Botts can have no role in this case as an adversary to Mr. Stanford or as an arm of the Court in its capacity as counsel to the Receiver. Indeed, Baker Botts' continued involvement not only impedes Mr. Stanford's constitutional right to a fair trial but it subjects itself to possible action. [59] The only just means to remedy this indisputable conflict is for the Court to remove Baker Botts forthwith.

**VII. Conclusion**

As outlined in the fact section above, in the present case, Baker Botts had an attorney client relationship with Defendants and that relationship consisted, in part, of Baker Botts forming the very business it now seeks to dismantle and investigate for purported fraud (which

---

[57] *Wheat v. U.S.*, 486 U.S. 153 (1988); *see U.S. v. Reeves*, 892 F.2d 1223, 1227 (5th Cir. 1990).
[58] *Id.* at 163.
[59] In addition to possibly serving as a witness in this case, Baker Botts's itself may be subject to bar disciplinary action, a malpractice lawsuit, and possible prosecution for crimes such as fraud or theft of honest services for having breached its fiduciary duty to Mr. Stanford and the Stanford entities.

exceeds the scope of the Receivership Order). Baker Botts cannot refute this blatant conflict of interest and, at the very least, such conflict should have been disclosed to the Court and to the Receiver prior to the representation being undertaken. Baker Botts cannot dispute that it previously represented at least three of the Defendants. It cannot dispute that it gave advice concerning the sale of the very CDs which are at the heart of the SEC and the Receiver's contention of a Ponzi scheme. Thus, it has previously represented at least three of the defendants in a substantially related matter, and must be disqualified.

Respectfully submitted,

__*/s/ Ruth Brewer Schuster*__

Ruth Brewer Schuster
Texas Bar No. 24047346
1201 Connecticut Ave, NW, Ste. 500
Washington, DC 20036
(202) 683-3160

Patton Boggs LLP
2001 Ross Avenue, Ste. 3000
Dallas, Texas 75201
214-758-1500

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway, Ste. 2360
Houston, TX 77027
(713) 622-9700

Christina Sarchio
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
202-457-7527
*Pro hac vice to be submitted*
*Counsel for R. Allen Stanford only*

**ATTORNEY IN CHARGE FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on June 16, 2009.

*/s/Ruth Brewer Schuster*

**CERTIFICATE OF CONFERENCE**

I HEREBY CERTIFY that I have complied or attempted to comply with the meet and confer requirement in Local Rule 7.1. Mr. Sadler, of Baker Botts, opposes the motion. Mr. Tillotson, counsel for Lara Pendergest-Holt, has stated that he will inform the court of his client's stance at a later date. Mr. Lena, counsel for U.S.D.O.J. (IRS), opposes the motion. I was unable to reach Mr. Reece, counsel for the SEC, and Mr. Little, Court-appointed Examiner.

*/s/ Ruth Brewer Schuster*