# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION** | § § § | |
| **Plaintiff,** | § § | |
| | § | **CIV. ACTION NO.3-09CV0298-N** |
| **v.** | § § | |
| | § | |
| **STANFORD INTERNATIONAL BANK, LTD., ET AL.,** | § § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT R. ALLEN STANFORD'S NOTICE OF JOINDER IN DEFENDANT LAURA PENDERGEST-HOLT'S MOTION FOR CLARIFICATION AND DEMONSTRATION OF THE EXISTENCE OF PERSONAL ASSETS UNRELATED TO AND UNTAINTED BY THE ALLEGED FRAUD

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway, Ste. 2360
Houston, TX 77027
(713) 622-9700

/s/ *Ruth Brewer Schuster*
Ruth Brewer Schuster
Texas Bar No. 24047346
1201 Connecticut Ave, NW, Ste. 500
Washington, DC 20036
(202) 683-3160

## TABLE OF CONTENTS

Page

Procedural Background...................................................................................................2

Relevant Factual Background .......................................................................................2

Argument and Authorities.............................................................................................4

I.      Mr. Stanford Joins in the Pendergest-Holt Motion ........................................4

        A.      The proceeds of the D&O Policies are not property of the
                receivership estate ................................................................................4

        B.      The proceeds of the company-indemnity coverage parts of the applicable
                D&O Policies are not property of the receivership estate..................7

II.     Mr. Stanford Responds to the Court's Invitation for a Demonstration
        of Assets Unrelated to and Untainted by the Alleged Fraud ........................8

        A.      The policies were purchased for the protection of Directors and
                Officers when faced with claims such as those Mr. Stanford faces here.........10

        B.      There has been no finding of wrongdoing on Mr. Stanford's part. ...............10

        C.      Mr. Stanford has no other means of funding a defense. ..................13

CONCLUSION...........................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Caplin & Drysdale, Chartered v. United States,*
    491 U.S. 617 (1989)........................................................................................11

*Executive Risk Indemnity, Inc. v. Integral Equity, L.P.,*
    No. 3:03-CV-0269, 2004 WL 438936 (N.D. Tex. March 10, 2004)....................5, 7, 8

*Federal Trade Comm'n v. Windermere Big Win Int'l, Inc.,*
    No. 98 C 8066, 1999 WL 608715 (N.D. Ill. Aug. 5, 1999).........................................11

*In re Allied Digital Techs. Corp.,*
    306 B.R. 505 (Bankr. D. Del. 2004) .........................................................................10

*In re Boston Reg'l Med. Ctr.,*
    285 B.R. 87 (Bankr. D. Mass. 2002) .........................................................................10

*In re Edgeworth,*
    993 F.2d 51 (5th Cir. 1993) ...................................................................................5, 6

*In re Equinox Oil Co., Inc.,*
    300 F.3d 614 (5th Cir. 2002) ......................................................................................6

*In re First Cent. Fin. Corp.,*
    238 B.R. 9 (Bankr. E.D.N.Y. 1999)............................................................................4

*In re GB Holdings, Inc.,*
    No. 05-42736/JHW, 2006 WL 4457350 (Bankr. D.N.J. Sept. 21, 2006).....................6

*In re Gagnon,*
    26 B.R. 926 (Bankr. M.D. Pa. 1983) ...........................................................................4

*In re Louisiana World Exposition, Inc.,*
    832 F.2d 1391 (5th Cir. 1987) ...........................................................................6, 7, 10

*In re Pintlar Corp.,*
    124 F.3d 1310 (9th Cir. 1997) .....................................................................................6

*In re Stevens,*
    130 F.3d 1027 (11th Cir. 1997) ...................................................................................4

*In re Worldcom, Inc. Securities Litigation Master File,*
    354 F. Supp. 2d 455 (S.D.N.Y. 2005)................................................................6, 7, 10

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*S.E.C. v. College Bound, Inc.,*
    849 F. Supp. 65 (D.D.C. 1994) .................................................................9

*S.E.C. v. Rhetorik,*
    755 F. Supp. 1018 (S.D. Fla. 1990) ..........................................................9

*United States v. Balsys,*
    524 U.S. 666 (1998) .................................................................................9

*United States v. Brown,*
    988 F.2d 658 (6th Cir. 1993) ...............................................................9, 12

*United States v. Cacho-Bonilla,*
    206 F. Supp. 2d 204 (D.P.R. 2009) ........................................................11

*United States v. Dixon,*
    835 F.2d 554 (5th Cir. 1987) .................................................................11

*United States v. Monsanto,*
    491 U.S. 600 (1989) ...............................................................................11

*United States v. Payment Processing Ctr., LLC,*
    439 F. Supp. 2d 435 (E.D. Pa. 2006) ............................................11, 12, 13

*United States v. Petters,*
    Civ. No. 03-5348, 2009 WL 803482 (D. Minn. March 25, 2009).............11, 12, 13

*United States v. Quadro Corp.,*
    916 F. Supp. 613 (E.D. Tex. 1996) ...........................................................9

*United States v. Their,*
    801 F.2d 1463 (5th Cir. 1986) ...............................................................13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION | § § § | |
| Plaintiff, | § § | |
| | § | CIV. ACTION NO.3-09CV0298-N |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § | |
| Defendants. | § | |

DEFENDANT R. ALLEN STANFORD'S NOTICE OF JOINDER IN DEFENDANT
LAURA PENDERGEST-HOLT'S MOTION FOR CLARIFICATION AND
DEMONSTRATION OF THE EXISTENCE OF PERSONAL ASSETS
UNTAINTED BY THE ALLEGED FRAUD

TO THE HONORABLE JUDGE:

COMES NOW DEFENDANT R. ALLEN STANFORD ("Mr. Stanford"), and pursuant

to Fed. R. Civ. P. 7 and Local Rule 7.1, joins in Defendant Laura Pendergest-Holt's Expedited

Motion for Clarification that Receivership Order does not Apply to D&O Policy Proceeds, or,

Alternatively, for Authorization of Disbursement of D&O Policy Proceeds, and Brief in Support

[Doc. No. 538].[1]

Pursuant to the Court's Order of July 1, 2009 [Doc. No. 544], Mr. Stanford also

respectfully provides herein a demonstration of the "existence of personal assets unrelated to and

untainted by the alleged fraud." [Doc. No. 544].

---

[1] Currently pending before the Court is the Stanford Defendants' Motion to Stay Receivership Proceedings Pending Motion to Disqualify Baker Botts and brief in support, filed on June 16, 2009. [Doc. Nos. 480, 481]. The Receiver filed his Response in Opposition to the Motion to Stay on July 2, 2009 [Doc. No. 554], and the Stanford Defendants' Reply Memorandum is due on or before July 17, 2009. While Mr. Stanford continues to believe that a stay of these proceedings is appropriate, he is nevertheless joining in the Pendergest-Holt Motion so as not to be deemed to have waived any arguments in support of the relief sought therein.

1

## PROCEDURAL BACKGROUND

1.    On March 12, 2009, this Court entered its Order granting a Preliminary Injunction and Other Equitable Relief as to R. Allen Stanford (hereinafter, the "Preliminary Injunction"). [Doc. No. 159].

2.    On April 19, 2009, Mr. Stanford filed his Motion to Modify Preliminary Injunction Order to Permit Payment of Reasonable Attorneys' Fees with a Request for Emergency Consideration, and a memorandum in support of that motion. [Doc. Nos. 318, 319].

3.    On June 30, 2009, Defendant Laura Pendergest-Holt filed her Expedited Motion for Clarification that the Receivership Order does not apply to D&O insurance policy proceeds or, alternatively, for authorization of disbursement of D&O insurance policy proceeds. [Doc. No. 538] (hereinafter the "Pendergest-Holt Motion").[2]

4.    On July 1, 2009, this Court denied the Motion to Modify, and instead invited Mr. Stanford "to demonstrate the existence of personal assets unrelated to and untainted by the alleged fraud. [Doc. No. 544].

## RELEVANT FACTUAL BACKGROUND

5.    On May 19, 2009, counsel for the Underwriters who issued certain insurance policies to Defendant Stanford Financial Group Company and its affiliated entities (policies under which Mr. Stanford is an "insured") communicated to Mr. Stanford's counsel that the Underwriters agreed, under a reservation of rights, to "pay the reasonable legal representation expenses [Mr.

---

[2] Mr. Stanford incorporates herein by reference the factual and legal arguments advanced in the Pendergest-Holt Motion, specifically including, without limitation, the Pendergest-Holt Motion's definition of "D&O Policies" to include each of: (1) Lloyd's D&O and Company Indemnity Policy Number 576/MNK558900; (2) Lloyd's Financial Institutions Crime and professional Indemnity Policy No. 576/MNA85300; and (3) Lloyd's Excess Blended "Wrap" Policy No. 576/MNA831400, copies of which are attached to the Pendergest-Holt Motion at App. 1-152. References to exhibits appended to the Pendergest-Holt Motion are cited herein as "Pendergest-Holt App. __."

528175

Stanford] incurs or has incurred in connection with his official SEC examination pursuant to Article II." App. 1-3.[3]

6.     On June 1, 2009, counsel for the Underwriters again communicated to Mr. Stanford's counsel that the Underwriters will also "consent to [Mr. Stanford's] request to incur reasonable Costs, Charges and Expenses in defense of the various civil proceedings listed above...." App. 5.[4]

7.     On June 18, 2009, a criminal indictment was filed against, *inter alia*, Mr. Stanford. *See United States v. Stanford, et al.*, Cr. No. H-09-342, U.S. District Court for the Southern District of Texas (Houston Division), Indictment [Doc. No. 1].

8.     By letter dated June 19, 2009, the Underwriters' counsel requested that Mr. Stanford's attorneys in the civil and criminal proceedings "submit an estimated budget for [Mr. Stanford's] defense costs within ten business days." App. 9.

9.     Subsequently (prior to their receipt of the requested defense-cost budget), by letter dated June 25, 2009, the Underwriters reversed course, and communicated to Mr. Stanford's counsel that they "learned for the first time [on June 24, 2009" that the Receiver "now takes the position that all proceeds under the policies [including those to which Mr. Stanford, as an Insured under those policies, is entitled as defense costs] ... are 'Receivership Assets' as defined by the Court's February 17, 2009 order." App. 25.  As a result of the Receiver's assertions, the Underwriters advised that no payments will be made under the insurance policies absent further ruling from this Court. App. 25-26.  Thus, the Underwriters unilaterally withdrew their previously-issued

---

[3] References to exhibits included within the Appendix to this Notice are cited herein as "App. __."

[4] Among the "various civil proceedings" identified by counsel for the Underwriters is the instant litigation. *Id.* at p. 2.

reservation-of-rights letters and rescinded their agreement to provide Mr. Stanford with a defense in both the criminal and civil proceedings and related investigations against him.

10.     Mr. Stanford is currently without any means to defend himself in these pending proceedings and investigations. Indeed, in a recent hearing in the criminal case, Judge David Hittner stressed the importance of a resolution to the issue of representation and payment of Mr. Stanford's attorneys' fees "sooner rather than later," echoing Mr. Stanford's concern about his inability to pay for his representation and defense.

## ARGUMENT AND AUTHORITIES

### I.     Mr. Stanford Joins in the Pendergest-Holt Motion

#### A.     The proceeds of the D&O Policies are not property of the receivership estate.

Mr. Stanford agrees with Defendant Pendergest-Holt that the proceeds of the D&O Policies to which Ms. Pendergest-Holt and Mr. Stanford have a contractual right are "not [ ] receivership asset[s], not subject to the Receiver's control, and [are] not otherwise subject to the Court's order freezing Defendant's assets." Pendergest-Holt Motion, at 5.

In support of her motion, Defendant Pendergest-Holt Motion correctly relies on Fifth Circuit precedent holding that the relevant question is "not who owns the policies, but who owns the liability proceeds." *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987); *see also In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2002) ("The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to [the] debtor when the insurer pays a claim"); *In re Stevens*, 130 F.3d 1027, 1029 (11th Cir. 1997) ("The fact that the insurance policy is property of the estate, however, does not necessarily mean that the proceeds from that policy are also property of the

4

estate"); *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) ("[O]wnership of a policy does not inexorably lead to ownership of the proceeds.").[5]

Here, the policies at issue promise payment of defense costs incurred by the policies' insureds in defending claims potentially falling within the policies' coverage. The Underwriters acknowledge their promise, which they initially agreed to fulfill to Mr. Stanford. App. 2, 5. Moreover, the Underwriters additionally conceded, by agreeing to pay Mr. Stanford's defense costs incurred in the civil and criminal proceedings against him, that the corporate-entity-insureds hold no more rights to defense costs payable under the policies than does Mr. Stanford. The Receiver, however, has nevertheless now asserted "superseding rights" to *all* of the policies' proceeds, in contravention of the policies' terms and applicable law.

Such "superseding" rights to the policies proceeds have simply been concocted by the Receiver and are unsupportable by any language in the policies governing the contractual agreement between the Underwriters and their insureds. *See In re GB Holdings, Inc.*, No. 05-42736/JHW, 2006 WL 4457350, at *3 (Bankr. D.N.J. Sept. 21, 2006) ("The [corporate entities'] right to receive proceeds, as well as the right of the directors and officers to the payment of defense costs, are subject to the contractual provisions and restrictions of the insurance policy."). Indeed, one can scour the policies at issue here and will find no language granting the corporate-entity insureds over which the Receiver has assumed control any rights under the policies superior to the individual directors and officers. *See* Pendergest-Holt App. 1-152.

Like the policies at issue in the *GB Holdings* case, the D&O Policy here contains separate insuring agreements with respect to the corporate-entity insured and its directors and officers.

---

[5] In *Executive Risk Indemnity, Inc. v. Integral Equity, L.P.*, No. 3:03-CV-0269, 2004 WL 438936 (N.D. Tex. March 10, 2004), Judge Fish noted that the treatment of liability insurance proceeds in the context of bankruptcy was closely related to the issue of whether advancement of defense expenses to an insured was consistent with a receivership order. *Id.* at *13 ("Texas courts have held that the reasoning used in bankruptcy cases is applicable to cases involving receiverships.").

528175

"Thus, both the [receivership] estate and the ... directors and officers may look to the D&O Policy for applicable coverage." *Id.*, at *3. Under the D&O Policy, the Underwriters are required to "pay Costs, Charges and Expenses [defined by the policy to mean 'all reasonable and necessary legal fees and expenses incurred by the Directors and Officers or by the Company in defense of any Claim....']" as the bills are presented, subject only to the condition that such payments will occur "no more than once every 60 days." Pendergest-Holt App. 16. Although payment of such defense costs will reduce the limit of liability available to pay any other insured's potential claims under the D&O Policies, "that fact alone cannot elevate the [receiver's] interest in the policy proceeds above the interest of the other insureds, the [...] directors and officers." *Id.*, at *4 (citing *In re Gagnon*, 26 B.R. 926, 928 (Bankr. M.D. Pa. 1983) ("[T]he estate's legal and equitable interests in property rise no higher than those of the debtor."); *In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993) ("[W]hen the debtor has no legally cognizable claims to the insurance proceeds, those proceeds are not property of the estate.") *see also In re Pintlar Corp.*, 124 F.3d 1310, 1311 (9th Cir. 1997) (holding that the side-A portion of a D&O insurance policy that did not contain direct entity coverage was not "property of the estate," such that litigation concerning its scope must be stayed during the debtor's bankruptcy proceedings).

This is consistent with other courts' holdings that defense expenses are to be paid to insured directors and officers as they are incurred. Indeed, the United States District Court for the Southern District of New York reached a similar conclusion in *In re Worldcom, Inc. Securities Litigation Master File*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005), also dealing with a D&O policy that contained a duty to pay defense expenses both to the corporate-entity insured and its directors and officers. The *Worldcom* court granted a preliminary injunction requiring the

6

advancement of defense costs to the insured officers and directors of Worldcom during the pendency of the proceedings against them, holding that "under a D&O policy with a duty to pay defense costs provision, 'the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred.' [...] to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give." *Id.*, at 465. Judge Fish, in *Executive Risk Indemnity, Inc.*, likewise acknowledged that an insured incurs liability upon receipt of a bill for legal fees, thus triggering the right to immediate disbursement from the policy. 2004 WL 438936, at *14 (finding "coverage for 'reasonable legal fees and expenses incurred … in the defense or appeal of any Claim' and for 'damages, judgments, awards, settlements and Defense Expenses which an Insured is *legally obligated* to pay as a result of a Claim")) (emphasis provided in original).

For these reasons and those more fully set forth in the Pendergest-Holt Motion, Mr. Stanford respectfully requests that this Court confirm that the D&O Policy proceeds do not constitute Receivership Assets, and to further confirm that the Underwriters' payment of Mr. Stanford's defense costs in the various civil and criminal proceedings and investigations will not violate the Receivership Order, the Preliminary Injunction Order, or any applicable receivership laws.

**B.     The proceeds of the company-indemnity coverage parts of the applicable D&O Policies are not property of the receivership estate.**

Not only do the D&O Policies contain a duty to pay the defense expenses of the Stanford entities' directors and officers, but they also contain a duty to indemnify the companies comprising a part of the receivership estate. *See e.g. In re Worldcom,* 354 F. Supp. 2d 455 (also dealing with a D&O policy that contained a duty to pay defense expenses both to the corporate-entity insured and its directors and officers).

7

The receivership estate is not fully entitled to the company-indemnity proceeds because such proceeds do not flow to the receivership estate, but rather, to third parties, such as Mr. Stanford's counsel. *See Executive Risk Indemnity, Inc.*, 2004 WL 438936. Under *In re Equinox Oil Co., Inc.*, 300 F.3d 614 (5th Cir. 2002), the Fifth Circuit stated, "the central question when determining whether insurance proceeds associated with a policy of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to [the] debtor when the insurer pays a claim." *Id.* at 618. Furthermore, bankruptcies and receiverships differ in the way ownership of assets are treated; as a notable example, in bankruptcy, title of the assets transfers to the estate, whereas in a receivership, title remains with the original property owner. In the instant litigation, the proceeds of the company-indemnity coverage parts of the D&O Policies are payable to the Stanford entities' defense counsel and successful third party claimants, not to the companies comprising the receivership estate.

## II.    Mr. Stanford Responds to the Court's Invitation for a Demonstration of Assets Untainted by the Alleged Fraud

In its July 1, 2009 Order [Doc. No. 544], this Court denied Mr. Stanford's Motion to Modify the Preliminary Injunction Order to Permit Payment of Reasonable Attorneys' Fees, grounding its decision on the fact that Mr. Stanford "has not yet provided an accounting of personal assets as required in the Court's Temporary Restraining Order of February 17, 2009" and further invited from Mr. Stanford a demonstration of "the existence of personal assets unrelated to and untainted by the alleged fraud." *Id.*[6]

---

[6] Mr. Stanford assumes that the Court's invitation to make such a demonstration does not intend to compel any additional "accounting" so as to encroach upon Mr. Stanford's Fifth Amendment privilege against self-incrimination applicable "in any proceeding, civil or criminal, … in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding," (*United States v. Balsys*, 524 U.S. 666, 672 (1998) (citations and quotations omitted)), and which equally protects him from a more general disclosure of information that might be used against him in a criminal proceeding. *See, e.g., S.E.C. v. College Bound, Inc.*, 849 F. Supp. 65, 67 (D.D.C. 1994) ("This right against self-incrimination includes protection against forced creation of new, incriminating documents."). Appended to the

8

Without agreeing that Mr. Stanford bears the burden of identifying "personal assets untainted by fraud,"[7] Mr. Stanford submits that the insurance policy proceeds to which he is entitled as an Insured (because he is incurring attorneys' fees and costs in defense of claims potentially covered by the policies and triggering the Underwriters' admitted duty to defend), as discussed *supra*, constitute at least one category of such "personal assets unrelated to and untainted by fraud."

Most fundamentally, the D&O Policy proceeds at issue here are not proceeds created or deposited by Allen Stanford at all, and thus cannot be among the allegedly "tainted" assets. Rather, the policy proceeds have existed in the Underwriters' bank accounts that, presumably, represent earnings of the Underwriters which have been set aside for fulfilling their contractual duties to pay defense costs to their insureds.

Thus, assuming *arguendo* that the Court finds that the policy proceeds are Receivership Assets, the Court should nevertheless order the Underwriters to pay Mr. Stanford's defense costs as those policies require.

---

SEC's Supplemental Appendix in Support of Application for Preliminary Injunction and Other Emergency Relief on March 11, 2009 [Doc. No. 142] is the Declaration of Robert Allen Stanford Asserting Fifth Amendment Right Against Self-Incrimination, in which Mr. Stanford stated that he "decline[s] to testify or provide an accounting, and will continue to decline to testify, provide an accounting, or produce any documents related to the matters set forth in the Commission's Complaint..." In the face of Mr. Stanford's Declaration, to compel him to produce the very documents that could potentially incriminate him would be a violation of his Fifth Amendment rights. *College Bound, Inc.*, 849 F. Supp. at 67 (modifying order freezing defendants' assets "so as to avoid requiring defendants to create evidence in violation of their Fifth Amendment rights against self-incrimination"); *S.E.C. v. Rehtorik*, 755 F. Supp. 1018, 1019 (S.D. Fla. 1990) ("To compel him to 'speak' in this civil proceeding by ordering an accounting of alleged illicit funds would directly impinge [defendant's] right against self-incrimination.").

[7] The SEC bears the burden to show that the assets it intended to freeze were related to the alleged fraud. *See, e.g., United States v. Brown*, 988 F.2d 658, 664 (6th Cir. 1993) ("The court may freeze only those assets related to the alleged fraud."); *United States v. Quadro Corp.*, 916 F. Supp. 613, 619 (E.D.Tex. 1996) ("Freezing assets which the government did not show by preponderance of the evidence to be proceeds from a fraudulent scheme would exceed the scope of the injunction."). In this case, the SEC has ignored its burden and has made no effort to delineate which, if any, funds were tainted by the alleged misconduct, nor place reasonable limits on its requested asset freeze.

528175

**A.     The policies were purchased for the protection of Directors and Officers when faced with claims such as those Mr. Stanford faces here.**

If payments are not authorized, Mr. Stanford will be prevented from accessing the proceeds of D&O insurance policies that were purchased for his protection. *See, e.g., In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."); *In re Boston Reg'l Med. Cent.*, 285 B.R. 87, 92 (Bankr. D. Mass. 2002) ("If the costs of defense are not disbursed in time to provide the defense, a significant part of their value and of their function will have been lost.  Time is of the essence."); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004) ("[W]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense … and may suffer substantial and irreparable harm."); *In re Worldcom*, 354 F. Supp. 2d at 465 ("to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give.") (internal citations and quotations omitted).

**B.     There has been no finding of wrongdoing on Mr. Stanford's part.**

The Preliminary Injunction issued by the Court has now been in place for over three (3) months.  Mr. Stanford's legal fees are mounting, not only in this case, but also in the just-commenced and fast-paced criminal proceedings.[8]  Notably, without any wrongdoing established as a matter of fact or law in any of the proceedings against Mr. Stanford, he is left without adequate means to defend himself against the egregious allegations asserted against him.  As the Fifth Circuit recognized in a case similarly postured:

---

[8] Indeed, the criminal trial is scheduled to begin in less than two months, on August 25, 2009, with deadlines set for motions filing and responses on July 15, 2009 and July 24, 2009, respectively. *United States v. Stanford*, Cr. No. H-09-342, U.S. District Court for the Southern District of Texas (Houston Division), Docket Control Order [Doc. No. 43].

528175

> [T]his suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here.

*United States v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) (reversing that part of the trial court's order establishing defendant's personal expense and attorney's fees allowance at $3,500 per month, and requiring "some kind of an allowance … to permit each defendant to pay reasonable attorneys' fees").

Courts around the country agree that a defendant is entitled to an allowance for reasonable attorneys' fees. *See United States v. Petters*, No. 03-5348, 2009 WL 803482, at *2 (D. Minn. March 26, 2009) (recognizing that "a district court has the authority to release receivership funds in the interest of fundamental fairness if wrongdoing is not yet proven," and authorizing payment for attorney fees reasonably and necessarily incurred "in the interest of providing [defendant] with the opportunity for a full and fair hearing on the merits"); *United States v. Payment Processing Center, LLC*, 439 F. Supp. 2d 435, 440-41 (E.D. Pa. 2006) (authorizing release of restrained property to pay individual defendants' legal fees where "wrongdoing is not yet proven when the fee application is made"); *Federal Trade Comm'n v. Windermere Big Win Int'l, Inc.*, No. 98 C 8066, 1999 WL 608715, at *6 (N.D. Ill. Aug. 5, 1999) (authorizing individual defendants "to pay reasonable legal fees from their assets pending trial").[9]

---

[9] This is not a case of forfeiture, where the title of the seized property transferred to the government. *See United States v. Monsanto*, 491 U.S. 600 (1989); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989). Rather, Mr. Stanford still maintains ownership of the assets, and the freeze acts only as an equitable and temporary restraint upon his property. Although the Supreme Court in *Monsanto* and *Caplin & Drysdale* held that criminal defendants have no constitutional right to legal fees drawn from forfeited funds, *see id.* at 627, that holding "rested on the premise that Congress declared that title to forfeitable property vests with the government at the time the underlying crime was committed (the 'relation back' doctrine)." *Payment Processing Ctr.*, 439 F. Supp. 2d at 441. By contrast, assets frozen pursuant to 18 U.S.C. § 1345 remain the property of the accused. *Payment Processing Ctr.*, 439 F. Supp. 2d at 441. The reasoning at play in *Monsanto* and *Caplin & Drysdale* is thus inapplicable to the

528175

In enacting 18 U.S.C. § 1345, Congress imparted the district courts with the power to freeze assets in order to prevent their "wrongful disposition," *United States v. Brown*, 988 F.2d 658, at 652 (6th Cir. 1993) (citing H.R. Rep. No. 101-681(1), 101st Cong., 2d Sess. 74, *reprinted in* 1990 U.S. Code Cong. & Admin. News 6472, 6584)), not to prevent their use to mount a defense to the very allegations that froze the assets in the first place. The injunction is not a catch-all to convert the Mr. Stanford's property into the property of the government or of the receivership. Rather, "[t]he purpose of freezing assets in a receivership under 18 U.S.C. § 1345 is to preserve the status quo and prevent assets from being dissipated or diverted." *Petters*, 2009 WL 803482, at *2. As such, the court in *Petters* observed:

> [The defendant] has pleaded not guilty, and has the benefit of the presumption of innocence. He faces potential penalties that are effectively life imprisonment if convicted. He is entitled to quality legal representation as he challenges the Government's case against him. The allegations of massive fraud necessitate large scale document review, and the complexity of the case will require extensive time and expertise by defense counsel.

*Id.*, at *3.[10] Mr. Stanford faces precisely the same situation, and it simply cannot be said that his desire to defend himself from the prospect of serving jail and/or massive civil penalties is an attempt to "dissipate" funds. Indeed, according to the Fifth Circuit:

> [T]he government errs when it contends that exempting from restrained sufficient assets to pay reasonable attorneys fees and necessary living expenses allows the defendant to benefit economically from criminal proceeds ... Expenditures the defendant must make to keep himself and his dependants alive and to secure competent counsel to prove his innocence or protect his procedural rights should

---

present criminal proceedings against Mr. Stanford. The government can reach no further than its statutory authority. *E.g., United State v. Cacho-Bonilla*, 206 F. Supp. 2d 204 (D.P.R. 2009) (holding that the government's attempt to extend the receivership beyond the scope authorized by the specific terms of § 1345 "was not substantially justified"). As the court explained in *Payment Processing Ctr.*, the Supreme Court's "rationale does not merit denying a defendant in a § 1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the § 1345 complaint has been resolved on the merits." 439 F. Supp. at 440-41; *see also Petters*, 2009 WL 803482, at *3.

[10] The *Petters* court further recognized that "[t]he threshold of proof required to enter the TRO and stipulated to in the Order for Preliminary Injunction does not rise to the level of proof necessary to adjudicate the criminal claims on their merits." *Id.* at *4.

12

not be considered incentives to rime. *The notion that a defendant would commit criminal acts to accumulate monies or property* in order to pay for necessary food, clothing and shelter while he is being tried or in order to pay a reasonable fee to the attorney he chooses to assist in his defense is sophistry.

*United States v. Their*, 801 F.2d 1463, 1474-75 (5th Cir. 1986), *mod. on den. of reh'g*, 809 F.2d 249 (1987) (emphasis added).

### C.     Mr. Stanford has no other means of funding a defense.

When determining whether to release assets for payment of attorneys' fees, court also consider the defendant's ability to fund a defense. *Petters*, 2009 WL 803482, at *4; *Payment Processing Ctr.*, 439 F. Supp. 2d at 440; *see also Dixon*, 835 F.2d at 565 (requiring a defendant to be "able to show that he cannot pay them from new or exempt assets").

Because Mr. Stanford is now being detained pending his criminal trial and all of his property is subject to the receivership, this Court may be satisfied "that [Mr. Stanford] can secure the services of an attorney only if assets subject to the freeze order are released" (*Dixon* 835 F.2d at 565), and no further showing of his inability to fund a defense is necessary. *Petters*, 2009 WL 803482, at *4 ("[B]ecause Defendant Petters is incarcerated and all of his property is subject to the receivership, the Court finds he has no other means of funding a defense.").

### CONCLUSION

For the foregoing reasons and those set forth in the Pendergest-Holt Motion, Mr. Stanford respectfully joins in Defendant Pendergest-Holt's request for relief and asks the Court (1) clarify that the proceeds of the D&O Policies are not property of the receivership estate, and that Underwriters may pay defense costs and expenses incurred by Mr. Stanford without violating this Court's receivership order, any other order of this Court, or applicable receivership law; (2) clarify that the proceeds of the company-indemnity coverage parts of the D&O Policies are not property of the receivership estate, and that Underwriters may pay defense costs and expenses

13

528175

incurred by the Companies without violating this Court's receivership order, any other order of this Court, or applicable receivership law; (3) alternatively, in the event the Court determines that the proceeds of the D&O Policies are part of the receivership estate, that the Court authorize the payment of defense costs to Mr. Stanford's counsel in accordance with the terms and conditions of the D&O Policies; (4) that the Court hear oral argument on this matter; and (5) that the Court grant Mr. Stanford such other and further relief to which he may be justly entitled.

Respectfully submitted,

_/s/ Ruth Brewer Schuster_

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway, Ste. 2360
Houston, TX 77027
(713) 622-9700

Ruth Brewer Schuster
Texas Bar No. 24047346
1201 Connecticut Ave, NW, Ste. 500
Washington, DC 20036
(202) 683-3160

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on July 6, 2009.

_/s/Ruth Brewer Schuster_

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION | § § § | |
| Plaintiff, | § § | |
| | § | CIV. ACTION NO.3-09CV0298-N |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § | |
| Defendants. | § | |

**DEFENDANT R. ALLEN STANFORD'S NOTICE OF JOINDER IN DEFENDANT
LAURA PENDERGEST-HOLT'S MOTION FOR CLARIFICATION AND
DEMONSTRATION OF THE EXISTENCE OF PERSONAL ASSETS
UNRELATED TO AND UNTAINTED BY THE ALLEGED FRAUD**

## APPENDIX

528204

# TABLE OF CONTENTS

**Page**

May 19, 2009 Letter from Underwriters' Counsel ...................................................................1

June 1, 2009 Letter from Underwriters' Counsel ...................................................................4

June 19, 2009 Letter from Underwriters' Counsel .................................................................9

June 25, 2009 Letter from Underwriters' Counsel ...............................................................15

Respectfully submitted,

*/s/ Ruth Brewer Schuster*

Michael D. Sydow       Ruth Brewer Schuster
Sydow & McDonald       Texas Bar No. 24047346
4400 Post Oak Parkway, Ste. 2360       1201 Connecticut Ave, NW, Ste. 500
Houston, TX 77027       Washington, DC 20036
(713) 622-9700       (202) 683-3160

# CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent those indicated as non-registered participants on July 6, 2009.

*/s/Ruth Brewer Schuster*

528204

# AKIN GUMP
## STRAUSS HAUER & FELD LLP
**▬▬▬▬▬** Attorneys at Law

**BARRY A. CHASNOFF**
210.281.7001/fax: 210.224.2035
bchasnoff@akingump.com

**DANIEL MCNEEL LANE, JR.**
210.281.7070/fax: 210.224.2035
nlane@akingump.com

May 19, 2009

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Paul Flack
Nicken Keeton Lawless Farrell Flack, LLP
600 Travis Street, Suite 7500
Houston, TX  77002

Dick DeGuerin
DeGuerin & Dickson
1018 Preston Avenue
Houston, TX  77002

> **Re:  Stanford Group Company and Stanford Financial Group Company**
> **D&O, F.I. Professional Indemnity, and Excess Blended Wrap**
> **Policy No. D&O:      MNK558900**
> **Policy No. PI:         MNA851300**
> **Policy No. Excess:   MNA831400**
> **Effective:             August 15, 2008 to August 15, 2009**
> **Claimants:            Allan Stanford**

Dear Counsel:

As you know from previous communications, we represent the Underwriters who issued certain insurance policies to Stanford Financial Group Company and its affiliated entities ("Stanford"), including the Directors and Officers' Liability and Company Indemnity Policy No. 576/MNK558900 (the "D&O Policy"), the Financial Institutions Crime and Professional Indemnity Policy No. 576/MNA851300 (the "PI Policy") and the Excess Blended "Wrap" Policy No. 576/MNA831400 (the "Excess Policy").

We understand that your client, Allan Stanford, has been issued a subpoena by the SEC or otherwise asked to speak with the SEC in connection with its ongoing investigation of various Stanford entities.  We also understand that Allan Stanford has retained you to represent him in connection with responding to the SEC's request, and that you have requested Underwriters agree to pay the legal expenses associated with that representation.

**Appendix 1**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

May 18, 2009
Page 2

────────────────────

As we have advised, we are currently evaluating each of the cases against Stanford and/or any of its officers, directors, or employees as quickly as possible in order to make a determination of coverage and to assess the extent, if any, of Underwriters' obligations. Due to the size and complexity of this matter, Underwriters are not yet in a position to make a final determination of coverage with respect to your client. Therefore, at this time, Underwriters simply reserve all rights under any potentially applicable policy, including the D&O Policy, PI Policy, and Excess Policy, subject to further investigation.

Although we have not yet made a final determination of coverage, Underwriters will agree to pay the reasonable legal representation expenses your client incurs or has incurred in connection with his official SEC examination pursuant to Article II. Section A of the D&O Policy, subject to a complete reservation of rights. Article II. Section A provides:

> The Underwriters shall pay on behalf of the Directors and Officers the cost of legal representation incurred with the prior written consent of the Underwriters arising out of attendance of any Director or Officer at any official investigation, examination, enquiry or other proceeding ordered or commissioned during the Policy Period by any official body or institution that is empowered to investigate the affairs of the Directors and Officers where the Directors and Officers act in a capacity covered by this Policy.[1]

We do note, however, that the allegations contained in the Securities and Exchange Commission's Original Complaint filed in the Northern District of Texas on February 17, 2009 against various Stanford entities and directors potentially implicate several of the D&O Policy's terms, conditions, and exclusions. Therefore, we simply note at this time that Exclusion T precludes coverage for any Loss resulting from any claim arising "as a result of or in connection with any act or acts (or alleged act or acts) of Money Laundering."[2] Art. IV., cl. T. Exclusion I precludes coverage for "Loss resulting from any Claim brought about or contributed to in fact by: "(a) any dishonest, fraudulent or criminal act or omission by the Directors or Officers or the Company, or (b) any personal profit or advantage gained, by any of the Directors and officers or the Company to which they were not legally entitled . . . as determined by a final adjudication." Art. IV. cl, I. Finally, Exclusion L precludes coverage for Loss resulting from any Claim:

────────────────────

[1] Art. II., cl. A.

[2] The Policy defines "Money Laundering" to include, "the concealment, or disguise, or conversion, or transfer, or removal of Criminal Property." Art. III, cl. I. In turn, "Criminal Property" means "property which constitutes a benefit obtained from or as a result of or in connection with criminal conduct or represents such a benefit." Art. III., cl. J.

**Appendix 2**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━ Attorneys at Law

May 18, 2009
Page 3

━━━━━━━━━━━━━━━━

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way relating to any act, error or omission in connection with the performance of any professional services by or on behalf of the Company for the benefit of any other entity or person.[3]

Accordingly, Underwriters hereby reserve all rights under any potentially applicable policy's terms, conditions, and exclusions, including the exclusions set forth above, subject to further investigation. The discussion herein of specific terms, conditions and exclusions should not be interpreted as a waiver by Underwriters of any other applicable terms, conditions or exclusions in the D&O Policy, PI Policy, or any other applicable policy. Additionally, our continued investigation into this matter should not be construed as a waiver of any of the rights which the Underwriters may have under any applicable policy, nor as an admission of liability on the part of the Underwriters. Finally, this letter should not be construed as a waiver of any prior reservation of rights which Underwriters may have issued to your client.

We look forward to discussing this matter with you at your earliest convenience.

Best regards,

Barry A. Chasnoff
Daniel McNeel Lane Jr.

━━━━━━━━━━━━━━━━

[3] Art. IV. cl, L.

6365751

**Appendix 3**

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

**Certified Article Number**

7160 3901 9849 2626 6667

**SENDERS RECORD**

**Certified Article Number**

7160 3901 9849 2626 6645

**SENDERS RECORD**

**BARRY A. CHASNOFF**
210.281.7001/fax: 210.224.2035
bchasnoff@akingump.com

**DANIEL MCNEEL LANE, JR.**
210.281.7070/fax: 210.224.2035
nlane@akingump.com

June 1, 2009

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**Certified Article Number**

7160 3901 9849 2626 6652

**SENDERS RECORD**

Paul Flack
Nicken Keeton Lawless Farrell Flack, LLP
600 Travis Street, Suite 7500
Houston, TX  77002

Dick DeGuerin
DeGuerin & Dickson
1018 Preston Avenue
Houston, TX  77002

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway Suite 2360
Houston, TX  77027

Re:  **Stanford Group Company and Stanford Financial Group Company**
**D&O, F.I. Professional Indemnity, and Excess Blended Wrap**
**Policy No. D&O:**    **MNK558900**
**Policy No. PI:**    **MNA 851300**
**Policy No. Excess:**    **MNA831400**
**Effective:**    **August 15, 2008 to August 15, 2009**
**Claimants:**    **R. Allan Stanford**

Dear Counsel:

As you know from previous communications, we represent the Underwriters who issued certain insurance policies to Stanford Financial Group Company and its affiliated entities ("Stanford"), including the Directors and Officers' Liability and Company Indemnity Policy No. 576/MNK558900 (the "D&O Policy"), the Financial Institutions Crime and Professional Indemnity Policy No. 576/MNA851300 (the "PI Policy") and the Excess Blended "Wrap" Policy No. 576/MNA831400 (the "Excess Policy").

We understand that that on February 17, 2009, the SEC filed a Complaint against Allan Stanford, James Davis, Laura Pendergest-Holt and various Stanford entities alleging several violations of federal securities laws relating to an alleged Ponzi scheme perpetrated by Stanford's top management.  Several investors have since filed individual and class action lawsuits against Stanford entities as well as the three directors alleging various causes of action

**Appendix 4**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━ Attorneys at Law

June 1, 2009
Page 2

related to the purported fraudulent scheme.[1]  We understand that Mr. Stanford has retained you
to represent him in those civil proceedings, and that you have requested Underwriters' consent to
incur defense costs in connection with those proceedings.

As we have advised, we are currently evaluating each of the cases against Stanford and/or
any of its officers, directors, or employees as quickly as possible in order to make a
determination of coverage and to assess the extent, if any, of Underwriters' obligations.  Due to
the size and complexity of this matter, Underwriters are not yet in a position to make a final
determination of coverage with respect to your client.  Therefore, at this time, Underwriters
simply reserve all rights under any potentially applicable policy, including the D&O Policy, PI
Policy, and Excess Policy, subject to further investigation.

Although we have not yet made a final determination of coverage, Underwriters will
consent to your client's request to incur reasonable Costs, Charges and Expenses[2] in defense of
the various civil proceedings listed above pursuant to Article VI. Section B of the D&O Policy,
subject to a complete reservation of all rights.  Article VI. Section B of the D&O Policy
provides:

> It shall be the duty of the Directors and Officers or the Company and not the duty
> of the Underwriters to defend Claims, provided that no Costs, Charges or
> Expenses shall be incurred without the Underwriter's prior written consent, such
> consent not to be unreasonably withheld.  In the event of such consent being
> given, and subject to all other terms and provisions of the Policy including but not
> limited to Article V of this Policy, the Underwriters shall pay Costs, Charges and
> Expenses no more than once every 60 days.[3]

We do note, however, that the SEC's allegations against Mr. Stanford, as well as the
allegations in the various civil complaints, potentially implicate several of the terms, conditions,

---

[1] Those other civil lawsuits include: *Jerry Adams, et. al., v. Stanford Group Co. et. al* (Northern District of
Texas); *Jerry Adams, et. al., v. Stanford Group Co. et. al* (Southern District of Texas); *Sandra Allen, et. al., v.
Stanford Group Co., et. al; John Cohran, et. al., v. Stanford Int'l Bank, Ltd., et. al; Robert Conte, et. al., v. Stanford
Group Co., et. a.; John Dahler, Trustee, v. Stanford Group Co., et. al; Charles M. Gillis, et. al., v. Stanford Group
Co. et. al; Larry Hernandez, et. al., v. Stanford Financial Group Co., et. al.; James Kyle v. Stanford Int'l Bank, Ltd.,
et. al.;* and *Dynasty Furniture Manufacturing Ltd. v. Stanford Group Co., et. al.*

[2] The D&O Policy defines "Costs, Charges, and Expenses" as "all reasonable and necessary legal fees and
expenses incurred by the Directors and Officers or by the Company in defence of any claim provided however,
Costs, Charges and Expenses shall not include salaries, wages, overhead or benefit expenses associated with the
Directors and Officers or employees of the Company." Art. III., cl. D.

[3] Art. VI., cl. B.

6365065                                                                                      **Appendix 5**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

June 1, 2009
Page 3

and exclusions found in both the D&O Policy and PI Policy. Therefore, below, we note several potentially relevant provisions found in each of those policies.

## D&O POLICY'S TERMS, CONDITIONS, EXCLUSIONS

The D&O Policy requires Underwriters to pay, on behalf of the Directors or Officers, "Loss resulting from any Claim first made during the Policy Period for a Wrongful Act." Art. I, cl. A. However, the D&O Policy excludes from the definition of "Loss" "taxes, criminal or civil fines or penalties imposed by law." Art. III, cl. F.

The D&O Policy also contains several exclusions that may be relevant in light of the allegations contained in the various civil complaints. For instance, Exclusion T precludes coverage for any Loss resulting from any claim arising "as a result of or in connection with any act or acts (or alleged act or acts) of Money Laundering."[4] Art. IV., cl. T. Exclusion I precludes coverage for "Loss resulting from any Claim brought about or contributed to in fact by: "(a) any dishonest, fraudulent or criminal act or omission by the Directors or Officers or the Company, or (b) any personal profit or advantage gained, by any of the Directors and officers or the Company to which they were not legally entitled . . . as determined by a final adjudication." Art. IV. cl, I. Finally, Exclusion L precludes coverage for Loss resulting from any Claim:

> based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way relating to any act, error or omission in connection with the performance of any professional services by or on behalf of the Company for the benefit of any other entity or person.[5]

## PI POLICY'S TERMS, CONDITIONS, EXCLUSIONS

The PI Policy requires Underwriters to "reimburse the Assureds for Loss resulting from any Claim first made during the Policy Period for a Wrongful Act in the performance of Professional Services." PI Policy Art. I. However, Underwriters are only required to reimburse that Loss "upon the final disposition of any Claim." PI Policy Art. IV. cl. F.

The PI Policy also contains several Exclusions that may be applicable in light of the allegations contained in the civil complaints. For example, Exclusion K provides that Underwriters shall not be liable under the PI Policy to make any payment in connection with any

---

[4] The Policy defines "Money Laundering" to include, "the concealment, or disguise, or conversion, or transfer, or removal of Criminal Property." Art. III, cl. I. In turn, "Criminal Property" means "property which constitutes a benefit obtained from or as a result of or in connection with criminal conduct or represents such a benefit." Art. III., cl. J.

[5] Art. IV. cl, L.

**Appendix 6**

6365065

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

June 1, 2009
Page 4

───────────────

Claim "made against any of the Assureds by or at the behest of any federal or state government, governmental body or governmental agency, except when acting solely in the capacity of a customer or client of the Company or on behalf of a customer or client of the Company." PI Policy, Art. III. cl. K.

Exclusion R provides that Underwriters shall not be liable to make any payment in connection with any Claim for an Intentional Corporate or Business Policy. Moreover, the Policy provides:

"Corporate or Business Policy" as used in this Exclusion shall mean any policy which has been approved, condoned, ratified or endorsed by two or more members of the "Assured's Management"[6] and which results in:

(a)     a financial disadvantage to two or more of the Assured's Clients

and

(b)     the Assured making a financial gain to which they were not entitled, whether or not such gain was returned.[7]

Exclusion E explains that Underwriters shall not be liable for any payment in connection with any Claim "brought about or contributed to in fact by any dishonest, fraudulent or criminal act or omission or any personal profit or advantage gained by any of the Directors, Officers, and Employees to which they were not legally entitled." PI Policy, Art. III. cl. E.

Exclusion X provides that Underwriters shall not be liable for any payment in connection with any Claim "arising out of or in connection with any circumstances or occurrences known to the Assured[8] at inception of this Policy which could reasonably be expected to give rise to Loss of more than USD 100,000 under this Policy." PI Policy, Art. III. cl. X.

Exclusion S provides that Underwriters shall not be liable for any payment in connection with any Claim "arising directly or indirectly as a result of or in connection with any act or acts (or alleged act or acts) which are in breach of or constitute an offence of any money laundering legislation." PI Policy, Art. III. cl. S.

───────────────

[6] The "Assured's Management" is defined to include R. Allen Stanford, James Davis and James Stanford.

[7] PI Policy, Art. III. cl. R.

[8] For purposes of this Exclusion "Assured" means the first named Assured's General Counsel or Corporate Risk Manager.

**Appendix 7**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━ Attorneys at Law

June 1, 2009
Page 5

_____

Exclusion N explains that Underwriters shall not be liable for payment in connection with any Claim "where, and to the extent that, the Loss by reason of such Claim represents the return by the Assureds of excessive fees, commissions, costs or other charges." PI Policy, Art. III. cl. N.

Accordingly, Underwriters hereby reserve all rights under any potentially applicable policy's terms, conditions, and exclusions, including the exclusions set forth above, subject to further investigation. The discussion herein of specific terms, conditions and exclusions should not be interpreted as a waiver by Underwriters of any other applicable terms, conditions or exclusions in the D&O Policy, PI Policy, or any other applicable policy. Additionally, our continued investigation into this matter should not be construed as a waiver of any of the rights which the Underwriters may have under any applicable policy, nor as an admission of liability on the part of the Underwriters.

We would like to schedule an opportunity to speak with you in the next few days to develop an early assessment of the case and a preliminary projected defense budget.

We look forward to discussing this matter with you at your earliest convenience.

Best regards,

Barry A. Chasnoff
Daniel McNeel Lane Jr.

**Appendix 8**

6365065

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

━━━━━━━━━━━ Attorneys at Law

**BARRY A. CHASNOFF**
210.281.7001/ fax: 210.224.2035
bchasnoff@akingump.com

**DANIEL MCNEEL LANE, JR.**
210.281.7070/fax: 210.224.2035
nlane@akingump.com

June 19, 2009

**VIA CMRRR**



Paul Flack
Nicken Keeton Lawless Farrell Flack, LLP
600 Travis Street, Suite 7500
Houston, TX  77002

Dick DeGuerin
DeGuerin & Dickson
1018 Preston Avenue
Houston, TX  77002

Michael D. Sydow
Sydow & McDonald
4400 Post Oak Parkway Suite 2360
Houston, TX  77027

Re:   Stanford Financial Group – Request for Estimated Defense Budget for
R. Allan Stanford

Dear Counsel:

As you know, we represent the Underwriters who issued certain insurance policies to Stanford Financial Group Company and its affiliated entities ("Stanford"), including a Directors and Officers' Liability and Company Indemnity Policy (Policy Number 576/MNK558900) and a Financial Institutions Crime and Professional Indemnity Policy (Policy Number 576/MNA851300).

In previous correspondence, which is attached, we notified you that Underwriters agree to periodically reimburse certain of your client's defense costs subject to a full Reservation of Rights. Without waiving that Reservation of Rights, Underwriters request that you submit an estimated budget for such defense costs within ten business days. Underwriters also ask that you alert us of any material changes to your estimate of these defense costs as they arise.

**Appendix 9**

**A K I N   G U M P**
**S T R A U S S   H A U E R   &   F E L D** LLP
━━━━━━━━━ Attorneys at Law

Mr. Michael Stanley
June 19, 2009
Page 2

      For your convenience, we have attached a budget template to this letter.  Please let us know if you would like this template in electronic format.  Should you have any questions, please do not hesitate to contact us.

Very truly yours,

Barry A. Chasnoff
Daniel McNeel Lane, Jr.

**Appendix 10**

6375513 v1

**CLAIMANT NAME - LITIGATION BUDGET AS OF [INSERT DATE]**

| Rates | Attorney/Paralegal | Rate |
|---|---|---|
| | Attorney 1 - Partner | $0.00 |
| | Attorney 2 - Associate | $0.00 |
| | Paralegal Name | $0.00 |

## I. Initial Investigation

| Activities | Attorney/Paralegal | Estimated Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

## II. Removal/Remand

| Activities | Attorney/Paralegal | Estimated Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

## III. Written Discovery

| Activities | Attorney/Paralegal | Estimated Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

Appendix 11

## IV. Document Review

| Activities | Attorney/Paralegal | Estimated Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

## V. DEPOSITIONS

| Activities | Attorney/Paralegal | Estimated Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

## VI. DISCOVERY MOTIONS

| Activities | Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

Appendix 12

**VII. DISPOSITIVE MOTIONS**

| Activities | Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

**VIII. OTHER**

| Activities | Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

**IX. TRIAL PREPARATION**

| Activities | Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

**X. TRIAL**

| Activities | Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|---|
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| List Activity | Attorney 1 Name | 0.00 | $0.00 | $0.00 |
| | Attorney 2 Name | 0.00 | $0.00 | $0.00 |
| | Paralegal Name | 0.00 | $0.00 | $0.00 |
| **TOTAL** | | | | $0.00 |

**GRAND TOTALS**

6372008

4

**Appendix 14**

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
━━━━━━━━━━━━━ Attorneys at Law

**BARRY A. CHASNOFF**
210.281.7001/ fax: 210.224.2035
bchasnoff@akingump.com

**DANIEL MCNEEL LANE, JR.**
210.281.7070/fax: 210.224.2035
nlane@akingump.com

June 25, 2009

Ruth Brewer Schuster, Esq.
The Gulf Law Group, PLCC
1201 Connecticut Ave. NW, Suite 500
Washington, DC 20036

Re:   Claims Against Stanford Entity Insurance Policies

Dear Ms. Schuster:

As you know, we represent the Underwriters who issued certain insurance policies to Stanford Financial Group Company and its affiliated entities ("Stanford"), including (1) Lloyd's D&O and Company Indemnity Policy reference 576/MNK558900; (2) Lloyd's Financial Institutions Crime and Professional Indemnity Policy reference 576/MNA851300; and (3) Lloyd's Excess Blended 'Wrap' Policy reference 576/MNA831400.

On June 24, 2009, we learned for the first time that the court-appointed Receiver for the Stanford companies, Ralph Janvey, now takes the position that all proceeds under the policies identified above are "Receivership Assets" as defined by the Order Appointing Receiver in *SEC v. Stanford International Bank et al.*, dated February 17, 2009.[1]  The Receiver's statement represents a claim for the same proceeds you have requested on behalf of your client(s). Furthermore, the Receiver has taken the position that his right to the proceeds "supersedes" the right of the insureds, including your client(s).

In short, the Receiver's position is that any payment of proceeds to your client(s) would be in violation of a federal court order, punishable in this case by the contempt powers of the United States District Court for the Northern District of Texas.  Therefore, Underwriters cannot and will not proceed with any further payments under the policies above until the Court rules that they may do so.

Please appreciate that Underwriters take no position at this time as to whether or not the Receiver is correct in his construction of the February 17 Order.  Underwriters have requested

---

[1] We attach a copy of the Court's Order to this letter.

**Appendix 15**

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━ Attorneys at Law

Ruth Brewer Schuster, Esq.
June 25, 2009
Page 2

clarification from the Receiver and will, if necessary, seek guidance directly from the Court as to construction and applicability of the February 17 Order.  In the interim, please understand that Underwriters will make no payment of proceeds under the policies referenced above.

      Please do not hesitate to contact us directly if you have questions or concerns.

                          Very truly yours,

                          Barry A. Chasnoff
                          Daniel McNeel Lane, Jr.

**Appendix 16**

6376984