IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD.,<br>STANFORD GROUP COMPANY,<br>STANFORD CAPITAL MANAGEMENT, LLC,<br>R. ALLEN STANFORD, JAMES M. DAVIS, and<br>LAURA PENDERGEST-HOLT,<br><br>Defendants,<br>and<br><br>STANFORD FINANCIAL GROUP, and<br>THE STANFORD FINANCIAL GROUP BLDG INC.,<br><br>Relief Defendants. | Case No.: 3:09-cv-0298-N |

## PLAINTIFF'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP ORDER

Plaintiff Securities and Exchange Commission requests that the Court modify the Amended Order Appointing Receiver to grant the Commission exclusive authority to pursue, in its discretion, claims against investors. The Receiver's clawback claims against innocent investors seeking the return of *principal* are not supported by case law and are contrary to Commission practice. The Commission understands that the Receiver will file possibly hundreds of additional claims against innocent investors on or before August 3, 2009. After great consideration, and for the reasons stated below, the Commission now seeks to modify the authority that earlier was granted to him at the Commission's request. The Commission respectfully seeks emergency consideration of this motion to prevent the tremendous litigation

expense that would be incurred by innocent investors as well as the receivership estate should the Receiver continue to file clawback claims.[1]

### *The Receiver's Clawback Claims*

Paragraph 5(c) of the Receivership Order broadly authorizes the Receiver to institute actions and proceedings against third parties who are in possession of assets traceable to the estate. The Receiver has used this provision to assert claims against third parties who have not voluntarily turned over assets to the Receiver, and against brokers who received exorbitant commissions from the sale of Stanford CDs.[2] In these instances, the Commission and the Examiner have supported the Receiver's efforts to pursue and recover funds on behalf of the estate.

Unfortunately, the Receiver has filed "clawback" claims against wholly innocent Stanford investors who – by happenstance -- hold in domestic brokerage accounts proceeds from redemptions of Stanford Bank CDs and/or interest payments on those CDs.[3] In each of these actions, the Receiver concedes that the relief defendants are "innocent investors" who did not participate in the underlying fraudulent scheme or otherwise commit any wrongdoing. The Receiver does not allege that any of the relief defendants received funds in preference to other investors, received an unreasonable amount of funds, acted in bad faith, or had knowledge of the

---

[1] Should the Receiver file additional claims, the Commission will find itself in the strange position of having to intervene in those actions, seeking leave of Court to present the views expressed here. After careful consideration, the Commission moves for the relief requested herein in order to pursue the relief it deems appropriate and consistent with the public interest.

[2] With respect to the claims against the former brokers (*see* Receiver's Complaint Naming Stanford Financial Group Advisors as Relief Defendants, Case No. 3-09-CV-00724-N (April 20, 2009)), the Commission supports the Receiver's efforts to clawback commissions. To the extent that the brokers hold funds in a frozen account, the commissions should remain frozen but the balance of funds in the account should be released to the brokers immediately.

[3] Receiver's First Supplemental Complaint (Bell), Case No. 3-09-CV-00724-N (June 22, 2009); Receiver's Second Supplemental Complaint Naming Additional Relief Defendants (Haddad), Civ. No. 3:09-CV-00724-N (June 25, 2009); Complaint (*Janvey v. Letsos*, Civ. No. 3:09-CV-01329-P (July 16, 2009)).

fraud.[4] The Receiver has filed these cases because the investors have funds frozen at Pershing LLC, and according to the Receiver, their principal investment *and* all interest paid to them should be turned over to the Receiver as a matter of law. The Receiver has advised the Commission that he is pursuing claw back claims against innocent investors because he believes he is obligated to do so under the current Receivership Order.

*The Commission Should Have the Authority and Discretion
to Pursue Clawbacks Against Investors*

The issue presented is not whether there exists ample authority to clawback principal from innocent investors (there is little if any authority, however), or even whether it is appropriate to do so. While differing views of those issues clearly form the backdrop of this motion, the critical question is whether the Commission, as plaintiff, should have the ability to shape its case and determine the type and scope of relief sought.

The Commission is the government agency charged with the responsibility of enforcing the federal securities laws. Every year the Commission brings charges against Ponzi scheme operators who engage in fraud, and aggressively pursues meaningful relief for investors. In many cases, the Commission seeks the appointment of a Receiver to assist in the collection and distribution of assets to victims. While a receiver necessarily has a great deal of discretion to pursue claims, the Commission has expertise in these matters and has developed measured practices regarding the relief that is appropriate and in the public interest in cases like this one. Based on this experience, the Commission simply does not make a practice of suing innocent victims of Ponzi schemes for the return of *principal*, and applies a great deal of discretion and consideration before asserting claims against victims for the return of *interest* payments received by them. As plaintiff, the Commission deserves a high degree of deference in shaping the case

---

[4] In the absence of allegations of bad faith, a preference, a windfall or involvement in the fraud, the Receiver's claims for principal against the innocent investors are not likely to be sustained.

*SEC v. Stanford International Bank, Ltd., et al.*  3
Plaintiff's Emergency Motion to Modify Receivership Order

and the type of relief sought. Here, the Commission would not pursue claims against innocent victims absent compelling reasons to do so. Such reasons are not present in the pending motions, and the Commission is not aware of any compelling reasons to support the anticipated motions. Modification of the Receivership Order is therefore appropriate so that the Commission can pursue the relief it deems appropriate in this law enforcement matter.

### *Receiver's Claims Are Unsupported*

None of the cases offered by the Receiver support the broad proposition that a receiver can sue wholly innocent investors for the return of *principal,* and the Receiver has misinterpreted the authority upon which he relies. In each of the pending actions, the Receiver recites the following: "The fact that the Relief Defendants are innocent investors and committed no wrongdoing does not entitle them to retain proceeds [including principal and interest] received from the fraudulent SIB CDs."[5]  *None* of the cases cited by the Receiver in apparent support of this view, however, involved claims for the return of principal against innocent investors, and therefore lend no support to the Receiver's position. In fact, there were compelling and specific reasons for pursuing the relief defendants in the cited cases – reasons which the Receiver concedes are absent in this case. More specifically:

● In *Warfield v. Bryon*, 436 F.3d 551 (5th Cir. 2006), an SEC Receiver sued two relief defendants under the Uniform Fraudulent Transfer Act. The relief defendants in *Warfield* were not innocent investors, but "facilitators" of the fraud who received "substantial" fraudulent transfers in bad faith. *Id.* at 554-55.

---

[5] *See* Complaint, *Janvey v. Letsos*, Civ. No. 3:09-CV-1329-P, ¶ 31 (July 16, 2009) (citing cases).

- In *Quilling v. 3D Marketing, LLC,* 2007 WL 1058217 (N.D. Tex. 2007), an SEC Receiver sought to clawback principal not from a Ponzi scheme victim but from an equity investor in the entity that operated the fraud scheme.[6]

- In *Mays v. Lombard*, 1998 WL 386159, at *3 (N.D. Tex. 1998), an SEC Receiver sought to recover excessive payments to an investor in a Ponzi scheme. The Receiver did not demand that the investor disgorge his principal investment.[7]

The Receiver also relies heavily on *SEC v. George,* 426 F.3d 786 (6th Cir. 2005). There, the Commission brought a disgorgement action against several relief defendants, Dziorny, George, Jackson and Harris, none of which were purely innocent investors.[8]

- Dziorny was the primary defendant's girlfriend who received gifts including a $66,500 diamond engagement ring and cash. She was not an investor.

- George received more than twice the amount of his initial investment prior to the filing of the lawsuit, and a primary defendant funneled additional funds to him *after* the asset freeze was ordered.

- Jackson and Harris schemed to obtain the release of funds from the asset freeze, including all of their principal and interest, even though they had previously received substantial

---

[6] The opinion in *Quilling* does not describe in detail the relationship between the primary defendant and 3D Marketing. However, a review of the Complaint filed in that case, and other court records, shows that 3D Marketing did not invest in the Ponzi scheme.

[7] Other cases cited by the Receiver do not support the conclusion that innocent investors are required to disgorge principal they received in a Ponzi scheme. *Donell v. Kowell*, 533 F.3d 762, 779-80 (9th Cir. 2008)(ordering judgment against investor who received false profits); *Scholes v. Lehmann*, 56 F.3d 750, 757, 759 (7th Cir. 1995)(same); *Wing v. Harrison*, 2004 WL 966298, at 85 (D. Utah 2004)(recovery was not from an investor in the underlying Ponzi scheme).

[8] Significantly, the Commission – not an equity receiver – asserted claims against relief defendants in the *George* case. As explained above, the Commission authorized these claims because the relief defendants for various reasons were not *innocent investors*, and it was equitable to pursue claims against them.

Ponzi payments and refused to agree to a set-off. Claims against Jackson and Harris were necessary and appropriate to prevent them from receiving a windfall.[9]

### *Clawback of Principal is Inequitable*

The equities do not support claims against victims who hold principal and interest in domestic accounts like Pershing. Such claims would create further hardship on a small pool of victims, and randomly penalize investors who happen to hold funds in frozen accounts. Further, these claims would come at great cost to the victims and the receivership estate, with questionable benefit to all of the victims of the Stanford scheme. In all probability, these funds will be a small percentage of the billions owed to investors worldwide, not contributing to investor recovery in any meaningful way. It makes little sense to assert claims against these victims.

As the Examiner previously stated, "If 'equity is equality' is the goal, *Cunningham v. Brown*, 265 U.S. 1, 13 (1924), how is equity served by a Receiver who pursues only the most handy victims in his efforts to add to the asset pool ultimately available for distribution?" Report and Recommendation No. 1 at 5. While the Receiver has the authority to pursue claims, that effort should be guided by discretion and good judgment, not by the temptation to pick low hanging fruit.[10]

---

[9] Unfortunately, the Court's opinion in *George* did not detail the reasons why the Commission brought action against the relief defendants (other than the promoter's girlfriend). But those reasons are critical in understanding why the Commission brought the claims. Prior to filing any of the pending clawback claims, the Receiver was fully apprised of the special circumstances in *George*. Nonetheless, he has ignored those circumstances and has repeatedly cited the case as his most significant authority.

[10] Surely the collection against domestic and international investors who do not currently hold funds at Pershing will be far more difficult and costly than collection of pending claims, and likely unattainable in large part.

*SEC v. Stanford International Bank, Ltd., et al.*  6
Plaintiff's Emergency Motion to Modify Receivership Order

**CONCLUSION**

In light of the total magnitude of the Receiver's undertaking in this case and the significant burdens inherent in such an endeavor, the Commission has, to date, been extraordinarily deferential to the Receiver's exercise of discretion. However, deference is not appropriate when the Receiver and his team insist on pursuing a course that contravenes Commission practice and is supported by neither logic nor the law. By seeking to narrow the scope of the Receiver's authority, the Commission has selected a measured approach that hopefully will be sufficient to serve the interest of investors, and that will obviate the need to seek a more profound change in the administration of the receivership estate. Accordingly, for the reasons set forth above, the Commission respectfully requests that the Court modify the Receivership Order in the form attached hereto as Exhibit A.

Dated: July 20, 2009                            Respectfully submitted,

                                                                        *s/ David B. Reece*
                                                                        STEPHEN J. KOROTASH
                                                                        Oklahoma Bar No. 5102
                                                                        J. KEVIN EDMUNDSON
                                                                        Texas Bar No. 24044020
                                                                        DAVID B. REECE
                                                                        Texas Bar No. 242002810
                                                                        MICHAEL D. KING
                                                                        Texas Bar No. 24032634
                                                                        D. THOMAS KELTNER
                                                                        Texas Bar No. 24007474

                                                                        U.S. Securities and Exchange Commission
                                                                        Burnett Plaza, Suite 1900
                                                                        801 Cherry Street, Unit #18
                                                                        Fort Worth, TX 76102-6882
                                                                        (817) 978-6476 (dbr)
                                                                        (817) 978-4927 (fax)

**CERTIFICATE OF CONFERENCE**

The Receiver opposes this motion. The Examiner supports the motion. Counsel for Allen Stanford and Laura Pendergest-Holt take no position on the matter. We attempted to confer with counsel for James Davis, but were unable to reach him prior to the filing of the motion.

*s/ David B. Reece*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2009, I electronically filed the foregoing document with the Clerk of the court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send notification of such filing to all CM/ECF participants and counsel of record.

*s/ David B. Reece*