IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3-09-CV 0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § § | |
| Defendants. | § § | |

**EXAMINER'S RESPONSE IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP ORDER**

John J. Little, Examiner, respectfully submits this Response in support of the Plaintiff's Emergency Motion to Modify Receivership Order [Doc. No. 613].

## I.   BACKGROUND

In an extraordinary motion, Plaintiff SEC asks this Court to modify paragraph 5(c) of the Amended Order Appointing Receiver [Doc. No. 157] to eliminate the Receiver's authority to file actions against persons or entities that purchased certificates of deposit from Stanford International Bank Limited ("SIB"). The SEC explains that it filed the Motion because of the Receiver's dogged insistence upon filing the "claw back" claims against wholly innocent investors, even though such claims contravene SEC policy and are largely unsupported by law.

In his April 23, 2009 Report, the Receiver indicated that he was "considering filing" "claims to 'claw back' proceeds received by a number of customer account holders from redemption of SIBL CDs, or interest paid on SIBL CDs." [Doc. No. 336 at 27] The Receiver has since filed three sets of such "claw back" claims, as follows.

- On June 22, 2009, the Receiver filed "claw back" claims against seven SIB CD investors, each of whom also happens to be a professional baseball player,

  seeking to "claw back" CD proceeds – consisting of both interest payments and principal redemptions – in the amount of just over $9 million, [Civil Action No. 09-CV-724-N, Doc. No. 3];

- On June 25, 2009, the Receiver filed additional "claw back" claims against two related SIB CD investors, a Mexican national and a Singapore entity affiliated with him, seeking to recover approximately $11.5 million in CD proceeds, including both interest payments and principal redemptions, [Civil Action No. 09-CV-724-N, Doc. No. 4]; and

- On July 15, 2009, the Receiver filed additional "claw back" claims against five SIB CD investors, seeking to recover just over $3 million in CD proceeds, including both interest payments and principal redemptions, [Civil Action No. 09-1329-P, Docs No. 1, 2].[1]

The CD investors who have been sued by the Receiver in these proceedings have two common characteristics. First, they have assets that remain frozen at Pershing in an amount sufficient (or moreso) to permit the Receiver to recover the amounts he claims (if he is successful in prosecuting his claims). Second, each of these investors is acknowledged by the Receiver to be wholly innocent of any wrong-doing.

In its Order dated June 29, 2009 [Doc. No. 533], the Court gave the Receiver until August 3, 2009 to assert any other "claw back" claims he might have against CD investors whose accounts remain frozen. Both the SEC and the Examiner anticipate that the Receiver will file "claw back" claims against hundreds of additional CD investors[2] – thereby committing the Receivership to what will likely be an extraordinarily expensive course of litigation with the very people the Receiver is supposed to be serving – prior to the August 3 deadline.

---

[1]   The Examiner has no idea why the Receiver chose to file these "claw back" claims as a separate action. The Examiner notes that the Receiver still has given the Examiner notice of the filing of these claims – the Examiner learned of them from counsel for other SIB CD investors.

[2]   The information published by the Receiver (as of July 8, 2009) indicates that he continues to hold in excess of 900 customer accounts, owned by over 190 customers. The Examiner cannot provide more current information because the Receiver has not provided him with any.

## II. THE MOTION MERITS EMERGENCY CONSIDERATION

In its June 29 Order, the Court observed that it was time for the Receiver's claims to be "asserted and tested." That "test" will come in one of two ways. The Court can let the Receiver proceed to file hundreds of additional claims (in an unknown number of separate actions), and then address the dozens (if not hundreds) of motions to dismiss,[3] motions for summary judgment and related motions[4] that will doubtless be filed by the investors the Receiver targets. That process will cause the Receiver to expend untold amounts of the estate's money, and will also require the admittedly "innocent investors" to fund the efforts of their own counsel, further victimizing those who for the most part are already victims.

Alternatively, the Court can consider on an emergency basis the SEC's Motion, with an eye toward ruling on the requested relief prior to the August 3 deadline established by the Court's Order of June 29, 2009. If the Court grants the relief requested by the SEC, both the Receivership estate and hundreds of investors will save tens of thousands (if not hundreds of thousands) of dollars.

The Examiner respectfully recommends that the Court enter its Order establishing an accelerated briefing schedule with respect to the SEC's Motion, pursuant to which responses to the Motion must be filed no later than **Friday, July 24, 2009**, and reply briefs must be filed no later than **Monday, July 27, 2009**. While that is an expedited schedule, the Examiner notes that

---

[3]   The first such motion to dismiss was filed yesterday in Civil Action No. 09-CV-0724 by Divo Milan Haddad and Singapore Puntamita Pte. Ltd. [Civil Action No. 09-CV-0724-N, Doc. No. 10.]

[4]   The Examiner anticipates that the Receiver will either seek a prejudgment attachment of the customer accounts that are now frozen or will urge the Court to continue the account freeze with respect to any customer named in such claims. The Examiner does not believe a continued account freeze would be appropriate, nor does the Examiner believe the Receiver can establish that he is entitled to any sort of prejudgment attachment.

the Receiver has already researched and/or briefed its position with respect to these "claw back" claims on several occasions, as follows:

- Doc. No. 441 (Civil Action No. 09-CV-0298-N), Receiver's Response to Examiner's Report and Recommendation No. 1, at 1-12 (addressing claimed propriety of "claw back" claims);

- Docs. No. 2 and 3 (Civil Action No. 09-CV-0724-N), Receiver's First and Second Supplemental Complaints; and

- Docs. No. 1 and 2 (Civil Action No. 09-CV-1329-P), Receiver's Complaint.

Given the extent to which the Receiver has already researched and briefed his view of the law as it relates to these "claw back" claims, he should not have any difficulty meeting this schedule, and it would permit the Court to consider and rule upon the SEC's Motion prior to the August 3, 2009 deadline established by the Court's June 29 Order.

### III. THE RECEIVER CANNOT PREVAIL ON THESE CLAIMS

In his Reply Brief in support of his Report and Recommendation No. 1, the Examiner addressed some of the case law relied upon by the Receiver to support his claims and found that case law wanting. [Doc. No. 470 at 3.] In its Motion, the SEC similarly addresses the key cases relied upon by the Receiver, including *SEC v. George*, 426 F.3d 786 (6th Cir. 2005), and explains why none of those cases support the sort of claims against wholly innocent investors that the Receiver insists upon bringing here.[5] Despite the Receiver's stubborn insistence that the law supports "claw back" claims against wholly innocent investors, that simply is not the case.

There are a number of fatal flaws in the Receiver's "claw back" claims, including (but not limited to) the following:

a. the innocent CD Investors targeted by the Receiver are not proper "relief

---

[5] *SEC v. George* has been the primary authority relied upon by the Receiver. The SEC has now explained why it sought relief against each of the "relief defendants" named in *George*, and that none of those "relief defendants" could be viewed as innocent.

EXAMINER'S RESPONSE IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP ORDER   Page 4

       defendants" because each such Investor has a legitimate claim, and an obvious ownership interest, in the funds at issue;

b.    because the innocent CD Investors are not proper "relief defendants," the Court lacks subject matter jurisdiction over those Investors;

c.    the Receiver is not entitled to have a "constructive trust" imposed upon the assets of the innocent CD Investors; and

d.    the Receiver lacks standing to bring these "claw back" claims against innocent CD Investors.

Each of these issues has been briefed by Divo Milan Haddad and Singapore Puntamita Pte., Ltd. in their Motion to Dismiss filed in Civil Action No. 09-CV-0724-N [Doc. No. 10]. Instead of rehashing that briefing here, the Examiner has attached a copy of that Motion to Dismiss to this Response as Exhibit "A" and incorporates it herein.

## IV.   MANY OF THESE CLAIMS WILL BE NET LOSERS FOR THE ESTATE

While the Receiver may believe that the pursuit of "claw back" claims may be supported by case law, he cannot believe that it is appropriate to pursue "claw back" claims that will not yield a "net recovery" for the Estate. One hopes the Receiver would agree, for example, that it would be inappropriate, at best, to expend $2 in attorneys' and accountants' fees chasing a recovery of only $1. Based upon his conduct to date, it appears that he is determined to pursue precisely that sort of claim.

To date, the Receiver has entered into "Stipulations Regarding Release of Accounts" with approximately thirty-five (35) Stanford investors.[6] The only purpose for entering into these stipulations is to hold, for later adjudication, the amount of money that the Receiver believes he might be able to recover via a "claw back" claim. Of the twenty-eight (28) such stipulations that

---

[6] Twenty-eight (28) such stipulations are available to the public via the PACER system. The Examiner understands that the Receiver has also entered into stipulations with the seven baseball players he has named as "relief defendants" in Civil Action No. 09-CV-0724-N, but those stipulations were filed under seal.

are publicly available, thirteen (13) document a stipulated amount in dispute that is less than $50,000, as follows:

| Doc. No. 345 | Greiner Release | $15,575.71 |
| Doc. No. 436 | Vaughn Release | $23,101.67 |
| Doc. No. 463 | Landry Release | $31,155.70 |
| Doc. No. 514 | Guifena Release | $28,796.17 |
| Doc. No. 518 | Haun Release | $39,398.18 |
| Doc. No. 536 | Lormand Release | $34,162.90 |
| Doc. No. 542 | Donnadieu Release | $28,285.76 |
| Doc. No. 565 | Chappell Release | $25,575.39 |
| Doc. No. 566 | Goeckel Release | $24,606.04 |
| Doc. No. 577 | Spatz Release | $29,243.48 |
| Doc. No. 580 | Hehm Release | $18,142.35 |
| Doc. No. 581 | Smith Estate Release | $33,502.48 |
| Doc. No. 595: | Meacham Release | $34,357.67 |

Presumably, the Receiver intends to file "claw back" claims against these thirteen (13) wholly innocent investors in order to attempt to recover – assuming complete victory for the Receiver – a total of $365,903.50, before expenses.[7]

Given the rate at which the Receiver has been incurring expenses, the Examiner expects that the $365,903.50 the Receiver might recover from asserting "claw back" claims against these thirteen (13) investors has already been spent (and then some) on (i) the analysis of the Investors' accounts by FTI and others, (ii) the analysis and processing of the Investors' account release applications, and (iii) the preparation, negotiation and filing of the release stipulation. Should

---

[7] Of the remaining fifteen (15) available stipulations, eight (8) concern amounts under $150,000, and total less than $700,000. Of the other seven (7) stipulations, only one concerns an amount in excess of $1 million. The information available to the Examiner (as provided by the Receiver) also indicates that there may be as many as fifteen (15) additional Stanford investors whose Pershing accounts remain frozen over claimed CD proceeds of less than $50,000.

any of these Investors retain counsel to defend the Receiver's claims, and there are certainly defenses that can and should be asserted, there is virtually no chance that the Receiver can achieve a "net benefit" to the Estate, even if he successfully prosecutes these claims. If he is not successful, both the Estate and the Investors he targets will be losers.

### V.    MANY OF THE RECEIVER'S TARGETS ARE "NET LOSERS"

A review of the release stipulations that have been filed to date also reflects that many of the Investors likely to be targeted by the Receiver are "net losers" in relation to their Stanford CD investments. For example, the stipulation executed by the Hauns [Doc. No. 518] reflects that Mr. & Mrs. Haun invested a total of $1,250,000 in Stanford CDs. [Doc. No. 518 at ¶3.] They received CD interest in the amount of $38,298.18. The $1,250,000 they invested in Stanford CDs is, for all practical purposes, gone, and yet the Receiver seeks to "claw back" from them an additional $38,398.18. No matter how one works the math, the Hauns lost a substantial amount of money to the Stanford scheme, and the Receiver seeks to increase the amount of that loss under his "equity is equality" banner.

The same analysis applies to many of the Investors who have completed and filed release stipulations. The Ferras [Doc. No. 413] may have received CD proceeds of approximately $227,000, but they invested **and lost** $3,000,000 in SIB CDs. Ms. Heim [Doc. No. 580] received $18,142.35 in CD interest payments, but she invested **and lost** $350,000 in SIB CDs. The list goes on. While there is some limited support in the case law for "clawing back" the profits that an otherwise innocent investor derives from a fraudulent scheme,[8] there is no authority for the assertion of claims that do no more than increase the loss for investors who are already victims

---

[8]    The SEC makes it clear that it does not support any claim that seeks to "claw back" the principal that an Investor took out of his pocket, invested in SIB CDs, and then redeemed. The Examiner shares that view.

of the fraud. *See Mays v. Lombard*, 1998 WL 386159 at *2 (N.D. Tex. 1998)(receiver could recover profits – those dollars that exceeded the original investment – from an otherwise innocent investor); *Donell v. Kowell*, 533 F.3d 762, 776 (9th Cir. 2008)(receiver's recovery from an innocent investor limited to "amounts above Kowell's initial investment transferred within the limitations period"); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995)(innocent investor required to "the difference between what he put in at the beginning and what he had at the end").

## VI.   CONCLUSION

The Examiner joins the motion filed by the SEC and urges the Court to enter its Order expediting the briefing and determination of that motion as follows:

- Response briefs to be filed by Friday, July 24
- Reply briefs to be filed by Monday, July 27.

For the reasons set forth above, in the SEC's Motion, and in the attached Motion to Dismiss filed by Divo Milan Haddad and Singapore Puntamita Pte., Ltd., the Examiner respectfully urges the Court to grant the SEC's Motion (and to do so before the August 3 deadline established by its Order dated June 29, 2009) and to amend its Order Appointing Receiver to eliminate the Receiver's authority to bring affirmative claims against investors in SIB CDs. Granting that relief will transfer to the SEC, as Plaintiff, the responsibility for determining what claims to bring, and against whom to bring them, and will result in a significant savings to both the Receivership estate and the hundreds of wholly innocent Investors who would otherwise find themselves the targets of the Receiver's ill-conceived "claw back" claims.

Respectfully submitted,

/s/ John J. Little
John J. Little
Tex. Bar No. 12424230

LITTLE PEDERSEN FANKHAUSER, LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
(214) 573-2300
(214) 573-2323 [FAX]

Of Counsel:
LITTLE PEDERSEN FANKHAUSER L.L.P.

Stephen G. Gleboff
Tex. Bar No. 08024500
Walter G. Pettey, III
Tex. Bar No. 15858400
Megan K. Dredla
Tex. Bar No. 24050530

901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone: 214.573.2300
Fax: 214.573.2323

## CERTIFICATE OF SERVICE

On July 21, 2009 I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ John J. Little