**EXAMINER'S RESPONSE IN SUPPORT OF**
**PLAINTIFF'S EMERGENCY MOTION TO MODIFY RECEIVERSHIP ORDER**

# EXHIBIT A

**MOTION TO DISMISS SECOND SUPPLEMENTAL COMPLAINT**
**NAMING ADDITIONAL RELIEF DEFENDANTS AND**
**BRIEF IN SUPPORT**

**CIVIL ACTION NO. 09-CV-0724-N**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3-09-CV-00724-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § | |
| | § | |
| | § | |
| Defendants | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES A. ALGUIRE, ET AL. | § | |

## MOTION TO DISMISS SECOND SUPPLEMENTAL COMPLAINT NAMING ADDITIONAL RELIEF DEFENDANTS AND BRIEF IN SUPPORT

Putative Relief Defendants Divo Milan Haddad ("Mr. Milan") and Singapore Puntamita Pte., Ltd. ("Singapore") respectfully move the Court to dismiss the Second Supplemental Complaint Naming Additional Relief Defendants filed herein on June 25, 2009 [Docket No. 4], pursuant to Federal Rules of Civil Procedure 12(b)(1),(2),(4),(5) and 12(b)(6), and would show as follows.

### I.    FACTUAL BACKGROUND

A.    <u>Mr. Milan.</u>

Mr. Milan is a citizen of Mexico. He is a businessman who has served as a director of publicly traded companies in Mexico and elsewhere. Mr. Milan is innocent of any wrongdoing alleged by Plaintiff Securities and Exchange Commission (SEC) against Defendants in Case No.

09-0298-N (the "Stanford Action"), and has no association with any of the Defendants in the

Stanford Action, other than as a former customer or client of certain Stanford entities.

Mr. Milan owns Stanford Group Company brokerage account NWR-002184 (the

"Account") pursuant to which his property is held at Pershing, LLC. This property consisted, as

of February 28, 2009,[1] of shares of publicly traded Mexican securities (98%) and cash

equivalents (2%). The total value of Mr. Milan's property held in the Account as of February 28,

2009, was US$ 8,374,929.17.

B.    Singapore

Singapore is a Singapore entity affiliated with Mr. Divo Milan Haddad, a citizen of

Mexico.  Singapore is innocent of any wrongdoing alleged by Plaintiff SEC against Defendants

in the Stanford Action, and has no association with any of the Defendants in the Stanford Action,

other than as a former customer or client of certain Stanford entities.

Singapore owns Stanford Group Company brokerage account NWR-006581 (the

"Account") pursuant to which Singapore's property is held at Pershing, LLC.  This property

consisted, as of February 28, 2009,[2] of cash equivalents (78%), fixed income corporate bonds

(12%), and shares of publicly traded Mexican securities (10%).  The total value of Singapore's

property held in the Account as of February 28, 2009, was US$ 7,882,351.39.

Because of the happenstance that these Accounts were administered through Stanford

Group Company rather than some other broker, these Accounts were frozen by Order of this

Court at the request of the Plaintiff SEC in the Stanford Action on February 17, 2009 (the

"Freeze Order") [Docket No. 8]. Neither Mr. Milan nor Singapore was given prior notice that

---

[1]    The information regarding the account is from the last Stanford Group Company account statement that
Mr. Milan received, and was for the period from February 1, 2009 through February 28, 2009.
[2]    The information regarding the account is from the last Stanford Group Company account statement that
Singapore received, and was for the period from February 1, 2009 through February 28, 2009.

their property would be frozen and effectively seized, or any opportunity for a hearing as to whether their property should be frozen or seized. Over four months later, neither Mr. Milan nor Singapore has yet been afforded a hearing as to whether the freezing of their Accounts were or is justified under any applicable law.

These Accounts was placed under the custody and control of Ralph S. Janvey, Receiver, pursuant to an Order appointing the Receiver [Docket No. 10], and remain under the Receiver's custody and control today. Mr. Milan and Singapore, through the undersigned attorneys, attempted to contact the Receiver and his attorneys at Baker Botts, L.L.P. on more than one occasion by mail and telephone. The Receiver and his attorneys did not respond to any of such attempts until June 22, 2009.

Once a process to apply to the Receiver for release of frozen property was made available, Mr. Milan and Singapore each filed an application for release of their Accounts in April, 2009 (the "Applications"). The Receiver did not respond to or even acknowledge the Applications for almost a month. In May, 2009, the Receiver's personnel advised that the Applications were unacceptable to the Receiver because they were signed for Mr. Milan and Singapore by their attorneys, rather than by Mr. Milan and Singapore personally.

Mr. Milan and Singapore (through Director Gordon Stewart) personally signed the Applications and resubmitted them to the Receiver on May 13, 2009. The Receiver's personnel thereafter sent confirmation numbers to acknowledge the Applications. The Receiver made no requests for further information to Mr. Milan, and has never formally advised Mr. Milan of any decision with respect to his Application.

On June 11, 2009, the undersigned attorneys for Mr. Milan and Singapore wrote and delivered a letter to the Receiver and his attorneys, requesting a decision on Mr. Milan's

Application by June 18, 2009. No such decision was made. Consistent with their previous practice, neither the Receiver nor his attorneys made any reply to the June 11 letter.

On June 22, 2009, counsel for Mr. Milan and Singapore telephoned counsel for the Receiver to confer regarding proposed motions to release the Accounts from the freeze that Mr. Milan and Singapore intended to file. Counsel for the Receiver did not agree to such relief. Mr. Milan on June 22, 2009 filed his Motion for Order to Show Cause and to Release Property and for Related Injunctive Relief in *SEC v. Stanford Int'l Bank, Ltd. et al.*, Case No. 3-09-CV-0298-N in this Court. [Docket No. 501]  Singapore on June 25, 2009 filed its Motion for Order to Show Cause and to Release Property and for Related Injunctive Relief in *SEC v. Stanford Int'l Bank, Ltd. et al.*, Case No. 3-09-CV-0298-N in this Court. [Docket No. 521]

In retaliation, the Receiver on June 25, 2009, without leave of court, filed a "Second Supplemental Complaint Naming Additional Relief Defendants" (the "Second Supplemental Complaint") against Mr. Milan and Singapore in this case, No. 3-09-CV-0724-N. [Docket No. 4] The Second Supplemental Complaint does not allege any violations of the securities laws, or any wrongdoing of any kind, by Mr. Milan or Singapore. ¶¶ 4, 29.

> The Receiver does not allege that the Relief Defendants participated in the fraudulent schemes at issue in this case or otherwise committed any wrongdoing. Rather, the Relief Defendants are added in a nominal capacity solely to facilitate relief. *SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998).

The Receiver alleges simply that Stanford International Bank, Ltd. issued certificates of deposit ("CDs") to Mr. Milan and Singapore at unspecified periods and in unspecified amounts; that some "substantial portion" of the principal or interest with respect to such CDs is traceable to unspecified property now owned by Mr. Milan and Singapore in their Accounts; and that because Stanford International Bank, Ltd. was allegedly involved in a fraudulent "Ponzi

Scheme", the Receiver is entitled to a "constructive trust" on Mr. Milan's and Singapore's property in the Accounts.[3]

On July 20, 2009, the SEC filed in Case No. 3-09-cv-0298-N "Plaintiff's Emergency Motion to Modify Receivership Order". [Docket No. 613]. In that Motion, the SEC requests that the Court's Receivership Order be modified to transfer from the Receiver to the SEC exclusive authority to pursue "clawback" claims against innocent investors like Mr. Milan and Singapore. Citing the Second Supplemental Complaint,[4] the SEC noted that the Receiver has filed such claims as to CD principal that "are not supported by case law and are contrary to Commission practice".

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS IN THE SECOND SUPPLEMENTAL COMPLAINT AGAINST MR. MILAN AND SINGAPORE; and

## III.    THE SECOND SUPPLEMENTAL COMPLAINT FAILS TO STATE A CAUSE OF ACTION AGAINST MR. MILAN AND SINGAPORE.

The Stanford Action was brought by the SEC as the sole plaintiff. The Receiver on April 20, 2009 asserted a "Receiver's Complaint Naming Stanford Financial Group Advisers as Relief Defendants" in this case. [Docket No. 2] That "Receiver's Complaint", like the Second Supplemental Complaint, asserts that the Court has jurisdiction of this action pursuant to Section 22(a) of the Securities Act of 1933, Section 27 of the Securities Exchange Act of 1934, and 28 U.S.C § 754.

---

[3]    Although not the subject of this Motion, the allegations by the Receiver are factually false. For example, over 95% of the value of the Account of Mr. Milan consists of publicly traded Mexican securities of companies known as "Mexichem" and "Grupo Pochteca". The original Mexichem securities were acquired by Mr. Milan in 2002 with funds unrelated to Stanford, and were held in an account at another brokerage firm until they were transferred to Stanford Group Company in 2003. Additional Mexichem shares were added to the account as a result of a stock split in 2008. In addition, a stock spin-off in 2007 resulted in the addition to the account of the Grupo Pochteca shares (previously known as Dermet de Mexico). *None of these shares (over 95% of the value of the Account) is traceable to any Stanford CD principal or interest.*
[4]    The SEC specifically cited the Second Supplemental Complaint Naming Additional Relief Defendants in footnote 3 to its Motion.

However, none of these statutes provide subject matter jurisdiction for this action against Mr. Milan or Singapore. There simply is no allegation by the Receiver (much less the SEC, the sole plaintiff in this case) that Mr. Milan or Singapore violated the Securities Act of 1933 or the Securities Exchange Act of 1934. To the contrary, the Receiver expressly alleges that neither Mr. Milan nor Singapore are participants in any wrongdoing whatsoever.

"Nothing in the statute or case law suggests that 15 U.S.C. § 78u(d) or (e) authorizes a court to freeze the assets of a non-party, against whom no wrongdoing is alleged." *SEC v. Cherif*, 933 F.2d 403, 413-14 (7th Cir. 1991). There is no allegation that Mr. Milan or Singapore's ownership of their property in the Accounts is a sham, that they are acting merely as nominees or custodians for any defendants in this case in holding such property, or that they do not have a legitimate claim to or ownership interests in such property. Absent such allegations, there can be no subject matter jurisdiction under the securities laws of the Receiver's claims against them.[5]

Perhaps because there clearly is no subject matter jurisdiction over Mr. Milan or Singapore under the securities laws[6], the Receiver alleges instead that Mr. Milan and Singapore are merely "relief defendants" who are named in the Second Supplemental Complaint solely in "a nominal capacity". In cases in which the "relief defendant" concept is properly used,[7] some courts have held that no subject matter jurisdiction over the relief defendants is even necessary

---

[5]    The Sarbanes-Oxley Act of 2002 includes an authorization for the SEC to seek broad equitable relief, in response to the Supreme Court's *Central Bank of Denver v. First Interstate Bank* decision that eliminated "aider and abettor" liability. *See* 511 U.S. 164 (1994); 15 U.S.C. § 78u. However, nothing in Sarbanes-Oxley indicates an intention by Congress to authorize the SEC – much less a rogue receiver effectively operating in defiance of the SEC – to freeze or confiscate the property of innocent fraud victims like Mr. Milan and Singapore.

[6]    The Receiver also mentions 28 U.S.C. § 754 in his jurisdictional allegations, but it is irrelevant here. This statute deals with a receiver's jurisdiction over property in different districts and does not purport to grant subject matter jurisdiction to the Receiver sue putative "relief defendants" in federal courts.

[7]    Mr. Milan and Singapore have found no Fifth Circuit cases approving the problematic "relief defendant" concept. Assuming it is valid at all, that concept – pursuant to which the SEC can sue someone as a "nominal party" without independent subject matter jurisdiction and without even alleging a cause of action against the "relief defendant" – should be strictly limited to cases where the alleged "relief defendant" makes no colorable claim to ownership of the property at issue.

because no "real" claim is asserted against him. Because they are merely "nominal", these relief

defendants are virtually invisible for subject matter jurisdiction purposes

The Receiver here has stretched the concept of a "relief defendant" well beyond what is

permitted by either precedent or justice. A "relief defendant" or "nominal defendant" typically is

"a bank or trustee, which has only a custodial claim in the property". *SEC v. Collelo*, 139 F.3d

674, 675-77 (9th Cir. 1998). The nominal or relief defendant must hold the property that is the

subject of litigation "in a subordinate or possessory capacity as to which there is no dispute." *Id.*

quoting *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991), quoting *Colman v. Shimer*, 163 F.

Supp. 347, 351 (W.D. Mich. 1958) (referring to relief defendant as a "trustee, agent, or

depository").

As described in *SEC v. Cherif*, 933 F.2d at 414:

> A nominal defendant is not a real party in interest, however, because he has no
> interest in the subject matter litigated. His relation to the suit is merely incidental and
> "it is no moment [to him] whether the one side or the other in [the] controversy
> prevails." *Bacon v. Rives*, 106 U.S. 99, 104, 1 S.Ct. 3, 6, 27 L.Ed. 69.

Thus the Seventh Circuit concluded that "because of the non-interested status of the nominal

defendant there is no claim against him and it is unnecessary to obtain subject matter jurisdiction

over him once the jurisdiction over the defendant is established." *Id.*

Other circuit courts have allowed such a relief defendant to be joined "purely as a means

of facilitating collection" since he is "part of the suit only as the holder of assets that must be

recovered in order to afford complete relief; no cause of action is asserted against a nominal

defendant." *CFTC v. Kimberlyn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir. 2002).

However, such decisions require that the putative relief defendant have no ownership interest at

all in the property sought from them, and not even any legitimate claim to that property. See *SEC

v. Colello*, supra; *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). Even *Colello*, the Ninth

Circuit case relied on by the Receiver in the Second Supplemental Complaint ¶ 4, held only that "the SEC may name a non-party *depository* as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of the underlying fraud" (emphasis added). *Accord, SEC v. Ross*, 504 F.3d 1130, 1141-42 (9th Cir. 2007).

Quite obviously, Mr. Milan and Singapore are <u>not</u> proper relief defendants under the facts as alleged by the Receiver. Mr. Milan and Singapore obviously are <u>not</u> "depositories" or disinterested "custodians" of the securities and property in the Accounts.[8] To the contrary, they claim ownership of <u>all</u> such property, and vigorously dispute the Receiver's unfounded claims to their property. Moreover, Mr. Milan and Singapore have ample <u>basis</u> for a legitimate claim to such ownership, in that no one – including the Receiver – claims that they were in any way participants in any alleged wrongdoing by Stanford International Bank, Ltd., the Stanford Group Company, or other defendants. The property in the Accounts is <u>owned</u> by Mr. Milan and Stanford, and by them alone – they earned it lawfully. The Accounts cannot be taken from them by the Receiver, so long as the rule of law prevails.

What the Receiver seeks to do here is to twist the "relief defendant" concept – which is expressly limited to instances in which "no cause of action is asserted against [the] nominal defendant", see *CFTC v. Kimberlyn Creek Ranch, Inc.,* supra – into a device by which the Receiver effectively <u>asserts</u> a cause of action for fraudulent transfer or disgorgement or constructive trust against admittedly innocent third parties who are the record owners of the property the Receiver seeks. The Receiver thereby demands, under the guise of the "relief defendant" concept, that this Court adjudicate (by a "summary adjudication", no less) causes of action asserted by the Receiver against innocent owners of property over which this Court has no

---

[8]    To the contrary, the interest of the Stanford Group Company in the Accounts (through Pershing, LLC) is much more akin to that of a custodian or depository than the clear <u>ownership</u> interest of Mr. Milan and Singapore in the Accounts.

subject matter jurisdiction. This is a distortion that would violate principles of due process of law, and the Court should not and cannot allow its jurisdiction to be so manipulated.

This case is comparable to *SEC v. Founding Partners Capital Management*, 2009 WL 1606491 (M.D. Fla. 2009).[9] Sun Capital was named in that case as a relief defendant, and moved to dismiss for lack of subject matter jurisdiction as well as failure to state a claim. The SEC alleged that the principal defendants made loans to Sun Capital pursuant to written loan agreements, but made no substantive claim of wrongdoing against Sun Capital.

The court found that the SEC had failed to meet the requirement of alleging that Sun Capital lacked an ownership interest or legitimate claim to the loaned funds, and granted the motion to dismiss.

> The case law only requires an "ownership interest" or "legitimate claim" in the funds to preclude an entity from being a proper relief defendant. This does not require possession of the full bundle of ownership rights that may exist in various types of property. It is undisputed that Sun Capital received the loan proceeds pursuant to written loan agreements with Stable-Value, which gives Sun Capital certain rights and obligations with respect to the loan proceeds. There has been a debtor-creditor relationship between Sun Capital and Stable-Value since 2001. That constitutes a sufficient legitimate ownership interest to preclude treating Sun Capital as a relief defendant.
>
> Sun Capital is a far cry from the "paradigmatic" nominal defendant: a trustee, nominee, or depository. The Complaint affirmatively alleges facts showing that Sun Capital has a legitimate ownership interest and/or a legitimate claim to the loan proceeds. This precludes Sun Capital from being a proper relief defendant even if, as the SEC argues, its claim is subordinate to the ownership claims of investors.

*Id.* (citations omitted).

---

[9]    See also *SEC v. Sun Capital, Inc.*, 2009 WL 1362634 (M.D. Fla. 2009) (SEC could not impose freeze on assets of person with legitimate claim to funds, who therefore was not proper relief defendant). However, this case is not comparable to the *Founding Partners* case in that this case is not brought by the SEC, but by a receiver acting without joinder or even approval of the SEC. The Receiver lacks standing to assert these claims against Mr. Milan or Singapore. See Section V below.

Similarly, the Receiver alleges here only that Mr. Milan and Singapore purchased CDs from Stanford International Bank – a familiar and lawful transaction that creates a legitimate debtor-creditor relationship – and that proceeds of repayment of that loan by them to the Bank are traceable to property in the Accounts. On the face of the Complaint, it therefore is apparent that Mr. Milan and Singapore at the very least have ownership interests and legitimate claims to the Accounts. The Court therefore must dismiss the Second Supplemental Complaint against them as putative "relief defendants".

Similarly, the court in *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101, 1136 (W.D. Mich. 1996), found that it lacked subject matter jurisdiction over parties named as nominal defendants, where they claimed an interest in stock that was the subject matter of the litigation. "The so-called nominal defendants are therefore not disinterested parties who hold the stock in trust for the primary wrongdoers, as is required by *Cherif*." Since there were no allegations of securities law violation by these parties, the court dismissed the claims.

In *CFTC v. Sarvey*, 2008 WL 2788538 (N.D. Ill. 2008), the Commission alleged that defendants engaged in unlawful non-competitive trading and added Bonfitto as a relief or nominal defendant. Bonfitto received funds resulting from such trades, because he acted as a clearer and thus guaranteed the trades. Bonfitto moved for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and the court granted the motion. The court noted that a nominal defendant may be named only if he is a "trustee, agent, or depository", has no legitimate claim to the property, and "it is of no importance to him which side prevails." The court concluded that Bonfitto held the relevant funds as a result of providing services to the defendants and had at least a legitimate claim to the funds.

Judge Kaplan discussed the origin and limits of the expansive power claimed by the

Receiver in *CFTC v. Hanover Trading Corp.*, 34 F.Supp.2d 203 (S.D.N.Y. 1999). There, the

Commission sought disgorgement or a constructive trust on 48 checks the defendant had

received as commissions on sales that the Commission alleged were in violation of the

Commodities Exchange Act. The Court found that the sales transactions were no more than

voidable, and not void, and that the commissions could be recovered only on a showing of actual

knowledge of the fraud by the defendant. 34 F.Supp.2d at 206, citing *SEC v. Levine*, 881 F.2d

1165, 1176-78 (2d Cir. 1989).

The Court also rejected the Commission's effort to impose a constructive trust on the

commissions at issue:

> It is often said that 'disgorgement does not penalize, but merely deprives
> wrongdoers of ill-gotten gains.' In ordinary circumstances, there is no
> basis for disgorgement by an innocent party. . . . To be sure, it is well
> established under the securities and, by analogy, the commodities laws
> that district courts, at the behest of the SEC and CFTC, respectively, in
> appropriate cases may reach funds held by non-parties. But that power is
> not entirely boundless.
>
> In *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85
> L.Ed.2d 189 (1940), the wellspring of this authority, the Supreme Court in
> relevant part merely held sufficient a bill in equity seeking restitution from
> a relief defendant of funds held by the relief defendant "for account of [the
> principal defendant], which consisted in part of the payments alleged to
> have been procured by the fraud of" the principal defendant. Thus the bill
> did not seek recovery of funds to which the relief defendant had a claim of
> entitlement in his own right. Subsequent cases have extended *Deckert* to
> permit recovery from relief defendants, irrespective of their culpability,
> who possess illegally obtained profits and have no legitimate claim to
> them. . . .
>
> Each of these cases focused on the relief defendant's lack of a legitimate
> claim to the money sought, whether because the relief defendant was a
> gratuitous beneficiary of the principal defendants' fraud or because he or
> she merely was the custodian of the principal defendants' assets. . . In
> other cases in which relief defendants claimed to have earned the money
> sought, courts have permitted seizure or required disgorgement only after

determining that the relief defendant in fact had no legitimate claim to the money.

No such determination is possible on the record before this Court now.

Similarly here, where the Receiver does not allege any wrongdoing by Mr. Milan and Singapore, and does not claim either that Mr. Milan and Singapore hold the Accounts for the Stanford defendants or that they are recipients of some gratuitous transfer from the alleged wrongdoers, there is no basis as a matter of law for either disgorgement of, or a constructive trust on, the Accounts.

The Receiver seems to assume – wrongly – that if any CD proceeds can be traced to property in the hands of an innocent third party like Mr. Milan or Singapore, he is entitled to seize[10] and recover that property. That is not and has never been the law. To the contrary, the law has always been that when a wrongdoer transfers ill-gotten gains to an innocent party who takes that property in good faith and for value, the property cannot be recovered from the innocent party. This is not only true under the common law, but fraudulent transfer statutes also generally recognize similar defenses. *See, e.g.*, TEX. BUS & COM. CODE § 24.009.

Here, the innocence and good faith of Mr. Milan and Singapore is conceded (indeed, alleged) by the Receiver. It is indisputable that certificate of deposit transactions like those at issue in this case are ones in which the depositor gives value – the time value of the use of his money by the bank – in return for the repayment by the bank of the CD principal and agreed interest. Thus, the Receiver certainly has no right to recover property in the hands of innocent

---

[10]    Although not the subject of this Motion, the continuing freeze of the Accounts cannot be justified. These Accounts are the property of innocent clients like Mr. Milan and Singapore, not the Stanford entities; it is not proper to enter an *ex parte* freeze order as to assets that are "anything other than the property, or deemed property of a defendant or a culpable third party." *SEC v. Black*, 163 F.3d 188, 196 (3d Cir. 1998). "Nothing in the statute or case law suggests that 15 U.S.C. § 78u(d) or (e) authorizes a court to freeze the assets of a non-party, against whom no wrongdoing is alleged." *SEC v. Cherif*, 933 F.2d 403, 413-14 (7th Cir. 1991).

third parties like Mr. Milan and Singapore simply because the Receiver claims that he can trace the property to proceeds of apparently legitimate bank CD transactions in which thousands of similarly blameless members of the public engaged. These innocent parties are entitled under the law to their property. The Second Supplemental Complaint therefore should be dismissed.

### IV.    TO THE EXTENT THAT THE RECEIVER ASSERTS A RIGHT TO A CONSTRUCTIVE TRUST ON THE ACCOUNTS, HE HAS FAILED TO STATE A CLAIM.

The Receiver alleges that Mr. Milan and Singapore hold the Accounts "pursuant to a constructive trust for the benefit of the Receivership estate." Second Supp. Compl. at 10.  A constructive trust is not a cause of action, but is an equitable remedy for unjust enrichment, and is often an appropriate remedy for fraud.  Since the Second Supplemental Complaint states no cause of action against Mr. Milan or Singapore for which relief may be granted, the Second Supplemental Complaint must be dismissed under Rule 12(b)(6).

However, in addition, the Receiver has failed to state facts that would make out a claim for a constructive trust remedy. A constructive trust may not be imposed on property whose owner obtained the property for value without notice of the wrongdoing. Because the Receiver has not alleged facts showing that Mr. Milan and Singapore did not receive the property in the Accounts for value and without notice of any alleged wrongdoing by Stanford International Bank, the Receiver has failed to state a claim on which relief may be granted. The Second Supplemental Complaint against Mr. Milan and Singapore must be dismissed for this additional reason.

The Restatement of Restitution and the decisions of nearly every state recognize longstanding principles of law that the Receiver chooses to ignore. A person who receives property for value and without notice of wrongdoing becomes a "bona fide purchaser" who takes

good title to that property even if it otherwise would be subject to a constructive trust. *E.g.*, *Restatement of the Law – Restitution* § 172; *E. D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 459 (5th Cir. 1982) (Texas law); *Fairfield Fin. Mortgage Group v. Luca*, 584 F. Supp. 2d 479, 486 (2008) (New York law); *Stith v. Thorne*, 488 F.Supp.2d 534, 547-58 (E. D. Va. 2007) (Virginia law).

Here, the indisputable facts show that Mr. Milan and Singapore (as well as other CD investors) gave value to Stanford International Bank in the form of the purchase of the CDs for cash. By these actions, they provided the Bank with the time value of the use of their funds. They did so in return for the Bank's promise to repay the principal plus an agreed rate of interest. Since it is also undisputed that Mr. Milan and Stanford engaged in this transaction innocently and without notice of any fraud by Stanford International Bank, the Receiver plainly has stated no claim for imposition of a constructive trust on the Accounts.

The Second Supplemental Complaint includes citations to numerous cases that plainly are inapposite and do not support the Receiver's claims. *See* Second Supp. Compl. ¶¶ 29, 30. Most of these cases involve transfers to persons who received the property at issue as a gift or otherwise without providing real value. Others appear to involve transfers of property to a participant in the alleged fraudulent scheme. Still others announce the result of disgorgement without explaining the reasons for that result. None of these decisions, however, purport to change the longstanding law that an innocent party who has received property after providing value in a legitimate commercial transaction like the CD transactions alleged in this case can be deprived of that property because, unbeknownst to them, their transferor had engaged in alleged wrongdoing. Accordingly, the Receiver has failed to state a claim against Mr. Milan and Singapore for this additional reason.

## V.   THE SECOND SUPPLEMENTAL COMPLAINT FURTHER SHOULD BE DISMISSED BECAUSE THE RECEIVER LACKS STANDING.

This case is remarkable for the extent to which the Receiver has exceeded his proper role. The Receiver is not the plaintiff in this case; the SEC is the sole plaintiff. In this case, the SEC has made it clear (as has the Court-appointed Examiner) that it does not seek a continued freeze of accounts such as the Accounts of Mr. Milan and Singapore at issue here. The Receiver has ignored the wishes of the Plaintiff SEC and usurped the SEC's function in determining what is in the public interest in this case, and what relief should be sought by the plaintiff.

However, the Receiver lacks standing to assert this claim in conflict with the other parties to this action, and especially the SEC. If parties are to be named as "relief defendants", either the SEC must do so (or if the Receiver can do so, he can do so only with the joinder or at least approval of the SEC). Here, the Receiver has added Mr. Milan and Singapore as "relief defendants" in retaliation for their challenge to the Receiver's continued freeze on the accounts. The Receiver has continued its freeze of the Accounts in violation of the wishes of the SEC and Examiner, as well as basic principles of due process of law. The Receiver has done so not in an action in which he is the plaintiff, but in the name of the SEC in an action in which he is not even a named party.

In every federal case, the party bringing the suit must establish standing to sue. *Elk Grove Unified School District*, 542 U.S. 1, 11 (2004); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff must carry burden of establishing standing). As stated by the Fifth Circuit in *Doe v. Tangipohoa Parish Sch. Bd.*, 494 F.3d 494, 496-97 (5th Cir. 2007), standing to sue must be proven, not merely asserted. Yet the Receiver has not shown and cannot show that he has standing to bring this action.

The Receiver is not the real plaintiff party in interest in this action – the SEC is. Yet the Receiver has not even alleged that the SEC has authorized or approved the Second Supplemental Complaint or the assertion against Mr. Milan or Singapore of the claims attempted to be asserted in the Second Supplemental Complaint. Absent such an allegation and showing, the Receiver lacks standing to assert or prosecute these claims, and they must be dismissed.

Mr. Milan and Singapore acknowledge that the Court's Order of February 17, 2009, authorizes the Receiver to assert claims to recover assets belonging to the receivership estate. That Order, however, did not authorize the Receiver to bring actions that he knows to be inconsistent with the authorization or wishes of the SEC as the sole plaintiff in this case. This case remains the SEC's case, and the receivership exists only to facilitate the relief sought by the SEC. *See Kelleam v. Maryland Cas. Co. of Baltimore, Md.,* 312 U.S. 377, 382, 61 S. Ct. 595, 598 (1941) (receivership is not end in itself, but only a means ancillary to primary relief sought by plaintiff); *Kumar v. Kumar,* 2009 WL 902035 (N.D. Miss. 2009). By pursuing the claims and relief in this case without authorization or approval of the SEC, the Receiver has exceeded his authority and proper function. This he has no standing to do.

In this case, as in every case, the plaintiff is "master of his complaint" and has the sole right to determine what relief is sought in the case. *See, e.g., Davis v. Scott,* 157 F.3d 1003 (5th Cir. 1998); *Carpenter v. Wichita Falls Ind. Sch. Dist.,* 44 F.3d 362, 366 (5th Cir. 1995); *Empire Home Services, LLC v. Empire Iron Works, Inc.,* 2007 WL 1218717 (E.D. Mich. 2007) ("A plaintiff is naturally the master of his own complaint and therefore may determine the contours of the relief he seeks"). The SEC and not the Receiver is the plaintiff here. The Receiver may not prosecute this action in the name of the SEC, while at the same time knowing that the SEC does not approve the claims asserted and the relief sought against Mr. Milan and Singapore. The

Receiver lacks standing to assert the Second Supplemental Complaint, and the Court should dismiss the Second Supplemental Complaint for this additional reason.

### VI.   THE COURT LACKS PERSONAL JURISDICTION OVER MR. MILAN AND SINGAPORE, AND ONLY HAS *IN REM* JURISDICTION OVER THE ACCOUNTS.

The Receiver asserts in the Second Supplemental Complaint that he is entitled not only to the Accounts, but also to relief "(c) ordering the Relief Defendants to pay to the Receiver the difference between the amounts contained in their Pershing accounts and the total amount of fraudulent CD proceeds received by the Relief Defendants." Second Supp. Compl. ¶ 7. The Receiver thus appears to assert *in personam* jurisdiction over Mr. Milan and Singapore, who are not United States residents or entities; who have not engaged in actions in the United States giving rise to "minimum contacts" that could subject them to *in personam* jurisdiction consistent with familiar principles of due process of law; and who have not been served with process in a manner authorized by applicable law.[11]

Mr. Milan and Singapore deny that they are subject to *in personam* jurisdiction in this case, object to any assertion of *in personam* jurisdiction over them, and move to dismiss the Second Supplemental Complaint pursuant to Rule 12(b)(2) to the extent in personam jurisdiction over them is asserted by the Receiver. Mr. Milan and Singapore further move to dismiss on the grounds of insufficient process and insufficient service of process under Rules 12(b)(4) and (5) to the extent that the Receiver asserts *in personam* jurisdiction over them.  At the same time, Mr. Milan and Singapore do not object to the assertion of limited *in rem* jurisdiction solely in connection with their property rights in the Accounts.

---

[11]    Neither Mr. Milan nor Singapore has been served with process in connection with this action, nor has either of them waived service of process. Mr. Milan and Singapore by filing this motion or taking other actions in connection with this proceeding do not waive, but instead expressly preserve all of their objections to the exercise of *in personam* jurisdiction over either of them in this action, in Case No. 3-09-CV-0298-N, or in any other proceeding.

The Receiver in the Second Supplemental Complaint makes no factual allegations as to any jurisdictional contacts by Mr. Milan or Singapore with the forum that could provide a basis for a finding of the minimum contacts necessary to satisfy the requirements of due process of law. The sole allegation in the Second Supplemental Complaint that relates to personal jurisdiction is Paragraph 10. In this allegation, the Receiver seeks to use the coercive language he included in the applications for release of frozen funds as a purported "agreement" by Mr. Milan and Singapore to the exercise of *in personam* jurisdiction over them by this Court. This "agreement" does not have that effect, and would be invalid if it were construed to do so.

The purported "agreement" states that the applicant waives any right "to object to any action brought in the Court or to claim that the Court does not have jurisdiction over the matters relating to my account." The "agreement" does not, however, purport to subject the applicant to the general *in personam* jurisdiction of this Court beyond the determination of "matters relating to my account." To the extent that the Receiver seeks an order or judgment that goes beyond the Accounts and would impose general liability on a "relief defendant" for amounts <u>not</u> in the Accounts, the Receiver exceeds the scope of the "agreement". Because that is precisely what the Receiver seeks in Paragraph 7(c) of the Second Supplemental Complaint, the Court lacks personal jurisdiction over Mr. Milan and Singapore to that extent.

More fundamentally, such coercive techniques as those employed by the Receiver in an attempt to bootstrap personal jurisdiction over foreign persons and entities are legally ineffective. The Receiver cannot condition the right of a foreign person to seek his own wrongfully seized property on that person's submission to unlimited *in personam* jurisdiction in a court. Such coercion cannot result in effective consent to the exercise of such *in personam* jurisdiction.

In *SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007), a receiver asserted a claim for disgorgement of commissions against alleged agents of the defendants who had earned commissions on the sale of unregistered securities. One such agent, Bustos, objected to the attempt and asserted that the entry of a disgorgement order against him violated due process. As in this case, the receiver in *Ross* asserted that Bustos was a "nominal" party, but also sought to exercise *in personam* jurisdiction over them. Also as in this case, the receiver failed to serve process on Bustos and asserted either that such service of process was unnecessary or that Bustos had effectively consented to *in personam* jurisdiction by acting to protect his property. The Ninth Circuit rejected these arguments and held that the district court had lacked jurisdiction to enter a disgorgement order against Bustos.

The Ninth Circuit stated that Bustos could not fit within any of the categories in which relief may be sought from nominal or relief defendants, 504 F.3d at 1142, and rejected the receiver's argument that service of process on Bustos was unnecessary because of the receiver's "broad equitable powers" and ability to use summary proceedings to recover from third parties. Id. at 1145-47. Finally, the Ninth Circuit rejected the argument that Bustos had consented to jurisdiction by intervening as of right in response to the receiver's disgorgement motion, in order to protect his own property.

Similarly here, Mr. Milan and Singapore applied to the Receiver for the release of their property that had been frozen because that was the only legal means then available for them to protect and enforce their rights to their own property. Such an action cannot, consistent with due process be deemed an effective consent to *in personam* jurisdiction simply because the Receiver chose to coercively condition the application on an ambiguously worded "agreement" to

"exclusive jurisdiction" in this court.[12] Accordingly, the *in personam* claims in the Second Supplemental Complaint against Mr. Milan and Singapore should be dismissed for lack or personal jurisdiction, insufficient process, and insufficient service of process.

WHEREFORE, Mr. Milan and Singapore pray that the Court dismiss the Second Supplemental Complaint herein, and dismiss each of them from this action, and for such other and further relief to which they may be entitled.

Dated:  July 20, 2009                     Respectfully submitted,

                                          COX SMITH MATTHEWS INCORPORATED
                                          David Bryant
                                          State Bar No. 03281500
                                          1201 Elm Street, Suite 3300
                                          Dallas, Texas  75270
                                          Tel:  (214) 698-7800
                                          Fax:  (214) 698-7899

                                          COX SMITH MATTHEWS INCORPORATED
                                          Mark J. Barrera
                                          State Bar No. 24050258
                                          112 East Pecan Street, Suite 1800
                                          San Antonio, Texas  78205-1521
                                          (210) 554-5500
                                          (210) 226-8395 (Fax)

                                          By:  _*/s/ David Bryant*_

                                          **ATTORNEYS FOR RELIEF DEFENDANTS
                                          DIVO MILAN HADDAD AND SINGAPORE
                                          PUNTAMITA PTE. LTD.**

---

[12]    It is ironic that the Receiver relies on his "agreement" in the application form, since he plainly violated any such agreement. The Receiver failed to act on the applications of Mr. Milan and Singapore for months; ignored their inquiries to the Receiver about the applications; and never rendered a written decision on the applications before filing the Second Supplemental Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July 2009, I electronically filed the foregoing Motion to Dismiss Second Supplemental Complaint Naming Additional Relief Defendants with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

/s/ David Bryant

David Bryant