IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § § | |
| Defendant. | § § | |

## ORDER

This Order addresses Defendant Laura Pendergest-Holt's motion for clarification of the Court's receivership order [docket no. 538]. Holt asks the Court: (1) to clarify that directors' and officers' ("D&O") insurance policy proceeds are not part of the receivership estate, or alternatively, (2) to exercise its equitable discretion and authorize disbursement of those proceeds for payment of defense costs. Because the Court finds that it would exercise its equitable discretion to permit payment of defense costs even if the proceeds were part of the receivership estate, it is unnecessary to determine at this time whether proceeds are part of the estate or not.

### I. BACKGROUND: THE STANFORD LITIGATION

This dispute arises out of a large, complex, and ongoing securities fraud case. The Securities Exchange Commission ("the Commission") brought this action against various players in what it calls a "massive Ponzi scheme" controlled by Defendants R. Allen

Stanford and James Davis. These players include various Stanford entities: Stanford International Bank, Stanford Group Company, and Stanford Capital Management ("the Stanford entities"). They also include Holt, the chief investment officer of the Stanford Financial Group. The Commission asserts that Holt "facilitated the fraudulent scheme," misrepresenting to investors that she managed Stanford Investment Bank's multibillion dollar investment portfolio.

### *A. The Asset Freeze and the Creation of the Receivership*

The Commission requested that the Court freeze Defendants' assets and appoint a receiver to "marshal, conserve, protect, and hold funds and assets" obtained in connection with this scheme. The Court issued orders freezing Defendants' assets [docket no. 8] and an order appointing a receiver [docket no. 157]. The Court assumed jurisdiction over and took possession of Defendants' "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located." Am. Order Appointing Receiver at 1–2. The Court appointed Ralph S. Janvey as the Receiver of these assets, and vested him "with full power of an equity receiver under common law as well as such powers as are enumerated herein in this order." *Id.* at 2.

### *B. The Insurance Policies*

Holt's motion asks whether three insurance policies (the "D&O policies") are within the scope of the Court's receivership order. All three policies, purchased by the Stanford entities, insure the directors and officers for liabilities incurred in the course of duty. But the

policies also insure the companies themselves, in addition to their officers and directors. The policies are as follows:

- **Lloyd's D&O and Company Indemnity Policy, reference no. 576/MNK558900**. This policy has three relevant insuring clauses. The first says that the underwriters will pay "on behalf of the Directors and Officers," losses resulting from "any Claim" made against them for "a Wrongful Act." The second says that the underwriters will pay "on behalf of the Company" loss it incurs for indemnifying its officers and directors. The third says that the underwriters will pay "on behalf of the Company, Loss sustained by the Company" for claims made against the entity for "a Wrongful Act." Def.'s Mot. for Clarification, App. at 6.

- **Lloyd's Financial Institutions Crime and Professional Indemnity Policy ("PI policy"), § 3, reference no. 576/MNA851300**. This policy has one insuring clause: "Underwriters shall reimburse the Assureds for Loss resulting from any Claim first made during the Policy Period for a Wrongful Act in the performance of Professional Services." The policy defines "Assureds" as "the Company and the Directors, Officers and Employees." Def.'s Mot. for Clarification, App. at 102.

- **Lloyd's Excess Blended "Wrap" Policy, reference no. 576/MNA831400**. This "excess policy" is linked to the first two policies, which are its "underlying policies." The policy essentially expands the limits of liability of the underlying policies.

Holt would like to access the policies' proceeds to fund her defense in this case and a related, pending criminal case. The Receiver urges that these proceeds should be preserved for the receivership estate. Certain Underwriters at Lloyd's of London ("Lloyd's"), the issuer of these policies, has requested clarification. Like Holt, Lloyd's wants to know whether it can pay directors' and officers' defense costs without running afoul of the receivership order. Lloyd's does not want the Court to decide whether and to what extent any insured is *entitled* to coverage. Lloyd's argues that policy limitations may bar Defendants' coverage, including coverage for the Stanford entities themselves. In fact,

Lloyd's has filed a separate action against the Receiver, seeking a declaratory judgment that the Stanford receivership is not entitled to payment of claims.  *See* Complaint at 14–15, *Certain Underwriters at Lloyd's of London v. Janvey*, Civil Action No. 09-CV-1736 (N.D. Tex. filed Sept. 17, 2009).  Lloyd's asserts that the Stanford entities will be barred from coverage due to various policy exclusions and limitations, including exclusions for fraudulent activities.

## II. THE COURT WOULD PERMIT PAYMENT OF DEFENSE COSTS EVEN IF THE POLICY PROCEEDS WERE PART OF THE ESTATE

The Court will first address whether it would permit payment of defense costs if the policy proceeds were part of the receivership estate.  For purposes of this discussion the Court will assume, without deciding, that the proceeds are part of the receivership estate.

### *A. The Court Has Discretion to Permit Payment of Defense Costs*

Few cases address a district court's oversight of an equity receivership.  When they do, their holdings are often limited the case's peculiar facts.  *See, e.g.*, *SEC v. Safety Finance Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982) ("[W]e emphasize that our holding stands on the peculiarity of the facts before us and the wide discretionary powers that we accord to a court of equity charged with overseeing a receivership.").  Nevertheless, one clear principle emerges from cases dealing with a district court's supervision and administration of an equity receivership: "'[T]he district court has broad powers and wide discretion to determine the

appropriate relief in an equity receivership.'" *Id.* at 372-73 (quoting *SEC v. Lincoln Thrift Association*, 577 F.2d 600, 606 (9th Cir. 1978)).[1]

The parties cite no cases addressing today's issue: whether a receivership Court's discretion extends to allowing disbursement of D&O insurance proceeds for defense costs. Some receivership cases have addressed whether a Court *must* release frozen assets to pay defense costs. *See, e.g.*, *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 & n.10 (7th Cir. 1988). In both *Quinn* and *World Travel*, the district courts had released some frozen assets to pay defense costs, even absent a showing that the assets were untainted by fraud. *Quinn*, 997 F.2d at 289; *World Travel*, 861 F.2d at 1032 & n.10. Both the *Quinn* and *World Travel* defendants' challenges arose when the district court refused to release more funds than they already had. Addressing that issue in *Quinn*, the Seventh Circuit colorfully held:

> Parties to litigation usually may spend their resources as they please to retain counsel. 'Their' resources is a vital qualifier. Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities

---

[1]This point of law is well-settled. *See, e.g.*, *SEC v. Elliott*, 953 F.2d 1560, 1569 (11th Cir.1992) (holding that a district court did not abuse its discretion in disallowing tracing specific assets); *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir.1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad."); *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y.1992) ("[A] district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration."); *see also* 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 66.06[4][a] (3d ed.1997) ("[L]itigation regarding the actual supervision of the court over the receivership is rare . . . . Nonetheless, the opinions that do discuss this issue tend to agree that the district court has remarkably broad discretion in its supervision of the receivership and . . . the administration of the receivership.").

markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.

*Quinn*, 997 F.2d at 289 (citations omitted). Further, a receivership court "has a duty to ensure that Defendants' assets are available to make restitution to the alleged victims." *SEC v. Dobbins*, Civil Action No. 04-CV-0605, 2004 WL 957715, at *2 (N.D. Tex. 2004).

The Court holds that it has discretion to allow disbursement of insurance proceeds if they are part of the receivership estate. In keeping with the principle that a defendant cannot fund a defense with "loot" or "gleanings of crime," this Court denied Stanford's earlier motion to unfreeze $10 million in assets to pay attorneys fees. Order Denying Def.'s Mot. to Modify Prelim. Inj. at 1 [docket no. 544]. The concern there was that Stanford had not made an accounting showing that the requested amount was "untainted by potential fraud." *Id.* Here, though, there is no argument that insurance proceeds are potentially tainted by fraud,[2] and the Court has no duty to preserve them as such.

### B. Possible Impact on the Receivership Estate

The Receiver argues that allowing defense costs would deplete policy limits. This, he says, would decrease the coverage dollars eventually available for distribution to Stanford investors. Here, he touches on another broad principle governing courts' supervision of equity receiverships: "[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit

---

[2] It could be argued that the insurance policies are tainted by fraud if their premiums were paid with stolen money. While unjust and regrettable, this would not entitle victims to proceeds of policies intended to pay defense costs.

of creditors," and in this case, investors. *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (citing *Safety Finance*, 674 F.2d at 373; *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986)).

The Court does not take this issue lightly. But at this point the possibility that the D&O proceeds might one day be paid into the receivership does not justify denying directors' and officers' claims. The Receiver has not yet tendered any claim against the Stanford entities to Lloyd's for a defense. Even if he had, is not at all clear at this time that Lloyd's will ever pay a claim into the receivership. Lloyd's is adamant that it will not. Lloyd's asserts – in a separate suit pending before this Court – that claims on behalf of the receivership entities will be barred by various policy exclusions, including exclusions for fraudulent activities. Lloyd's further maintains that the Receiver will be estopped from arguing that the exclusions do not apply, given that he has repeatedly accused the Stanford entities of fraud. These are questions for another day. But they do demonstrate that the receivership's claim to insurance proceeds is presently hypothetical.

### C. The Court Would Exercise Its Discretion to Permit Lloyd's to Disburse D&O Proceeds to Pay Defense Fees

The Court finds it in the interest of fairness to allow directors and officers to access insurance proceeds to which they are entitled for several reasons. First, although the Court is sensitive to concerns about preserving coverage dollars for aggrieved investors, the receivership's claim to the policy proceeds is presently speculative. Second, the directors and officers, many of whom deny any knowledge of fraudulent activities, relied on the existence of coverage. They expected that D&O proceeds would afford them a defense were

they to be accused of wrongdoing in the course of duty. The potential harm to them if denied coverage is not speculative but real and immediate: they may be unable to defend themselves in civil actions in which they do not have a right to court-appointed counsel. The Court, therefore, would exercise its discretion and permit payment of defense costs out of the policy proceeds.

### III. THE COURT NEED NOT DECIDE WHETHER POLICY PROCEEDS ARE PART OF THE ESTATE

If policy proceeds, at least to the extent of defense costs, were not part of the receivership estate, the covered directors and officers would be entitled to whatever payment of defense costs the policies would provide. Alternatively, if all of the policy proceeds were part of the receivership estate, the Court would exercise its discretion to permit payment. Since the same result obtains either way — payment of defense costs is not prohibited — the Court need not decide today whether the proceeds are part of the estate.

### CONCLUSION

Today the Court holds only that its prior orders do not bar Lloyd's from disbursing policy proceeds to fund directors' and officers' defense costs in accordance with the D&O policies' terms and conditions. The Court does not, however, hold that any defendant is *entitled* to have its defense costs paid by D&O proceeds.[3] Lloyd's reminds the Court that

---

[3] Holt's codefendants Allen Stanford and James Davis move to join her motion [docket nos. 567, 659]. Also, several groups of relief defendants move to intervene in Holt's motion [docket nos. 632, 673, 678, 682, 736]. Because the Court finds that codefendants' and relief defendants' interests are adequately represented by Holt's motion, their motions are denied. That said, the Court's authorization to disburse proceeds extends to any covered officer or director whose claim is approved by Lloyd's.

Lloyd's may ultimately deny coverage for even the individual directors' and officers' claims as barred by various policy exclusions. The Court also does not today authorize Lloyd's to pay any claims other than those for defense costs. Whether and how any successful claims within policy coverage will be paid is a matter the Court can address if and when that issue is ripe.

Signed October 9, 2009.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 9