IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: 3-09-CV-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | |
| R. ALLEN STANFORD, JAMES M. DAVIS, and | § | |
| LAURA PENDERGEST-HOLT, | § | |
| | § | |
| Defendants. | § | |

## RECEIVER'S INTERIM REPORT ON ASSET COLLECTION AND COST REDUCTION

The Receiver hereby submits for the Court's consideration the following information on the results of the Receiver's asset collection and cost reduction efforts, which is current as of October 28, 2009. Additional detail is contained in the attached Appendix.

At present, the total value of the (1) cash on hand, (2) assets, and (3) claims currently being pursued exceeds $1.5 billion.

- The total of all cash collected is $128.8 million, of which $71.5 million remains on hand after payment of expenses.

- Assets under the Receiver's control, but yet to be monetized, include (1) private equity, (2) Stanford Bank of Panama, (3) coins and bullion, (4) domestic real estate, and (5) personal property including aircraft, boats, and cars.

- Assets and claims currently being pursued include (1) claims against investor relief defendants, (2) claims against brokers and managing directors, (3) claims against non-broker former employees, (4) claims against other third parties, (5) claims under political risk insurance policy coverage, and (6) disputed foreign accounts.

- The Receiver has identified approximately $335 million in cash and other investments in foreign accounts, to which both the Receiver and the Antiguan liquidators assert a claim.

- The proceeds from the pending sale of the Bank of Panama will be approximately $13.5 million.

- Private equity yet to be liquidated is expected to produce an estimated $26.4 to $31.4 million in proceeds.

- Pending claims include:

    o Claims against relief defendant investors for approximately $894 million

    o Claims against brokers and managing directors for approximately $136 million

    o Claim under political risk insurance policy for $30 million

    o Other claims, either pending or under analysis, for in excess of $18 million

In the seven months since the inception of the Receivership, the Receiver has achieved a 98% reduction in the recurring monthly operating expenses, relative to the seven months prior to the inception of the Receivership, when the average monthly run rate was over $33.3 million. The Receiver has reduced the current-average monthly run rate to less than $1.0 million, by:

- Reducing personnel headcount and other administrative costs for a savings of $28.2 million per month.

- Cancelling leases and vacating branch offices for a savings of $1.8 million per month.

- Winding down aviation operations for a savings of $2.7 million per month.

Identifying and pursuing these assets for the benefit of the Estate has been achieved notwithstanding the following:

1. Stanford and affiliates purposefully spent significant sums of money on luxury items -- cars, boats, planes, homes -- which, can now be liquidated at only a fraction of their original cost. One of the most egregious examples is the yacht that Stanford bought for $3.9 million, which he then spent over $16 million to "upgrade", and which now may bring less than one-third of that in auction sale;

2. The Antiguan liquidators object to every attempt to secure and liquidate assets, world-wide;

3. Stanford objects to every sale and therefore impedes the pace at which assets can be sold. This forces the Estate to spend more funds on maintenance costs, taxes, mortgage payments, etc., all of which steadily erode what value remains to be recovered;

4. Our ongoing review of millions of records is hampered by demands that we reduce the amount of professionals' fees incurred, yet obtaining even the most basic information about payments made by the various Stanford entities (which are likely sources of fraudulent transfer claims) is constrained by the 200 accounting, financial, and operational systems, most of which do not centrally report and each of which were designed to prevent someone from finding pertinent information; and

5. The government of Antigua refuses to recognize US orders even as to entities for which there is no other owner i.e. the Antiguan liquidators were only appointed to liquidate two of the more than 150 Stanford entities, but we are hindered by Antigua's refusal to recognize the Court's orders even as to non-disputed entities.

Our initial efforts were focused on reducing the heavy hemorrhaging of cash as a result of operating expenses. Those expenses have now been reduced by 98% and are decreasing further. Next we focused on (and will stay focused on for the foreseeable future) the discovery and pursuit of litigation assets identified from Stanford's records. A major step that lies ahead in this receivership will be the development and proposal to the Court of a distribution plan to compensate those with claims against the Stanford entities. That process will involve extensive work to identify, review, and classify claims and of course claimants will be allowed to object to

the quantification and classification of their claims. This will be a time intensive and expensive proposition and it will not be revenue generating. Nevertheless, it must be done.

Although the ultimate success of these efforts is necessarily uncertain, as the attached report shows, we have identified over $1.5 billion in assets that ultimately could be available to the victims of the Stanford fraud. If we were completely successful in our efforts to put together the largest possible fund for the benefit of the victims, we may be able to return to them as much as 20 cents on the dollar, just based on activities to date. Further, discovery is just beginning and the review of third party liability will accelerate as new records are delivered and as litigation increases. We anticipate that additional assets, including litigation assets, will be discovered in that process.

The attached Appendix contains extensive detail and dollar amounts corresponding to each of the above assets, claims, and cost savings.

Dated: October 28, 2009

Respectfully submitted,

BAKER BOTTS L.L.P.

By: /s/ Kevin M. Sadler
    Kevin Sadler
    Texas Bar No. 17512450
    kevin.sadler@bakerbotts.com
    Robert I. Howell
    Texas Bar No. 10107300
    robert.howell@bakerbotts.com
    David T. Arlington
    Texas Bar No. 00790238
    david.arlington@bakerbotts.com
    1500 San Jacinto Center
    98 San Jacinto Blvd.
    Austin, Texas 78701-4039
    (512) 322-2500
    (512) 322-2501 (Facsimile)

    Timothy S. Durst
    Texas Bar No. 00786924
    tim.durst@bakerbotts.com
    2001 Ross Avenue
    Dallas, Texas 75201
    (214) 953-6500
    (214) 953-6503 (Facsimile)

**ATTORNEYS FOR RECEIVER
RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On October 28, 2009, I electronically submitted the foregoing report with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served the Court-appointed Examiner, and all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kevin M. Sadler
Kevin M. Sadler