# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 3-09-CV0298-N |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, and LAURA PENDERGEST-HOLT, | § § § § § § | |
| Defendants. | § § | |

## RESPONSE OF DEFENDANTS R. ALLEN STANFORD, LAURA PENDERGEST-HOLT, GILBERT LOPEZ, JR. AND MARK KUHRT IN OPPOSITION TO EMERGENCY MOTION TO ENFORCE RECEIVERSHIP ORDER AND INJUNCTION AND MOTION FOR CONTEMPT BY CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND ARCH SPECIALTY INSURANCE COMPANY, AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................................................ 1

II.     **SUMMARY OF RELEVANT FACTS** ............................................................ 3

    A.    **The Alleged Objectionable Filings:** .................................................... 3

        1.    Dallas County District Court: ................................................... 3

        2.    The U.S. District Court for the Southern District of Texas: ...................... 4

    B.    **Underwriters Have Unclean Hands.** ................................................. 7

    C.    **The Impact on the Criminal Action.** .............................................. 10

III.    **ARGUMENT** .................................................................................................. 11

    A.    **This Court has not Held that it has Exclusive Jurisdiction Over the Policies.** ............................................................................................. 11

    B.    **Injunctive Relief is Not Warranted.** ............................................. 13

    C.    **Underwriters' Motion for Contempt is Without Merit.** ............... 15

    D.    **Underwriters' Motion for Sanctions is Without Merit.** ............... 16

IV.    **CONCLUSION** ............................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

## Cases

*Baumrin v. Cournoyer,*
   447 F. Supp. 225 (D. Mass. 1978) ............................................................................... 15

*Ford v. Kammerer,*
   450 F.2d 279 (3rd Cir. 1971) ...................................................................................... 15

*In re Baum,*
   606 F.2d 592 (5th Cir. 1979) ...................................................................................... 15

*In re Worldcom, Inc. Securities Litigation,*
   354 F. Supp. 2d 455 (S.D.N.Y. 2005) ........................................................................ 14

*International Longshoreman's Association v. Philadelphia Marine Trade Association,*
   389 U.S. 64 (1967) ....................................................................................................... 15

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendants R. Allen Stanford, Laura Pendergest-Holt, Gilbert Lopez, Jr., and Mark Kuhrt (collectively hereinafter "Defendants") and their attorneys, Lee Shidlofsky, Gregg Anderson, Kent Schaffer, George Secrest, James Ardoin, Chris Flood, Dan Cogdell, Jim Lavine, Jack Zimmermann, and Cole Ramey (collectively hereinafter "Defendants' Attorneys") file this Response to the Emergency Motion to Enforce Receivership Order and Injunction and Motion for Contempt filed by Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company (collectively, "Underwriters") filed on December 3, 2009 [Docket No. 898] ("Underwriters' Motion"), and its brief in support, and would respectfully show the Court as follows:[1]

## I.    INTRODUCTION

Defendants and Defendants' Attorneys respectfully do not interpret this Court's various Orders to preclude United States District Judge David Hittner of the Southern District of Texas, Houston Division, who is the presiding judge in the case of *United States v. Robert Allen Stanford, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt and Leroy King*, Criminal No. H-09-342 (the "Criminal Action"), from determining whether Underwriters are obligated to advance defense costs for the Criminal Action pending in his court and the SEC Action that is pending before this Court.

---

[1] It is important to note that Gilbert Lopez, Mark Kuhrt and Defendants' Attorneys are neither parties to this proceeding nor are Defendants' Attorneys counsel of record herein. Further, as of the date of this response, Mr. Lopez, Mr. Kuhrt and Defendants' Attorneys have not been formally served with Underwriters' Motion. Additionally, not all attorneys representing Defendants are named in the Underwriters' Motion. The only attorneys named are Lee Shidlofsky, Gregg Anderson, Kent Schaffer, George Secrest, James Ardoin, Chris Flood, Dan Cogdell, Jim Lavine, Jack Zimmermann, and Cole Ramey. By this response, Mr. Lopez, Mr. Kuhrt and Defendants' Attorneys are neither waiving service nor making a formal appearance in this case.

Underwriters' Motion is without merit and is nothing more than a delay tactic designed to divert attention away from their own bad faith conduct. Further, this response is being filed because of Underwriters' attempt to elevate its filing to emergency status and to provide this Court with a *complete* picture that demonstrates why Underwriters' Motion should be denied. The motion should be denied for the following reasons:

a.   This Court's October 9th Order does not state that this Court has *exclusive* jurisdiction over the coverage dispute between Underwriters and Defendants.

b.   This Court's September 28th Order was in response to a motion filed by the Receiver to enjoin proceedings filed in a London court by one of the Defendant's lawyers. At the time of the September 28th Order (and at the time of the October 9th Order), the coverage dispute between Defendants and Underwriters had already been raised in the Criminal Action, yet the Order made no mention of the Northern District's exclusive right to decide the coverage dispute. The Receiver's motion was filed to enjoin the London proceeding because Ms. Pendergest-Holt had filed a motion with this Court to obtain a ruling that the policies were not part of the Receivership Estate.[2]

c.   The dispute between Underwriters and Defendants was filed in the Southern District because the Criminal Action is pending in the Southern District, because Stanford's operations were based in Houston, and because the relevant policies were delivered to the insureds in Houston. When the coverage dispute between Underwriters and Defendants was raised in the

---

[2] *See* Emergency Motion for Clarification that Receivership Order does not Apply to D&O Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds [Docket No. 538].

Southern District, there was no proceeding pending in this Court intended to resolve the coverage disputes.

d.   The alleged contemptible actions began in the Southern District as early as August 24, 2009, yet Underwriters never has complained until now.

e.   This is not a case of forum shopping. It does not matter to Defendants which court ultimately decides the coverage disputes. Rather, what *does* matter is that the coverage dispute be decided on an expedited basis so that the Criminal Action can proceed forward in a manner that protects the Defendants' constitutional right to a just and speedy trial.

## II.    <u>SUMMARY OF RELEVANT FACTS</u>

### A.    <u>The Alleged Objectionable Filings:</u>

1.   <u>Dallas County District Court</u>:

Defendants have been attempting to enforce their rights under the policies for some time, yet Underwriters' Motion represents the first time that Underwriters has claimed that this Court has *exclusive* jurisdiction over its obligations under the insurance policies. In fact, on March 17, 2009—after the appointment of the Receiver—Ms. Pendergest-Holt sought a determination concerning Underwriters' obligation to provide defense costs by filing an Original Petition in the matter of *Laura Pendergest-Holt v. Lloyd's of London Underwriting Members in Syndicates 2987, 2488, 1886, 2623, and 623, and Arch Specialty Insurance Company*, Cause No. 09-3133-E, in the 101st Judicial District Court of Dallas County, Texas. The state court proceeding was ultimately non-suited, but not before Underwriters noticed Ms. Pendergest-Holt's deposition for August

25, 2009.[3] Underwriters <u>never</u> objected to the Dallas County District Court's authority to decide the coverage dispute despite the fact that a Receiver already had been appointed.

  2. <u>The U.S. District Court for the Southern District of Texas:</u>

  On August 24, 2009, Defendants Laura Pendergest-Holt and Gilbert Lopez sought a determination in the Criminal Action concerning Underwriters' obligations to fund their defense with a Motion for Payment of Fees or in the Alternative, Stay of Criminal Proceedings.[4] Ms. Pendergest-Holt and Mr. Lopez sought relief because the progress of the Criminal Action directly is related to their abilities to mount competent defenses and to Judge Hittner's ability to schedule the Criminal Action for trial in a timely fashion. Underwriters, in fact, promptly responded to Ms. Pendergest-Holt's and Mr. Lopez's motions to compel payment of fees in September—almost three (3) months ago.[5] Nowhere in Underwriters' response was there any objection to Judge Hittner's exercise of jurisdiction over the policies issued by Underwriters. In fact, Underwriters specifically represented in such briefing that it took "no position" as to whether the Receiver was correct in its position before this Court that the applicable policies were receivership property.[6] Counsel for Underwriters attended a hearing in Judge Hittner's courtroom on

---

[3] *See* **Exhibit 1** to Defendants' concurrently-filed Appendix in support of this motion (the "Appendix"), which is incorporated herein by reference for all purposes. Where necessary, references to specific pages of the Appendix are noted as "App. __."

[4] A copy of the motion filed by Pendergest-Holt is attached to the Appendix as **Exhibit 2.** Lopez's motion actually was called a "Request for a Court Order Requiring Payment of Legal Fees, or in the Alternative, for a Stay of his Criminal Action." A copy of Lopez's motion is attached to the Appendix as **Exhibit 3.**

[5] Underwriters' Response to Defendant Holt's and Defendant Lopez's Motions for Payment of Fees or Stay of the Proceedings and Response to Questions Raised by the Honorable David Hittner is attached to the Appendix as **Exhibit 4.**

[6] See Appendix **Exhibit 4** at App. 000039. Underwriters also represented in the same filing that once this Court ruled on the Receiver's argument, Underwriters intended to reimburse Defendants' defense costs. As discussed in more detail below, Underwriters then reneged on this promise and retroactively denied coverage based on facts that were in existence and known to Underwriters long prior to its representations of coverage and reimbursement.

---

November 17, 2009 for oral argument on the motions to compel payment of fees.[7] Underwriters briefed and argued the issue of payment of defense costs in the Southern District without objection to this Court, yet Underwriters now ask this Court to hold Defendants and Defendants' Attorneys in contempt for asking Judge Hittner to rule on this precise issue.

On November 17, 2009, one day *before* Underwriters filed their action in the Northern District, Ms. Pendergest-Holt filed a declaratory judgment action in the Southern District of Texas. On November 20, 2009, Mr. Stanford, Mr. Lopez, and Mark Kuhrt joined the declaratory judgment action by way of a First Amended Complaint.[8] Underwriters immediately were provided a copy of the filings and a request to waive summons. At that time, and for the following two (2) weeks—until Underwriters recently changed course and first started threatening motions for contempt and sanctions— Underwriters never mentioned that they considered the filings to be in violation of this Court's orders.

Defendants seek a determination from the Southern District concerning Underwriters' obligation to fund their defenses because the Criminal Action is pending in the Southern District, because Stanford's operations were based in Houston, and most importantly, because the relevant policies were delivered to the insureds in Houston. Accordingly, no doubt exists that the Southern District is a proper venue for determination of the insurance coverage issues.

---

[7] The relevant portions of the transcript from the November 17, 2009 hearing in Judge Hittner's court are attached to the Appendix as **Exhibit 5.**

[8] A copy of the live pleading, which is the Second Amended Complaint, is attached to Underwriters' Motion to Compel as Exhibit B.

Aside from the fact that the relevant policies were issued within the Southern District, the need for a speedy resolution of the insurance issues is critically important to the Criminal Action that is pending within the Southern District. Defendants' constitutional right to a speedy trial mandates that the Criminal Action move along at a faster pace than the SEC Action. To ensure that Defendants receive speedy trials and to ensure that Defendants are provided effective assistance of counsel, Judge Hittner required Defendants' criminal attorneys to agree at the commencement of the Criminal Action that they would not withdraw prior to a final verdict or guilty plea by each of their clients.[9]

Importantly, before making such a promise and long-term commitment to the Court in the Criminal Action, Defendants' criminal attorneys sought and received numerous assurances from Underwriters and their attorneys that the fees and expenses would be timely paid.[10] Underwriters specifically were advised by Defendants' criminal attorneys that they only were accepting their assignments based on Underwriters' promises to pay their fees and expenses through a final adjudication. It is beyond dispute that Underwriters consented to the advancement of defense costs with full knowledge that both Defendants and Defendants' Attorneys relied on the representations made by Underwriters, including the promise made by Defendants' criminal attorneys to Judge Hittner to remain in the Criminal Action through a final verdict or guilty plea.

Underwriters' "emergency" challenge to the Southern District's jurisdiction is now being urged only after Underwriters have been called on by Judge Hittner to answer

---

[9] *See* Affidavit of Mr. Stanford's criminal defense attorney, Kent A. Schaffer ("Mr. Schaffer"), attached to the Appendix as **Exhibit 6,** at App. 000146.

[10] *See id.* at App. 000145 – App. 000146.

for their unilateral and retroactive denial of coverage. The only "emergency" that exists is that Underwriters have until December 17, 2009 to come up with a valid reason—let alone one grounded in the policy language—that permits the *retroactive* denial of coverage that Underwriters have now recently proffered notwithstanding their prior assurances to Defendants' criminal attorneys.[11]

**B.      Underwriters Have Unclean Hands.**

On numerous occasions, Underwriters advised Defendants in writing that "[a]lthough we have not yet made a final determination of coverage, Underwriters will consent to your client's request to incur Costs, Charges and Expenses in defense of the criminal proceeding pursuant to Article VI, Section B of the D&O Policy, subject to a complete reservation of all rights."[12] In their September 14, 2009 response to the motions to compel payment of defense costs filed in the Southern District, Underwriters advised Judge Hittner, "If Judge Godbey rules that the insurance policy proceeds are not receivership assets, Underwriters presently intend to reimburse Movants' reasonable and necessary attorney's fees and costs, subject to a complete reservation of rights."[13]

Underwriters even went so far as to send Defendants' attorneys "billing guidelines" and to instruct defense counsel on certain vendors that should be used.[14] According to Mr. Schaffer, who represents Mr. Stanford in the Criminal Action, he was

---

[11] Judge Hittner has set a hearing on the preliminary injunction for December 17, 2009. *See* Exhibit C to Underwriters' Motion [Docket 898-6].

[12] This statement was made to Pendergest-Holt in a letter dated May 1, 2009, a copy of which is attached to the affidavit of her attorney Dan L. Cogdell (Appendix **Exhibit 7**) at **Exhibit 7-A**, and to Lopez in a letter dated *October 30, 2009*, a copy of which is attached to the affidavit of his attorney, Jim Lavine (Appendix **Exhibit 8**) at **Exhibit 8-A**. The letter to Lopez's counsel was sent more than two (2) months after the August 2009 plea agreement on which Underwriters now relies for its retroactive denial of coverage.

[13] Appendix **Exhibit 4** at App. 000035.

[14] A copy of the "billing guidelines" sent by Underwriters to Mr. Schaffer is attached to his affidavit as Appendix **Exhibit 6-A**.

---

given numerous assurances by counsel for Underwriters, Daniel McNeel Lane, Jr. ("Mr. Lane") that all of his costs and expenses would be paid by Underwriters until Mr. Stanford either pled guilty or was convicted.[15] In fact, on October 12, 2009, one day before Mr. Schaffer agreed to represent Mr. Stanford in a "retained capacity," Mr. Lane informed Mr. Schaffer that Underwriters would be paying for Mr. Stanford's fees and expenses and that there was ninety-five million dollars available to pay for the legal expenses of the various defendants.[16] Mr. Lane advised Mr. Schaffer that Underwriters would be issuing a reservation of rights letter and that it meant, essentially, that if Mr. Stanford was convicted or entered a plea of guilty, they would no longer provide coverage.[17]

On October 13, 2009, based entirely on the assurances and promises made by Underwriters through their attorneys, Mr. Schaffer promised Judge Hittner that he would represent Mr. Stanford through the conclusion of the Criminal Action.[18] Identical promises and assurances were made on October 13, 2009 by Mr. Lane to Michael Sokolow, who was considering leaving his job of twenty-two years with the United States Public Defender's Office to join Mr. Stanford's defense team.[19] Although Mr. Lane assured him that Underwriters would be paying all fees and expenses through a final adjudication or guilty plea by Mr. Stanford, Mr. Sokolow ultimately decided to continue his work in the Public Defender's Office.

---

[15] Appendix **Exhibit 6** at App. 000146.

[16] *Id.* at App. 000145.

[17] *Id.* at App. 000146.

[18] *Id.*

[19] Mr. Sokolow's affidavit is attached to the Appendix as **Exhibit 9.**

In spite of the many promises and assurances—both written and oral—made by Underwriters that defense counsel's fees and expenses would be paid, on November 16, 2009, Underwriters issued letters to Defendants in which they acknowledged payment of defense costs to counsel through August 27, 2009, but in which Underwriters *retroactively* declined to extend any coverage for "Costs, Charges, and Expenses" incurred after August 27, 2009 in defending against the SEC Action pending in this Court and the Criminal Action pending in the Southern District.[20] The purported *retroactive* denial of coverage was made despite the fact that Underwriters had, as recently as October 30, 2009, specifically consented to defense counsel incurring "Costs, Charges and Expenses."[21]

Underwriters' *retroactive* denial of coverage was based on Underwriters' *unilateral* factual conclusion that certain findings made by this Court in a preliminary injunction hearing on March 12, 2009[22] and the guilty plea by James Davis on August 27, 2009 constituted sufficient evidence to exclude coverage under exclusions that requires either an "in fact" or "final adjudication" determination. The March 12, 2009 and August 27, 2009 events that serve as the purported basis for Underwriters' denial were well-known to Underwriters long before their repeated commitments to advance defense costs.

Defendants' attorneys incurred substantial fees and expenses based on Underwriters' and their attorneys' representations, and they have not been paid by Underwriters.[23] According to Mr. Schaffer, based on Underwriters' representations, he

---

[20] Copies of the letters purporting to *retroactively* deny coverage are attached to the Appendix as **Exhibits 6-B, 7-B** and **8-B**.

[21] *See* Appendix **Exhibit 8-A**.

[22] Preliminary Injunction and Other Equitable Relief as to R. Allen Stanford [Docket No. 159].

[23] Appendix **Exhibit 6** at App. 000147.

hired additional employees, including several lawyers and paralegals, and he began working seven days per week for as many as sixteen hours per day.[24] Throughout this process, he routinely spoke with Mr. Lane and was repeatedly promised that his fees and expenses would be paid. As of this date, based on Mr. Lane's representations, Mr. Schaffer owes over $150,000.00 in fees and expenses to the attorneys, investigators, and paralegals that have worked with him on Mr. Stanford's defense, as well as an additional $25,500.00 in additional out-of-pocket expenses, and he has received no income from his work defending Mr. Stanford.[25] Mr. Schaffer is only one example of the injustice of Underwriters' conduct, as other defense counsel were similarly misled by Underwriters and, if necessary, will present evidence of such to this Court.

C.    **The Impact on the Criminal Action.**

As this Court noted in its October 9, 2009 Order, "The potential harm to them [Defendants] if denied coverage is not speculative but real and immediate: they may be unable to defend themselves in civil actions in which they do not have a right to court-appointed counsel."[26] While this Court was referring to the SEC Action, the harm also is real and imminent in the Criminal Action. Defendants' criminal attorneys are not being paid and the option of using a public defender is no longer viable based on the commitment undertaken by defense counsel following Underwriters' representations of payment.

The Criminal Action cannot advance unless and until it is determined whether Defendants' criminal attorneys are going to be paid by Underwriters, and this is the

---

[24] *Id.*

[25] *Id.*

[26] Order dated October 9, 2009 [Docket No. 831].

reason that Judge Hittner has ordered Underwriters to show cause on December 17, 2009 why they should not be ordered to immediately pay Defendants' defense costs as promised.[27] Defendants' constitutional rights to speedy trials and to effective assistance of counsel are at stake. Underwriters cannot be allowed to disrupt Defendants' defenses in the Criminal Action, or in the SEC Action, and thereby influence the probability of events that may trigger exclusions under the policies.

Underwriters' Motion has nothing to do with this Court's prior orders, but rather is being used as a vehicle to delay a potential ruling by Judge Hittner that Underwriters improperly withdrew its contractual obligation to advance defense costs in both the SEC Action and the Criminal Action. An immediate resolution of the defense cost issue is necessary to advance the Criminal Action, which is currently stalled due to Underwriters' bad faith conduct.

## III.    ARGUMENT

### A.    This Court has not Held that it has Exclusive Jurisdiction Over the Policies.

Underwriters contend that Defendants and Defendants' Attorneys blatantly disregarded this Court's orders. Underwriters are wrong. At worst, subject to this Court's ruling on this issue, Defendants and Defendants' Attorneys may have misunderstood the intended scope of this Court's orders. Simply put, Defendants and Defendants' Attorneys did not interpret those orders as prohibiting the relief sought within the Southern District. While no question exists that this Court prohibited at least Mr. Stanford from seeking relief in London at a time when this Court was preparing to rule on the specific issue that was presented to the London tribunal, that scenario is entirely different from Defendants'

---

[27] *See* Exhibit C to Underwriters' Motion [Docket 898-6].

current attempts to seek a resolution of the defense cost issue in another district court within the Fifth Circuit that already has jurisdiction over the Criminal Action and an undeniable interest in swiftly resolving the insurance coverage issues. Moreover, as previously noted, Underwriters already has filed briefs and attended hearings on the defense cost issue before Judge Hittner.

Even if this Court intended to enjoin Mr. Stanford, it is unclear whether this Court's Order of September 28, 2009 applies to the other Defendants as well.[28] And, subsequent to this Court's Order of September 28, 2009, this Court specifically declined to rule whether the insurance policy proceeds were part of the receivership estate.[29] Likewise, this Court has denied a motion by Underwriters to intervene in this proceeding.[30] Finally, as noted above, the motions to compel attorneys' fees already were pending in the Southern District when this Court issued its Order of September 28, 2009. Accordingly, sufficient uncertainty exists as to the scope of this Court's prior orders and such uncertainty weighs against a finding of contempt or sanctions.

The September 28th Order was issued in response to a motion by the Receiver to enjoin Mr. Stanford's London lawyer from taking actions in a London court because the issue of whether the policies were part of the Receivership Estate was pending before this Court.[31] Underwriters did not participate in the hearing that led to the Order and none of the participants requested that this Court assume exclusive jurisdiction over the policies.[32]

---

[28] Order dated September 28, 2009 [Docket No. 810].

[29] Order dated October 9, 2009 [Docket No. 831].

[30] Underwriters' Motion to Intervene of September 11, 2009 [Docket No. 774], and Order dated November 19, 2009 [Docket No. 883].

[31] *See* Emergency Motion for Clarification that Receivership Order does not Apply to D&O Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds [Docket No. 538].

[32] *See* Appendix at **Exhibit 10.**

The Receiver simply wanted the Court to enjoin Mr. Stanford from moving forward with a hearing the next day in London.[33]

If, in fact, this Court intended to preclude the Southern District from deciding whether Underwriters are obligated to fund a defense of the Criminal Action and the SEC Action, then Defendants and Defendants' Attorneys seek both a clarification *and* reconsideration of those orders. Subject to their right of appeal, Defendants and Defendants' Attorneys will comply with this Court's ultimate ruling as to whether Defendants have the right to seek relief in the Southern District with respect to the insurance coverage issues. This is not an instance of forum shopping by Defendants. Defendants merely seek a prompt determination of the coverage issues in light of the grave urgency presented by the upcoming criminal trial. Given that the Criminal Action is pending in the Southern District, and the other factors as set forth above, it appeared to Defendants and Defendants' Attorneys to be entirely reasonable to seek relief within the Southern District.

**B.    Injunctive Relief is Not Warranted.**

Among the relief sought in Underwriters' Motion is an order requiring Defendants and Defendants' Attorneys to "immediately withdraw and/or dismiss the Southern District Actions related to proceeds of the Policies on or before December 7, 2009," and enjoining Defendants and their Attorneys from proceeding with the hearing scheduled by Judge Hittner for 1:30 p.m. (CST), December 17, 2009, in the Southern District.[34] Underwriters have offered no evidence of the irreparable injury that they will suffer if the injunctive relief that they seek is not issued. Underwriters similarly fail to

---

[33] *Id.* at 9.

[34] Underwriters' Motion [Docket No. 898] at 5.

explain how they can properly seek to compel Defendants and Defendants' Attorneys to refrain from appearing and proceeding as clearly ordered by Judge Hittner. Indeed, on December 10, 2009, Judge Hittner denied Underwriters' Motion for Continuance of the Preliminary Injunction hearing set for December 17, 2009.[35]

If Underwriters are ordered to pay defense costs by Judge Hittner on an interim basis pending a final resolution of the coverage action, which is the relief sought by Defendants, it will place no undue hardship on Underwriters as their liability is capped under the insurance policies.[36] Additionally, Courts routinely have recognized an absence of harm in requiring the payment of defense costs until an adjudication because most D&O policies, including the policies in this case, contain a right of reimbursement that enables the insurer to recover payments *already made* that ultimately are found not to have been due under the policy.[37]

The injunctive relief sought by Underwriters from this Court ordering Defendants and Defendants' Attorneys to disobey the order of another United States District Court creates a jurisdictional conundrum that would most certainly need to be resolved by the Fifth Circuit. That is no doubt precisely the result sought by Underwriters, who wish at all costs to avoid or delay their contractual payment obligations while Defendants are rushed to a criminal trial that would significantly impact their lives and their freedom. Underwriters have no need for emergency interim relief from this Court. The worst that

---

[35] *See* Appendix at **Exhibit 11**.

[36] *See In re Worldcom, Inc. Securities Litigation*, 354 F. Supp. 2d 455, 470 (S.D.N.Y. 2005).

[37] *Id.* While the policies contain a right to *seek* reimbursement, the term "reimbursement" clearly means to seek amounts that already have been paid. Here, of course, Underwriters simply retroactively withdrew the defense and left numerous defense counsel in both the SEC Action and the Criminal Action with large unpaid receivables.

can happen to Underwriters is that Judge Hittner will require them to do what they previously agreed to do and what the insurance policies contractually require them to do.

## C.    Underwriters' Motion for Contempt is Without Merit.

"Contempt is committed when a person 'violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act.'"[38] "The judicial contempt power is a potent weapon that should not be used if the court's order upon which the contempt was founded is vague or ambiguous."[39] Thus, the court's order must set forth in specific detail an unequivocal command. In *In re Baum*, where the bankruptcy court's order vacating and setting aside a notice of deposition was not addressed specifically to the attorney that ultimately conducted the deposition in alleged violation of the order, and where the order did not specifically direct that the deposition not take place, the Fifth Circuit held that the conduct in question did not constitute a clear affront to the court's authority.[40]

The orders in question in this case were not addressed to all Defendants or to all Defendants' Attorneys. Likewise, neither Defendants nor Defendants' Attorneys interpreted the orders to expressly preclude the actions taken in the Southern District. Ms. Pendergest-Holt's and Mr. Lopez's motions to compel payment of defense costs in the Criminal Action, by way of example, already were on file when this Court's orders of September 28, 2009 and October 9, 2009 were issued. Likewise, neither Defendants nor Defendants' Attorneys interpreted the orders as granting this Court *exclusive* jurisdiction

---

[38] *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (quoting *Baumrin v. Cournoyer*, 447 F. Supp. 225, 227 (D. Mass. 1978)).

[39] *Id.* (citing *Int'l Longshoreman's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967); *Ford v. Kammerer*, 450 F.2d 279 (3rd Cir. 1971)).

[40] *Id.*

over the insurance policies. To the contrary, Defendants and Defendants' Attorneys read this Court's most recent pronunciation on this issue just as it was written in the October 9, 2009 order—that this Court specifically declined to rule whether the policy proceeds were the property of the pending receivership.

**D.    Underwriters' Motion for Sanctions is Without Merit.**

It is incredibly ironic that Underwriters, which promised on numerous occasions to pay Defendants' legal fees and expenses, and which, without any legal authority whatsoever, *unilaterally* and *retroactively* decided to rescind that promise, now seek attorneys' fees from Defendants *and* from Defendants' Attorneys. Underwriters took part in proceedings in the Southern District as far back as September 14, 2009, and even before that in state district court in Dallas County, yet now claim that they require *emergency* relief and a fee award from this Court. Such a claim is without merit.

## IV.    CONCLUSION

The only "emergency" facing Underwriters is that they have until December 17, 2009 to come up with a valid legal reason as to why they unilaterally and retroactively withdrew their repeated commitments to fund the defense of both the Criminal Action and the SEC Action. Underwriters' conduct has undeniably caused harm to Defendants and Defendants' Attorneys and, for that reason, Defendants sought relief in the Southern District. The Southern District was deemed an appropriate jurisdiction to seek relief because the Criminal Action already was pending before the Southern District and Underwriters already had appeared before Judge Hittner in connection with coverage issues related to the payment of defense costs without objection to this Court.

If Defendants and Defendants' Attorneys misinterpreted this Court's prior orders, and in that case, if this Court chooses not to reconsider those orders to allow the actions in the Southern District to go forward, Defendants and Defendants' Attorneys will comply with this Court's ruling. Ultimately, the crucial consideration is a speedy resolution to the defense costs issue, so that Defendants can mount an adequate defense to both the Criminal Action and the SEC Action.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that Underwriters' Emergency Motion to Enforce Receivership Order and Injunction and Motion for Contempt be DENIED in its entirety, and for such other and further relief to which they might be justly entitled.

Respectfully submitted,

By: /s/ Lee H. Shidlofsky
  Lee H. Shidlofsky
  State Bar No. 24002937
  VISSER SHIDLOFSKY LLP
  7200 N. Mopac Expy., Suite 430
  Austin, Texas 78731
  Phone: (512) 795-0600
  Fax: (866) 232-8709

  **ATTORNEYS FOR LAURA
  PENDERGEST-HOLT, R.
  ALLEN STANFORD and
  GILBERT LOPEZ**

  **- and -**

By: /s/ Gregg Anderson
  Gregg Anderson
  State Bar No. 011186200
  TERRY BRYANT, PLLC
  8584 Katy Freeway, Suite 100
  Houston, Texas 77024
  Phone: (713) 973-8888
  Fax: (713) 973-1188

  **ATTORNEYS FOR MARK
  KUHRT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of December, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to each counsel of record. To the extent any such counsel is not registered for such electronic delivery, the foregoing document will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Lee H. Shidlofsky
Lee H. Shidlofsky