IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § § | |
| Defendants. | § § | |

### ORDER

This Order addresses HP Financial Services Venezuela, C.C.A's, ("HPFS") request for ruling on matters the Court previously took under advisement [1169].[1] Because Trustmark National Bank's payment on a letter of credit issued for HPFS's benefit will not transfer Receivership Estate funds, the Court grants the motion and clarifies that the Receivership Order does not prevent Trustmark from honoring the letter of credit upon proper presentation by HPFS. Additionally, because the cash collateral securing the letter of credit almost certainly is traceable to funds that properly belong to the Receivership Estate, the Court denies Trustmark's set off request. Although the parties ask the Court to

---

[1] The Court previously granted HPFS and Trustmark permission to intervene. *See* Order of Jan. 5, 2010 [947]. In their motions to intervene, the parties asked the Court to clarify whether the order appointing the Receiver applied to the letter of credit in dispute as well as Trustmark's right to set off against certain cash collateral should the Court require it to honor the letter of credit. *See* HPFS's Mot. for Order [418]; Trustmark's Mot. [429]; Trustmark's Br. [430]; Second Am. Order Appointing Receiver [1130] (the "Receivership Order").

ORDER – PAGE 1

make a global ruling applicable to all letters of credit, the Court limits its ruling to the facts of this dispute.[2]

## I. ORIGINS OF THE HPFS-TRUSTMARK DISPUTE

This letter of credit dispute concerns matters related to the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants"). As part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession of the" "Receivership Assets" and "Receivership Records," (collectively, the "Receivership Estate"). *See* Receivership Order at 2-3. The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3.

Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets

---

[2]In response to the Receiver's request to sell certain pieces of real property, [389], Trustmark also asked the Court "to allow meaningful participation in any sale of [Trustmark's] Real Estate Collateral, including the right to be heard and the right to exercise its rights and remedies." Trustmark's Br. at 11. The Court has since entered an order outlining the procedures the Receiver should use in the sale of real property. *See* Order of Jan. 25, 2010 [979]. Trustmark has not objected to those procedures. Accordingly, the Court denies as moot Trustmark's motion to the extent it concerned the sale of real property.

traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.* at 5.

Against this backdrop, HPFS asks the Court to clarify whether the Receivership Order bars Trustmark from paying on a transferable irrevocable standby letter of credit in HPFS's benefit issued by Trustmark on application by Stanford Corporate Services (Venezuela), C.A. ("Stanford Venezuela").[3]  The letter of credit secures HPFS's payment on a lease of computer equipment it made to Stanford Venezuela prior to the Receivership proceedings. After Stanford Venezuela allegedly defaulted on the lease, HPFS presented the letter of credit to Trustmark for payment.  Trustmark, however, refused because, among other things, it interprets the Receivership Order as prohibiting payment on the letter of credit.  *See* HPFS's Mot. for Order Exs. C & E (Trustmark's First and Second Denial Letters).  Trustmark argues separately that, in the event the Court determines that the Receivership Order does not apply to the letter of credit, it should be allowed to exercise its perfected security rights against cash collateral deposited by Stanford Venezuela with Trustmark.  *See* Trustmark Br. at 5-10; Trustmark App. Ex. A-2 at 17; Ex. A-4 at 21 [431].

---

[3]Although Stanford Venezuela has not been placed in receivership in the United States, the parties assume that the Receivership Order applies to it as both an entity that comprised the Stanford Defendants' far-flung Ponzi scheme and as a holder of assets traceable to the Receivership Estate.

ORDER – PAGE 3

The Receiver objects to both requests. He contends that HPFS and Trustmark's requests ultimately constitute claims against Receivership Estate assets or funds that "came out of, and [are] properly considered part of, the Receivership Estate." Receiver's Consolidated Resp. at 1 [549]. The Receiver further argues that HPFS and Trustmark should channel their claims through the Receivership's administrative claims process or reach a negotiated agreement with the Receiver, preserving the status quo. The Receiver previously reached a stipulated agreement with Comerica Bank concerning similar issues involving letters of credit. *See* Stipulation [506].

## II. THE RECEIVERSHIP ORDER DOES NOT APPLY TO THE LETTER OF CREDIT

The Court disagrees with Trustmark and the Receiver concerning the Receivership Order's applicability to the letter of credit. As an initial matter, Trustmark explicitly agreed to pay HPFS on the letter of credit in precisely circumstances at issue here and to refrain from seeking a judicially-sanctioned release of its payment obligation. The letter of credit provides:

> Payment hereunder shall be made regardless of . . . (b) the solvency, existence or condition, financial or other, of, or the pendency of any proceeding under any bankruptcy, reorganization, moratorium, arrangement of debt, insolvency, or receivership law with respect to the Applicant or any other person or property from whom or which we may be entitled to reimbursement for such payment; and (c) without limiting clause (b) above, whether we are in receipt of or expect to receive funds or other property as reimbursement in whole or in part after such payment. We agree that we will not take any action to cause the issuance of an Order of any court relieving us of our obligation to make payment in accordance with the terms of this Transferable Irrevocable Standby Letter of Credit.

HPFS's Mot. for Order Ex. A. (Letter of Credit at 2). The plain language of the letter of credit itself therefore obligates Trustmark to pay HPFS "regardless of" the Receivership proceedings. Accordingly, Trustmark must honor the letter of credit provided that HPFS presented it for "payment in accordance with [its] terms."

Normally, this would end the Court's inquiry. Here, however, the Receivership Order's provisions protecting Receivership Estate assets loom in the background. And, contractual terms between private parties cannot override a court order. Thus, the Court also must address whether the Receivership Order bars Trustmark from honoring the letter of credit.

It does not. "All letters of credit, whatever their function, involve three separate and independent contracts: (1) the underlying contract between the [bank] customer and beneficiary; (2) the customer's contract with the issuing bank to issue the letter of credit; and (3) the issuing bank's contract to pay the beneficiary" pursuant to the letter of credit's terms. *In re Originala Petroleum Corp.*, 39 B.R. 1003, 1007 (Bankr. N.D. Tex. 1984) (citing *East Girard Sav. Ass'n v. Citizens Nat'l Bank & Trust Co. of Baytown*, 593 F.2d 598, 601 (5th Cir. 1979); *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 112 (Tex. 1979)). "As a general rule, the obligations and duties created by the contract between the issuer and the beneficiary are completely separate and independent from the underlying transaction between the beneficiary and the bank's customer." *In re Coral Petroleum, Inc.*, 878 F.2d 830, 833 (5th Cir. 1989) (citing *Philadelphia Gear Corp. v.*

*Central Bank*, 717 F.2d 230, 235 (5th Cir. 1983)). "The shifting of liability to the bank rather than to the services or goods provider is the main purpose of the letter of credit." *In re Compton Corp.*, 831 F.2d 586, 590 (5th Cir. 1987), *reh'g granted on other grounds*, 835 F.2d 584 (5th Cir. 1988).

Caselaw has long held that the tripartite nature of letter of credit transactions means that Trustmark will pay HPFS with Trustmark – not Receivership Estate – funds. *See, e.g.*, *In re Compton Corp.*, 831 F.2d at 589 (bankruptcy context) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued." (citing *In re W.L. Mead, Inc.*, 42 B.R. 57 (Bankr. N.D. Ohio 1984); *In re M.J. Sales & Distrib. Co.*, 25 B.R. 608 (Bankr. S.D.N.Y. 1982) and rejecting *In re Twist Cap, Inc.*, 1 B.R. 284 (Bankr. M.D. Fla. 1979))).[4] Thus, as in the bankruptcy context,[5] "cashing the letter of credit will not divest the [Receivership] [E]state of property since neither the letter of credit nor its proceeds are property of the [Receivership] [E]state under the" Receivership Order. *In re Page*, 18 B.R. at 715; *see also* Receivership Order ¶ 10(a).

---

[4]*See also In re East Texas Steel Facilities, Inc.*, 117 B.R. 235, 240 (Bankr. N.D. Tex. 1990) ("When [the issuer bank] paid [the beneficiary], [the bank] paid its own debt, not a debt of the Debtor [bank customer]." (citing *In re Munzenrieder*, 58 B.R. 228, 231 (Bankr. M.D. Fla. 1986))); *In re Planes*, 29 B.R. 370, 371 (Bankr. N.D. Ga. 1983); *In re Page*, 18 B.R. 713, 715 (D.D.C. 1982).

[5]Because of the strong similarities between the relevant provisions of the Bankruptcy Code and the Receivership Order, bankruptcy caselaw provides analogous principles relevant to resolving this dispute. *Compare* 11 U.S.C. § 362(a) *with* Receivership Order ¶¶ 9-10.

Similarly, honoring the letter of credit does not "create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate" or constitute an "act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate." Receivership Order ¶¶ 10(b) & 10(c); *see also In re Page*, 18 B.R. at 716. Because Trustmark perfected its interest in Stanford Venezuela's cash collateral prior to the Receiver's appointment, "cashing the letter of credit cannot have the effect of either creating or perfecting a lien." *In re Page*, 18 B.R. at 716. Nor will HPFS's presentation of and Trustmark's payment on the letter of credit constitute "an act to 'enforce' a lien" or make a claim against the Receivership Estate, *id.*, because HPFS seeks to "enforce" its "claim" only to Trustmark funds.

It is irrelevant that this forces Trustmark to pay on an obligation for which it has a perfected, but essentially unexercisable, security interest. "[C]ashing the letter will immediately give rise to a claim by [Trustmark] against [Stanford Venezuela] pursuant to the latter's [reimbursement] obligations," but "that claim will not divest the [Receivership Estate] of any property since any attempt to enforce that claim" would run afoul of the Receivership Order's prohibitions against attempts to obtain possession of or enforce liens against Receivership Estate assets. *In re Page*, 18 B.R. at 715-16; Receivership Order ¶¶ 9-10. Accordingly, "although the declaration of the rights of [Trustmark] and [HPFS] under the letter of credit ultimately may affect [Stanford Venezuela], it has no legal interest in the current dispute" between HPFS and Trustmark. *Heritage Bank v. Redcom Labs., Inc.*, 250

F.3d 319, 324 (5th Cir. 2001). The Court therefore finds that the Receivership Order poses no obstacle to HPFS's presenting and Trustmark's paying on the letter of credit.

### III. TRUSTMARK MAY NOT SET OFF AGAINST THE CASH COLLATERAL

Although paying HPFS on the letter of credit obligates Stanford Venezuela to reimburse Trustmark, the Receivership Order prevents Trustmark from exercising its secured creditor rights over Stanford Venezuela's cash collateral absent this Court's approval. The Court previously determined that the Stanford Defendants operated a Ponzi scheme. *See Janvey v. Alguire*, Civil Action No. 3:09-CV-0724 (N.D. Tex. filed Apr. 20, 2009) [456] (Order granting preliminary injunction), *aff'd*, 628 F.3d 164 (5th Cir. 2010). The Fifth Circuit considers Ponzi schemes "insolvent from [their] inception." *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). Thus, Stanford Venezuela's cash collateral almost certainly was derived from fraudulently obtained funds.[6] And, "[c]ollateral which has been pledged by a debtor as security for a letter of credit is property of the debtor's estate." *In re Compton Corp.*, 831 F.2d at 590 (citing *In re W.L. Mead*, 42 B.R. at 59) Accordingly, Trustmark's request falls within the ambit of the Receivership Order's prohibition against "[t]he set off of any debt . . . secured by the Receivership Estate assets." Receivership Order ¶ 10(d).

---

[6]The Court declines to apply the "fraud in the transaction" doctrine in order to release Trustmark from its obligation to pay on the letter of credit. *See In re Originala Petroleum*, 39 B.R. at 1009-13 (citing UCC § 5-114(2)). Although no "consensus as to a proper definition of 'fraud in the transaction'" exists, *id.* at 1010, caselaw on the subject generally concerns situations involving fraudulent documents or fraud by the letter of credit's beneficiary. *Id.* at 1009-13. No party argues that either situation applies. And, even if fraud tainted the agreement between Trustmark and Stanford Venezuela, that merely places Trustmark in the same position as numerous other creditors in the receivership proceedings.

Trustmark contends, primarily on equitable grounds, that the Court should nonetheless allow it to set off against Stanford Venezuela's cash collateral, lest the Court "appl[y] [the Receivership Order] differently to different parties." Trustmark Reply at 9 [600]. This argument, however, misconstrues the consequences of allowing HPFS to present the letter of credit for payment. Trustmark and HPFS do not stand in the same position in relation to the Receivership proceedings. As established above, payment to HPFS under the letter of credit will transfer only Trustmark's funds, not assets or funds that properly belong to the Receivership Estate. The cash collateral in Trustmark's control, however, likely does belong to the Receivership Estate. Because the Receivership Order applies only to Trustmark's request, granting HPFS's request, but not Trustmark's, does not result in unequal treatment.

Trustmark's other arguments do not change this fact. Trustmark maintains that "[l]ongstanding case law holds that . . . a [receivership] court has no absolute control over property claimed by lienholders, nor any general authority to displace vested contract liens," that "receivers are subject to existing rights of creditors," and that "the Fifth Circuit has long held that a bank's set off rights trump the rights of equitable receivers." Trustmark Reply at 7-8 (citing *Kneeland v. American Loan & Trust Co.*, 136 U.S. 89, 97 (1890); *United States v. Shelby*, 68 F.2d 538, 539 (5th Cir. 1934); *Modart, Inc. v. Penrose Indus. Corp.*, 293 F. Supp. 1116, 1119 (E.D. Pa. 1967)).[7] But, allowing HPFS to present the letter of credit for

---

[7]Trustmark cites *Shelby* for the idea that "insolvency alone is a sufficient basis in equity for the set-off not only as between the parties but as against a receiver." 68 F.2d at 539. *Shelby*, however, has limited relevance here. The bank in *Shelby* exercised its right to set off against its customer's bank account because the insolvent customer had not paid a

ORDER – PAGE 9

payment does not alter Trustmark's rights vis-à-vis the cash collateral. *Cf. In re Page*, 18 B.R. at 716 ("The Bank's liens on property of the debtors to secure the letter of credit arrangement was created prior to the initiation of [the Receivership] proceedings and remain valid . . . whether or not the letter of credit is cashed."). Those rights nonetheless involve Receivership Estate funds and are subject to the Receivership Order, which applies to all creditors' security interests regardless of priority. Trustmark understandably desires to set off against the collateral at the same time it pays HPFS under the letter of credit, and the Court may order that result pursuant to its equitable powers. None of Trustmark's cited authorities, however, mandate that outcome, and Trustmark itself recognizes that the decision to allow set off falls within the Court's discretion. *See* Trustmark's Resp. at 8 [553].

Although the Court sympathizes with Trustmark's position, it declines to exercise its equitable powers at this juncture. HPFS may still present the letter of credit for payment. Should HPFS fail to do so properly, Trustmark will have no need to set off against the cash collateral. Even if Trustmark eventually pays HPFS, Trustmark simply will stand in the same position as numerous other creditors to the Stanford Defendants and related entities. The Court generally has required these creditors to obtain recovery through the Receiver's claims procedures. *See, e.g.*, Order of July 28, 2009 [652] (citing, *inter alia*, *Commodity Futures*

---

note due to the bank. The bank customer was not alleged to have deposited fraudulently obtained funds in his account. And, the case concerned neither a letter of credit nor, despite its reference to receivers, a receivership proceeding. At most, *Shelby* establishes that the Court could, as a matter of equity, use Stanford Venezuela's insolvency to justify set off; it does not require the Court to allow set off as a matter of right.

*Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584, 586 (10th Cir. 1984) (holding that the "claims procedures set up by the Receiver will permit [the claimant] to protect his claimed [priority] interest in the assets presently under the control of the Receiver")). Other than making the bare assertion that the claims "procedures available in this case provide no relief to Trustmark" because the Receiver has not "established [a] protocol for resolving [secured] claims," Trustmark Br. at 19-20, Trustmark fails to show that the Receiver's claims process will protect inadequately its security interest. While the Receiver's claims process may not allow Trustmark to immediately recoup via the cash collateral any funds paid to HPFS on the letter of credit, that does not constitute a compelling reason for the Court to afford Trustmark's claim exceptional treatment.[8]

The Receiver presumably now has a better grasp of the Ponzi scheme funds' ultimate disposition than he did when the Court addressed HPFS and Trustmark's motions to intervene. The process of tracking down funds traceable to the Receivership Estate, however, remains far from over. The Court therefore finds that preserving the status quo best serves the Receivership's interests. Trustmark remains free both to negotiate with the Receiver and to renew its set off request should the need arise.

---

[8]The Court granted Trustmark's motion to intervene pursuant to the permissive intervention provisions in Rule 24(b). *See* FED. R. CIV. P. 24(b); Order of Jan. 5, 2010 at 4. Accordingly, the Court did not address whether the Receiver adequately represents Trustmark's interests under Rule 24(a). That issue also differs slightly from whether the Receiver's claims process will address adequately Trustmark's security interest in the cash collateral. The Court's decision to allow Trustmark to intervene, then, says nothing about the Receiver's ability to process Trustmark's claims.

## CONCLUSION

The Court grants HPFS's motion and clarifies that the Receivership Order does not prevent Trustmark from paying HPFS in accordance with the letter of credit's terms. The Court denies Trustmark's request to set off against Stanford Venezuela's cash collateral.

Signed March 31, 2011.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 12