IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | CASE NO. 3:09-cv-0298-N |
| R. ALLEN STANFORD, JAMES M. DAVIS, | § | |
| LAURA PENDERGEST-HOLT, GILBERTO LOPEZ, | § | |
| MARK KUHRT AND LEROY KING, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| STANFORD FINANCIAL GROUP COMPANY and | § | |
| THE STANFORD FINANCIAL GROUP BLDG INC., | § | |
| | § | |
| Relief Defendants. | § | |

## BDO USA, LLP'S
## MOTION TO QUASH SUBPOENA OR,
## IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA

Respectfully submitted,

Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX 75201
Phone: 214-743-4544
Fax: 972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND INFORMATION ................................................................... 3

II.  GROUNDS TO QUASH THE SUBPOENA IN ITS ENTIRETY AS A MATTER
     OF LAW .......................................................................................................... 6

     A.   The Receiver Must Arbitrate Claims Against BDO and Is Not Entitled to
          Any Discovery Not Authorized by the Arbitrators. ............................... 6

     B.   The Stanford Investors Are Not Entitled to Take Any Pre-Suit Discovery
          from BDO. ............................................................................................. 7

III. GROUNDS TO QUASH OR MODIFY PARTICULAR INSTRUCTIONS,
     DEFINITIONS AND REQUESTS FOR PRODUCTION IN THE SUBPOENA ............ 8

IV.  CONCLUSION ............................................................................................... 11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | CASE NO. 3:09-cv-0298-N |
| R. ALLEN STANFORD, JAMES M. DAVIS, | § | |
| LAURA PENDERGEST-HOLT, GILBERTO LOPEZ, | § | |
| MARK KUHRT AND LEROY KING, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| STANFORD FINANCIAL GROUP COMPANY and | § | |
| THE STANFORD FINANCIAL GROUP BLDG INC., | § | |
| | § | |
| Relief Defendants. | § | |

**BDO USA, LLP'S
MOTION TO QUASH SUBPOENA OR,
IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**

**I.**

**INTRODUCTION**

On March 1, 2011, the Receiver issued a Subpoena for the production of documents to

BDO USA, LLP ("BDO").[1] The return date of the Subpoena is now April 14, 2011.[2]

The Receiver served the Subpoena on BDO because BDO once audited certain financial

statements of Defendants Stanford Group Company ("SGC") and Stanford Capital Management,

---

[1]     A copy of the Subpoena is provided under Tab 1 in BDO's Appendix in Support of Motion to Quash
Subpoena or, in the Alternative, Motion to Modify Subpoena ("BDO's App."). 1-7.
[2]     The parties so stipulated. See Exhibit E to Declaration of Robert W. Kantner. (BDO App. 43-44).

LLC ("SCM"), their holding company, Stanford Group Holdings, Inc. ("SGH") and other Stanford Entities that were owned by SGH. BDO never audited any financial statements of Stanford International Bank, Ltd. ("Stanford Bank").[3] Considering the circumstances in which the Subpoena was issued, statements made by counsel involved in issuing and enforcing the Subpoena, and the requests for documents contained in the Subpoena, the Subpoena is not intended merely to collect documents regarding the identity and location of assets of SGC, SCM and other Stanford Entities. Moreover, the Subpoena is not intended to obtain evidence for the SEC's lawsuit against Stanford Bank and the other Defendants. Rather the Subpoena is intended to collect evidence to investigate and support affirmative claims by the Receiver and/or the Committee for relief against BDO – claims that are related to BDO's Stanford audits.

BDO audited financial statements of SGC and SCM pursuant to engagement letters (the "Audit Agreements") that provided that any dispute, controversy or claim that arose in connection with the performance or breach of the Audit Agreements would be arbitrated and that there would be no pre-hearing discovery in such proceedings except as specifically authorized by the arbitration panel.[4] The Receiver has not filed any claim or initiated any arbitration proceeding against BDO. Therefore, the Receiver's service of the Subpoena violates the arbitration provisions of the Audit Agreements.

While the Receiver's law partner signed the Subpoena, the Subpoena was served on BDO by Edward Snyder, an attorney for Stanford Investors and a member of the Official Stanford Investors Committee (the "Committee").[5] Subsequently, BDO was advised that it should conduct any discussions it wished to have regarding its compliance with the Subpoena with Guy

---

[3] See Paragraph 2 of Declaration of Carlos L. Ancira, Jr. (BDO App. 12)
[4] See Paragraph 4 of Declaration of Carlos L. Ancira, Jr. and Exhibit A thereto. (BDO App. 12-18)
[5] See Paragraphs 4-5 of Declaration of Robert W. Kantner. (BDO App. 20-21)

Hohmann and Wade Jefferies of the firm of Hohmann, Taube & Summers, L.L.P., who have been retained by the Committee to investigate potential claims against BDO.[6]  To date, neither the Committee nor any Stanford Investors have filed any claim against BDO and they are not entitled to take discovery from BDO unless and until they do file a claim against BDO.

For these reasons and the other reasons set forth below, the Subpoena should be quashed. Alternatively, due to the overbreadth, unreasonableness and undue burdensomeness of particular Instructions, Definitions and Requests for Production in the Subpoena and the nature of certain Requests for Production in the Subpoena, those provisions of the Subpoena should be quashed or modified.  This is particularly true given the fact that neither the Receiver, the Committee nor any Stanford Investor has asserted a claim against BDO; therefore, we have no standard by which to judge the reasonableness of any request or the relevance of any responsive document.

## II.

### BACKGROUND INFORMATION

BDO audited annual financial statements of SGC from the fiscal year ended December 31, 1996 until SGC was closed by the Federal Government in early 2008.  BDO audited financial statements of SCM and certain other Stanford Entities for a shorter period of time.[7]

BDO performed each of these audits pursuant to an Audit Agreement.[8]  Each of the Audit Agreements provided for the arbitration of disputes arising out of BDO's performance or breach of the agreements substantially as follows:

> If any dispute, controversy or claim arises in connection with the performance or breach of this agreement (including disputes regarding the validity or enforceability of this agreement), and cannot be resolved by facilitated

---

[6]    See Paragraph 7 of Declaration of Robert W. Kantner.  (BDO App. 21)
[7]    See Paragraph 6 of Declaration of Lisa A. Morris.  (BDO App. 9)
[8]    See Paragraph 4 of Declaration of Carlos L. Ancira, Jr..  (BDO App. 12)

negotiations (or the parties agree to waive that process), then such dispute, controversy or claim shall be settled by arbitration.[9]

SGC, SCM and certain other Standard Entities, on the one hand, and BDO, on the other hand, further agreed that the arbitration proceeding would be governed by the provisions of the Federal Arbitration Act (the "FAA") or, if a court found that the FAA should not apply, by the laws of the State where the arbitration proceeding takes place.  The parties further agreed to submit all discovery requests to the arbitrators:

> In any arbitration instituted hereunder, the proceedings shall proceed in accordance with the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association (AAA), *except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel.*

(Emphasis added.)

The Federal Government closed SGC, SCM and other Standard Entities on or about February 18, 2008.  On the motion of the Securities & Exchange Commission, the Court appointed Ralph S. Janvey as Receiver for the Receivership Assets and Receivership Records of Stanford Bank, SGC, SCM, Robert Allen Stanford, James M. Davis and Laura Pendergest-Holt.

On or about March 30, 2010, the SEC, the Receiver, John J. Little, the Examiner, and attorneys for Stanford Investors filed a Stipulation and [Proposed] Order to establish the Committee.[10]  The Receiver agreed that the Committee "may prosecute (either directly, or through one or more of its members or designees), claims against Stanford's pre-receivership professionals (including but not limited to accountants....) that are in the nature of malpractice, professional negligence, breach of fiduciary duty, breach of contract, or claims arising out of

---

[9]   See Paragraph 4 of Declaration of Carlos L. Ancira, Jr. and Exhibit A thereto.  (BDO App. 12-18)
[10]  See Exhibit C to Declaration of Robert W. Kantner.  (BDO App. 29-40)

such professionals' rendition of professional services to any of the Stanford entities prior to February 16, 2009." BDO understands that the Court signed this Order in August, 2010.

On or about October 19, 2010, the Receiver sent a letter to BDO requesting that BDO provide copies of all documents relating to any audit of any financial statements of Stanford Bank, SGC, SCM, Stanford, Davis, Pendergest-Holt or any entity established by them.[11]   On November 2, 2010, BDO responded to the Receiver's letter.[12]   BDO pointed out that the Receiver's request was inconsistent with the Audit Agreements and with Section 501.76 of Title 22 of the Texas Administrative Code – both of which provide that BDO's work papers remain the property of BDO and need not be turned over to BDO's clients.  Pursuant to the Audit Agreements and the Texas Administrative Code, BDO did provide to the Receiver copies of the Audit Agreements, the audited financial statements and such other records as would, under the Texas Administrative Code, "constitute part of the client's books and records and are not otherwise available to the client."[13]

On or about February 3, 2011, Edward Snyder, a member of the Committee and an attorney for Stanford Investors, contacted BDO's counsel.   Mr. Snyder advised BDO's undersigned counsel that his clients and other Stanford Investors, and the Receiver, were investigating potential causes of action against BDO.  Mr. Snyder stated that the Receiver had asked the Committee to look into such claims.  Mr. Snyder further stated that he and other members of the Committee were concerned that the statutes of limitations on those claims might expire on February 17, 2011.  Ultimately, the Receiver, the Committee, Mr. Snyder's clients and BDO entered into a Tolling Agreement pursuant to which limitations periods for the potential

---

[11]     See Exhibit 6 to Declaration of Robert W. Kantner.  (BDO App. 23)
[12]     See Exhibit 7 to Declaration of Robert W. Kantner.  (BDO App. 24-28)
[13]     *Id.*

claims were tolled until July 1 subject to any limitations or other defenses that existed as of the effective date of the Tolling Agreement.[14]

On March 1, 2011, the Receiver served the Subpoena on BDO. The Subpoena requests virtually every document that BDO ever received or prepared in connection with any work it performed for any Stanford Entity. On March 10, 2011, the undersigned counsel for BDO sent a letter to the Receiver's law partner, Ben Krage, who signed the Subpoena, stating that the Receiver stands in the shoes of BDO's Stanford clients and therefore is subject to the arbitration provisions, including the above-quoted discovery provision, of the Audit Agreements. BDO's counsel stated that BDO was willing to discuss making a reasonable production of documents in response to the Subpoena but only if the Receiver agreed that BDO's production of documents would not constitute a waiver of the arbitration provisions.[15]

Mr. Krage turned the negotiation of an agreement for BDO's production of documents over to Messrs. Hohmann and Jefferies, attorneys for the Committee. The Committee's attorneys and the undersigned attorney for BDO conducted negotiations for several weeks, but no agreement could be reached. At the end, the Committee's attorneys took the position that the Receiver is not bound by the arbitration provisions of the Audit Agreements.[16]

## II.

## GROUNDS TO QUASH THE SUBPOENA IN ITS ENTIRETY AS A MATTER OF LAW

### A.     The Receiver Must Arbitrate Claims Against BDO and Is Not Entitled to Any Discovery Not Authorized by the Arbitrators.

The Receiver has never done any business with BDO – at least not related to any Stanford Entity. Therefore, if the Receiver has any claim against BDO, it is only because the

---

[14]     See Paragraph 3 of Declaration of Robert W. Kantner. (BDO App. 20)
[15]     See Paragraph 9 and Exhibit D to Declaration of Robert W. Kantner. (BDO App. 3, 41-42)
[16]     See Paragraph 10 of Declaration of Robert W. Kantner. (BDO App. 21)

Receiver has stepped into the shoes of SGC, SCM, or another Stanford Entity which entered into an Audit Agreement with BDO.  If the Receiver wants to claim the benefit of those Audit Agreements to assert any claim against BDO, he must accept the Audit Agreements in their entirety.  The Receiver may not select certain provisions of the Audit Agreements to enforce and ignore or discard other provisions.  The Audit Agreements expressly provide that any claims the Receiver might bring against BDO that arise out of BDO's performance of the agreements, i.e. out of BDO's audits, must be arbitrated.  Moreover, the Audit Agreements provide that the only discovery the parties may obtain is that authorized by the arbitrators.  The arbitration provision, including the limitation of discovery to that authorized by the arbitration panel, is enforceable under applicable law.  The Receiver's issuance of the Subpoena in order to obtain evidence to use to sue BDO violates those provisions and is not permissible as a matter of law.

**B.      The Stanford Investors Are Not Entitled to Take Any Pre-Suit Discovery from BDO.**

Under a stipulation filed by the Receiver, the Examiner and Stanford Investors, the Receiver has agreed that the Committee or members thereof may assert against BDO claims the Receiver might have against BDO.  As assignees, the Committee and members of the Committee may only acquire the rights the Receiver possesses.  Therefore, the Committee and its members are also bound by the arbitration provisions of the Audit Agreements and may not take discovery from BDO in order to assert any claims against BDO the Receiver assigned to them.

The Stanford Investors also claim that they may have their own claims against BDO – separate and apart from any claims the Receiver may have assigned to them.  They may or may not have claims in their individual capacities; but even if the Stanford Investors have such claims, they have not yet asserted any claims against BDO and are not entitled to take any pre-

filing discovery from BDO.  The fact that the Stanford Investors felt they had to have the Receiver issue the Subpoena reflects this fact.

### III.
### GROUNDS TO QUASH OR MODIFY PARTICULAR INSTRUCTIONS, DEFINITIONS AND REQUESTS FOR PRODUCTION IN THE SUBPOENA

For the reasons stated above, the Subpoena should be quashed in its entirety.  In the alternative, particular Instructions, Definitions or Requests in the Subpoena should be quashed or modified.

First, the Subpoena does not seek documents related to this case – the SEC's case against Stanford Bank, et al.  Nor does the Subpoena seek documents to identify accounts, etc. of the Receivership Estate.  (The Receiver already has SGC's and SCM's audited financial statements.)  As a result, there is no basis for issuing the Subpoena under Rule 45.

Second, neither the Receiver nor the Committee has asserted any allegation or claim by which the reasonableness of the Instructions, Definitions and Requests in the Subpoena may be judged.  The Receiver has agreed that the Committee may pursue the Receiver's claims for malpractice, professional negligence, breach of contract and breach of fiduciary duty against BDO; but neither the Receiver nor the Committee has articulated any basis to assert such claims against BDO.  BDO has no clue as what it may have done wrong.  Instead, what the Receiver and the Committee seek to engage in is a fishing expedition.  That would not be permitted if the Receiver or BDO had actually filed a claim against BDO.  It should not be permitted when neither the Receiver nor the Committee has filed any complaint stating any claims against BDO.  Allowing the Receiver and the Committee to take such limitless discovery without having asserted any claims against BDO would violate BDO's constitutional rights to due process.

Third, the Instructions, Definitions and Requests in the Subpoena – on their face - are unreasonable.  First, the Instructions are overbroad and unduly burdensome.  Instruction No. 1 states that the Subpoena covers the entire period of time during which BDO performed work for or on behalf of any Stanford Related Entity.  As stated above, BDO has audited annual financial statements of SGC since 1996.  Under a long-standing document retention policy BDO only keeps documents for seven years.  Even that period is too long for the Subpoena.  Even if the limitations period for any claims the Receiver or the Stanford Investors might have against BDO have not already expired, it is highly unlikely they could assert claims all the way back to 2004.  For example, the limitations periods for torts such as the torts Receiver has agreed the Committee may pursue on his behalf is two years.  Second, Instruction No. 4 seeks to require BDO – for each document that no longer exists or that BDO cannot locate – to identify each such document, to state why the document is not available, to identify each person having knowledge about the disposition of the document and to "identify any other document evidencing the lack of document's existence or any facts about the lost document."  Given the time period covered by the Subpoena and BDO's document retention policy, this would basically require BDO to try to recreate its Stanford files for an eight year period:  1996-2003.  Moreover, given BDO's longstanding e-mail policy,[17] the Subpoena would require BDO to try to recreate thousands of unavailable e-mail.

The Subpoena literally calls for the production of many privileged documents.[18]  BDO should not have to log such documents before a lawsuit has ever been filed.  Moreover, given that neither the Receiver or any Stanford Investor has asserted any claim against BDO, it is

---

[17]     See Paragraph 4  of Declaration of Lisa A. Morris.  (BDO App. 9)
[18]     See Paragraph 6 of Declaration of Lisa A. Morris.  (BDO App. 9)

**BDO USA, LLP'S MOTION TO QUASH SUBPOENA OR,**
**IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**                                    **Page 9**

unreasonable to demand that BDO provide a privilege log for each document BDO claims is not discoverable. (Instruction No. 4).

The Definitions are also unduly burdensome. Definition No. 1 defines BDO[19] as BDO and BDO International and their partners, agents, etc. BDO is an independent entity. BDO does not have possession, custody or control of BDO's International documents.[20]

Combined, the definitions render the requests unduly burdensome. Finally, the definition of the terms "document" and "documents" include a definition of "control" that seeks to compel BDO to produce publicly filed documents that are equally accessible to the Receiver and the Stanford Investors.

Many of the individual requests are unreasonable. Some of them, such as Request No. 1, seeks to compel BDO to create documents summarizing data for the Receiver. That is not proper. Virtually all of the Requests (Requests Nos. 2-7, 9, 11 and 13-24) call for the production of all files or all documents "relating" to particular subjects. Most of the documents requested are unlikely to be relevant to any claim against BDO by the Receiver or the Committee because they are internal documents of BDO that were never seen and therefore could not have been relied upon by SGC or SCM or Stanford Investors.

Two of the Requests (Requests Nos. 10 and 12) call for documents that are confidential as a matter of law.

Finally, two of the Requests (Request Nos. 20 and 21) all for the production of documents that contain confidential, private information of current and former BDO employees.

---

[19]  See Paragraph 9 of Declaration of Lisa A. Morris. (BDO App. 9)
[20]  *Id.*

**BDO USA, LLP'S MOTION TO QUASH SUBPOENA OR,**
**IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**                              **Page 10**

## IV.

## CONCLUSION

The Subpoena should be quashed in its entirety.   In the alternative, the individual Instructions, Definitions and Request in the Subpoena should be quashed or modified on the grounds stated above.  Moreover, Requests Nos. 10, 12, 20 and 21 should be quashed as a matter of law.  Finally, BDO requests such other and further relief to which it may be justly entitled.

Respectfully submitted,


/s/ Robert W. Kantner
Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX  75201
Phone: 214-743-4544
Fax:  972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP


## CERTIFICATE OF CONFERENCE

The undersigned counsel for BDO hereby certifies that he initially contacted Mr. Ben Krage, who issued the Subpoena, that he was referred to Messrs. Hohmann and Jefferies to conduct a conference on the foregoing Motion and that he had numerous conferences and exchanged numerous e-mail with those attorneys – particularly Mr. Jefferies – in an effort to resolve the foregoing Motion but ultimately they were unable to do so.

/s/ Robert W. Kantner
Robert W. Kantner

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of April, 2011, a copy of the foregoing Motion was served as follows:

Ben Krage (via e-mail and hand delivery)
Krage & Janvey L.L.P.
2100 Ross Avenue
Dallas, TX  75201

Attorney for Receiver

T. Wade Jefferies (via e-mail and overnight delivery)
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, 18th Floor
Austin, TX  78701

Attorney for the Official Stanford Investors Committee

/s/ Robert W. Kantner
Robert W. Kantner