IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §§§§ | |
| Plaintiff | §§ | |
| v. | §§ | |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, GILBERTO LOPEZ, MARK KUHRT AND LEROY KING, | §§§§§§§§ | CASE NO. 3:09-cv-0298-N |
| Defendants, | §§§ | |
| and | §§ | |
| STANFORD FINANCIAL GROUP COMPANY and THE STANFORD FINANCIAL GROUP BLDG INC., | §§§§ | |
| Relief Defendants. | § | |

**BRIEF IN SUPPORT OF BDO USA, LLP'S
MOTION TO QUASH SUBPOENA OR,
IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**

Respectfully submitted,

Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX 75201
Phone: 214-743-4544
Fax: 972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT AND AUTHORITIES................................................................... 3

    A.  The Receiver's Claims Against BDO Are Subject to Arbitration pursuant to the Federal Arbitration Act (the "FAA"), Under Which Arbitration Provisions are Presumed Valid. .................................................................. 3

        1.  The FAA Applies. .................................................................................. 3

        2.  Under the FAA, Arbitration Provisions Are Presumed Valid. ............. 3

        3.  A Broad Arbitration Provision, Such as the Arbitration Provision in the Audit Agreements, Creates a Presumption that Claims Related to the Agreements Should be Arbitrated. ...................................... 4

        4.  The Receiver's Likely Claims Are Arbitrable. ...................................... 5

    B.  The Receiver is Bound by the Arbitration Provisions of the Audit Agreements, including the Provision Prohibiting Pre-Hearing Discovery Except as Expressly Authorized by the Arbitrators. .................................. 6

        1.  The Receiver is Bound by the Arbitration Provision in the Audit Agreements. ........................................................................................... 6

    C.  The Provision in the Audit Agreements That There Shall Be No Pre-Hearing Discovery Except as Authorized by the Arbitration Panel is Enforceable. ........................................................................................... 11

    D.  The Stanford Investors Are Not Entitled to Enforce the Subpoena.................... 12

        1.  As Assignees of Claims From the Receiver, the Committee and its Members are Bound by the Arbitration Provisions of the Audit Agreements. ......................................................................................... 12

        2.  With Respect to Any Claims the Stanford Investors on the Committee or Other Stanford Investors Might Have in their Individual Capacities, They are Not Entitled to Enforce the Subpoena Because They Are Not Entitled to Any Discovery Before They Assert Their Claims. .......................................................... 13

III. CONCLUSION.................................................................................................. 18

## TABLE OF AUTHORITIES

Page(s)

CASES

*AT&T Techs., Inc. v. Commc'ns. Workers of Am.,*
 475 U.S. 643, 106 S.Ct. 1415 (1986)..................................................................................4, 5

*Carter v. Countrywide Credit Indus., Inc.,*
 362 F.3d 294 (5th Cir. 2004) ....................................................................................................11

*Domansky v. Little,*
 2 A.D.3d 132, 770 N.Y.S.2d 288 (N.Y. App. Div. 2003) ..........................................................5

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
 815 F.2d 840 (2nd Cir. 1987)....................................................................................................5

*Gilmer v. Interstate/Johnston Lane Corp.,*
 500 U.S. 20, 111 S.Ct. 1647 (1991)..........................................................................................11

*Guy v. Briones,*
 C.A. No. C-07-473, 2008 WL 4280341 (S.D. Tex. Sept. 11, 2008) ........................................14

*In re Friedman's, Inc.,*
 372 B.R. 530 (Bankr. S.D. Ga. 2007) ....................................................................................7, 8

*In re Poly-America, LP,*
 262 S.W.3d 337 (Tex. 2008)....................................................................................................12

*Intralox, L.L.C. v. Habasit Belting, Inc.,*
 No. Civ. A 04-840, 2004 WL 2999097 (E.D. La. Dec. 23, 2004)............................................14

*Jack B. Anglin Co. v. Tipps,*
 842 S.W.2d 266 (Tex. 1992)......................................................................................................3

*Janvey v. Alguire,*
 No. 10-10617, 2010 WL 5095506 (5th Cir. Dec. 15, 2010)........................................6, 9, 10, 11

*Javitch v. First Union Securities, Inc.,*
 315 F.3d 619 (6th Cir. 2003) ..........................................................................................6, 7, 11

*Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby,*
 183 S.W.3d 891 (Tex. App. — Austin 2006, no pet.) ..................................................................5

*L&L Kempwood Assocs., L.P. v. Omega Builders, Inc.,*
 9 S.W.3d 125 (Tex. 1999)..........................................................................................................3

*McReynolds v. Elston,*
   222 S.W.3d 731 (Tex. App. — Houston [14th Dist.] 2007, no pet.)..........................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1, 103 S.Ct. 927 (1983).........................................................................3, 4, 5

*Parker v. Standard Steamship Owners' Protection & Indemnity Association (Bermuda)*
   *Limited,*
   1993 WL 557902 (D. Miss. July 23, 1993) ............................................................12

*Phillips v. Congelton (In re White Mountain Mining Co., L.L.C.),*
   403 F.3d 164 (4th Cir. 2005) ...............................................................................8, 9

*Provident Bank v. Kabas,*
   141 F. Supp. 2d 310 (E.D.N.Y. 2001) ...................................................................4, 5

*Prudential Secs. Inc. v. Marshall,*
   909 S.W.2d 896 (Tex. 1995)....................................................................................4

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP,*
   201 F. Supp. 2d 291 (S.D.N.Y. 2002).....................................................................12

**RULES**

Rule 45 of the Federal Rules of Civil Procedure .................................................14, 17

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 2 ..................................................................3-4

Sarbanes-Oxley Act of 2002 Section 105(b)(5)(A) .................................................18

Texas Administrative Code, § 507.4........................................................................18

Texas Occupations Code, § 901.161........................................................................18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | CASE NO. 3:09-cv-0298-N |
| R. ALLEN STANFORD, JAMES M. DAVIS, | § | |
| LAURA PENDERGEST-HOLT, GILBERTO LOPEZ, | § | |
| MARK KUHRT AND LEROY KING, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| STANFORD FINANCIAL GROUP COMPANY and | § | |
| THE STANFORD FINANCIAL GROUP BLDG INC., | § | |
| | § | |
| Relief Defendants. | § | |

## BRIEF IN SUPPORT OF BDO USA, LLP'S
## MOTION TO QUASH SUBPOENA OR,
## IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA

### I.

### INTRODUCTION

The Receiver claims to have a potential claims against BDO USA, LLP ("BDO") related

to BDO's audits of financial statements of Defendants Stanford Group Company ("SGC") and

Stanford Capital Management LLC ("SCM"), Stanford Group Holdings, Inc. ("SGH"), the

parent of SGC and SCM, and other companies owned by SGH. The Receiver has agreed that the

Official Stanford Investors Committee (the "Committee") or Members of the Committee may

pursue all such pre-receivership claims against BDO. BDO performed the audits in question

pursuant to agreements (the "Audit Agreements") that contain arbitration provisions that prohibit pre-hearing discovery except as authorized by the arbitration panel. Therefore, whether the Receiver's claims are asserted by the Receiver or by members of the Committee (as assignees) they must be arbitrated and discovery for such claims is limited to that which is expressly authorized by the arbitrators.

The Stanford Investors on the Committee and other Stanford Investors may or may not have other claims against BDO in their own capacities. To date, no Stanford Investor has asserted any claim against BDO. The Federal Rules of Civil Procedure do not authorize the Stanford Investors to take pre-lawsuit discovery.

As a result, and for the reasons stated below, the Subpoena that the Receiver signed and the Committee served and is pursuing against BDO must be quashed in its entirety as a matter of law. In the alternative, the Subpoena should be quashed because it represents an abuse of Rule 45. The Subpoena is not intended to obtain evidence for this case. Nor is the Subpoena intended to obtain information regarding accounts, etc. of the Receivership Estate. (The Receiver already has the financial statements of SGC and SCM.) Rather the Subpoena is nothing more than a fishing expedition to obtain evidence for claims to be asserted against BDO by the Receiver or, more likely, the Committee. Given that no lawsuit has been filed against BDO, there is no standard of relevance by which to judge the reasonableness of the Requests. For all of these reasons, given the overbreadth of the Subpoena and undue burden that would be imposed upon BDO under the Instructions, Definitions and Requests set forth in the Subpoena, and given the nature of certain Requests, the Subpoena should be quashed or modified as to specific Instructions, Definitions and Requests as set forth below.

## II.

## ARGUMENT AND AUTHORITIES

A.  **The Receiver's Claims Against BDO Are Subject to Arbitration pursuant to the Federal Arbitration Act (the "FAA"), Under Which Arbitration Provisions are Presumed Valid.**

### 1.  The FAA Applies.

The FAA governs the arbitrability of controversies arising out of contracts relating to transactions involving commerce.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992).  The FAA does not require a substantial effect on interstate commerce; rather, the FAA merely requires commerce to be involved or affected.  *L&L Kempwood Assocs., L.P. v. Omega Builders, Inc.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding).

In this case, BDO audited financial statements of SGC and SCM, which did business in several states.  SGC had offices in Texas and other states.  SGC had customers from many states.[1]  SCM supported SGC.  Moreover, in the Audit Agreements, BDO and SGH, SGC and SCM expressly agreed that the FAA applies.[2]  Just as SGH, SGC and SCM would now be estopped to assert otherwise, so is the Receiver.  In conclusion, the FAA applies to claims that relate to BDO's audits and are therefore subject to the arbitration provisions in the Audit Agreements.

### 2.  Under the FAA, Arbitration Provisions Are Presumed Valid.

The FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal

---

[1]  See Paragraph 3 of the Declaration of Carlos L. Ancira, Jr., provided in BDO's Appendix ("BDO App."), at 12.

[2]  See page 5 of Exhibit A to the Ancira Declaration.  (BDO App. 17)

**BRIEF IN SUPPORT OF BDO USA, LLP'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**                     **Page 3**

EAST\44522752.2

> to perform the whole or any part thereof . . . shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2. To date, neither the Receiver nor the Committee has alleged that the arbitration

provisions in the Audit Agreements are invalid.

### 3. A Broad Arbitration Provision, Such as the Arbitration Provision in the Audit Agreements, Creates a Presumption that Claims Related to the Agreements Should be Arbitrated.

A broad arbitration provision, such as the arbitration provision in the Audit Agreements,

creates a presumption in favor of arbitration. *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*,

475 U.S. 643, 650, 106 S.Ct. 1415, 1419 (1986). "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Moses H. Cone, supra*, 460 U.S. at 24-25, 103 S.Ct. at 941-2; *Prudential Secs.*

*Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*,

918 F.2d 34, 37 (5th Cir. 1990)) ("The policy in favor of enforcing arbitration agreements is so

compelling that a court should not deny arbitration '*unless it can be said with positive assurance*

*that an arbitration clause is not susceptible of an interpretation which would cover the dispute at*

issue.'") (emphasis added).

The arbitration provision contained in the Audit Agreements covers "any dispute,

controversy or claim aris[ing] in connection with the performance or breach of this agreement."

This is precisely the sort of arbitration provision found to be "prototypic[ally] broad" by the

courts. *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 316 (E.D.N.Y. 2001). When, as here, a

contract contains a broad arbitration provision, "in the absence of any express provision

excluding a particular grievance from arbitration, . . . only the most forceful evidence of a

purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns*

*Workers of Am., supra,* 475 U.S. at 650, 106 S.Ct. at 1419. Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitration." *Moses H. Cone Mem'l Hosp., supra,* 460 U.S. at 24-25; 103 S.Ct. at 941-2; *accord, McReynolds v. Elston,* 222 S.W.3d 731, 740 (Tex. App. — Houston [14th Dist.] 2007, no pet.); *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby,* 183 S.W.3d 891, 896 (Tex. App. — Austin 2006, no pet.). To deny arbitration of the Receiver's claims against BDO, it must be determined that the arbitration provision at issue is not susceptible to <u>any</u> interpretation that could encompass the Receiver's claims. *AT&T Techs., Inc., supra,* 475 U.S. at 650, 106 S.Ct. at 1419. Accordingly, "[i]f the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2nd Cir. 1987); *see also Provident Bank v. Kabas,* 141 F. Supp. 2d 310, 316 (E.D.N.Y. 2001) (arbitration clauses encompassing disputes "arising under" or "in connection with" an agreement are referred to as "prototypical broad" arbitration provisions justifying presumption in favor of arbitration); *Domansky v. Little,* 2 A.D.3d 132, 133, 770 N.Y.S.2d 288, 289 (N.Y. App. Div. 2003) (broad arbitration clause creates "presumption of arbitrability").

### 4.  The Receiver's Likely Claims Are Arbitrable.

In the Stipulation and [Proposed] Order that the Receiver, the Examiner and the other Committee members filed on March 30, 2010, which was subsequently approved by the Court, the Receiver agreed that the Committee "may prosecute (either directly, or through one or more of its members or designees), claims against Stanford's pre-receivership professionals (including but not limited to accountants. . .) that are in the nature of malpractice, professional negligence,

breech of fiduciary duty, breech of contract or claims arising out of such professionals' rendition of professional services to any of the Stanford entities prior to February 16, 2009." Under the law stated above, such claims are clearly arbitrable under the arbitration provision in the Audit Agreements.

**B.     The Receiver is Bound by the Arbitration Provisions of the Audit Agreements, including the Provision Prohibiting Pre-Hearing Discovery Except as Expressly Authorized by the Arbitrators.**

**1.     The Receiver is Bound by the Arbitration Provision in the Audit Agreements.**

It is a general rule that a receiver "'cannot recover except where recovery would have been had by the corporation.'" *Janvey v. Alguire*, No. 10-10617, 2010 WL 5095506 at *20 (5th Cir. Dec. 15, 2010) (*quoting Drennen v. S. States Fire Ins. Co.*, 252 F.2d 776 789 (5th Cir. 1918). This is due to the legal principle that a receiver "'stands in the shoes of the person for whom he has been appointed and can assert only those claims which that person could have asserted.'" *Id.* (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir. 1983). Clearly, with regard to his claims against BDO for malpractice, professional negligence, etc., the Receiver stands in the shoes of SGC and SCM.

When a receiver stands in the shoes of a corporation and asserts claims that arise out of a contract between that corporation and a third party containing an arbitration provision, a receiver is bound to arbitrate those claims. Under the general rule cited above, a receiver that brings a corporation's claims arising out of a failure to perform under such a contract is bound to arbitrate those claims. *Id.*

In *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003), the Court recognized this principle. In that case the receiver of two business entities that had allegedly participated in a scheme to defraud viatical funding companies and investors sued the brokerage

firms and individual brokers that invested the entities' money.  The Court of Appeals held that: (1) the receiver was bound to arbitration agreements entered into by the receivership entities to the same extent they would have been absent the appointment of the receiver; (2) the receiver would be compelled to arbitrate the claims; and (3) the receiver was estopped from avoiding arbitration of the claims on the ground that he had not signed the arbitration agreement.

The *Javitch* holdings are consistent with federal courts' findings in similar cases brought by bankruptcy trustees.  One such case is *In re Friedman's, Inc.*, 372 B.R. 530 (Bankr. S.D. Ga. 2007).  That decision contains a detailed analysis of when a bankruptcy trustee must arbitrate claims against an accounting firm.  In *In re Friedman's, Inc.*, the Trustee of the Friedman's Creditor Trust filed an adversary action against Ernst & Young LLP ("E&Y"), Ernst & Young Corporate Finance, LLC ("E&CF") and a securities firm.  The Trustee asserted negligence, professional malpractice and other claims against E&Y regarding its audits of financial statements of Friedman's, Inc. and negligence claims against E&CF in connection with its performance of valuations of a company in which Friedman's, Inc. invested.  E&Y and E&CF moved to compel arbitration.  They asserted that the Trustee stood in the shoes of Friedman's, Inc. and were therefore bound by the arbitration clause in E&Y's and E&CF's engagement agreements with Friedman's, Inc.  The Trustee asserted that the tort claims he asserted were beyond the date and scope of the engagement agreements and, alternatively, that if he was bound by the engagement agreements the Court should exercise its discretion to deny arbitration because there was a conflict between arbitration and the Bankruptcy Code.

The Bankruptcy Court observed that at least eight of the eleven claims the Trustee asserted against E&Y and E&CF were "derivative of the Debtors." *Id.* at 539.  These claims included the negligence/professional malpractice claims.  The assets which had been assigned to

the Trust included all causes of action of Friedman's, Inc. against any auditor or accountant or other person. Moreover, those causes of action arose before Friedman's, Inc. filed the bankruptcy case. "Therefore," the Bankruptcy Court concluded, "as the party asserting these causes of action derived from the Debtors, the Trustee stands in the shoes of the Debtors and is subject to the same defenses that could have been asserted against the Debtors had they brought the causes of action, including exposure to the arbitration clauses." *Id.* at 540.

The Bankruptcy Court also found that there was no inherent conflict between compelling the arbitration of these eight claims and the underlying purposes of the Bankruptcy Code. "First, the United State Supreme Court has determined that in cases involving both arbitrable and non-arbitrable claims, a court is to enforce an agreement between the parties and 'not substitute its own views of economy and efficiency for those of Congress.'" *Id.* at 542 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238 (1985)). Second, there was no evidence that allowing the arbitration of the Trustee's claims would jeopardize any central purpose of the Bankruptcy Code. The Plan had been confirmed. "Permitting the arbitration of these eight claims cannot effect the Debtors' reorganization, impact the relative rights of creditors, or unravel any fundamental purpose of the Code." *Id.* at 543. The Court contrasted *Phillips v. Congelton (In re White Mountain Mining Co., L.L.C.)*, 403 F.3d 164 (4th Cir. 2005), in which the court concluded that the arbitration of the issue of whether a $10 million advance would be treated as debt or equity would have interfered with the debtor's efforts to reorganize. The Bankruptcy Court also concluded that the claims were not unique or special claims. Rather they were state law negligence and tort claims that did not require special expertise. Finally, the Bankruptcy Court decided that while arbitration would deviate from the Bankruptcy Code's general goal of resolution of claims in one forum, that factor alone was insufficient to find an

inherent conflict. Therefore, the Bankruptcy Court held that the arbitration clauses would be enforced with regard to the negligence/professional malpractice and other state law claims.

On the other hand, the Court held that the Trustee's claims for fraudulent conveyances and violations of the stay were not arbitrable. "The Trustee is correct," wrote the Court, "in contending that these claims are not debtor-derived because the fraudulent conveyance claim cannot be brought by a debtor-transferor." *Id.* at 545. E&Y contended that the Trustee - in asserting that payments to E&Y for work allegedly not performed were fraudulent transfers - had simply disguised negligence and breach of contract claims as bankruptcy claims. The Bankruptcy Court disagreed because the Trustee had pled the elements of a fraudulent conveyance claim and because the fact that a fraudulent conveyance claim might arise out of a common set of facts in which the elements of a breach of contract or negligence claims might exist did not prevent the Trustee from pleading both sets of claims.

The Receiver and the Committee are likely to argue that *Janvey v. Alguire, supra,* modified the general rule or otherwise supports the conclusion that the Receiver's claims against BDO are not subject to arbitration; but the claims the Receiver asserted in that case were fraudulent transfer claims, not the malpractice, negligence, contract claims the Receiver believes he has against BDO. *Alguire* was an appeal from this Court's denial of motions to compel arbitration of fraudulent transfer claims by the Stanford Receiver. In *Alguire,* the Receiver sued James R. Alguire and other former financial advisors who worked at SGC. The Receiver sought to recover compensation SGC paid to the financial advisors - including advance payments, commissions on the sale of certificates of deposit issued by Stanford Bank, bonuses and severance payments - on the ground that these payments were fraudulent transfers of funds generated by Stanford's fraudulent Ponzi scheme. The defendants moved to compel arbitration

based upon arbitration provisions in the promissory notes that they signed in connection with the advance payments they received and the arbitration provisions in their Forms U-4 Uniform Application for Securities Industry Registration or Transfer. The Receiver offered three responses. First, the Receiver argued that he was not a party to either the promissory notes or the Forms U-4. Second, the Receiver argued that he was not suing on behalf of SGC:

> The Former Employees emphasize that the Receiver 'stands in the shoes' of SGC for the purpose of his claims against them and that his claims, therefore, are subject to arbitration under the FINRA rules, Form U-4 and the language of the promissory notes. This argument alone, however, reveals the Former Employees' misunderstanding of the Receiver's claims and defeats their own motions. Contrary to the Former Employees' claim, the Receiver does not assert his claims on behalf of the *debtor* entities that made the fraudulent transfers to the Former Employees (such as SGC), but rather in his capacity as a *creditor or representative of creditors* of those debtor entities.

(Receiver's Response to certain Former Stanford Employees' Motions to Compel Arbitration and to Dismiss (Docket Item No. 316 in *SEC v. Stanford*), at 5.) Finally, the Stanford Receiver argued that the District Court's broad equitable powers included the power to order that all of the Receiver's claims be filed (and prosecuted) in the District Court and that numerous arbitration hearings would deplete the Receivership Assets and thus reduce the payments the Receiver could make to defrauded investors.

The Court of Appeals acknowledged the general rule that "'the receiver cannot recover, except where recovery could have been had by the corporation.'" *Janvey v. Alguire*, *supra*, at 19-20. The Court of Appeals stated, however, that a receiver is also an instrument of the court and acts for the shareholders and creditors of the insolvent corporation. "In this manner," the Court of Appeals stated, "receivers are legal hybrids, imbued with rights and obligations analogous to the various actors required to effectively manage an estate in the absence of the 'true' owner." *Id.* Therefore, the Court of Appeals evaluated whether the Receiver's claims

were fraudulent transfer claims and whether that "posture" avoided the arbitration clauses between Stanford Group Company and its Former Employees. The Court of Appeals concluded that the Receiver was asserting fraudulent transfer claims on behalf of creditors who were not parties to any of the arbitration agreements and therefore were not bound by those agreements. In a footnote, the Court of Appeals distinguished *Javitch* as follows:

> The Employee Defendants rely heavily on *Javitch v. First Union Securities, Inc.,* 315 F.3d 619 (6th Cir.2003), to support their claim that receivers are also bound by arbitration agreements. *Javitch* is easily distinguishable. The *Javitch* receiver brought suit against a number of brokers and financial institutions that provided services to the insolvent corporation. *Id.* at 622. Akin to the instant case, the receiver claimed to bring the claims for defrauded investor creditors. *Id.* at 625. However, the receiver alleged that the defendants provided negligent services and breached fiduciary duties *owed to the insolvent corporation. Id.* at 622. Because the *Javitch* receiver sued on behalf of the insolvent corporation, and that corporation had enforceable arbitration agreements with the defendants, the Sixth Circuit held that the receiver was bound to arbitrate. *Id.* at 627. Here, as explained above, the Receiver's fraudulent transfer claims are brought on behalf of defrauded creditors under TUFTA, which looks to the actions of Stanford and not to the services provided by the Employee Defendants. TEX. BUS. & COM. CODE ANN. § 24.005.

*Id.* at 22 n. 12.

In conclusion, *Alguire* simply does not apply to the Receiver's malpractice, negligence, breach of contract, breach of fiduciary duty claims against BDO. Rather, those are arbitrable claims because they arise out of BDO's performance of the Audit Agreements. They are not fraudulent transfer claims of the type the Fifth Circuit found were non-arbitrable in *Alguire*. Therefore, *Alguire* does not support the argument that the Receiver's claims are not arbitrable.

**C.    The Provision in the Audit Agreements That There Shall Be No Pre-Hearing Discovery Except as Authorized by the Arbitration Panel is Enforceable.**

Limits on discovery in arbitration agreements are enforceable. *Gilmer v. Interstate/Johnston Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1654-55 (1991); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) ("the mere fact that

discovery in arbitration proceedings might not be as extensive as in federal courts does not render those agreements invalid; by agreeing to arbitrate, a party simply trades the procedures and opportunity for service of the courtroom for the simplicity, informality and expedition of arbitration"); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 291 (S.D.N.Y. 2002) (rejecting plaintiff's concerns about limited discovery under FAA arbitration provision as "devoid of merit" and stating that "[t]he suggestion that an arbitration clause is unconscionable because discovery is either unavoidable or more limited in arbitration than litigation is preposterous.").

Moreover, courts have recognized that in an arbitration proceeding discovery issues are best left to the arbitrators. *In re Poly-America, LP*, 262 S.W.3d 337, 358 (Tex. 2008) ("[t]he assessment of particular discovery needs in a given case and, in turn, the enforceability of limitations thereon, is a determination best suited to the arbitrator as the case unfolds.").

As a result, the provision in the Audit Agreements between BDO and SGC and SCM that limits discovery to the discovery authorized by the arbitration panel should be enforced.

**D.      The Stanford Investors Are Not Entitled to Enforce the Subpoena.**

> **1.      As Assignees of Claims From the Receiver, the Committee and its Members are Bound by the Arbitration Provisions of the Audit Agreements.**

If the Committee or any of its Members assert claims for professional malpractice or negligence by virtue of an assignment from the Receiver – and they would have no other basis to do so – they will have to do so in an arbitration proceeding. *See, e.g., Parker v. Standard Steamship Owners' Protection & Indemnity Association (Bermuda) Limited*, 1993 WL 557902, *2 (D. Miss. July 23, 1993) ("Whether or not a non-signatory will, be bound by an agreement to arbitrate is governed by 'ordinary principles of contract law.' Thus, because 'an assignee of a claim takes it with whatever limitations it had in the hands of the assignor,' an assignee can be

required to arbitrate its dispute with a signatory where the contract assigned contains an enforceable arbitration clause. In the present case, Parker proceeds against The Standard as an assignee or alternatively as a judgment creditor of Water Towing. As a basis for this lawsuit, he specifically relies upon the P&I policy issued by The Standard and the consent judgment reached as a result of an agreement between him and his employer, Water Towing. Where as here the plaintiff has "contractually bound" himself to the arbitration agreement at issue by taking an assignment of the owner's claims against its insurers.)

> **2.  With Respect to Any Claims the Stanford Investors on the Committee or Other Stanford Investors Might Have in their Individual Capacities, They are Not Entitled to Enforce the Subpoena Because They Are Not Entitled to Any Discovery Before They Assert Their Claims.**

The Stanford Investors on the Committee did not sign the Subpoena, but they served it on BDO. Presumably, the Committee Members served the Receiver's Subpoena because the Receiver agreed that the Committee may pursue the Receiver's claims against BDO. In that case, as stated above, the Committee is bound by the arbitration provision in the Audit Agreements.

On the other hand, if the Stanford Investors on the Committee are seeking to obtain discovery to support claims they may file against BDO then they are not entitled to enforce the Subpoena. The only Federal Rule of Civil Procedure that provides for discovery before an action is filed is Rule 27. Rule 27 authorizes depositions to perpetuate testimony under certain, specific conditions. The Rule does not authorize broad discovery requests like the Subpoena. Moreover, Rule 27 requires a party seeking a deposition to perpetuate testimony to file a verified petition requesting an order for a deposition. Neither the Committee nor any member of the Committee has filed such a petition. As a result, Rule 27 does not apply or authorize the Subpoena.

In short, there is no legal authority for the Committee to enforce the Subpoena.

**E.**     **In the Alternative to Quashing the subpoena in its Entirety, Particular Instructions, Definitions and Request should be Quashed or Modified.**

The Subpoena is not intended to gather evidence regarding the SEC's allegations against Stanford Bank and the other Defendants.  Nor is the Subpoena intended to obtain information regarding accounts and assets and liabilities of SGC or SCM.  The Receiver already has the audited financial statements.  Rather, the Subpoena is intended to obtain evidence on which claims against BDO can be created – either by the Receiver or, more likely, the Stanford Investors.  This is an abuse of Rule 45 of the Federal Rules of Civil Procedure.

"Fishing expeditions" are not permitted under the Federal Rules of Civil Procedure – not even in pending cases.  *Intralox, L.L.C. v. Habasit Belting, Inc.*, No. Civ. A 04-840, 2004 WL 2999097, at *3 (E.D. La. Dec. 23, 2004); *see also Guy v. Briones*, C.A. No. C-07-473, 2008 WL 4280341, at *1 (S.D. Tex. Sept. 11, 2008) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F. 3d 1388, 1396 (5th Cir. 1994) ("Discovery is not to be used as a fishing expedition")).  Yet, in this matter, the Receiver and the Committee seek to conduct a fishing expedition before they even file a lawsuit.  They seek every document BDO ever received or created in connection with any audit or other work BDO performed for any Stanford Entity and all documents "related" to the audits.

Under these circumstances it is difficult for BDO to make objections and it will be difficult for the Court to rule on objections.  How is BDO or this Court to determine which documents might be relevant or lead to the discovery of admissible evidence when neither the Receiver nor the Committee has asserted any claim against BDO?  We know that the Receiver has agreed that the Committee may pursue claims against BDO for "malpractice, professional negligence, breach of fiduciary duty, breach of contract," and claims arising out of BDO's "rendition of professional services to any of the Stanford Entities prior to February 16, 2009."

We do not know, however, what basis the Receiver or the Committee might have for asserting such claims. Malpractice? Professional negligence? In what respect? Are the Receiver and the Committee claiming that BDO lacked the required independence to conduct the audits? That the BDO personnel who performed the audits were not qualified? That BDO failed to conduct sufficient audit tests? That BDO failed to document its audits properly? That BDO failed to comply with any particular professional auditing standard? We do not have answers to any such questions because neither the Receiver nor the Committee knows. Instead, the Receiver and the Committee want to fish through BDO's work papers, time records, invoices, and other documents to see whether they can assert that BDO failed to comply with any professional standards or were otherwise negligent. The same is true of the other claims the Receiver agreed the Committee may pursue. Breach of contract? Which provision was breached and how did BDO breach it? Breach of fiduciary duty: what duty did BDO owe to SGC/SCM and how did BDO breach it?

Moreover, in the case of the Committee Members' claims in their individual capacity, we do not even know what claims are at issue. Securities fraud? Common law fraud? Breach of fiduciary duty? The Committee has not said; nor has any Committee member articulated any basis for a claim. Fraud? What were the fraudulent misrepresentations? When were these made? By whom? We do not know. This Court does not know.

In short, the Receiver and this Committee seek to do what would not be permitted if they had actually filed a claim; they certainly should not be allowed to do so in advance of filing a claim. Allowing the Receiver and the Committee to obtain virtually unlimited discovery without filing any claims would not comport with the constitutional requirements of due process.

Moreover, the Subpoena is unquestionably overbroad and unduly burdensome on its face. Initially, the Subpoena's temporal scope is unlimited. Under the facts, it covers the time period of 1995 to the present because Instruction No. 1 states that the Subpoena encompasses "the entire time period during which BDO Seidman performed work for, or on behalf of, any Stanford Related Entity." While BDO's document preservation policies impose a retention period of seven years, even that period exceeds any arguable limitations period and is far too long.

Instructions Nos. 3 and 4 are particularly troublesome. Instruction No. 3 provides in pertinent part:

> For each document you claim is not discoverable, state (a) the author's job title and address; (b) the recipient's job title and address; the name and job title of all persons to whom it was circulated or who saw it; (d) the name, job title and address of the person now in possession of the document; and (e) the document's present location.

Compliance with Instruction No. 3 would require BDO to engage in the burdensome and costly effort of cataloging in unnecessary detail every responsive document that falls within a recognized evidentiary privilege. The burden associated with a request for a log that lists, among other things, the name and title of all persons to whom a document was circulated or who saw it, is undue and unreasonable.

Similarly, Instruction No. 4 requires BDO to produce an additional catalog of documents. It provides in pertinent part:

> For a document that no longer exists or that you are unable to locate, identify the document, state how and when it passed out of existence, or when it could no longer be located, and the reasons for its disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

Given the time period covered by the Subpoena, compliance with this instruction would require a great deal of speculation on the part of BDO. Moreover, individually cataloging every document that has been lost or destroyed in the span of fifteen years would take an unwarranted amount of time and expense. The expenditure of resources necessary to comply with these instructions alone is unduly burdensome.

The definitions further expand the scope of the Subpoena. For instance, while the Subpoena is addressed to BDO USA, L.L.P., "BDO Seidman" as used in the Subpoena is defined as "BDO Seidman, L.L.P., BDO USA, L.L.P., BDO International Ltd., and any of their partners, employees, servants, agents and representatives, predecessors, successors and all other persons and entities in privity with any of the preceding and all other persons purporting to act on behalf of any of the preceding." This definition is unreasonable. Moreover, BDO does not have possession, control, or custody of documents of BDO International Ltd.

Requests Nos. 3, 4, 5, 7, 9, 11, 13, 14, 18, 19, 20, 21, 22, and 24 are all overbroad. Each of these requests seeks either "all files," "all documents," or "all correspondence" concerning the Stanford Entities. In essence, the combination of these requests requires BDO to produce every document relating to, or in any way referencing, the Stanford Entities. The Receiver has not attempted to tailor or narrow the request to specific topics, claims or defenses relevant to this litigation. As such, these requests are facially overbroad and compliance would impose undue burden and expense on BDO.

To protect a person subject to a subpoena, Rule 45 directs courts to quash or modify a subpoena if it requires disclosure of any privileged or protected matter. Fed. R. Civ. P. 45(c)(3). Requests 8, 10, and 12 seek information relating to communications with the Securities and Exchange Commission, the Financial Industry Regulatory Authority, federal regulatory agencies

or governmental authorities, the Louisiana Office of Financial Institutions, the Texas State Securities Board, state regulatory agencies or governmental authorities, Bear Stearns Securities Corp., and Pershing, L.L.C.   Communications with most of these government agencies are confidential.   For example, The Public Company Accounting Oversight Board ("PCAOB") reports are prepared and handled pursuant to the Sarbanes-Oxley Act of 2002 (the "Act"). Pursuant to Section 105(b)(5)(A) of the Act, all documents constituting or relating to inspection reports are "confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any federal or state court or administrative agency...".   Moreover, under the Section 901.161 of the Texas Occupations Code and Section 507.4 of the Texas Administrative Code, documents relating to requests for information and proceedings before the Texas State Board of Public Accounting are confidential.   Moreover, virtually all the requests call for the production of privileged documents.   Finally, Requests 20 and 21 seek information regarding BDO employees that is confidential to the employees in question.   As such, the Subpoena should be quashed to safeguard the privacy of these employees.

## III.

### CONCLUSION

For the above reasons, BDO's Motion to Quash the Subpoena As a Matter of Law or, in the Alternative, to Quash or Modify Instructions, Definitions and Request in the Subpoena should be granted.

Respectfully submitted,


/s/ Robert W. Kantner
Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX  75201
Phone:  214-743-4544
Fax:  972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of April, 2011, a copy of the foregoing Brief was served as follows:

Ben Krage (via e-mail and hand delivery)
Krage & Janvey L.L.P.
2100 Ross Avenue
Dallas, TX  75201

Attorney for Receiver

T. Wade Jefferies (via e-mail and overnight delivery)
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, 18th Floor
Austin, TX  78701

Attorney for the Official Stanford Investors Committee


/s/ Robert W. Kantner
Robert W. Kantner