IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff | § § § | Cause No. 3:09-cv-0298-N |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § | |
| Defendants. | | |

**THE RECEIVER'S AND THE OFFICIAL STANFORD INVESTORS COMMITTEE'S JOINT RESPONSE TO BDO USA LLP'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**

00098496.001.DOCX

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 2

III. ARGUMENTS & AUTHORITIES ...................................................................................... 3

    A. Arbitration Does Not Apply to the Receiver's Fraudulent Transfer Claims .......... 3

    B. The Receiver's Subpoena Seeks Information Vital to the Receivership Estate ..... 6

    C. The Receiver's Subpoena is No Fishing Expedition ............................................... 7

    D. The Investors Committee is a Proper Designee of the Receiver ............................ 8

    E. The Receiver's Subpoena is Reasonably Tailored................................................... 9

        1. The Subpoena should not be limited to the SEC action or Receivership Estate ................................................................................... 9

        2. BDO can determine the reasonableness of the Subpoena.......................... 9

        3. BDO's remaining objections are either meritless or moot........................ 10

IV. PRAYER ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Janvey v. Alguire*,
 628 F.3d 164 (5th Cir. 2010) ............................................................................................. passim

*Janvey v. Alguire*,
 Civil Action No. 3:09–CV–0724 (N.D. Tex. filed Apr. 20, 2009) ........................................ 4, 5

*Javitch v. First Union Securities, Inc.*,
 315 F.3d 619 (6th Cir. 2003) ..................................................................................................... 3

*Meyers v. Moody*,
 693 F.2d 1196 (5th Cir.1982) .................................................................................................... 4

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
 Civil Action No. 3:09-CV-0298-N, 2011 WL 1378470 (N.D. Tex. Apr. 6, 2011) .......... passim

*SEC v. Res. Dev. Int'l, LLC*,
 487 F.3d 295 (5th Cir. 2007) ..................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 26(b)(5)(A) ................................................................................................ 14

Texas Uniform Fraudulent Transfer Act § 24.008(a) ................................................................ 3, 5

The Receiver Ralph S. Janvey (the "Receiver") and the Official Stanford Investors Committee (the "Investors Committee") jointly file this Response to Third Party BDO USA, LLP's Motion to Quash Subpoena or, in the Alternative, Motion to Modify Subpoena. The Receiver and the Investors Committee respectfully show the Court as follows:

## I.   INTRODUCTION

On March 1, 2011, the Receiver issued a subpoena for the production of documents to BDO Seidman (the "Subpoena"). The Subpoena generally requests that BDO Seidman produce all documents concerning the audit and other services it provided to any of the Stanford Companies.[1] (For purposes of this Response, "Stanford Company" or "Stanford Companies" means one or more of the Stanford Financial Group entities owned or controlled by R. Allen Stanford, including but not limited to, Stanford Group Company, Stanford Trust Company, Stanford Group Holdings, Stanford International Bank Limited, and any other entities owned or controlled by these entities or by Stanford, James M. Davis, or Laura Pendergest-Holt.)

On April 14, 2011, BDO USA, LLP ("BDO") filed the Motion to Quash Subpoena or, in the Alternative, Motion to Modify Subpoena ("Motion to Quash") [1319], a Brief in Support of the Motion to Quash ("Brief") [1320], and an Appendix in Support of the Motion to Quash [1321]. BDO generally objects that the Receiver is not entitled to discovery from BDO because he is bound by certain arbitration provisions in BDO's engagement letters with its Stanford Company clients. In the alternative, BDO objects to certain Instructions, Definitions, and Requests in the Subpoena, and moves this Court to modify the Subpoena to accommodate these objections.

---

[1] *See generally* Subpoena Request Nos. 1-24 [1270-1]. A copy of the Subpoena is also available at Tab 1 to the Appendix in Support of the Motion to Quash Subpoena or, in the Alternative, Motion to Modify Subpoena, filed by BDO USA, LLP on April 14, 2011 [1321].

The Court should deny BDO's Motion to Quash in its entirety. First and foremost, the Receiver is not bound by any arbitration agreements because the Subpoena was issued, in part, to explore certain claims against BDO on behalf of the Stanford Companies' *creditors*, and as the Fifth Circuit has already ruled in these proceedings, arbitration agreements that may bind the Stanford Companies do not apply to the Receiver when he acts on the creditors' behalf. *See Janvey v. Alguire*, 628 F.3d 164, 182 (5th Cir. 2010) ("*Alguire II*"). Second, the Subpoena is proper and should be enforced as issued because it seeks documents that are otherwise vital to the Receivership Estate. Third, BDO's cries of a "fishing expedition" are not only unfounded, they evince a fundamental failure to understand the Receiver's duties to the Receivership Estate and the Stanford Companies' creditors. Fourth, the Receiver properly designated the Investors Committee to pursue discovery pursuant to the Subpoena for the creditors' benefit. Fifth and finally, the Court should deny BDO's Motion to Quash to the extent it seeks to modify the Subpoena because the Subpoena is reasonably tailored under the circumstances of this case, and BDO's specific objections are either groundless or moot.

## II. BACKGROUND

BDO provided audit services for: (1) SGC, the broker/dealer that recommended and sold SIB's CDs to investors; (2) STC, the trust company that held investors' IRA investments in those CDs; and (3) Stanford Group Holdings ("SGH"), a holding company for several Stanford Companies, including SGC and STC. *See* Motion to Quash at 1-2 (citing Declaration ("Dec.") of Carlos L. Ancira, Jr. at ¶ 2). (Collectively, these clients and BDO's other Stanford Company clients, including but not limited to Stanford Capital Management, LLC and Stanford Coins & Bullion, Inc., are referred to as BDO's "Stanford Company Clients").

III.  ARGUMENTS & AUTHORITIES

A.  Arbitration Does Not Apply to the Receiver's Fraudulent Transfer Claims

BDO's Motion to Quash is based on the mistaken premise that the Receiver is bound to arbitration because his potential claims require him to stand in the Stanford Companies' shoes. This premise fails in its entirety because one of the reasons the Receiver issued the Subpoena was to explore potential fraudulent transfer claims on behalf of the Stanford Companies' *creditors*. BDO's contractual arbitration provisions do not apply to the Receiver when he acts on the creditors' behalf.

The Receiver stands in the shoes of the creditors — *not* the Stanford Companies — when he pursues fraudulent transfer claims because the remedies available under the Texas Uniform Fraudulent Transfer Act ("TUFTA") are "expressly directed toward creditors." *See Alguire II*, 628 F.3d at 184 (citing TUFTA § 24.008(a)). As the Fifth Circuit has already ruled in these proceedings — *and as BDO itself has admitted* — the Receiver is not subject to arbitration when he stands in the creditors' shoes. *See Alguire II*, 628 F.3d at 183 ("The Receiver, acting on behalf of the creditors, is not party to the arbitration obligations between SGC and the [defendants]."); Motion to Quash at 9-11; Brief at 9-11. In fact, the Fifth Circuit made it clear that the entire question of arbitration "may be distilled to a simple question: in what capacity is the Receiver suing the [defendants]?" *See Alguire II*, 628 F.3d at 182.

There is substantial precedent supporting the Receiver's power to assert the rights of creditors to avoid fraudulent transfers, and because the Stanford Companies' creditors are not parties to any arbitration agreements with BDO, the Receiver is not bound by such arbitration provisions when he acts on the creditors' behalf. *See Alguire II*, 628 F.3d at 183-85. *See also Alguire II*, 628 F.3d at 184-85 n.12 (distinguishing *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003) because the *Javitch* receiver sued on behalf of the insolvent

corporation). The Receiver has broad powers to explore potential fraudulent transfer and other claims on behalf of creditors, for he is "an instrument of court" who acts for a corporation's stockholders and creditors. *See Alguire II*, 628 F.3d at 183 (internal citation omitted). In effect, receivers are "legal hybrids [who are] imbued with rights and obligations analogous to the various actors required to effectively manage an estate in the absence of the 'true' owner." *Alguire II*, 628 F.3d at 183 (internal citation omitted). It is well settled that a receiver may represent different interests at different points of the receivership. *Alguire II*, 628 F.3d at 183-84 (observing the Fifth Circuit's prior rejection of challenges to a receiver's standing to sue on behalf of creditors) (citing *Meyers v. Moody*, 693 F.2d 1196, 1206 (5th Cir.1982)).

Here, the Court has vested the Receiver "with full power of an equity receiver under the common law as well as such powers as are enumerated in [the Court's] order." *Janvey v. Alguire*, Civil Action No. 3:09–CV–0724, at 3 (N.D. Tex. filed Apr. 20, 2009) [456] (Order granting preliminary injunction) ("*Alguire I*"), *aff'd*, *Alguire II*, 628 F.3d at 175. Furthermore, the Court has specifically directed and authorized the Receiver to "[i]nstitute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *S.E.C. v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. Apr. 6, 2011) [10] ("Order Appointing the Receiver"). In other words, the Court has charged the Receiver to track down and collect the illicit funds that properly belong to the Receivership Estate and, ultimately, the Stanford Companies' defrauded investors. *S.E.C. v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N, 2011 WL 1378470, at *5 (N.D. Tex. Apr. 6, 2011); Order Appointing the Receiver [10].

The Receiver has determined that he may have fraudulent transfer claims against BDO, and mindful of this Court's charge, he issued the Subpoena to explore these and other potential claims on the creditors' behalf.[2]  The Receiver's preliminary investigation shows that BDO's domestic entity alone received $1,101,857 in transfers from the Stanford Companies between January 2006 and February 2009.  All or substantially all of these transfers will likely trace back to the illicit proceeds of the Stanford Ponzi scheme.

In defense of these claims, BDO will likely contend that it took the Ponzi scheme proceeds in good faith and for reasonably equivalent value, a potential defense under TUFTA. *See, e.g., Alguire I* at 13 (discussing this defense and defendant's burden to show both objective good faith and reasonable equivalence of consideration).  In light of the Receiver's and BDO's anticipated positions, discovery regarding BDO's knowledge of the Stanford Companies' operations and the nature and extent of BDO's services is proper.

The Receiver may also have other potential claims against BDO on the creditors' behalf, including the investors who purchased SIB CDs or had funds deposited with SIB on February 17, 2009 (the "Investor Creditors").  And like the fraudulent transfer claims, such claims brought on behalf of the creditors, including the Investor Creditors, would not be subject to arbitration. *See Alguire II*, 628 F.3d at 182; Motion to Quash at 9-11; Brief at 9-11.

---

[2]  To bring a fraudulent transfer claim under TUFTA, the Receiver must show that the debtor transferor made the transfer "with actual intent to . . . defraud any creditor of the debtor." *Alguire I* at 10 (citing Tex. Bus. & Com. Code Ann. § 24.005(a)(1)); *Alguire II*, 628 F.3d at 177 (same).  When the transferor operated as a Ponzi scheme, then the transfers are presumptively made with the intent to defraud, and the transferees' knowing participation is irrelevant. *See Alguire I* at 10-11 ("[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception."); *Alguire II*, 628 F.3d at 175, 178 (evidence that Ponzi scheme existed obviates the need to prove fraudulent intent of transferees) (citing *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (analyzing TUFTA)).  This Court has already found that the presumptive intent established by the Stanford Ponzi Scheme satisfies the Receiver's obligation under TUFTA. *See Alguire I* at 11; *Alguire II*, 628 F.3d at 175.  This Court has also ruled that a party may receive compensation from the Stanford Ponzi Scheme even though it did not receive funds directly from SIB. *See Alguire I* at 11, 13; *Alguire II*, 628 F.3d at 175, 177 (observing this Court's rejection of defendants' argument that they did not receive compensation from the Ponzi scheme because they received funds from SGC, not SIB).

**B.     The Receiver's Subpoena Seeks Information Vital to the Receivership Estate**

In addition to seeking discovery on potential fraudulent transfer claims, the Subpoena seeks documents and information that are otherwise vital to the Receivership Estate. As discussed above, the Court has charged the Receiver to track down and collect the illicit funds that properly belong to the Receivership Estate and, ultimately, the Stanford Companies' defrauded investors. *Stanford Int'l Bank,* 2011 WL 1378470, at *5; Order Appointing the Receiver [10]. The Stanford Ponzi scheme's complexity has complicated the Receiver's efforts, and while the Stanford estate "has many thousands of claimants, there are [as yet] startlingly few assets to disperse to the Stanford victims." *Id.* at *5-6 (citing *Alguire II*, 628 F.3d at 185).[3]

BDO's accounting records, work papers, and Stanford Company Client documents will give the Receiver critical information necessary to further untangle the Ponzi scheme, including the many related-party transactions that allowed the Stanford Companies to distribute the scheme's illicit funds among its affiliated entities. The materials sought by the Subpoena are highly important because they will substantially aid the Receiver's efforts to track the funds used in the Stanford Ponzi scheme. *See Stanford Int'l Bank*, 2011 WL 1378470 at *6 (due to scheme's "Byzantine structure" and breadth, "the process of recouping any fraudulently obtained funds necessarily includes weeding through a massive number of individual transactions and any documents and information related to those transactions"); Order Appointing the Receiver [10] (directing and authorizing the Receiver to "[o]btain . . . documents, books, records, accounts, deposits, testimony, or other information . . . sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate").

---

[3]  As of April 2011, the Receiver had traced only approximately $950 million of the Stanford Companies' suspected assets, and after expenses, the Receivership holds less than $100 million in cash on hand. *Id.* at *5.

If the Receiver is unable to access BDO's examination and documentation of the Stanford Companies' accounting records, then the Receiver will have a "very little realistic chance of tracking down the lost funds and returning them to defrauded investors, creditors, and others taken advantage of by the Stanford [Ponzi scheme]." *Stanford Int'l Bank*, 2011 WL 1378470 at *5 (considering the merits of discovery concerning foreign nonparty Société Générale Private Banking (Suisse) S.A.). As this Court has previously observed, "[i]n the end, the greatest hardship would fall [on] the Ponzi schemes' victims, who may be able to recover only pennies on the dollar." *Id*.

C.   **The Receiver's Subpoena is No Fishing Expedition**

BDO's protests that the Receiver has embarked on a "fishing expedition" are groundless. As discussed above, the Subpoena seeks critical documents and information concerning the Receiver's potential claims against BDO, including the creditors' claims, *as well as* information vital to the Receivership Estate. *See, e.g., Stanford Int'l Bank*, 2011 WL 1378470 at *6 (rejecting "fishing expedition" argument because the nonparty's accounts were used for transactions that were integral to the Stanford Ponzi scheme). Moreover, BDO's objection evinces a fundamental failure to understand the Receiver's duties to the Receivership Estate, as the Receiver is duty bound to investigate potential claims on behalf of the Stanford Companies' creditors. *See* Order Appointing the Receiver [10] (directing and authorizing the Receiver to "[o]btain . . . documents, books, records, accounts, deposits, testimony, or other information . . . sufficient to identify . . . causes of action . . . of the Receivership Estate," as well as "[i]nstitute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve the value of the Receivership Estate, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this [o]rder").

**D.     The Investors Committee is a Proper Designee of the Receiver**

The Receiver properly designated the Investors Committee — which represents the interests of the Stanford Companies' Investor Creditors — to pursue discovery under the Subpoena for such creditors' benefit.  The Receiver's power and discretion to act in this regard is evidenced by the orders of this Court, including this Court's order authorizing and empowering the Receiver to assign to the Investors Committee his right to pursue certain fraudulent transfer claims on the creditors' behalf.  *See Stanford Int'l Bank, Ltd.* [1267] (Order granting the Receiver's assignment of fraudulent transfer claims to Investors Committee).  *See also Stanford Int'l Bank* [1149] (Order forming Investors Committee) at ¶ 8 ("The Receiver and the [Investors] Committee will cooperate in the identification and prosecution of actions and proceedings for the benefit of the Receivership Estate and the Stanford Investors . . . "); *id.* at ¶ 8(d) ("[t]o the extent that the [Investors] Committee pursues . . . claims on behalf of the Receivership Estate with the consent of the Receiver, the Receiver shall either assign such claims or causes of action to the [Investors] Committee . . . or take other actions as may be reasonably requested by the [Investors] Committee to ensure that the [Investors] Committee . . . is able to pursue such claims on a class or other basis"); *id.* at ¶ 9(a) ("the Receiver agrees that the [Investors] Committee may prosecute . . . claims . . . against [the Stanford Companies'] pre-receivership professionals (including but not limited to accountants . . .) that are in the nature of malpractice, professional negligence, breach of fiduciary duty, breach of contract, or similar claims arising out of such professionals' rendition of professional services to any of the [the Stanford Companies'] prior to February 16, 2009").  In fact, BDO effectively admits that the Receiver may designate the Investors Committee to pursue discovery under the Subpoena.  *See* Motion to Quash at 7 (as assignees, the Investors Committee and its members acquire the Receiver's rights); Brief at 12-13 (same).  Therefore, BDO's protests that it is somehow improper for the Investors Committee

or its counsel to participate in pursuing discovery under the Receiver's Subpoena should be dismissed.

### E. The Receiver's Subpoena is Reasonably Tailored

#### 1. The Subpoena should not be limited to the SEC action or Receivership Estate

The Court should overrule BDO's objections that the Subpoena is improper because it is not tailored to seek documents related to the SEC action, nor documents related to accounts of the Receivership Estate. *See* Motion to Quash at 8; Brief at 14. As discussed above, the Subpoena seeks critical documents and information concerning the Receiver's potential claims against BDO, including the creditors' claims, as well as information that is otherwise vital to the Receivership Estate. Furthermore, this Court has already ruled that the Receiver's broad requests for a nonparty to produce "essentially all documents and materials in [its] control that are related to the [Stanford Companies'] activities since January 1, 2000" are "reasonably tailored to the circumstances of this case." *See Stanford Int'l Bank*, 2011 WL 1378470 at *6 (considering the merits of discovery concerning foreign nonparty Société Générale Private Banking (Suisse) S.A.).

#### 2. BDO can determine the reasonableness of the Subpoena

The Court should similarly overrule BDO's objections that it cannot determine the reasonableness of the Subpoena's instructions, definitions, and requests because "BDO has no clue as [sic] what it may have done wrong." *See* Motion to Quash at 8; Brief at 14-15. BDO cites no authority that the Receiver must pursue claims against BDO before it may properly seek discovery. *See id.* BDO cannot cite such authority because, as discussed above, requiring the Receiver to pursue claims before conducting discovery would be entirely inconsistent with the Receiver's charge to investigate potential claims and pursue information that is vital to the Receivership Estate. Finally, as noted above, this Court has already ruled that the Receiver's

broad requests for a nonparty to produce "essentially all documents and materials in [its] control that are related to the [Stanford Companies'] activities since January 1, 2000" are "reasonably tailored to the circumstances of this case." *See Stanford Int'l Bank*, 2011 WL 1378470 at *6 (considering the merits of discovery concerning foreign nonparty Société Générale Private Banking (Suisse) S.A.).

      **3.    BDO's remaining objections are either meritless or moot**

          **a.    Instruction No. 1.**  The Court should overrule BDO's objection that the Subpoena's time frame is too broad.  *See* Motion to Quash at 9; Brief at 16.  Thus far, the Receiver's investigation shows that BDO provided services to the Stanford Companies as early as 1995.[4]  Given the interests of the Receivership Estate, the nature of the Stanford Ponzi scheme, and BDO's services for the Stanford Companies, it is not unreasonable for the Receiver to request documents for the period of time when BDO provided services to the Stanford Companies.  *See id.* (holding that Receiver's broad requests for a nonparty to produce "essentially all documents and materials in [its] control that are related to the [Stanford Companies'] activities since January 1, 2000" are "reasonably tailored to the circumstances of this case").

If BDO destroyed potentially responsive documents in accordance with its purported document-retention policy, then BDO must not only demonstrate its proper compliance with that policy, BDO must demonstrate that it has not violated this Court's Order enjoining the destruction of documents relevant to the Receivership Estate.  *See* Motion to Quash at 9 (citing Declaration of Lisa A. Morris at ¶¶ 4, 6); Brief at 16; *S.E.C. v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) [8] (Temporary Restraining Order

---

[4]  In fact, BDO admits that it first reviewed SGC's financial information in 1995, and that it first audited SGC's financial statements for the year ending December 31, 1996 until early 2008.  *See* Motion to Quash at 3 (citing Dec. of Lisa A. Morris at ¶ 6).

to freeze assets, require accounting, preserve documents, and authorize expedited discovery). It is not the Receiver's burden to narrow the time frame of his requests merely to accommodate BDO's destruction of documents.

        **b.**      **Instruction Nos. 3 and 4.**  The Court should overrule BDO's objections concerning its obligation to produce a privilege log under Instruction No 3. *See* Motion to Quash at 9-10; Brief at 16. First, BDO does not cite any authority to support its protests against a so-called "pre-suit" privilege log requirement. *See id.* Second, BDO's numerous objections of privilege and purported confidentiality demonstrate the *necessity* of a privilege log for any documents that BDO withholds from production. *See id*. *See also* Brief at 18. As for BDO's objections to Instruction No. 4 of the Subpoena, *see* Motion to Quash at 9 and Brief at 16-17, the Receiver hereby waives the requirements imposed by Instruction No. 4 concerning documents that are missing or no longer in existence. Thus, BDO's objections regarding Instruction No. 4 are moot.

        **c.**      **Definition No. 1.**  The Court should also overrule BDO's objections to the Subpoena's definition of BDO. *See* Motion to Quash at 10; Brief at 17. The broad definition of BDO is not unreasonable given the pervasive, international nature of the Stanford Ponzi scheme and BDO's services to the Stanford Companies through its domestic and affiliated international offices. To date, the Receiver's investigation has revealed that BDO offices in Ecuador, Mexico, Peru, and Spain have also provided audit and other services to the Stanford Companies. The Receiver's continuing investigation may reveal the participation of even more foreign BDO offices. If BDO objects that certain of its affiliated international offices are legally separate and distinct entities, then it must produce sufficient evidence to support this objection and demonstrate that the related documents sought by the Subpoena are not within BDO's

possession, custody, or control. It is not the Receiver's burden to narrow its definition of BDO to accommodate BDO's unsubstantiated objections.

        **d.**    **Definition No. 4.** BDO objects to Definition No. 4 to the extent it imposes an obligation to produce publicly available documents. *See* Motion to Quash at 10. The Receiver hereby waives the requirements imposed by Definition No. 4 of the Subpoena to the extent it relates to BDO's obligations to produce publicly available documents that are not already in BDO's possession, custody, or control. Thus, BDO's objections regarding Definition No. 4 are moot.

        **e.**    **Request No. 1.** The Court should overrule BDO's objections to Request No. 1, which asks BDO to produce a listing of all its Stanford Company Clients. *See* Motion to Quash at 10. This request is not only reasonable, it is *vital* given BDO's apparent destruction of documents. *See* Motion to Quash at 9 (suggesting that BDO has destroyed documents in accordance with a purported document-retention policy of seven years and email retention policy as short as only 97 days) (citing Declaration of Lisa A. Morris at ¶ 4). As noted above, BDO first reviewed SGC's financial information in 1995, and first audited SGC's financial statements for the year ending December 31, 1996 until early 2008. *See* Motion to Quash at 3 (citing Dec. of Lisa A. Morris at ¶ 6). If the Receiver is limited to BDO's document production alone, then critical documents that may be available in the Stanford Company files could go undetected at the expense of the Receivership Estate, undermining the Receiver's efforts to pursue fraudulent transfer claims if BDO contends that it took the Ponzi scheme proceeds in good faith and for reasonably equivalent value.

        **f.**    **Requests Nos. 2-7, 9, 11, and 13-24**. The Court should overrule BDO's general objections that Requests Nos. 2-7, 9, 11, and 13-24 are overbroad or seek irrelevant

documents. *See* Motion to Quash at 10; Brief at 17. BDO offers no precedent for its objections that these requests, which generally seek "all" documents that "relat[e] to particular subjects," are facially overbroad or seek documents that are "unlikely to be relevant to any claim against BDO." *See id*. Furthermore, this Court has already held that such requests are proper under the circumstances of this case. *See Stanford Int'l Bank*, 2011 WL 1378470 at *6 (the Receiver's requests for a nonparty to produce "essentially all documents and materials in [its] control that are related to the [Stanford Companies'] activities since January 1, 2000" are "reasonably tailored to the circumstances of this case").

Finally, it is simply absurd for BDO to object that its internal documents are irrelevant to any claim. *See* Motion to Quash at 10. BDO cites no authority suggesting that a party's internal documents are irrelevant or otherwise protected from discovery. *See id*. In fact, BDO's position in this regard could not be further from the truth, as a party's internal documents often provide the most *germane* facts in litigation. In any event, BDO's relevance objection is also baseless because reliance is not an element of the Receiver's or the Investors Committee's potential claims, nor is reliance an element of any claim that could be asserted in class litigation.

    **g.**  **Requests Nos. 8, 10, 12, 20-21.** The Court should overrule BDO's objections that Requests Nos. 8, 10, 12, 20-21 improperly seek the discovery of confidential or privileged information. *See* Motion to Quash at 10; Brief at 17-18. First, BDO's objections that certain requests seek private or confidential information lack merit because these concerns can be addressed by a protective order. *See* Motion to Quash at 10 (objecting that certain requests seek documents that are "confidential as a matter of law," or confidential, private information of BDO employees); Brief at 17-18 (same). As for any evidentiary privileges claimed by BDO, it is improper for BDO to object on grounds of privilege. If BDO has a good faith basis to believe

that any responsive documents are privileged, then BDO may *withhold* such documents from production and produce a privilege log that provides sufficient information for the Receiver to evaluate the application of BDO's claimed privilege or protection. *See* Fed. R. Civ. P. 26(b)(5)(A).

## IV.   PRAYER

The Receiver and the Investors Committee respectfully request that the Court deny BDO's Motion to Quash in its entirety and order BDO to produce the documents and information requested in the Receiver's Subpoena within 14 days, including a privilege log, and if BDO does not comply, that the Court order BDO to appear and show cause why it should not be held in contempt of this Court. The Receiver and the Investors Committee request any further and additional relief to which they may be rightly entitled.

Dated:  May 5, 2011

Respectfully submitted,

**HOHMANN, TAUBE & SUMMERS, L.L.P.**

By: <u>  /s/  Guy M. Hohmann                    </u>
    Guy M. Hohmann
    State Bar No. 09813100
    guyh@hts-law.com
    T. Wade Jefferies
    State Bar No. 00790962
    wadej@hts-law.com
    Christopher W. Ahart
    State Bar No. 24036115
    chrisa@hts-law.com
    100 Congress Avenue, 18th Floor
    Austin, Texas 78701
    Telephone:  (512) 472-5997
    Telecopier:  (512) 472-5248

***ATTORNEYS FOR THE OFFICIAL***
***STANFORD INVESTORS COMMMITTEE***

**KRAGE & JANVEY, L.L.P.**

By: <u>  /s/  Ben Krage                         </u>
    Ben L. Krage
    State Bar No. 11700000
    2100 Ross Avenue, Suite 2600
    Dallas, Texas 75201
    Telephone:  (214) 969-7500
    Facsimile:  (214) 220-0230
    Email: bkrage@kjllp.com

***ATTORNEY FOR THE RECEIVER***

## CERTIFICATE OF SERVICE

On May 5, 2011, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I will serve the parties to this case, and BDO USA, LLP, through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.

Robert W. Kantner
DLA Piper, LLP (US)
1717 Main Street, Ste. 4600
Dallas, Texas 75201
Phone: 214-743-4544
Fax: 972-813-6256
Robert.kantner@dlapiper.com
***Counsel for Third Party Defendant BDO USA, LLP***

                                    */s/  Christopher W. Ahart*
                                       Christopher W. Ahart