IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| Plaintiff | § § | |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, GILBERTO LOPEZ, MARK KUHRT AND LEROY KING, | § § § § § § § § § § | CASE NO. 3:09-cv-0298-N |
| Defendants, | § § § | |
| and | § § | |
| STANFORD FINANCIAL GROUP COMPANY and THE STANFORD FINANCIAL GROUP BLDG INC., | § § § § | |
| Relief Defendants. | § § | |

**BDO USA, LLP'S REPLY TO THE RECEIVER'S AND THE OFFICIAL
STANFORD INVESTORS COMMITTEE'S JOINT RESPONSE TO
BDO USA, LLP'S MOTION TO QUASH SUBPOENA OR,
IN THE ALTERNATIVE, MOTION TO MODIFY SUBPOENA**

Respectfully submitted,

Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX 75201
Phone: 214-743-4544
Fax: 972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

    A.   The Receiver and the Committee Have Filed Hundreds of Fraudulent
        Transfer Claims Without Taking Pre-Suit Discovery and Do Not Need
        Pre-Suit Discovery to Assert Such a Claim Against BDO. ................................... 2

    B.   The Receiver's Subpoena Does Not Seek New Information that is Vital to
        the Receivership Estate. ..................................................................................... 5

    C.   The Receiver's Subpoena is a Fishing Expedition. .............................................. 7

    D.   The Committee is Not Entitled to Pursue Pre-Suit Discovery for Claims
        for Individual Investors. ...................................................................................... 8

    E.   The Subpoena is Not Reasonably Tailored to any Legitimate Purposes of
        the Receiver and Committee in Serving the Subpoena. ...................................... 9

        1.   The Time Period Covered by the Subpoena is Way Too Long. ................ 9

        2.   The Subpoena is Not Tailored to the Fraudulent Transfer Claim
            that Might be Asserted Against BDO. ....................................................... 9

        3.   Particular Instructions and Definitions are Unreasonable. ...................... 9

    F.   BDO Has Not Destroyed Any Documents Improperly. ..................................... 10

EAST\44720734.1

## TABLE OF AUTHORITIES

Page(s)

CASES

*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ................................................................................4

*E.F. Hutton & Co. v. Hadley*,
   901 F.2d 979 (11th Cir. 1990) .............................................................................8

*Hirsch v. Arthur Andersen & Company*,
   72 F.3d 1085 (2d Cir. 1995)................................................................................8

*In re Friedman's, Inc.*,
   372 B.R. 530 (Bankr. S.D. Ga. 2007) ..............................................................2, 3

*Janvey v. Alguire*,
   No. 10-10617, 2010 WL 5095506 (5th Cir. Dec. 15, 2010)...................................2

*Newby v. Enron Corp.*,
   338 F.3d 467 (5th Cir. 2003) ............................................................................5, 6

*Samuel Troice, et al. v. Proskauer Rose, LLP et al.*,
   Civil Action No. 3:09-cv-01600-F (N.D. Tex.)......................................................4

*SEC v. Stanford Int'l Bank, Ltd.*,
   Civil Action No. 3:09-cv-0298-N, 2011 WL 1378470 (N.D. Tex. Apr. 6, 2011).................7, 8

*Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................................4

*The Official Stanford Investors Committee, et al. v. Breazeale, Sachse & Wilson, LLP, et al.*, Case No. 11-cv-00329-K (N.D. Tex.) ..............................................................1

*The Official Stanford Investors Committee v. Cort & Cort and Cort & Associates*,
   Case No. 3:11-cv-00298-N (N.D. Tex.) .................................................................3

FEDERAL RULES OF CIVIL PROCEDURE

Rule 9(b) ...............................................................................................................4, 7

Rule 45 .......................................................................................................................1

EAST\44720734.1

## I. **INTRODUCTION**

The Receiver and Committee[1] do not contest BDO's argument that they are not entitled to obtain document discovery from BDO at this time with regard to any claim relating to BDO's performance of its Audit Agreements with SGC, SCM and SGH, because those agreements provide that such claims are to be arbitrated and that discovery regarding such claims shall be determined by the arbitration panel.[2]

Rather, the Receiver and Committee argue that they need and are entitled to the documents requested by their Subpoena in order to explore fraudulent transfer claims against BDO to recover – on behalf of Stanford Creditors - the payments BDO received for its audit services. (Resp., 2 and 3) This is not true. As of July 1, 2010, the Receiver had filed fraudulent transfer cases against 816 parties without taking pre-suit discovery.[3] Moreover, the Committee has filed a fraudulent transfer action against a Louisiana law firm to recover the payments that firm received for its legal work for Stanford entities – without serving a pre-suit document subpoena on the firm.[4] Given their lack of any need to obtain BDO documents to file a fraudulent transfer claim against BDO, it should be presumed that the Receiver and Committee seek pre-suit discovery from BDO for claims covered by the arbitration provision or other claims owned by Stanford Investors in their individual capacities. The Receiver and Committee are not entitled to such pre-suit discovery.

---

[1]  Unless otherwise indicated, defined terms have the same meaning they were given in BDO's Motion to Quash.
[2]  A sample Audit Agreement is provided in the Appendix BDO filed in support of its Motion to Quash at BDO App. 13-18. The arbitration provision is at BDO App. 16-18.
[3]   See Receiver's Interim Report Regarding Status of Receivership, Asset Collection and Ongoing Activities (Docket Item No. 1117), at p. 3, and their Court's docket sheet, which BDO's counsel has reviewed. The docket sheet contains only five notices of intent to serve Rule 45 subpoenas filed by the Receiver to: Trustmark National Bank, Hancock Bank and Bank of Houston; HSBC and Toronto Dominion; Whitney National Bank and Hancock Bank of Louisiana; Société Générale Private Banking (Suisse) S.A.; and BDO
[4]  *The Official Stanford Investors Committee, et al. v. Breazeale, Sachse & Wilson, LLP, et al.*, Case No. 11-cv-00329-K (N.D. Tex.).

The Receiver and Committee also offer the excuse that the Subpoena seeks documents that are "vital to the Receivership Estate"; but the Receiver and Committee have not shown that. The truth is that while the Receiver and Committee disclaim any intention of seeking documents to support professional malpractice and statutory or common law fraud claims that is exactly what the broad requests in the Subpoena are designed to capture.

## II. ARGUMENT

**A.     The Receiver and the Committee Have Filed Hundreds of Fraudulent Transfer Claims Without Taking Pre-Suit Discovery and Do Not Need Pre-Suit Discovery to Assert Such a Claim Against BDO.**

The Receiver and Committee assert that they are not bound by the arbitration provisions contained in the Audit Agreements because "one of the reasons the Receiver issued the Subpoena was to explore potential fraudulent transfer claims on behalf of the Stanford Companies' creditors." (Resp., 3)  Some courts have held that receivers and trustees may file claims for fraudulent transfer on behalf of creditors.  Moreover, some courts have held that such claims for fraudulent transfer – unlike claims based on the performance of a contract with arbitration provisions - are not arbitrable.  *See, e.g., Janvey v. Alguire*, No. 10-10617, 2010 WL 5095506 (5th Cir. Dec. 15, 2010) and *In re Friedman's, Inc.*, 372 B.R. 530 (Bankr. S.D. Ga. 2007).

The Receiver's and Committee's fraudulent transfer claims in these proceedings demonstrate, however, that they do not need pre-suit discovery in order to file a fraudulent transfer claim against BDO.  As noted above, as of July 1, 2010, the Receiver had filed 816 fraudulent transfer claims without taking discovery.  Recently, the Committee has joined the Receiver in filing such actions and has filed such actions on its own – again, without taking any pre-suit discovery.

The "standard" allegations asserted by the Receiver and Committee in these suits demonstrate why the Receiver and Committee have not needed pre-suit discovery. Consider, for example, the Committee's Complaint Against Cort & Cort and Cort & Associates,[5] which was filed without the benefit of pre-suit discovery. In that Complaint, the Committee asserts that the "Stanford Defendants orchestrated and operated a wide-ranging Ponzi scheme." (*Id.* ¶ 19) The Committee then alleges that "'[t]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, *as a matter of law*, insolvent from inception.'" (*Id.* ¶ 35) (emphasis added) (citations omitted).

The Receiver and Committee claim they need pre-suit discovery to defeat BDO's "likely" affirmative defense of good faith and provision of reasonably equivalent value. (Resp., p. 5) Once again, the Committee's allegations against the Cort Defendants demonstrate that this assertion is not true. Regarding the good faith element, the Committee alleges that the affirmative defense requires that defendants prove objective, rather than subjective, good faith. (*Cort Compl.*, ¶ 38) Regarding the value element, the Committee alleges that "providing services in furtherance of a Ponzi scheme does not confer reasonably equivalent value." (*Id.* ¶ 39) (citing *Warfield v. Byron, supra*, 436 F.3d at 555, 560) ("*[A]s a matter of law*, services provided in the context of a Ponzi scheme do not constitute 'reasonably equivalent value.'") (emphasis added). Moreover, the Committee alleges that "consideration which has no utility from the creditor's perspective does not satisfy the statutory definition of 'value.'" (*Id.* ¶ 39)

The Receiver and Committee state that the Receiver "may also have other potential claims against BDO on the creditors' behalf" (Resp., 5); but the Receiver and Committee have

---

[5] See *The Official Stanford Investors Committee v. Cort & Cort and Cort & Associates*, Case No. 3:11-cv-00298-N (N.D. Tex.), filed February 25, 2011. A copy is provided in the Appendix filed in support of this Reply ("BDO Supp. App.") at pp. 3-23.

not identified any other claim. This unsupported contention that such claims may exist should not be considered by this Court.

Other cases filed by Stanford Investors, including Investors represented by attorneys on the Committee, strongly suggest that the real reason for the service of the Subpoena on BDO – if not to obtain discovery for a claim by the Receiver or Committee for professional malpractice, which would be arbitrable – is to obtain discovery for claims owned by the Investors. For example, in *Samuel Troice, et al. v. Proskauer Rose, LLP, et al.*, Case No. 3:09-cv-01600-F (N.D. Tex.), which Edward C. Snyder, an attorney serving on the Committee, filed, the plaintiffs asserted claims for: (1) aiding and abetting violations of the Texas Securities Act, including fraud; (2) common law fraud; and (3) conspiracy to commit fraud.[6]  "Both federal securities claims and Texas state-law fraud claims, are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-339 (5th Cir. 2008). The heightened pleading standard of Rule 9(b) "prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Tuchman v. DSC Communications*, 14 F.3d 1061, 1067 (5th Cir. 1994). Moreover, were Stanford Investors to sue BDO under the Securities Act of 1933 or the Securities Exchange Act of 1934, under the Private Securities Litigation Reform Act, discovery would be stayed during the pendency of a motion to dismiss by BDO on the ground fraud was not sufficiently pled. One court has stated: "The rationale underlying the stay was to prevent costly 'extensive discovery and disruption of normal business activities' until a court

---

[6]  See First Amended Complaint (Docket Item No. 4) in *Samuel Troice, et al. v. Proskauer Rose, LLP and Thomas J. Sjoblom*, Civil Action No. 3:09-cv-01600-F (N.D. Tex.).

could determine whether a filed suit had merit, by ruling on the defendant's motion to dismiss." *Newby v. Enron Corp.*, 338 F.3d 467, 671 (5th Cir. 2003).

By serving the Subpoena on BDO and requesting every document BDO ever created or received in connection with any BDO audit of any Stanford company, the Receiver and Committee seek not only to obtain discovery outside of the arbitration provisions of the Audit Agreements but also to get around the pre-discovery pleading requirements set forth above. BDO should not be denied its rights to contest a pleading filed by Stanford Investors before it is required to engage in extensive discovery.

## B.    The Receiver's Subpoena Does Not Seek New Information that is Vital to the Receivership Estate.

The Receiver already possesses extensive financial records of Stanford companies, including financial statements of Stanford International Bank, Ltd. ("SIB"). When the SEC filed this case it filed as exhibits balance sheets of SIB as of December 31, 2006 and 2007 and income statements and statements of cash flows for the years then ended. Among other things, those financial statements list and describe assets and related party transactions in detail.

Moreover, by April 23, 2009, the Receiver was able to file with this Court an extensive Report regarding his review of Stanford companies' "financial records and operational data."[7] (Docket Item No. 336, p. 8) The Receiver reported: "[W]orking with a multi-disciplinary team of lawyers, broker-dealer experts, forensic accountants and information technology experts, the Receiver collected and analyzed the available data to determine which accounts could be released [to customers], using electronic search protocols." (*Id*, p. 15) With regard to asset recovery, the Receiver reported that he and his experts had obtained balance sheets for 62

---

[7]    Receiver's Interim Report. See Footnote 3.

different Stanford entities and that the Receiver had engaged the accounting firm Ernst & Young to compile balance sheets as of the outset of the Receivership. (*Id.* p. 27) This Report was filed nearly two years before the Receiver served the subpoena on BDO. Yet when the Receiver served the subpoena, he made no effort to limit the requests for documents to particular issues; he simply asked for every document BDO ever created or received regarding any Stanford entity.

Moreover, the Receiver and Committee did not acknowledge in their response that – in response to a letter request for documents from the Receiver – BDO complied with Section 501.76 of Title 22 of the Texas Administrative Code.[8] That statute provides that, upon request, an auditor shall provide to a client accounting records belonging to, or obtained from or on behalf of, the client that the auditor removed from the client's premises or received on behalf of the client and "work papers, to the extent such work papers include records, which would ordinarily constitute part of the client's books and records, and are not otherwise available to the client." The statute provides that other work papers of the auditor need not be turned over.

The documents BDO turned over to the Receiver pursuant to the Texas Administrative Code include Audit Agreements, Stanford financial statements audited by BDO and client financial documents. The financial statements of SGC, SCM and SGH that BDO turned over provide detailed information about assets and related party transactions of those entities. Nevertheless, when the Receiver and Committee served their subpoena on BDO, they made no effort to tailor the requests to specific types of documents that might be needed to plug particular gaps in the financial information they already possess.

Given BDO's compliance with the Texas Administrative Code, the documents now at issue include: (1) Records of payments to BDO by Stanford entities (Request No. 2); (2) BDO's

---

[8]   See Declaration of Robert W. Kantner, ¶ 2 and Exhibits A and B thereto. (BDO App. 19-20 and 23-28)

internal audit work papers (Numerous requests, particularly Request No. 14); (3) All files, e-mails, note and draft documents relating to any Stanford Related Entity (Request No. 4); (4) All documents referencing Stanford Related Entities (Request No. 5); (5) All communications and meetings with Stanford Related Entities (Requests Nos. 6, 7 and 9); (6) All correspondence between BDO and various governmental and other entities (Requests Nos. 8, 10, 12 and 22); (7) Calendars (Request No. 11); (8) Documents relating to the BDO personnel who worked on the audits, including their resume and personnel files (Requests Nos. 19-21); and (9) Documents relating to BDO's independence to perform the audits (Request No. 23).

The Receiver and Committee assert that all of the documents they request contain information vital to the receivership estate; but they make no effort to show that with regard to particular requests.  Requests such as the requests for BDO's internal work papers, BDO's personnel files for the partners and employees who worked on the audits and documents analyzing BDO's independence to conduct the audits are clearly intended to support an arbitrable claim for professional negligence, e.g., BDO did not perform sufficient tests, used unqualified personnel and/or lacked independence.  The above requests are also the types of documents commonly requested in a fraud case; but, as stated above, any fraud claim should have to pass Rule 9(b) before discovery is allowed.  Otherwise, the requested documents simply do not constitute new information vital to the Receivership Estate.

## C.    The Receiver's Subpoena is a Fishing Expedition.

In support of their denial that they are engaged in a fishing expedition, the Receiver and the Committee cite *SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-cv-0298-N, 2011 WL 1378470 (N.D. Tex. Apr. 6, 2011), in which this Court upheld requests for documents relating to accounts of Stanford entities at Société Générale Private Banking (Suisse) S.A. ("SG Suisse");

but the subject matter of those requests was very different than the subject matter of the requests served on BDO. This Court found that the Stanford accounts at SG Suisse likely "contained, or served as a conduit for, a large amount of fraudulently obtained funds." *Id.* at *4. The Receiver and Committee do not contend that BDO holds assets of the Stanford Entities (with the exception of payments for services they now contend were fraudulent transfers). Rather the Receiver and Committee seek evidence to support claims for relief against BDO. Therefore, this Court's ruling on the subpoena to Société Générale does not support the Receiver's and the Committee's "fishing expedition" for BDO documents.

## D.    The Committee is Not Entitled to Pursue Pre-Suit Discovery for Claims for Individual Investors.

The Receiver and Committee assert that the Receiver has "properly designated the Investors' Committee to pursue discovery under the Subpoena for such creditors' benefit." (Resp., 8) This statement may be true with regard to claims that belong to the Receivership Estate; but this statement is not true for claims the Stanford Investors own and are pursuing for their own account - for example the securities and common law fraud claims they are pursuing against Proskauer & Rose, LLC.[9] *Hirsch v. Arthur Andersen & Company*, 72 F.3d 1085, 1093-4 (2d Cir. 1995) (Investor creditors, not trustee, own claims against accountants arising out of Ponzi scheme); *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 986-7 (11th Cir. 1990) (claims arising out of Ponzi scheme belong only to defrauded investors and the trustee lacks standing to sue). The Committee is not entitled to pre-suit discovery on such claims.

---

[9]   See footnote 6 above.

**E.** **The Subpoena is Not Reasonably Tailored to any Legitimate Purposes of the Receiver and Committee in Serving the Subpoena.**

    **1.** **The Time Period Covered by the Subpoena is Way Too Long.**

The Receiver and Committee request documents dating back to 1995. The Receiver and Committee ignore the fact that their potential claims for fraudulent transfers can only go back four years and other potential securities and tort claims have limitations periods of two to four years. If the Receiver and Committee are entitled to any pre-suit discovery from BDO, it should be tailored to the limitations period(s) in question.

    **2.** **The Subpoena is Not Tailored to the Fraudulent Transfer Claim that Might be Asserted Against BDO.**

In the alternative to quashing the Subpoena, this Court should modify the Subpoena so that it requests only documents relating to the prospective fraudulent transfer claim against BDO, specifically payments received by BDO from Stanford Entities during the past four years.

    **3.** **Particular Instructions and Definitions are Unreasonable.**

    a)     Instruction 3 and 4: With the possible exception of e-mail between the auditors and BDO's in-house counsel, which clearly would be privileged, BDO does not have any privileged documents that predate the filing of this lawsuit.[10] It would be unreasonable to require BDO to log any such e-mail and the work product of, and BDO's attorney-client communications with, DLA Piper, the firm BDO hired to handle the Receiver's subpoena and any claims that may be filed against BDO. Nor should BDO have to log documents it declines to produce on the grounds that they are statutorily exempt from production in litigation. After all, the Receiver and Committee have not yet sued BDO.

---

[10]   See Supplemental Declaration ("Supp. Decl.") of Lisa Morris, ¶ 6. (BDO Supp. App. 2)

b)    <u>Definition No. 1</u>: BDO has provided evidence that BDO USA, LLP is a separate legal entity from BDO International Limited and other member firms of BDO International Limited.[11]  The Receiver and Committee state that their investigation "has revealed that BDO offices in Ecuador, Mexico, Peru and Spain have also provided audit and other services to the Stanford Companies" (Resp., 11); but they have not identified the firms that own and operate those offices, much less shown that BDO USA, LLP has possession, control or custody of documents of such firms.  Accordingly, if the Subpoena is enforced at all, it should be modified to apply only to BDO USA, LLP.

c)    <u>Requests Nos. 2-7, 9, 11 and 13-24</u>: If the Subpoena is enforced, it should be modified to request only documents that identify assets of Stanford Companies and supplement information that the Receiver and Committee already possess.

d)    <u>Requests Nos. 8, 10, 12, 20-22</u>: The entry of a Protective Order will not warrant requiring BDO to product documents to which the Receiver and Committee are not entitled at all or before commencing an arbitration proceeding or lawsuit.

**F.    BDO Has Not Destroyed Any Documents Improperly.**

In an attempt to make BDO "look bad," the Receiver and Committee suggest BDO needs to demonstrate that it has not violated this Court's order enjoining the destruction of documents. (Resp., 10)  BDO has long had the document retention policy described in Lisa Morris' Declaration; but shortly after BDO learned that its Stanford clients had been shut down by the Receiver pursuant to this Court's Orders, BDO implemented a document hold.[12]  Therefore, BDO has not violated this Court's Order regarding the destruction of documents.

---

[11]  *Id.* ¶ 5 (Supp. App. 2)
[12]  *Id.* ¶ 4. (BDO Supp. App. 2)

Respectfully submitted,


/s/ Robert W. Kantner
Robert W. Kantner
Texas State Bar No. 11093900
DLA Piper LLP (US)
1717 Main Street
Suite 4600
Dallas, TX  75201
Phone:  214-743-4544
Fax:  972-813-6256
robert.kantner@dlapiper.com

ATTORNEY FOR BDO USA, LLP


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of May, 2011, a copy of the foregoing Reply was served as follows:

Ben Krage (via e-mail and hand delivery)
Krage & Janvey L.L.P.
2100 Ross Avenue
Dallas, TX  75201

Attorney for Receiver

T. Wade Jefferies (via e-mail and overnight delivery)
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, 18th Floor
Austin, TX  78701

Attorney for the Official Stanford Investors Committee


/s/ Robert W. Kantner
Robert W. Kantner