**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Case No.: 3-09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., | § | |
| STANFORD GROUP COMPANY, | § | |
| STANFORD CAPITAL MANAGEMENT, LLC, | § | |
| R. ALLEN STANFORD, JAMES M. DAVIS, and | § | |
| LAURA PENDERGEST-HOLT, | § | |
| | § | |
| Defendants. | § | |

---

**RECEIVER'S MOTION FOR TURNOVER ORDER AGAINST TRUSTMARK**

---

Receiver Ralph S. Janvey files this Motion for Turnover Order Against Trustmark and, in support thereof, states as follows:

## I.     Introduction

This Court has directed and authorized the Receiver to take immediate and exclusive possession, custody, and control of all Receivership Estate assets. Both this Court and the Fifth Circuit Court of Appeals have recognized that substantial assets held on deposit with Trustmark National Bank ("Trustmark") rightfully belong to the Receivership Estate. Additionally, the Receiver and his professionals have traced the funds at issue to proceeds from the sale of fraudulent SIB CDs. Yet, despite the orders issued by this Court and the Fifth Circuit, and despite the Receiver's demands, Trustmark has refused to transfer these assets to the Receiver. Because Trustmark's refusal is in direct violation of this Court's orders, the Receiver requests that the Court issue an order (a) declaring that the Receiver is entitled to immediate and exclusive possession, custody, and control of all assets, funds, proceeds, and interest contained in

Trustmark account no. 9300849232 (the "Account") or traceable thereto; and (b) requiring Trustmark to comply with all instructions from the Receiver relating to the Account, including, but not limited to, any instructions to liquidate holdings or to transfer funds or assets into accounts held by the Receiver.

## II.    Factual Background

### A.    The Receivership Order.

On February 17, 2009, the Securities and Exchange Commission ("SEC") initiated this lawsuit against R. Allen Stanford; James M. Davis; Laura Pendergest-Holt; and three of Mr. Stanford's companies, Stanford International Bank, Ltd., Stanford Group Company, and Stanford Capital Management, LLC (collectively, "Stanford" or the "Stanford Entities"). That same day, the Court entered an order appointing Ralph S. Janvey as Receiver for the Stanford Entities, (*see* Doc. 10 at ¶ 2),[1] and directing him to marshal and take custody of the Receivership Estate and any "assets traceable to assets owned or controlled by the Receivership Estate," (*Id.* at ¶ 5(b); *see also* Doc. 157, Amended Order Appointing Receiver, at ¶ 5(b); Doc. 1130, Second Amended Order Appointing Receiver, at ¶ 5(b) (the "Receivership Order")).[2]

The Receivership Order directs and authorizes the Receiver to collect all assets belonging to the Receivership Estate and to preserve the Receivership Estate's value for the ultimate benefit of the Stanford investors and creditors.   (*See* Doc. 1130 at ¶¶ 4–5.) The Receivership Estate includes, but is not limited to, all "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located

---

[1]   Unless otherwise stated, citations to court records herein reference the docket numbers from the underlying case, styled *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex., filed Feb. 17, 2009).

[2]   On July 19, 2010, the Court entered its Second Amended Order Appointing Receiver. (*See* Receivership Order, Doc. 1130.)   The Second Amended Order Appointing Receiver is identical to the Amended Order Appointing Receiver in all relevant respects.

. . . of the Defendants and all entities they own or control." (*Id.* at ¶¶ 1–2.)  Consistent with these goals, the Court has ordered that "[c]reditors and all other persons are hereby restrained and enjoined, without prior approval of the Court, from:

> (a)    Any act to obtain possession of the Receivership Estate assets;
>
> (b)    Any act to create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate;
>
> (c)    Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate;
>
> (d)    The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate.

(*Id.* at ¶ 10.)

## B.    The Account.

Before the Stanford Entities were placed into receivership, Trustmark issued letters of credit to several companies that were conducting business with various Stanford Entities, including Stanford Corporate Services (Venezuela), C.A. ("Stanford Venezuela").[3] (*See* Doc. 430 at 9.)  One of these letters of credit was issued in the amount of $1,986,745 for the benefit of HP Financial Services Venezuela, C.C.A. ("HPFS") in connection with HPFS's lease of certain computer equipment to Stanford Venezuela (the "Letter of Credit").  (*See id.* at 10.) HPFS has alleged that Stanford Venezuela defaulted under the lease agreement with HPFS. (*See* Doc. 418 at 6.)  In connection with issuing the Letter of Credit, Trustmark became a secured creditor with set-off rights against certain collateral—an automatically-renewable, 24-month

---

[3]    Assets belonging to Stanford Venezuela are part of the Receivership Estate because Stanford Venezuela is owned and controlled by Defendant R. Allen Stanford.  Specifically, Mr. Stanford directly owns 99% of Stanford Venezuela and indirectly owns the other 1% through Stanford Corporate Ventures, LLC (Delaware), which is itself wholly owned by Mr. Stanford.  (*See* App. at 9.)

certificate of deposit—that Stanford Venezuela placed on deposit with Trustmark in the Account. (*See* Doc. 430 at 9.)

The Account contains assets with a net worth of at least $1,986,745—the initial value of the certificate of deposit placed in the Account.[4]  Further, as discussed in further detail below, this Court previously concluded that the assets contained in the Account "almost certainly [were] derived from fraudulently obtained funds" and "almost certainly [are] traceable to funds that properly belong to the Receivership Estate." (*See* Doc. 1310 at 1, 8.)  The Receiver and his professionals have confirmed this fact by tracing the assets placed in the Account to proceeds from the sale of fraudulent SIB CDs.  (*See* App. at 8–10.)

## C.      The Prior Orders of this Court and the Fifth Circuit.

On March 30, 2009 and April 22, 2009, HPFS presented the Letter of Credit to Trustmark for payment.  (*See* Doc. 430 at 12–14.)  Trustmark rejected both of these requests for payment, citing specific defects in each presentment.  (*See* Doc. 550 at 2–5.)  At the same time, Trustmark notified HPFS that presentment of the Letter of Credit may violate the stay imposed by the Receivership Order.  (*See id.*)

On June 1, 2009, HPFS filed a motion asking the Court for leave to intervene in this lawsuit and for "clarification that the Receivership Order does not enjoin or otherwise apply to draws under letters of credit issued by third party institutions."   (Doc. 418 at 5.) On June 2, 2009, Trustmark asked the Court for leave to intervene and for "an order modifying, clarifying, or enforcing [the Receivership Order] as necessary to grant Trustmark authority to exercise its rights as a secured creditor" and "authority from [the Court] under Sections 10(a) and

---

[4]    Based on information provided by Trustmark during the 4th Quarter of 2011, the assets held in the Account had a value in excess of $2.1 million at that time.  Thus, even if it were proper for Trustmark to maintain possession of the assets securing the Letter of Credit until some later date, which it is not, Trustmark has no colorable claim to the interest that has accrued in the Account in excess of the value of the Letter of Credit.

10(b) of the [Receivership Order] to exercise its set off rights against cash collateral." (Doc. 429 at 1–2.)

On March 31, 2011, the Court entered an order: (1) declaring that the Receivership Order does not prohibit HPFS from presenting (nor does it prevent Trustmark from honoring) the Letter of Credit; and (2) denying Trustmark's request to modify or lift the stay imposed by the Receivership Order to allow Trustmark to set off against the assets contained in the Account for any payment made by Trustmark to HPFS pursuant to the Letter of Credit. (*See* Doc. 1310 at 1 (the "Order").)

With respect to presentment of the Letter of Credit, the Court held that "the tripartite nature of letter of credit transactions means that Trustmark will pay HPFS with Trustmark – not Receivership Estate – funds" and that presentment, if properly made, would neither divest the Receivership Estate of any assets nor violate the terms of the Receivership Order. (*See id.* at 6–7.) In denying Trustmark's request for authority to set off against the assets contained in the Account, the Court held that "[a]lthough paying HPFS on the letter of credit obligates Stanford Venezuela to reimburse Trustmark, the Receivership Order prevents Trustmark from exercising its secured creditor rights over Stanford Venezuela's cash collateral absent this Court's approval." (*Id.* at 8.) The Court further noted that the assets contained in the Account "almost certainly [were] derived from fraudulently obtained funds" and that they "likely [do] belong to the Receivership Estate." (*Id.* at 8–9.)

On March 8, 2012, the Fifth Circuit affirmed the Court's ruling on Trustmark's motion, concluding that the Court did not abuse its discretion in rejecting Trustmark's request for authority to set off against the assets contained in the Account. *See SEC v. Stanford Int'l Bank Ltd.*, No. 11–10355, 2012 WL 745099, at *1–*2 (5th Cir. Mar. 8, 2012).

**D.      The Receiver's Request.**

On March 9, 2012 and March 22, 2012, counsel for the Receiver contacted Trustmark's counsel and requested that Trustmark transfer the assets contained in the Account to the Receiver, as is required by the Court's Receivership Order.  (*See* App. at 2–4.)  As of this filing, Trustmark has refused to transfer the assets contained in the Account to the Receiver.

## III.   <u>Argument</u>

**A.      The Receiver is entitled to immediate and exclusive possession, custody, and control of the Account assets.**

The Receivership Order authorizes the Receiver "to *immediately* take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."  (*See* Doc. 1130 at ¶ 4 (emphasis added).)  The Receivership Estate includes, but is not limited to, all assets—"of whatever kind and description, wherever located"—that belong to the Stanford Entities, including the entities they own or control.  (*Id.* at ¶¶ 1–2.)  As such, it is indisputable that the assets contained in the Account, which were placed on deposit with Trustmark by Stanford Venezuela, belong to the Receivership Estate.[5]  That HPFS may *someday* properly present the Letter of Credit for payment by Trustmark and that Trustmark may *someday* have a claim for reimbursement against the Receivership Estate is irrelevant to whether the Receiver is entitled to *immediate* and *exclusive* possession, custody, and control of Receivership Estate assets.

Further, even if Trustmark honors the Letter of Credit at some point in the future, the Court has held that the Receivership Order bars Trustmark from turning to the Account to set

---

[5]    The Receiver also has jurisdiction over, control of, and the right to take possession of the Account pursuant to 28 U.S.C. § 754 because the Receiver filed the Complaint and the Order Appointing Receiver in all United States District Courts, including the district in which Trustmark has its headquarters (Case No. 3:09-mc-00005-JCS, filed in the U.S. District Court for the Southern District of Mississippi) and the district in which Trustmark maintained branch offices that conducted business with the Stanford Entities (Case No. 4:09-mc-00073, filed in the U.S. District Court for the Southern District of Texas).

off any Stanford-related debt obligation that may arise upon payment to HPFS.  (*See* Doc. 1310, Order, at 8 ("Trustmark's [set-off] request falls within the ambit of the Receivership Order's prohibition against '[t]he set off of any debt . . . secured by the Receiver Estate Assets.'" (second alteration in original) (quoting Doc. 1130, Receivership Order, at ¶ 10(d))).)

Thus, if such a claim for reimbursement ultimately accrues, "Trustmark simply will stand in the same position as numerous other creditors"—all of whom are subject to the Receiver's claims process and none of whom have been afforded the opportunity to exercise dominion over Receivership Estate assets.[6]   (*See* Doc. 1310, Order, at 10.)   "While the Receiver's claims process may not allow Trustmark to immediately recoup via the cash collateral any funds paid to HPFS on the letter of credit, that does not constitute a compelling reason for the Court to afford Trustmark's claim exceptional treatment."  (*Id.* at 11; *see also id.* (noting that Trustmark "fail[ed] to show that the Receiver's claims process will protect inadequately its security interests")); *cf. Stanford Int'l Bank Ltd.*, 2012 WL 745099, at *4 ("While it is probable that Trustmark will suffer injury since it is not assured of recouping the full letter of credit amount from the Receivership, that does not outweigh the interest the Receivership has in maintaining the estate.").

Accordingly, consistent with this Court's finding that there is no basis for affording Trustmark "exceptional treatment" vis-à-vis the Receivership Estate, the Court should rule that the Receiver is entitled to immediate and exclusive possession, custody, and control of the Account and the assets contained therein.

---

[6]   *Cf.   Stanford Int'l Bank Ltd.*, 2012 WL 745099, at *4 ("The Receiver's task to 'marshal, preserve and conserve the receivership estate is as much for [Trustmark's] benefit as for the benefit of all the other investors—investors who also lost amounts of money' is an important interest." (alteration in original) (citation omitted)).

**B.     Trustmark does not have any interest in the Account.**

Even if the Receivership Order did not direct and authorize the Receiver to take immediate and exclusive possession of all Receivership Estate assets, Trustmark would not have any interest in the Account that would justify its refusal to transfer the assets contained therein to the Receiver.  In this regard, it is well recognized that in order for a security interest to attach to collateral, the debtor must have rights in that collateral.  *See, e.g.*, TEX. BUS. & COM. CODE § 9.203(b)(2) (providing that a security interest is enforceable against the debtor and third parties with respect to the collateral only if "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party"); CAL. COM. CODE § 9203(b)(2) (same); MISS. CODE ANN. § 75-9-103(b)(2) (2002) (same); *see also FTC v. J.K. Publ'ns, Inc.*, No. CV 99-00044 ABC (AJWx), 2001 WL 36086354, at *13 (C.D. Cal. Jan. 17, 2001) ("Where the debtor has no rights to the property himself or herself, he or she may not grant a security interest to a creditor.  'All agree that a thief acquires no rights.'" (citation omitted)).  Because the assets placed in the Account have been traced to proceeds from the sale of fraudulent SIB CDs, it is clear that Trustmark's purported security interest did not attach to the assets.

In any event, as the Court recognized in its Order, "[c]ollateral which has been pledged by a debtor as security for a letter of credit is property of the debtor's estate." (Doc. 1310 at 8 (quoting *In re Compton Corp.*, 831 F.2d 586, 590 (5th Cir. 1987), *reh'g granted on other grounds*, 835 F.2d 584 (5th Cir. 1988)).)

## IV.     Conclusion

Because the Receiver is entitled to *immediate* and *exclusive* possession, custody, and control of all Receivership Estate assets, including any assets traceable to assets owned by the Receivership Estate, the Receiver requests that the Court grant this Motion for Turnover

Order Against Trustmark and that the Court issue an order (a) declaring that the Receiver is entitled to immediate and exclusive possession, custody, and control of all assets, funds, proceeds, and interest contained in the Account or traceable thereto; and (b) requiring Trustmark to comply with all instructions from the Receiver relating to the Account and the assets contained therein, including, but not limited to, any instructions to liquidate holdings or to transfer funds or assets into accounts held by the Receiver.

Dated:  April 17, 2012                    Respectfully submitted,

                                          BAKER BOTTS L.L.P.

                                          By: /s/ Kevin M. Sadler
                                              Kevin M. Sadler
                                              Texas Bar No. 17512450
                                              kevin.sadler@bakerbotts.com
                                              Robert I. Howell
                                              Texas Bar No. 10107300
                                              robert.howell@bakerbotts.com
                                              David T. Arlington
                                              Texas Bar No. 00790238
                                              david.arlington@bakerbotts.com
                                              1500 San Jacinto Center
                                              98 San Jacinto Blvd.
                                              Austin, Texas 78701-4039
                                              (512) 322-2500
                                              (512) 322-2501 (Facsimile)

                                              Timothy S. Durst
                                              Texas Bar No. 00786924
                                              tim.durst@bakerbotts.com
                                              2001 Ross Avenue
                                              Dallas, Texas 75201
                                              (214) 953-6500
                                              (214) 953-6503 (Facsimile)

                                          **ATTORNEYS FOR RECEIVER
                                          RALPH S. JANVEY**

## CERTIFICATE OF CONFERENCE

Counsel for the Receiver conferred with the parties to this case.

Counsel for the Receiver conferred with David Reece, counsel for the SEC, who did not provide a response regarding the SEC's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with John Little, the Court-appointed Examiner, who stated that he is unopposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with Stephen Cochell, counsel for R. Allen Stanford, who did not provide a response regarding Mr. Stanford's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Jeff Tillotson, counsel for Laura Pendergest-Holt, who did not provide a response regarding Ms. Pendergest-Holt's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Kenneth Johnston, counsel for Trustmark National Bank, who did not provide a response regarding Trustmark's position on this motion or the relief requested herein. However, counsel for the Receiver previously discussed the relief requested by this motion with Mr. Johnston, and Mr. Johnston indicated that Trustmark would be opposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with Manuel P. Lena, Jr., counsel for the DOJ (Tax Division), who did not provide a response regarding the DOJ (Tax Division)'s position on this motion or the relief requested herein.

Counsel for the Receiver conferred with David Finn, who is listed on the docket sheet as attorney to be noticed for James Davis, who did not provide a response regarding Mr. Davis's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Jason Brookner, counsel for HP Financial Services Venezuela C.C.A., who did not provide a response regarding HPFS's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Andrew Warren, counsel for the DOJ (Fraud Division), who stated that the DOJ (Fraud Division) takes no position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Stephanie Curtis, counsel for INX, Inc., who did not provide a response regarding INX's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with John Helms, Jr., counsel for Mark Kuhrt, who did not provide a response regarding Mr. Kuhrt's position on this motion or the relief requested herein.

The motion, therefore, is opposed.

/s/ Kevin M. Sadler
Kevin M. Sadler

## CERTIFICATE OF SERVICE

On April 17, 2012, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served the Court-appointed Examiner, all counsel and/or pro se parties of record, including Trustmark National Bank, electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kevin M. Sadler
Kevin M. Sadler