## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:09-cv-0298-N |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD. et al., | § § § | |
| Defendants. | § | |
| | | |
| IN RE: | § § | |
| STANFORD INTERNATIONAL BANK, LTD. | § § § | Civil Action No. 3:09-cv-0721-N |
| Debtor in a Foreign Proceeding. | § § | |

## OBJECTION OF GREENBERG TRAURIG, LLP
## TO PROPOSED SETTLEMENT AGREEMENT AND CROSS-BORDER PROTOCOL

Interested party Greenberg Traurig, LLP (GT) objects to portions of the proposed

Settlement Agreement and Cross-Border Protocol between the Receiver and the Antigua Joint

Liquidators (JLs) as follows:

### SUMMARY

Those portions of the agreement that will free up disputed bank accounts for distribution

to victims are commendable and should be approved.  But the proposed agreement purports to

deal with an entirely different matter and goes much farther.  It seeks extraordinary and

unnecessary special privileges for Plaintiffs in collateral litigation that are contrary to law and

could render the agreement void.  The proposed agreement would authorize plaintiffs to violate

existing orders and exempt them from fundamental legal principles and protections for

**OBJECTIONS TO PROPOSED SETTLEMENT** - Page 1

Defendants under res judicata, personal jurisdiction, and the prohibition against splitting a single

cause of action into two needless and wasteful lawsuits:

- It seeks to authorize the Receiver and JLs to bring duplicate "independent" lawsuits against lawyers, in violation of several existing orders and the rules of res judicata that prohibit splitting a single claim into multiple lawsuits.

- Under the proposed agreement, duplicate lawsuits against lawyers would not be "deemed" to be a violation of the Chapter 15 order notwithstanding that order's express condition "precluding the Joint Liquidators from duplicating efforts by the Receiver, the Examiner, and OSIC."

- The JLs would be granted access to U.S. courts to conduct discovery "without having to fulfill the conditions" of the existing Chapter 15 order. No parallel rights would be granted to defendants to conduct discovery from the JLs in the U.S.

- Regardless of what contacts the JLs have already had or will have in the future with the U.S., they ask to be exempt from personal jurisdiction in the U.S. except with respect to any discovery they might seek.

GT respectfully objects to such terms and requests the court to fashion appropriate relief and to

condition approval of the agreement on the same conditions contained in the Chapter 15 order,

including the condition precluding the JLs from duplicating actions by the Receiver.

## FACTUAL AND PROCEDURAL BACKGROUND

1.     Allen Stanford was the sole owner of Stanford International Bank, Ltd. and used

SIBL to perpetrate a massive worldwide fraud. Stanford and his co-conspirators were charged

and convicted of their crimes.

2.     In the criminal trials the Government established that only Stanford and a small

circle of corporate executives knew of his fraudulent activities. "[O]nly Stanford and a handful

of people in his inner circle knew that his outsized lifestyle and its trappings were entirely at the

expense of his depositors, and not remotely close to the 'investments' into which depositors

believed they had placed their savings based on Stanford's lies." Sentencing Memorandum, U.S.

v. Stanford, Case No. 4:09cr0342 (June 6, 2012). *See also* the closing argument of Jeffrey A.

Goldberg, Deputy Chief of the Fraud Section of the U.S. Department of Justice Criminal Division, in the trial of Gilbert Lopez and Mark Kuhrt (Nov. 14, 2012)("***There is no evidence whatsoever*** that anybody other than the five or six folks that Mr. Davis identifies at the beginning of his testimony knew word one that the original source of the funds from Mr. Stanford's lifestyle and companies was the bank.")(emphasis added).  Two separate juries found that the evidence established the truth of these allegations beyond a reasonable doubt.

3.      Despite the established findings that GT did not know of Stanford's frauds, a putative Investor class has sued GT for the improbable claim that GT knowingly aided and abetted frauds of which it was unaware.  In that same suit the Receiver and OSIC allege that they are the successors-in-interest to SIBL and are entitled to pursue an alleged SIBL claim against GT for professional negligence for not preventing SIBL's intentional frauds.   Plaintiffs' Original Complaint, Case 3:12cv4641.  GT has appeared and answered that suit.  *Id. at* Dkt. 27.

4.      The Court's Receivership order prohibits creditors and all other persons from taking any act to obtain possession of receivership estate assets without prior approval of the Court.  Second Amended Order Appointing Receiver, Case No. 3:09cv0298 (Dkt. 1130) ¶ 10.

5.      The JLs previously sought relief from the Receivership order in order to sue former SIBL lawyers for SIBL's alleged claim for professional negligence, i.e. the same claim being pursued by the Receiver.   Joint Liquidators' Emergency Motion for Leave to Pursue Professional Negligence Claims, Case 3:09cv0721 (Dkt. 127).

6.      The Receiver opposed the JLs' motion.  He argued that he was already developing a strategy for asserting those claims and that allowing the JLs to bring such claims would "only serve to waste resources, create confusion, and complicate the Receiver's efforts on behalf of the Receivership entities."  Response (Dkt. 134) pp. 2-3.

7.     On Feb. 1, 2012, the Court entered an order denying the JL's motion "at this time" reasoning as follows:

> "[C]ourts have declined to lift a litigation stay where doing so would result 'in **a multiplicity of actions in different forums**[] and **would increase litigation costs for all parties while diminishing the size of the receivership estate**.'
>
> "[T]he Joint Liquidators' proposed claims would duplicate the Receiver's efforts and thus deplete the overall moneys available to Stanford victims."
>
> "Additionally, should the Court lift the stay, under the Receivership Order the Receiver would have a duty to monitor and possibly intervene in the action. This would mean more receivership assets spent on litigation and less available for distribution to creditors and investors."

*Id*. (Dkt. 141)(emphasis added).

8.     The Court later granted the JLs limited recognition under Chapter 15 of the Bankruptcy Code. Civil Action No. 3:09cv0721 (Dkt. 176).   In doing so, however, the Court found that:

> "the Joint Liquidators have proven to be extremely litigious and calculating in this Court, filing multiple notices of objection to the Receiver's requests in this and other Stanford MDL suits, *and filing motions to pursue claims the Receiver was already pursuing."*

*Id*. pp. 54-55 (emphasis added).   The Court therefore imposed several conditions on its recognition order including the following:

> (d) ***precluding the Joint Liquidators from duplicating efforts by the Receiver***, the Examiner, and OSIC

*Id.* p. 57 (emphasis added).

9.     Notwithstanding the Court's prior orders, the JLs have informed GT that they plan to bring suit against GT outside the U.S. for the same alleged SIBL claim for professional negligence that forms the basis of the Receiver's pending suit.   Counsel for the JLs advised GT that they were negotiating an agreement with the Receiver that would permit SIBL's claim to be brought in two simultaneous lawsuits, one by the Receiver in the U.S. and one by the JLs outside

the U.S., but that neither the Receiver nor the JLs would have authority to act for the other to resolve or release the entire claim.  Two trials or two settlements would be needed.

10.     Because of the multiple and conflicting claims, GT moved to dismiss the Receiver's claims for failure to join the JLs as necessary parties, and also filed a Motion to Join the JLs into the Receiver's suit.  GT also filed a Third-Party Complaint for Declaratory Relief against the JLs, seeking an adjudication of their alleged ownership of SIBL's claim and authority to split that claim and bring a duplicate suit against GT.

11.     On March 12, 2013, the Receiver and other plaintiffs (*not* including the JLs) filed an Amended Motion to Approve Settlement Agreement and Cross-Border Protocol.  The agreement would grant consent and approval from both the Receiver and this Court to split the alleged SIBL causes of action against GT and others.  In particular, the proposed agreement would authorize "Law Firm Claims" to be initiated and pursued "independently" by the Receiver and JLs in the jurisdictions where each has already been recognized.  In other words, the agreement seeks to permit the JLs to duplicate the Receiver's suit against GT outside the United States just as they threatened.  GT respectfully objects.

## THE FILING OF SIMULTANEOUS SUITS AGAINST GT
## WOULD VIOLATE MULTIPLE COURT ORDERS

### The Receivership Order

12.     The Receivership order prohibits creditors and all other persons from commencing any actions against SIBL's agents "except in this Court, unless this Court, consistent with general equitable principals and in accordance with its ancillary equitable jurisdiction in this matter, orders that such actions may be conducted in another forum or jurisdiction." Second Amended Order Appointing a Receiver, Case No. 3:09cv0298 (Dkt. 1130) ¶9.

13.     The proposed settlement agreement does not seek to vacate or amend the Receivership order.  No motion to amend or good cause is offered for amending that order.

14.     The proposed agreement would violate the Receivership order by allowing suit to be filed against GT outside of this Court.  No justification is offered for such a wasteful and redundant lawsuit, particularly when the same claim is already pending in this Court.  No equitable principle supports the filing of suit outside of this Court.

### Order Denying Leave to Sue Lawyers

15.     The Court has twice rejected the JLs' requests to file duplicate lawsuits against lawyers in other forums, once in the order denying leave to sue lawyers and again in the Chapter 15 order.  The order denying the JLs' motion to sue lawyers specifically rejected the JLs' proposal to file "a multiplicity of actions in different forums" and for that reason and others denied the JLs' request.

16.     The proposed agreement does not seek to vacate or amend this order.  No motion to amend or good cause is offered for amending the order to allow duplicate suits in different forums.  Indeed, under the agreement the JLs are agreeing to dismiss their pending appeal of this order.

17.     The proposed agreement would violate the Court's order by allowing the JLs to file multiple actions in different forums and thereby increase litigation costs for all parties while diminishing the size of the receivership estate.

### The Chapter 15 Order

18.     The Chapter 15 order limited the JLs right to conduct discovery in the U.S. to "the examination of witnesses [and] the taking of evidence or the delivery of information concerning [SIB's] assets, affairs, rights, obligations or liabilities."   Order (Dkt. 176) p. 56.  The Order further conditioned all relief on the JLs not "duplicating efforts by the Receiver."  *Id.* p. 57.

**OBJECTIONS TO PROPOSED SETTLEMENT** - Page 6

19.     The proposed agreement would violate the Chapter 15 Order by allowing the JLs to conduct unlimited U.S. discovery including discovery through "Letters Rogatory, the Chapter 15 proceedings, or otherwise."  The proposal contains no restriction against the JLs duplicating discovery taken by the Receiver, or retaking depositions taken by the Receiver in pursuit of the same claims.  Nor does it grant Defendants like GT the parallel right to take discovery in the U.S. from the JLs.

20.     More fundamentally, the proposed agreement would violate the Chapter 15 Order by purportedly authorizing the JLs to file blatantly duplicate lawsuits for claims that are already being pursued by the Receiver.

21.     Section 9.1 of the proposed agreement provides that the "Chapter 15 order will not be changed."  No motion or good cause is shown to change that order.  But the same section provides that any actions the JLs are permitted to take under the agreement "shall not be deemed to be a violation of the Chapter 15 order." In this respect the agreement is both inaccurate and disingenuous.  Duplicate lawsuits would plainly violate the Chapter 15 order.  If the order is not being amended or vacated, then all parties including the JLs must comply with it.  No good cause is offered for allowing the JLs to violate subsisting orders of this Court.

### THE PROPOSED SETTLEMENT VIOLATES THE STRONG PUBLIC POLICY PROHIBITING THE SPLITTING OF A CAUSE OF ACTION

22.     Both the Receiver and the JLs seek to assert one and the same claim, the purported claim of SIBL for alleged professional negligence by GT toward SIBL.  Both the Receiver and the JLs claim to be the lawful successors-in-interest to this single claim.  Each alleges that they now hold the rights that SIBL would have had to sue GT, if any.

23.     Fundamental public policy both here and in Antigua prohibits SIBL and its successors from splitting its purported claim.  Under Texas law, any cause of action which arises out of the facts involved in litigation must be asserted in a single suit.  *Barr v. Resolution Trust*

*Corp*., 837 S.W.2d 627, 629 (Tex. 1992).  "The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery.  *Id.*

24.     The Texas doctrine is "[c]onsistent with the rule of claim preclusion in federal courts."  *In re Troy Dodson Constr. Co*., 993 F.2d 1211, 1214 (5th Cir. 1993), citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir.1983) (en banc).  The Fifth Circuit has defined the doctrine as follows:

> "We need not repeat a scholarly exegesis of the principle prohibiting the splitting of a cause of action which may be found in the sources we cite; Professor Moore has distilled a definition as good as any other:
>
>> 'Normally, if a previous judgment is valid, final, on the merits, and on the same cause of action, it is an absolute bar in another action between the same parties or privies "not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also to every ground of recovery or defense which might have been presented.' This application of the doctrine of res judicata operates to prevent the splitting of a single course (sic) of action and the use of several grounds for recovery under the same action as the basis for separate suits. . .
>>
>> (I)n accordance with public policy, partially to conserve the courts' time but probably in the main to prevent the hardship upon defendant of unnecessary piecemeal litigation, a single cause of action cannot be split so as to be properly made the subject of different actions . . . ' "

*Hayes v. Solomon*, 597 F.2d 958, 982 (5th Cir. Tex. 1979), *citing* 1B Moore's Federal Practice ¶ 0.410 & Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1582.

25.     The same rule applies in Antigua, which follows English common law.[1]  *See Buckland v Palmer*, 3 All ER 554, 1 WLR 1109 (Ct. App. Civil Div. 1984) ("it is an abuse of the

---

[1] See The Common Law (Declaration of Application) Act, 1705, CAP. 92 (Antigua)(adopting English common law).  *See also* The Eastern Caribbean Supreme Court Act, 1970, CAP. 143 § 19 (Antigua)(requiring courts to "recognise and give effect" to common law rights, duties and obligations).  Available online at http://laws.gov.ag/acts/index.html.

**OBJECTIONS TO PROPOSED SETTLEMENT** - Page 8

process of the court to bring two actions in respect of the same cause of action"); *Overstone, Ltd. v. Shipway*, 1 All ER 52, 1 WLR 117 (Ct. App. 1962)("There is clear authority which establishes that a plaintiff may not bring separate actions for different heads of damages arising from the same cause of action").  *See also, Henry for Ralph v. Warner*, ANUHCV 2000/0277 (Antigua High Court of Justice 2009)("where a given matter becomes a subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires that the parties to that litigation to bring forward  their whole case") *quoting Henderson v. Henderson* (1843) 3 Hare 100, 114-15.[2]

26.     The Receiver and the JLs might have asked the Court for permission to jointly pursue SIBL's alleged claim in the U.S.  They might have appointed one of them, either the Receiver or the JLs, to pursue SIBL's alleged claim and split any recovery as they are doing with foreign bank accounts.  What they *cannot* lawfully do, however, is agree to split and pursue multiple "independent" lawsuits for SIBL's alleged claim.  *Cf. In re Hansler*, 988 F.2d 35, 37-38 (5th Cir. Tex. 1993)(Texas has adopted the transactional approach to res judicata, which focuses not on form but on the factual basis of the claims.  "Hansler could have asserted his rent claim in the Texas court, or his conversion claim in the bankruptcy court. What Hansler could not do was split his claim between two courts and two theories of recovery in order to shop for a favorable outcome.").

## THE SAME PRINCIPLES UNDERLIE THE FIRST-TO-FILE RULE
## AND THE DOCTRINE OF LIS ALIBI PENDENS

27.     SIBL's alleged claim against GT was filed in this Court by the Receiver on Nov. 15, 2012.  That was the first case filed in any jurisdiction for SIBL's alleged claim.  GT has answered the suit and joined issue.  It has also filed a Third-Party Complaint for Declaratory

---

[2] http://www.eccourts.org/wp-content/files_mf/1359140310_magicfields_pdf_file_upload_1_1.pdf

Judgment against the JLs.  The fact that the claim is already pending in this Court removes any remaining right to bring suit against GT outside the United States.

28.     The first-to-file rule provides that if a pending case is filed in two courts and the issues substantially overlap, the court in which the case was last filed may refuse to hear it.  "The rule rests on principles of comity and sound judicial administration.… The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. Tex. 1999); s*ee also, Needbasedapps, LLC v. Robbins Research Int'l, Inc*., 2013 U.S. Dist. LEXIS 24191, *13-15 (W.D. Tex. Feb. 20, 2013)("[I]f the two actions are likely to 'overlap on the substantive issues,' they should be consolidated in 'the jurisdiction first seized of the issues.'").

29.     English common law countries like Antigua adhere to the same doctrine under the name *lis alibi pendens* (dispute elsewhere pending).  That doctrine provides that when a court in a foreign jurisdiction has already commenced a case and acquired jurisdiction over the subject matter, a later-filed case in another country is vexatious and can be stayed or dismissed:

> [W]here a plaintiff seeks to pursue the same defendant in two jurisdictions in relation to the same subject matter, the proceedings verge on the vexatious.  I am not suggesting in any sense that the plaintiff in this case was being deliberately vexatious, but the outcome is vexatious. … My view to that effect is supported by Dicey and Morris Conflict of Laws (11th ed., 1987) 395, where in dealing with lis alibi pendens this passage occurs:
>
> > 'The court may be asked to stay an action in England, or to enjoin an action abroad, in two distinct situations: first, where the same plaintiff sues the same defendant in England and abroad and secondly, where the plaintiff in England is defendant abroad, or vice versa. In the first situation it is not likely that the court would allow, except in very unusual circumstances, the continuation of proceedings by the same plaintiff against the same defendant for a similar cause of action in two different jurisdictions.  The court would put the plaintiff to his election, and stay the English proceedings or enjoin the foreign proceedings.'

> In my judgment that reflects the position, save that in my view it is not a question
> simply of a plaintiff applying for a stay of its own action: the action must go.

*Australian Commercial Res. & Dev. Ltd. v ANZ McCaughan Merchant Bank Ltd.*, 3 All ER 65

(Chancery Div. 1989).

30.     The fact that both a Receiver and JLs claim rights to pursue SIBL's negligence

claim does not change the result.  A literal identity or parties is not required under either the

American or English rules.  *See Needbasedapps, LLC v. Robbins Res. Int'l, Inc*., 2013 U.S. Dist.

LEXIS 24191, *13-15 (W.D. Tex. Feb. 20, 2013)("The [first-to-file] rule does not require that

the claims or even the parties be identical.").  The "same plaintiff" is deemed to exist in cases

like the present one where there are multiple successors to a single underlying right or claim.

*See Kolden Holdings Ltd v Rodette Commerce Ltd.,* EWCA Civ 10; 1 BCLC 481 (Ct. App.

2008)("In my judgment the interests are identical, because in relation to each of the SPAs [sale

and purchase agreements] there is only one right, and there are successive owners of that one

right").

31.     Procedurally, "the Fifth Circuit adheres to the general rule, that the court in which

an action is first filed is the appropriate court to determine whether subsequently filed

cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice*,

174 F.3d 599, 606 (5th Cir. Tex. 1999); *Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 948

(5th Cir. 1997).   This Court may thus appropriately prohibit the JLs from filing subsequent suits.

## A CONTRACT THAT VIOLATES PUBLIC POLICY IS VOID

32.     A contract that is illegal or against public policy is void.  "Generally, if a contract

violates public policy, it is void, not merely voidable." *Lawrence v. CDB Servs*., 44 S.W.3d 544,

555 (Tex. 2001).  *See also, Providence v. Little*, ANUHCV 2005/0142 (Antigua High Court of

Justice 2007)("where a contract is illegal as formed it is therefore void ab initio and it is treated

in law as if it had not been made at all," *quoting* Cheshire, Fifoot and Furmston's Law of

Contract Thirteenth Ed. at p. 388).[3]  The proposed agreement for splitting SIBL's alleged cause of action against lawyers would violate public policy and render the agreement void.

### NEITHER COMITY NOR JURISDICTION PRECLUDES THIS COURT FROM PROHIBITING DUPLICATE SUITS

33.     The JLs have gone to great lengths to try and prevent the Court from exercising jurisdiction over them.  They limited their court filings to the Chapter 15 case even when they sought relief from orders issued in the main Receivership.  The JLs did not even join in the so-called Joint Motion to Approve Settlement Agreement, not even in the Chapter 15 case.   The Motion is arguably mischaracterized as a "joint" motion because it was not signed by the JLs, their counsel or anyone signing with their permission.[4]

34.     The Court has been understandably reluctant to issue affirmative orders that might appear to infringe on the authority of the Antigua courts.  The Court has, however, *denied* improper requests like the JLs motion to pursue professional negligence.  It has also imposed *conditions* on relief requested by the JLs, such as in its Chapter 15 recognition order.

35.     Concerns for international comity do not preclude the Court's application of the rules in this case.  "[T]he direct effect of the district court's action on the jurisdiction of a foreign sovereign requires that such action be taken only with care and great restraint."  *Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.*, 412 F.2d 577, 578-579 (1st Cir. 1969).  However, "there are times when comity, a blend of courtesy and expedience, must give way, for example when the forum seeks to enforce its own substantial interests, or in limited circumstances *when relitigation would cover exactly the same points*.  Id.* (emphasis added).

---

[3] http://www.eccourts.org/wp-content/files_mf/1359641504_magicfields_pdf_file_upload_1_1.pdf

[4] The Receiver does avow in the Certificate of Conference that "The Antiguan Joint Liquidators are signatories to the Settlement Agreement and therefore support the relief requested."

36.     Moreover, the nature of the request pending before the Court permits the Court to deny or condition relief as it deems appropriate.  The motion seeks affirmative relief, which the Court may deny or modify.  The Court has unchallenged personal jurisdiction over the moving parties (the SEC, Receiver, Examiner and OSIC) and the authority to bar those parties from entering into improper or illegal contracts.

37.     The JLs have in any event submitted themselves to personal jurisdiction in this Court as more fully set out in GT's Third-Party Complaint in Case No. 3:12cv4641, which is incorporated herein by reference.  The Settlement Agreement is plainly a contract between the JLs and the Texas resident Receiver that is performable in part in Texas.  Such a contract subjects the JLs to specific personal jurisdiction in disputes over the validity and effect of that agreement.  Indeed, Section 11.9 of the agreement provides that it "*shall be governed by and construed in accordance with the laws of the State of Texas applicable to contracts executed in and to be performed in that jurisdiction*."

38.     The JLs apparently intend to argue that they are precluded from participating in any U.S. litigation because this Court has not granted them leave to do so.  But the Court's orders do not preclude the JLs from *answering* GT's Third-Party Complaint.  The order denying the JLs leave to sue lawyers was qualified as the ruling of the Court "at this time."  The JLs cannot turn the Court's prior orders prohibiting them from filing duplicate lawsuits into a sword allowing them to … file duplicate lawsuits.  To the extent any further leave is necessary for the JLs to answer GT's Third-Party Complaint and pursue any compulsory counterclaims in the pending case, GT requests the Court grant such leave.

39.     The absurdity of the JLs argument is demonstrated by their effort to amend or disregard certain orders while hiding behind other provisions in the same orders.  The relief they seek would constitute or require amendment of the Receivership Order, the Order denying the

motion to sue lawyers and the Chapter 15 Order.  It would be disingenuous to use other parts of these same orders defensively to argue that the JLs are not "authorized" to assert their alleged claims against GT in the pending action.  Allowing the JLs to assert their claim in the pending action would require no amendments, only leave of Court as contemplated in the orders, and which GT agrees is appropriate in this case.

### RELIEF REQUESTED

40.     The proposed agreement is a thinly-disguised and improper effort to obtain special rights and privileges for Plaintiffs in collateral litigation.  These special rights would violate existing court orders, public policy in both the U.S. and Antigua, and the rights of Defendants like GT, which has been unjustly sued and is now being threatened with a duplicate suit -- a suit this Court has twice found to be unnecessary, improper, and wasteful of Receivership assets.

41.     Because of the unique posture of the case the Court has flexibility to fashion appropriate relief.  Relief could take the form of one or more of the following:

> a.     Conditioning approval of the Settlement Agreement on the same conditions already contained in the Chapter 15 order, specifically "precluding the Joint Liquidators from duplicating efforts by the Receiver, the Examiner, and OSIC";

> b.     Providing that approval of the Settlement Agreement shall not become effective until the JLs file a Stipulation, in the Chapter 15 case or elsewhere, agreeing that they will not file any lawsuits outside of the United States relating to the subject matter of pending suits by the Receiver or OSIC, including but not limited to the Receiver's suit against GT;

> c.     Granting approval and leave for the JLs to appear in the Receiver's pending U.S. lawsuits in order to avoid the waste, added expense, and risk of conflicting claims and results that would result from duplicate lawsuits;

> d.     If the settlement is to be approved without condition, the Court should dismiss the Receiver's pending suit against GT for failure to join necessary parties.

**OBJECTIONS TO PROPOSED SETTLEMENT** - Page 14

42.    **In the alternative**, GT requests the Court expressly order that approval of the Settlement Agreement shall be *without prejudice* and *inapplicable* with respect to any rights or issues in collateral litigation brought by the Receiver, OSIC or the JLs including but not limited to any issues in the pending suit against GT and GT's Third-Party Complaint for Declaratory Relief against the JLs.

**WHEREFORE**, Greenberg Traurig prays that its objections be sustained, that the Court fashion appropriate relief with respect to those objections, and for such other and further relief to which GT may show itself to be justly entitled.

Respectfully submitted,

By:  /s/ Sim Israeloff
**JIM E. COWLES**
Texas Bar No. 04931000

**SIM ISRAELOFF**
Texas Bar No. 10435380

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 25th day of March, 2013, a true and correct copy of the foregoing document was delivered via electronic means using the ECF system pursuant to FED. R. CIV. P. 5(b)(2)(D) and Local Rule 5.1, to all counsel of record.

_/s/ Sim Israeloff_____
**SIM ISRAELOFF**

**OBJECTIONS TO PROPOSED SETTLEMENT** - Page 15