IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, | § | |
| LTD., *et al.* | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Security and Exchange Commission's ("SEC") motion

for partial summary judgment [1779].  The Court grants the motion.  The Court also denies

Defendant R. Allen Stanford's motion for extension of time [1807].

### I. THE SEC'S CIVIL ACTION AGAINST STANFORD

The Commission filed this action against R. Allen Stanford, his associates, and

various entities on February 17, 2009.  The SEC alleged a host of securities law violations

committed by Stanford, his businesses, and his associates.  Since that time, a federal grand

jury in Houston indicted Stanford, and a superseding indictment charged Stanford with wire

fraud, mail fraud, and obstruction of an SEC investigation.  The indictment also charged

Stanford with conspiracy to commit these same offenses as well as conspiracy to commit

money laundering.  On March 6, 2012, a jury convicted Stanford of conspiracy to commit

mail and write fraud, four counts of wire fraud, five counts of mail fraud, one count of

conspiracy to obstruct an SEC investigation, one count of obstruction of an SEC proceeding, and one count of conspiracy to commit money laundering.  Following the conviction, the court conducted a forfeiture trial in which a jury found that assets in various Stanford-related accounts were proceeds from Stanford's fraudulent scheme.  The Houston trial court sentenced Stanford to 110 years in prison and ordered Stanford to forfeit more than $5.9 billion.  Stanford has appealed the rulings.  Stanford's accomplice, James Davis, also pled guilty to mail fraud, wire fraud, and conspiracy to obstruct an SEC investigation.  Davis was sentenced to sixty months in federal prison and three years of supervised release.

Based on these developments, the SEC moves for summary judgment on some of the counts alleged in its second amended complaint.  Specifically, the SEC moves for summary judgment on its Exchange Act § 10(b) and Rule 10b-5 claims against Stanford, Davis, Stanford International Bank ("SIB"), and Stanford Group Company ("SGC"); its Securities Act § 17(a) claims against Stanford, Davis, SIB, and SGC, its Advisers Act § 206(1) and 206(2) claims against Stanford and SGC, and its Investment Company Act § 7(d) claims against SIB and SGC.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962).  Courts, however, need not sift through the record in search of triable

issues.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its

belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  Once the movant has made this showing, the burden shifts to the nonmovant to

establish that there is a genuine issue of material fact so that a reasonable jury might return

a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-

87 (1986).  Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions"

will not suffice to satisfy the nonmovant's burden.  *Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, courts resolve factual controversies

in favor of the nonmoving party "'only when an actual controversy exists, that is, when both

parties have submitted evidence of contradictory facts.'"  *Olabisiomotosho v. City of Hous.*,

185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus,

Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

SIB, SGC, and Davis failed to respond to the SEC's motion.  Because these parties

did not respond to the SEC's motion, the Court accepts the SEC's facts as to these defendants

as undisputed.  *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).  Normally, "[a]

summary judgment nonmovant who does not respond to the motion is relegated to [its]

unsworn pleadings, which do not constitute summary judgment evidence."  *Bookman v.

Schubzda*, F. Supp. 999, 1002 (N.D. Tex. 1996).  If a "fail[s] to respond to a [] motion for

summary judgment, the inquiry must be whether the facts presented by the [moving party]

create an appropriate basis to enter summary judgment against the" nonmoving party. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III. THE SEC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

The SEC argues that it is entitled to summary judgment because Stanford and Davis are collaterally estopped from litigating facts established in the related criminal proceeding. Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the determination." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). When the government seeks to utilize the results of a prior criminal proceeding as collateral estoppel, courts look to the respective indictments and complaints to determine whether the civil complaint and criminal indictment actually involve identical issues. *SEC v. Blackwell*, 477 F. Supp. 2d 891, 900 (S.D. Ohio 2007) (citing *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993)); *see also Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 949 (5th Cir. 1988) (analyzing similarities of indictment and complaint to determine whether to apply collateral estoppel).

A court may give issues litigated in the criminal proceeding preclusive effect even where, like here, the criminal proceeding is on appeal. *See Smith v. SEC,* 129 F.3d 356, 362 (6th Cir. 1997) (noting that the pendency of an appeal does not preclude a judgment's res judicata effect); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 905 F.2d 610, 621 (2d Cir. 1990) ("The pendency of a criminal appeal generally 'does not deprive a judgment of its preclusive effect'") (citations omitted);

*SEC v. Namer,* No. 97 Civ. 2085(PKC), 2004 WL 2199471 at *8 (S.D.N.Y. Sept. 30, 2004)

("But the fact that [defendant's] criminal conviction is currently under consideration by the

United States Court of Appeals for the Sixth Circuit does not foreclose the prior judgment

from having preclusive effect."); *SEC v. Pace,* 173 F. Supp. 2d 30, 33 (D.D.C. 2001) ("The

fact that Pace's appeal from his conviction is still pending does not affect the application of

collateral estoppel."); *see also* 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND

PROCEDURE: JURISDICTION 2D § 4433 (2d ed.) ("The bare act of taking an appeal is no more

effective to defeat preclusion than a failure to appeal.").

      The SEC argues that the civil complaint and the indictments of Stanford and Davis

seek to prove the same facts, that those facts were litigated in the government's favor during

Stanford's criminal trial and as a result of Jim Davis's guilty plea, and that the SEC is

entitled to rely on those factual findings in this proceedings.

### A. The SEC's Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) Claims

### 1. The SEC Is Entitled to Summary Judgment on Its Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) Claims Against Stanford Based on the Jury Verdict in Stanford's Criminal Proceeding.

– Rule 10b-5 and section 17(a) are substantially identical.

*See Landry v. All Am. Assurance Co.*, 688 F.2d 381, 386 (5th Cir. 1982) ("Rule 10b-5,

adopted under § 10(b) of the Securities and Exchange Act of 1934, is substantially identical

to § 17(a)."). Under either provision, the SEC must show that Stanford, by the use of any

means or instrumentality of interstate commerce or of the mails, (1) used a fraudulent device,

made a material misrepresentation or omission, or committed an act that operated as a fraud

or deceit; (2) in connection with the purchase or sale of securities; and (3) acted with scienter. *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

In Stanford's criminal trial, the jury found that: (1) Stanford knowingly created a scheme to defraud or to obtain money and property by means of materially false or fraudulent pretenses, representations, or promises; (2) Stanford acted with a specific intent to defraud; (3) Stanford used interstate or foreign wire communications or caused another person to use interstate or foreign wire communications for the purpose of carrying out the scheme; (4) Stanford mailed something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme; and that (5) Stanford's scheme to defraud employed false material representations.  App. Supp. Pl.'s Mot. Summ. J. 188-93.  These factual findings of the Stanford criminal court, necessary to the judgment in that proceeding, conclusively establish that the SEC is entitled to summary judgment on its Exchange Act § 10(b), Rule 10b-5, and Securities Act § 17(a) claims against Stanford.

In response, Stanford argues only that his criminal trial was deficient.  Specifically, Stanford argues that the criminal trial involved a number of constitutionally deficient procedures.  Because of these constitutional deficiencies, according to Stanford, Stanford did not have the opportunity to fully and fairly litigate these issues in the criminal proceeding.  But even if Stanford's criminal proceeding was constitutionally infirm – a matter on which the Court expresses no opinion – such arguments are questions for the appellate court in the criminal procedure.  *See* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H.

COOPER, FED. PRAC. & PROC. § 4423 (2d ed.) ("The values of preclusion would be destroyed if proof of the quality of decision were required of the party asserting preclusion or permitted to the party opposing it.").   And although appeal stays execution of the criminal trial judgment, the judgment is still final and may be utilized to collaterally estop Stanford from re-litigating facts already litigated in that criminal trial.  *See SEC v. Blackwell*, 477 F. Supp. 2d 891, 901 (S.D. Ohio 2007) (applying preclusive effect of criminal judgment on appeal); *SEC v. Pace*, 173 F. Supp. 2d 30, 33 (D.D.C. 2001) (same).   Accordingly, the Court applies the doctrine of collateral estoppel and holds that the SEC is entitled to Summary Judgment on its Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) claims against Stanford based on the facts adjudicated in Stanford's criminal proceeding.

   *2.   The SEC is Entitled to Summary Judgment on Its Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a)claims against SIB and SGC Based on Undisputed Evidence.* –   Stanford admits to wholly owning and controlling SIB and SGC.  Stanford's Answer First Am. Compl. ¶ 15.  Stanford used SCB and SGC to sell his CDs, the tool used to perpetuate his massive Ponzi scheme.  *See* Direct Testimony of Karyl Van Tassel, *in* App. Supp. Pl.'s Mot. Summ. J. 314-15.  Accordingly, the SEC is entitled to summary judgment on its Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) claims against SIB and SGC.

   *3.   The SEC is Entitled to Summary Judgment on its Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) Claims Against Davis Based on Davis's Guilty Plea.* – In Stanford's criminal proceeding, Davis pled guilty.  In his plea agreement, Davis admitted

that he (1) conspired with Stanford to solicit investor funds and misappropriate them for personal use; (2) falsely told investors that SIB's investment were well-managed, safe and secure, and invested in a strategy to minimize risk and achieve liquidity; (3) falsely told investors that SIB's returns increased year by year through investment strategy; (4) falsely told investors that SIB had certain returns when he and other were fabricating those returns; (5) created and disseminated false and fraudulent documents to investors that misrepresented how they were invested; and (6) concealed the lack of regulatory scrutiny by the Antiguan regulators and outside auditor. These admissions conclusively prove that the SEC is entitled to summary judgment against Davis on the SEC's Exchange Act § 10(b), Rule 10b-5 and Securities Act § 17(a) claims.

### B. The SEC's Advisers Act Claims

**1. The SEC is Entitled to Summary Judgment on Its Advisers Act § 206(1) and 206(2) Claims Against Stanford Based on Stanford's Criminal Proceeding and the SEC's Undisputed Facts.** – Section 206(1) of the Adviser's Act prohibits investment advisers from employing "any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C. § 80b-6(1). Section 206(2), likewise, prohibits investment advisors from engaging "in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." *Id.* § 80b-6(2). Stanford was an investment adviser. *See id.* § 80b-2(11) ("'Investment adviser' means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities,

or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities"); *see also* Van Tassel Decl., *in* Pl.'s App. 314 (asserting that Stanford's only income was from Stanford entities, including the sale of CDs). The jury in Stanford's criminal proceeding necessarily determined that Stanford engaged in fraud through the sale of CDs. Accordingly, the SEC is entitled to summary judgment on its Adviser's Act sections 206(1) and 206(2) claims against Stanford.

*2.   The SEC Is Entitled to Summary Judgment on Its Advisers Act § 206(1) and 206(2) Claims Against SGC Based on Stanford's Criminal Proceeding and the SEC's Undisputed Facts.* – Stanford admitted that SGC was a registered investment advisor. First Am. Compl. ¶¶ 13, 14; Stanford's Answer ¶¶ 13, 14. Stanford controlled SGC and utilized SGC to sell his fraudulent CDs to U.S. investors. *See* Van Tassel Decl., *in* Pl.'s App. 315. Accordingly, the SEC is entitled to summary judgment on its § 206(1) and 206(2) claims against SGC.

### C.   The SEC is Entitled to Summary Judgment on its Investment Company Act § 7(d) claims against SIB and SGC

Section 7(d) of the Investment Company Act requires a foreign investment company to obtain an order from the SEC allowing it or its underwriter to publicly offer securities for sale in this country before doing so. 15 U.S.C. § 80a-7(d). SIB publicly sold securities, the CDs, in this country without first obtaining an SEC order. *See* Aff. Curtis Francisco, *in* Pl.'s App. 135. Thus, SIB violated section 7(d). SGC is an underwriter as defined by the statute. *See* 15 U.S.C. § 80a-2(40) ("'Underwriter' means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any

security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking."). Stanford admits that SIB sold its CDs through SGC. *See* First Am. Compl. ¶¶ 12, 13; Stanford's Answer ¶¶ 12, 13 (admitting that Stanford sold SIB CDs through SGC). Thus, SGC also violated section 7(d). Accordingly, the SEC is entitled to summary judgment on its section 7(d) claims against both SIB and SGC.

## IV. THE SEC'S REQUESTED REMEDIES

### A. The Court Grants the SEC's Request for an Injunction

The Court has found that the SEC is entitled to summary judgment against Stanford for violations of the Securities Act, the Exchange Act, the Advisers Act, and the Investment Advisors Act. The Court has found that the SEC is entitled to summary judgment against Davis for violations of the Securities Act and the Exchange act. The Court has found that the SEC is entitled to summary judgment against SIB for violations of the Securities Act, Exchange Act, and Investment Company Act. And the Court has found that the SEC is entitled to summary judgment against SGC for violations of the Securities Act, Exchange Act, Investment Company Act, and Advisers Act. All of these statutes provide that a permanent injunction may issue following a violation of any of their provisions. *See* 15 U.S.C. § 77t(b); *id.* § 78u(d); *id.* § 78u-1; *id.* § 80b-9(d); *id.* § 80a-41.

To show entitlement to an injunction, the SEC must show that there is a reasonable likelihood that the wrong will be repeated, but the SEC need not show irreparable injury or lack of a legal remedy. *See SEC v. Scott*, 565 F. Supp. 1513, 1536 (S.D.N.Y. 1983). Courts

look to various factors to determine whether the SEC is entitled to the injunction, including (1) the seriousness of the original violation; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved on the part of the defendant; (4) the defendant's recognition of his or her wrongful conduct and the sincerity of assurance against future violations; and (5) the likelihood that the defendant's occupation will present opportunities for future violations. *See, e.g.*, *SEC v. Resnick*, 604 F. Supp. 2d 773, 782 (D. Md. 2009). "Essentially, a court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed." *SEC v. Bonastia*, 614 F.2d 908, 912 (citing *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978)). Although no single factor is determinative, the degree of scienter "bears heavily" on the decision to issue an injunction. *See SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993)

Stanford, Davis, SIB, and SGC committed serious violations of the securities laws, did so recurrently, and did so with a high degree of scienter. Given these factors, the Court finds that the SEC is entitled to injunctive relief against Stanford prohibiting future violations of Exchange Act § 10(b), Rule 10b-5, Securities Act § 17(a), and Advisers Act § 206(1) and (2), against Davis prohibiting future violations of Exchange Act § 10(b), Rule 10b-5, and the Securities Act § 17(a), and against SGC and SIB prohibiting future violations of Exchange

Act § 10(b), Rule 10b-5, Securities Act § 17(a), Advisers Act § 206(1) and (2), and Investment Company Act § 7(d).[1]

### B. The Court Grants the SEC's Requested Disgorgement

To justify disgorgement, the SEC must establish only a reasonable approximation of the amount of gains causally connected to the fraud. *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989); *Resnick*, 604 F. Supp. 2d at 782. A criminal money judgment is a reasonable approximation of the ill-gotten gains. *See SEC v. Gordon*, 822 F. Supp. 2d 1144, 1158 (N.D. Okla. 2011). Here, the criminal proceedings establish a forfeiture figure of $5.9 billion. Although Stanford could have introduced evidence to show that the criminal forfeiture figure is unreasonable, he failed to do so. *See id.* ("Once the SEC shows that the amount of disgorgement sought is a reasonable approximation of defendant's ill-gotten gains, the burden shifts to the defendant to prove that the SEC's estimate is not reasonable."). Thus, the Court finds that $5.9 billion is a reasonable approximation of the gains connected to Stanford's fraud. Accordingly, the Court finds Stanford is liable to disgorge the $5.9 billion that he obtained as a result of his fraudulent scheme. The Court exercises its discretion to hold SGC, SIB, and Davis jointly and severally liable for this amount.[2] *See SEC v. First*

---

[1] Although Stanford was sentenced to a 110-year prison term, a prison sentence is not sufficient, standing alone, to show lack of a reasonable likelihood of future violations. *SEC v. Mark*, 427 F. Supp. 2d 583, 591 (M.D.N.C. 2006); *see also U.S. v. Mihaly*, 67 F.3d 894 (10th Cir. 1995) (appeal regarding guilty plea of wire fraud while serving prison sentence).

[2] As the SEC recognizes, it may be necessary to offset any disgorgement owed by Stanford, Davis, SGC, and SIB by any recovery obtained against them by the Receiver or any assets obtained by the Department of Justice in forfeiture proceedings. The sum also may

*Pacific Bancorp*, 142 F. 3d 1186, 1192 (9th Cir. 1998); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475-76 (2d Cir. 1996); *Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993).

### C.  The Court Grants the SEC Prejudgment Interest

The Court may award prejudgment interest on disgorgement amounts, in its discretion, to prevent parties from benefitting from what is, in essence, an interest-free loan resulting from illegal activity. *See, e.g.*, *SEC v. Jakubowski*, 1997 WL 598108, at *2 (N.D. Ill. Sept. 19, 1997) (citation omitted).  Courts generally consider (1) the need to fully compensate the wronged party for actual damages suffered; (2) considerations of fairness and relative equities of the award; (3) the remedial purpose of the statute involved; and (4) such other general principles as deemed relevant. *See First Jersey*, 101 F.3d 1476.  In federal securities cases, courts generally calculate prejudgment interest by applying the underpayment rate published by the Internal Revenue Service. *See, e.g.*, *SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007).

The SEC requests $861,189,969.06 in prejudgment interest, based on calculations of the IRS underpayment rate on $5.9 billion from the time of the SEC's complaint until the time of the filing of the SEC's motion.  The Court finds the SEC's time period and calculation reasonable and, accordingly, adds the SEC's requested prejudgment interest to the defendant's disgorgement liability.

---

be offset by money returned to investors from the Receiver. *See SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *3 (N.D. Tex. May 5, 2008).

### D.  The Court Imposes a Civil Penalty on Stanford and Davis

"Civil penalties are designed to punish the individual violator and deter future violations of the securities laws." *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). "Without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains." *Koenig*, 532 F. Supp. 2d at 995.  The Securities Act, Exchange Act, Investment Company Act, and Advisers Act all set three tiers of civil penalties in SEC civil actions.  15 U.S.C. § 77t(d); *id.* § 78u(d); *id.* § 80a-41(e);  *id.* § 80b-9(e).  A third-tier penalty, the highest of the three, is proper if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." *See, e.g.*, 15 U.S.C. § 78u(d)(3)(B).  Based on the extraordinary facts of this extraordinary fraud, the Court finds that third-tier penalties are appropriate as against Stanford, SIB, SGC, and Davis.

The third-tier penalty, for an individual, should not exceed the greater of (1) $130,000 for each violation or (2) the gross amount of the defendant's pecuniary gain. *See* 15 U.S.C. § 78u(d)(3)(B); *id.* § 77t(d)(2) *see* 17 C.F.R. § 291.1004 (increasing penalty to $130,000). For any entity, the third-tier penalty should not exceed the greater of (1) $650,000 for each violation or (2) the gross amount of the defendant's pecuniary gain.  *See* 15 U.S.C. § 78u(d)(3)(B); *id.* § 77t(d)(2) *see* 17 C.F.R. § 291.1004 (increasing penalty to $650,000).  In determining the proper amount of the civil penalty, courts consider a number of factors, including:

(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Opulentica*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007) (citing *SEC v. Coates*, 137 F.Supp.2d 413, 428-29 (S.D.N.Y.2001) (listing factors)).   Courts sometimes also consider additional factors such as the cooperation of the defendant with law enforcement authorities or the adequacy of other criminal or civil sanctions to punish the defendant. *See SEC v. Lewis*, 492 F. Supp. 2d 1173, 1174 (D.S.D. 2007); *SEC v. Church Extension of the Church of God, Inc.*, 429 F. Supp. 2d 1045, 1050-51 (S.D. Ind. 2005).

As to each defendant, most factors tilt toward a higher third-tier penalty.  The fraud perpetrated was obviously egregious, was done with a high degree of scienter, caused billions in losses, and occurred over the course of a decade.  Thus, the Court is inclined to impose a penalty that corresponds with the seriousness of the offenses at issue.  However, the Court notes the difficulty in determining a proper fine as to each defendant because the SEC has not provided the Court with any method of calculation other than asking the Court to enter "the maximum third-tier penalty" of $5.9 billion – the amount found by the criminal court as proceeds of Stanford's scheme – against both Stanford and Davis.  The SEC  seeks an indeterminate amount against SIB and SGC.

The Court agrees that the $5.9 billion penalty is warranted as to Stanford as the amount of his gross pecuniary gain.  Accordingly, the Court imposes a civil penalty of $5.9

billion against Stanford.  However, the Court declines to enter such a penalty against Davis, SIB, and SGC.

The SEC makes no attempt to segregate Davis's conduct from Stanford's conduct. The SEC further fails to consider that Davis cooperated with authorities and that Davis's guilty plea has been utilized heavily in this proceeding as well as in Stanford's criminal proceeding.  Further, there is simply no indication that because Stanford profited from the fraud to the tune of $5.9 billion, Davis did as well.  Although Davis was unquestionably integral to the fraud, it is impossible to determine from this record what Davis's gross pecuniary gain was from the fraud or how many violations Davis committed for purposes of imposing a third-tier penalty.  Given this lack of information, the Court imposes a $5 million civil penalty against Davis for his actions in connection with the Stanford fraud.[3]

The Court also declines to enter a penalty against SIB or SGC.  First, the gains those entities acquired from the fraud are likely reflected in the penalty levied against Stanford because Stanford owned and controlled both entities and used them to acquire his fraudulent gains.  Second, any difference in the amount of penalty imposed is likely moot.  SIB and SGC are in the lengthy process of liquidation.  Given the discrepancy between money owed by those entities and money currently in hand, those Receivership entities have no ability to pay any fine.

---

[3]The Court assumes that this sum is less than the statutory maximum.

## CONCLUSION

For the reasons stated above, the Court grants the SEC's motion for summary judgment.  The Court enjoins Stanford from violating the Exchange Act § 10(b), Rule 10b-5, the Securities Act § 17(a), and the Advisers Act § 206(1) and (2), enjoins Davis violating the Exchange Act § 10(b), Rule 10b-5, the Securities Act § 17(a), and enjoins SGC and SIB from violating the Exchange Act § 10(b), Rule 10b-5, the  Securities Act § 17(a), the Advisers Act § 206(1) and (2), and the Investment Company Act § 7(d).  The Court finds Stanford, Davis, SGC, and SIB jointly and severally liable to disgorge the $5.9 billion fraudulently acquired by Stanford's scheme.  The Court adds $861,189,969.06 of prejudgment interest to this total, for a total disgorgement liability of $6,761,189,969.06.  Finally, the Court imposes a civil penalty of $5.9 billion on Stanford and $5 million on Davis.

Signed April 25, 2013.

David C. Godbey
United States District Judge