**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3-09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § | |
| Defendants. | § | |

**RECEIVER'S 7TH INTERIM REPORT REGARDING STATUS OF RECEIVERSHIP, ASSET COLLECTION, AND ONGOING ACTIVITIES**

The Receiver hereby submits for the Court's consideration the following information regarding the status of the Receivership, asset collection efforts, and other ongoing activities. Unless otherwise stated herein, the information in this report is current as of December 31, 2013.[1] The Receiver will supplement this report as circumstances develop or if the information herein materially changes.

### I.   CASH INFLOWS & MAJOR RECEIVERSHIP ASSETS

The total amount of cash collected by the Receiver — including, but not limited to, remaining operating income streams, asset liquidation, and recovery of assets and funds from third parties — was approximately $240.9 million as of December 31, 2013. After subtracting the fees and expenses discussed in more detail below in Section II of this report, the net cash

---

[1] A summary of the data in this report is contained in the concurrently filed Appendix. In particular, page 1 of the Appendix provides both summary- and detail-level information regarding the Receivership's cash flow. Page 2 of the Appendix lists major Receivership assets identified thus far.

inflows totaled **113.7 million**. Of this amount, $3.0 million was restricted cash inflows,[2] and $110.7 million was unrestricted cash inflows prior to distribution. The Receiver has thus far distributed $24.5 million to claimants who filed claims with the Receivership, leaving the Estate with $86.2 million in unrestricted cash on-hand.

*Cash Balances & Trailing Revenue:* The cash balances recovered by the Receiver shortly following his appointment on February 17, 2009 totaled approximately $63.1 million. In addition, the Receivership has collected roughly $5.5 million in cash associated with income earned prior to the inception of the Receivership.

*Private Equity:* The Receiver has recovered approximately $37.6 million in net cash proceeds from the liquidation of private equity investments and expects to receive approximately $300,000 more from closed or pending private equity liquidations. In addition, the Receiver's financial advisor is continuing to market the remaining investments in Stanford's private equity portfolio, which have an estimated value of up to $6.6 million.

*Real Estate:* The Receiver has recovered approximately $18.7 million in net cash proceeds from the liquidation of real estate. The Receiver's real estate brokers are continuing to market other properties in Stanford's real estate portfolio, and the Receiver estimates up to $2 million in potential recovery from the liquidation of those properties.

*Watercraft and Airplanes:* The Receiver has recovered approximately $8.0 million from the disposition of airplanes owned or leased by Stanford and from the sales of the Sea Eagle yacht, the Little Eagle yacht, and the Robust Eagle tugboat.

---

[2] This restricted cash includes, *inter alia*, the following: amounts held in escrow pending the outcome of the controversy between the Receiver and Dillon Gage; funds held in relation to the Bank of Antigua; and amounts subject to potential liens.

*Latin American Assets:* The Receiver has been able to liquidate assets in Panama, Ecuador, and Peru, resulting in a recovery of approximately $12.9 million.[3] Moreover, the Receiver is pursuing the recovery of up to $8.4 million in additional Latin American assets.

*Miscellaneous Asset Sales:* The Receiver has recovered approximately $2.3 million from the sale of miscellaneous assets — including, but not limited to, furniture, coins, vehicles, and assorted equipment.

*Litigation:* The Receiver has fraudulent-transfer, unjust-enrichment, and other claims pending against numerous defendants, through which the Receiver seeks the recovery of approximately $686.4 million.[4] The Receiver has identified at least an additional $1.3 million in international litigation claims. Asset recovery litigation is difficult, protracted, and expensive. Nevertheless, such claims are the single largest potential source of funds which may be recovered for the benefit of Stanford's victims. Although the Receiver has thus far received approximately $20.8 million[5] from settlements and other litigation efforts (including over $2.2 million received from the political committee defendants in Case No. 3:10-CV-0346-N) and has secured injunctions to hold another approximately $27.4 million, the amount that the

---

[3] This figure comprises the following: (a) over $7.7 million in net proceeds from the sale of Stanford Bank (Panama) S.A. and Stanford Casa de Valores; (b) approximately $612,000 from the sale of the Stanford Peruvian brokerage business; and (c) over $4.5 million through the liquidation of Stanford Ecuadoran assets.

[4] For the purposes of this report, the Receiver has excluded the following amounts from this figure: (a) claims for the return of over $944.2 million in "principal" amounts from net-winner defendants; (b) claims against R. Allen Stanford for at least $1.8 billion; (c) claims against the defendants in *Janvey, et al. v. Adams & Reese, LLP, et al.* (Case No. 3:12-CV-0495-N-BL), *Janvey, et al. v. Proskauer Rose, LLP, et al.* (Case No. 3:12-CV-0644-N-BL), *Janvey, et al. v. Greenberg Traurig, LLP, et al.* (Case No. 3:12-CV-4641-N), and *Janvey, et al. v. Proskauer Rose, LLP, et al.* (3:13-CV-0477-N) for actual and punitive damages; (d) the breach of fiduciary duty claims against the defendants in *Janvey v. Alvarado, et al.* (Case No. 3:13-CV-0775-N) and *Janvey v. Comeaux* (Case No. 3:13-CV-4700-N); and (e) the approximately $27.4 million in enjoined funds discussed elsewhere in this Report.

[5] This figure comprises the following: (a) settlements with 162 investors/investor groups for $12,607,813.33; (b) $2,255,911.23 received from the political committee defendants; (c) a settlement with former employees Aitken and Thacker for $4.4 million (of which $30,000 remains to be funded by Thacker); (d) a settlement with Walton Houston Galleria Office, L.P. for $385,000; (e) a settlement with Buhler and DePierro for $29,290 relating to a Stanford interest in GoAntiques; (f) $506,420.35 collected from an account with Charles Schwab; (g) a settlement with former employee Luke Patterson for $15,000; (h) a settlement with former employee Matthew Drews for $251,720.17; (i) a settlement with Courtney Blackman for $45,000; and (j) $286,889.33 in other litigation recoveries.

Receiver ultimately is able to collect from defendants is uncertain and may be less than the amounts claimed. The Receiver will continue to work towards appropriate and reasonable settlements, where possible, in order to maximize the net recovery to the Receivership Estate. A detailed report regarding the status of the Receiver's many litigation claims is found in the Fifth Joint Report of the Receiver, the Examiner and the OSIC Concerning Pending Litigation (for the Period Ending June 30, 2013) [*see* Doc. 1890].

*Return of Political Contributions:* The Receiver has identified approximately $1.9 million in political contributions made by Allen Stanford and related entities. The Receiver has requested the return of these contributions from over 90 politicians, political action committees, and congressional committees. Through December 31, 2013, $1,770,380 has been returned (including the principal amount of the contributions that were part of the over $2.2 million received from the political committee defendants discussed above).

*Coins and Bullion Inventory:* The Receiver has utilized coins in SCB's inventory, when appropriate, to settle claims by SCB claimants. The remaining SCB coin inventory is valued at approximately $100,000.00.

*International Assets:* Receivership entities and individuals held more than $300 million in cash, investments, and other assets in foreign accounts as of the date the Receivership began, including assets held in accounts in Canada, the United Kingdom, and Switzerland. The Receiver cannot ascertain the exact current value of all of these assets, most of which are subject to forfeiture proceedings, because most of those funds are not currently subject to the Receiver's control or direct monitoring. The Receiver has entered into an agreement with the U.S. Department of Justice and the Antiguan Joint Liquidators to work towards the release and distribution of the international assets for the benefit of Stanford investors. The completion of

the agreement with DOJ and the Joint Liquidators is only the first step to actually obtaining custody of the international assets for distribution.

In the past year, the Receiver has worked to successfully obtain court approval in Canada for the release of approximately $18 million in Stanford assets in Canada that have been the subject of criminal forfeiture proceedings. The Receiver expects to finally obtain custody of these funds in February 2014 for distribution to investors during 2014. The Receiver expects that additional Canadian funds subject to criminal forfeiture proceedings may become available for distribution in the future. The date and timing of such release of funds remains to be determined. The Receiver is currently working to obtain an additional Canadian court approval to distribute an additional $5 million in Stanford assets held in Canada. If the Receiver obtains that approval on a timely basis, the Receiver anticipates distributing these additional funds also in 2014.

The Receiver is also working closely with the DOJ, the Joint Liquidators, and Swiss criminal and civil authorities to obtain release of Stanford assets in Switzerland. The Receiver estimates that there are approximately $208 million in Stanford assets in Switzerland. The Receiver is working for the release of those assets through multiple channels, including criminal forfeiture and Swiss insolvency proceedings. Because of the complexity and difficulty involved in the Swiss proceedings, the Receiver does not yet know when the assets in Switzerland will be released for distribution. However, the Receiver is working to ensure that the release of Stanford funds held in Switzerland occurs as expeditiously as possible. To that end, the Receiver's representatives recently traveled to Switzerland to meet with representatives of the Swiss Federal Prosecutor, Swiss Financial Market Supervisory Authority, the Joint Liquidators' Swiss civil and criminal representatives, SGS Liquidators, and US DOJ, with the

goal of coordinating the overlapping civil and criminal proceedings related to the Stanford Swiss assets. Assuming all $208 million in Swiss Stanford assets are released for distribution, the Receiver anticipates that he will be responsible for distributing approximately $143 million of the Swiss Stanford assets.

Pursuant to the Receiver's agreement with the DOJ and the Joint Liquidators, the Joint Liquidators are responsible for collecting and distributing the Stanford assets held in the United Kingdom. The Receiver is working in consultation with the Department of Justice and the Joint Liquidators to ensure that the Joint Liquidators are able to move as quickly as possible to distribute the available Stanford assets in the United Kingdom.

*Other Inflows & Assets:* The Receivership has collected approximately $71.8 million through the liquidation of other investment accounts held on behalf of Stanford, including approximately $5.0 million previously held as restricted with respect to Stanford Trust Company; $47.8 million through the liquidation of Stanford accounts at Pershing and of various investment funds held on Stanford's behalf; $13.3 million through the recovery of additional cash balances; and $5.7 million received via other inflows, including, but not limited to, rental and interest income, cash flows from other liquidated bank accounts, and restricted funds and interest thereon. The Receiver estimates that he may recover up to $500,000 in additional assets held in U.S. banks and brokerages.

## II. CASH OUTFLOWS

From February 17, 2009 through December 31, 2013, the total amount of Receivership cash outflows — comprising professional fees and expenses of $72.5 million, other types of expenses of $54.7 million, and distributions of $24.5 million — was approximately $151.7 million.

*Expenses Other than Professional Fees:* The total amount of all payments made by the Receiver for expenses other than professional fees was approximately $54.7 million. This figure comprises the following approximate amounts: $27.2 million in personnel expenses and other employee expenses; $3.8 million in insurance expenses; $3.5 million in taxes; $1.7 million in general and administrative expenses; $2.6 million in telecommunications expenses; $5.5 million in occupancy expenses; $2.5 million in settled claims; and $7.9 million in other expenses. As previously explained in the 4th Interim Report [*see* Doc. 1630 at 5-7], monthly and annual expenses have decreased dramatically as the Receivership has progressed.

*Professional Fees and Expenses:*[6] As of December 31, 2013, the professional fees and expenses paid to the Receiver and his professionals total approximately $69.6 million. The largest single portion of this amount was paid in the first year of the Receivership ($30.9 million from the first quarter of 2009 through the first quarter of 2010).

As directed by the Court, the Receivership Estate has paid the Examiner's expenses and legal fees totaling approximately $2.2 million through December 31, 2013. Consistent with the fee agreement approved by the Court, the Receivership Estate has paid a total of approximately $700,000 in attorneys' fees, expert fees, and expenses incurred by the Official Stanford Investors Committee (the "OSIC") through December 31, 2013.

*Distributions:* The Court has approved $55 million for distribution to investor CD claimants pursuant to the Receiver's Interim Plan. [*See* Doc. 1877.] The Receiver has thus far filed seven Schedules of Payments to be Made Pursuant to the Interim Plan, and the total amount distributed pursuant to those Schedules is approximately $24.5 million. The Receiver anticipates filing an eighth Schedule within the next two weeks, with an amount to be distributed

---

[6] Details regarding all professional fees and expenses, as well as amounts currently held back, are contained in the several fee applications submitted to and approved by this Court.

of approximately $5 million. Additional schedules of payments will be submitted by the Receiver on a rolling basis.

Dated: January 15, 2014                                   Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: /s/ *Kevin M. Sadler*
   Kevin M. Sadler
   Texas Bar No. 17512450
   kevin.sadler@bakerbotts.com
   Scott D. Powers
   Texas Bar No. 24027746
   scott.powers@bakerbotts.com
   David T. Arlington
   Texas Bar No. 00790238
   david.arlington@bakerbotts.com
   1500 San Jacinto Center
   98 San Jacinto Blvd.
   Austin, Texas 78701-4039
   (512) 322-2500
   (512) 322-2501 (Facsimile)

   Timothy S. Durst
   Texas Bar No. 00786924
   tim.durst@bakerbotts.com
   2001 Ross Avenue
   Dallas, Texas 75201
   (214) 953-6500
   (214) 953-6503 (Facsimile)

   **ATTORNEYS FOR RECEIVER
   RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On January 15, 2014, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served the Court-appointed Examiner, all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

/s/ *Kevin M. Sadler*
Kevin M. Sadler