**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § | |
| Defendants. | § § § | |

**RECEIVER'S MOTION FOR APPROVAL OF
SECOND INTERIM DISTRIBUTION PLAN**

The instant motion seeks approval of the Receiver's second interim distribution plan (the "2nd Interim Plan"), through which the Receiver seeks to distribute $17,813,514.68 in Receivership Estate assets recently repatriated to the United States from Canada (the "2nd Interim Amount"). The 2nd Interim Plan proposes a distribution of the 2nd Interim Amount to Investor CD Claimants[1] in substantially the same form and via the same method as the Court previously authorized through the 1st Interim Plan. [*Compare* Doc. 1877 (Order setting forth and approving the "1st Interim Plan").]

### ARGUMENT & AUTHORITIES

**I.    The Court has already preauthorized distribution of the 2nd Interim Amount to "Creditor-victims."**

On March 12, 2013, the Receiver filed a joint motion seeking approval of a settlement agreement and protocol by and among the Receiver, the Antiguan Joint Liquidators, the SEC, the Department of Justice, the Examiner, and the Official Stanford Investors Committee

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the same definitions as those set forth in the 1st Interim Plan. [*See* Doc. 1877.]

(the "Settlement") regarding the disposition of Estate assets.  [*See* Docs. 1792, 1793.]  Following

full briefing and a public hearing, the Court approved the Settlement.  [*See* Doc. 1801 (Order

setting briefing schedule and hearing); Doc. 1844 (Order approving the Settlement).]  The Order

approving the Settlement explicitly stated that "[t]he parties to the Settlement Agreement and

Cross-Border Protocol are hereby authorized to perform in accordance with their rights and

obligations as outlined in the Settlement Agreement and Cross-Border Protocol."  [*See* Doc.

1844 at 1-2.]

Among other matters, the Settlement addressed approximately $23.5 million held

by Stanford International Bank, Ltd. ("SIB") at the Toronto-Dominion Bank in Toronto (the

"Canada Assets"), as well as other Estate assets in foreign jurisdictions (collectively with the

Canada Assets, the "Covered Assets").  [*See* Doc. 1792 at 12-15, ¶¶ CC, JJ, OO.]  Under the

terms of the Settlement, all of the Canada Assets were allocated to the Receiver.  [*See id.* at 29,

§ 8.1(a).]  The Court-approved Settlement further stated in relevant part:

> All of the Covered Assets that are allocated to . . . the Receiver . . .
> will be distributed to Creditor-victims and only to
> Creditor-victims.   Distributions to Creditor-victims from the
> Covered Assets will be made on a pro rata basis . . . .   Any other
> claimants who are entitled to payment from . . . the Receiver . . .
> will be paid from funds other than the Covered Assets or the funds
> realized therefrom.   The JLs and the Receiver agree that to be
> entitled to a payment, a claimant must demonstrate a net pecuniary
> loss of a specific amount resulting directly from one or more
> deposits made by the Creditor-victim.   A recognized loss is
> determined by the value of funds deposited by a Creditor-victim
> less any refunds, dividends, earnings, or similar returns.   A
> recognized loss does not include collateral expenses incurred by
> the Creditor-victim, including, but not limited to, investigative
> costs, lost wages, and attorney fees.  A claimant is to be deemed
> ineligible to participate in the distribution if . . . the Receiver [is] in
> possession of evidence that the claimant was a knowing
> contributor to, participant in, or beneficiary of, any of the fraud
> schemes committed by Stanford and/or any of his co-conspirators
> or collaborators.

[*See id.* at 31-32, § 8.4.]

The Settlement defines "Creditor-victims" as "claimants seeking reimbursement for losses associated with their deposits with SIB."  [*See id.* at 5, ¶ C.]  In this regard, and pursuant to the express language of the Settlement quoted above, the terms "Creditor-victims" and "Investor CD Claimants" are equivalent and interchangeable.  As a result, this Court has already authorized distribution of the Canada Assets constituting the 2nd Interim Amount on a pro rata basis to eligible investor victims of the Stanford fraud — and to no other claimants — based upon net loss.[2]

## II.    The Court should reaffirm its prior Order and approve the distribution of the 2nd Interim Amount to Investor CD Claimants.

The Receiver obtained the $17,813,514.68 in Canada Assets from the U.S. Department of Justice on March 6, 2014 — approximately one year after the Court preauthorized the distribution of those funds.  Given the Court-approved Settlement's clear terms, it is the Receiver's belief that no further Order of the Court is necessary in order to proceed with distribution of the Canada Assets to Investor CD Claimants.  However, out of an abundance of caution and in the interest of full transparency, the Receiver hereby seeks the Court's specific approval to proceed with the pro rata distribution of those funds through the 2nd Interim Plan.[3]

Moreover, for the reasons more fully set forth in the Receiver's motion to approve the 1st Interim Plan and his reply in support thereof [*see* Docs. 1766, 1777], distribution of the

---

[2]     The 2nd Interim Plan would provide funds only to Investor CD Claimants.  The extent of any distributions to other claimants will be determined in connection with future distribution plans, taking into account the result of the Receiver's asset recovery efforts and the final reconciliation of those creditors' claims.  Adequate funds will remain on-hand to make distributions to claimants other than Investor CD Claimants at a future date, if that ever becomes necessary or appropriate.  [*See* Docs. 1955, 1956 (7th Interim Report as of Dec. 31, 2013, evidencing $86.2 million in unrestricted cash on hand **prior to receipt of the approximately $18 million in Canada Assets** subject to the instant Plan).]  In other words, the 2nd Interim Plan does not foreclose the possibility that claimants other than Investor CD Claimants will participate in future distributions.  Rather, a decision regarding the extent to which such claimants should be compensated will be reserved for a later date.

[3]     As was the case with the 1st Interim Plan, Investor CD Claimant groups who fail to return certification forms to the Receivership would not receive payments under the 2nd Interim Plan.

2nd Interim Amount to the Investor CD Claimants is appropriate and equitable.  Federal district courts have broad discretion in fashioning relief in equity receiverships.[4]  Pursuant to these broad powers, courts may authorize any distribution of receivership assets that is "fair and reasonable."[5]  So long as a court divides the assets "in a logical way," the court's distribution will not be disturbed on appeal.[6]  Appellate review of distribution orders is "narrow," as appellate courts must not "chain the hands of the court in Equity" nor "rob the lower court of the discretion essential to its function."[7]  District courts frequently order interim or preliminary distributions.[8]  And in equity receiverships, federal courts overwhelmingly order pro rata distribution: "Courts have favored *pro rata* distribution of assets where . . . the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders," and pro rata distribution is "especially appropriate for fraud victims of a 'Ponzi scheme.'"[9]  Such cases "'call strongly for the principle that equality is equity.'"[10]  Courts routinely order that a pro rata distribution be based on the claimants' net losses.[11]  Furthermore, the 1st Interim Plan expressly states that "[a]ny future distributions to

---

[4]  *See SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 91 (2d Cir. 2002); *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 328 (5th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992); *SEC v. Hardy*, 803 F.2d 1034, 1037-39 (9th Cir. 1986).

[5]  *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991); *SEC v. Byers*, 637 F. Supp. 2d 166, 174 (S.D.N.Y. 2009) (quoting *Wang*, 944 F.2d at 81).

[6]  *United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996).

[7]  *Forex*, 242 F.3d at 331 (quotation omitted); *Durham*, 86 F.3d at 73.

[8]  *See, e.g.*, *Credit Bancorp*, 290 F.3d at 85; *SEC v. Black*, 163 F.3d 188, 193 (3d Cir. 1998); *CFTC v. PrivateFX Global One*, 778 F. Supp. 2d 775, 778 (S.D. Tex. 2011); *SEC v. AmeriFirst*, No. 3:08-CV-1188-D, 2008 WL 919546, at *6 (N.D. Tex. Mar. 13, 2008); *CFTC v. Eustace*, No. 05-2973, 2008 WL 471574, at *7 (E.D. Pa. Feb. 19, 2008).

[9]  *See Credit Bancorp*, 290 F.3d at 87-89; *see also Wealth Mgmt.*, 628 F.3d at 333; *SEC v. Infinity Grp. Co.*, 226 F. App'x 217, 218 (3d Cir. 2007); *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 737, 746-47 (9th Cir. 2005); *Forex*, 242 F.3d at 331-32; *Elliott*, 953 F.2d at 1570; *Byers*, 637 F. Supp. 2d at 176.

[10]  *Byers*, 637 F. Supp. 2d at 176 (quoting *Cunningham v. Brown*, 265 U.S. 1, 13 (1924), the original "Ponzi" scheme case).

Investor CD Claimants shall likewise be pro rata based on Investor CD Claimants' Allowed Claim Amounts." [*See* Doc. 1877 at 6, ¶ B(1).]

The Investor CD Claimants were the primary source of both the funds that fueled the Stanford Ponzi scheme and that comprise the Canada Assets. They are also the primary victims of the Stanford fraud by both value and number of claims. [*See* Doc. 1994 at 8 (Receiver's quarterly report setting forth the number of CD claims versus non-CD claims).] Further, preference for fraud victims like the Investor CD Claimants over other creditors is reflected in the remission regulations of the U.S. Department of Justice — itself the entity who transferred the 2nd Interim Amount to the Receiver for distribution — which distributes the proceeds of criminal forfeiture to victims whose losses were "directly caused by the criminal offense." *See* 28 C.F.R. § 9.8(b)(1). As a result, granting the 2nd Interim Plan is well within the broad equity powers of the Court.

### III.   The Receiver will publish payment schedules on a rolling basis.

Once the 2nd Interim Plan is approved, the Receiver expects to begin making payments to eligible Investor CD Claimants on a rolling basis and proposes to file, also on a rolling basis, schedules of payments to be made under the 2nd Interim Plan.[12] Such schedules will be filed at least ten (10) days prior to the subject payments being made.

As originally addressed in the 1st Interim Plan, the Receiver is aware that confidentiality concerns exist concerning the identity of those who will receive payments under

---

[11]     *See, e.g., Capital Consultants, LLC*, 397 F.3d at 737; *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115-16 (9th Cir. 2000); *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1541 (11th Cir. 1987); *PrivateFX*, 778 F. Supp. 2d at 778; *Gordon v. Dadante*, No. 1:05-CV-2726, 2010 WL 4137289, at *1 (N.D. Ohio Oct. 14, 2010); *CFTC v. Capitalstreet Fin., LLC*, No. 3:09-CV-387-RJC-DCK, 2010 WL 2572349, at *1 (W.D.N.C. June 18, 2010); *Byers*, 637 F. Supp. 2d at 171-72; *CFTC v. Barki, LLC*, No. 3:09-CV-106-MU, 2009 WL 3839389, at *1-2 (W.D.N.C. Nov. 12, 2009); *AmeriFirst*, 2008 WL 919546, at *6; *SEC v. Prater*, No. 3:03-CV-01524, 2005 WL 2585269, at *1-2 (D. Conn. Aug. 24, 2005).

[12]     The necessity of rolling distribution payments and schedules of such payments has already been addressed and approved by the 1st Interim Plan.

the 2nd Interim Plan.  The Receiver does not propose to include in any public filing the names or other information that will individually identify those who receive payments.  Instead, the schedules will include claim ID numbers and the amount of the associated payments but will not contain information from which any individual claimant can be identified.

### CONCLUSION & PRAYER

The Receiver proposes to make an interim distribution of $17,813,514.68 in Canada Assets to Investor CD Claimants.  As a result, and for the reasons explained in this motion, the Receiver respectfully requests that the Court enter the concurrently filed proposed Order approving the 2nd Interim Plan.  The Receiver also requests that the Court grant him such other and further relief to which he may be justly entitled.

Dated:  June 4, 2014                    Respectfully submitted,

                                        **BAKER BOTTS L.L.P.**

                                        By: */s/ Kevin M. Sadler*
                                              Kevin M. Sadler
                                              Texas Bar No. 17512450
                                              kevin.sadler@bakerbotts.com
                                              Scott D. Powers
                                              Texas Bar No. 24027746
                                              scott.powers@bakerbotts.com
                                              David T. Arlington
                                              Texas Bar No. 00790238
                                              david.arlington@bakerbotts.com
                                              98 San Jacinto Blvd., Suite 1500
                                              Austin, TX  78701-4078
                                              Tel: 512.322.2500
                                              Fax: 512.322.2501

                                        **ATTORNEYS FOR RECEIVER RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On June 4, 2014, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I will serve all counsel of record electronically or by other means authorized by the Court or the Federal Rules of Civil Procedure.

/s/ Kevin M. Sadler
Kevin M. Sadler

### CERTIFICATE OF CONFERENCE

Counsel for the Receiver conferred with the parties to this case.

Counsel for the Receiver conferred with David Reece, counsel for the SEC, who stated that the SEC is unopposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with John Little, the Court-appointed Examiner, who stated that he is unopposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with Stephen Cochell, counsel for R. Allen Stanford, who did not provide a response concerning Mr. Stanford's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Jeff Tillotson, counsel for Laura Pendergest-Holt, who did not provide a response concerning Ms. Pendergest-Holt's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Kenneth Johnston, counsel for Trustmark National Bank, who stated that Trustmark is opposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with Manuel P. Lena, Jr., counsel for the DOJ (Tax Division), who stated that the DOJ (Tax Division) is unopposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with David Finn, who is listed on the docket sheet as attorney to be noticed for James Davis, who did not provide a response concerning Mr. Davis's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Andrew Warren, counsel for the DOJ (Fraud Division), who stated that the DOJ (Fraud Division) takes no position on this motion or the relief requested herein.

Counsel for the Receiver conferred with John Helms, Jr., counsel for Mark Kuhrt, who did not provide a response concerning Mr. Kuhrt's position on this motion or the relief requested herein.

The motion, therefore, is opposed.

*/s/ Kevin M. Sadler*
Kevin M. Sadler