

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, R. ALLEN STANFORD, JAMES M. DAVIS, and LAURA PENDERGEST-HOLT, | § § § § § § § | CASE NO. 3:09-CV-0298-N |
| Defendants. | § § | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER FOLLOWING IN CAMERA REVIEW

Before the court is a Motion for In Camera Inspection, filed by Receiver Ralph S. Janvey[1] and the Official Stanford Investors Committee[2] (collectively, the Movants), requesting that the court determine which of the documents produced, *in camera* by Whitney Bank, are prohibited from disclosure, under the Bank Secrecy Act (BSA), because they would reveal the existence of a Suspicious Activity Report (SAR).[3] (*See* Doc. 1701.)

### I.    Relevant Background

In 2004, after serving as the primary bank for Stanford Trust Company in Louisiana (STC), Whitney National Bank (WNB) ended its relationship with STC because WNB "did not

---

[1]    The court appointed Janvey as Receiver of the Receivership Estate. *See* Second Am. Order Appointing Receiver, July 19, 2010, (Doc. 1130). Janvey was vested with the authority "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 3-4.

[2]    The Official Stanford Investors Committee is composed of Stanford investors or attorneys representing Stanford investors. *See* the Court's Order of Aug. 10, 2010, (Doc. 1149).

[3]    Neither Whitney Bank nor the Movants are parties in the instant lawsuit.

believe [it] had the resources or expertise to conduct the type of due diligence review required"
under the USA PATRIOT Act, given the "size . . . and complexity" of the network comprising
Stanford Financial Group (SFG) and its affiliates, including STC. (*See* Doc. 1701-1, ¶ 1.)

While serving as STC's primary bank, WNB "received STC's clients' funds in an STC
'fiduciary' account . . . for further transfer to and investment in" Stanford International Bank,
LTD., (SIBL) CDs. *Id.* After WNB terminated its relationship with STC, Hancock Bank of
Louisiana replaced WNB as STC's primary bank, acting in the same capacity as had WNB. *Id.*
In February 2009, when SFG and its affiliates collapsed, STC had approximately $400 million in
SIBL CDs, which were held in clients' IRAs. (Doc. 1701-2, ¶ 7.)

On February 25, 2011, Janvey issued a subpoena to WNB for production of various
documents concerning communications and activities of Defendants. (*See* Doc. 1701-3.) At the
time of this initial subpoena, Whitney Holding Company owned WNB. (Doc. 1760 at 1.)

On June 4, 2011, Hancock Holding Company, which owned Hancock Bank of Louisiana
and Whitney Bank in Louisiana, acquired Whitney Holding Company. *Id.* at 2.  With this
acquisition, Whitney Bank in Louisiana merged with WNB, resulting in Whitney Bank
(Whitney), owned by Hancock Holding Company. *Id.* at 2.

On July 11, 2011, following the merger, Janvey issued a second subpoena to WNB,
which requested production of documents specifically related to its record-keeping obligations
under the BSA:[4]

> 12. Produce all documentation referencing internal BSA policies, procedures,
> handbooks and manuals used when dealing with high risk accounts.
>  . . . .

---

[4]     Simultaneously, Janvey also issued a subpoena to Hancock Bank of Louisiana,
(Doc. 1701-7), which is practically identical to the subpoena issued to WNB. Whitney objected
to the subpoena issued to Hancock Bank of Louisiana, (Doc. 1701-8), just as they objected to the
subpoena issued to WNB.

14. Produce all Third Party BSA audits conducted since January 1, 2003, as well as any and all internal audit schedules, the frequency of same, and findings and all management responses.

15. Produce all Minutes of the Board of Directors reflecting or discussing the Annual BSA Risk Assessment and BSA Annual Report.

(Doc. 1701-5 at 5.)

WNB, and its successor by merger, Whitney, objected to both subpoenas, (*see* Docs. 1701-4, -6), on grounds that information contained in the requested documents is protected from discovery under doctrines of privilege or immunity, including, as authorized under 31 U.S.C. 5318(g)(2), the prohibition against disclosure of any "information that would reveal the existence of a SAR." *See* 12 C.F.R. § 21.11(k) (2011).

On September 13, 2012, the Movants filed a motion for *in camera* review to determine which (of the several thousand) subpoenaed documents are privileged under the BSA. The Movants concede that the SARs themselves are privileged but assert that this privilege does not apply to documentation supporting SARs. (*See* Doc. 1701, ¶ 11.)

On December 31, 2012, Whitney provided the court with documents responsive to Janvey's subpoenas, for *in camera* review.[5] (*See* Doc. 1760.)

## II.    Discussion

### A.    The Bank Secrecy Act and SAR Privilege

The BSA, enacted by Congress in 1970, requires national banks to assist the federal government in detecting and preventing financial crimes. Amended in 1992 by the Annunzio-Wylie Anti-Money Laundering Act, the BSA requires financial institutions "to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C.

---

[5]    At the court's request, on February 24, 2014, Whitney provided, also *in camera*, a descriptive index of the provided documents, to assist the court in its evaluation.

§ 5318(g)(1) (2006). Authorized through the Department of the Treasury, the Office of the Comptroller of the Currency (OCC) issues rules and regulations to meet the mandate of the BSA. *See id.*; 12 U.S.C. §§ 1, 93a.

Federal regulations, promulgated by the OCC, require that national banks file a SAR "when they detect a known or suspected violation of Federal Law or a suspicious transaction related to a money laundering activity or a violation of the [BSA]." 12 C.F.R. § 21.11(a). A SAR filing is required for any potential crimes: (1) involving insider abuse, regardless of the dollar amount; (2) where there is an identifiable suspect and the transactions involve $5,000 or more; (3) where there are no identifiable suspects and the transactions involve $25,000 or more; or (4) where there is any suspicious activity that indicates potential money laundering or BSA violations, and the transactions involve $5,000 or more. 12 C.F.R. § 21.11(c). National banks are also required to maintain procedures, in accordance with a written, board-approved program, that are reasonably designed to assure and monitor compliance with the BSA. 12 C.F.R. § 21.21.

Importantly, SARs must remain confidential: "A SAR, and *any information that would reveal the existence of a SAR*, are confidential, and shall not be disclosed except as authorized in this paragraph (k)." 12 C.F.R. § 21.11(k) (effective January 3, 2011) (italics added). Under the general rule of § 21.11(k), any "national bank, and any director, officer, employee, or agent of any national bank that is subpoenaed or otherwise requested to disclose a SAR, or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information . . . ." 12 C.F.R. § 21.11(k)(1)(i). The exception authorizing disclosure of information is narrowly tailored so that banks may comply with the purpose of the BSA—thus, banks are not prohibited, for example, from sharing information with the OCC, law enforcement

agencies, or other financial institutions in preparation of a joint SAR. *See* 12 C.F.R. § 21.11(k)(1)(ii).

At issue here is the meaning of "any information that would reveal the existence of a SAR." This language differed in the version of § 21.11(k) effective prior to January 3, 2011:

> (k) Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide *any information that would disclose that a SAR has been prepared or filed*, citing this section, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and shall notify the OCC.

12 C.F.R. § 21.11(k) (effective until January 3, 2011) (italics added).

The OCC explained the purpose of changing the language of § 21.11(k), when it issued its final rule: "The OCC is issuing this final rule to amend its regulations implementing the [BSA] governing the confidentiality of a [SAR] to: clarify the scope of the statutory prohibition on the disclosure by a financial institution of a SAR, as it applies to national banks . . . ." Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75576-01, 75576 (Dec. 3, 2010). The OCC also explained the underlying rationale of the confidentiality requirement:

> The confidentiality of SARs must be maintained for a number of compelling reasons. For example, the disclosure of a SAR could result in notification to persons involved in the transaction that is being reported and compromise any investigations being conducted in connection with the SAR. In addition, the OCC believes that even the occasional disclosure of a SAR could chill the willingness of a national bank to file SARs and to provide the degree of detail and completeness in describing suspicious activity in SARs that will be of use to law enforcement. If banks believe that a SAR can be used for purposes unrelated to the law enforcement and regulatory purposes of the BSA, the disclosure of such information could adversely affect the timely, appropriate, and candid reporting of suspicious transactions. Banks also may be reluctant to report suspicious transactions, or may delay making such reports, for fear that the disclosure of a SAR will interfere with the bank's relationship with its customer. Further, a SAR may provide insight into how a bank uncovers potential criminal conduct that can be used by others to circumvent detection. The disclosure of a SAR also could compromise personally identifiable information or commercially sensitive information or damage the reputation of individuals or companies that may be

named. Finally, the disclosure of a SAR for uses unrelated to the law enforcement and regulatory purposes for which SARs are intended increases the risk that bank employees or others who are involved in the preparation or filing of a SAR could become targets for retaliation by persons whose criminal conduct has been reported.

These reasons for maintaining the confidentiality of SARs also apply to any information that would reveal the existence of a SAR.

. . . .

[T]he strong public policy that underlies the SAR system as a whole—namely, the creation of an environment that encourages a national bank to report suspicious activity without fear of reprisal—leans heavily in favor of applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not. This interpretation also reflects relevant case law.

*Id.* at 75578-79.

Additionally, the OCC explained that in civil lawsuits, banks cannot waive the confidentiality privilege applicable to SARs: "in the context of discovery in connection with civil lawsuits, financial institutions are prohibited from disclosing SAR information because section 5318(g) and its implementing regulations have created an unqualified discovery and evidentiary privilege for such information that cannot be waived by financial institutions." *Id.* at 75579-80 (citing *Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004); *Cotton v. Private Bank and Trust Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002)).

The OCC provided further guidance to delineate between non-privileged documents and those that would be privileged because they contain "information that would reveal the existence of a SAR":

Documents that may identify suspicious activity, but that do not reveal whether a SAR exists (e.g., a document memorializing a customer transaction such as an account statement indicating a cash deposit or a record of a funds transfer), should be considered as falling within the underlying facts, transactions, and documents upon which a SAR is based, and need not be afforded confidentiality.

Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. at 75579 & n.22 (citing *Whitney*

*Nat'l Bank*, 306 F. Supp. 2d at 682 (noting that courts have "allowed the production of supporting documentation that was generated or received in the ordinary course of the bank's business, on which the report of suspicious activity was based"); *Cotton*, 235 F. Supp. 2d at 815 (holding that the "factual documents which give rise to suspicious conduct . . . are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business")). Following the reasoning in *Whitney Nat'l Bank* and *Cotton*, the OCC also commented that "factual documents created in the ordinary course of business (for example, business records and account information, upon which a SAR is based) may be discoverable in civil litigation under the Federal Rules of Civil Procedure." Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. at 75580.

To distinguish documents that are privileged, the court in *Whitney Nat'l Bank* (whose reasoning the OCC largely adopted) held that any explanatory documents pertaining to a filed SAR, as well as evaluative or preparative documents anticipating a possible SAR—whether filed or not—are likely privileged:

> The Whitney Bank Parties are protected from the production of communications they made to governmental agencies or officials reporting possible or suspected violations of laws or regulations by the defendants, or pertaining to such reports. Such communications may consist of a SAR itself; communications pertaining to a SAR or its contents; communications preceding the filing of a SAR and preparatory or preliminary to it; communications that follow the filing of a SAR and are explanations or follow-up discussions; or oral communications or suspected or possible violations that did not culminate in the filing of a SAR. The Whitney Bank Parties must produce documents produced in the ordinary course of business pertaining to the defendants' banking activities, transactions, and accounts, but may not produce documents or information that *could* reveal whether a SAR or other report of suspected or possible violations has been prepared or filed or what it might contain, or the discussions leading up to or following the preparation or filing of a SAR or other form of report of suspected or possible violations.

306 F. Supp. 2d at 682-83 (italics added).

Based on relevant case law and policy concerns—and to comply with the purpose of the BSA—the OCC made clear in its revision of § 21.11(k) that the SAR privilege likely covers documents related to the preparation and filing of a SAR that are not "factual documents created in the ordinary course of business." *See* Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. at 75578-81.

## B.      *In Camera* Documents Provided by Whitney

Since the OCC has revised § 21.11(k), courts within the Fifth Circuit have not yet addressed when SAR-related documents contain "information that would reveal the existence of a SAR," and are therefore privileged under the BSA. To determine which of Whitney's subpoenaed documents are privileged, in accord with the OCC's guidance and the cases upon which the OCC relied, this court considered the following factors: (1) whether the document was created in the ordinary course of business; (2) whether the information or communication in the document was purely factual or was evaluative, speculative, or opinionated; (3) whether the language in the document referred to a specific customer or transaction or was general in nature; (4) whether the language in the document was indicative of suspicious or illegal activity or future risk of such activity; (5) the source or author of the document; and, if possible, (6) the reason the document was prepared or created.

This court considered any purely factual documents created in the ordinary course of business as presumptively outside the scope of the SAR privilege. *See also Lesti v. Wells Fargo Bank NA*, 2:11-cv-695-FTM-29, 2014 WL 1246494, at *2 (M.D. Fla. Mar. 26, 2014) (examining whether documents were factual and produced in the ordinary course of business). Moreover, factual documents that memorialize customer transactions carried out in the ordinary course of

business, such as account statements and records of deposits, withdrawals, or fund transfers are not privileged under the BSA.

As well, courts should carefully examine documents containing general SAR-related information—such as documents describing a bank's policies and procedures for preparing and filing SARs—on a case-by-case basis, to determine whether disclosure of such documents might reveal the existence of a SAR. For example, a bank's BSA handbook or manual, which details its procedures for reporting SARs, might reveal that a SAR existed or was under consideration, when used in conjunction with the bank's factual records—under this scenario, discovery of such a manual should be prohibited.

District courts in other circuits have reached divergent conclusions regarding whether general SAR-related documents are discoverable. In *Freedman & Gersten, LLP v. Bank of Am., N.A.*, a court in the District of New Jersey decided that the defendant bank need not produce its policies and procedures for filing a SAR because such production would allow the Plaintiff to infer whether a SAR was filed:

> [A]cknowledging the confidential nature of SARs and noting that if BOA produces its policies and procedures for filing a SAR, Plaintiff, or anyone else for that matter, can easily infer whether a SAR was filed, Defendants need not produce such policies and procedures. Indeed, knowledge of what BOA's policies are for SARs could implicate BOA and its right to keep its decision to file a SAR out of the public eye by exposing its decision-making process. *See* 31 U.S.C. 5311 (Declaration of Purpose of the Bank Secrecy Act/Anti–Money Laundering Act); [*Union Bank of Cal., N.A. v. Superior Court*, 130 Cal. App. 4th 378, 392, 29 Cal. Rptr. 3d 894, 903 (2005)]. This simply is not within the spirit of 31 U.S.C. 53[18](g) or 12 C.F.R. 21.11(k).

No. 2:09-cv-05351-SRC-MAS, 2010 WL 5139874, at *4 (D.N.J. Dec. 8, 2010).

But in *Wultz v. Bank of China Ltd.*, a court in the Southern District of New York concluded that "general information related to [the defendant bank's] SAR filing practices" was not covered by the SAR privilege. No. 1:11-cv-01266-SAS-GWG, 2013 WL 1453258, at *12

(S.D.N.Y. Apr. 9, 2013) *reconsideration denied*, 291 F.R.D. 42 (S.D.N.Y. 2013). The *Wultz* court noted, "The OCC emphasizes the importance of protecting the confidentiality of SARs and the act of filing a SAR, but does not address or take a position on whether producing the general information requested by plaintiffs would violate any law or privilege." *Id.*

Indeed, the OCC commented that general SAR-related information should be distinguished from "information that would reveal the existence of a SAR":

> With respect to "information that would reveal the existence of a SAR," therefore, institutions should distinguish between certain types of statistical or abstract information or general discussions of suspicious activity that may indicate that an institution has filed SARs, and information that would reveal the existence of a SAR in a manner that could enable the person involved in the transaction potentially to be notified, whether directly or indirectly.

Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. at 75579. In a footnote, the OCC further elaborated:

> One example of such [general SAR-related] information could include summary information commonly provided by banks in the "notification to the board" required by the various Federal bank regulatory agency SAR rules. National banks subject to the requirement are encouraged to be cautious in the production of relevant portions of board minutes or other records to avoid the risk of potentially exposing SAR information to the subject, either directly or indirectly, in the event such records are subpoenaed.

*Id.* at n.25

Many of the documents provided *in camera* by Whitney contain general SAR-related information that is not related to the preparation or filing of a specific SAR, such as BSA policies, filing procedures, or board meeting minutes. Consistent with the reasoning of both the New York and New Jersey district courts, as well as the OCC's comments to its revision of § 21.11(k), this court evaluated general SAR-related documents provided by Whitney on a case-

by-case basis to determine whether such documents are covered by the SAR privilege because they contain "information that would reveal the existence of a SAR."[6]

### III.   Conclusion

For the reasons set forth above, this court **ORDERS** that the documents specified as privileged under the BSA, in the Appendix to this order, are prohibited from discovery.

**SO ORDERED** this 25th day of July, 2014.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]   Notwithstanding any determination by this court of whether such documents are privileged under § 21.11(k), this opinion does not address whether such documents would be discoverable under Federal Rule of Civil Procedure 26(b). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Whitney has briefed the court only with respect to whether the *in camera* documents are privileged under the BSA, not whether any documents should be precluded from discovery under Rule 26.

## APPENDIX OF DOCUMENTS PRIVILEGED UNDER THE BSA

| BATES RANGE | PRIVILEGED UNDER BSA | |
|---|---|---|
| 000001-000003 | YES | |
| 000004-000006 | | NO |
| 000007-000224 | YES | |
| 000225-000233 | YES | |
| 000234-000236 | | NO |
| 000237-000260 | | NO |
| 000261-000284 | | NO |
| 000285-000378 | | NO |
| 000379-000475 | | NO |
| 000476-000477 | YES | |
| 000478- | | NO |
| 000479-000480 | | NO |
| 000481-000497 | | NO |
| 000498-000514 | | NO |
| 000515-000518 | | NO |
| 000519-000521 | | NO |
| 000522-000526 | | NO |
| 000527-000532 | | NO |
| 000533-000538 | | NO |
| 000539-000545 | | NO |
| 000546-000548 | | NO |
| 000549-000552 | | NO |
| 000553-000650 | | NO |
| 000651-000744 | | NO |
| 000745-000754 | | NO |
| 000755-000760 | | NO |
| 000761-000772 | | NO |
| 000773-000778 | | NO |
| 000779- | YES | |
| 000780-000808 | | NO |
| 000809-001832 | YES | |
| 001833-003187 | YES | |
| 003188-004612 | YES | |
| 004613-004615 | YES | |
| 004616-004624 | | NO |

| | | |
|---|---|---|
| 004627-004628 | YES | |
| 004629- | | NO |
| 004630-004633 | | NO |
| 004634- | | NO |
| 004635-004636 | | NO |
| 004637-004711 | | NO |
| 004712- | | NO |
| 004713-004715 | | NO |
| 004716-004732 | YES | |
| 004733- | | NO |
| 004734-004808 | | NO |
| 004809-004810 | YES | |
| 004811-004845 | | NO |
| 004846-004848 | YES | |
| 004849-004850 | YES | |
| 004851- | YES | |
| 004852- | YES | |
| 004853- | YES | |
| 004854-004855 | YES | |
| 004856- | YES | |
| 004857-004862 | | NO |
| 004863- | | NO |
| 004864-004867 | | NO |
| 004868-004877 | YES | |
| 004878-004912 | | NO |
| 004913-004914 | YES | |
| 004915- | | NO |
| 004916-004919 | | NO |
| 004920-004923 | | NO |
| 004924-004931 | | NO |
| 004932-004939 | | NO |
| 004940-004974 | | NO |
| 004975- | | NO |
| 004976-004987 | | NO |
| 004988-004989 | YES | |
| 004990-004997 | | NO |
| 004998- | | NO |
| 004999-005015 | | NO |
| 005016-005017 | | NO |
| 005018-005019 | | NO |

| | | |
|---|---|---|
| 005020-005042 | | NO |
| 005043-005058 | | NO |
| 005059-005065 | | NO |
| 005066-005086 | | NO |
| 005087-005088 | | NO |
| 005089-005090 | | NO |
| 005091-005113 | | NO |
| 005114-005129 | | NO |
| 005130-005136 | | NO |
| 005137-005157 | | NO |
| 005158- | | NO |
| 005159-005174 | | NO |
| 005175-005197 | | NO |
| 005198-005199 | YES | |
| 005200-005201 | | NO |
| 005202- | | NO |
| 005203- | | NO |
| 005204-005206 | | NO |
| 005207-005215 | YES | |
| 005216- | | NO |
| 005217-005218 | YES | |
| 005219- | | NO |
| 005220- | | NO |
| 005221-005225 | | NO |
| 005226-005233 | | NO |
| 005234- | | NO |
| 005235-005237 | | NO |
| 005238-005245 | YES | |
| 005246- | | NO |
| 005247- | | NO |
| 005248- | | NO |
| 005249-005253 | | NO |
| 005254-005261 | | NO |
| 005262- | | NO |
| 005263-005268 | | NO |
| 005269- | | NO |
| 005270- | | NO |
| 005271-005275 | | NO |
| 005276-005283 | | NO |
| 005284-005285 | | NO |

| | | |
|---|---|---|
| 005286-005295 | | NO |
| 005296-005298 | | NO |
| 005299-005308 | | NO |
| 005309- | | NO |
| 005310-005322 | | NO |
| 005323- | | NO |
| 005324-005326 | | NO |
| 005327- | | NO |
| 005328-005335 | | NO |
| 005336-005337 | | NO |
| 005338- | | NO |
| 005339-005341 | YES | |
| 005342-005344 | | NO |
| 005345-005347 | | NO |
| 005348-005356 | YES | |
| 005357- | | NO |
| 005358- | | NO |
| 005359-005373 | | NO |
| 005374-005390 | | NO |
| 005391- | | NO |
| 005392-005395 | | NO |
| 005396- | | NO |
| 005397-005400 | | NO |
| 005401- | | NO |
| 005042-005479 | | NO |
| 005480-005481 | | NO |
| 005482-005483 | | NO |
| 005484-005485 | | NO |
| 005486- | | NO |
| 005487-005648 | YES | |
| 005649-005742 | | NO |
| 005743-005836 | | NO |
| 005837-005911 | | NO |
| 005912-005914 | | NO |
| 005915-006012 | | NO |
| 006013-006015 | | NO |
| 006106- | | NO |
| 006017-006028 | | NO |
| 006029-006062 | YES | |
| 006063-006137 | | NO |

| | | |
|---|---|---|
| 006138- | | NO |
| 006139-006145 | | NO |
| 006146- | | NO |
| 006147-006185 | | NO |
| 006186- | | NO |
| 006187-006189 | YES | |
| 006190-006191 | YES | |
| 006192-006193 | YES | |
| 006194- | | NO |
| 006195- | | NO |
| 006196-006199 | | NO |
| 006200- | | NO |
| 006201-006294 | | NO |
| 006295-006297 | YES | |
| 006298- | | NO |
| 006299-006389 | | NO |
| 006390- | | NO |
| 006391-006395 | YES | |
| 006396-006412 | YES | |
| 006413- | YES | |
| 006414-006418 | YES | |
| 006419-006435 | YES | |
| 006436-006445 | YES | |
| 006446-006449 | YES | |
| 006450-006478 | | NO |