# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:09-CV-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |

---

## RECEIVER'S MOTION FOR APPROVAL OF THIRTY-SECOND INTERIM FEE APPLICATION AND BRIEF IN SUPPORT

---

THOMPSON & KNIGHT LLP
1722 Routh Street
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (Facsimile)

BAKER BOTTS L.L.P.
910 Louisiana
Houston, Texas  77002
(713) 229-1234
(713) 229-1522 (Facsimile)

## ATTORNEYS FOR RECEIVER
## RALPH S. JANVEY

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

I.   Fees and Expenses Incurred in Connection with General Estate Matters ......................... 3

    1.   Fees and Expenses of Professional Firms .................................................. 5

        a.   Krage & Janvey L.L.P. ................................................. 5

        b.   Baker Botts L.L.P. ....................................................... 6

        c.   Thompson & Knight LLP ............................................. 12

        d.   FTI Consulting, Inc. ..................................................... 13

        e.   Riveron Consulting ...................................................... 14

        f.   Ernst & Young LLP ...................................................... 15

        g.   Osler, Hoskin & Harcourt LLP .................................... 16

        h.   Altenburger .................................................................. 17

        i.   Dudley Topper .............................................................. 17

        j.   Neligan Foley ............................................................... 18

    2.   Expert Fees and Expenses ......................................................... 18

        a.   Professor James C. Spindler ........................................ 19

        b.   John A. Rodgers III ...................................................... 19

II.   Fees and Expenses Incurred in Connection with the Receivership's Claims Process and Interim Distribution Plan ................................................................... 20

    A.   Baker Botts L.L.P. ................................................................... 21

    B.   FTI Consulting, Inc. ................................................................ 22

    C.   Gilardi & Co LLC .................................................................. 23

III.   Fees and Expenses Incurred in Connection with the Official Stanford Investors' Committee ("OSIC") ......................................................................... 25

    A.   Neligan Foley LLP .................................................................. 26

    B.   FTI Consulting, Inc. ................................................................ 27

C.      Digital Discovery ............................................................................................. 26

D.      Castillo Snyder, P.C. ....................................................................................... 26

IV.    Conclusion ...................................................................................................................... 27

Certificate of Conference ....................................................................................................... 29

Certificate of Service .............................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtis v. Bill Hanna Ford, Inc.*,
    822 F.2d 549 (5th Cir. 1987) ...............................................................................1

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .............................................................................1, 2

*SEC v. Fifth Ave. Coach Lines, Inc.*,
    364 F. Supp. 1220 (S.D.N.Y. 1973)...................................................................2

*SEC v. Megafund Corp.*,
    No. 3:05-CV-1328-L, 2008 WL 2839998 (N.D. Tex. June 24, 2008) ..............................2

*SEC v. W.L. Moody & Co., Bankers (Unincorporated)*,
    374 F. Supp. 465, 480 (S.D. Tex. 1974) ..........................................................1

## RECEIVER'S MOTION FOR APPROVAL OF THIRTY-SECOND INTERIM FEE APPLICATION AND BRIEF IN SUPPORT

The Second Amended Order Appointing Receiver directs and authorizes Ralph S. Janvey, the Court-appointed Receiver in this action, to retain and compensate professionals in connection with the administration of the Receivership Estate:

> [T]he Receiver is specifically directed and authorized to perform the following acts and duties:
>
> . . . .
>
> Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as Receiver judges necessary to perform the duties set forth in this Order and to compensate them from the Receivership Assets.

(Doc. 1130 at ¶ 5(h).)

The Second Amended Order Appointing Receiver further directs the Receiver to "[f]ile with this Court requests for approval of reasonable fees to be paid to the Receiver and any person or any entity retained by him and interim and final accountings for any reasonable expenses incurred and paid."  (*Id.* ¶ 5(m).)

The Receiver has previously briefed the legal standards for evaluating the reasonableness and necessity of professional fees and expenses.[1]  This application and its

---

[1]      Courts examining a request for fees and expenses incurred by a receiver must determine whether the time spent, services performed, expenses incurred, and hourly rates charged are reasonable and necessary under the factors set forth by the Fifth Circuit.  *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).  These factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney was precluded from other employment by the acceptance of this case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or the circumstances imposed time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases.  *Id.* at 717–19. In applying these factors, "the district court must explain the findings and the reasons upon which the award is based.  However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.,* 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted).  *See also SEC v. W.L. Moody & Co., Bankers* (Unincorporated), 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd, SEC v. W.L. Moody & Co.,* 519 F.2d 1087 (5th Cir. 1975);

supporting evidence establish that the time spent, services performed, hourly rates charged, and expenses incurred were reasonable and necessary, and indeed essential, for the Receiver to perform his Court-ordered duties.  As set forth in detail in this application and in the Receiver's prior briefing on professional fees and expenses, each of these professional firms was selected because it possesses special expertise required to fulfill the Court's orders.  *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974).  The professional firms have instituted billing conventions that permit interested parties to calculate the amount of time the professionals devoted to particular issues.  These work records, along with the summaries contained in this application, are the best evidence available to aid the Court in evaluating the Receiver's work.

The fees and expenses covered by this application can be divided into three categories: (1) general Estate matters; (2) the Receivership's Court-approved claims process and interim distribution plan; and (3) matters handled by the Official Stanford Investors' Committee ("OSIC").  Part I of this application addresses the fees and expenses incurred by the Receiver and his professionals in connection with general Estate matters during the period from July 1, 2014 to August 31, 2014.  Part II of this application addresses the fees and expenses incurred by the Receiver's professionals in connection with the Receivership's claims process and interim distribution plan during the period from July 1, 2014 to August 31, 2014.  Part III of this application addresses the fees and expenses incurred by OSIC's professionals during the period from July 1, 2014 to August 31, 2014.

For the reasons set forth herein, the Court should approve payment of the reasonable and necessary professional fees and expenses described in this application.

---

*SEC v. Megafund Corp.,* No. 3:05-CV-1328-L, 2008 WL 2839998, at *2 (N.D. Tex. June 24, 2008); *SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

I.   **FEES AND EXPENSES INCURRED IN CONNECTION WITH GENERAL ESTATE MATTERS**

The Receiver seeks the Court's approval to pay invoices for interim fees and expenses of $1,537,421.18[2] to the professional firms and experts that rendered services in connection with general Estate matters during the period from July 1, 2014 to August 31, 2014. This amount is consistent with the average amount requested for general Estate fees and expenses through the first six months of 2014 (slightly over $1.5 million per two-month period), during which time the Court entered scheduling orders and trial dates in numerous cases. The Receiver expects that general Estate fees and expenses will remain relatively flat through the remainder of 2014, and that such fees and expenses may increase in 2015 as cases proceed to trial. Of course, intervening events, such as settlements with defendants or continuances of trial dates or scheduling orders, may alter the outlook.

Submitted herewith is a proposed order reflecting that, with respect to the fees and expenses incurred in connection with general Estate matters, the time spent, services performed,

---

[2]     With respect to the general Estate matters category, the professional firms' discounted fees for the period covered by this application total $1,400,177.14, the firms' expenses total $214,600.88, and unpaid expert fees and expenses covered by this application total $74,575.00. At the hearing on September 10, 2009, the Court approved the Receiver's first and second fee applications, subject to a 20% holdback. The Court advised the Receiver that it would impose this 20% holdback on future fee applications, and that, at a future date, when the results obtained for the Receivership Estate are more certain, the Receiver will be permitted to reapply for the amount held back. On April 4, 2012, the Court entered an order amending the fee structure and providing that "[b]eginning with fees incurred as of January 1, 2012, (1) the Receiver and his professionals shall bill their time at 2012 rates with a twenty percent (20%) discount, and (2) the Court will impose a ten percent (10%) holdback on all non-out-of-pocket expenses." (Doc. 1565.) As discussed further herein, the Receiver proposes that the holdback not be applied to the expert fees discussed in Part I of this application. Thus, the amount requested in this fee application in connection with general Estate matters—$1,537,421.18—includes the following components, and the total holdback related to these services is $151,931.84.

| Discounted Professional Fees | $1,400,177.14 | Less 10% Holdback = $1,260,159.43 |
| Out-of-Pocket Expenses (includes expert fees paid by professional firms) | $95,459.54 | No Holdback = $95,459.54 |
| Expenses for FTI's Data-Loading and Hosting Services | $119,141.34 | Less 10% Holdback = $107,227.21 |
| Expert Fees and Expenses (not including fees already paid by professional firms) | $74,575.00 | No Holdback = $74,575.00 |

hourly rates charged, and expenses incurred by the Receiver and his retained professionals during the period covered by this application were reasonable and necessary for the Receiver to perform his Court-ordered duties.

Pursuant to the Court's April 4, 2012 order (Doc. 1565), the professional firms providing services in connection with general Estate matters have each discounted their fees by 20% or more (representing an overall reduction of more than $341,479.00 for this period) for the benefit of the Stanford investors and other claimants, and have worked diligently to reduce Receivership expenses whenever possible. The work records submitted in support of this application enable the Court to evaluate the tasks performed, and those records are supplemented by the detailed descriptions contained in this application. This application and its supporting evidence demonstrate the necessity for the professionals' services and the reasonableness of their fees and expenses for a case of this complexity, novelty, and difficulty.

The Receivership received approximately $1,643,000 in cash inflows during this period, including approximately $908,000 from the sale of Receivership real estate assets; $660,000 in settlement payments; approximately $25,000 in fees related to notices of transfer; approximately $16,500 from investment liquidation; approximately $13,000 in commission payments related to pre-Receivership operations; and approximately $20,500 in reimbursements and tax refunds.

This application and its supporting evidence establish that the fees and expenses incurred in connection with general Estate matters are reasonable and necessary in light of the extraordinary complexity and difficulties of this case and in light of the substantial accomplishments of the Receiver. Accordingly, the Receiver requests that the Court approve the

fees and expenses incurred by the Receivership in connection with general Estate matters during the period from July 1, 2014 to August 31, 2014.

    1.    **FEES AND EXPENSES OF PROFESSIONAL FIRMS**

    a.    **Krage & Janvey L.L.P.**

During the period covered by this application, the Receiver and other professionals at Krage & Janvey oversaw the Receivership's litigation docket, attended to the day-to-day operational and administrative needs of the Receivership, and made strategic decisions to maximize assets and reduce claims against the Receivership. Krage & Janvey also worked closely with the Official Stanford Investors Committee. Krage & Janvey's services fall into the following categories (the percentages indicate the approximate proportion of total fees related to each category):

(1) Litigation Supervision (95%): Krage & Janvey supervises and oversees all aspects of the Receivership's litigation docket, and the Receiver reviews all major pleadings drafted on behalf of the Receivership and provides substantive input prior to their filing.

During this period, the Receiver reviewed various pleadings filed in this Court and the Fifth Circuit Court of Appeals, including pleadings filed in cases being handled by OSIC. The Receiver also reviewed various subpoenas related to Receivership cases and reviewed and signed off on letters to several banks requesting account information. In addition, the Receiver reviewed deposition transcripts in the *Rincon* matter and reviewed responses to discovery requests in several Receivership litigation matters. The Receiver also prepared for and gave his deposition in the *Conzelman* matter.

During the period covered by this fee application, the Receiver also attended two Investor Committee meetings, attended the Joint Status Conference, and addressed issues related

to mediation in the *Conzelman* matter.   The Receiver also participated in meetings and correspondence related to insurance coverage issues.

(2) Estate Administration (5%): Krage & Janvey continued to oversee the Receivership's day-to-day operations and continued to manage the Receiver's efforts to minimize Receivership expenses, including the professional fees and expenses incurred by the Receivership.   In addition, the Receiver addressed unclaimed property issues and issues relating to various forms requested by the SEC.

The fees charged by Krage & Janvey include the fees for Mr. Janvey's services as the Receiver, as well as the fees for the services of the firm's lawyers during this period. Krage & Janvey's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit A, App'x at 1-18.  The Receiver requests approval of payment to Krage & Janvey for $17,321.40 in fees and $94.35 in expenses.

### b.    Baker Botts L.L.P.

Baker Botts continued in its role as lead counsel to the Receiver.   During this period, Baker Botts' work primarily related to the Receiver's ongoing litigation matters.   Baker Botts also continued to address a variety of other complex legal issues facing the Receivership. Baker Botts' services fall into the following categories:

(1) Litigation - *Juan Alberto Rincon* (22%):  The Receiver filed suit against A.J. Rincon on July 13, 2011, seeking disgorgement of CD proceeds that Rincon received during his tenure as Executive Vice President and Chief Financial Officer for Stanford Group Company.  In July 2013, the Receiver amended his complaint to add claims against Rincon for breach of his fiduciary duties.  Trial in this matter is currently set for the week of January 19, 2015.  During the period covered by this fee application, Baker Botts drafted and served responses to Rincon's discovery requests; deposed several witnesses; prepared for mediation; worked with two expert

witnesses who ultimately produced reports in September; and performed significant factual and legal research in order to prepare the case for trial. In addition, Baker Botts drafted and filed a response to Rincon's motion to compel arbitration. The Court denied Rincon's motion to compel arbitration on August 29, 2014. Rincon filed his notice of appeal of that denial on September 10, 2014.

(2) Breach of Fiduciary Duty Matters (12%): In February 2013, the Receiver filed a complaint against certain Stanford directors and officers who breached the fiduciary duties they owed to the Stanford entities. Trial in this case is currently set for May 4, 2015. During the period covered by this application, Baker Botts drafted and filed a response to defendant Robert Winter's motion to dismiss; drafted and filed several motions to sever claims against groups of defendants into separate lawsuits; and drafted amended complaints against several defendant groups. The Court granted the Receiver's motion to sever the Receiver's claims against Patricia Maldonado on August 6, 2014, and Baker Botts attended a status and scheduling conference and filed a Rule 26(f) report in the severed action.

In addition, Baker Botts drafted a number of stipulations and agreements with opposing counsel; drafted and responded to discovery requests; and analyzed a number of strategic issues in connection with preparing the case for trial. During the period covered by this fee application, Baker Botts also undertook a number of other activities, including conducting significant legal and factual research, in connection with continuing to prepare the case for trial.

(3) Litigation (*SEC v. Stanford International Bank, Ltd.*) (12%): As the Receiver's lead counsel, Baker Botts represents the Receiver in litigation arising from the subject matter of the SEC civil action. Among other things, Baker Botts is primarily responsible for

developing and executing the Receiver's litigation strategy and supporting the Receiver's efforts to comply with the terms of the Court's Receivership Order.

Baker Botts is currently scheduled to represent the Receiver in numerous cases over the next eighteen months.   During the period covered by this application, Baker Botts coordinated staffing and activities for these upcoming trials and continued to review Receivership documents and records and to conduct legal research in connection with ongoing litigation.  Baker Botts also drafted and filed a response to several motions, including a motion to appoint a special prosecutor to investigate the Receiver, which was filed by R. Allen Stanford in *SEC v. Stanford International Bank Ltd.*, Civ. Action No. 3:09-cv-0298.  In addition, Baker Botts drafted and filed a joint motion with the Examiner and the SEC seeking relief from the obligation to respond to motions filed by Mr. Stanford.  The Court granted the joint motion on October 1, 2014.  During this period, Baker Botts also drafted and filed an advisory to the Court regarding pending motions, attended the Joint Status Conference regarding the Stanford multi-district litigation;  responded to requests for documents from various governmental entities;  and continued to support the Receiver's efforts to identify assets belonging to the Receivership Estate.

(4) Investor Litigation (11%):  Baker Botts is responsible for prosecuting the Receiver's claims against Stanford investors who received SIB CD proceeds in excess of their investment (the "Stanford Net Winners").   These investor-defendants received a total of approximately $1.1 billion in SIB CD proceeds—approximately $197 million of which constitutes amounts that they received in excess of their respective deposits.

Trials in the Westmoreland, Coxe, Indigo Trust, Barr, and Gilbe Corporation lawsuits are currently set for November 17, 2014, December 15, 2014, February 23, 2015,

August 3, 2015, and September 21, 2015, respectively.  During this period, Baker Botts drafted and responded to various discovery requests and undertook other significant trial preparation activities, including conducting factual and legal research.

Baker Botts also continued to work on settling the Receiver's claims against certain Stanford Net Winners and negotiated with opposing counsel with respect to such claims. To date, the Receiver has entered into settlements with 173 former investors/investor groups— for a total recovery of approximately $14.8 million.  Of this amount, approximately $315,000 remains to be paid to the Receiver in installments over time.

Finally, Baker Botts continued its work in connection with *Janvey v. Brown* (Case No. 13-10266) in the U.S. Court of Appeals for the Fifth Circuit, in which certain net winner appellants are challenging the District Court's judgment that they must return all payments they received from the Ponzi scheme in excess of their original investments.  After oral argument, some of these appellants filed a 28(j) letter of supplemental authority claiming that they were entitled to keep the excess payments under the D.C. Circuit's recent decision in *SEC v. SIPC*, Case No. 12-5286 (D.C. Cir. July 18, 2014).  During the period covered by this fee application, Baker Botts drafted and filed a response to the 28(j) letter with the Court.

(5) Broker Litigation (7%): The Receiver has filed claims against more than 300 former Stanford employees for an amount in excess of $250 million.  During the period covered by this fee application, the broker defendants persisted in their quest to subject the Receiver's claims against them to financial industry arbitration.  Baker Botts prepared and filed a supplemental brief requested by the District Court regarding the financial advisor defendants' motions to compel arbitration and prepared and filed a response to a financial advisor letter brief. On July 30, 2014, the Court denied the broker defendants' motions to compel arbitration.

In addition, during the period covered by this fee application, Baker Botts addressed issues related to bankruptcy filings by two broker defendants, including drafting and filing a motion to reopen bankruptcy proceedings involving one broker defendant and preparing for and conducting a 2004 examination of another broker defendant in connection with a bankruptcy proceeding in Georgia.

(6) Litigation- *Wealth Management Services*/David Nanes (7%):  The Receiver filed suit against Wealth Management Services Ltd. ("WMSL") on March 8, 2010, seeking disgorgement of CD proceeds paid to WMSL.  Trial in the WMSL matter was set for  the week of October 20, 2014.  However, WMSL remained in default of the court's order that it obtain replacement counsel and had remained unresponsive to Receivership counsel's efforts at contact. During the period covered by this fee application, Baker Botts drafted and filed a combined request for entry of default, motion for default judgment, and motion for sanctions; drafted and filed a reply in support of the default and sanctions motion; drafted an affidavit regarding attorney's fees in the WMSL matter; and drafted and filed a motion for relief from pretrial requirements.  The Court ultimately granted judgment in favor of the Receiver on October 2, 2014.   In addition, Baker Botts issued several subpoenas to third parties with potential information on the whereabouts of WMSL's sole shareholder, David Nanes, and prepared for and deposed a witness with information regarding Nanes's whereabouts.

(7) Litigation- *James Conzelman* (7%):  The Receiver filed a fraudulent transfer suit against James Conzelman and Lionel Johnson, former Senior Vice Presidents of Government Affairs at Stanford Financial Group Company, in October 2011.  The Court initially set this case for trial the week of September 29,  2014.  During the period covered by this fee application, Baker Botts defended the deposition of the Receiver in this matter, drafted additional

discovery requests to defendants; participated in mediation with the defendants; and began preparing pre-trial materials.  On September 3, 2014, the parties filed an agreed motion to continue the trial setting and amend the scheduling order in this case pending resolution of the Golf Channel appeal.  The Court granted this motion on September 4, 2014.

(8) Litigation - *The Golf Channel* (5%):  On November 5, 2013, the District Court granted Golf Channel's motion for summary judgment in *Janvey v. TGC, LLC,* finding that the Golf Channel provided reasonably equivalent value for the services it performed and therefore was entitled to retain $6 million in payments it received from the Stanford Ponzi scheme.  The Receiver appealed the District Court's judgment.  During this period, Baker Botts prepared for oral argument in the U.S. Court of Appeals for the Fifth Circuit, which took place on September 2, 2014.

(9) Investor Committee Matters (4%):  Baker Botts coordinated with counsel for the Investors Committee regarding a variety of litigation matters, including litigation strategy and discovery in cases being handled by the Investors Committee in coordination with the Receiver.  Baker Botts also prepared for and attended Investors Committee meetings in July and August.

(10) *Janvey v. University of Miami* (3%):   The Receiver filed a fraudulent transfer action against the University of Miami in October 2011.  Trial in this matter is currently set for the week of April 13, 2015.  During the period covered by this fee application, Baker Botts drafted and served discovery requests on the University of Miami and prepared responses to the University of Miami's discovery requests.  In addition, Baker Botts analyzed a number of strategic issues and performed significant factual and legal research to prepare the case for trial.

(11) Several other areas of the Receivership's operations are ongoing, but required less of Baker Botts' time and attention during this period: Litigation- *Peter Romero* (2%); Litigation - *Janvey v. Mauricio Alvarado* (2%); Private Equity Matters (2%); Cross-Border Receivership Matters (1%); Insurance Matters (1%); Litigation Administration (1%); Litigation- *Janvey v. Libyan Investment Authority* (1%).

Baker Botts' invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit B, App'x at 19-189. The Receiver requests approval of payment to Baker Botts for $1,103,255.19 in fees and $70,723.57 in expenses incurred in connection with general Estate matters during this period.[3]

c.      **Thompson & Knight LLP**

Thompson & Knight ("T&K") continued to work primarily on litigation, governmental and regulatory issues, and the sale of assets and winding up of Stanford activity in Latin America. T&K's services fall into the following categories:

(1) Other Stanford-Related Litigation (48%): T&K addressed a variety of issues concerning the Receiver's fraudulent transfer action against the Tiger Woods Foundation in connection with a charitable donation by Stanford to the Foundation, including preparing and filing a response to Defendants' Motion to Dismiss the Receiver's Second Amended Petition. T&K also prepared for a status conference in the Tiger Woods matter and reviewed and analyzed Defendants' reply in support of their motion to dismiss.

(2) Latin America: Venezuela (41%): T&K continued to address issues concerning the sale of property and movement of funds located in Venezuela, as well as issues related to employment litigation in Venezuela.

---

[3]        The fees and expenses incurred by Baker Botts in connection with the Receivership's claims process and interim distribution plan are discussed in Part III *infra*.

(3) Latin America: Mexico (8%):  T&K continued to address issues concerning the ongoing liquidation and winding up of the Receivership's operations in Mexico by the government-approved liquidator of assets in Mexico.  In addition, T&K consulted with Baker Botts in conjunction with the Receiver's breach of fiduciary duty claims against former directors and officers of Stanford's Latin American entities.   T&K also compiled information and provided information to the Investors Committee in connection with Investors Committee litigation.

(4) Latin America: Peru/Ecuador/Colombia (2%).  T&K continued to address issues concerning the liquidation of Receivership assets in Ecuador.

Thompson & Knight's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit C, App'x at 190-203.  The Receiver requests approval of payment to Thompson & Knight for $23,662.80 in fees and $1,740.62 in expenses.

### d.      FTI Consulting, Inc.

FTI continued to provide a variety of services to the Receivership, including forensic accounting and asset tracing; electronic evidence processing and review; complex data analysis; litigation support; interim management; and operational support.  FTI's services fall into the following categories:

(1) Employee Litigation (44%): FTI supported the Receiver's ongoing litigation efforts by analyzing Stanford records and providing the Receiver's lead counsel with information related to several employee defendants, as well as assisting the Receiver's lead counsel with factual investigation and preparing production in response to discovery requests from defense counsel in the *Conzelman*  and *Rincon* matters.

(2) Investor Litigation (31%):  FTI assisted the Receiver's counsel in collecting and analyzing information relevant to the Receiver's Net Winner lawsuit.

(3) Investor Committee (16%): FTI provided the Investors Committee with support regarding litigation matters being handled by the Investors Committee, including by assisting with factual investigation and working with counsel to define production specifications for documents responsive to defendants' production requests. FTI also facilitated the Investors Committee's factual research by preparing and loading documents into a searchable database.

(4) General Litigation (9%): FTI assisted the Receiver's counsel in connection with the Receiver's responses to discovery requests in the Receiver's asset recovery litigation. FTI also worked with counsel to define production specifications for documents responsive to the discovery requests in that litigation.

Invoices for FTI's activities related to general Estate matters during the period from July 1, 2014 to August 31, 2014 are attached as Exhibit D App'x at 204-230. The Receiver requests approval of payment to FTI for $58,350.24 in fees and $116,509.34 in expenses[4] incurred in connection with general Estate matters.

### e.     Riveron Consulting

Riveron processes all invoices submitted to the Receivership and tracks all money paid into and out of the Receivership Estate. The Receivership's finances must be handled in accordance with prudent and appropriate business accounting practices, which dictate that appropriate cash-management and record-keeping protocols be employed as long as the

---

[4]     FTI's total expenses for this period includes $119,141.34 incurred in connection with FTI's provision of data-loading and hosting services, and document review tools. These data-loading and hosting services are subject to a sales tax imposed by the State of Texas. The sales tax, which is included in the $119,141.34 referenced here, is calculated as an 8.25% tax on 80% of the total expense for FTI's data-loading and hosting services during a particular month. The request for payment reflects a 10% holdback as to that $119,141.34 in expenses, including the portion attributable to the sale tax discussed here, but no holdback for FTI's remaining expenses. FTI charges $80 per gigabyte for loading data into the review tool. This is a one-time charge incurred when the data is first loaded and includes indexing of the data to make it searchable. FTI charges $60 per gigabyte for hosting the data in the review tool. This is a monthly charge that covers data security and upkeep and maintenance of the review tool and database. The charges associated with loading and hosting data in the review tool since its inception have been reflected on FTI's invoices for the corresponding months.

Receivership is in existence.   Although the Receivership Estate's outgoing payments are generally made through one central account, the payments are allocated by entity (for claims and tax purposes), which requires separate tracking.

In addition, Riveron performs treasury functions, prepares cash flow and forecasting models, assists in the accounting function, coordinates cash reconciliations and journal entry support, and reviews monthly balance sheets.   As part of this effort, Riveron prepares, reviews, and tracks all ordinary-course-of-business accounts payable and payroll payments.   Riveron also tracks the funds paid into the Receivership Estate in connection with settlements with former investors, former employees, and other parties subject to ongoing or potential litigation.   Riveron's tracking reports are used to respond to inquiries from many sources, including, but not limited to, the Receiver, the Examiner, the Receiver's lead counsel, third-party vendors, investors, and other claimants.

Invoices for Riveron's activities related to general Estate matters during the period from July 1, 2014 to August 31, 2014 are attached as Exhibit E, App'x at 231-237. The Receiver requests approval of payment to Riveron for $24,073.20 in fees in connection with general Estate matters.

### f.      Ernst & Young LLP

Ernst & Young ("EY") continued to provide tax services to the Receivership. EY's work during this period focused primarily on two areas: tax returns and property tax consultation.

With respect to tax returns, EY continued to prepare 2013 tax returns for the Stanford Receivership entities, including Stanford Group Holdings, Inc., Stanford Financial Group, Stanford Development Company, Caribbean Sun Airline Holdings, Inc., and Stanford American Samoa.   EY also reviewed accounting records associated with all Stanford entities,

reviewed tax data and cash inflows and outflows to facilitate proper reporting, and prepared second Texas extensions for Stanford Development Company, Stanford Financial Group Company, and Stanford Group Holdings, Inc.

With respect to property tax consultation, EY worked with the Receiver's other professionals to address real and personal property tax issues related to various Receivership Estate assets.

EY's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit F, App'x at 238-246.  The Receiver requests approval of payment to EY for $23,895.00 in fees.

g.        **Osler, Hoskin & Harcourt LLP**[5]

Osler continued in its role as the Receiver's Canadian counsel.  During this period, Osler continued to support the Receiver with respect to implementing the court-approved settlement agreement between the Receiver, the Attorney General of Ontario, and others.  As a result of these efforts, a significant portion of the funds seized by the Attorney General have now been repatriated to the US Department of Justice pursuant to the settlement agreement.  Under the terms of the agreement, certain funds remain in the Ontario Court to pay legitimate owners with proven claims upon further court approval.  During the period covered by this fee application, Osler continued to review legitimate owner claims for the potential distribution of funds and coordinated with Baker Botts, the Receiver, counsel for the Attorney General, and

---

[5]        Osler and Altenburger submitted invoices for fees and expenses in foreign currency.  The exchange rates published by the Wall Street Journal on July 31, 2014 and September 1, 2014 were used to calculate these amounts in U.S. dollars.  On July 31, 2014, the exchange rates were .9170 for Canadian dollars (Osler) and 1.1003 for Swiss francs (Altenburger).                               *See* http://online.wsj.com/mdc/public/page/2_3021-forex-201407310.html?mod=mdc_pastcalendar.  On September 1, 2014, the exchange rates were .9200 for Canadian dollars (Osler) and 1.0874 for Swiss francs (Altenburger).
*See* http://online.wsj.com/mdc/public/page/2_3021-forex-20140901.html?mod=mdc_pastcalendar.

counsel for certain potential claimants regarding approval of legitimate owner claims and the agreed form of notice for those claims.

Osler's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit G, App'x at 247-251.   The Receiver requests approval of payment to Osler for $1,602.96 in fees and $2.32 in expenses.[6]

### h.   Altenburger

Altenburger continued in its role as the Receiver's Swiss counsel.   During this period, Altenburger supported the Receiver's efforts related to the implementation of the settlement agreement with the Joint Liquidators, including by conferring with the Receiver's U.S. counsel and with the Joint Liquidators' Swiss counsel regarding efforts to secure Stanford assets and potential avenues for obtaining the release of those assets.   Altenburger also conferred with the Liquidators of Stanford Group (Suisse) AG ("SGS") regarding the status of the SGS liquidation and assisted Receivership counsel with factual investigations and analysis related to various Receivership matters, including the Receiver's breach of fiduciary duty lawsuit against former SGS President Jack Staley.

Altenburger's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit H, App'x at 252-260.   The Receiver requests approval of payment to Altenburger for $7,789.83 in fees and $324.58 in expenses.

### i.   Dudley Topper

Dudley Topper is a St. Thomas law firm whose attorneys advise the Receiver on real estate and litigation matters in the US Virgin Islands.   During the period covered by Dudley

---

[6] Fees associated with Osler's work pertaining to the Receiver's activities in Quebec, described in Section II.B.1 above, are being addressed by the Quebec court in charge of the Quebec insolvency proceeding.

Topper's attached invoices, Dudley Topper provided legal services in connection with legal issues related to the marketing of real property held by the Receivership.

Dudley Topper's invoices for the period from April 1, 2014 to June 30, 2014 are attached as Exhibit I, App'x at 261–263.  The Receiver requests approval of payment to Dudley Topper for $208.80 in fees.

### j.      Neligan Foley

Neligan Foley represents the Receiver on a contingency fee basis in connection with certain third-party liability claims brought on behalf of the Receivership.  The expenses for which the Receiver is seeking reimbursement relate primarily to the Receiver's case against the former directors of Stanford Trust Company, Claude Reynaud and Cordell Haymon, and the law firm Breazeale, Sachse & Wilson, Civ. Action No. 3:12-cv-00495 (set for trial on February 2, 2015).  In addition, Neligan seeks reimbursement for expenses associated with the Receiver's action against Tom Sjoblom and the law firms Proskauer Rose and Chadbourne & Park, Civ. Action No. 3:12-cv-644.  The expenses associated with these cases include, among other things, legal research charges, travel expenses, court costs, and discovery-related costs.

Neligan Foley's invoice is attached as Exhibit J, App'x at 264–270.  The Receiver requests approval of payment to Neligan Foley for $13,291.38 in expenses.

### 2.      EXPERT FEES AND EXPENSES

For some of the litigation handled by the Receivership, it is necessary for the Receiver to retain the assistance of one or more expert witnesses qualified to provide testimony pursuant to Rule 702.  These experts are independent of the Receivership.  Further, certain of the Receiver's expert witnesses are independent or part of very small practices.  For these expert witnesses, the Receiver does not believe it is necessary or appropriate for the holdback to be applied.  The Receiver has conferred with the Court-appointed Examiner, and representatives of

the SEC, who agree that the holdback should not be applied to such expert witnesses. Additionally, in the Receiver's most recently approved fee application, the Court accepted the Receiver's request that holdback not be applied to such expert witnesses.  Accordingly, the request for the fees in the following section does not reflect a reduction for any holdback.

### a. Professor James C. Spindler

James C. Spindler is the Sylvan Lang Professor of Law at the University of Texas School of Law and a professor at the University of Texas McCombs School of Business. Professor Spindler has expertise in the areas of corporate fraud, financial intermediaries, executive compensation, tax, and corporate governance. The Receiver has retained Professor Spindler to serve as an expert witness in several pending litigation matters.  During the period covered by this fee application, Professor Spindler met with Receivership counsel regarding the litigation against A.J. Rincon, reviewed discovery and pleadings in the Rincon matter, and continued drafting an expert report in the Rincon matter.

Professor Spindler's invoice for the period from July 1, 2014 to August 31, 2014 is attached as Exhibit K, App'x at 271–273.  The Receiver requests approval of payment to Professor Spindler for $63,750.00 in fees and $295.00 in expenses.

### b. John A. Rodgers III

John A. Rodgers, III, is a consultant with expertise in estate, trust, investment management and fiduciary litigation.  During his career in the trust business, Mr. Rodgers served as a director, officer and trust counsel for several different trust companies and trust departments of financial institutions in Louisiana, North Carolina, New York and Delaware.  The Receiver has retained Mr. Rodgers to serve as an expert witness in connection with the Stanford Trust Company  litigation.  During the period covered by this fee application, Mr. Rodgers consulted

with Receiver's counsel regarding the Stanford Trust Company litigation; reviewed depositions, documents and pleadings in that matter; and began drafting an expert report.

Mr. Rodgers's invoice for the period from July 1, 2014 to August 31, 2014 is attached as Exhibit L, App'x at 274–276.  The Receiver requests approval of payment to Mr. Rodgers for $10,530.00 in fees.

## II.   FEES AND EXPENSES INCURRED IN CONNECTION WITH THE RECEIVERSHIP'S CLAIMS PROCESS AND INTERIM DISTRIBUTION PLAN

The Receiver also seeks the Court's approval to pay invoices for interim fees and expenses of $120,416.12[7] to the professional firms that rendered services in connection with the Receivership's claims process and interim distribution plan during the period from July 1, 2014 to August 31, 2014.  The proposed order submitted with this application reflects that, with respect to the fees and expenses incurred in connection with the claims process and interim distribution plan, the time spent, services performed, hourly rates charged, and expenses incurred by the Receiver's retained professionals during the period covered by this application were reasonable and necessary for the Receiver to perform his Court-ordered duties.

This application and its supporting evidence establish that the fees and expenses incurred by the Receivership in connection with the claims process and interim distribution plan are reasonable and necessary in light of the extraordinary complexity and difficulties of this case. Accordingly, the Receiver requests that the Court approve the fees and expenses incurred by the

---

[7]     With respect to the services performed in connection with the Receivership's claims process and interim distribution plan, the professional firms' discounted fees for the period covered by this application total $132,816.73, and the firms' expenses total $881.07.  As noted above, the Court's order amending the fee structure imposes a ten percent (10%) holdback on all non-out-of-pocket expenses.  (*See* Doc. 1565.)  Thus, the amount requested in this fee application for fees and expenses incurred in connection with the claims process and interim distribution plan—$120,416.12—includes the following components, and the total holdback related to these services is $13,281.68.

| Discounted Professional Fees | $132,816.73 | Less 10% Holdback  =  $119,535.05 |
| Out-of-Pocket Expenses | $881.07 | No Holdback  =  $881.07 |

Receivership in connection with the claims process and interim distribution plan during the period from July 1, 2014 to August 31, 2014.

## A.      Baker Botts L.L.P.

In addition to the work performed by Baker Botts in connection with the Receivership's general Estate matters (discussed in Part II.B.2 above), Baker Botts manages the Receivership's claims process and interim distribution plan.

(1) Claims Process: During this period, Baker Botts addressed various discrete issues related to the claims process, including issues related to individual claims and claimants, claim purchasers, claim transfers and notices of transfer, the notices of determination and amended notices of determination sent to claimants, and the objections filed by claimants in response to the notices of determination.  Baker Botts also drafted and filed the 22nd Claims and Distribution Report, covering the period from April to June 2014.

(2) Distribution Plan Matters: During this period, Baker Botts continued to respond to inquiries from claimants and their counsel regarding the Receiver's interim distribution plan.  Baker Botts also addressed various issues related to the execution of the Receiver's interim distribution plan, including issues related to the distribution of funds held in Canada and the certification forms sent to claimants pursuant to the terms of the interim distribution plan.

Baker Botts' activities related to the Receivership's claims process and interim distribution plan during the period from July 1, 2014 to August 31, 2014 are described in further detail in Baker Botts' invoices at App'x 54-56, 74-76, 130-132, and 158-160.[8]  The Receiver

---

[8]      The fees and expenses incurred by Baker Botts in connection with the Receivership's claims process and interim distribution plan are described in Baker Botts' invoices under the following categories: Claims Management, Distribution Plan Matters, and CD Claims Objections.

requests approval of payment to Baker Botts for $37,581.48 in fees and $75.77 in expenses incurred in connection with the claims process and interim distribution plan.

## B.     FTI Consulting, Inc.

In addition to the work performed by FTI in connection with the Receivership's general Estate matters (discussed in Part II.B.4 above), FTI provides consultation and analysis in support of the Receivership's claims process and interim distribution plan.  During this period, FTI's work in connection with the Receivership's claims process and interim distribution plan focused on the following areas:

(1) Claims Distribution: FTI reviews the Receiver's distribution schedules before they are filed with the Court.  FTI's work in this area includes verifying that the schedules do not contain claims that fall into several categories, including claims that were previously settled, claims that are being reviewed as part of the objections process, and claims that may be paid in full through the Joint Liquidators' claims process.

(2) Objections: FTI conducted a detailed review of certain claim groups who objected to the Receiver's notices of determination.  The objection review process involves, among other things, reviewing additional account information and documents submitted by the claimant, determining the validity of the claimant's asserted objection, and comparing the claimant's asserted objection to the Receivership's records to determine whether any modifications should be made to the Receivership's determination of the allowable amount or claim grouping.

(3) Coordination and Management: During this period, FTI participated on conference calls with and responded to specific requests received from Gilardi and former Stanford personnel regarding the status of the Receivership's claims process and other issues, including the coordination of the Receivership's efforts related to the certification notices sent to

claimants, and the design and implementation of additional procedures intended to ensure that only eligible claimants participate in the interim distribution, updates to the current status of distributions to claimants, and updates to the eligibility status of specific claim groups.

(4) Claims Review - Accuracy and Completeness: FTI performs several necessary procedures to verify and quality-check the format and type of information entered into a shared database containing the Receivership's claims data.  It is through this database and the associated review platform that the status and findings regarding each claim are tracked and updated.

(5) Joint Liquidators Claims Review: During this period, FTI prepared data regarding timely claims filed in the Joint Liquidators claim process for Gilardi in order to facilitate loading those claims into the Receivership's claim database.

FTI's invoices for claims process activities performed during the period from July 1, 2014 to August 31, 2014 are attached as Exhibit M, App'x at 277–294.  The Receiver requests approval of payment to FTI for $20,678.40 in fees related to these services.

## C.      Gilardi & Co LLC

Gilardi serves as the Receivership's claims agent.  Gilardi's work during this period focused on the following areas:

(1) Distribution: During this period, Gilardi prepared and sent certification forms to claimants pursuant to the terms of the Receiver's interim distribution plan.  Gilardi also processed the certification forms that were received from claimants.

(2) CD Claims Processing and Administration: Gilardi continued to prepare and review the notices of determination that were sent to claimants.  Gilardi prepared and reviewed the data used to generate determination letters, including reviewing claim amounts, claim groupings, and payee identification for claim groups.  Gilardi also printed and mailed physical and electronic copies of the determination notices to claimants.  In addition, Gilardi processed

amended notices of determination made necessary as a result of new information provided by claimants or changes requested by the Receiver's other professionals.  Gilardi continued to receive and process address changes and corrections submitted by claimants.

Gilardi also continued to analyze claims and prepare deficiency notifications to claimants.  Gilardi then tracked and analyzed responses and information provided by claimants in support of their claims.  Gilardi also continued to manage and track the progress of claims through the Receivership's claims process.

(3) Claimant Support: During this period, Gilardi continued to take calls and to respond to e-mail inquiries from claimants, including inquiries related to the notices of deficiency, notices of determination, certification forms, and payment checks that have been sent to claimants.

(4) Process CD Objections: Gilardi continued to receive, log, and image objections to notices of determination for review by the Receiver's other professionals.  Gilardi prepared a file for each objection that was received, and each file was logged, associated with its corresponding claims and claim groups, and made available to the teams responsible for processing the objections.  Gilardi also prepared amended notices of determination for resolved objections.

(5) Case Coordination and Management: Gilardi continued to escalate the review of certain claims to FTI and former Stanford personnel and to prepare and update various reports requested by the Receiver's counsel.  Gilardi also participated on the conference calls with FTI, Baker Botts, and former Stanford personnel discussed above.

Gilardi's invoices for the period from July 1, 2014 to August 31, 2014 are attached as Exhibit N, App'x at 295–326. The Receiver requests approval of payment to Gilardi for $61,275.17 in fees and $805.30 in expenses.

## III.   FEES AND EXPENSES INCURRED IN CONNECTION WITH THE OFFICIAL STANFORD INVESTORS' COMMITTEE ("OSIC")

The Receiver also seeks the Court's approval to pay invoices for interim fees and expenses of $125,582.35[9] to the professional firms that rendered services in connection with the activities of the Official Stanford Investors' Committee ("OSIC") during the period from July 1, 2014 to August 31, 2014. The proposed order submitted with this application reflects the agreement of the SEC, the Examiner, and the Receiver that expenses incurred by the OSIC's retained professionals during the period covered by this application were reasonable and necessary for the OSIC to perform its Court-ordered duties.

This application and its supporting evidence establish that the expenses incurred by OSIC in connection with its litigation activities are reasonable and necessary. Accordingly, the Receiver requests that the Court approve the expenses incurred by the Receivership in connection with the OSIC activities during the period from July 1, 2014 to August 31, 2014.

---

[9]   OSIC's attorneys handle all litigation on a contingency fee basis. Therefore, OSIC is not requesting payment of any attorneys' fees at this time; however, OSIC has incurred fees for other professionals as outlined above. As noted above, the Court's order amending the fee structure imposes a ten percent (10%) holdback on all professional fees and non-out-of-pocket expenses. (*See* Doc. 1565.) Thus, the amount requested in this fee application for fees and expenses incurred in connection with OSIC—$125,582.35—includes the following components, and the total holdback related to these services is $12,108.85.

| Discounted Professional Fees (FTI and Digital Discovery) | $121,088.50 | Less 10% Holdback   =   $108,979.65 |
|---|---|---|
| Out-of-Pocket Expenses (Neligan Foley, FTI, Digital Discovery, and Castillo Snyder) | $16,602.70 | No Holdback   =   $16,602.70 |

A.     **Neligan Foley LLP**

Neligan Foley represents OSIC in connection with the litigation in *OSIC v. BDO USA, LLP, et al.* (Civ. Action No. 3:12-cv-1447).  Neligan Foley's invoice for expenses incurred in relation to the *OSIC v. BDO* matter during the period from July 1, 2014 to August 31, 2014 is attached as Exhibit O, App'x at 327–330.  The Receiver requests approval of payment to Neligan Foley in the amount of $5,930.53 in expenses related to Neligan Foley's representation of OSIC during the period covered by this fee application.

B.     **Digital Discovery**

Digital Discovery provides forensic electronic data collection and investigation services.  During the period covered by this fee application, Digital Discovery supported OSIC's ongoing litigation efforts by processing and analyzing data received from defendants in the BDO matter.

Digital Discovery's invoices for OSIC activities performed during the period from July 1, 2014 to August 31, 2014 are attached as Exhibit P, App'x at 331-332.  The Receiver requests approval of payment to FTI for $4,396.05 in fees and $452.23 in expenses related to these services.

C.     **Castillo Snyder, P.C.**

Castillo Snyder represents OSIC in connection with a variety of OSIC litigation matters.  Castillo Snyder's invoice for outstanding expenses incurred in relation to these matters during the period from March 29, 2011 to July 31, 2014 is attached as Exhibit Q, App'x at 333-352.  The Receiver requests approval of payment to Castillo Snyder in the amount of $9,656.23 in expenses related to Castillo Snyder's representation of OSIC.

D.      **FTI Consulting, Inc.**

In addition to its work on behalf of the Receiver, FTI provides services to Neligan Foley in connection with Neligan Foley's representation of OSIC in the *OSIC v. BDO* matter. During the period covered by this fee application, FTI supported OSIC's ongoing litigation efforts by reviewing and analyzing voluminous records and testimony associated with OSIC's action against BDO. In addition, Gary Goolsby of FTI began work on an expert report in the BDO matter. FTI's invoices for OSIC activities performed during the period from July 1, 2014 to August 31, 2014 are attached as Exhibit R, App'x at 353-362. The Receiver requests approval of payment to FTI for $104,583.60 in fees and $563.71 in expenses related to these services.

## IV.      CONCLUSION

The fees and expenses requested by the Receiver are necessarily substantial. The work that is being performed, however, is necessary to the successful conclusion of the Receivership, and it is being handled in the manner that in the Receiver's judgment is the most cost-effective manner available.

For all the reasons set forth herein, the fees and expenses requested herein were both appropriate and necessary to carrying out the Receiver's duties under the Second Amended Order Appointing Receiver. Accordingly, the Receiver requests that the Court enter an order approving the payment of $1,657,837.30 in fees and expenses incurred in connection with general Estate matters and the Receivership's claims process and interim distribution plan during the period covered by this application, and that the Receiver be permitted to seek payment of the total holdback for this period—$165,213.52—at a later date. In addition, the Receiver requests that the Court enter an order approving the payment of $125,582.35 in fees and expenses

incurred in connection with the activities of OSIC, and be permitted to seek payment of the total

holdback for this period—$12,108.85—at a later date.


Dated: November 10, 2014                    Respectfully submitted,

                                            BAKER BOTTS L.L.P.


Richard B. Roper, III                       By:  /s/ Kevin M. Sadler
Texas Bar No. 17233700                          Kevin M. Sadler
richard.roper@tklaw.com                         Texas Bar No. 17512450
THOMPSON & KNIGHT LLP                           kevin.sadler@bakerbotts.com
1722 Routh Street                               Scott D. Powers
Dallas, Texas  75201                            Texas Bar No. 24027746
(214) 969-1700                                  scott.powers@bakerbotts.com
(214) 969-1751 (Facsimile)                      David T. Arlington
                                                Texas Bar No. 00790238
                                                david.arlington@bakerbotts.com
                                                98 San Jacinto Boulevard, Suite 1500
                                                Austin, TX  78701-4039
                                                512.322.2500
                                                512.322.2501 (Facsimile)

                                                Timothy S. Durst
                                                Texas Bar No. 00786924
                                                tim.durst@bakerbotts.com
                                                2001 Ross Avenue
                                                Dallas, Texas 75201
                                                (214) 953-6500
                                                (214) 953-6503 (Facsimile)

                    ATTORNEYS FOR RECEIVER RALPH S. JANVEY

<u>**CERTIFICATE OF CONFERENCE**</u>

Counsel for the Receiver conferred with the parties to this case.

Counsel for the Receiver conferred with David Reece, counsel for the SEC, who stated that the SEC is unopposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with John Little, the Court-appointed Examiner, who stated that he is unopposed to this motion and the relief requested herein.

Defendant R. Allen Stanford, who represents himself *pro se* in this matter, is currently incarcerated.  It is therefore impractical to confer with him regarding this motion.  It is reasonable to assume, however, that Mr. Stanford is opposed to this motion and the relief requested herein.

Counsel for the Receiver conferred with Jeff Tillotson, counsel for Laura Pendergest-Holt, who did not provide a response regarding Ms. Pendergest-Holt's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Kenneth Johnston, counsel for Trustmark National Bank, who stated that Trustmark's limited objection is reflected in the Stipulation that Trustmark filed in this action on August 26, 2014.  [Doc. 2080]

Counsel for the Receiver conferred with Manuel P. Lena, Jr., counsel for the DOJ (Tax Division), who did not provide a response regarding the DOJ (Tax Division)'s position on this motion or the relief requested herein.

Counsel for the Receiver conferred with David Finn, who is listed on the docket sheet as attorney to be noticed for James Davis, who did not provide a response regarding Mr. Davis's position on this motion or the relief requested herein.

Counsel for the Receiver conferred with Andrew Warren, counsel for the DOJ (Fraud Division), who did not provide a response regarding the DOJ (Fraud Division)'s position on this motion or the relief requested herein.

Counsel for the Receiver conferred with John Helms, Jr., counsel for Mark Kuhrt, who did not provide a response regarding Mr. Kuhrt's position on this motion or the relief requested herein.

The motion, therefore, is opposed.

/s/ Kevin M. Sadler
Kevin M. Sadler

<u>**CERTIFICATE OF SERVICE**</u>

On November 10, 2014, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I will serve the Court-appointed Examiner, all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kevin M. Sadler
Kevin M. Sadler