**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:09-cv-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

---

**DECLARATION OF DOUGLAS J. BUNCHER**

---

Pursuant to 28 U.S.C. § 1746, I, Douglas J. Buncher, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

**I. OVERVIEW**

**A. Curriculum Vitae**

1. My name is Douglas J. Buncher. I am an attorney admitted to practice law in the State of Texas since 1989. I am also admitted to practice before the United States District Courts for the Northern, Southern, Western and Eastern Districts of Texas, and am a member of the Bar Association of the United States Court of Appeals for the Fifth Circuit. I am a partner in Neligan Foley LLP ("Neligan Foley"), a Dallas law firm which concentrates its practice in complex bankruptcy, insolvency and receivership proceedings and related litigation. I have concentrated my practice in complex, commercial litigation since my career began in 1989, and since joining Neligan Foley in 2000 have concentrated my practice in handling complex receivership and bankruptcy litigation.

EXHIBIT 2

2. Neligan Foley has handled numerous complex bankruptcy and receivership cases, and litigation associated with those cases, since the firm was formed in 1995. Neligan Foley and I have handled many complex receivership and bankruptcy-related lawsuits seeking to recover hundreds of millions, and in some cases, billions of dollars in damages from third parties for the benefit of bankruptcy and receivership estates, as well as the investors and creditors of those estates. A detailed description of Neligan Foley, its areas of practice, case studies, and representative engagements, as well as my personal biography, background and experience, are set forth on Neligan Foley's website, www.neliganfoley.com.

**B. The STC Lawsuits**

3. I am submitting this Declaration in support of the Receiver, OSIC and Investor Plaintiffs' (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with the Adams & Reese Parties, Breazeale, Sachse & Wilson, LLP, Cordell Haymon and Lynette Frazer, Bar Order, Notice and Attorneys' Fees (the "Motion"). The settlement for which approval is sought in the Motion settles and releases all claims against Defendants Adams & Reese, LLP ("A&R"), Robert C. Schmidt ("Schmidt") and James R. Austin ("Austin") (collectively, the "A&R Parties"), Breazeale, Sachse & Wilson, LLP ("BSW"), Cordell Haymon ("Haymon") and Lynette Frazer, individually and as independent executrix of the estate of Thomas L. Frazer ("Frazer") (the A&R Parties, BSW, Haymon and Frazer are collectively referred to herein as the "Settling Defendants") in Civil Action No. 3:12-CV-00495-B, Ralph S. Janvey, et al. v. Adams & Reese, LLP, et al. (N.D. Tex.) (the "Receiver Lawsuit") and Civil Action No. 3:11-CV-00329-BL, The Official Stanford Investors Committee, et al. v. Adams & Reese, et al. (N.D. Tex.) (the "Investor Lawsuit") (together with the Receiver Lawsuit, the "STC Lawsuits") in consideration of A&R's payment to

the Receivership Estate of $1 million, BSW's payment to the Receivership Estate of $1,530,000, BSW's release to the Receivership Estate of the $198,165.49 currently being held in escrow by BSW, pursuant to the terms of that certain Escrow Agreement between Stanford Group Company and SBL Capital Corporation dated March 27, 2008, which designates BSW as Escrow Agent, Haymon's payment to the Receivership Estate of $2 million, and Frazer's payment to the Receivership Estate of $175,000.[1]

4. The Settlement Agreement further includes the release of all claims against Defendant Claude F. Reynaud, Jr. ("Reynaud") that are based upon, arise out of, are attributable to, or result from any act, error, omission, circumstance, personal injury, or breach of duty in the rendition of legal services for others (including, but not limited to, The Stanford Trust Company, The Stanford Group Company, The Stanford Financial Group Company, and any other affiliated entity or individual) in Reynaud's capacity as a lawyer. This partial release against Reynaud was necessary to achieve a settlement with BSW, because Reynaud is an attorney employed with BSW. The Settlement Agreement does not include the release of claims against Reynaud that are based upon, arise out of, are attributable to, or result from Reynaud's activities as an officer or director of the Stanford Trust Company, and Plaintiffs' claims against Reynaud in this capacity shall continue to be prosecuted.

5. Neligan Foley is counsel for the Receiver in the Receiver Lawsuit, and co-counsel to OSIC and the Investor Plaintiffs in both STC Lawsuits. OSIC is prosecuting claims in the Receiver Lawsuit on behalf of the Receiver pursuant to an assignment of claims against the Defendants from the Receiver to OSIC. Castillo Snyder, P.C. ("Castillo Snyder") and Butzel Long ("Butzel Long") (together with Neligan Foley, "Plaintiffs' Counsel"), also serve as co-counsel for OSIC and the Investor Plaintiffs.

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement Agreement.

**C. Neligan Foley's Involvement in Stanford-Related Litigation**

6. Shortly after the Stanford receivership was commenced in early 2009, Neligan Foley was approached by Edward Snyder of Castillo Snyder and Edward Valdespino of Strasburger & Price, LLP ("Strasburger") to serve as co-counsel to Castillo Snyder and Strasburger investor clients who had invested hundreds of millions of dollars into Stanford International Bank, Ltd. CDs ("SIBL CDs"). Due to Neligan Foley's prior experience in major bankruptcy and receivership proceedings and third-party litigation associated with those proceedings, Neligan Foley was hired to assist counsel at Castillo Snyder and Strasburger with the investigation and prosecution of litigation against third parties and to assist with the receivership and potential bankruptcy issues. Butzel Long later joined Castillo Snyder and Strasburger as co-counsel in the STC Lawsuits and certain other Stanford-related lawsuits.

7. Neligan Foley has monitored and participated in the main Stanford receivership proceeding since that time. On July 29, 2009, the Stanford Multidistrict Litigation matter, MDL No. 2099, was initiated (the "Stanford MDL Proceeding"). Neligan Foley has also participated in and monitored the Stanford MDL Proceeding since its inception.

8. Neligan Foley began its investigation of potential third-party claims to be asserted on behalf of the Investor Plaintiffs immediately after joining as co-counsel with Castillo Snyder and Strasburger in 2009. Based on information discovered during this joint investigation, Castillo Snyder, Strasburger, and Neligan Foley jointly initiated class action lawsuits in this Court on behalf of certain named Stanford investors, individually and on behalf of a class of similarly situated investors, styled *Troice v. Willis of Colorado, Inc.*, Case No. 3:09-cv-01274, and *Troice v. Proskauer Rose, LLP*, Case No. 3:09-cv-01600. Those cases remain pending before the Court.

9. Since that time, attorneys from Neligan Foley, in addition to the STC Lawsuits and the aforementioned *Proskauer* and *Willis* cases, attorneys from Neligan Foley, along with attorneys from Castillo Snyder, Strasburger, and Butzel Long have investigated, filed and prosecuted virtually all of the other major Stanford-related litigation against third-parties on behalf of the OSIC, the Investor Plaintiffs, and other investor-plaintiffs who have sued individually and on behalf of a putative class of Stanford investors, including the following lawsuits pending before the Court:

(a) *Philip Wilkinson, et al. v. BDO USA, LLP, et al.*, Civil Action No. 3:11-CV-01115-N;

(b) *The Official Stanford Investors Committee v. BDO USA, LLP; et al.*, Civil Action No. 3:12-cv-01447-N;

(c) *Janvey v. Greenberg Traurig, LLP, et al.,* Case No. 3:12-cv-04641;

(d) *Janvey v. Proskauer Rose, LLP, et al.,* Case No. 3:13-cv-477; and

(e) *Janvey v. Willis of Colorado, Inc., et al.,* Case No. 3:13-cv-03980.[2]

In addition to representing the OSIC and Investor Plaintiffs in these cases, Neligan Foley has also been engaged to represent the Receiver in all of the above cases where the Receiver is a named Plaintiff. As a result, Neligan Foley has been actively involved in the major Stanford-related litigation since 2009.

10. Plaintiffs' Counsel and Strasburger are also jointly handling many of the fraudulent transfer cases brought by the OSIC and the Receiver pursuant to an agreement

[2] Peter Morgenstern of Butzel Long is co-counsel for the Investor Plaintiffs and OSIC in all of the cases listed except the cases against Willis of Colorado, Inc. and Proskauer Rose, LLP. Strasburger is not involved in the STC Lawsuits.

approved by the Court by order dated February 25, 2011 [Docket No. 1267]. Neligan Foley is lead counsel in the following cases:[3]

(a) *Ralph S. Janvey and Official Stanford Investors Committee v. Yolanda Suarez*, Civil Action No. 10-cv-2581, now consolidated with the *Greenberg* lawsuit, Civil Action No. 3:12-cv-4641;

(b) *Ralph S. Janvey and Official Stanford Investors Committee v. IMG Worldwide, Inc.*, Civil Action No. 11-0117; consolidated with *Ralph S. Janvey and Official Stanford Investors Committee v. International Players Championship, Inc.*, Civil Action No. 11-0293;

(c) *Ralph S. Janvey and Official Stanford Investors Committee v. Miami Heat Limited Partnership and Basketball Properties, Ltd.*, Civil Action No. 11-0158;

(d) *Ralph S. Janvey and Official Stanford Investors Committee v. PGA Tour, Inc.*, Civil Action No. 11-0226;

(e) *Ralph S. Janvey and Official Stanford Investors Committee v. The Golf Channel, Inc.*, Civil Action No. 11-0294, currently on appeal at the Fifth Circuit;

(f) *Ralph S. Janvey and Official Stanford Investors Committee v. ATP Tour, Inc.*, Civil Action No. 11-0295; and

(g) *Ralph S. Janvey and Official Stanford Investors Committee v. Rocketball, Ltd. and Hoops, L.P.*, Civil Action No. 11-770.

**D. Time and Effort of Plaintiffs' Counsel**

11. Even a cursory review of the Court's docket in all of these cases reveals the immense amount of work that Plaintiffs' Counsel have put into the prosecution of all of these lawsuits since 2009. However, the docket and pleadings only reveal the work that is filed with the Court. As discussed further herein, and as the Court is aware, the prosecution of lawsuits of this magnitude and complexity has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel

[3] Castillo Snyder, Strasburger, and Butzel Long serve as co-counsel in these cases and lead counsel in other Stanford-related fraudulent transfer cases. In turn, Neligan Foley serves as co-counsel in the cases in which Castillo Snyder, Strasburger, or Butzel Long serve as lead counsel.

and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial. Plaintiffs' Counsel have spent thousands of hours and invested millions of dollars of time since 2009 in their investigation and prosecution of the lawsuits referenced above, including the STC Lawsuits.

**D. The STC Settlement**

12. In the Motion, the Plaintiffs and Plaintiffs' Counsel seek approval of the settlement of the claims against the Settling Defendants and the payment of a contingency fee to Plaintiffs' Counsel. The essential terms of the settlement of the claims against the Settling Defendants in the STC Lawsuits (the "Settlement") are:

(1) A&R will pay $1 million, BSW will pay $1,530,000 and release an additional $198,165.49 from funds held in escrow, Haymon will pay $2 million and Frazer will pay $175,000 (a total gross settlement amount of $4,903,165.49) to settle all claims in the STC Lawsuits;

(2) A&R, BSW, Haymon and Frazer will each pay their pro rate share of $4,000 to Horacio Mendez and $6,667 to Phillip A. Wilkinson out of the above settlement payments in consideration of Mendez and Wilkinson's settlement and release of their individual claims;

(3) The gross settlement amounts less the payments to Mendez and Wilkinson shall be paid to the Receiver;

(4) The Receiver, OSIC and Named Plaintiffs will fully release the Settling Defendants from any and all claims asserted in or related to the STC Lawsuits;

(5) The Receiver, OSIC and Named Plaintiffs will further fully release Reynaud from any and all claims asserted in or related to the STC Lawsuits that are based upon, arise out of, are attributable to, or result from any act, error, omission, circumstance, personal injury, or breach of duty in the rendition of legal services for others (including, but not limited to, The Stanford Trust Company, The Stanford Group Company, The Stanford Financial Group Company, and any other affiliated entity or individual) in Reynaud's capacity as a lawyer. The Receiver, OSIC and Named Plaintiffs do not release any claims, including but not limited to

claims for breach of fiduciary duty against Reynaud that are based upon, arise out of, are attributable to, or result from Reynaud's activities as an officer or director of STC.

(6) The Receiver and OSIC will seek entry of the proposed bar order (the "Bar Order") attached to the Settlement Agreement as Exhibit A enjoining any Stanford-Related Litigation against the Settling Defendants;

(7) The Receiver will provide notice of this settlement to the Stanford investors and other claimants in the Estate, through electronic mail, if known, or otherwise by mail, and by posting a notice on the Receiver, claims agent and Examiner websites;

(8) The Net Recovery [the gross settlement amount, less litigation expenses, less the 25% contingency fees, and less the amounts paid to Mendez and Wilkinson] will be included with other funds and distributed by the Receiver for the benefit of the Stanford investors pursuant to a distribution plan that is expected to be similar to other pro rata distribution plans approved by the Court; and

(9) The STC Lawsuits will be dismissed with prejudice, with each party bearing their own costs and attorneys' fees.

## II. INVESTIGATION, PROSECUTION AND SETTLEMENT OF THE STC LAWSUITS

### A. Plaintiffs' Counsel's Investigation Into Claims Against Defendants in STC Lawsuits

13. Plaintiffs' Counsel have spent over five years and thousands of hours investigating and pursuing claims against third parties, including the Settling Defendants, on behalf of the Stanford Receivership Estate and the investors in Stanford.

14. Neligan Foley alone has nearly 7,000 hours and over $2.8 million worth of attorney and paralegal time invested in the Stanford lawsuits, including the STC Lawsuits. Neligan Foley has over 2,400 hours and over $1.1 million of unpaid attorney and paralegal time invested in the STC Lawsuits alone. Neligan Foley's statement of fees for the STC Lawsuits, which reflects the time and hours of the lawyers and paralegals at Neligan Foley who have worked on the STC Lawsuits, is attached hereto as **Exhibit A.**

15. Plaintiffs' Counsel have spent several years and thousands of hours investigating and pursuing claims against the former directors and law firms of STC on behalf of the Stanford Receivership Estate and the Stanford investors. As part of the investigation of these claims, attorneys at Neligan Foley have reviewed voluminous documents and emails, including hundreds of boxes of former STC records in the possession of the Receiver, as well thousands of pages of documents and emails produced in discovery in the STC Lawsuits.[4]

16. Since September 11, 2013, attorneys at Neligan Foley have participated in approximately one and a half years of an extensive discovery process in the Receiver Lawsuit. Discovery has included drafting and sending extensive written discovery to Defendants, responding to multiple sets of interrogatories and document requests from Defendants, and reviewing and producing hundreds of boxes of former STC records in the possession of the Receiver. Neligan Foley and Castillo Snyder have also prepared for and taken the depositions of two senior officials with the Louisiana Office of Financial Institutions ("OFI"), the regulator of STC in Louisiana, a corporate representative of Whitney Bank, where STC formerly had its banking relationship, Edward Martin, a lawyer at Jones Walker, a New Orleans law firm that represented STC, and Robert Schmidt and James Austin, two lawyers from A&R who represented STC.

17. Discovery is ongoing and continuing in the Receiver Lawsuit, with approximately 10 to 15 more depositions to occur over the next several months, and trial currently set for August 3, 2015.

[4] As part of Neligan Foley's investigation of the above-referenced lawsuits, including the STC Lawsuits, Neligan Foley attorneys have made multiple trips to the warehouse in Houston, Texas in which the Receiver has stored the thousands of boxes of Stanford business records seized when Stanford was placed into receivership in order to search for records relevant to the claims asserted in the lawsuits. Over the years, Neligan Foley has reviewed hundreds if not thousands of boxes of the Stanford records to investigate the claims asserted against Willis, Proskauer Rose, Greenberg Traurig, Hunton & Williams, BDO, Kroll, the Stanford Trust Company directors, Adams & Reese, Breazeale Sachse & Wilson, Pershing, and Stanford insiders, officers and directors.

18. Neligan Foley could not have successfully prosecuted and resolved the claims asserted in the STC Lawsuits without having also spending thousands of additional hours investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities, and the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities. Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate and successfully prosecute viable claims against the STC directors and law firms. OSIC counsel have also spent thousands of hours since OSIC's formation in 2010 in support of the joint effort with the Receiver to investigate and prosecute numerous third party claims, including the claims against the Defendants in the STC Lawsuits, pursuant to an agreement between the Receiver and OSIC.

19. But for the diligent efforts of the Receiver, OSIC and their counsel since the commencement of this receivership proceeding, the settlement with A&R, BSW, Haymon and Frazer would never have been achieved and the Receivership Estate would not be in a position to receive nearly $3.7 million in net settlement proceeds net of expenses and attorneys' fees.

20. Plaintiffs' Counsel has conducted a thorough analysis of the potential claims against the Settling Defendants, considering:

(a) claims available under both state and federal law;

(b) the viability of those claims considering the facts underlying the Settling Defendants' roles with Stanford Trust Company and this Court's previous rulings; and

(c) the success of similar claims in other Ponzi scheme and investment fraud cases, both in the Fifth Circuit and elsewhere.

21. Plaintiffs' investigation has revealed that Haymon and Frazer were directors of STC for five years, during which time STC was sharing in referral fees received by Stanford Group Company ("SGC"), Stanford's U.S. broker dealer, from Stanford International Bank, Ltd. ("SIBL") for the investment of STC IRA customers' money into SIBL CDs. However, neither Haymon nor Frazer were directors in 2001 when the OFI issued its directive to STC that it was not to receive any fees from the placement of its IRA customers' funds into SIBL CDs due to concerns over self-dealing and potential violations of Internal Revenue Code § 4975. Defendant Reynaud, on the other hand, was a director in 2001 and throughout the entire time that STC was earning fees from the placement of its IRA customers' funds in SIBL CDs, despite the OFI directive that they should not receive any such fees.

22. Although the A&R Parties remain Defendants in the Investor Lawsuit, they have been dismissed from the Receiver Lawsuit. Although BSW remains a Defendant in the Receiver Lawsuit, the sole remaining claim against BSW in the Receiver Lawsuit is for vicarious liability as the employer of Reynaud. The Receiver's legal malpractice claims against BSW and the A&R Parties have been dismissed.

23. Insurance coverage has proven to be a thorny issue in the cases. Since the Receiver's malpractice claims against A&R were dismissed, arguably A&R's insurance policies no longer provided coverage for the remaining claims asserted by Plaintiffs. While claims against Haymon may be covered by STC's insurance with Lloyds, coverage under the Lloyds policies is hotly contested by Lloyds, who has denied coverage. As a result, Haymon has filed a declaratory judgment action against Lloyds, and Lloyds' Motion to Dismiss that case is pending. The claims and issues in the declaratory judgment action may not be resolved when the Receiver

Lawsuit goes to trial in August, so it is unknown whether any insurance would be available to pay a judgment against Haymon or Reynaud.

**C. Mediation**

24. Two mediation sessions were held with Christopher Nolland presiding as mediator, one on June 30, 2014, and a second session on September 3, 2014.[5] The June 30, 2014 mediation did not result in any settlements being reached; the September 3, 2014 mediation resulted in the settlement with A&R, but no other parties. However, continued discussions between Plaintiffs and Haymon ultimately resulted in the settlement with Haymon. After the Court granted Plaintiffs' motion to substitute Lynette Frazer as a Defendant in place of Thomas Frazer, subsequent negotiations between counsel resulted in the settlement with Ms. Frazer. Continued negotiations with BSW also resulted in the proposed settlement with BSW.

25. Negotiations were arms-length, and at times contentious. Defendants denied any wrongdoing in connection with STC, and are not admitting any wrongdoing in entering into the settlement.

**D. The Settlement is Fair and Reasonable and Should be Approved**

26. It is my opinion based upon years of experience prosecuting, trying and settling complex receivership and bankruptcy litigation, and my assessment of the relative merits of the claims and defenses in the STC Lawsuits, that the Settlement is fair and reasonable and in the best interests of the Stanford receivership estate and the Stanford investors and should be approved by the Court. My assessment of the merits of the settlement includes consideration of the limits of the Settling Defendants' available insurance, and coverage issues associated with such insurance. Furthermore, the risks and uncertainty of continued litigation against the Settling Defendants further favors the settlement. Any favorable trial court judgment would

[5] A&R did not participate in the mediation session held on June 30, 2014.

almost certainly be appealed in this case, so the length of time to obtain a final, non-appealable judgment absent the Settlement could be considerable. In light of these practical considerations, the Settlement is an appropriate and reasonable compromise for the Stanford receivership estate and its investors. Therefore, I believe the Settlement is in the best interests of the Stanford receivership estate and its investors and should be approved.

## III. ATTORNEYS' FEES

### A. The Contingency Fee Agreement

27. Plaintiffs' Counsel have been jointly handling all of the lawsuits referenced above, including the STC Lawsuits, pursuant to twenty-five percent (25%) contingency fee agreements with OSIC (in cases in which OSIC is a named Plaintiff) and the Investor Plaintiffs (in investor class action lawsuits). Neligan Foley also has twenty-five percent (25%) contingency fee agreements with the Receiver in the cases in which Neligan Foley represents the Receiver.

28. Attached as **Exhibit B** is a true and correct copy of the fee agreement between Plaintiffs' Counsel and OSIC for the STC Lawsuits (the "OSIC Fee Agreement"), which is incorporated by reference as if set forth fully herein. Attached hereto as **Exhibit C** is a true and correct copy of the fee agreement between Neligan Foley and the Receiver in the Receiver Lawsuit (the Receiver Fee Agreement), which is incorporated by reference as if set forth fully herein (OSIC Fee Agreement and Receiver Fee Agreement are collectively referred to herein as the "Fee Agreements"). The Fee Agreements provide for payment of a fee of twenty-five percent (25%) of the Net Recovery from the Settlement (defined as the total recovery after deducting allowable expenses and disbursements) to Plaintiffs' Counsel.

29. As stated in the Motion, Plaintiffs seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery (*i.e.*, the settlement amount less allowable disbursements) in the STC Lawsuits. The gross amount of the settlement to be paid by the Settling Defendants is $4,903,165.49. The disbursements to be deducted from the settlement amount to calculate the Net Recovery from the Settlement are $41,882.95 ($29,490.27 Neligan Foley expenses, and $12,392.68 Castillo Snyder expenses) (See Snyder Declaration, ¶39). Thus, the Net Recovery from the Settling Defendants is $4,861,282.54. Twenty-five percent (25%) of the Net Recovery is $1,215,320.64. This is the fee agreed to be paid to Plaintiffs' Counsel by OSIC and the Investor Plaintiffs, and this is the amount of the fee for which approval is sought in the Motion.

**B. The Court Has Previously Approved 25% Contingency Fee Agreements**

30. A twenty-five percent (25%) contingency fee has previously been approved as reasonable by this Court in its order approving the Receiver's agreement with OSIC regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and OSIC (the "OSIC-Receiver Agreement"). *See* Doc. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* Agreement [Doc. 1208] p. 3 (providing a "contingency fee" of twenty-five percent (25%) of any Net Recovery in actions prosecuted by OSIC's designated professionals). The Court's order approving the OSIC-Receiver Agreement also provided that OSIC need not submit a fee application seeking an award of fees consistent with the percentage authorized under the Court's previous order unless required by Rule 23. *See* Doc. 1267, p. 2.

31. The OSIC-Receiver Agreement further provided that OSIC "would prosecute certain fraudulent transfer claims and other actions for the benefit of Stanford investors/creditors

in cooperation with Ralph S. Janvey, as receiver." *See* Doc. 1208, p. 1 ¶ 1. The Agreement further provided that "this proposal will apply to the litigation of all fraudulent transfer and similar claims that may be brought under common law, statute ... or otherwise..." and "unless otherwise agreed, the terms of this agreement will likewise apply to the pursuit of any other claims and causes of action that the Receiver and the Committee determine to jointly pursue." *Id.* at pp. 1-2.

32. The contingency fee agreements with OSIC, the Investor Plaintiffs and the Receiver (where applicable) in all of the above-referenced cases, including the Fee Agreement with the Plaintiffs in the STC Lawsuits, similarly provide for a fee of twenty-five percent (25%) of the Net Recovery (defined as the total recovery after deducting allowable expenses and disbursements), and were modeled after the OSIC-Receiver Agreement since the parties knew that the Court had already approved a twenty-five percent (25%) contingency fee agreement.[6]

33. The twenty-five percent (25%) contingency fee arrangement that was approved by the Court in the context of the OSIC-Receiver Agreement became the framework for all of the twenty-five percent (25%) contingency fee agreements that OSIC entered into with Plaintiffs' Counsel in the above-referenced lawsuits, including the STC Lawsuits, as well as the twenty-five prevent (25%) contingency fee agreements that the Receiver entered into with Neligan Foley in certain of the above-referenced cases, including the Receiver Lawsuit.

34. Although the Court has already approved a twenty-five percent (25%) contingency fee arrangement in its order approving the OSIC-Receiver Agreement, *see* Doc. 1267, p. 2, and arguably the STC Lawsuits are cases the Receiver and OSIC determined to

[6] In cases in which Neligan Foley has fee agreements with both OSIC and the Receiver, those agreements provide that only one twenty-five percent (25%) fee will be paid regardless of whether the recovery is based on OSIC claims or the Receiver claims. Similarly, the agreements with the Investor Plaintiffs provide for only a single twenty-five percent (25%) fee regardless of whether there is a recovery on the investors' claims, OSIC's claims, or the Receiver's claims in a particular case.

jointly pursue and hence are covered by this previously approved OSIC-Receiver Agreement, Plaintiffs' Counsel have filed the Motion seeking approval of the fee to be paid in the STC Lawsuits in an abundance of caution and at the request of OSIC, the Examiner and the Receiver.

35. For the same reasons the Court previously found the twenty-five percent (25%) contingency fee OSIC-Receiver Agreement to be reasonable, *see* Doc. 1267, p. 2, the Court should find the twenty-five percent (25%) contingency fee applicable to the Settlement in the STC Lawsuits to be reasonable and approve it for payment. The Settlement yields a significant benefit to the Stanford Receivership Estate and the Stanford investors, and avoids the risk, uncertainty, time and costs associated with continued litigation against the Settling Defendants.

**C. The 25% Contingency Fee is Fair and Reasonable**

36. It is my opinion that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford investors, and in comparison to the hours billed to date by Plaintiffs' Counsel in the STC Lawsuits. The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. In certain instances, OSIC interviewed other potential counsel who refused to handle the lawsuits without a higher percentage fee. In fact, Plaintiffs' Counsel initially requested a larger percentage in all of the Stanford lawsuits because of the complexity and magnitude of the lawsuits, the length of time that it could take to prosecute the cases to conclusion, the thousands of hours Plaintiffs' Counsel would have to invest in these cases, and the risk that there might ultimately be no recovery. The STC Lawsuits and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and

requiring many years of investigation, discovery and dispositive motions to get to trial. The lawsuits involve significant financial outlay and risk by Plaintiffs' Counsel, the risk of loss at trial after years of work for no compensation, and an almost certain appeal following any victory at trial. Thus, while it is my opinion that these factors warrant a contingency fee of more than twenty-five percent (25%), Plaintiffs' counsel agreed to handle the lawsuits (including the STC Lawsuits) on a twenty-five percent (25%) contingency basis, and that percentage is fair and reasonable given the time and effort required to litigate these cases, their complexity and the risks involved.

**D. Plaintiffs' Counsel's Efforts**

37. As reflected in the attached invoice, Neligan Foley has devoted a tremendous amount of time and incurred significant expenses in preparing and prosecuting the STC Lawsuits. Neligan Foley has over 2,400 hours and over $1.1 million of unpaid attorney and paralegal time invested in the STC Lawsuits, and almost 7,000 hours and over $2.8 million worth of attorney and paralegal time invested in all of the Stanford litigation, but has only been paid $87,331.44 in attorneys' fees to date, which represents Neligan Foley's share of settlements of four fraudulent transfer cases. The proposed settlement is the result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein. But for the efforts of these parties, and the efforts of Neligan Foley described herein, there would be no Settlement, which will net the Receivership estate and the Stanford investors over $3 million they would not have otherwise had.

38. In addition to the efforts described herein related to the STC Lawsuits specifically, Plaintiffs' Counsel involved in the prosecution of the STC Lawsuits were also involved in the briefing and argument of the successful appeals of the SLUSA issue to the Fifth

Circuit and the United States Supreme Court in the *Willis* and *Proskauer* investor lawsuits. But for Plaintiffs' Counsel's efforts over several years to win the SLUSA appeal, the Investor Lawsuit could not have proceeded.

39. Plaintiffs' Counsel have done an immense amount of work investigating and analyzing the Stanford Ponzi scheme since the commencement of this receivership case, all of which allowed Plaintiffs' Counsel to formulate, file and successfully prosecute and settle the claims against the Defendants in the STC Lawsuits. But for the diligent efforts of Plaintiffs' Counsel since the commencement of this receivership proceeding, the settlement with the Settling Defendants would never have been achieved.

40. In light of the tremendous time and effort Neligan Foley and the other Plaintiffs' Counsel have put into the effort to recover monies for the Stanford Receivership Estate and the investors, including but not limited to the time related to the STC Lawsuits alone, all of which was necessary to the successful prosecution and partial resolution of the STC Lawsuits, it is my opinion that the twenty-five percent (25%) fee to be paid to counsel for OSIC and the Investor Plaintiffs is very reasonable. Neligan Foley and the other Plaintiffs' Counsel have worked tirelessly for over five years to attempt to recover money for the benefit of Stanford's investors for virtually no compensation.

41. The Court has already found the twenty-five percent (25%) contingency fee to be reasonable in the context of its approval of the OSIC-Receiver fee agreement, and I would submit that the Court should do so in the case of the STC Lawsuits for the same reasons. Here, there is even more reason to find the fee to be reasonable than in fraudulent transfer lawsuit context, as the STC Lawsuits and the other larger third-party cases are extraordinarily more

complex, time consuming and risky, involving numerous factual and legal issues and claims when compared to the relatively straight-forward fraudulent transfer claims.

42. I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the net recovery from the Settlement, as requested, is reasonable and appropriate considering the significant time, effort, and resources which Neligan Foley and the other firms retained by OSIC have invested in investigating the Stanford fraud, prosecuting and resolving the claims in the STC Lawsuits, and prosecuting the other Stanford-related litigation.

Dated: May 11, 2015.

Douglas J. Buncher