ORIGINAL

**REVISED FEE AGREEMENT**

**April 10, 2014**

**Parties.** Official Stanford Investors Committee ("Client" or "Committee") and Neligan Foley LLP, Butzel Long, P.C., and Castillo Snyder, P.C. (collectively, "Attorneys").

**Matters subject to this Agreement.** This agreement pertains to claims brought by the Committee against any one or more of the following: Breazeale, Sachse & Wilson, LLP, Adams & Reese, LLP, Claude Reynaud, J.D. Perry, Rebecca Hamric, Michael Contorno, and Louis Fournet, (collectively, the "Stanford Trust Defendants"), together with their respective subsidiaries, affiliates, partners, principals, predecessors and successors.

**Engagement.** Through this Revised Fee Agreement (the "Agreement"), the Committee engages Attorneys to represent the Committee regarding its claims against Stanford Trust Defendants (collectively, the "Stanford Trust Claims").

**Purpose of Representation.** Client employs Attorneys to negotiate, sue for, and collect or settle all sums arising out of the Stanford Trust Claims, including but not limited to claims for malpractice, negligence, breach of fiduciary duty, fraudulent transfer, unjust enrichment, and aiding and abetting and related claims arising out of the services provided by the Stanford Trust Defendants to Stanford Group Holdings, Stanford Group Company, Stanford International Bank Limited, Stanford Financial Group Company, Stanford Trust Company (Louisiana) and/or Stanford Trust Company (Antigua), Stanford Fiduciary Investor Services, Allen Stanford, James M. Davis, Laura Pendergest-Holt, and all other entities now or previously owned or controlled by any of the foregoing persons or entities (collectively the "Stanford Entities"). This Agreement is binding upon Client's successors, heirs and assigns.

**Effective Date.** This Agreement is effective as of May 23, 2011, and supersedes all prior engagement letters and agreements addressing the Stanford Trust Claims.

**Terms of Representation.**

1. **Contingency Fee.** Attorneys will prosecute the Stanford Trust Claims on a "contingency fee" basis, meaning that Attorneys will receive as a fee twenty-five percent (25%) of the "Net Recovery" in respect of the Stanford Trust Claims (the "Fee"). The "Net Recovery" shall be defined as the Recovery in connection with the Stanford Trust Claims, after deducting allowable expenses and disbursements, as described below. Attorneys shall be entitled to no Fee in respect of the Stanford Trust Claims unless there is a Net Recovery.

The Committee and Attorneys understand that Ralph Janvey, the Receiver for the Stanford Entities ("Receiver"), may also retain counsel on a contingent fee basis and may participate in the prosecution of some or all of the Stanford Trust Claims against the Stanford Trust Defendants. The Committee and Attorneys agree and acknowledge that the total Fee payable by the Receiver from the Stanford Receivership Estate shall not exceed 25% of the Net Recovery. Attorneys agree to negotiate with counsel to the Receiver and to agree upon a division of the Fee payable hereunder, as between the Attorneys and counsel to the Receiver, that complies with this paragraph.



The Attorneys have entered into an Amended Master Joint Venture Agreement pursuant to which Attorneys have agreed to divide the Fee payable to Attorneys pursuant to this Agreement. A fully executed copy of the Attorneys' Amended Master Joint Venture Agreement is attached hereto as Exhibit A and made a part of this Agreement. Pursuant to the Texas Disciplinary Rules, the work performed by the law firms will be in proportion to the percentages set forth in the Attorneys' Amended Master Joint Venture Agreement, pursuant to the all of the terms of such Amended Master Joint Venture Agreement, regardless of whether such Recovery received by the Stanford Receivership Estate arguably results from the claims asserted by the Receiver or the Committee against the Stanford Trust Defendants.

2. **Recovery.** The "Recovery" includes anything of value directly or indirectly received by the Stanford Receivership Estate as a result of the Stanford Trust Claims, including but not limited to the proceeds of any settlement or other disposition, a direct monetary payment or award, restitution awarded through any criminal proceeding, a fine assessed by the United States or other local or state Government, or the forfeiture of any of the Stanford Trust Defendants' assets, regardless of whether such Recovery received by the Stanford Receivership Estate arguably results from the claims asserted by the Receiver or the Committee against the Stanford Trust Defendants.

3. **Settlement or Other Case Proceeds.** Proceeds of any settlement or other disposition of the Stanford Trust Claims shall be paid directly to a receivership account to be designated by the Receiver. Upon receipt of such proceeds, the Receiver shall promptly pay to Attorneys the Fee and any expenses owing pursuant to this Agreement, subject to Court approval.

4. **Expenses.** The Committee authorizes the Attorneys to incur and pay out-of-pocket expenses that are reasonably necessary for the Attorneys to effectively represent the Committee in connection with the Stanford Trust Claims. Such expenses typically include, but are not necessarily limited to, filing fees, postage, deposition transcripts, copies, long-distance telephone, telefax charges, experts' fees, document storage and handling expense, and travel expense. The Attorneys will not add surcharges or other fees to third-party expenses. Certain expenses that are incurred internally, such as copies, long-distance telephone, and telefax charges, shall be posted at the Attorneys' standard rates for such expenses.

a. **Pre-suit Expenses.** The Committee agrees to submit all pre-suit investigative expenses incurred by Attorneys to the Receiver for reimbursement pursuant to the terms of paragraph 1(g) of the Committee Order. [1] Pre-suit investigative expenses shall include those incurred by Attorneys for consulting experts, database construction and third party copy services, lodging and travel expenses. The Committee shall request the Receiver to reimburse Attorneys, pursuant to the terms of paragraph 1(g) of the Committee Order, for these pre-suit investigative expenses within 30 days of receiving a statement from Attorneys.

[1] The "Committee Order" is Doc. No. 1149, in *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 09-298-N, in the U.S. District Court for the Northern District of Texas, Dallas Division. The Committee Order established the Official Stanford Investors Committee.

b. **Post-suit Expenses.** The Attorneys shall advance all expenses incurred in handling the Stanford Trust Claims, subject to reimbursement by the Receiver from the Receivership Estate pursuant to application filed with the Court by the Receiver, the Committee or the Committee's counsel and approval of such expenses by the Court at any time during the pendency of the litigation. For larger expenses, including expert witness fees and deposition costs, the Attorneys may ask the Receiver to pay for expenses directly as opposed to the Attorneys advancing the expenses, with such payment to be subject to application filed with the Court by the Receiver, the Committee or the Committee's counsel and approval of such expenses by the Court. In addition to the Fee earned pursuant to the section entitled "Contingency Fees" above, and whether or not there is a Net Recovery in respect of the Stanford Trust Claims, the actual and necessary out-of-pocket expenses incurred by the Attorneys to pursue the Stanford Trust Claims will be reimbursed by the Receiver from the Receivership Estate. Such expenses will include but are not necessarily limited to travel expenses, filing fees, postage, long-distance telephone, telefax charges, copies, process-server fees, transcripts, electronic document database costs, and expert witness fees. The reimbursement of such expenses will be subject to approval by the District Court upon application by the Attorneys on the same schedule and under the same standards applicable to other professionals whose expenses are subject to approval by the District Court. For any expenses that are not reimbursed to the Attorneys pursuant to this paragraph, then subject to Court approval, the Attorneys shall recover such expenses from the proceeds of any Recovery resulting from prosecuting the Stanford Trust Claims. The Attorneys will endeavor to minimize all expenses.

c. **Net Recovery.** If there is a Recovery, the Attorneys and counsel to the Receiver ("Receiver's counsel") shall first be reimbursed for any expenses advanced by the Attorneys or the Receiver's counsel that have not been reimbursed previously by the Receivership Estate. The Receivership Estate shall then be reimbursed for any expenses incurred and reimbursed to the Attorneys pursuant to this Agreement. The amount of the Recovery remaining after the Attorneys, the Receiver's counsel and the Receivership Estate have been reimbursed, as set forth in this paragraph, is the "Net Recovery".

5. **Total Compensation.** Attorneys agree and acknowledge that the fees to which they may become entitled pursuant to this Agreement shall not exceed, under any circumstances, the percentage set forth in paragraph 1 above. Attorneys further agree to indemnify and hold harmless the members of the Committee from and against any disputes that may arise between or among the Attorneys, including the Receiver's counsel, with respect to the fees and/or expenses to which any of them may be, or become, entitled pursuant to the terms of this Agreement.

6. **Fees and Expenses to be Paid by Receivership.** Attorneys agree and acknowledge that neither the Committee nor any individual member of the Committee shall bear any responsibility whatsoever for the payment of fees, reimbursement of expenses, or any other compensation to Attorneys. Attorneys agree and acknowledge that the Receivership Estate bears sole responsibility for the payment of any fees and expenses required by the terms of this Agreement, and that any such payments may also be subject to Court approval. The Committee will cooperate with Attorneys to prepare and present expense reimbursement requests and, if necessary, fee applications on Attorneys' behalf for submission to the Court (if necessary).

7. **Consistency with Other Agreements.** Notwithstanding any other provision herein, this Agreement is intended to be consistent with and pursuant to the terms of the

Committee Order, the letter agreement between the Receiver and the Committee dated December 16, 2010, and the supplemental letter agreement between the Receiver and the Committee dated May 10, 2013.

**8. Settlement.** Attorneys agree to notify the Committee of any offer of settlement received by Attorneys, and the Committee agrees to notify Attorneys of any offer of settlement received by the Committee.

**9. Termination of Agreement.** The Committee reserves the right to terminate Attorneys' representation at any time.

If the Committee discharges Attorneys from any pending litigation after Attorneys have entered appearances as counsel of record, Attorneys will seek court permission to withdraw if Attorneys deem such to be appropriate. Attorneys do not waive any rights to payment for attorneys' fees and expenses for services rendered and work performed prior to such discharge. Subject to the provisions of paragraphs 4, 5 and 6, Attorneys reserve the right to cease work on matters in which attorneys' fees and expenses are not paid within a reasonable time after a statement for their payment has been submitted to the Committee.

Attorneys reserve the right to withdraw from the continued representation of the Committee if it reasonably appears to the Attorneys that the continued pursuit of such claim(s) would not likely result in a sustainable claim and/or a collectible judgment, if the damages recoverable would not likely justify the time and expense of pursuing such claim(s) or if the Committee engages in conduct that renders it unreasonably difficult for Attorneys to represent the Committee effectively.

**10. Conflicts.** Attorneys agree not to accept any engagement known by them to be in direct conflict with the Committee's interests in the matters covered by Attorneys' representation. If, in the course of representing multiple clients, Attorneys discover and determine that a conflict of interest exists, Attorneys will notify the Committee of such conflict, and may withdraw from representing the Committee to the extent that such a withdrawal would be permitted or required by applicable provisions of the Texas Disciplinary Rules of Professional Conduct. The Committee acknowledges that Neligan Foley, LLP is concurrently representing the Receiver in litigation against multiples third parties. Neither Neligan Foley, LLP, nor the Committee believe there is any conflict as a result of Neligan Foley, LLP's joint representation of the Committee and the Receiver in litigation brought against multiple third parties related to the Stanford receivership case. To the extent any conflict does exist, however, it is expressly waived by the Committee by signing this Agreement.

**11. Ethics.** The Committee agrees that the Texas Disciplinary Rules of Professional Conduct shall control to the exclusion of any other "ethics codes" and to the extent that any ethical rules govern or control Attorneys' rights and obligations among themselves. The Committee agrees that Attorneys' obligations shall be governed by the Texas Rules even if a later dispute is centered in another state or in federal court in Texas or in another state.

Consequently, under those rules, Attorneys shall be disqualified from representing any other

client in any matter that is directly adverse to the Committee if: (a) that matter is substantially related to this representation; (b) there is a reasonable probability that Attorneys would in that matter knowingly use to the Committee's disadvantage confidential information acquired by the firm by reason of the representation; (c) Attorneys' representation of that other client would adversely limit Attorneys' responsibilities to the Committee in this representation; or (d) Attorneys' own interests or responsibilities to a third person would adversely limit Attorneys' responsibilities to the Committee.

12. **Governing Law.** The laws of the State of Texas shall govern the validity, construction, enforcement and interpretation of this Agreement. This Agreement contains the entire agreement between the Committee and Attorneys regarding the matters described herein, and the fees, charges and expenses to be paid relative hereto, and supersedes all prior oral or written agreements in respect thereof. This Agreement may only be amended in writing, signed by the Committee and Attorneys and/or their respective legal representatives, successors and assigns. This Agreement may be executed in multiple original counterparts, each of which shall be deemed an original, and together shall constitute the same Agreement.

13. **No Guarantees; Cooperation.** The Committee acknowledges that Attorneys have not made representations as to the likely outcome of this matter. The opinions Attorneys express concerning any aspect of the outcome of the representation or of the impact of this matter on the Committee's interests is, of course, based upon Attorneys' professional judgment. Those opinions, however informed, are not guarantees. The Committee shall fully cooperate with Attorneys in the prosecution of the Committee's claims and shall make all files, records, and software available to Attorneys on a reasonable basis, and shall make themselves available on a reasonable basis for interviews, depositions, and participation in the discovery process, mediation and trials.

14. **Notice to Client.** As required by the State Bar Act, Attorneys hereby advise the Committee that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information, please call (800) 932-1900. This is a toll-free phone call.

CASTILLO SNYDER, P.C.

By: ______________________
EDWARD C. SNYDER

NELIGAN FOLEY, LLP

By: ______________________
DOUGLAS J. BUNCHER

BUTZEL LONG, P.C.

By: ______________________
PETER D. MORGENSTERN

AGREED AND APPROVED BY CLIENT:
OFFICIAL STANFORD INVESTORS COMMITTEE

______________________
By: John Little
Its: Chair and Court-Appointed Examiner

CASTILLO SNYDER, PC

By: ______________________
EDWARD C. SNYDER

NELIGAN FOLEY, LLP

By: ______________________
DOUGLAS J. BUNCHER

BUTZEL LONG, P.C.

By: ______________________
PETER D. MORGENSTERN

AGREED AND APPROVED BY CLIENT:
OFFICIAL STANFORD INVESTORS COMMITTEE

______________________
By: John Little
Its: Chair and Court-Appointed Examiner

# Exhibit A

## Amended Master Joint Venture Agreement

ORIGINAL

# Amended Master Joint Venture Agreement

This Master Joint Venture Agreement (the "Agreement") is entered into by and between the law firms of Castillo Snyder, PC ("CS"); Butzel Long, PC ("BL"); Strasburger & Price, LLP ("SP"); Neligan Foley LLP ("NF"); and (each individually a "Party" and collectively the "Parties"). The Parties agree to the following:

## Subject Matter of the Agreement

This Agreement is an exclusive and mutual arrangement to jointly pursue and prosecute, on behalf of Ralph Janvey, in his capacity as court-appointed Receiver for the Stanford receivership estate (the "Receiver"),[1] the Official Stanford Investors Committee (the "Committee") appointed by District Judge David Godbey (the "Receivership Court") and, if and where applicable, any putative class representatives representing a putative class of Stanford International Bank Ltd. CD investors (the "Investor Class Plaintiffs") (collectively, the "Clients"), a lawsuit(s) against the following third party Defendants, and any of their respective subsidiaries or affiliates, as applicable (collectively, the "Stanford Defendants"), concerning the professional or other services they provided to any entity owned by or affiliated with Allen Stanford, including but not limited to Stanford Group Holdings, Stanford Group Company, Stanford International Bank Limited, Stanford Financial Group Company, Stanford Trust Company (Antigua), Stanford Trust Company (Louisiana), Stanford Fiduciary Investor Services, and any other entities owned or controlled by them or by R. Allen Stanford, James M. Davis, and/or Laura Pendergest-Holt (collectively the "Stanford Group"). This Agreement supersedes and amends all prior agreements between the Parties with respect to the allocation of attorneys' fees with respect to the lawsuits brought on behalf of the Receiver, the Committee and the Investor Class Plaintiffs against the Stanford Defendants defined below.

"STANFORD DEFENDANTS"

3. Adams and Reese, LLP, Breazeale, Sachse & Wilson, LLP and the Stanford Trust Company directors (the "STC Defendants")

[1] The Receiver is a party Plaintiff only in the actions brought against the Greenberg/Hunton Defendants, the Proskauer Defendants, the STC Defendants, and the Willis and BMB Defendants. The Receiver is represented in those actions only by NF.

This Agreement covers any actions that may be brought now or in the future relating to claims against the Stanford Defendants as a result of their involvement with the Stanford Group, whether in Texas or in any other state(s)(the "Claims"), except for the fraudulent transfer claims against Suarez which are governed by a separate agreement. No Party will pursue any of the Claims without the consent and participation of all the Parties per the terms of this Agreement.

Claims and Causes of Action

The Parties will jointly investigate, pursue and prosecute the Claims as one or more lawsuits in court(s) of competent jurisdiction.

Responsibility for Attorney Work

The Parties will be responsible for the attorney work to be performed on the Claims, including all aspects of litigating the case(s), consistent with their respective percentages of the fees set forth below. This includes appearing on all pleadings, participating in all legal research, pleadings, discovery, briefing, motion practice and trial. The Parties each agree to provide attorneys, paralegals, and other legal resources to assist in any venue in connection with the prosecution of the Claims consistent with their respective percentages of the fees set forth below.

Responsibility for Expenses

The Parties will be responsible for case expenses incurred in connection with prosecuting the Claims, including consulting experts' fees, testifying experts' fees, discovery, third-party vendors including mediators, large photocopying and investigators based on the respective attorneys'. fee split set forth herein, subject to reimbursement or advancement from the receivership estate of costs incurred in connection with prosecution of the receivership estate claims against the Stanford Defendants by the Receiver and/or the Committee. Each Party acknowledge that it is prepared to devote the necessary resources in furtherance of the objectives of this Agreement. As far as the day-to-day management of the Claims, the Parties shall individually bear their own usual operating expenses and routine cost items.

Allocation of Attorneys' Fees

Net attorneys' fees (defined as gross attorneys' fees minus case expenses described above) recovered in connection with the Claims will be allocated among the Parties pursuant to the following schedules:

*Investor Class Plaintiffs Claims:*

| STC Defendants | ~~45%~~ CS; 44% | 15% BL; 12% | 0% SP | ~~45%~~ NF 44% | DJB ECS PDM |
|---|---|---|---|---|---|

*Receiver/ Committee Claims:*

| STC Defendants | ~~45%~~ CS; 44% | ~~15%~~ BL; 12% | 0% SP | ~~45%~~ NF 44% | DJB ECS PDM |
|---|---|---|---|---|---|

*If Investor Class Plaintiffs Claims & Receiver/Committee Claims Settle or Result in Payment of Judgment Together:*

| STC Defendants | ~~45%~~ CS; 44% | ~~15%~~ BL; 12% | 0% SP | ~~45%~~ NF 44% | DJB ECS PDM |
|---|---|---|---|---|---|

All attorneys' fees recovered in connection with all Claims filed on behalf of the Clients will be allocated pursuant to this Agreement irrespective of whether one or more of the Clients' claims may be dismissed or is otherwise disposed of prior to trial or final settlement.

The attorney work by the law firms will be performed in accordance with and in proportion to the above fee percentages. If the attorney work performed through collection is repeatedly and materially disproportionate to the attorneys' fee allocation set forth herein, even after notice to that Party whose work is disproportionate and consultations between the Parties, then the Parties agree to adjust the attorneys' fee split in an equitable manner at the time of collection. The Parties shall make this determination of disproportionality based on the number of discrete tasks performed by each Party in furtherance of the Case, defined as (but not limited to) case projects or milestones such as: preliminary investigation; preparation of Complaint; responses to motions to dismiss; propounding of written discovery; taking of depositions; filing of discovery motions; responses to summary judgment; class certification motions and briefing; mediation; trial preparation; and trial etc. During the course of the case, the Party that feels that the work has been performed disproportionately shall immediately provide notice to the other Party, and the Parties shall thereafter consult to reach an agreed solution to allow the offending Party to "catch up" in terms of workload. To the extent that that Party cannot or will not "catch up" in terms of workload, then the Parties shall discuss altering the attorney fee allocation accordingly. Should the Parties be unable to resolve such issue by agreement, the Parties reserve the right to object to the percentages allocated by this Agreement to the Party performing less than that Party's share of the work, whether during the court approval process or otherwise.

<u>Receivership Court Approval of any Attorneys' Fees Recovered</u>

Each of the Parties agrees and acknowledges that the Receivership Court has full power and authority to fix the compensation of the attorneys engaged to perform services for the Receiver, the Committee, and any Investor Class. Each of the Parties further agrees and acknowledges that the terms and conditions set forth in this Agreement are subject to approval and potential modification by the Receivership Court, and that the Receivership Court retains the authority to alter the terms and conditions set forth in this Agreement if the Receivership Court determines that such terms and conditions prove to be improvident in light of developments not capable of being anticipated at the time the Parties entered this Agreement.

The Parties also agree that they will file with the Receivership Court appropriate applications to approve the payment of any net attorneys' fees recovered in respect of the Claims covered by this Agreement. In connection therewith, each Party shall keep and maintain appropriate time records in order to support applications for approval that are from time to time made to the Receivership Court; provided, however, that the time devoted by each Party to the Claims addressed in this Agreement shall not determine its allocation of attorneys' fees payable hereunder. The Parties further agree and acknowledge the payment of net attorneys' fees, and the allocation of such net attorneys' fees among the Parties, shall occur only as and when approved by the Receivership Court.

**Termination of Agreement**

Subject to the rules of professional responsibility and class counsel procedures, the Parties reserve the right to withdraw from the continued representation of some or all of the Clients if it reasonably appears to any Party that the continued pursuit of such claim(s) would not likely result in a sustainable claim and/or a collectible judgment, if the damages recoverable would not likely justify the time and expense of pursuing such claim(s) or if any Client engages in conduct that renders it unreasonably difficult for any Party to represent such Client effectively. In such case, this Agreement shall terminate and be of no further effect.

**Confidentiality and Privilege**

The Parties consider that joint prosecution and mutual disclosure among themselves and their respective clients of matters of common concern in this undertaking is essential to the effective representation of their respective Clients and, therefore, the Parties agree as follows:

Any exchange of information in connection with the joint efforts described in this Agreement is not intended to waive any attorney/client or attorney work product privilege, or other protection from disclosure to third-parties which may be otherwise available. Accordingly, it is the intention and understanding of the Parties that all work product of, or communications made between, any of the Parties relating to the investigation of potential claims, the development and implementation of common strategies, whether offensive, defensive, or negotiation-related, including but not limited to information and communication contained in documents, memoranda, correspondence, drafts, notes, reports, factual summaries, transcript digests, communications among counsel, or counsel and clients including their employees, consultants, and advisors, any joint or several interview of prospective witnesses, or the sharing or exchange via any media, including but not limited to electronic media, as well as any other material and information which would otherwise be protected from disclosure to third parties are, and will remain, confidential and protected from disclosure to any third party by their Clients' respective attorney-client and attorneys' work product privileges ("Privileged Communications").

All work performed by the Parties and their respective firms and consultants pursuant to this Agreement and communications among the Parties and their consultants and/or Clients in connection with this undertaking shall be conducted and protected pursuant to the attorney-client privilege and work product doctrine as recognized under federal law, the law of Texas, and the laws of any other relevant jurisdiction. The Parties agree that this Agreement is intended to facilitate the exchange of information and ideas among counsel and employees, assistants and professionals engaged from time to time by any of them, which exchange of information and ideas is deemed essential to the development of a common strategy or strategies, both offensive and defensive or negotiation-related, with respect to potential and actual Investor Class Plaintiffs Claims, Receiver Claims and Committee Claims. Any Privileged Communications exchanged by the Parties pursuant to this Agreement shall not be used by any Party for purposes unrelated to the investigation and prosecution of potential and actual Investor Class Plaintiffs Claims, Receiver Claims and Committee Claims. The Parties acknowledge and agree that the attorney-client privilege and work product doctrine shall apply to all Privileged Communications. It is

intended that all Privileged Communications remain confidential in accordance with the terms of this Agreement, and it is on this basis that all Privileged Communications are made between and among the Parties and employees, assistants and professionals engaged by them.

The Parties agree to maintain the confidentiality of the identity of fact and expert witnesses retained by each or any of them in connection with the Investor Class Plaintiffs Claims, Receiver Claims and Committee Claims, and to maintain the confidentiality of the opinions of such experts until, and except to the extent that such opinions are disclosed at trial, in expert reports or as otherwise required by the applicable rules of civil procedure or court order.

The Parties will make all reasonable efforts to maintain the confidentiality of the Privileged Communications. Each Party agrees to maintain the confidentiality of all Privileged Communications and none of the Privileged Communications obtained or developed by any of the parties or their employees, assistants and professionals as a result of this Agreement shall be disclosed to third parties without the consent of each of the other Parties.

Any Party receiving a third-party request or demand for disclosure of Privileged Communications subject to this Agreement shall report such request forthwith to all other Parties and shall utilize all reasonable means and legal processes to maintain the confidentiality of such communications, including but not limited to opposing any requests for, or motions to compel production of such communications, or, when appropriate, seeking a protective order to prevent disclosure of such communications.

Miscellaneous Provisions

The Client(s) shall be provided with a copy of this Agreement.

The Parties do not intend to hold themselves out to be a partnership or be governed by the Uniform Partnership Act. It is the intent of the Parties that each firm maintain its regular business operation and that no Party hereto acquires any rights, titles or interest in the ownership or assets of any other Party. The Parties will not hold themselves out to the public as a partnership and will maintain the separate identity of each entity.

It is understood by all Parties that this Agreement in no way affects the duties that each Party owes to the Clients whose Claims are affected by this Agreement. This Agreement shall at all times be construed to protect the Client's interests.

This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof. No waivers or modification of this Agreement shall be valid unless made in writing and signed by each of the Parties. No prior agreements exist, whether written or verbal, and no Party will assert that any such prior agreements exist.

The Parties agree that if there is any dispute between the Parties arising out of this Agreement, such dispute shall be resolved by binding arbitration administered through Judicial Arbitration and Mediation, Inc. ("JAMS"). The dispute shall be resolved by a single neutral arbitrator. The dispute shall be resolved in Dallas, Texas and in accordance with Texas law.

This Agreement consists of 7 pages.

**AGREED:**

**Castillo Snyder, PC**

By:____________________________
Ed Snyder
Dated: April 9, 2014

**Butzel Long LLP**

By:____________________________
Peter Morgenstern
Dated: April ___, 2014

**Strasburger Price LLP**

By:____________________________
Ed Valdespino
Dated: April ___, 2014

**Neligan Foley LLP**

By:____________________________
Doug Buncher
Dated: April 9, 2014

ACKNOWLEDGED

OFFICIAL STANFORD INVESTORS COMMITTEE

____________________________
John J. Little
Examiner and Chair

784600v2

This Agreement consists of 7 pages.

**AGREED:**

Castillo Snyder, PC

By: ______________________
Ed Snyder
Dated: April 9, 2014

Butzel Long LLP

By: ______________________
Peter Morgenstern
Dated: April ___, 2014

Strasburger Price LLP

By: ______________________
Ed Valdespino
Dated: April ___, 2014

Neligan Foley LLP

By: ______________________
Doug Buncher
Dated: April 7, 2014

ACKNOWLEDGED

OFFICIAL STANFORD INVESTORS COMMITTEE

______________________
John J. Little
Examiner and Chair

784/60v.2