IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:09-cv-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

DECLARATION OF PETER D. MORGENSTERN, ESQ.
IN SUPPORT OF REQUEST FOR AWARD OF
ATTORNEYS FEES AND COSTS

I, Peter D. Morgenstern, hereby declare under penalty of perjury the following:

A.    **Curriculum Vitae**

1.      My name is Peter D. Morgenstern.  I am an attorney and have been duly admitted to practice law in the state of New York since 1983.  I am also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.  By Order dated May 26, 2009, I was admitted pro hac vice to practice before this Court in connection with litigation related to the Stanford receivership cases.  I am a partner in the law firm of Butzel Long, professional corporation ("BL"), a Michigan-based firm with branch offices in New York and Washington, D.C.  I am a resident partner in BL's New York office.  BL has a broad nationwide legal practice, including groups of attorneys who practice in the areas of corporate law, litigation and like me, attorneys who practice in the areas of complex commercial litigation, bankruptcy and insolvency law.  For over thirty years, I have concentrated my practice



EXHIBIT
4

APP 0257

exclusively in the areas of commercial litigation and insolvency-related matters. I was previously a partner at a large full-service international law firm, and headed the bankruptcy and insolvency practice at one of its regional offices. After relocating to New York several years ago, I became a name partner in a mid-size litigation boutique, and then joined BL in 2011 as a partner.

2.     I have extensive experience representing creditors and other stakeholders in litigation relating to or arising from significant insolvencies (including bankruptcy cases, state court liquidation proceedings and out of court restructurings), major frauds, and Ponzi schemes, all on behalf of injured investors and creditors. I have participated as the lead attorney and as part of a team of attorneys who successfully prosecuted actions against third parties who were alleged to have been involved in, or profited from such frauds and Ponzi schemes. For instance, I was the lead attorney representing the court-appointed equity committee in the chapter 11 case of Adelphia Communications, Inc. (a massive Ponzi scheme); the class action plaintiffs in In re Bennett Funding, Inc. (a massive Ponzi scheme); a large investor group in the case of Tyco, Inc. (major fraud case); special counsel to the court-appointed equity committee of Calpine, Inc. (chapter 11 case); the Official Retiree Committee in connection with Outboard Marine, Inc. (chapter 11 case), and am currently representing major creditors in connection with the pending insolvency proceedings arising from the massive Madoff fraud, among many other notable representations during my career. A detailed description of BL's practice, and my biography, background and experience, are set forth on BL's website, at www.butzel.com.

**B.     The STC Lawsuits**

3.     I am submitting this Declaration in support of the Motion for Order Approving Proposed Settlement with Adams & Reese LLP, Robert C. Schmidt, James R. Austin, Cordell

2

Haymon, Lynnette Frazer and Breazeale, Sachse & Wilson, LLP and for Entry of Bar Order, Approving Notice and Entry of Scheduling Order, and Approving Attorneys' Fees (the "Motion"). The settlement for which approval is sought in the Motion settles all claims asserted against the three Defendants named above in Civil Action No. 3:09-cv-0298-N for the aggregate amount of $4,903,165.49.

4.      I respectfully refer the Court to the accompanying declaration of Douglas Buncher, Esq. of Neligan Foley for the detailed facts and circumstances relating to this litigation and the proposed settlement. BL has acted as co-counsel in this litigation.

5.      In addition to representing a group of hundreds of individual clients in Stanford-related cases, whose claims aggregate in excess of $400 million, I also serve as a member of The Official Stanford Investors Committee (the "OSIC") appointed by this Court by Order dated August 10, 2010 (the "Committee Order"). I was instrumental in the establishment of the OSIC to represent the interests of Stanford victims in these cases, with the goal of empowering the real stakeholders in these cases with a meaningful voice and role in attempting to maximize their ultimate recoveries. The Order appointing the OSIC enabled victims, through the OSIC to prosecute actions against third parties in cooperation with the Receiver and Examiner, or separately when appropriate, under the terms of the Committee Order. Other than fraudulent transfer actions brought by OSIC, the other lawsuits brought by the OSIC are in addition to pending class action cases brought on behalf of individual creditors in parallel with the OSIC's cases by BL and various of our co-counsel.

6.      Since the appointment of the OSIC, BL has worked closely with our co-counsel, including fellow OSIC members Edward Snyder (of Castillo Snyder) and Edward Valdespino (of Strasburger & Price) and with Neligan Foley and the Examiner, to share information, strategize

3

and collaboratively take appropriate actions, including prosecuting lawsuits against third parties, all with the goal of maximizing recoveries to Stanford victims. In some of these litigations, BL acts as lead counsel, and also acts as co-counsel in certain other cases, including the instant case. The coordination and collaboration of counsel is necessary and desirable to further the interests of Stanford victims, and has been the hallmark of the prosecution of this and other actions on behalf of investors and the Receivership estates. While various plaintiffs' counsel have assumed different levels of responsibility in each of the dozens of Stanford-related litigations, the sharing of information, and the overlap of facts and the law developed on joint litigation have been highly useful to the successful prosecution or settlement of this case and other pending litigations.

C.      **Stanford-Related Litigation**

7.      As noted above, since early 2009, BL was retained by hundreds of Stanford victims with claims exceeding four hundred million dollars, who sought assistance in asserting their interests in connection with the Receivership case, and to take appropriate legal steps to maximize their recoveries by prosecuting dozens of cases against various third parties, including banks, law firms and even foreign governments. I have personally devoted most of my professional efforts to representing Stanford victims during the course of the last six years, as has my colleague Joshua Abraham, Of Counsel to BL.

8.      BL has actively participated in, or has monitored, all Stanford-related litigations. Through my membership on the OSIC, and as putative class counsel in various cases since 2009, I have devoted significant time to matters other than just litigation against third parties, including participating in the establishment of the claims protocol, litigation, and negotiations with the

Antiguan Joint Liquidators, meetings of the OSIC, monitoring related criminal proceedings and communications with various government representatives.

9.      BL and my predecessor firms began their investigation of potential third-party claims which might be asserted on behalf of the Stanford victims immediately upon our retention in early 2009. Based on information discovered during this joint investigation with its various co-counsel, BL and my predecessor firms initiated several class action lawsuits on behalf of the investor plaintiffs.

10.      BL is acting as lead counsel or co-counsel to the investor plaintiffs and the OSIC in Stanford-related litigation against third-party professionals and service providers, including banks, law firms, and other financial institutions.  BL is also jointly handling many of the fraudulent transfer cases brought by the OSIC and the Receiver pursuant to an agreement approved by the Court by order dated February 25, 2011 [Docket No. 1267].

**D.      Time and Effort of Plaintiffs' Counsel**

11.      This Court is aware simply from legal filings alone of the extraordinary amount of time and effort that has been devoted to these incredibly complex cases by BL, its co-counsel and counsel to other parties seeking recoveries for Stanford creditors, including the Receiver and the Examiner.  The Court's docket in the dozens of Stanford cases, however, provides just a snapshot of these efforts.  These complex cases, involving billions of dollars in potential claims for defrauded Stanford investors, some of which are still in their early stages, have required a tremendous amount of attorney and other professional time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conducting discovery, prepare briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial.  Plaintiffs' counsel have

5

jointly spent thousands of hours since 2009 in their investigation and prosecution of the lawsuits referenced above, including the STC lawsuits. It is noteworthy that BL and the other plaintiff's attorneys have to date received little compensation while these cases have been actively litigated before this Court, the Fifth Circuit Court of Appeals, and even to the Supreme Court of the United States. It is particularly relevant that plaintiffs' counsel, including BL, have prosecuted these cases on a contingency fee basis, without any regular hourly compensation.

## ATTORNEYS' FEES

### A.   The Contingency Fee Agreement

12.   As noted in the Neligan Declaration, Plaintiffs' Counsel have been jointly handling the lawsuits referenced above, including the STC Lawsuits, pursuant to twenty-five percent (25%) contingency fee agreements with the OSIC (in cases in which the OSIC is a named-Plaintiff) and pursuant to retainer agreements with individual clients which provide for the payment of fees **only from recoveries** of no less than 25% in investor class action lawsuits.

13.   Attached as **Exhibit B** to the Neligan Declaration is a true and correct copy of the fee agreement between Plaintiffs' Counsel and OSIC for the STC Lawsuit (the "Fee Agreement").

14.   As stated in the Motion, the Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery (*i.e.*, the settlement amount less allowable disbursements).

15.   As set forth in the Neligan Declaration, a twenty-five percent (25%) contingency fee for plaintiffs' counsel has previously been approved as reasonable by this Court in its order approving the Receiver's agreement with the OSIC regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the OSIC (the "OSIC-Receiver Agreement"). *See*

6

APP 0262

Doc. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* Agreement [Doc. 1208] p. 3 (providing a "contingency fee" of twenty-five percent (25%) of any Net Recovery in actions prosecuted by OSIC's designated professionals).

16.    It is my opinion that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford investors from this settlement.  The twenty-five percent (25%) contingency fee was negotiated at arm's length between the OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms require to handle cases of similar complexity and magnitude.

B.    **Plaintiffs' Counsel's Efforts**

17.    BL has devoted a tremendous amount of time and incurred significant expenses in preparing and prosecuting the Stanford-related lawsuits in which it serves as counsel or co-counsel.  BL has devoted thousands of hours worth several million dollars to Stanford-related matters since 2009..  Of this amount, BL attorneys spent approximately 271 hours on the STC case (which a lodestar value of approximately $148,000).  As stated above, I respectfully submit that the proposed settlement is not only the result of the specific efforts of counsel in the STC case, but is the result of many years of effort, and thousands of hours of work by the Receiver, the OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein.  But for the efforts of these parties, and the efforts of BL described herein, there would be no STC Settlement.

18.    I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the net recovery from the STC settlement, as requested, is reasonable and appropriate considering the significant time, effort, and resources which BL and the other firms retained by

7

the OSIC have invested in investigating the Stanford fraud, prosecuting and resolving this claim, and prosecuting the other Stanford-related litigation.

Dated:  April 11, 2015

Peter D. Morgenstern

245500.5

APP 0264