## DECLARATION OF EXAMINER JOHN J. LITTLE

Pursuant to 28 U.S.C. § 1746, I, John J. Little, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.    My name is John J. Little.  I am over the age of eighteen (18) and am competent to make this Declaration.

2.    I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the United States Supreme Court, the U.S. Courts of Appeal for the Fifth and Eleventh Circuits, the United States Tax Court and the U.S. District Courts for the Northern, Eastern and Southern Districts of Texas.  I have been practicing law in Dallas, Texas since 1983, and have been a partner in the Dallas law firm Little Pedersen Fankhauser, LLP, since 1994.

3.    By Order dated April 20, 2009, I was appointed by Judge David C. Godbey (the "Court") to serve as the Examiner in the Stanford Financial Group receivership proceedings. *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N, Doc. No. 322 (the "Examiner Order").  Pursuant to the Examiner Order, I was directed to "convey to the Court such information as the Examiner, in his sole discretion, shall determine would be useful to the Court in considering the interests of the investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendants[1] in this action (the "Investors")."  I have served as Examiner in the Stanford Financial Receivership proceedings continuously since my appointment.

---

[1]    The Defendants include Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford

DECLARATION OF EXAMINER JOHN J. LITTLE

**EXHIBIT**

*5*

1
APP 0265

4.     By Order dated August 10, 2010, the Court created the Official Stanford Investors Committee ("OSIC") to represent Stanford Investors in the Stanford Financial Receivership proceedings and all related matters. *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N, Doc. No. 1149 (the "OSIC Order"). The OSIC Order defined "Stanford Investors" as "the customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL." OSIC Order at 2. The OSIC Order conferred upon the OSIC "rights and responsibilities similar to those of a committee appointed to serve in a bankruptcy case." The OSIC Order appointed me, as Examiner, to serve as a member of the OSIC and as its initial Chair. I have served as the Chair of the OSIC since its formation and continue to so serve.

5.     The OSIC Order specifically authorized the OSIC to pursue claims on a contingency fee basis against (a) Stanford's pre-receivership professionals, and (b) the officers, directors and employees of any Stanford entity.[2] OSIC Order at 8.

6.     On February 17, 2011, the OSIC and two individual Stanford Investors (as putative representatives of a class of similarly situated plaintiffs) filed an action against Breazeale, Sachse & Wilson, LLP ("BSW"); Claude Reynaud; Adams & Reese, LLP ("A&R"); J.D. Perry; Rebecca Hamric; Michael Contorno; and Louis Fournet. Civil Action No. 3:11-CV-00329-N in the Northern District of Texas, Dallas Division (the

---

Financial Group, The Stanford Financial Group Bldg. Inc. The Receivership encompasses Defendants and all entities they own or control.

[2]     This authority was limited in that the OSIC could not pursue claims that were duplicative of claims already being prosecuted by the Receiver. OSIC Order at 8.

"Investor Action").   The action was filed by the law firms Castillo Snyder, P.C. ("CSPC"), Morgenstern & Blue, LLC ("MBLLC"), and Neligan Foley, LLP ("NFLLP").

7.      In my capacity as Chair of the OSIC, I negotiated and executed an engagement agreement (which was ultimately dated as of April 29, 2011), pursuant to which the OSIC retained four law firms (CSPC, NFLLP, MBLLC and Hohmann Taube & Summers, LLP ("HTSLLP")) to represent it in connection with the prosecution of the claims (the "Stanford Trust Claims") in the Investor Action, and similar claims.   The April 29, 2011 engagement agreement contemplated that the four law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Stanford Trust Claims.   The engagement agreement defined Net Recovery as the "total amount obtained from settlement or litigation of the Stanford Trust Claims, after deducting allowable expenses."   In connection with the execution of the April 29, 2011 engagement agreement, the four law firms entered into an agreement that addressed how those firms would divide the work to be done in prosecuting the Stanford Trust Claims and any fees paid with respect to the Stanford Trust Claims.

8.      On July 7, 2011, an amended complaint was filed in the Investor Action that added James Austin, Jay Comeaux, Cordell Haymon, Thomas Frazer, Zack Parrish, Daniel Bogar and Jason Green as defendants in the Investor Action.   The amended complaint was filed by the law firms CSPC, MBLLC, and NFLLP.

9.      On or about January 20, 2012, the Receiver, Ralph S. Janvey, entered into an engagement agreement with HTSLLP, pursuant to which the Receiver retained

HTSLLP to prosecute the Receiver's legal malpractice claims against BSW, A&R and certain other law firms.

10.     On or about February 16, 2012, the Receiver and the OSIC filed an action against A&R, BSW, Robert Schmidt, James Austin, Claude F. Reynaud, Cordell Haymon and Thomas Frazer.  Civil Action No. 3:12-CV-00495-N, in the in the Northern District of Texas, Dallas Division (the "Receiver Action").  The Receiver Action was filed by HTSLLP as counsel for the Receiver, and by CSPC, NFLLP and Butzel Long, PC ("BLPC"),[3] as counsel for the OSIC.

11.     By letter dated June 14, 2013, the Receiver terminated his engagement agreement with HTSLLP.  The Receiver subsequently engaged NFLLP to represent him in the Receiver Action.

12.     Although HTSLLP had never appeared as counsel for the OSIC in either the Investor Action or the Receiver Action, I proposed that the OSIC terminate the April 29, 2011 engagement agreement with HTSLLP.  The OSIC voted unanimously to terminate that engagement agreement, and I notified HTSLLP of its termination by letter dated January 10, 2014.

13.     In my capacity as OSIC Chair, I negotiated and executed a Revised Fee Agreement with CSPC, BLPC and NFLLP, dated as of April 10, 2014, pursuant to which those firms were engaged to represent the OSIC in the Investor Action and the Receiver Action.  That Revised Fee Agreement provided for the payment of a contingent fee of

---

[3]     Peter D. Morgenstern, the principal of MBLLC, became a member  Butzel Long, PC, and Butzel Long, PC, became responsible for the obligations of MBLLC under the April 29, 2011 engagement letter.

DECLARATION OF EXAMINER JOHN J. LITTLE                                          4
                                                                         APP 0268

twenty-five percent (25%) of the Net Recovery realized in respect of the Stanford Trust Claims. The engagement agreement defined Net Recovery as the "total amount obtained from settlement or litigation of the Stanford Trust Claims, after deducting allowable expenses." The Revised Fee Agreement also recognized that the Receiver might also retain counsel pursuant to a contingent fee agreement, and expressly limited the total fee payable to counsel from the Receivership Estate to 25% of the Net Recovery.

14.    By an Order dated April 5, 2012, the claims asserted against Defendants Cordell Haymon, Thomas Frazer and Rebecca Hamric in the Investor Action were dismissed. Civil Action No. 3:11-CV-00329-N, Doc. No. 63. By a subsequent Order entered October 2, 2014, the putative class claims asserted against Defendants Cordell Haymon, Thomas Frazer and Rebecca Hamric in the Investor Action were reinstated. Civil Action No. 3:11-CV-00329-N, Doc. No. 123.

15.    By an Order dated September 11, 2013, the claims asserted against Defendants A&R, Robert Schmidt, and James Austin in the Receiver Action were dismissed. Civil Action No. 3:12-CV-00495-N, Doc. No. 58. That same Order dismissed certain claims against Defendants BSW and Claude Reynaud, and permitted other claims asserted against BSW, Claude Reynaud, Cordell Haymon and Thomas Frazer to proceed. *Id.*

16.    In my capacity as the OSIC Chair, I have worked closely with the Receiver, his counsel, OSIC's counsel, and putative class counsel to coordinate the prosecution of claims against third parties for the benefit of the Receivership Estate and Stanford Investors, including the claims asserted in the Investor Action and the Receiver Action.

17.    In that regard, I have been involved, as Chair of OSIC, in the prosecution of OSIC's claims that are asserted against A&R, BSW, Claude Reynaud, Thomas Frazer[4] and Cordell Haymon in the Investor Action and the Receiver Action.

18.    OSIC's counsel at NFLLP, CSPC, and BLPC have spent several years and thousands of hours investigating and pursuing the claims asserted in the Investor Action and the Receiver Action.  As part of their investigation of those claims, OSIC's counsel have reviewed voluminous documents and emails, including hundreds of boxes of former STC records in the possession of the Receiver, as well thousands of pages of documents and emails produced in discovery in the Investor Action and the Receiver Action.

19.    In the eighteen months preceding this Declaration (since approximately September 2013), OSIC's counsel have participated in an extensive discovery process in the Receiver Action.[5]  Discovery has included drafting and sending extensive written discovery to Defendants, responding to multiple sets of interrogatories and document requests from Defendants, and reviewing and producing hundreds of boxes of former STC records in the possession of the Receiver.  OSIC's counsel has also taken the depositions of two senior officials with the Louisiana Office of Financial Institutions ("OFI"), the regulator of STC in Louisiana, a corporate representative of Whitney Bank, where STC formerly had its banking relationship, and Edward Martin, a lawyer at Jones Walker, a New Orleans law firm that represented STC.

---

[4]    Defendant Thomas Frazer died on July 4, 2012.  By Order entered October 3, 2014, the Court granted Plaintiff's Motion to substitute Lynette Frazer, the executrix of his estate, as a Defendant.  Civil Action No. 3:12-CV-0495-N, Doc. No. 145.
[5]    Motions to dismiss remain pending for decision in the Investor Action, so discovery has proceeded in the Receiver Action.

20.     As OSIC's Chair, I participated in two separate mediation sessions addressing the claims asserted in the Investor Action and the Receiver Action, with Christopher Nolland presiding as mediator. The first such session was held on June 30, 2014, and a second session was held on September 3, 2014. The June 30, 2014 mediation did not result in any settlements being reached; the September 3, 2014 mediation resulted in a tentative settlement with A&R,[6] but no other parties.

21.     OSIC's counsel continued to negotiate with counsel for Cordell Haymon after the September 3, 2014 mediation session, and ultimately agreed upon a tentative settlement with Haymon. After the Court granted Plaintiffs' motion to substitute Lynette Frazer as a Defendant in place of Thomas Frazer, subsequent negotiations between counsel resulted in the settlement with Ms. Frazer. I worked closely with OSIC's counsel throughout those subsequent negotiations, and throughout the process of documenting the tentative settlements that were reached with A&R, Cordell Haymon and Lynette Frazer.

22.     Ultimately, a Stipulation and Settlement Agreement was entered into as of March 5, 2015, by the Plaintiffs in the Receiver Action and the Investor Action with A&R, Robert Schmidt, James R. Austin,[7] Cordell Haymon and Lynnette Frazer.

23.     Subsequent to the execution of the Stipulation and Settlement Agreement, the Plaintiffs reached an agreement to resolve all of their claims against BSW and certain of their claims against Claude F. Reynaud. With respect to Claude F. Reynaud, Plaintiffs agreed to settle the claims that solely related to his rendition of legal services for any

---

[6]     A&R did not participate in the June 30, 2014 mediation session.
[7]     Robert Schmidt and James R. Austin are partners in A&R.

DECLARATION OF EXAMINER JOHN J. LITTLE

person or entity affiliated with Stanford (including, but not limited to, The Stanford Trust Company, The Stanford Group Company, The Stanford Financial Group Company, and any other affiliated entity or individual) in Reynaud's capacity as a lawyer. Plaintiffs have not agreed to settle, and will continue to prosecute, their claims against Claude F. Reynaud that are based upon, arise out of, are attributable to, or result from his activities as an officer or director of Stanford Trust Company.

24.     The Plaintiffs in the Receiver Action and the Investor Action thereafter executed an Amended Stipulation and Settlement Agreement with BSW, A&R, Robert Schmidt, James R. Austin, Cordell Haymon and Lynnette Frazer.

25.     It is my opinion that the settlements agreed upon with BSW, A&R, Cordell Haymon and Lynette Frazer are fair and reasonable, in the best interests of the Stanford Receivership estate and the Stanford Investors, and should be approved by the Court. My opinion is based upon my involvement in the investigation and prosecution of the claims asserted in the Investor Action and the Receiver Action, the risks, uncertainty and the length of time it would take to get to trial in both of those actions, and the limited availability of insurance coverage to fund recoveries in those actions.

26.     The Receiver and the OSIC have agreed in principal with putative class counsel and the named Plaintiffs in the Investor Action that any proceeds recovered from the Receiver Action or the Investor Action will be distributed through the Receiver's existing (and already approved and operating) mechanism for identifying and approving claims and making distributions. Using the Receiver's existing process will be far more

efficient, and likely result in larger distributions to Stanford Investors, than the alternative of creating one or more parallel claim and distribution process(es) for class actions.

27.    As noted above, the OSIC entered into a Revised Fee Agreement with CSPC, BLPC and NFLLP that provided for the payment of a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Stanford Trust Claims.

28.    The Court has previously approved a contingent fee arrangement between OSIC and its counsel that provides for the payment of a 25% contingent fee on net recoveries from certain lawsuits prosecuted by OSIC.[8]  Civil Action No. 3:09-CV-0298-N, Doc. No. 1267.

29.    The Revised Fee Agreement entered between OSIC and its counsel here (CSPC, BLPC and NFLLP) was modeled after the contingency fee agreement already approved by the Court in the primary receivership proceeding.  Civil Action No. 3:09-CV-0298-N, Doc. No. 1267.

30.    For the same reasons the Court previously found the twenty-five percent (25%) contingency fee agreement between the OSIC and its counsel to be reasonable, *see id.*, p. 2, the Court should find the twenty-five percent (25%) contingency fee applicable to the settlements with BSW, A&R, Cordell Haymon and Lynette Frazer to be reasonable and approve it for payment.

31.    It is my opinion that the attorneys' fee requested is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford

---

[8]    The referenced Order addressed the OSIC's prosecution of certain fraudulent transfer and unjust enrichment actions.

Investors.   The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and its Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.

32.     I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the Net Recovery from the settlements with BSW, A&R, Cordell Haymon and Lynette Frazer is reasonable and appropriate considering the significant time, effort, and resources which OSIC's counsel have invested in investigating the Stanford fraud, prosecuting and resolving these claims, and prosecuting the other Stanford-related litigation.

Executed on April 12, 2015.

_____
John J. Little