IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL. | § § § § | Case No. 3:09-CV-00298-N |
| Defendant. | § § § § | |

_____

**RECEIVER'S RULE 45 MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THE UNITED STATES CUSTOMS AND BORDER PROTECTION**
_____

TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT AND AUTHORITIES ........................................................................................ 4

    I.    CBP's belief as to the relevance, necessity, and materiality of the requested documents is irrelevant in assessing whether the requested documents are subject to production. ................................................... 4

    II.    Documents within the purview of the Privacy Act must be produced pursuant to the order of a court of competent jurisdiction. .................................... 5

    III.    CBP fails to establish that 19 C.F.R. § 103.21-27 prohibit disclosure of the requested information. ................................................................................ 7

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boron Oil Co. v. Downie*,
  873 F.2d 67 (4th Cir. 1989) ................................................................................................9

*Boske v. Comingore*,
  177 U.S. 459, 20 S. Ct. 701, 44 L. Ed. 846 (1900) .............................................................9

*Brown v. Narvais*,
  2009 WL 2230774 ...........................................................................................................5, 6

*Gutierrez v. Benavides*,
  292 F.R.D. 401 (S.D. Tex. 2013) ........................................................................................6

*Hassan v. United States*,
  No. C05-1066C, 2006 WL 681038 (W.D. Wash. Mar. 15, 2006) ......................................5

*Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*,
  86 F.3d 1208 (D.C. Cir. 1996) ............................................................................................9

*Janvey v. Alguire, et al.*,
  Case No. 3:09-CV-0724-N-BG ..........................................................................................2

*Janvey v. Alvarado, et al.*,
  Case No. 3:13-CV-0775-N-BG ..........................................................................................2

*Janvey v. Wealth Management Services, Ltd.*,
  Case No. 3:10-CV-0477-N-BG .......................................................................................2, 3

*Laxalt v. McClatchy*,
  809 F.2d 885 (D.C.Cir. 1987) .............................................................................................5

*Mktg. Investors Corp. v. New Millennium Bank*,
  No. 3:11-CV-1696-D, 2012 WL 1357502 (N.D. Tex. Apr. 16, 2012) .............................8, 9

*Robinett v. State Farm Mut. Auto. Ins. Co.*,
  83 F. App'x 638 (5th Cir. 2003) .......................................................................................6, 7

*U.S. ex rel. Touhy v. Ragen*,
  340 U.S. 462 (1951) .......................................................................................................9, 10

*U.S. v. Ferrante*,
  502 F. Supp. 2d 502 (W.D. Tex. 2006) ..............................................................................5

**STATUTES**

19 C.F.R. § 103.21-27 .................................................................................................................7

19 C.F.R. § 103.22(a) ..................................................................................................................7

19 C.F.R. § 103.22(b) ..................................................................................................................8

5 U.S.C. § 522a(b)(11) ................................................................................................................5

5 U.S.C. § 552(a)(b)(11) .............................................................................................................7

5 U.S.C.A. § 301 .......................................................................................................................10

**OTHER AUTHORITIES**

FED. R. CIV. P. 26(b)(1) .....................................................................................................4, 5, 6

Fed. R. Civ. P. 34 ........................................................................................................................8

Fed. R. Civ. P. 45 ........................................................................................................................4

Plaintiff Ralph S. Janvey, in his capacity as Court-appointed Receiver (the "Receiver") hereby files this motion to compel the United States Customs and Border Protection ("CBP") to produce documents and information in its possession.

## INTRODUCTION

The Receiver seeks the Court's assistance in carrying out his duties under the Receivership Order, specifically his duty to locate and take control of assets belonging to the Receivership Estate. Second Amended Order Appointing Receiver, Doc. 1130, at 4 (directing the Receiver "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."). Specifically, the Receiver asks the Court to compel CBP to comply with the subpoena issued by the Receiver pursuant to his court-appointed duties and require CBP to produce contact and entry and exit information for David Miguel Nanes and Hasibe Elizabeth Ancona. The Receiver believes that Mr. Nanes and Ms. Ancona have both possession and knowledge of the location of several million dollars that Mr. Nanes and his companies received as fraudulent transfers from the Stanford Ponzi scheme. Indeed, the Receiver has a judgment against Mr. Nanes's company, Wealth Management Services, Ltd., in a separate lawsuit for over $9.8 million in fraudulent transfers.

The Receiver's subpoena to CBP was served on April 1, 2015. On April 14, 2015, CBP responded by stating that the agency did not locate any records pertaining to historical and current contact information for Mr. Nanes and Ms. Ancona, including physical addresses, phone numbers, e-mail addresses, and bank accounts, and asserted three objections to production of entry and exit information: (1) CBP does not believe the requested documents are relevant, necessary and material, (2) disclosure is prohibited under the Privacy Act, and (3) the request for production is directed at a subordinate official who is bound not to offer documents or testimony

Active 19367091.1                                1

unless instructed to do so or otherwise in accordance with applicable laws and regulations. Exh. A, CBP Response Letter at App. 2-3. These objections fail to establish a basis for withholding the requested information, and the Receiver respectfully requests that the Court order CBP to produce all such information in its possession for Mr. Nanes and Ms. Ancona.

### FACTUAL BACKGROUND

This Court appointed Ralph S. Janvey as the Receiver to recover money paid by the Stanford Ponzi scheme to persons and entities associated with R. Allen Stanford. A former Stanford employee, David Miguel Nanes, is one of these persons. While employed at Stanford, Mr. Nanes oversaw operations in Mexico. Mr. Nanes, individually and through his shell companies, WMSL and Global Money Managers Fund, Inc., received more than $16.4 million as compensation for his work in furtherance of the Stanford Ponzi scheme. The Receiver is currently pursuing three suits in this Court against Mr. Nanes or WMSL arising out of their roles in the Stanford Ponzi scheme: *Janvey v. Alguire, et al.*, Case No. 3:09-CV-0724-N-BG; *Janvey v. Wealth Management Services, Ltd.*, Case No. 3:10-CV-0477-N-BG; and *Janvey v. Alvarado, et al.*, Case No. 3:13-CV-0775-N-BG. This subpoena is necessary for the Receiver's successful litigation of these suits and to comply with his Court ordered duty "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." Second Amended Order Appointing Receiver, Doc. 1130, at 4.

In spite of diligent efforts, the Receiver has been unable to locate Mr. Nanes and his wife, Ms. Ancona, which is a critical step in locating Receivership Estate assets that are in the possession of Mr. Nanes and WMSL. Counsel for Nanes and WMSL asked to withdraw from representing WMSL and Nanes in the various lawsuits because he could not contact or locate Mr. Nanes. No. 3:10-cv-477-N-BG, Doc. 46; No. 3:09-cv-00724-N-BG, Doc. 1062. On July 28,

2014, the Court granted the motion to withdraw from the *Wealth Management* case.  In granting the motion, the Court ordered Defendant's counsel to provide the Receiver with all known contact information for WMSL and Mr. Nanes.  *See* Doc. 71, July 28, 2014 Order.  None of the contact information provided by counsel was current or reliable.

Independently, the Receiver has undertaken significant efforts to locate Mr. Nanes.  Through searches of public records, including real property records in Texas and Florida, motor vehicle registration records, driver's license records, court records, and multiple online research tools — the Receiver has identified and investigated multiple potential locations for Mr. Nanes and Ms. Ancona Ancona, in the United States.  None of those locations proved to be current.  The Receiver has also issued multiple third-party subpoenas in an effort to obtain information that might lead to the whereabouts of Mr. Nanes and Ms. Ancona, including subpoenas to financial institutions, the firm that made corporate filings for WMSL, a real estate agent involved in the sale of one of Mr. Nanes's properties, the property management company where Mr. Nanes previously maintained an office and a service provider where Mr. Nanes and Ms. Ancona previously received their mail.  Moreover, the Receiver has hired investigators who have interviewed multiple witnesses, identified additional potential addresses and conducted searches for assets or other property owned by Mr. Nanes, Ms. Ancona and WMSL

Based on the Receiver's investigation thus far, Mr. Nanes has taken steps to ensure that his current whereabouts remain difficult to uncover and that his and WMSL's substantial assets remain hidden.  His methods include the use of multiple mail-drop boxes to receive mail and other correspondence and limiting his e-mail communications through the use of a Russian-based internet service.  Mr. Nanes has neither acknowledged nor responded to any of the numerous communications with which he has been served by the Receiver since the time his attorney was

allowed to withdraw. Despite this significant investment of time and resources, the Receiver has not been able to locate Mr. Nanes, Ms. Ancona, or any significant assets belonging to them or WMSL. Documents responsive to the Receiver's subpoena to CBP would greatly assist in locating both Mr. Nanes and the Receivership assets in his and WMSL's possession.

### ARGUMENT AND AUTHORITIES

**I.     CBP's belief as to the relevance, necessity, and materiality of the requested documents is irrelevant in assessing whether the requested documents are subject to production.**

Under FED. R. CIV. P. 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and the measure of relevance is not admissibility but whether "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." There is simply no basis in the federal rules for CBP's self-imposed and heightened standard that documents must be "relevant, necessary, and material" to be discoverable.

The information requested in the Receiver's subpoena clearly meets the Rule 26 relevancy test. Moreover, the Receivership Order, which provides the authority for the Receiver to act, provides that the Receiver may by presentment of that order "obtain documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate." Doc. 1130, at ¶4(d). It further provides that the "attendance of a person or entity for examination and/or production of documents may be compelled in a manner provided in Rule 45, Fed. R. Civ. P. . . . . where such documents, books, records, accounts, deposits, or testimony maybe located." *Id.*

Locating Nanes, the defendant who received (individually and through his shell companies) over $16 million in receivership assets, is a critical step in locating the assets in Mr.


Nanes's possession. The subpoena to CBP included a detailed history of the proceedings against the Defendant, the Receivership assets that are in Nanes's and WMSL's possession, and the extraordinary circumstances which led to the Receiver's request for records and information. Exh. B, Subpoena to Customs, App. at 105-110. The Receiver has no ability to obtain the information requested in the subpoena by any other means. These records are therefore necessary for the Receiver to fulfill his court-ordered duty to take control of receivership assets, and without the requested information the Receiver will likely be prevented from carrying out that duty.

## II. Documents within the purview of the Privacy Act must be produced pursuant to the order of a court of competent jurisdiction.

While CBP claims that disclosure of the information sought by the Receiver is prohibited by the Privacy Act, it acknowledges that the Act provides for several exceptions, including disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 522a(b)(11); *U.S. v. Ferrante*, 502 F. Supp. 2d 502, 505 (W.D. Tex. 2006) (under this provision, "an agency *must* disclose records 'pursuant to the order of a court of competent jurisdiction.'") (emphasis added). The Privacy Act therefore "does not create a qualified discovery privilege." *Brown v. Narvais*, 2009 WL 2230774, at *X, No. CIV-06-228-F (W.D. Okla. Jul. 22, 2009). Even where the Privacy Act otherwise applies, "'a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1).'" *Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *2 (W.D. Wash. Mar. 15, 2006) (quoting *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C.Cir. 1987)).

Therefore, even where respondents invoke the Privacy Act, a court order requiring disclosure is appropriate based on a showing that the relevant discovery standard has been met

and after due consideration of any applicable privacy concerns. *See, e.g.*, *Robinett v. State Farm Mut. Auto. Ins. Co.*, 83 F. App'x 638, 639 (5th Cir. 2003) (Privacy Act not violated by release of veteran's medical files by the Department of Veterans' Affairs; state court subpoena fell within exception for orders of a court of competent jurisdiction, state court determined the records were relevant, and the agency determined "disclosure of the records [was] necessary to prevent the perpetration of fraud or other injustice in the matter in question.") (quotation omitted); *Gutierrez v. Benavides*, 292 F.R.D. 401, 403 (S.D. Tex. 2013) (ordering disclosure of records relevant to plaintiffs' federal tort and *Bivens* claims after weighing the plaintiffs' need for the records against defendants' privacy interest and ordering the parties "to fashion an appropriate confidentiality agreement amongst themselves.") (citation omitted); *Brown v. Narvais*, No. CIV-06-228-F, 2009 WL 2230774, at *3 (W.D. Okla. July 22, 2009) (denying Bureau of Prisons' motion to quash subpoena and authorizing disclosure of name and address of third party to plaintiff, as "[p]laintiff seeks disclosure of relevant information likely to lead to the discovery of admissible evidence" and "[t]he potential witness's privacy interest would be protected if the parties would negotiate a confidentiality agreement regarding disclosure of the requested information.").

As discussed above, the Receiver has established that the requested records clearly meet the Rule 26 relevancy test. The contact and entry and exit information pertaining to Mr. Nanes and Ms. Anacona will facilitate the Receiver's court-directed duty to locate and disburse over $16 million in receivership assets.

Mr. Nanes and Ms. Ancona's privacy interests are greatly diminished in this case given Mr. Nanes' status as a defendant who facilitated a massive, world-wide fraud, his possession of Receivership assets, and his successful evasion of legal consequences to date. As in *Robinett*,

disclosure of the requested information is "necessary to prevent the perpetration of fraud or other injustice," that would result from the inability to recover the over $16 million Nanes received as compensation for sale of fraudulent certificates of deposit. *Robinett,* 83 F. App'x at 639. Further, the Receiver is willing to enter into a reasonable confidentiality order that addresses CBP's privacy concerns; for example, the Receiver would agree that the information provided would only be disclosed and utilized for the limited purpose of recovering assets from Mr. Nanes.

The Receiver, therefore, respectfully requests that the Court exercise its authority under 5 U.S.C. §552(a)(b)(11) and order CBP to produce any contact or entry and exit information in its possession pertaining to Mr. Nanes or Ms. Ancona.

### III. CBP fails to establish that 19 C.F.R. § 103.21-27 prohibit disclosure of the requested information.

CBP objects that the request for documents is directed to a subordinate official of CBP and that "[s]uch an official is bound by CBP regulations not to offer documents or testimony in litigation in which CBP is not a party, unless instructed to do so by the Commissioner or his designee or otherwise in accordance with any applicable laws or regulations." Exh. A, CBP Response Letter, App. at 3; 19 C.F.R. § 103.21-27. This "objection" is nothing more than a recitation of the general prohibition against disclosure contained in 19 C.F.R. § 103.22(a) and fails to establish a basis for withholding the requested information.

As an initial matter, the request for documents was directed to a subordinate official of the CBP per the explicit guidance from CBP in its March 12, 2015 letter to the Receiver: "Please be advised that any request for information in this matter must be sent directly to the Office of the Associate Chief Counsel at the address in this letterhead." Exh. C, CBP Response Letter of March 12, 2015, App. at 145. It is rich that compliance with guidance contained in CBP's initial

denial of the subpoena served as the basis for CBP to issue yet another automatic denial. Moreover, CBP has failed to demonstrate that it has complied with its own regulations, as under 19 C.F.R. § 103.22(b) an employee who receives a demand for information "shall immediately prepare a report that specifically describes the testimony or documents sought," notify either the Assistant Chief Counsel, Associate Chief Counsel, or Chief Counsel, and "await instructions from the Chief Counsel concerning the response to the demand." CBP has not alleged that the Chief Counsel has provided the Associate Chief Counsel with instructions prohibiting the disclosure of the requested information; it simply asserts that the request was directed to a subordinate official. This is not a basis for refusal to comply with a subpoena.

More fundamentally, the general prohibition against disclosure contained in Section 103.22(a) is precisely the type of objection rejected by this Court in *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2012 WL 1357502 (N.D. Tex. Apr. 16, 2012) report and recommendation adopted in part, rejected in part, No. 3:11-CV-1696-D, 2012 WL 2900606 (N.D. Tex. June 5, 2012) (referring case back to the magistrate judge to establish additional time for document production). In *New Millennium Bank*, this Court found that the FDIC's regulations, which "prohibit a depository institution . . . from disclosing records 'contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC' without permission or authorization by the FDIC," were in direct conflict with "Fed. R. Civ. P. 34, which provides that any party may serve on any other party a request to produce and permit the requesting party to inspect, copy, test, or sample any designated documents that are 'in the responding party's possession, custody or control.'" *Id.* at *4-5. While noting that "[t]he Fifth Circuit has not squarely addressed whether courts should defer to the FDIC's regulatory procedure where it conflicts with the Federal Rules of Civil

Procedure," this court examined precedent from the Sixth and Ninth Circuits and concluded that the federal housekeeping statute "does not empower or authorize a federal agency to withhold documents or testimony from federal courts," and that "[t]here appears no compelling reason to discard the relatively straight-forward discovery methods under the federal rules for the FDIC's much more cumbersome procedure in this case." *Id.* at *6. Consequently, this Court overruled the "objection to production of the requested documents and testimony based on the FDIC's regulations." *Id.; see also Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury,* 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("neither the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.").

The authority cited by CBP similarly fails to establish that CBP may withhold the requested documents; these cases merely establish that a superior officer may prohibit a subordinate from disclosing requested information and do not address the ultimate question of whether an agency may withhold documents from a federal court. *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467 (1951) (expressly declining to address the question of "whether it is permissible for the Attorney General to make a conclusive determination not to produce records."); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations."); *Boske v. Comingore,* 177 U.S. 459, 470, 20 S. Ct. 701, 706, 44 L. Ed. 846 (1900) ("the Secretary . . . may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character." This case precedes *Touhy* by fifty-one years, so to the extent it appears to grant the Secretary ultimate authority to

withhold information that is negated by *Touhy's* recognition that this question remains unanswered.). Finally, while CBP states its regulations are issued pursuant to the authority granted by the Federal Housekeeping Statute, this statute explicitly states that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C.A. § 301. CBP has simply failed to establish any legitimate, substantive basis for its repeated refusals to comply with the Receiver's court-directed efforts to recover receivership assets.

## CONCLUSION

In light of the foregoing, Receiver respectfully requests that the Court issue an order requiring CBP to produce any records in its possession that correspond to the Receiver's request.

May 21, 2015                               Respectfully submitted,

                                        **BAKER BOTTS L.L.P.**

                                        By: */s/ Kevin M. Sadler*
                                            Kevin M. Sadler
                                            Texas Bar No. 17512450
                                            kevin.sadler@bakerbotts.com
                                            Scott D. Powers
                                            Texas Bar No. 24027746
                                            scott.powers@bakerbotts.com
                                            David T. Arlington
                                            Texas Bar No. 00790238
                                            david.arlington@bakerbotts.com
                                            Brendan A. Day
                                            Texas Bar No. 24052298
                                            brendan.day@bakerbotts.com
                                            Ashley Allen Carr
                                            Texas Bar No. 24082619
                                            ashley.carr@bakerbotts.com
                                            98 San Jacinto Blvd., Suite 1500
                                            Austin, Texas 78701-4039
                                            512.322.2500
                                            512.322.2501 (Facsimile)

                                      **ATTORNEYS FOR RECEIVER RALPH S. JANVEY**

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 20 2015, the Receiver's counsel attempted to contact the U.S. Customs and Border Protection using the contact information provided by Customs. The Receiver was unable to reach the designated point of contact and the Receiver did not receive a response from Customs prior to filing the Motion to Compel.


*/s/ Kevin M. Sadler*
Kevin M. Sadler

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21 2015, the foregoing document was electronically submitted with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court and served on Robert H. Humphries, Associate Chief Counsel for the U.S. Department of Homeland Security via certified mail.

>   */s/ Kevin M. Sadler*
>   Kevin M. Sadler