IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> STANFORD INTERNATIONAL BANK, LTD., *et al.*, <br><br> Defendants. | Case No. 3:09-CV-0298-N |

## ORDER APPROVING ATTORNEYS' FEES

Before the Court is the *Expedited Request for Entry of Scheduling Order and Motion for Order Approving Proposed Settlement with Adams & Reese Parties, Breazeale, Sachse & Wilson, LLP, Cordell Haymon and Lynette Frazer, Entering Bar Order, Approving Notice and Approving Attorneys' Fees* (the "Motion") filed by Ralph S. Janvey, in his capacity as Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver"), the Official Stanford Investors Committee ("OSIC"), Philip Wilkinson ("Wilkinson"), and Horacio Mendez ("Mendez") (collectively, "Movants") (ECF No.2134). This Order addresses the request for approval of Plaintiffs' attorneys' fees contained within the Motion. All relief requested in the Motion other than the request for approval of attorneys' fees was addressed by separate Order of this same date.

With respect to Plaintiffs' request for approval of Plaintiffs' attorneys' fees, the Court finds that the 25% contingency fee agreement between Plaintiffs and Plaintiffs' counsel is reasonable and consistent with the percentage charged and approved by courts

in other cases of this magnitude and complexity. The Stanford Receivership, the Receiver Lawsuit (Civil Action No. 3:12-CV-00495) and the Investor Lawsuit (Civil Action No. 3:11-CV-00329)(collectively, the "STC Lawsuits")[1] are extraordinarily complex and time-consuming and have involved a great deal of risk and capital investment by Plaintiffs' counsel as evidenced by the Declarations of Plaintiffs' counsel submitted in support of the request for approval of their fees. Both the Motion and the Declarations provide ample evidentiary support for the award of the Plaintiffs' attorneys' fees set forth in this Order.

Trial courts can determine attorneys' fee awards in common fund cases such as this one using different methods. The common-fund doctrine applies when "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Harmon*, No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. Apr. 14, 2011) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

One method for analyzing an appropriate award for Plaintiffs' attorneys' fees is the percentage method, under which the court awards fees based on a percentage of the common fund. *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642–43 (5th Cir. 2012). The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable." *Id*. at 643 (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount

---

[1] Capitalized terms used herein shall have the meanings defined in the Motion.

involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See *Johnson*, 488 F.2d at 717-19.

Thus, when considering fee awards in class action cases "district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check." Id. (internal citations omitted); see *Schwartz v. TXU Corp.*, No. 3:02–CV–2243–K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases). While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the preferred method of many courts. *Dell*, 669 F.3d at 643; *Schwartz*, 2005 WL 3148350, at *25. In *Schwartz*, the court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. *Id*. Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Id*. at *26.

While the Settlement with the Settling Defendants in the Receiver and Investor Lawsuits is not a class action settlement, because the settlement is structured as a settlement with the Receiver and OSIC, with a Bar Order and dismissal of the claims against the Settling Defendants in the Receiver and Investor Lawsuits, this Court has

3

analyzed the award of attorneys' fees to Plaintiffs' counsel under both the common fund and the *Johnson* approach. Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 25% fee sought by Plaintiffs' counsel pursuant to their fee agreements is reasonable and is hereby approved by the Court.

Having reviewed the Declarations of Plaintiffs' counsel and the billing records reflecting the investment of thousands of hours and millions of dollars of attorney time in the Stanford cases as a whole and in the STC Lawsuits against the Settling Defendants specifically, the Court finds that the proposed 25% fee for Plaintiffs' counsel is a reasonable percentage of the common fund (i.e. the approximate $4.9 million settlement). "The vast majority of Texas federal courts and courts in this District have awarded fees of 25%–33% in securities class actions." *Schwartz*, 2005 WL 3148350, at *31 (collecting cases). "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." Id.

A review of the *Johnson* factors that are discussed at length in the Motion and supported by Plaintiffs' attorneys' Declarations and billing statements also demonstrates that the proposed 25% fee is reasonable and should be approved. Thus, the Court further finds that the fee is reasonable based upon the Court's analysis of the *Johnson* factors.

With respect to the time and labor required, Plaintiffs' Counsel invested a tremendous amount of time and labor in this case as reflected in the Buncher, Snyder, and Morgenstern Declarations. Plaintiffs' counsel have spent over six years and thousands of hours investigating and pursuing claims against third parties, including the Settling Defendants, on behalf of the Stanford Receivership Estate and the Stanford Investors.

Neligan Foley alone has nearly 7,000 hours and $2.8 million worth of attorney and paralegal time invested in the Stanford lawsuits, including the STC Lawsuits. Neligan Foley has over 2,400 hours and over $1.1 million of unpaid attorney and paralegal time invested in the STC Lawsuits alone. See Buncher Declaration. Castillo Snyder similarly has thousands of hours and approximately $7 million of attorney and paralegal time invested in the Stanford cases overall, and over 1,200 hours and nearly $700,000 in time invested in the STC Lawsuit alone. See Snyder Declaration. Butzel Long has devoted thousands of hours of time worth several million dollars to Stanford-related matters since 2009, and has 46.5 hours invested in the STC Lawsuits alone. See Morgenstern Declaration.

   The issues presented in the STC Lawsuits were novel, difficult and complex. Several of the complex legal and factual issues are outlined in the Motion and in the briefing in connection with the Motions to Dismiss filed in the Receiver and Investor Lawsuits. Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution, and settlement of this case required significant skill and effort on the part of Plaintiffs' Counsel. Although participation in the STC Lawsuits did not necessarily preclude Plaintiffs' Counsel from accepting other employment, the Declarations reveal that the sheer amount of time and resources involved in investigating, preparing, and prosecuting the STC Lawsuits and Plaintiffs' counsel's need to investigate and understand the overall Stanford Receivership, as well as Stanford's historical operations and voluminous documentary records, significantly reduced Plaintiffs' Counsel's ability to devote time and effort to other matters.

The 25% fee requested is also below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. See *Schwartz*, 2005 WL 3148350, at *31 (collecting cases and noting that 30% is standard fee in complex securities cases). In certain lawsuits, OSIC interviewed other potential counsel who refused to handle the lawsuits without a higher percentage fee. Buncher Decl. at ¶ 36.

At the time of Settlement, the Receiver Lawsuit was set for trial on August 3, 2015. Therefore, Plaintiffs' counsel were facing pre-trial deadlines which required them to either get the claims against the Settling Defendants settled or expend significant additional resources to complete fact and expert discovery and prepare the case for trial.

The $4.9 million represents a substantial settlement and value to the Receivership given the contested legal and factual issues present in the STC Lawsuits, as well as the insurance issues discussed in the Motion and at the hearing on the Motion with respect to certain Defendants. See Motion, ¶¶ 43-46. Thus, this factor also supports approval of the requested fee.

The Declarations further reflect that Plaintiffs' Counsel have represented numerous receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford Receivership. Plaintiffs' Counsel have been actively engaged in the Stanford Receivership since its inception. Thus, the attorneys' experience, reputation and ability also support the fee award.

The nature and length of the professional relationship between the law firms and OSIC further support the fee award. Plaintiffs' attorneys have been working with OSIC

for over five years on virtually all of the major Stanford third party lawsuits brought by OSIC.

Finally, awards in similar cases, with which this Court is familiar, as well as those discussed in the *Schwarz* opinion, all support the fee award. The Court also notes that a 25% contingency fee has previously been approved as reasonable by this Court in its order approving the Receiver's agreement with OSIC regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and OSIC (the "OSIC-Receiver Agreement"). See ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); see also OSIC-Receiver Agreement, ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals). Thus, the Court finds the same 25% fee is well within the range of reasonableness for cases of the magnitude and complexity of the STC Lawsuits.

For these reasons, the Court approves the award of Plaintiffs' attorneys' fees requested in the Motion in the amount of $1,215,549.89. The Receiver is, therefore,

ORDERED to pay Plaintiffs' counsel attorneys' fees in the amount of $1,215,549.89 upon receipt of the settlement amounts from the Settling Defendants.

Signed this 27th day of August 2015.

_____
David C. Godbey
United States District Judge