# EXHIBIT 1

# SETTLEMENT AGREEMENT

This global Settlement Agreement (this "Agreement") is made and entered into as of December 15, 2015 (the "Agreement Date") between and among, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert Allen Stanford and other persons and entities pursuant to the orders of the United States District Court for the Northern District of Texas entered February 17, 2009, March 12, 2009, and July 19, 2010 in *Securities and Exchange Commission v. Stanford International Bank, Ltd. et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"); (ii) the Official Stanford Investors Committee, as defined in the order of that Court entered August 10, 2010 in the SEC Action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators of Stanford International Bank, Ltd., and Stanford Trust Company Ltd., and Marcus A. Wide and Hordley Forbes, in their capacities as the joint liquidators of Stanford Development Company, pursuant to the orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011, March 30, 2012, and October 15, 2013 (the "Antiguan Liquidators") (the Receiver, Committee, and Antiguan Liquidators are collectively referred to as "Plaintiffs"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll") (Plaintiffs, on the one hand, and Kroll, on the other hand, are together referred to in this Agreement as the "Parties," and each of those two Parties is referred to as a "Party").

WHEREAS, capitalized terms in this Agreement have the meanings given to them by the definitions set forth in Section I below or elsewhere in this Agreement.

WHEREAS, in a complaint entered February 17, 2009 in the SEC Action, the Securities and Exchange Commission alleged that Robert Allen Stanford and entities he owned or

controlled had engaged in a fraudulent scheme affecting tens of thousands of customers from over one hundred countries;

WHEREAS, the Receiver was appointed with the full power of an equity receiver at the request of the Securities and Exchange Commission in the SEC Action by an order entered February 17, 2009 which was amended by orders entered March 12, 2009 and July 19, 2010;

WHEREAS, pursuant to an order entered October 6, 2009, and subsequent orders, the Judicial Panel on Multidistrict Litigation has centralized actions concerning Stanford before the Court for pretrial proceedings;

WHEREAS, the Examiner was appointed by an order in the SEC Action entered April 20, 2009 in order to assist the Court in considering the interests of the worldwide investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any defendants in the SEC Action;

WHEREAS, the Committee was appointed to represent worldwide customers of Stanford International Bank, Ltd., who, as of February 16, 2009, had funds on deposit at Stanford International Bank, Ltd. and/or were holding certificates of deposit issued by Stanford International Bank, Ltd., pursuant to a stipulation between and among the Receiver, investors, the SEC, and the Examiner filed in the SEC Action on March 30, 2010, and an order entered in the SEC Action on August 10, 2010;

WHEREAS, the Antiguan Liquidators were appointed by orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011 and March 30, 2012, which ordered them to serve as the joint liquidators of Stanford International Bank, Ltd. and Stanford Trust Company Ltd., and an order entered October 15, 2013, which ordered them to serve as the joint liquidators of Stanford Development Company;

2

WHEREAS, in their respective proceedings, the Receiver and the Antiguan Liquidators have been appointed, among other things, to (i) act as representatives of their respective estates, (ii) collect and realize the relevant debtors' worldwide assets, (iii) pursue claims, and (iv) distribute the proceeds collected to worldwide creditors of their respective estates;

WHEREAS, the proceedings before the Court and the Eastern Caribbean Supreme Court in Antigua and Barbuda concerning Stanford have been extensive, and, together with other matters concerning Stanford, have been subject to widespread publicity;

WHEREAS, the Plaintiffs share common goals in pursuing claims for, and obtaining funds for, Persons affected by losses related to Stanford;

WHEREAS, Plaintiffs have stated their intention, absent this Settlement, to file litigation against Kroll to pursue claims concerning Stanford;

WHEREAS, on February 8, 2015, Kroll filed voluntary petitions for relief with the Bankruptcy Court for the District of Delaware under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), commencing chapter 11 cases, which are being administered under the case caption *In re Altegrity, Inc., et al.*, No. 15-10226 (Bankr. D. Del.) (Jointly Administered);

WHEREAS, on April 30, 2015, the Receiver, the Committee and a putative class of holders of certificates of deposit issued by Stanford International Bank, Ltd. filed a proof of claim in Kroll's chapter 11 case and certain of its affiliates' chapter 11 cases, which was assigned claim number 1283 (the "Chapter 11 Proof of Claim");

WHEREAS, on August 14, 2015, the Bankruptcy Court entered an order confirming a joint chapter 11 plan for Kroll (the "Chapter 11 Plan"), which became effective on August 31, 2015;

WHEREAS, the Parties desire to fully, finally, and forever compromise, and to effect a global settlement and discharge of, all claims, disputes, and issues between them, including the Chapter 11 Proof of Claim;

WHEREAS, the Parties have conducted extensive, good faith, arm's-length negotiations leading to this Agreement;

WHEREAS, based upon their independent investigation, Plaintiffs have concluded that this Agreement is fair, reasonable, and adequate, and in the best interests of Plaintiffs, Claimants, Interested Parties, and all Persons affected by wrongdoing or losses related to Stanford, and have agreed to enter into this Agreement, and to use their best efforts to effectuate this Agreement, after considering the benefits of this Agreement as well as the burden, expense, and risks of litigation;

WHEREAS, Kroll denies Plaintiffs' claims and is entering into this Agreement to avoid the burden, expense, and risks of litigation; and

WHEREAS, the Parties understand that the Examiner has reviewed this Settlement agreement and if asked by the Court, is prepared to recommend that the Settlement, the Scheduling Order, and the Bar Order and Judgment be approved and implemented;

NOW, THEREFORE, in consideration of the agreements and covenants of the Parties, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

I.   **Terms Used in this Agreement**

1.     "Antiguan Orders" means the three orders approving this Agreement, each in the specific form annexed to this Agreement as Exhibit E.

2.     "Attorneys Fees" has the meaning given to that term in paragraph 75 of this Agreement.

4

3.      "<u>Authority</u>" means any government, or governmental, administrative, or regulatory entity, agency, body, division, subdivision, department, office, official, or representative, in the United States or elsewhere.

4.      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware, provided, however, that if the bankruptcy reference is withdrawn by the United States District Court for the District of Delaware or it is determined that the United States Bankruptcy Court for the District of Delaware does not have jurisdiction over any matters relating to approval and implementation of the Settlement, "Bankruptcy Court" shall mean the United States District Court for the District of Delaware.

5.      "<u>Bar Order and Judgment</u>" means an order substantially in the form of Exhibit D to this Agreement which is to be entered by the Court finally approving the terms of this Agreement and which specifically includes, *inter alia* (i) an order barring any Settled Claims by Plaintiffs, Claimants or other Interested Parties against Kroll and the Kroll Released Parties and (ii) a provision that the Bar Order and Judgment is intended to be a final, appealable judgment of the Court within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure or alternatively the collateral order doctrine.   The Bar Order and Judgment is intended to supplement, and not replace or diminish, (i) the order of the Bankruptcy Court dated March 20, 2015, which set a deadline of April 30, 2015 for persons and entities to file proofs of claims with the Bankruptcy Court in order to participate in voting and distributions in Kroll's chapter 11 cases, and (ii) the discharge of Kroll under its Chapter 11 Plan.

6.      "<u>Claimant</u>" means any Person who has ever held a certificate of deposit, CD, depository account, or investment with Stanford.

7.     "Confidential Information" means the communications and discussions in connection with the negotiations which led to this Agreement and the Settlement.  Before Plaintiffs file the Scheduling Order, the term "Confidential Information" also includes the existence and terms of this Agreement and the Settlement.

8.     "Court" means the United States District Court for the Northern District of Texas, Judge David C. Godbey, currently presiding.

9.     "Distribution Plan" means the Receiver's plan to be utilized for distribution of the Net Settlement Amount, which shall be similar to the Receiver's Second Interim Distribution Plan in the SEC Action.

10.     "Effective Date" means the date when the conditions set forth in paragraph 36 of this Agreement have been met.

11.     "Examiner" means John J. Little, in his capacity as examiner pursuant to the order of the Court entered April 20, 2009 in the SEC Action.

12.     "Final" means unmodified after the final conclusion of all possible forms and levels of judicial review, including to the court or Authority of last resort, whether automatic or discretionary, whether by appeal or otherwise, and the final expiration of any and all time periods for all possible such review.

13.     "Forum" means any court, tribunal, or forum, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise.

14.     "Hearing" shall have the meaning set forth in the proposed Scheduling Order attached as Exhibit A to this Agreement.

15.     "Interested Parties" means any Person interested in Stanford, including but not limited to the Receiver, the Antiguan Liquidators, Stanford, the Committee and its members,

6

Claimants, and any SIPC trustee or other trustee whose appointment encompasses any matter related to any Stanford Person.

16.     "Kroll Released Parties" means Kroll Associates, Inc. and Kroll, LLC (f/k/a Kroll Inc.) and each of their past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest; and each of their respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.  Notwithstanding the foregoing, "Kroll Released Parties" shall not include any Person who is presently a named defendant in any litigation filed by any of the Plaintiffs, and shall not include any Person who becomes employed by Kroll after the Effective Date and whose liability, if any, has no factual or legal connection to Kroll as of the Effective Date and results from actions or omissions committed before becoming employed by Kroll.

17.     "Net Settlement Amount" means the Settlement Amount, minus the sum of Attorneys Fees and Plaintiffs' Share of Notice Costs.

18.     "Notice" means collectively the notice of the Settlement in the form of the long form notice (substantially in the form of Exhibit B to this Agreement) and the publication notice

(substantially in the form of Exhibit C to this Agreement) that will be published in certain major newspaper publications as set forth in the Scheduling Order and on the websites of the Receiver, everything in this paragraph to be established and maintained pursuant to the Scheduling Order and in the manner and form approved by the Court.

19.     "Notice Costs" means all costs incurred in the preparation, printing, translation, distribution, and dissemination of the Notice.

20.     "Objection Deadline" means the deadline for submitting objections to the Settlement set forth in the Scheduling Order.

21.     "Person" means any person, entity, Authority, or quasi-governmental person or entity, worldwide, of any type, including, without limitation, any individual, partnership, corporation, estate, trust, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

22.     "Plaintiffs" means the Receiver, the Committee, and the Antiguan Liquidators.

23.     "Plaintiffs Release Parties" means Plaintiffs, the Examiner, and each of their counsel.

24.     "Plaintiffs' Share of Notice Costs."  Kroll will pay the costs of mailing the Notice and translating this Agreement and its exhibits, subject to a combined cap of thirty-five thousand dollars ($35,000.00), and Plaintiffs will pay the remaining Notice Costs ("Plaintiffs' Share of Notice Costs").

25.     "Proof of Claim" means the proof of claim submitted to the Receiver or his agent, as defined in the order of the Court entered May 4, 2012 in the SEC Action.

26.    "<u>Proof of Debt</u>" means a proof of debt form in the Antiguan proceedings to liquidate Stanford International Bank, Ltd., Stanford Trust Company Ltd., and Stanford Development Company.

27.    "<u>Scheduling Order</u>" shall mean the order that, *inter alia*, schedules deadlines leading up to the Hearing, and makes provisions for the Notice.   A copy of the proposed Scheduling Order is attached as Exhibit A to this Agreement.

28.    "<u>Settled Claims</u>" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, liabilities, obligations, licenses, rights, claims, losses, offsets, warranties, costs, fees, penalties, expenses, rights of action, and demands whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal, state, foreign law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in connection with, Stanford; any certificate of deposit, CD, depository account, or investment with Stanford; the Kroll Released Parties' relationship with Stanford; the Kroll Released Parties' provision of services to Stanford; any matter that was asserted in, could have been asserted in, or relates to the SEC Action, *United States v. Stanford et al.*, No. 4:09-cr-00342 (S.D. Tex.), or any action concerning Stanford pending or commenced in any Forum; or any matter that makes a Person a Claimant.   For the sake of clarity, "Settled Claims" includes all Settled Claims which the releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by them might have affected their

decisions with respect to this Agreement and the Settlement ("Unknown Claims").  With respect

to any and all Settled Claims, the releasor agrees that the releasor shall, and shall be deemed to

have, expressly waived, released, and relinquished, any and all provisions, rights, and benefits

conferred by any law or principle, in the United States or elsewhere, which governs or limits the

release of unknown or unsuspected claims, including, without limitation, California Civil Code

§ 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Each releasor acknowledges that he, she, or it may hereafter discover facts different from, or in

addition to, those which such releasor now knows or believes to be true with respect to the

Settled Claims, but nonetheless agrees that this Agreement, including the releases in paragraphs

61-64 of this Agreement, is and will remain binding and effective in all respects.  "Unknown

Claims" include contingent and non-contingent claims, whether or not concealed or hidden,

without regard to the subsequent discovery or existence of different or additional facts.  These

provisions concerning unknown and unsuspected claims and the inclusion of "Unknown Claims"

in the definition of Settled Claims were separately bargained for and were an essential element of

this Agreement and the Settlement.  For the avoidance of doubt, Settled Claims include any

claims relating to the above matters that are filed in Kroll's chapter 11 cases.

29.    "Settlement" means the resolution of all claims, disputes, and issues in the manner

set forth in this Agreement.

30.    "Settlement Amount" means twenty-four million dollars ($24,000,000.00).

31.     "Stanford" means Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, the Stanford Financial Bldg Inc., the entities listed in Exhibit F to this Agreement, any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, the Stanford Financial Bldg Inc. on or before February 16, 2009, and each of the past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest, of any of the foregoing; and each of their respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest; and any other Person claiming (now or in the future) through or on behalf of any Person described in this paragraph.

32.     "Stanford Persons" means the defendants in the SEC Action, all entities listed in Exhibit F to this Agreement, and all entities the defendants in the SEC action own or control.

33.     "Subsidiary Liquidations" means the following liquidation proceedings that are or were subsidiary or related to the Receiver or Antiguan Liquidators:  In re Stanford International Bank, Limited et al., No. 500-11-036045-090 (Canada Queb. Super. Ct., Comm. Div., Dist. Montreal); Financial Superintendence Resolution No. 2394/2010 re: Stanford S.A. (Colombia); In re Stanford International Bank Ltd., Case No. 2015-00061, Juzgado 2 Civil del Circuito de Bogotá (Colombia); Resolution No. 09.Q.IJ.2031 re: Liquidation of Stanford Services Ecuador, S.A. (Ecuador); CNBV 211.115.11 "2009"/000/5- re: Stanford Fondos, S.A. de C.V. (Mexico); Stanford Group Suisse and Stanford International Bank, information concerning which can be found  at  http://zh.powernet.ch/webservices/inet/HRG/HRG.asmx/getHRGHTML?chnr=02030 19714&amt=020&toBeModified=0&validOnly=0&lang=2&sort=0  (Switzerland);  and  Stanford International Bank (acting by its Joint Liquidators), Applicant, and The Director of the Serious Fraud Office, Respondent (England Crim. Ct.) (Lady Justice Gloster DBE).

34.     "Taxes" means all taxes, whether federal, state, local, or other taxes related to the Settlement, and costs incurred in connection with such taxation (including, without limitation, the fees and expenses of tax attorneys and accountants).

35.     "Wampold and Marquette Actions" means *Milford Wampold et al. v. Pershing, LLC et al.*, No. C577629 (La. Dist. Ct. Baton Rouge Parish), and *Numa L. Marquette et al. v. Pershing, LLC et al.*, No. C581452 (La. Dist. Ct. Baton Rouge Parish).

## II.     Effective Date and Payment

36.     Unless terminated earlier as provided in Section XIV of this Agreement, the Settlement shall become effective ten (10) business days after the occurrence of all of the following events:

        a.      the Bankruptcy Court has entered the Bankruptcy Court Approval Order as described in paragraph 101 of the Agreement and such order has become Final;

b.      the Agreement has been approved in all respects by the Court;

c.      the Eastern Caribbean Supreme Court in Antigua and Barbuda has entered the Antiguan Orders, and the Antiguan Orders have become Final;

d.      the Court has entered the Bar Order and Judgment substantially in the form of Exhibit D to this Agreement, including, without limitation, the release of Settled Claims by Plaintiffs Release Parties and Claimants described in Section X of this Agreement and the bar order and contribution provisions described in Sections X and XI of this Agreement, and the Bar Order and Judgment has become Final; and

e.      the courts in the *Wampold* and *Marquette* Actions have dismissed Kroll from those actions with prejudice.

37.    After the Settlement has become effective on the Effective Date, Kroll has the following payment obligations, and no other payment obligations after the Effective Date:

a.      Ten (10) business days after the Effective Date, Kroll shall transmit or cause the transmission to the Receiver via wire, in accordance with wire instructions the Receiver must provide to Kroll within five (5) business days after the Effective Date, of the Settlement Amount.

b.      Other than the payments described in paragraphs 37(a) and 48-49 of this Agreement, following the Effective Date, neither Kroll nor the Kroll Released Parties will pay any other amounts for the benefit of the Settled Claims, including without limitation, funds to pay Plaintiffs, Plaintiffs Release Parties, Claimants, Taxes, and any administrative and notice expenses associated with the Settlement.  Plaintiffs, however, are not hereby assuming any Tax obligations that Kroll or the Kroll Released Parties may themselves incur in connection with the Settlement.

13

38.     Except as provided by order of the Court pursuant to this Agreement, no one among Plaintiffs or Plaintiffs Release Parties shall have any interest in, or interest in any portion of, the Settlement Amount or the Net Settlement Amount.

## III.     Use of Settlement Amount

39.     The Settlement Amount shall be maintained by the Receiver under the jurisdiction of the Court and then paid, solely at such times, in such manner, and to such Persons as set forth in this Agreement or as directed by subsequent orders of the Court.  Subject to Court approval by written order, the Settlement Amount may be used:

     a.     to reimburse the Receiver for Plaintiffs' Share of Notice Costs;

     b.     to pay Attorneys Fees, consistent with Section XIII of this Agreement;

     c.     to pay all the fees and expenses reasonably and actually incurred by the Receiver in connection with performing his duties under paragraph 3 of the Scheduling Order and administering and distributing the Settlement;

     d.     to pay Taxes; and

     e.     to distribute the Settlement Amount pursuant to the Distribution Plan and as directed by the Court.

40.     The Receiver shall be responsible for all Taxes that may be due with respect to the amounts paid by Kroll to the Receiver pursuant to this Agreement (including any earnings thereon), for the period beginning on the date Kroll pays such amounts to the Receiver and ending on the date that all such amounts have been distributed or otherwise disbursed, and shall file, or cause to be filed, all tax returns that are required to be filed in respect thereof.  Kroll shall have no responsibility for any Taxes due with respect to such amounts.  Each party is relying on its own tax counsel's advice.

14

41.     Kroll shall have no liability, obligation, or responsibility for the investment, disbursement, or other administration or oversight of the Settlement Amount or any portion thereof.  Each of the Plaintiffs, Claimants, and Interested Parties is and shall be limited solely to the Settlement Amount for the satisfaction of all Settled Claims against the Kroll Released Parties as provided in this Agreement.

## IV.     Motion for Scheduling Order and Bar Order and Judgment

42.     As soon as is practical after the Bankruptcy Court has entered the Bankruptcy Court Approval Order, Plaintiffs shall file a motion requesting that the Court enter the Scheduling Order and the Bar Order and Judgment approving this Agreement.  The Parties shall jointly draft and agree on the language of the motion papers to accomplish the foregoing.

43.     The Scheduling Order shall, *inter alia*:

a.     Provide reasonable notice to all Interested Parties;

b.     Set the Objection Deadline by which the Interested Parties must file with the Court any objections to the Settlement or the Bar Order and Judgment;

c.     Set a date by which the Parties may file a response to any such objections; and

d.     Provide for a Hearing on the Settlement and Bar Order and Judgment, and any objections by any Interested Parties.

44.     The motion papers shall ask the Court, *inter alia*:

a.     To approve this Agreement without modification;

b.     To permanently bar and enjoin Plaintiffs, Claimants, any Interested Parties, and/or any Person, and all of their respective heirs, trustees, executors, administrators, agents, successors and assigns, from, directly or indirectly, or through a third party, instituting, reinstituting, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting,

15

collaborating in, or otherwise prosecuting, against Kroll or any of the Kroll Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, of any nature (including but not limited to litigation, arbitration, or any other legal proceeding, in any Forum), whether individually, derivatively, on behalf of a class, or otherwise, concerning, arising from, in connection with, or related to the Settled Claims, whether in the Court, in any other Forum, or otherwise, provided, however, that the Bar Order and Judgment shall not preclude any action to enforce the terms of this Agreement or any actions or claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents;

c.      To order that this Agreement and the releases set forth herein are final and binding upon the Parties; and

d.      To include a provision in the Bar Order and Judgment that it is intended to be a final, appealable judgment of the Court within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure or alternatively the collateral order doctrine.

45.      The Parties shall take all reasonable steps to advocate for the Agreement.

46.      No Party shall challenge the fairness of the Settlement.  No Party will encourage or assist any Interested Party in challenging the Settlement.

47.      The Parties shall use their best efforts to obtain the Scheduling Order and the Bar Order and Judgment.

**V.      <u>Notice of Settlement</u>**

48.      The Receiver shall be responsible for the reproduction and distribution of the Notice, substantially in the forms attached to this Agreement as Exhibits B and C, in the manner provided in the Scheduling Order or as otherwise approved by the Court.  However, Kroll is responsible for paying the cost of mailing the Notice and translating this Agreement and its

exhibits up to a combined cap of thirty-five thousand dollars ($35,000.00).   To effectuate this agreement, within ten (10) days after entry of the Scheduling Order, Kroll shall pay the Receiver via wire transfer the amount of thirty-five thousand dollars ($35,000.00) on the condition that the Receiver provides Kroll's counsel with all information necessary to effectuate the deposit within five (5) days after entry of the Scheduling Order.

49.     Within thirty (30) days following completion of the translation and mailing, the Receiver will notify Kroll of the actual costs incurred for those activities.   In the event that the actual costs do not exceed thirty-five thousand dollars ($35,000.00), the Receiver will, within ten (10) days of the notice to Kroll, return the difference to Kroll via wire transfer pursuant to instructions to be provided by Kroll within five (5) days of the Receiver's notice.

50.     No Interested Party or any other Person shall have any recourse against Kroll or the Kroll Released Parties with respect to any claims that may arise from any failure in the notice process.

**VI.**     **Application for Antiguan Orders**

51.     On or reasonably soon after the date that Plaintiffs file their motion papers in the Court pursuant to paragraph 42, the Antiguan Liquidators shall file applications for entry of each of the Antiguan Orders.   The Antiguan Liquidators shall make additional timely filings, and use their best efforts, in order to obtain entry of each of the Antiguan Orders.

52.     The Receiver, the Committee, and Kroll may, but are not obligated to, submit papers in connection with the application for entry of the Antiguan Orders.   Neither Kroll nor Plaintiffs may oppose entry of the Antiguan Orders.

**VII.    Motion for Entry of Bar Order and Judgment**

53.    In connection with the Hearing to be held by the Court on the motion for final approval of this Agreement, Plaintiffs shall request that the Court enter the Bar Order and Judgment substantially in the form attached to this Agreement as Exhibit D and which, *inter alia*:

a.    finally approves this Agreement and its terms as being a fair, reasonable and adequate settlement;

b.    sets forth the releases and covenant not to sue contained in Section X of this Agreement and enjoins pursuit of any claim covered by the releases;

c.    sets forth the Protection Against Contribution contained in Section XI;

d.    permanently bars and enjoins Plaintiffs, Claimants, any Interested Parties, and/or any Person, and all of their respective heirs, trustees, executors, administrators, agents, successors and assigns, from, directly or indirectly, or through a third party, instituting, reinstituting, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, collaborating in, or otherwise prosecuting, against Kroll or any of the Kroll Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, of any nature (including but not limited to litigation, arbitration, or any other legal proceeding, in any Forum), whether individually, derivatively, on behalf of a class, or otherwise, concerning, arising from, in connection with, or related to the Settled Claims, whether in the Court, in any other Forum, or otherwise, provided, however, that the Bar Order and Judgment shall not preclude any action to enforce the terms of this Agreement or any actions or claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents; and

18

e.       determines that there is no just reason for delay and directs that the Bar Order and Judgment shall be final and appealable within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure or alternatively the collateral order doctrine; and

f.       reserves continuing and exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement, provided, however, that the Bankruptcy Court shall have exclusive jurisdiction over all matters related to the Bankruptcy Court Approval Order, to Kroll's chapter 11 cases, and to Kroll's Chapter 11 Plan.

## VIII.   <u>Distribution Plan</u>

54.       The Receiver shall be solely responsible for implementing the Distribution Plan.

55.       After the Court has approved the Distribution Plan, the Bar Order and Judgment is Final, the Settlement has become effective on the Effective Date, the Settlement Amount has been paid to the Receiver, and the Court has decided Plaintiffs' motion for Attorneys Fees, the Net Settlement Amount shall be distributed to such Claimants in such amounts as described in the Distribution Plan or per such other terms that the Court may, as permitted by this Agreement, direct, in the Bar Order and Judgment or other order of the Court.

56.       The entire Net Settlement Amount will be distributed pursuant to the Distribution Plan.

57.       The Distribution Plan is a matter separate and apart from the Settlement between the Parties, and any decision or matter concerning the Distribution Plan shall not affect the validity or finality of this Agreement or the Settlement.  Accordingly, no Party may cancel or terminate this Agreement or the Settlement, and this Agreement and the Settlement shall not be impugned or denied recognition or enforcement, based on anything relating to or concerning the

Distribution Plan. Nothing in this paragraph 57 is intended to nor does have any impact on Kroll's rights under Section XIV of this Agreement.

58.     Kroll and the Kroll Released Parties shall not have any responsibility, obligation, or liability whatsoever with respect to the Distribution Plan; the administration of the Settlement; the investment or allocation of the Net Settlement Amount or any other amount in connection with the Settlement; the payment or withholding of Taxes that may be due or owing by the Receiver or any recipient of funds from the Settlement Payment; the determination, administration, calculation, reviewing, or challenging of claims to the Net Settlement Amount or any other amount in connection with this Agreement; or any losses, attorneys fees, expenses, vendor payments, expert payments, or other costs in connection with any of the foregoing matters. Plaintiffs fully, finally, and forever release, relinquish, and discharge Kroll and the Kroll Released Parties from any and all such liability.

59.     The Plaintiffs will ask the Court to include in the Bar Order and Judgment a provision stating that a Claimant whose claim is determined to be invalid shall have no recourse of any type whatsoever against the Parties or the Kroll Released Parties, or their agents, but may solely object to such determination before the Court.

## IX.     Information on Claimants, Claims Process, Liquidation and Receivership

60.     If Kroll reasonably determines that additional information related to, arising out of, or concerning Claimants, Interested Parties, the claims process associated with the U.S. receivership, or the Distribution Plan is necessary to effectuating this Agreement or the Settlement, Kroll may request such information from Plaintiffs, and Plaintiffs will consider such requests and will provide such information if reasonably able to do so, and if in the Plaintiffs' judgment providing the information requested is reasonably necessary to effectuating the Agreement or Settlement, does not unreasonably burden the privacy interests of Plaintiffs or

20

third parties, and does not invade privileges owned or entrusted to Plaintiffs.  Plaintiffs will consider such requests in a timely fashion, but such requests shall not delay the consummation of this Settlement nor shall they be deemed to vitiate the Settlement after it becomes effective on the Effective Date.  Any disputes about such requests will be submitted to the Court for determination.

**X.      Releases, Covenant Not to Sue, and Permanent Injunction**

61.     In addition to the provisions of the Bar Order and Judgment, and provided that the Court approves this Agreement, then effective upon the Effective Date, each of the Plaintiffs and the Plaintiffs Release Parties, and all others on whose behalf the Plaintiffs have been empowered to represent or act by any court order or applicable law, including the Stanford Persons and Claimants; and each of their past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest; and each of their respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest; and any other Person claiming (now or in the future) through or on behalf of any Person described in this paragraph, fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Kroll and the Kroll Released Parties.

62.     In addition to the effect of the Bar Order and Judgment entered in accordance with this Agreement, and provided that the Court approves this Agreement, then effective upon the Effective Date, Kroll fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Plaintiffs Release Parties.

63.     Notwithstanding anything to the contrary, in this Agreement or otherwise, the foregoing releases do not release the Parties' rights and obligations under this Agreement or the Settlement or bar the Parties from enforcing or effectuating this Agreement or the Settlement. Nor do the foregoing releases bar or release any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

64.     Plaintiffs covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, collaborate in, or otherwise prosecute, against the Kroll Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, or otherwise, concerning the Settled Claims, whether in the Court, in any other Forum, or otherwise.  Kroll covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, collaborate in, or otherwise prosecute, against Plaintiffs Release Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, or otherwise, concerning the Settled Claims, whether in the Court, in any other Forum, or otherwise.

65.     The Bar Order and Judgment shall include a provision that permanently bars and enjoins Plaintiffs, Claimants, any Interested Parties, and/or any Person, and all of their respective

heirs, trustees, executors, administrators, agents, successors and assigns, from, directly or indirectly, or through a third party, instituting, reinstituting, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, collaborating in, or otherwise prosecuting, against Kroll or any of the Kroll Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, of any nature (including but not limited to litigation, arbitration, or any other legal proceeding, in any Forum), whether individually, derivatively, on behalf of a class, or otherwise, concerning, arising from, in connection with, or related to the Settled Claims, whether in this Court, in any other Forum, or otherwise, provided, however, that the Bar Order and Judgment shall not preclude any action to enforce the terms of this Agreement or any actions or claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

66.    All payments pursuant to the Distribution Plan shall:

a.    be made by check bearing on the front "**SETTLEMENT CHECK**" and on the back "I accept this check **in full and final settlement and release** of all claims against Kroll and the Kroll Released Parties related to Stanford and consent to the jurisdiction of the U.S. District Court for the Northern District of Texas for all purposes related to such claims, expressly waiving any different jurisdiction based on my current or future domicile."

b.    be accompanied by a separate document, which may be a tear sheet to which the check is connected, stating:  "A global settlement has been reached by (i) Ralph S. Janvey, as Receiver for Robert Allen Stanford and related persons and entities, (ii) the Official Stanford Investors Committee, (iii) Marcus A. Wide and Hugh Dickson, as joint liquidators of Stanford International Bank and Stanford Trust Company, Ltd., and Marcus A. Wide and

Hordley Forbes, as joint liquidators of Stanford Development Company, and (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. ("Kroll").  The U.S. District Court for the Northern District of Texas has issued a final Bar Order and Judgment approving of the settlement and permanently barring all claims against Kroll and the Kroll Released Parties related to Stanford, as described in the Notice and other documents available at www.stanfordfinancialreceivership.com.  The enclosed check is in full and final settlement and release of all claims against Kroll and the Kroll Released Parties related to Stanford and its deposit indicates your consent to the jurisdiction of the U.S. District Court for the Northern District of Texas for all purposes related to such claims, expressly waiving any different jurisdiction based on your current or future domicile."

67.     Plaintiffs will ask the Court to include in the Bar Order and Judgment a provision stating that each Claimant shall be bound by the Bar Order and Judgment, including its provisions concerning the release and injunction of claims by Interested Parties, regardless of whether he/she/it receives, deposits, or endorses any check.

## XI.     Protection Against Contribution

68.     The Bar Order and Judgment shall include a provision that permanently bars, enjoins, and restrains any Person from commencing, prosecuting, or asserting against Kroll or any Kroll Released Party, whether individually, derivatively, on behalf of a class, or otherwise, whether in this Court or in any other Forum or otherwise, any claim, however denominated, for contribution, indemnity, or any other claim where the injury to such Person is such Person's liability to any Plaintiff, Claimant, or Interested Party that arises out of a judgment or settlement obtained by any Plaintiff, Claimant, or Interested Party (or anyone else to the extent that the claim on which it obtains a judgment or settlement was owned by any Plaintiff, Claimant or Interested Party) against such Person that in any way relates to, is based upon, arises from, or is

connected with Stanford, the SEC Action, the *Wampold* and *Marquette* Actions, or any Settled Claim, except that there shall be no bar of any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

69.     To the extent any Person is barred, enjoined, or restrained by paragraph 68 of this Agreement, such Person (the "Non-Settlor") shall be entitled to the reduction of any verdict, judgment, or award against it on a claim concerning Stanford, in any Forum, to the extent that such Forum finds that the Non-Settlor and the Kroll Released Parties were joint tortfeasors respecting such claim.  Such reduction shall be the greater of:  (a) an amount that corresponds to the percentage of responsibility of the Kroll Released Parties, or (b) such other amount as may be required by law.

70.     In no event shall the Kroll Released Parties be responsible to pay any amount to any Person based on the amount or method or absence of reduction of any verdict, judgment, or award on a claim concerning Stanford.

71.     The Bar Order and Judgment shall include provisions corresponding to paragraphs 68-70 of this Agreement.

## XII.   Related Actions

72.     The Receiver agrees to provide notice to the plaintiffs in the *Wampold* and *Marquette* Actions, within ten (10) business days, of when the Effective Date conditions set forth in paragraph 36(a)-(d) of this Agreement are satisfied.

73.     The Parties understand that per the terms of a side letter, the plaintiffs in the *Wampold* and *Marquette* Actions have agreed to file Stipulations of Dismissal that dismiss Kroll from those actions with prejudice within five (5) days of receiving the notice described in

paragraph 72 above that the Effective Date conditions set forth in paragraph 36(a)-(d) of this Agreement are satisfied.

74.     The Settlement shall be conclusive proof of the resolution of any and all proofs of claim related to the Settled Claims that have been or are subsequently filed with the Bankruptcy Court in Kroll's chapter 11 cases, including the Chapter 11 Proof of Claim.

**XIII.   Attorneys Fees and Expenses**

75.     Plaintiffs will move the Court to order that Plaintiffs' counsel be awarded from the Settlement Amount attorneys fees in a total amount of no more than six million dollars ($6,000,000.00) and reimbursement of expenses (other than Plaintiffs' Share of Notice Costs) in a total amount of no more than twenty-five thousand dollars ($25,000.00) (together, "Attorneys Fees").  The Attorneys Fees will be paid out of the Settlement Amount, and the Kroll Released Parties have no obligation to pay any monies other than the Settlement Amount.

76.     The approval, payment and allocation of Attorneys Fees in connection with, relating to, or arising out of the Agreement and the Settlement, to any Person is a matter separate and apart from the Settlement between the Parties.  The application by Plaintiffs' counsel for Attorneys Fees is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement.  Any award of Attorneys Fees shall be set forth in an order separate from the Bar Order and Judgment such that any appeal of any Attorneys Fees award shall not constitute an appeal of the Bar Order and Judgment and any appeal of the Bar Order and Judgment shall not constitute an appeal of any Attorneys Fees award.

77.     In the event the Settlement is not terminated, but any award of Attorneys Fees is reversed or modified (whether by the Court, on appeal, or otherwise), then Plaintiffs' counsel shall comply with any Court orders regarding return of any such award (if it has already been

26

paid) to be paid to the Receiver for distribution pursuant to the Distribution Plan the portion of Attorneys Fees consistent with such reversal or modification, together with any interest actually earned thereon.  Kroll has no interest in any such fees, or any involvement in how they would be returned or distributed.

78.     Any decision or matter concerning such Attorneys Fees shall not affect the validity or finality of this Agreement or the Settlement.  Plaintiffs may not cancel or terminate this Agreement or the Settlement, and this Agreement and the Settlement shall not be impugned or denied recognition or enforcement, based on anything relating to or concerning Attorneys Fees.

79.     Kroll and the Kroll Released Parties shall not have any responsibility, obligation, or liability whatsoever with respect to Attorneys Fees.  Notwithstanding anything to the contrary, in this Agreement or otherwise, Kroll and the Kroll Released Parties shall have no obligation to pay or reimburse any Attorneys Fees incurred by or on behalf of any Plaintiff or Plaintiffs Release Party, or any representative, trustee, or subrogee of any Plaintiff or Plaintiffs Release Party.

**XIV.   Option to Terminate this Agreement and Stay of Proceedings**

80.     Notwithstanding anything to the contrary, set forth in this Agreement or otherwise, Kroll has, before the Effective Date, the right but not the obligation to terminate this Agreement and the Settlement, to be exercised in its sole and absolute discretion, by sending notice to Plaintiffs, by the means set forth in paragraph 100 of this Agreement, if any of the following occur (collectively, the "Termination Events"):

a.     the Court declines to enter the Scheduling Order;

b.     the Court declines to enter the Bar Order and Judgment;

       c.       the Eastern Caribbean Supreme Court in Antigua and Barbuda declines to enter the Antiguan Orders;

       d.       within six months after the motion requesting entry of the Bar Order and Judgment is filed, the Court has not ruled on whether or not to enter the Bar Order and Judgment, or within six months after the motions requesting entry of the Antiguan Orders are filed, the Eastern Caribbean Supreme Court in Antigua and Barbuda has not ruled on whether or not to enter the Antiguan Orders;

       e.       the Scheduling Order, the Bar Order and Judgment, or any of the Antiguan Orders is withdrawn, rescinded, reversed, modified, or abrogated, on appeal or otherwise, or does not become Final;

       f.       any Authority, or any Forum, of any type, in the United States or elsewhere, indicates that it will, or will attempt to, not recognize, not give effect to, frustrate, or undermine, any part of, or any matter concerning, the Agreement, the Settlement, the Scheduling Order, the Bar Order and Judgment, or any of the Antiguan Orders;

       g.       the plaintiffs in the *Wampold* Action or the *Marquette* Action do not comply with the terms of the side letter referred to in paragraph 73 of the Agreement or, after such compliance, the court declines in the *Wampold* Action or in the *Marquette* Action to dismiss Kroll with prejudice; or

       h.       any Settled Claim is filed or otherwise commenced against Kroll in any jurisdiction outside of the United States.

81.      Other than the Termination Events, no other event triggers Kroll's termination rights.

82.      If Kroll terminates the Agreement pursuant to paragraph 80 of this Agreement:

a.     the Bar Order and Judgment, the Scheduling Order, the Antiguan Orders, this Agreement and the Settlement shall be null and void and of no effect, except paragraphs 82, 89, 90, 92, 97, 99, 101-104, 106, and 110-11 of this Agreement, and any definitions in Section I of this Agreement necessary to interpret those paragraphs;

b.     Kroll shall be responsible to pay the Receiver:

(i)     if the amount of Plaintiffs' Share of Notice Costs that Plaintiffs actually incurred did not exceed two hundred and fifty thousand dollars ($250,000.00), the amount necessary to make the Receiver whole for 50% of such costs, or

(ii)     if the amount of Plaintiffs' Share of Notice Costs that Plaintiffs actually incurred exceeded two hundred and fifty thousand dollars ($250,000.00), the amount necessary to make the Receiver whole for 50% of the first two hundred and fifty thousand dollars ($250,000.00) of such costs and 100% of the portion of such costs that exceeds two hundred and fifty thousand dollars ($250,000.00);

c.     the Motion, Bar Order and Judgment, the Scheduling Order, the Antiguan Orders, this Agreement, the Settlement, and such termination shall not be admissible in any action and shall not be deemed to prejudice any objections, arguments, or defenses that Kroll may have concerning the Settled Claims; and

d.     the Motion, Bar Order and Judgment, the Scheduling Order, the Antiguan Orders, this Agreement, the Settlement, and such termination shall not be admissible in any action and shall not be deemed to prejudice any claims that Plaintiffs may have concerning the Settled Claims.

83.     Other than to effectuate this Agreement and the Settlement, all matters between the Parties hereby are and shall be stayed to the extent they are not already stayed.

29

**XV.**   **Representations and Warranties**

84.   <u>Information on Other Actions</u>:   Plaintiffs represent and warrant that to their knowledge, the Stanford Persons are not as of the Agreement Date subject to any receivership, liquidation, bankruptcy, or similar proceedings, in the United States or elsewhere, other than the receivership created by the orders of the Court entered February 16, 2009, March 12, 2009, and July 19, 2010 in the SEC Action, which appointed the Receiver; the liquidation proceedings created by the orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011, March 30, 2012, and October 15, 2013, which appointed the Antiguan Liquidators; a liquidation proceeding in Antigua involving the Bank of Antigua, for which the joint liquidators are Stuart MacKelier and Gwynn Hopkins of Zolfo Cooper BVI, In re Bank of Antigua, Eastern Caribbean Supreme Court in the High Court of Antigua and Barbuda, Claim No.: ANUHCV2013/0634; liquidation proceedings in Antigua involving Maiden Island Holdings Ltd., Gilbert Resorts Development Limited, and Stanford Hotel Properties Limited, for which the joint liquidators are Marcus Wide and Hordley Forbes, In re Maiden Island Holdings Limited, Eastern Caribbean Supreme Court in the High Court of Antigua and Barbuda, Claim No.: ANUHCV2013/0583, In re Stanford Development Limited, Eastern Caribbean Supreme Court in the High Court of Antigua and Barbuda, Claim No.: ANUHCV2012/0753, and In re Gilbert Resorts Development Limited, Eastern Caribbean Supreme Court in the High Court of Antigua and Barbuda, Claim No.: ANUHCV2012/0753; and the Subsidiary Liquidations.  Plaintiffs  do not make any representation that the foregoing proceedings are in fact the only receiverships, liquidations, or bankruptcies, or similar proceedings involving the Stanford Persons.  Except for willful misrepresentations, the representations in this provision will not affect the validity of this Agreement.

85.    No Past Claims, Assignment, Encumbrance, or Transfer:  Plaintiffs represent and warrant that they have not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred the Settled Claims against Kroll or the Kroll Released Parties except that the Receiver has sold or transferred the following entities:  (i) on or about December 20, 2011, the Receiver sold 100% of the shares of the Ecuadorian entities Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A. and Stanford Group Casa de Valores, S.A. to a group of Ecuadorean businessmen represented by Dr. Alvaro Paez; (ii) on March 31, 2010, the Receiver sold 100% of the shares of the Panamanian entities Stanford Bank (Panama) S.A. and Stanford Casa de Valores, S.A. to Strategic Investors Group Inc. represented by George F. Novey, who immediately amended the corporate name to Balboa Bank & Trust; and (iii) on October 18, 2010, the Receiver sold 100% of the shares of the Peruvian entity Stanford Group Peru S.A.B. to Peruvian businessmen represented by Alberto Carrera Lung.  The Receiver controlled either the holding entities or shares nominally owned by Allen Stanford of those entities, and was administratively recognized by the regulators of said entities.

86.    The Receiver's and the Antiguan Liquidators' Interest in Claims:  The Receiver and the Antiguan Liquidators represent and warrant that the Receiver and the Antiguan Liquidators have in their spheres of authority the sole and exclusive right, power, and authority to enter into and execute this Agreement on behalf of their respective Stanford estates, and to receive benefits as specified in this Agreement.

87.    The Committee's Interest in Claims:  The Committee represents and warrants that it has in its sphere of authority the sole and exclusive right, power, and authority to enter into and execute this Agreement on behalf of its respective constituents, and to receive benefits as specified in this Agreement.

31

88.   <u>No Authorization of Other Proceedings</u>:  The Receiver represents and warrants that he will not aid or encourage the assertion of any Settled Claim against the Kroll Released Parties by any entity or person involved in the Subsidiary Liquidations in Canada, Ecuador, Mexico, or Switzerland.  The Antiguan Liquidators represent and warrant that they will not aid or encourage the assertion of any Settled Claim against the Kroll Released Parties by Maiden Island Holdings Ltd., Gilbert Resorts Development Limited, Stanford Hotel Properties Limited, or the Subsidiary Liquidations in Colombia and the United Kingdom.

89.   <u>Authority</u>:  Subject to paragraph 101 of this Agreement, all persons executing this Agreement, or any related documents, represent and warrant that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms.  The Committee represents and warrants that the Committee has approved this Agreement in accordance with the By-Laws of the Committee.

## XVI.  <u>No Admission of Fault or Wrongdoing</u>

90.   There are no stipulated facts between the Parties concerning the Settled Claims. This Agreement, whether or not consummated, the Settlement, the Scheduling Order, the Bar Order and Judgment, their terms and provisions, the negotiations, proceedings, and agreements connected to them, and all papers in support of them, and the documents and statements referred to in them:

a.   are not, and shall not be described, deemed, invoked, offered, received, construed, or interpreted, as a presumption, an admission, a concession, or evidence, of any fact, claim, wrongdoing, fault, error, negligence, violation, liability, loss, injury, damages, or deficiency concerning any defense; and

32

b.      shall not be discoverable or admissible, or used by any Party, in any action or proceeding for any reason, whether in the Court, in any other Forum, or otherwise, other than to enforce or effectuate this Agreement, the Settlement, the Scheduling Order, or the Bar Order and Judgment, or in connection with any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

## XVII.  **Non-Disparagement and Confidentiality**

91.     Each Party covenants that neither it, nor anyone else on its behalf or with its consent, shall make, publish, instigate, assist, or participate in any statement (in oral, written, electronic, or any other form, and whether or not legally constituting a cause of action) which (i) would disparage, denigrate, ridicule, libel, or slander the other Party, (ii) would expose the other Party to hatred, contempt, embarrassment, or ridicule, or (iii) is otherwise negative or derogatory concerning the other Party.  Nothing in this Agreement shall prevent the Receiver from reporting his activities to the Court, the Examiner, and the SEC, or from responding as necessary to inquiries from the Court and other Authority; or from carrying out any of his duties under the Second Amended Order Appointing Receiver (or other order addressing the scope of the Receiver's duties).  Nothing in this Agreement shall prevent the Antiguan Liquidators from reporting their activities to the Eastern Caribbean Supreme Court in Antigua and Barbuda or from responding as necessary to inquiries from that court and other Authority; or from carrying out any of their duties under their appointing orders (or other order addressing the scope of their duties).

92.     The Parties will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to any non-Party except (i) a Party may disclose Confidential Information pursuant to a legal

obligation, court order, or lawfully issued subpoena, but only after providing prompt notice to the other Party so that, to the extent practicable, the other Party has time, before disclosure of any Confidential Information, to seek and obtain a protective order preventing or limiting disclosure; (ii) a Party may disclose Confidential Information based on specific consent from the other Party; (iii) Confidential Information may be used and disclosed as needed to enforce or effectuate the Agreement, the Settlement, the Scheduling Order, or the Bar Order and Judgment; and (iv) Kroll may disclose Confidential Information to the Kroll Released Parties, to the insurers, auditors, and accountants of Kroll and the Kroll Released Parties, and in its chapter 11 cases.  Notwithstanding anything else, in this Agreement or otherwise, consent to disclosure may be transmitted by e-mail.

93.     In addition to the provisions of paragraphs 91 and 92 of this Agreement, Plaintiffs will not, except in notices pursuant to the Court's approval or except as otherwise provided by this Agreement, the Scheduling Order, or the Bar Order and Judgment, discuss or refer to the Agreement, the Settlement, or Kroll (including any of its current or former employees or agents), in or with any press, newspapers, magazines, media, blogs, web-based services, or electronic social networks, or similar vehicles for information dissemination.

## XVIII. Miscellaneous

94.     Final and Complete Resolution:  The Parties intend this Agreement and the Settlement to be and constitute a final, complete, and worldwide resolution of all matters between the Parties, the Kroll Released Parties, the Plaintiffs Release Parties, the Claimants, and the Interested Parties, and this Agreement, including its exhibits, shall be interpreted to effectuate this purpose.  The Parties agree not to assert in any Forum that the other Party violated Rule 11 of the Federal Rules of Civil Procedure, or litigated, negotiated, or otherwise engaged in conduct in bad faith or without a reasonable basis.

34

95. <u>Prior Agreements</u>: The Confidentiality Agreements effective May 14, 2012 and February 5, 2013 shall continue in effect, except as expressly modified by paragraph 92 of this Agreement. Unless this Agreement is terminated, Plaintiffs will not challenge any of Kroll's confidentiality designations pursuant to the Confidentiality Agreements effective May 14, 2012 and February 5, 2013.

96. <u>Binding Agreement</u>: This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, transferees, and assigns. However, no Party may assign any of its rights or obligations under this Agreement without the express written consent of the opposing Party.

97. <u>Disclaimer of Reliance</u>: Each Party agrees and acknowledges that in negotiating and entering into this Agreement, the Party has not relied on, and has not been induced by, any representation, warranty, statement, estimate, communication, or information, of any nature whatsoever, whether written or oral, by or concerning any other Party, any agent of any other Party, or otherwise, including, but not limited to, any relating to Stanford, any certificate of deposit, CD, depository account, or investment with Stanford, Plaintiffs, Claimants, the Kroll Released Parties, the Kroll Released Parties' relationship with Stanford, the Kroll Released Parties' services to Stanford, the Settled Claims, the merit or lack of merit or existence or non-existence of any of the Settled Claims, any documents or information of or concerning the Kroll Released Parties, Stanford, or Plaintiffs, Claimants, or any tax consequences of this Agreement, except as set forth in this Agreement. The Parties have had an opportunity to consult with their attorneys and advisors, have considered the advantages and disadvantages of negotiating and entering into this Agreement, and have relied solely on their own judgment in negotiating and entering into this Agreement. The Parties waive any and all challenges to this paragraph.

98.   <u>Third-Party Beneficiaries</u>:  This Agreement is not intended to and does not create rights enforceable by any Person other than the Parties and the following third party beneficiaries, who may enforce the provisions of this Agreement and the Settlement that benefit them:  the Kroll Released Parties, the Plaintiffs Release Parties, and the beneficiaries of paragraph 69 of this Agreement.  There are no other third-party beneficiaries.

99.   <u>Negotiation, Drafting, and Construction</u>:  The Parties agree and acknowledge that they have reviewed and cooperated in the preparation of this Agreement, that no Party should or shall be deemed the drafter of this Agreement or any provision hereof, and that any rule, presumption, or burden of proof that would construe this Agreement, any ambiguity, or any other matter, against the drafter shall not apply and is waived.  The Parties enter into this Agreement freely, after good faith, arm's-length bargaining, with the advice of counsel, and in the absence of coercion, duress, and undue influence.  The titles and headings in this Agreement are not part of this Agreement and shall not bear on the meaning of this Agreement.  The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation." The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense.  Words in the masculine, feminine, or neuter gender shall include any gender.  The singular shall include the plural and vice versa.  "Any" shall be understood to include and encompass "all," and "all" shall be understood to include and encompass "any."

100.   <u>Notice</u>:  Any notices, documents, or correspondence of any nature required to be sent pursuant to this Agreement shall be transmitted by both e-mail and Federal Express, to the following recipients, and deemed transmitted upon the sending of the e-mail and receipt by Federal Express:

36

If to Kroll:

        Kroll, LLC
        Office of the General Counsel
        600 Third Avenue
        New York, NY 10016
        Tel:  (212) 593-1000

        and

        Steven S. Sparling
        Kramer Levin Naftalis & Frankel LLP
        1177 Avenue of the Americas
        New York, New York 10036
        Tel:  212-715-7736
        ssparling@kramerlevin.com

If to Plaintiffs:

        Edward C. Snyder
        Castillo & Snyder PC
        Bank of America Plaza
        300 Convent Suite 1020
        San Antonio, Texas 78205-3789
        Tel:  (210) 630-4214
        esnyder@casnlaw.com

        and

        Mark R. Murphy
        Davis & Santos, Attorneys & Counselors, P.C.
        The Weston Centre
        112 E. Pecan Street Suite 900
        San Antonio, Texas 78205
        (210) 853-5882
        mmurphy@dslawpc.com

        and

        Ralph S. Janvey
        Krage & Janvey, LLP
        2100 Ross Avenue
        Suite 2600
        Dallas, Texas 75201
        (214) 969-7500
        rjanvey@kjllp.com

Each Party can change its addressee information set forth above, provided that it sends a notice of such change to the other Party by the means set forth in this paragraph.

101.   <u>Bankruptcy Court Approval</u>:   Notwithstanding anything to the contrary, in this Agreement or otherwise, all of Kroll's obligations under this Agreement are subject to and contingent upon the approval of this Agreement by the Bankruptcy Court as set forth herein. Kroll shall expeditiously seek an order of the Bankruptcy Court approving this Agreement and authorizing Kroll to perform under this Agreement to the extent consistent with the Chapter 11 Plan (meaning that the Settlement Amount and costs of the settlement under this Agreement are paid by one or more third parties and not by Kroll or the general unsecured claims pool established under Kroll's Chapter 11 Plan) (the "Bankruptcy Court Approval Order").   If the Bankruptcy Court does not enter the Bankruptcy Court Approval Order within six months after the Agreement Date, this Agreement and the Settlement shall be null and void *ab initio*, shall not be deemed to prejudice any claims that Plaintiffs may have concerning the Settled Claims, and shall not be deemed to prejudice any objections, arguments, or defenses that Kroll may have concerning the Settled Claims.

102.   <u>Choice of Law</u>:   This Agreement shall be governed by and construed and enforced under the laws of the State of Texas applicable to contracts executed in and to be performed in that jurisdiction, without regard to Texas or any other choice of law principles.

103.   <u>Mandatory, Exclusive Forum Selection Clause</u>:   Any dispute, controversy, or claim arising out of or related to this Agreement, including the breach, interpretation, effect, or validity of this Agreement, whether arising in contract, tort, or otherwise, shall be brought exclusively in the United States District Court for the Northern District of Texas, and with respect to such an action, the Parties irrevocably consent to personal and subject matter

38

jurisdiction and venue in such court, and waive any argument that such court is inconvenient, improper, or otherwise an inappropriate forum.  For clarity, the Antiguan Liquidators' consent to jurisdiction for any dispute, controversy, or claims arising out of or related to the Agreement, consistent with the Court's April 11, 2013 Order and 11 U.S.C. § 1510, shall not subject the Antiguan Liquidators to the jurisdiction of the courts of the United States for any other purpose. Notwithstanding the foregoing, however, the Bankruptcy Court shall have exclusive jurisdiction over all matters related to the Bankruptcy Court Approval Order, to Kroll's chapter 11 cases, and to Kroll's Chapter 11 Plan.

104.   United States Currency:  All dollar amounts in this Agreement are expressed in United States dollars.

105.   Timing:  If any deadline imposed by this Agreement falls on a non-business day, then the deadline is extended until the next business day.

106.   Waiver:  The waiver by one Party of any breach of this Agreement by the other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

107.   Exhibits:  The exhibits annexed to this Agreement are incorporated by reference as though fully set forth in this Agreement.

108.   Receiver as Representative of the Stanford Receivership Estate:  The Parties acknowledge that the Receiver is a receiver appointed to administer a receivership estate.  All Parties acknowledge and agree that this Agreement is being made by the Receiver solely in his capacity as receiver, and not in a personal capacity, and no liability or obligation shall accrue to him personally, or to his law firm or any member thereof.

109.   Antiguan Liquidators as Representatives of the Stanford Entities Over Which Appointed:  The Parties acknowledge that the Antiguan Liquidators are appointed to administer

39

the liquidation estates of Stanford International Bank, Ltd., Stanford Trust Company Ltd., and Stanford Development Company.  All Parties acknowledge and agree that this Agreement is being made by the Antiguan Liquidators solely in their capacities as joint liquidators, and not in a personal capacity, and no liability or obligation shall accrue to them personally.

110.    Integration and Modification:  This Agreement and the side letter referred to herein set forth the entire understanding and agreement of the Parties with respect to the subject matter thereof and supersede all prior agreements, understandings, negotiations, and communications, whether oral or written, with respect to such subject matter.  Neither this Agreement, nor any provision or term of this Agreement, may be amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by the Parties.

111.    Counterparts:  This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the
receiver for the Stanford receivership estate

_____

Official Stanford Investors Committee

_____

By:    John J. Little, Chairperson

Marcus A. Wide, in his capacity as joint
liquidator of Stanford International Bank,
Ltd., Stanford Trust Company Ltd., and
Stanford Development Company

_____

Hugh Dickson, in his capacity as joint
liquidator of Stanford International Bank,
Ltd. and Stanford Trust Company Ltd.

_____

Hordley Forbes, in his capacity as joint
liquidator of Stanford Development
Company

_____

41

STATE OF ___TEXAS___ )
                   ) ss.:
COUNTY OF __DALLAS__ )

On __December 9__, 2015, before me, the undersigned, personally appeared _Ralph S. Janvey_,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he/she executed

the same in his/her capacity and that by his/her signature on the instrument, the individual, or the

person upon behalf of which the individual acted, executed the instrument.



CINDY J. FRIES
Notary Public
STATE OF TEXAS
My Comm. Exp. 11-24-2017

_____
Notary Public

43

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the
receiver for the Stanford receivership estate

_____

Official Stanford Investors Committee

By: _____
      John J. Little, Chairperson

Marcus A. Wide, in his capacity as joint
liquidator of Stanford International Bank,
Ltd., Stanford Trust Company Ltd., and
Stanford Development Company

_____

Hugh Dickson, in his capacity as joint
liquidator of Stanford International Bank,
Ltd. and Stanford Trust Company Ltd.

_____

Hordley Forbes, in his capacity as joint
liquidator of Stanford Development
Company

_____

41

STATE OF _TEXAS_ )
                         ) ss.:
COUNTY OF _DALLAS_ )

On _Nov. 11,_ 2015, before me, the undersigned, personally appeared _John J. Little_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he/she executed

the same in his/her capacity and that by his/her signature on the instrument, the individual, or the

person upon behalf of which the individual acted, executed the instrument.

_Cynthia Stanley_
Notary Public

Cynthia Stanley
Notary Public, State of Texas
My Comm. Expires 05/03/2018

43

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the
receiver for the Stanford receivership estate

_____


Official Stanford Investors Committee

_____

By:     John J. Little, Chairperson


Marcus A. Wide, in his capacity as joint
liquidator of Stanford International Bank,
Ltd., Stanford Trust Company Ltd., and
Stanford Development Company

BEFORE AND IN THE PRESENCE OF: K. Simon
                                      KWAME SIMON

Hugh Dickson, in his capacity as joint
liquidator of Stanford International Bank,
Ltd. and Stanford Trust Company Ltd.

_____


Hordley Forbes, in his capacity as joint
liquidator of Stanford Development
Company

Before & in the presence of: K. Simon
                                    KWAME SIMON

41

## AFFIDAVIT OF EXECUTION OF THE FOREGOING AGREEMENT

I,   Kwame Simon of  Island House, Newgate Street, St. John's, make oath and say as follows:

1.      I was present on the 16th day of November 2015 at St John's, Antigua and did there see Marcus Wide sign the foregoing  Agreement   in my presence.

2.      The signature "Marcus Wide" set out and subscribed to the said Agreement  at the foot or end thereto as of the party executing the same is of the proper handwriting of the said  Marcus Wide and the signature "Kwame Simon" thereto also set out and subscribed as that of the witness attesting to the due execution thereof is a true and correct signature of me, this deponent.


**SWORN** at  ST. JOHNS, ANTIGUA      )

this  16ᵗ   day of November             )            ....K. Simon....

2015 before and in the presence of:  )            Kwame Simon



.......................................

Notary Public

NICOLETTE M. DOHERTY BA, LL.M
ATTORNEY AT LAW
NOTARY PUBLIC

Island House, Newgate Street, P.O. Box W1661,
Woods Centre, St. John's, Antigua, West - Indies

## <u>AFFIDAVIT OF EXECUTION OF THE FOREGOING AGREEMENT</u>

I,   Kwame  L. Simon of   Island House, Newgate Street, St John's, Antigua make oath and say as follows:

1.   I was present on the ..19..day of November 2015  at St John's, Antigua and did there see  Hordley Forbes sign the foregoing  Agreement   in my presence.

2.   The signature " Hordley Forbes" set out and subscribed to the said Agreement at the foot or end thereto as of the party executing the same] is of the proper handwriting of the said  Hordley Forbes.

3.   The signature "Kwame Simon " thereto also set out and subscribed as that of the witness attesting to the due execution thereof is a true and correct signature of me, this deponent.

<u>SWORN</u> at St John's, Antigua          )

this   19   day of November          )          ....................................

2015 before and in the presence of:  )          Kwame L. Simon

....................................

Notary Public

NELLEEN ROGERS MURDOCH
NOTARY PUBLIC



IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the receiver for the Stanford receivership estate

_____

Official Stanford Investors Committee

_____

By:     John J. Little, Chairperson

Marcus A. Wide, in his capacity as joint liquidator of Stanford International Bank, Ltd., Stanford Trust Company Ltd., and Stanford Development Company

_____

Hugh Dickson, in his capacity as joint liquidator of Stanford International Bank, Ltd. and Stanford Trust Company Ltd.

_____

Hordley Forbes, in his capacity as joint liquidator of Stanford Development Company

_____

41

STATE OF _Grand Cayman_

                  ) ss.:

COUNTY OF _Cayman Islands_

On _8 DECEMBER_ 2015, before me, the undersigned, personally appeared _HUGH DICKSON_,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he/she executed

the same in his/her capacity and that by his/her signature on the instrument, the individual, or the

person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**Sonia Carter-Ebanks**
**Notary Public in and for the Cayman Islands**
**My commission expires 31 January, 2016**
**Date:** _December 8, 2015_

43

Kroll, LLC (f/k/a Kroll Inc.)

_____
By: Andrew E. Grimmig, Vice President


Kroll Associates, Inc.

_____
By: Andrew E. Grimmig, Vice President

42

STATE OF _Washington DC_

COUNTY OF _Washington DC_ ) ss.:

On _Dec 15_ 2015, before me, the undersigned, personally appeared _Andrew E. Grimmig_,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual

whose name is subscribed to the within instrument and acknowledged to me that he/she executed

the same in his/her capacity and that by his/her signature on the instrument, the individual, or the

person upon behalf of which the individual acted, executed the instrument.

DISTRICT OF COLUMBIA:  SS
SUBSCRIBED AND SWORN TO BEFORE ME
THIS _15_ DAY OF _Dec_ , _2015_
_Judy C. Watters_
NOTARY PUBLIC
My Commission Expires _4-14-2020_

_Judy C. Watters_
Notary Public

43

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-00298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § | |

## <u>SCHEDULING ORDER</u>

WHEREAS, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert Allen Stanford and other persons and entities pursuant to the orders of this Court entered February 17, 2009, March 12, 2009, and July 19, 2010 in this action; (ii) the Official Stanford Investors Committee, as defined in the order of this Court entered August 10, 2010 in this action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators of Stanford International Bank, Ltd. and Stanford Trust Company Ltd., and Marcus A. Wide and Hordley Forbes in their capacities as the joint liquidators of Stanford Development Company, pursuant to the orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011, March 30, 2012, and October 15, 2013 (the "Antiguan Liquidators"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll") (collectively with the Receiver, the Committee, and the Antiguan Liquidators, the "Parties"), have entered into a global settlement agreement dated as of December 15, 2015 (the "Agreement"), which defines a settlement (the "Settlement"), including a

twenty-four million dollar ($24,000,000.00) payment by or on behalf of Kroll (the "Settlement Amount");

WHEREAS, the Receiver plans to distribute the Settlement Amount, contingent on the Settlement becoming effective, minus certain attorneys' fees, expenses, and costs, in a manner similar to that approved by this Court in its Orders approving the Receiver's Interim Distribution Plans [*see* Docs. 1877 and 2037];

WHEREAS, unless otherwise defined in this order (the "Scheduling Order"), the capitalized terms in this Scheduling Order shall have the same meanings as they have in the Agreement [*see* Ex. __ to Doc. ____];

WHEREAS, on _____, 201__, the Receiver and the Committee moved on an expedited basis for an order to, *inter alia*:   (i) provide for notice of the Agreement, the Settlement, and the Bar Order and Judgment; (ii) set the Objection Deadline by which objections to the Agreement, the Settlement, and the Bar Order and Judgment must be filed and served; (iii) set a date by which the Parties may file responses to any such objections; and (iv) provide for a Hearing on the Agreement, the Settlement, and the Bar Order and Judgment, and any objections;

WHEREAS, the Court has considered all arguments made and all papers filed in connection with the foregoing motion;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.      <u>Hearing</u>:   A Hearing is scheduled to be held before the Honorable David C. Godbey in the United States District Court for the Northern District of Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242, in Courtroom 1505, at __:__ _.m. on _____, which is a date at least ninety-one (91) calendar days after entry of this Scheduling

Order.  The purposes of the Hearing will be:  (i) to determine whether the Agreement including its exhibits, attached as Exhibit 1 to this Scheduling Order, and the Settlement it describes, should be approved by the Court; (ii) to determine whether the Bar Order and Judgment, attached as Exhibit 1(D) to this Scheduling Order, should be entered by the Court; and (iii) to rule upon such other matters as the Court may deem appropriate.

2.      Possible Approval:  The Court may approve the Agreement and the Settlement, and enter the Bar Order and Judgment, at any time at or after the Hearing, with such modifications as may be consented to by the Parties and without further notice.

3.      Notice:  The Court finds that the methodology, distribution, and dissemination of Notice proposed by the Parties and required by this Scheduling Order (i) constitute the best practicable notice; (ii) constitute notice that is reasonably calculated, under the circumstances, to apprise all Persons of the Settlement and its effects, including the releases and injunctions provided under its terms, and all rights to object to the Agreement, the Settlement, or the Bar Order and Judgment, and to appear at the Hearing; (iii) are reasonable and constitute due, adequate, and sufficient notice; (iv) meet all requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (v) will provide to all Persons a full and fair opportunity to be heard on these matters.  Notice Costs shall be borne as set forth in the Agreement.  The Receiver is hereby ordered to:

a.      no later than twenty-one (21) calendar days after entry of this Scheduling Order, cause the long form notice in the form attached as Exhibit 1(B) to this Scheduling Order (the "Long Form Notice") to be sent, by first class mail, postage prepaid, and by e-mail, if the Receiver has an e-mail address, to each Person who (i) held a certificate of deposit, CD,

depository account, or investment with Stanford as of February 16, 2009, (ii) has submitted a Proof of Claim to the Receiver or a Proof of Debt to the Antiguan Liquidators, or (iii) held a certificate of deposit, CD, depository account, or investment with Stanford, and has been sued by the Receiver, the Committee, or the Antiguan Liquidators for recovery of payments in excess of such Person's original investment, provided, however, that if a Person otherwise would receive the Long Form Notice has transferred their claims to a third party, the Receiver shall provide notice to the transferee and is not required to provide notice to the transferor;

b.     no later than twenty-one (21) calendar days after entry of this Scheduling Order, cause the Long Form Notice to be distributed by ECF to all parties to and persons who have entered an appearance in any case included in MDL No. 2099, *In re:  Stanford Entities Securities Litigation* (N.D. Tex.);

c.     no later than twenty-one (21) calendar days after entry of this Scheduling Order, cause the publication notice in the form attached as Exhibit 1(C) to this Scheduling Order (the "Publication Notice") to be published in the print and electronic editions of the following publications:  The Wall Street Journal (global edition, as well as the Spanish translation of the Publication Notice attached as Exhibit 1(C) to this Scheduling Order in Colombia, Ecuador, Mexico, Panama, Peru, and Venezuela), The New York Times, and The Daily Observer (Antigua and Barbuda);

d.     no later than twenty-one (21) calendar days after entry of this Scheduling Order, cause this Scheduling Order, its exhibits, the Long Form Notice, the Publication Notice, and the motion papers concerning this Scheduling Order to be posted on the Receiver's website (www.stanfordfinancialreceivership.com);

    e.  no later than twenty-one (21) calendar days after entry of this Scheduling Order, cause the Receiver's website (www.stanfordfinancialreceivership.com) to include Spanish translations of this Scheduling Order, and the Agreement, the Long Form Notice, the Publication Notice, the Antiguan Order, and the proposed Bar Order and Judgment, attached as Exhibits 1, 1(B), 1(C), 1(E), and 1(D) to this Scheduling Order; and

    f.  at or before the Hearing, provide the Court with an affidavit or affirmation stating that the Receiver complied with paragraph 3(a)-(e) of this Scheduling Order.

  4. <u>Nominees</u>:  Any Person that held a certificate of deposit, CD, depository account, or investment with Stanford as nominee for a beneficial owner must, within seven (7) calendar days of learning of the Long Form Notice, Publication Notice, or this Scheduling Order, either (i) send a copy of the Publication Notice by first class mail to all such beneficial owners, or (ii) provide a list of the names and addresses of such beneficial owners to:  Stanford Financial Claims, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, California 94976-0990, Telephone:  (866) 964-6301 or (317) 324-0757, E-mail:  info@stanfordfinancialclaims.com.

  5. <u>Objections and Appearances at the Hearing</u>:  Any Person who opposes the Agreement, the Settlement, or the Bar Order and Judgment, or wishes to appear at the Hearing, shall, no later than fifty-six (56) calendar days after the entry of this Scheduling Order (the "Objection Deadline"):

    a.  file in this action, either by ECF or by mail to the Clerk of the United States District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242, an objection that:

      (i)  is signed;

(ii)     contains the name, address, telephone number, and, if available, e-mail address of the objector;

(iii)    contains the name, address, telephone number, and e-mail address of any attorney representing the objector in this matter;

(iv)    states whether the objector, or, if applicable, the objector's attorney, wishes to be heard orally at the Hearing;

(v)     states in detail the basis for the objection; and

(vi)    attaches any documents the objector wants the Court to consider; and

b.     serve copies of such objection by ECF, or instead by e-mail and first class mail upon each of the following:

Steven S. Sparling
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-7736
E-mail:  ssparling@kramerlevin.com

and

Ralph S. Janvey
c/o Mark R. Murphy
Davis & Santos, Attorneys & Counselors, P.C.
The Weston Centre
112 E. Pecan Street Suite 900
San Antonio, Texas 78205
Telephone:  (210) 853-5882
E-mail:  mmurphy@dslawpc.com

An objector shall be deemed to have submitted to the jurisdiction of this Court for all purposes related to the objection, the Agreement, the Settlement, and the Bar Order and Judgment. Potential objectors who do not present opposition by the time and in the manner set forth above shall be deemed to have waived the right to object (including any right to appeal) and to appear

at the Hearing and shall be forever barred from raising such objections in this action or any other action or proceeding.  Persons do not need to appear at the Hearing or take any other action to indicate their approval.

6.      Responses to Objections:  No later than seven (7) calendar days before the Hearing, the Parties to the Agreement may respond to any objections, by (i) filing such response by ECF in this action, and (ii) to the extent any objector filed and served an objection by the Objection Deadline in compliance with paragraph 5 of this Scheduling Order other than by ECF, serving such responses upon such objector by first class mail and e-mail, to the extent that objector has provided a mail address and an e-mail address.

7.      Computing Time:   All deadlines and date requirements pursuant to this Scheduling Order shall be met:  (i) in the case of in-person filing with the Clerk of the Court, by filing no later than when the Clerk's office is scheduled to close, (ii) in the case of mail, by sending such mail postmarked no later than the deadline or required date, (iii) in the case of electronic filing via ECF, by electronic filing no later than 11:59 p.m. in the Court's time zone, and (iv) in the case of e-mail, by sending such e-mail no later than 11:59 p.m. in the Court's time zone.  If any deadline or date requirement pursuant to this Scheduling Order falls on a Saturday, a Sunday, or a legal holiday specified in Rule 6(a)(6) of the Federal Rules of Civil Procedure, such date shall be adjourned until the next date that is not a Saturday, Sunday, or a legal holiday specified in Rule 6(a)(6) of the Federal Rules of Civil Procedure.

8.      Adjustments Concerning Hearing and Deadlines:  The date, time, and place for the Hearing, and the deadlines and date requirements in this Scheduling Order, shall be subject to adjournment or change by this Court without further notice other than that which may be posted by means of ECF in this action.

9.      <u>Stay</u>:  To the extent that they are not otherwise stayed, all matters between the Parties hereby are and shall be stayed, other than to effectuate the Agreement and the Settlement, until the Effective Date of the Agreement, or, if Kroll terminates the Agreement and the Settlement pursuant to Section XIV of the Agreement, until the expiration of thirty (30) business days after Kroll sends its notice of termination.

10.     <u>Termination</u>:  This Scheduling Order shall be terminated and shall become null and void and of no further force and effect, and be without prejudice to the rights of the Parties, if the Agreement and Settlement are terminated pursuant to the Agreement.

11.     <u>No Admission of Fact or Wrongdoing</u>:  There are no stipulated facts between the Parties concerning the Settled Claims.  The Agreement, whether or not consummated, the Settlement, this Scheduling Order, the Bar Order and Judgment, their terms and provisions, the negotiations, proceedings, and agreements connected to them, and all papers in support of them, and the documents and statements referred to in them:

a.      are not, and shall not be described, deemed, invoked, offered, received, construed, or interpreted, as a presumption, an admission, a concession, or evidence, of any deficiency in the Settled Claims, or any wrongdoing, fault, error, negligence, violation, or liability on the part of Kroll or the Kroll Released Parties, or any deficiency concerning any defense of Kroll or the Kroll Released Parties; and

b.      shall not be discoverable or admissible in any action or proceeding for any reason, whether in this Court, in any other Forum, or otherwise, other than to enforce or effectuate the Agreement, the Settlement, this Scheduling Order, or the Bar Order and Judgment, or in connection with any claims, including but not limited to the Settled Claims, that Kroll may

have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

12.     <u>Retention of Jurisdiction</u>:   The Court shall retain jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

13.     <u>Resolution</u>:  If the Settlement is approved by the Court, a separate Bar Order and Judgment will be entered as described in the Agreement.

IT IS SO ORDERED.

Signed on _____, 201__

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-00298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § | |

**LONG FORM NOTICE OF PROPOSED SETTLEMENT,
BAR ORDER AND JUDGMENT, AND HEARING**

**To:     Those who ever held a certificate of deposit, CD, depository account, or investment with, or who are parties in any action concerning, or who are interested in, Robert Allen Stanford, or any entity of any type owned or controlled by Robert Allen Stanford, including, without limitation, Stanford International Bank, Ltd., Stanford Trust Company Ltd., and Stanford Development Company**

**A settlement relating to Stanford may result in a payment to you and may affect your legal rights.  A United States Federal District Court authorized this Notice.  This is not a solicitation from a lawyer.  Please read this Notice carefully and in its entirety.**

**BRIEF DESCRIPTION OF THE SETTLEMENT**

**The Settlement:**  A global settlement agreement (the "Agreement") has been made and entered into as of December 15, 2015 between and among, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert Allen Stanford and other persons and entities pursuant to the orders of the United States District Court for the Northern District of Texas entered February 17, 2009, March 12, 2009, and July 19, 2010 in *Securities and Exchange Commission v. Stanford International Bank, Ltd. et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"); (ii) the Official Stanford Investors Committee, as defined in the order of that Court entered August 10, 2010 in the SEC Action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators of Stanford International Bank, Ltd. and Stanford Trust Company Ltd., and Marcus A. Wide and Hordley Forbes, in their capacities as the joint liquidators of Stanford Development Company, pursuant to the orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011, March 30, 2012, and October 15, 2013 (the "Antiguan Liquidators") (the Receiver, Committee, and Antiguan Liquidators are collectively referred to as "Plaintiffs"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll") (Plaintiffs, on the one hand, and Kroll, on the other hand, are together referred to as the "Parties," and each of those two Parties is referred to as a "Party"), which defines a settlement (the "Settlement").

**Settlement Amount:**  Twenty-four million U.S. dollars (US$24,000,000.00) to be paid to the Receiver.

**Distribution:**  The Receiver plans to distribute the Settlement Amount, minus Court-approved attorneys fees, expenses, and costs, among those who held a certificate of deposit, CD, depository account, or investment with Stanford, and who have an allowed claim amount recognized by the Receiver, as set forth in more detail below.  Additional conditions will be contained in a Distribution Plan which the Receiver will submit for Court approval.

**Attorneys Fees and Expenses:**  Plaintiffs' counsel will apply to the Court for attorneys fees of no more than US$6 million and expenses of no more than US$25,000.

**Bar Order and Judgment:**  The Settlement is conditioned upon the Court's entry of a Bar Order and Judgment permanently enjoining all claims by Plaintiffs and all others against Kroll and the Kroll Released Parties concerning Stanford.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **OBJECT BY _____, 201__** | You may object to Court approval of the Agreement, the Settlement, or the Bar Order and Judgment. |
| **GO TO THE HEARING ON _____, 201__** | You may ask to speak or have your attorney speak in Court about the Agreement, the Settlement, or the Bar Order and Judgment. |
| **AWAIT THE RESULTS** | If the Court enters the Bar Order and Judgment, all claims against Kroll and the Kroll Released Parties concerning Stanford will be barred. |

- Your legal rights are affected whether you act or do not act.  **Read this Long Form Notice carefully.**

- The Court in charge of the SEC Action must decide whether to approve the Settlement. Payments will be made if and only if the Court approves the Settlement, and other conditions, including the resolution of any appeals from such approval order, are satisfied.  Please be patient.

- To the extent not otherwise defined, all capitalized terms herein, including "Stanford" and "Kroll Released Parties," have the meanings provided in the Agreement (available at www.stanfordfinancialreceivership.com).   The definition of "Settled Claims" is reproduced at the end of this Long Form Notice.

- **Special notice to nominees:**   Any Person that held a certificate of deposit, CD, depository account, or investment with Stanford as nominee for a beneficial owner must, within seven (7) calendar days of learning of this Long Form Notice, the Publication Notice, or the Scheduling Order, either (i) send a copy of the Publication Notice by first class mail to all such beneficial owners, or (ii) provide a list of the names and addresses of such beneficial owners to:  Stanford Financial Claims, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, California 94976-0990, Telephone:  (866) 964-6301 or (317) 324-0757, E-mail:  info@stanfordfinancialclaims.com.

## WHAT THIS LONG FORM NOTICE CONTAINS

Page

**BRIEF DESCRIPTION OF THE SETTLEMENT** .................................................................1

**BASIC INFORMATION**........................................................................................................4
    1.    Why Did I Receive This Notice?.................................................................4
    2.    What Is This Dispute About?.......................................................................4
    3.    Why Is There A Settlement?........................................................................5

**SETTLEMENT DETAILS** .....................................................................................................5
    4.    What Does The Settlement Provide?...........................................................5
    5.    What Claims Will Be Barred? .....................................................................5

**DISTRIBUTION PLAN** ........................................................................................................5
    6.    What Will The Distribution Plan Provide?..................................................5
    7.    Is The Settlement Contingent On The Distribution Plan? ..........................6

**HOW YOU GET A PAYMENT** ............................................................................................6
    8.    What Do I Need To Do To Get A Payment?................................................6
    9.    When Would I Receive My Payment?.........................................................6
    10.   Will Payments Be In Full And Final Settlement Of Claims?.....................6

**THE LAWYERS REPRESENTING THE PLAINTIFFS** ....................................................6
    11.   Do I Have A Lawyer In These Actions?......................................................6
    12.   How Will Plaintiffs' Counsel Be Paid? ......................................................7

**OBJECTING** .........................................................................................................................7
    13.   How Do I Tell the Court That I Do Not Like The Agreement, The
           Settlement, Or The Bar Order And Judgment?...........................................7

**THE HEARING** .....................................................................................................................7
    14.   When And Where Will The Court Decide Whether To Approve The
           Settlement And Enter The Bar Order And Judgment? ...........................7
    15.   Do I Have To Come To The Hearing?.........................................................8
    16.   May I Speak At The Hearing? .....................................................................8

**IF YOU DO NOTHING** ........................................................................................................8
    17.   What Happens If I Do Nothing At All?.......................................................8

**GETTING MORE INFORMATION**......................................................................................8
    18.   How Can I Obtain More Details About The Settlement?............................8

**DEFINITION OF "SETTLED CLAIMS"** .............................................................................8

## BASIC INFORMATION

### 1.      Why Did I Receive This Notice?

You received this notice (the "Long Form Notice") by order of the Court because you have a right to know about the proposed Settlement.

The Court in charge of this matter is the United States District Court for the Northern District of Texas, the Hon. David C. Godbey currently presiding (the "Court"). The Plaintiffs are the Receiver, the Committee, and the Antiguan Liquidators. They share common goals in pursuing claims for, and obtaining funds for, those affected by losses related to Stanford. The Plaintiffs have entered into the Agreement that defines the Settlement with Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll"). The Court-appointed Examiner, who recommends that the Settlement be approved and implemented, is an independent advisor to the Court and is also the Chair of the Committee.

### 2.      What Is This Dispute About?

Kroll Associates, Inc. is a professional services firm that provided outside consulting services to certain Stanford entities and persons. Kroll, LLC (f/k/a Kroll Inc.) is a holding company that does not provide any services. Neither Kroll Associates, Inc. nor Kroll, LLC (f/k/a Kroll Inc.) sold, marketed, or brokered the sale of certificates of deposit ("CDs") or other financial products for Stanford. On February 8, 2015, Kroll filed voluntary petitions for relief with the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of the United States Bankruptcy Code, commencing chapter 11 cases, which are being administered under the case caption *In re Altegrity, Inc., et al.*, No. 15-10226 (Bankr. D. Del.) (Jointly Administered).

By virtue of their positions and investigations, the Receiver, Committee, and Antiguan Liquidators have acquired several terabytes of records concerning Stanford and have concluded that Stanford ran a fraudulent Ponzi scheme involving certificates of deposit sold by Stanford International Bank, Ltd. The Receiver, Committee, and Antiguan Liquidators have brought multiple lawsuits against third parties, including professionals such as law firms, accountants, insurance brokers, and banks that provided services to Stanford.

In 2011, the Receiver and Committee informed Kroll that they were investigating potential claims against Kroll, including aiding and abetting violations of the Texas Securities Act, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and disgorgement of fees.

Kroll denies all of Plaintiffs' claims or any wrongdoing whatsoever and would assert both legal and factual defenses in a vigorous defense to any such claims.

### 3.       Why Is There A Settlement?

The Parties disagree as to the merits and value of the Plaintiffs' potential claims against Kroll and recognize the burden, expense, and risks of litigation.  The Plaintiffs have not filed any complaint against Kroll.  The Settlement avoids the uncertainty, costs, and risks associated with litigation – including the risk of no recovery by the Plaintiffs – and provides substantial benefits at this time.  The Plaintiffs, in fulfilment of their duties, have concluded that the Settlement is in the best interests of those affected by wrongdoing or losses related to Stanford.  The independent Examiner who was appointed by the Court in the SEC Action to assist the Court has reviewed the Settlement and recommends that it be approved and implemented.

The Settlement was reached following almost three years of investigation and negotiation and formal mediation before a retired judge who acted as an independent, neutral mediator.

### SETTLEMENT DETAILS

### 4.       What Does The Settlement Provide?

Kroll has agreed to cause to be paid to the Receiver a Settlement Amount of twenty-four million U.S. dollars (US$24,000,000.00) in cash.  The Bankruptcy Court has approved the Settlement to the extent consistent with Kroll's chapter 11 plan, which means that the Settlement Amount will be paid by one or more third parties and not by Kroll or the general unsecured claims pool established under Kroll's chapter 11 plan.  The Settlement Amount, minus any Court-approved attorneys fees and expenses and a portion of the costs incurred in the preparation, printing, distribution, and dissemination of the Notice, (the "Net Settlement Amount") will be distributed pursuant to a proposed distribution plan (the "Distribution Plan").  The Court must approve the Distribution Plan before any distributions are made.

### 5.       What Claims Will Be Barred?

The Settlement is conditioned upon the Court's entry of a Bar Order and Judgment permanently enjoining all claims by Plaintiffs and all others against Kroll and the Kroll Released Parties concerning Stanford.  The proposed Bar Order and Judgment covers Plaintiffs and all other Persons worldwide.  The proposed Bar Order and Judgment covers all Settled Claims (as defined at the end of this Long Form Notice) against Kroll and the Kroll Released Parties.  The proposed Bar Order and Judgment can be found at www.stanfordfinancialreceivership.com.  The Bar Order and Judgment is intended to supplement, and not replace or diminish, (i) a March 20, 2015 order of the Bankruptcy Court requiring persons and entities to submit claims against Kroll on or before April 30, 2015 in order to participate in voting and distributions in Kroll's chapter 11 cases and (ii) the discharge of Kroll under its chapter 11 plan.

### DISTRIBUTION PLAN

### 6.       What Will The Distribution Plan Provide?

The Receiver will submit a Distribution Plan to the Court for approval.  Under the Distribution Plan, the Net Settlement Amount will be apportioned on a pro rata basis based on allowed claim amounts, as recognized by the Receiver through his Court approved claims

process, among Persons who have submitted claims to the Receiver or the Antiguan Liquidators based upon a certificate of deposit, CD, depository account, or investment with Stanford.

**7.      Is The Settlement Contingent On The Distribution Plan?**

The Distribution Plan is a matter separate and apart from the Settlement between the Parties, and any decision or matter concerning the Distribution Plan shall not affect the validity or finality of the Agreement or the Settlement.

## HOW YOU GET A PAYMENT

**8.      What Do I Need To Do To Get A Payment?**

To receive a payment pursuant to the Settlement, a Claimant must have already either properly filed a proof of claim form with the Receiver in the SEC Action or a proof of debt form with the Antiguan Liquidators that was accepted in the Receiver's claims process.

**9.      When Would I Receive My Payment?**

The Court will hold a Hearing on _____, 201__ to determine, among other things, whether to issue an order approving the Settlement.  In addition, it is a condition of the Settlement that the Eastern Caribbean Supreme Court in Antigua and Barbuda enter orders approving the Settlement.  There could be appeals from these orders.  It is uncertain whether these appeals can be resolved favorably, and resolving them can take time, perhaps more than a year.  Please be patient.

**10.      Will Payments Be In Full And Final Settlement Of Claims?**

Yes.  All payments pursuant to the Settlement shall be made by check bearing on the front "**SETTLEMENT CHECK**" and on the back "I accept this check **in full and final settlement and release** of all claims against Kroll and the Kroll Released Parties related to Stanford and consent to the jurisdiction of the U.S. District Court for the Northern District of Texas for all purposes related to such claims, expressly waiving any different jurisdiction based on my current or future domicile."  Each Claimant shall be bound by the Bar Order and Judgment, including its provisions concerning the release and injunction of claims by Interested Parties, regardless of whether he/she/it receives, deposits, or endorses any check.

## THE LAWYERS REPRESENTING THE PLAINTIFFS

**11.      Do I Have A Lawyer In These Actions?**

The Receiver is represented in this matter by the law firm Davis & Santos, Attorneys & Counselors, P.C.  The Committee is represented in this matter by the law firm Castillo & Snyder PC.  The Antiguan Liquidators are represented in this matter by the law firm Astigarraga Davis. If you wish to be represented by a lawyer, you will need to hire one at your own expense.

**12.     How Will Plaintiffs' Counsel Be Paid?**

Plaintiffs will move the Court to order that Plaintiffs' counsel be awarded from the Settlement Amount attorneys fees in a total amount of no more than US$6 million and reimbursement of expenses in a total amount of no more than US$25,000 (together, "Attorneys Fees").

## OBJECTING

**13.     How Do I Tell the Court That I Do Not Like The Agreement, The Settlement, Or The Bar Order And Judgment?**

Any Person, including any Claimant, any party in any action before this Court concerning Stanford, any Person interested in Stanford, and any other Person that directly or through his, her, or its counsel is served with or otherwise learns of the Settlement or the Court's Scheduling Order, who opposes the Agreement, the Settlement, or the Bar Order and Judgment, or wishes to appear at the Hearing, shall file and serve an objection no later than fifty-six (56) calendar days after the entry of the Court's Scheduling Order (the "Objection Deadline"). The procedures for objecting can be found in the Court's Scheduling Order, available at www.stanfordfinancialreceivership.com.

An objector shall be deemed to have submitted to the jurisdiction of the Court for all purposes related to the objection, the Agreement, the Settlement, and the Bar Order and Judgment. Potential objectors who do not present opposition shall be deemed to have waived the right to object (including any right to appeal) and to appear at the Hearing and shall be forever barred from raising such objections in the SEC Action or any other action or proceeding. Persons do not need to take any action to indicate their approval.

## THE HEARING

**14.     When And Where Will The Court Decide Whether To Approve The Settlement And Enter The Bar Order And Judgment?**

A Hearing is scheduled to be held before the Honorable David C. Godbey in the United States District Court for the Northern District of Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242, in Courtroom 1505, at __:__ _.m. on _____. The purposes of the Hearing will be: (i) to determine whether the Agreement including its exhibits, and the Settlement it describes, should be approved by the Court; (ii) to determine whether the Bar Order and Judgment should be entered by the Court; and (iii) to rule upon such other matters as the Court may deem appropriate.

The Court reserves the right to approve the Agreement and the Settlement, and to enter the Bar Order and Judgment, at or after the Hearing, with such modifications as may be consented to by the Parties and without further notice other than that which may be posted by means of ECF in the SEC Action.

The date, time, and place for the Hearing, and the deadlines and date requirements in the Scheduling Order, shall be subject to adjournment or change by the Court without further notice other than that which may be posted by means of ECF in the SEC Action.

### 15.      Do I Have To Come To The Hearing?

No.  You are welcome to come at your own expense, and you may also pay your own lawyer to attend, but neither is required.  If you file and serve an objection, you do not need to come to Court to talk about it.

### 16.      May I Speak At The Hearing?

You may ask the Court for permission to speak at the Hearing.  To do so, you must file and serve a written objection, in compliance with paragraph 13 above, which states that you, or, if applicable, your attorney, requests the Court's permission to be heard orally at the Hearing.

### IF YOU DO NOTHING

### 17.      What Happens If I Do Nothing At All?

If the Court enters the Bar Order and Judgment and it becomes Final, any claims, including your Settled Claims, against Kroll and the Kroll Released Parties will be barred, and the Settlement Amount will be distributed pursuant to the Distribution Plan.  (The definition of "Settled Claims" is reproduced at the end of this Long Form Notice.)

### GETTING MORE INFORMATION

### 18.      How Can I Obtain More Details About The Settlement?

This Long Form Notice summarizes the proposed Settlement.  More details are contained in the Agreement and its exhibits and the Court's Scheduling Order concerning the Settlement. The Agreement and its exhibits, the Court's Scheduling Order, and other documents concerning the Settlement are available at www.stanfordfinancialreceivership.com.

### DEFINITION OF "SETTLED CLAIMS"

For purposes of this Long Form Notice, "Settled Claims" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, liabilities, obligations, licenses, rights, claims, losses, offsets, warranties, costs, fees, penalties, expenses, rights of action, and demands whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal, state, foreign law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in connection with, Stanford; any certificate of deposit, CD, depository account, or investment with Stanford; the Kroll Released Parties' relationship with Stanford; the Kroll Released Parties'

provision of services to Stanford; any matter that was asserted in, could have been asserted in, or relates to the SEC Action, *United States v. Stanford et al.*, No. 4:09-cr-00342 (S.D. Tex.), or any action concerning Stanford pending or commenced in any Forum; or any matter that makes a Person a Claimant.  For the sake of clarity, "Settled Claims" includes all Settled Claims which the releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by them might have affected their decisions with respect to the Agreement and the Settlement ("Unknown Claims").  With respect to any and all Settled Claims, the releasor agrees that the releasor shall, and shall be deemed to have, expressly waived, released, and relinquished, any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which governs or limits the release of unknown or unsuspected claims, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each releasor acknowledges that he, she, or it may hereafter discover facts different from, or in addition to, those which such releasor now knows or believes to be true with respect to the Settled Claims, but nonetheless agrees that the release of Settled Claims is and will remain binding and effective in all respects. "Unknown Claims" include contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts.   These provisions concerning unknown and unsuspected claims and the inclusion of "Unknown Claims" in the definition of Settled Claims were separately bargained for and were an essential element of the Agreement and the Settlement.  For the avoidance of doubt, Settled Claims include any claims relating to the above matters that are filed in Kroll's chapter 11 cases.

*      *      *

PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.

DATED:  _____, 2015     BY ORDER OF THE COURT
                                       UNITED STATES DISTRICT COURT
                                       NORTHERN DISTRICT OF TEXAS

# EXHIBIT C

**SECURITIES AND EXCHANGE COMMISSION v. STANFORD INTERNATIONAL
BANK, LTD.,** *et al.*, **Civil Action No. 3:09-CV-00298-N (N.D. Tex.)**

**A FEDERAL COURT AUTHORIZED THIS NOTICE.**
**THIS IS NOT A SOLICITATION FROM A LAWYER.**

To:     Those who ever held a certificate of deposit, CD, depository account, or investment with,
or who are parties in any action concerning, or who are interested in, Robert Allen
Stanford, or any entity of any type owned or controlled by Robert Allen Stanford,
including, without limitation, Stanford International Bank, Ltd., Stanford Trust Company
Ltd., and Stanford Development Company

There is a proposed global settlement ("Settlement") between Ralph S. Janvey, as Receiver for
Robert Allen Stanford and related persons and entities (the "Receiver"), (ii) the Official Stanford
Investors Committee, and (iii) Marcus A. Wide and Hugh Dickson as joint liquidators of
Stanford International Bank, Ltd. and Stanford Trust Company Ltd., and Marcus A. Wide and
Hordley Forbes as joint liquidators of Stanford Development Company (collectively,
"Plaintiffs"), and (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll")
concerning Allen Stanford and all related persons and entities.

This notice is only a summary of important information about the Settlement, the Bar Order and
Judgment that will be entered if the Settlement is approved, and a Hearing on the Settlement.
More details can be found at www.StanfordFinancialReceivership.com.

**Settlement Amount:**  US$24,000,000 (the "Settlement Amount") to be paid to the Receiver.

**Distribution:**  The Receiver plans to distribute the Settlement Amount, minus court-approved
attorneys fees, expenses, and costs, among those who held a certificate of deposit, CD,
depository account, or investment with Stanford <u>and</u> who have an allowed claim amount
recognized by the Receiver.  Plaintiffs' counsel will apply to the Court for attorneys' fees of no
more than US$6 million and expenses of no more than US$25,000.

**Bar Order and Judgment:**  The Settlement is conditioned upon the Court's entry of a Bar
Order and Judgment permanently enjoining and barring all claims by Plaintiffs and anyone else
in the world against Kroll concerning Robert Allen Stanford and any related persons or entities.

**Date for Court Hearing and Objections:**  On _____ __, 201_, at __:__ _, the Honorable David
C. Godbey in the United States District Court for the Northern District of Texas, United States
Courthouse, 1100 Commerce Street, Dallas, Texas 75242, Courtroom 1505, will hold a Hearing
to consider whether to approve the Settlement and enter the Bar Order and Judgment.  You may
object and attend the Hearing.  The time for the Hearing is subject to change, so you should
confirm the Hearing time by visiting the website www.StanfordFinancialReceivership.com
before attending.  Any and all objections to the Settlement or the Bar Order and Judgment must
be filed with Court and served on or before _____, 201_.  Filing and service instructions may
be found in the Court's Scheduling Order at www.StanfordFinancialReceivership.com.

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-00298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § | |

## BAR ORDER AND JUDGMENT

This matter came for a hearing on _____, 201__, upon the Parties' joint motion for final approval of settlement between, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert Allen Stanford and other persons and entities pursuant to the orders of this Court entered February 17, 2009, March 12, 2009, and July 19, 2010 in this action; (ii) the Official Stanford Investors Committee, as defined in the order of this Court entered August 10, 2010 in this action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators of Stanford International Bank, Ltd. and Stanford Trust Company Ltd., and Marcus A. Wide and Hordley Forbes, in their capacities as the joint liquidators of Stanford Development Company, pursuant to the orders of the Eastern Caribbean Supreme Court in Antigua and Barbuda entered May 12, 2011, March 30, 2012, and October 15, 2013, (the "Antiguan Liquidators") (the Receiver, Committee, and Antiguan Liquidators are collectively referred to as "Plaintiffs"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (together, "Kroll") (Plaintiffs on the one hand, and Kroll, on the other hand, are together referred to as the "Parties," and each of those two Parties is referred to as a "Party").

Due and adequate notice of the settlement agreement between the Parties dated as of December 15, 2015 (the "Agreement"), the settlement it defines (the "Settlement"), and this Bar Order and Judgment having been given, a hearing having been held, and the Court having considered all papers filed and proceedings had herein, and otherwise being informed of the premises, and good cause appearing therefor,

It is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.     <u>Incorporation of the Agreement</u>:  This Bar Order and Judgment incorporates by reference the Agreement, including the definitions in the Agreement and the Exhibits to the Agreement.  All definitions in this Bar Order and Judgment are consistent with the definitions set forth in the Agreement.

2.     <u>Jurisdiction</u>:  The Court has jurisdiction over the subject matter of this action and all Parties.  For clarity, the Antiguan Liquidators shall not be deemed, as a consequence of their consent to such jurisdiction, to have consented to the jurisdiction of the courts of the United States for any other purpose.

3.     <u>Kroll Bankruptcy</u>:  The Court notes that on February 8, 2015, Kroll filed voluntary petitions for relief with the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, commencing chapter 11 cases, which are being administered under the case caption *In re Altegrity, Inc., et al.*, No. 15-10226 (Bankr. D. Del.) (Jointly Administered), and that the Bankruptcy Court has approved Kroll's obligations under the Agreement to the extent consistent with Kroll's chapter 11 plan (the "Bankruptcy Court Approval Order"), meaning that, notwithstanding anything to the contrary in the Agreement, the Settlement Amount and costs of

the Settlement under the Agreement are to be paid by one or more third parties and not by Kroll or the general unsecured claims pool established under Kroll's chapter 11 plan.

4.      <u>Good Faith</u>:  The Court finds and determines that the Parties conducted extensive, good faith, arm's-length negotiations, involving experienced and competent counsel, leading to the Agreement, and that the Agreement and Settlement were made in good faith.

5.      <u>Notice</u>:  The Court finds that the methodology, distribution, and dissemination of Notice:  (i) were implemented in accordance with the Scheduling Order; (ii) constituted the best practicable notice; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise all persons, entities, Authorities, and quasi-governmental persons or entities, worldwide, of any type, including, without limitation, any individuals, partnerships, corporations, estates, trusts, associations, proprietorships, organizations, or businesses, regardless of location, residence, or nationality (collectively, "Persons") of the Settlement and its effects, including the releases and injunctions provided under its terms, and all rights to object to the Agreement, the Settlement, or the Bar Order and Judgment, and to appear at the Hearing; (iv) were reasonable and constituted due, adequate, and sufficient notice; (v) met all applicable requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vi) provided to all Persons a full and fair opportunity to be heard on these matters.

6.      <u>Binding Effect of Agreement Upon the Parties</u>:  The Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, transferees, and assigns.  However, no Party may assign any of its rights or obligations under the Agreement without the express written consent of the opposing Party.

7.     <u>Final Settlement Approval</u>:  The Court fully and finally approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons interested in Stanford, including but not limited to any Person who has ever held a certificate of deposit, CD, depository account, or investment with Stanford ("Claimant"), the Receiver, the Antiguan Liquidators, Stanford, the Committee and its members, and any SIPC trustee or other trustee whose appointment encompasses any matter related to any Stanford Person (collectively, "Interested Parties").   The Court approves the documents submitted to the Court in connection with the implementation of the Settlement.  The Court finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.  The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Agreement, unless and until Kroll terminates the Agreement and the Settlement pursuant to Section XIV of the Agreement.

8.     <u>Parties' Releases</u>:

a.     The releases set forth in paragraphs 61-64 of the Agreement (together, the "Release"), and the definitions in the Agreement of Settled Claims, Plaintiffs Release Parties, and Kroll Released Parties, are expressly incorporated in this Bar Order and Judgment in all respects.  The Release is effective as of the Effective Date and all Settled Claims released by the Release are hereby compromised, settled, released, relinquished, discharged, and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Bar Order and Judgment upon the Effective Date.

b.     Notwithstanding anything to the contrary in this Bar Order and Judgment or otherwise, the foregoing releases do not release the Parties' rights and obligations under the Agreement or the Settlement or bar the Parties from enforcing or effectuating the Agreement or

the Settlement.  Nor do the foregoing releases bar or release any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

9.      Permanent Injunction:   The Court permanently bars and enjoins Plaintiffs, Claimants, any Interested Parties, and/or any Person, and all of their respective heirs, trustees, executors, administrators, agents, successors and assigns, from, directly or indirectly, or through a third party, instituting, reinstituting, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, collaborating in, or otherwise prosecuting, against Kroll or any of the Kroll Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, of any nature (including but not limited to litigation, arbitration, or any other legal proceeding, in any court, tribunal, or forum, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise ("Forum")), whether individually, derivatively, on behalf of a class, or otherwise, concerning, arising from, in connection with, or related to the Settled Claims, whether in this Court, in any other Forum, or otherwise, except that there shall be no bar of any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

10.     Contribution Bar Order:   The Court hereby permanently bars, enjoins, and restrains any Person from commencing, prosecuting, or asserting against Kroll or any Kroll Released Party, whether individually, derivatively, on behalf of a class, or otherwise, whether in this Court or in any other Forum or otherwise, any claim, however denominated, for contribution, indemnity, or any other claim where the injury to such Person is such Person's liability to any Plaintiff, Claimant, or Interested Party that arises out of a judgment or settlement

obtained by any Plaintiff, Claimant, or Interested Party (or anyone else to the extent that the claim on which it obtains a judgment or settlement was owned by any Plaintiff, Claimant or Interested Party) against such Person that in any way relates to, is based upon, arises from, or is connected with Stanford, this action, *Milford Wampold et al. v. Pershing, LLC et al.*, No. C577629 (La. Dist. Ct. Baton Rouge Parish), *Numa L. Marquette et al. v. Pershing, LLC et al.*, No. C581452 (La. Dist. Ct. Baton Rouge Parish), or any Settled Claim, except that there shall be no bar of any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

11.     Judgment Reduction:

a.     To the extent any Person is barred, enjoined, or restrained by paragraph 10 of this Bar Order and Judgment, such Person (the "Non-Settlor") shall be entitled to the reduction of any verdict, judgment, or award against it on a claim concerning Stanford, in any Forum, to the extent that such Forum finds that the Non-Settlor and the Kroll Released Parties were joint tortfeasors respecting such claim.  Such reduction shall be the greater of:  (a) an amount that corresponds to the percentage of responsibility of the Kroll Released Parties, or (b) such other amount as may be required by law.  Nothing in this Bar Order and Judgment shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person to:  (a) claim a credit or offset in any litigation against such Person, however determined or quantified, if and to the extent provided for by the foregoing sentence, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in other litigation; provided for the

avoidance of doubt that nothing in this sentence shall be interpreted to (1) permit or authorize any claim or Settled Claim seeking to recover any monetary or other relief from the Kroll Released Parties, (2) permit or authorize the commencement, assertion or continuation of any claim or Settled Claim against the Kroll Released Parties, including any claim or Settled Claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon the Kroll Released Parties, or (3) impair or affect or be construed to impair or affect in any way whatsoever, any right of the Kroll Released Parties to contest discovery.

b.      In no event shall the Kroll Released Parties be responsible to pay any amount to any Person based on the amount or method or absence of reduction of any verdict, judgment, or award on a claim concerning Stanford.

12.     <u>Distribution and Administration</u>:

a.      The Receiver shall submit the Distribution Plan pursuant to the Agreement for approval by this Court.  The Receiver shall be solely responsible for implementing the Distribution Plan.

b.      A Claimant whose claim is determined to be invalid shall have no recourse of any type whatsoever against the Parties or the Kroll Released Parties, or their agents, but may solely object to such determination before the Court.

c.      The Distribution Plan is a matter separate and apart from the Settlement between the Parties, and any decision or matter concerning the Distribution Plan shall not affect the validity or finality of the Agreement, the Settlement, or this Bar Order and Judgment. Accordingly, Plaintiffs may not cancel or terminate the Agreement or the Settlement, and the

Agreement and the Settlement shall not be impugned or denied recognition or enforcement, based on anything relating to or concerning the Distribution Plan.

d.     Each Claimant shall be bound by the Bar Order and Judgment, including its provisions concerning the release of and injunction against claims by Interested Parties, regardless of whether he/she/it receives, deposits, or endorses any check.

e.     Kroll and the Kroll Released Parties shall not have any responsibility, obligation, or liability whatsoever with respect to the notice process (except as to payment of notice costs in the manner provided in the Settlement Agreement); the Distribution Plan; the administration of the Settlement; the investment, disbursement, allocation, or other administration or oversight of the Settlement Amount, the Net Settlement Amount, any other amount in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, reviewing, or challenging of claims to the Net Settlement Amount or any other amount in connection with the Agreement; any attorneys fees, expenses, or other costs to be paid to counsel for Plaintiffs; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate, cancel, or affect the finality of the Agreement or this Bar Order and Judgment.  Nothing in this paragraph 12 is intended to nor does have any impact on Kroll's rights under Section XIV of the Agreement.

13.     <u>No Admission of Fault or Wrongdoing</u>:  There are no stipulated facts between the Parties concerning the Settled Claims.  The Agreement, the Settlement, the Scheduling Order, and this Bar Order and Judgment, their terms and provisions, the negotiations, proceedings, and

agreements connected to them, and all papers in support of them, and the documents and statements referred to in them:

a.      are not, and shall not be described, deemed, invoked, offered, received, construed, or interpreted, as a presumption, an admission, a concession, or evidence, of any deficiency in the Settled Claims, or any wrongdoing, fault, error, negligence, violation, or liability on the part of Kroll or the Kroll Released Parties, or any deficiency concerning any defense of Kroll or the Kroll Released Parties; and

b.      shall not be discoverable or admissible in any action or proceeding for any reason, whether in this Court, in any other Forum, or otherwise, other than to enforce or effectuate the Agreement, the Settlement, the Scheduling Order, or this Bar Order and Judgment, or in connection with any claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

14.    Enforcement of Agreement:   Nothing in this Bar Order and Judgment shall preclude any action to enforce the terms of the Agreement, the Settlement, or the Bar Order and Judgment, or any actions or claims, including but not limited to the Settled Claims, that Kroll may have against any Kroll Released Party, including but not limited to its insurers, reinsurers, employees and agents.

15.    Modification of Agreement:   If the Parties agree to any amendments or modifications of the Agreement that (i) are not materially inconsistent with this Bar Order and Judgment and (ii) do not materially limit the rights of Claimants under the Agreement, then the Parties are hereby authorized to agree to and adopt any such amendments or modifications without further order from the Court.

16.    <u>Stay</u>:  To the extent that they are not otherwise stayed, all matters between the Parties hereby are and shall be stayed, other than to effectuate the Agreement and the Settlement, until the Effective Date of the Agreement, or, if Kroll terminates the Agreement and the Settlement pursuant to Section XIV of the Agreement, until the expiration of thirty (30) business days after Kroll sends notice of termination to Plaintiffs.

17.    <u>Termination</u>:  If Kroll terminates the Agreement pursuant to Section XIV of the Agreement:

a.    this Bar Order and Judgment, the Scheduling Order, the Agreement, and the Settlement shall be null and void and of no effect, except paragraphs 82, 89, 90, 92, 97, 99, 101-104, 106, and 110-11 of the Agreement, and any definitions in Section I of the Agreement necessary to interpret those paragraphs;

b.    Kroll, subject to the Bankruptcy Court Approval Order, shall be responsible to pay the Receiver:

(i)    if the amount of Plaintiffs' Share of Notice Costs that Plaintiffs actually incurred did not exceed two hundred and fifty thousand dollars ($250,000.00), the amount necessary to make the Receiver whole for 50% of such costs, or

(ii)    if the amount of Plaintiffs' Share of Notice Costs that Plaintiffs actually incurred exceeded two hundred and fifty thousand dollars ($250,000.00), the amount necessary to make the Receiver whole for 50% of the first two hundred and fifty thousand dollars ($250,000.00) of such costs and 100% of the portion of such costs that exceeds two hundred and fifty thousand dollars ($250,000.00);

c.      this Bar Order and Judgment, the Scheduling Order, the Antiguan Orders, the Agreement, the Settlement, and such termination shall not be deemed to prejudice any objections, arguments, or defenses that Kroll may have concerning the Settled Claims; and

d.      the Bar Order and Judgment, the Scheduling Order, the Antiguan Orders, the Agreement, the Settlement, and such termination shall not be deemed to prejudice any claims that Plaintiffs may have concerning the Settled Claims.

18.      <u>Extensions of Time</u>:  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Agreement.

19.      <u>Retention of Jurisdiction</u>:  Without in any way affecting the finality of this Bar Order and Judgment, the Court expressly retains continuing and exclusive jurisdiction for purposes of the administration, interpretation, consummation, and enforcement of the Agreement, the Settlement, the Scheduling Order, and this Bar Order and Judgment, including without limitation its injunctions and the Release, and to enter orders concerning implementation of the Settlement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.  Notwithstanding the foregoing, the Bankruptcy Court shall have exclusive jurisdiction over all matters related to the Bankruptcy Court Approval Order, Kroll's chapter 11 cases, and Kroll's chapter 11 plan.

20.      <u>Entry of Final Judgment</u>:  It is hereby adjudged, decreed, and ordered that Plaintiffs have a judgment against Kroll in the amount of twenty-four million dollars ($24,000,000.00).  The Court expressly finds and determines that there is no just reason for any delay in the entry of this final judgment, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.  Any appeal from this Bar Order and Judgment or any part of it must be taken within sixty (60) days after entry of this Bar Order and Judgment,

and in compliance with the Federal Rules of Appellate Procedure.   The judgment entered

pursuant to this Bar Order and Judgment is subject to the Bankruptcy Court Approval Order.

IT IS SO ORDERED.

Signed on _____, 201__

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

# EXHIBIT E

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

**Claim No. ANUHCV 2009/0149**

**In the Matter of Stanford International Bank Limited (In Liquidation)**

**-and-**

**In the Matter of the International Business Corporations Act, Cap 222 of the Laws of
Antigua and Barbuda**

**-and-**

**In the Matter of an Application Seeking the Court's Approval
of a Settlement Agreement with Kroll and Certain Other Parties**

**MARCUS A. WIDE AND HUGH DICKSON AS JOINT LIQUIDATORS OF STANFORD
INTERNATIONAL BANK LIMITED (In Liquidation),**

**Applicants**

_____

**ORDER
Approving Kroll Settlement Agreement**

_____

**BEFORE THE HONOURABLE [                    ] IN CHAMBERS**

**DATED: [                    ]**

**ENTERED: [                    ]**

**UPON READING** (a) the Notice of Application dated [                    ]; (b) the [                    th]
Affidavit of Marcus Wide[                    ] sworn on [                    ]; and (c) the global settlement
agreement (the "Agreement") entered into as of 15 December 2015 between and among, on the
one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert
Allen Stanford and other persons and entities pursuant to the orders of the United States District
Court for the Northern District of Texas (the "U.S. Court") entered on 17 February 2009, 12
March 2009, and 19 July 2010 in *Securities and Exchange Commission v. Stanford International
Bank, Ltd. et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"); (ii) the Official Stanford
Investors Committee, as defined in the order of the U.S. Court entered 10 August 2010 in the
SEC Action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities
as the joint liquidators of Stanford International Bank Limited (in Liquidation) ("SIB") (the
"Joint Liquidators"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll
Associates, Inc. (collectively, "Kroll"), which defines a settlement (the "Settlement");

**AND UPON** the Court reviewing the Agreement and finding that the Parties thereto seek to achieve cross border settlement and resolution of the matters which touch and concern SIB and its creditors;

**AND UPON** the Court approving on 8 April 2013 the terms of a Settlement Agreement and Cross Border Protocol executed on 11 March 2013 by and between the Joint Liquidators, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Court Appointed Examiner and the Official Stanford Investors Committee (the "DOJ Settlement Agreement");

**AND UPON** the Court finding that the execution of and compliance with the rights and obligations under the Agreement by the Joint Liquidators is consistent with the performance and exercise of their  obligations under the DOJ Settlement Agreement and their functions and duties under the International Business Corporations Act Cap 222 of Antigua and Barbuda (the "Act") (including under section 244(1)(a) of the Act, which concerns the disclosure of information relating to the business affairs of a banking corporation's customer);

**AND UPON HEARING** counsel for the Applicant [                    ] of [                    ];

It is hereby **ORDERED** as follows:

1. The terms of the Agreement as attached at Appendix "A" to this Order are approved.

2. This Court hereby defers implementation of the Agreement and the Settlement, the Scheduling Order, and the Bar Order and Judgment defined therein, to the U.S. Court.

3. The costs of this application be costs in the liquidation.

_____

By the Court

(Deputy) Registrar

**THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA**

**CLAIM NO. ANUHCV2009/0110**

**In the Matter of Stanford Trust Company Limited (In Liquidation)**

**-and-**

**In the Matter of the International Business Corporations Act, Cap 222 of the Laws of
Antigua and Barbuda**

**-and-**

**In the Matter of an Application Seeking the Court's Approval
of a Settlement Agreement with Kroll and Certain Other Parties**

**Marcus A. Wide and Hugh Dickson, in their Capacity as Joint Liquidators of Stanford
Trust Company Limited (In liquidation)**

**Applicants**

_____

**ORDER
Approving Kroll Settlement Agreement**
_____

**BEFORE THE HONOURABLE [                    ] IN CHAMBERS**

**DATED: [              ]**

**ENTERED: [              ]**

**UPON READING** (a) the Notice of Application dated [                    ]; (b) the [                    th]
Affidavit of Marcus Wide[                    ] sworn on [                    ]; and (c) the global settlement
agreement (the "Agreement") entered into as of 15 December 2015 between and among, on the
one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert
Allen Stanford and other persons and entities pursuant to the orders of the United States District
Court for the Northern District of Texas (the "U.S. Court") entered on 17 February 2009, 12
March 2009, and 19 July 2010 in *Securities and Exchange Commission v. Stanford International
Bank, Ltd. et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"); (ii) the Official Stanford
Investors Committee, as defined in the order of the U.S. Court entered 10 August 2010 in the
SEC Action (the "Committee"); and (iii) Marcus A. Wide and Hugh Dickson, in their capacities
as the joint liquidators of Stanford Trust Company, Ltd. ("STC"), pursuant to the order of this
Court entered 30 March 2012 (the "Joint Liquidators"); and, on the other hand, (iv) Kroll, LLC

(f/k/a Kroll Inc.) and Kroll Associates, Inc. (collectively, "Kroll"), which defines a settlement (the "Settlement");

**AND UPON** the Court reviewing the Agreement and finding that the Parties thereto seek to achieve cross border settlement and resolution of the matters which touch and concern STC and its creditors;

**AND UPON** the Court approving on 8 April 2013 the terms of a Settlement Agreement and Cross Border Protocol executed on 11 March 2013 by and between the Joint Liquidators, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Court Appointed Examiner and the Official Stanford Investors Committee (the "DOJ Settlement Agreement");

**AND UPON** the Court finding that the execution of and compliance with the rights and obligations under the Agreement by the Joint Liquidators is consistent with the performance and exercise of their obligations under the DOJ Settlement Agreement and their functions and duties under the International Business Corporations Act Cap 222 of Antigua and Barbuda (the "Act") (including under section 244(1)(a) of the Act, which concerns the disclosure of information relating to the business affairs of a banking corporation's customer);

**AND UPON HEARING** counsel for the Applicant [            ] of [            ];

It is hereby **ORDERED** as follows:

1. The terms of the Agreement as attached at Appendix "A" to this Order are approved.

2. This Court hereby defers implementation of the Agreement and the Settlement, the Scheduling Order, and the Bar Order and Judgment defined therein, to the U.S. Court.

3. The costs of this application be costs in the liquidation.

_____

By the Court

(Deputy) Registrar

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**ANTIGUA AND BARBUDA**

**Claim No. ANUHCV 2013/0222**

**In the Matter of Stanford Development Company Limited (In Liquidation)**

**-and-**

**In the Matter of the 1995 Companies Act Cap. 178 of the Laws of Antigua and Barbuda**

**-and-**

**In the Matter of an Application Seeking the Court's Approval**
**of a Settlement Agreement with Kroll and Certain Other Parties**

**MARCUS A. WIDE AND HORDLEY E. FORBES AS JOINT LIQUIDATORS OF**
**STANFORD DEVELOPMENT COMPANY LIMITED (IN LIQUIDATION)**
**Applicants**

---

**ORDER**
**Approving Kroll Settlement Agreement**

---

**BEFORE THE HONOURABLE [            ] IN CHAMBERS**

**DATED: [            ]**

**ENTERED: [            ]**

**UPON READING** (a) the Notice of Application dated [            ]; (b) the [            th] Affidavit of Marcus Wide[            ] sworn on [            ]; and (c) the global settlement agreement (the "Agreement") entered into as of 15 December 2015 between and among, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the receiver (the "Receiver") for Robert Allen Stanford and other persons and entities pursuant to the orders of the United States District Court for the Northern District of Texas (the "U.S. Court") entered on 17 February 2009, 12 March 2009, and 19 July 2010 in *Securities and Exchange Commission v. Stanford International Bank, Ltd. et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"); (ii) the Official Stanford Investors Committee, as defined in the order of the U.S. Court entered 10 August 2010 in the SEC Action (the "Committee"); and (iii) Marcus A. Wide and Hordley Forbes, in their capacities as the joint liquidators of Stanford Development Company ("SDC"), pursuant to the order of this Court dated October 15, 2013 (the "Joint Liquidators"); and, on the other hand, (iv) Kroll, LLC (f/k/a Kroll Inc.) and Kroll Associates, Inc. (collectively, "Kroll"), which defines a settlement (the "Settlement");

**AND UPON** the Court reviewing the Agreement and finding that the Parties thereto seek to achieve cross border settlement and resolution of the matters which touch and concern SDC and its creditors;

**AND UPON** the Court approving on 8 April 2013 the terms of a Settlement Agreement and Cross Border Protocol executed on 11 March 2013 by and between the joint liquidators of Stanford International Bank, Ltd., the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Court Appointed Examiner and the Official Stanford Investors Committee (the "DOJ Settlement Agreement");

**AND UPON** the Court finding that the execution of and compliance with the rights and obligations under the Agreement by the Joint Liquidators is consistent with the DOJ Settlement Agreement and with the Joint Liquidators' functions and duties under the Companies Act 1995;

**AND UPON HEARING** counsel for the Applicant [              ] of [                 ];

It is hereby **ORDERED** as follows:

1.  The terms of the Agreement as attached at Appendix "A" to this Order are approved.

2.  This Court hereby defers implementation of the Agreement and the Settlement, the Scheduling Order, and the Bar Order and Judgment defined therein, to the U.S. Court.

3.  The costs of this application be costs in the liquidation.

_____

By the Court

(Deputy) Registrar

- 2 -

# EXHIBIT F

16NE Huntingdon, LLC

20/20 Ltd.

Antigua Athletic Club Limited

The Antigua Sun Limited

Apartment Household, Inc.

Asian Village Antigua Limited

Bank of Antigua Limited

Boardwalk Revitalization, LLC

Buckingham Investments A.V.V.

Caribbean Aircraft Leasing (BVI) Limited

Caribbean Airlines Services Limited

Caribbean Airlines Services, Inc.

Caribbean Star Airlines Holdings Limited

Caribbean Star Airlines Limited

Caribbean Sun Airlines Holdings, Inc.

Casuarina 20 LLC

Christiansted Downtown Holdings, LLC

Crayford Limited

Cuckfield Investments Limited

Datcom Resources, Inc.

Devinhouse, Ltd.

Deygart Holdings Limited

Foreign Corporate Holdings Limited

Guardian International Investment Services No. One, Inc.

Guardian International Investment Services No. Three, Inc.

Guardian International Investment Services No. Two, Inc.

Guardian One, Ltd.

Guardian Three, Ltd.

Guardian Two, Ltd.

Guiana Island Holdings Limited

Harbor Key Corp.

Harbor Key Corp. II

Idea Advertising Group, Inc.

International Fixed Income Stanford Fund, Ltd.

The Island Club, LLC

The Islands Club, Ltd.

JS Development, LLC

Maiden Island Holdings Ltd.

Miller Golf Company, L.L.C.

Parque Cristal Ltd.

Pelican Island Properties Limited

Pershore Investments S.A.

Polygon Commodities A.V.V.

Porpoise Industries Limited

Productos y Servicios Stanford, C.A.

R. Allen Stanford, LLC

Robust Eagle Limited

Sea Eagle Limited

Sea Hare Limited

SFG Majestic Holdings, LLC

SG Ltd.

SGV Asesores C.A.

SGV Ltd.

Stanford 20*20, LLC

Stanford 20/20 Inc.

Stanford Acquisition Corporation

Stanford Aerospace Limited

Stanford Agency, Inc. [Louisiana][1]

Stanford Agency, Inc. [Texas]

Stanford Agresiva S.A. de C.V.

Stanford Aircraft, LLC

Stanford American Samoa Holding Limited

Stanford Aviation 5555, LLC

Stanford Aviation II, LLC

Stanford Aviation III, LLC

Stanford Aviation Limited

Stanford Aviation LLC

Stanford Bank (Panama), S.A.[2]

Stanford Bank Holdings Limited

Stanford Bank, S.A. Banco Comercial

Stanford Capital Management, LLC

Stanford Caribbean Investments, LLC

Stanford Caribbean Regional Management Holdings, LLC

Stanford Caribbean, LLC

Stanford Casa de Valores, S.A.

Stanford Cobertura, S.A. de C.V.

Stanford Coins & Bullion, Inc.

The Stanford Condominium Owners' Association, Inc.

Stanford Corporate Holdings International, Inc.

Stanford Corporate Services (BVI) Limited

Stanford Corporate Services (Venezuela), C.A.

Stanford Corporate Services, Inc.

Stanford Corporate Ventures (BVI) Limited

Stanford Corporate Ventures, LLC

Stanford Crecimiento Balanceado, S.A. de C.V.

Stanford Crecimiento, S.A. de C.V.

Stanford Development Company (Grenada) Ltd

Stanford Development Company Limited

Stanford Development Corporation

Stanford Eagle, LLC

Stanford Family Office, LLC

The Stanford Financial Group Building, Inc.

Stanford Financial Group Company

Stanford Financial Group Global Management, LLC

Stanford Financial Group (Holdings) Limited

Stanford Financial Group Limited

Stanford Financial Group Ltd.

Stanford Financial Partners Advisors, LLC

Stanford Financial Partners Holdings, LLC

Stanford Financial Partners Securities, LLC

Stanford Financial Partners, Inc.

Stanford Fondos, S.A. de C.V.

The Stanford Galleria Buildings, LP

Stanford Galleria Buildings Management, LLC

Stanford Gallows Bay Holdings, LLC

Stanford Global Advisory, LLC

Stanford Group (Antigua) Limited

Stanford Group (Suisse) AG

Stanford Group Aruba, N.V.

Stanford Group Bolivia

Stanford Group Casa de Valores, S.A.

Stanford Group Company

Stanford Group Company Limited

Stanford Group Holdings, Inc.

Stanford Group Mexico, S.A. de C.V.

Stanford Group Peru, S.A., Sociedad Agente de Bolsa

Stanford Group Venezuela Asesores de Inversion, C.A.

Stanford Group Venezuela, C.A.

Stanford Holdings Venezuela, C.A.

Stanford International Bank Holdings Limited

Stanford International Bank Limited

Stanford International Holdings (Panama) S.A.

Stanford International Management Ltd.

Stanford International Resort Holdings, LLC

Stanford Investment Advisory Services, Inc.

Stanford Leasing Company, Inc.

Stanford Management Holdings, Ltd.

Stanford Real Estate Acquisition, LLC

Stanford S.A. Comisionista de Bolsa

Stanford Services Ecuador, S.A.

Stanford South Shore Holdings, LLC

Stanford Sports & Entertainment Holdings, LLC

Stanford St. Croix Marina Operations, LLC

Stanford St. Croix Resort Holdings, LLC

Stanford St. Croix Security, LLC

Stanford Trust Company

Stanford Trust Company Administradora de Fondos y Fideicomisos S.A.

Stanford Trust Company Limited

Stanford Trust Holdings Limited

Stanford Venture Capital Holdings, Inc.

The Sticky Wicket Limited

Sun Printing & Publishing Limited

Sun Printing Limited

Torre Oeste Ltd.

Torre Senza Nome Venezuela, C.A.

Trail Partners, LLC

Two Islands One Club (Grenada) Ltd

Two Islands One Club Holdings Ltd

---

[1]     Locations in brackets are included to differentiate between legal entities with the same name but different locations or other identifying information.

[2]     Locations in parentheses are included in the legal name of an entity or other identifying information.

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br>Re: Docket No. 1064 & /078 |

### ORDER AUTHORIZING KROLL, LLC AND KROLL ASSOCIATES, INC. TO ENTER INTO, AND APPROVING, A SETTLEMENT AGREEMENT WITH RALPH S. JANVEY, THE OFFICIAL STANFORD INVESTORS COMMITTEE, MARCUS A. WIDE, HUGH DICKSON AND HORDLEY FORBES

Upon consideration of the motion (the "**Motion**")[2] of the Debtors for the entry of an order (this "**Order**"), pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, authorizing Kroll's entry into, and approving, the Settlement Agreement, a copy of which is attached hereto as **Exhibit 1**; and upon consideration of the Motion and all pleadings related thereto; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Altegrity, Inc. (9985) and US Investigations Services, LLC (9260). The location of the Debtors' corporate headquarters is 600 Third Avenue, 4th Floor, New York, NY 10016. In connection with the corporate and tax restructuring contemplated by the Debtors' confirmed Plan, certain Debtor entities have converted to limited liability companies, merged into other entities or changed their names. To avoid creditor confusion, this footnote lists the Debtors as of the Commencement Date.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion. For the avoidance of doubt, the term "Debtors" includes all of the Debtors whose chapter 11 cases were jointly administered with the two chapter 11 cases that remain open following the Court's entry of an order on December 3, 2015 closing certain chapter 11 cases [Docket No. 1047], with the remaining chapter 11 cases staying open to administer the claims that have been filed against all of the Debtors.

28 U.S.C. §§ 1408 and 1409; and it appearing that the Settlement Agreement is fair and equitable, and that entry into the Settlement Agreement is in the best interest of Kroll, its estate and creditors and is an appropriate exercise of Kroll's business judgment; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.    The Motion is granted as set forth herein.

2.    Pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, Kroll is authorized to enter into the Settlement Agreement, and the Settlement Agreement is approved, in each case provided that the Settlement Amount and all costs of the settlement under the Settlement Agreement are paid entirely by one or more third parties and not by Kroll, any of the other Debtors or the General Unsecured Claims Pool.

3.    Subject to the occurrence of the Effective Date (as defined in the Settlement Agreement), the Stanford Proof of Claim shall be deemed resolved, with no payments owing by the Debtors with respect to such claim.  Pending the occurrence of the Effective Date, the Stanford Proof of Claim shall be deemed temporarily disallowed.

4.    The claims agent in these chapter 11 cases is authorized to amend the claims register for these chapter 11 cases to comport with the entry of this Order and the terms and conditions of the Settlement Agreement.

5.    The Order shall bind the Debtors, their estates, and any successors thereto, including any subsequently appointed chapter 7 trustee in respect of the Debtors and their estates.

01:18131515.1

6.      The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  January 7, 2016
        Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE