### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § | |
| Defendants. | § § | |
| RALPH S. JANVEY, et al. | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:13-cv-03980-N |
| WILLIS OF COLORADO INC., et al. | § § § | |
| Defendants. | § | |

**EXPEDITED REQUEST FOR ENTRY OF SCHEDULING ORDER[1] AND MOTION TO APPROVE PROPOSED SETTLEMENT WITH THE WILLIS DEFENDANTS, TO ENTER THE BAR ORDER, TO ENTER THE FINAL JUDGMENT AND BAR ORDERS, AND TO ENTER THE NOTICES OF BAR ORDER**

COME NOW Ralph S. Janvey, the Receiver for the Receivership Estate in *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N (the "SEC Action"); the Official Stanford Investors Committee (the "Committee"), as a party to the SEC Action and as plaintiff in *Ralph S. Janvey, in his Capacity as Court-appointed Receiver for the Stanford Receivership Estate, The Official Stanford Investors Committee, and Samuel Troice and Manuel Canabal, on their own behalf and on behalf of a class*

---

[1] Movants request that the Court promptly enter the Scheduling Order, without waiting the twenty-one (21) days contemplated by Local Rule 7.1(e) for interested parties to respond to this Motion, because such Scheduling Order merely approves the notice and objection procedure and sets a final hearing, and does not constitute a final approval of the Settlement Agreement.

*of all others similarly situated v. Willis of Colorado Inc., et al.* (the "Janvey Litigation"), Civil

Action No. 3:13-cv-03980-N-BG; and Samuel Troice, Martha Diaz, Paula Gilly Flores, Punga

Punga Financial Ltd., Manuel Canabal, Daniel Gomez Ferreiro and Promotora Villa Marina, C.A.

(collectively, the "Investor Plaintiffs"), on behalf of a putative class of Stanford investors in the

putative class action, *Samuel Troice, Martha Diaz, Paula Gilly-Flores and Punga Punga*

*Financial, Ltd. v. Willis of Colorado, Inc., et al.*, Civil Action No. 3:09-cv-01274-N-BG, (the

"Troice Litigation") (the Receiver, the Committee, and the Investor Plaintiffs are collectively the

"Plaintiffs") and move the Court to approve the settlement (the "Willis Settlement") among and

between Plaintiffs and Willis Towers Watson Public Limited Company (f/k/a Willis Group

Holdings Limited) ("WTW"), Willis Limited, Willis North America Inc. ("Willis NA"), Willis of

Colorado, Inc. ("Willis-Colorado"), Willis of Texas, Inc. ("Willis-Texas") and Amy S.

Baranoucky ("Baranoucky") (WTW, Willis Limited, Willis NA, Willis-Colorado and

Willis-Texas are collectively referred to as the "Willis Entity Defendants" and the Willis Entity

Defendants and Baranoucky are collectively referred to as the "Willis Defendants"), as defendants

in the Janvey Litigation and the Troice Litigation.

Plaintiffs further request, as more fully set out below, that the Court enter the Scheduling

Order, approve the Notices, and enter the Bar Order and the Judgment and Bar Orders attached to

and incorporated by reference into the Willis Settlement Agreement, attached as **Exhibit 1** to the

Appendix in Support of this Motion.[2]

Plaintiffs jointly request this Court to find that the Willis Settlement is fair, equitable,

reasonable, and in the best interests of the Receivership Estate and all its Claimants, and to approve

the Willis Settlement. In support thereof, Plaintiffs respectfully state the following:

---

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Willis Settlement Agreement. To the extent of any conflict between this Motion and the terms of the Willis Settlement Agreement, the Willis Settlement Agreement shall control.

# I. INTRODUCTION

1.      As part of their lengthy and thorough investigation of the Stanford Ponzi scheme, and after many years of investigating and pursuing claims against third parties, including the Willis Defendants, Plaintiffs have reached a settlement with the Willis Defendants. Under the agreement, once approved and effective, Willis NA has agreed to pay a total of $120 million to the Receiver for distribution to customers of Stanford International Bank, Ltd. ("SIBL") who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL ("Stanford Investors") and who have submitted claims that have been allowed by the Receiver.

2.      In return, the Willis Defendants seek a global release of all Settled Claims[3] against the Willis Defendants and the Willis Released Parties, and have conditioned the Willis Settlement on this Court, among other things, entering the Bar Order in the SEC Action, and entering the Judgment and Bar Orders in the Janvey Litigation and the Other Willis Litigation (as defined in Paragraph 21 below and on pp. 4-5 of the Willis Settlement Agreement) (to the extent pending before the Court). The Bar Order and the Judgment and Bar Orders, if entered, will bar the continued prosecution of all pending cases against any of the Willis Defendants relating to

---

[3] "Settled Claim" means any action, cause of action, suit, liability, claim, right of action, debt, sums of money, covenants, contracts, controversies, agreements, promises, damages, contribution, indemnity, specific performance, attorney's fees and demands whatsoever, whether or not currently asserted, known, suspected, existing or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities, (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities, (iii) any one or more of the Willis Defendants' relationship(s) with any one of the Stanford Entities, (iv) the Willis Defendants' provision of services to any of the Stanford Entities; and any other acts, errors or omissions by the Willis Defendants for or related to the Stanford Entities, or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Troice Litigation, the Janvey Litigation, the Other Willis Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum. "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in her, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims").

Stanford and will also bar the commencement of any additional litigation against any of the Willis Defendants and any of the Willis Released Parties relating to Stanford, as described in more detail below. The Bar Order and the Judgment and Bar Orders reflect an essential term of the Willis Settlement and a condition precedent to the payment of the $120 million to the Receiver for distribution to Claimants. In the event the Bar Order and the Judgment and Bar Orders are not approved by the Court, the Willis Settlement becomes null and void, and no payment will be made to the Receivership Estate for the benefit of Claimants; and any recovery from continued litigation against the Willis Defendants would be uncertain and, at minimum, take years of additional, costly litigation.

3.      The Bar Order and the Judgment and Bar Orders would permanently bar, restrain, and enjoin the Receiver, the Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against any of the Willis Defendants or any of the Willis Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including but not limited to litigation, arbitration, or other proceeding, in any Forum, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; the SEC Action; the Troice Litigation; the Janvey Litigation; the Other Willis Litigation; or the subject matter of the SEC Action, the Troice Litigation, the Janvey Litigation, the Other Willis Litigation or any Settled Claim. The foregoing specifically includes any claim, however denominated,

seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.

4.      Plaintiffs request the Court to approve the Willis Settlement and enter the Bar Order in the SEC Action and the Judgment and Bar Orders in the Janvey Litigation and the Other Willis Litigation (to the extent pending before the Court).

## II.  BACKGROUND

### A.      Authority of the Receiver and the Committee

5.      On February 16, 2009, the Securities & Exchange Commission ("SEC") filed the SEC Action, and the Court appointed Ralph S. Janvey as Receiver "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." See Order Appointing Receiver ¶ 4 [SEC Action, ECF No. 10].

6.      The Second Amended Order Appointing Receiver, entered on July 19, 2010, is the current order setting forth the Receiver's rights and duties (the "Second Order"). [SEC Action, ECF No. 1130]. The Receiver's primary duty is to marshal and preserve the assets of the Receivership Estate, and minimize expenses, "in furtherance of maximum and timely disbursement thereof to claimants." Second Order ¶ 5.

7.      The Receiver is not only authorized but required to pursue outstanding liabilities and claims for the Estate. *Id*. ¶¶ 3, 5(b)-(c). The Court vested Ralph S. Janvey with "the full power

of an equity receiver under common law as well as such powers as are enumerated" by the Court. *Id.* ¶ 2. The Receiver can assert claims against third parties and "recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 326 (N.D. Tex. 2011). The Court has directed the Receiver to institute, prosecute, defend, and compromise actions that the Receiver deems necessary and advisable to carry out his mandate. Second Order ¶ 5(i).

8.      On April 20, 2009, the Court also appointed John J. Little as Examiner, to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action." [SEC Action, ECF No. 322]. Although he is not a party to the Janvey Litigation or the Troice Litigation, the Examiner signed the Willis Settlement Agreement as chair of the Committee, and as Examiner solely to evidence his support and approval of the Willis Settlement and the obligation to post Notice of the Willis Settlement on his website.

9.      On August 10, 2010, this Court entered its order (the "Committee Order") creating the Committee and appointing the Committee to "represent[] in [the SEC Action] and related matters" the Stanford Investors. [SEC Action, ECF No. 1149]. The Committee Order confers upon the Committee the right to investigate and pursue claims on behalf of the Stanford Investors and for the Receivership Estate (by assignment from the Receiver). *Id.* ¶ 8(d). This Court has recognized the Committee's standing to pursue litigation claims such as the claims against the Willis Defendants that are the subject of the Willis Settlement. *See* Order 4–6, *Janvey & Official Stanford Inv'rs Comm. v. IMG Worldwide Inc. & Int'l Players Championship, Inc.*, Civ. Action No. 3:11-CV-0117-N (Sept. 24, 2012 (N.D. Tex.), ECF No. 33 (the Committee has standing to

pursue claims based on the Court's grant of such authority to the Committee as an unincorporated association representing the interests of the Stanford Investors).

**B.      The Investigation of Claims Against the Willis Defendants**

10.      Plaintiffs' counsel have spent several years and thousands of hours investigating and pursuing claims against the Willis Defendants on behalf of the Stanford Receivership Estate and Stanford Investors.  Said claims are based on the Willis Defendants' alleged involvement in providing certain insurance letters to Stanford which Stanford allegedly used as part of its marketing schemes to convince investors to purchase and to retain the SIBL CDs.  As part of their investigation of the claims against the Willis Defendants, Plaintiffs' counsel have reviewed voluminous documents, emails, and depositions and trial testimony obtained in multiple collateral lawsuits and the criminal prosecutions of Allen Stanford, James Davis, Laura Pendergest-Holt, and other former Stanford insiders. The materials reviewed by Plaintiffs' counsel included, among other materials, thousands of pages of the SEC and other investigation materials, thousands of pages of deposition and trial testimony, thousands of emails of Stanford and of the Willis Defendants' personnel, and literally hundreds of boxes of documents including documents that Plaintiffs received from the Willis Defendants or that the Receiver secured from Stanford's various offices.

11.      Counsel was also required to, and did, research all relevant case law to support liability and damages claims belonging to the Receiver and Committee—including the Texas Securities Act ("TSA") and other claims belonging to the Stanford Investors—to determine how the facts surrounding the Willis Defendants' conduct supported those claims. The investigation further required formulation of viable damage models and causation theories for both the Receivership Estate and Stanford Investor claims.

12.     Investigation and prosecution of the Receivership Estate and Stanford Investor claims against the Willis Defendants also necessarily required thousands of hours investigating and understanding the background and history of the complex web of Stanford companies, the financial transactions, interrelationships and dealings between and among the various Stanford entities, and the complex facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities. Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate claims against the Willis Defendants. The Committee's counsel have also spent thousands of hours since the Committee's formation in 2010 in support of the joint effort with the Receiver to investigate and prosecute numerous third party claims, including the claims against the Willis Defendants, pursuant to an agreement between the Receiver and the Committee. The Receiver, the Committee and the undersigned law firms have done an immense amount of work investigating and analyzing the Stanford Ponzi scheme since the commencement of the SEC Action, all of which allowed the Receiver, the Committee, and the undersigned counsel to formulate, file and prosecute the claims against the Willis Defendants that led to the Willis Settlement for which approval is sought by this Motion. But for the diligent efforts of the Receiver, the Committee, and their counsel since the commencement of this receivership proceeding, the Receivership Estate and the Stanford Investors would not have achieved this $120 million settlement.

13.     In summary, Plaintiffs and their counsel have conducted a thorough analysis of, and heavily litigated on multiple fronts, a series of claims against the Willis Defendants considering:

      a.     claims available under both state and federal law;

      b.     the viability of those claims considering the facts underlying the Willis Defendants' role as insurance brokers for Stanford and this Court's previous rulings; and

c.      the success of similar claims in other Ponzi scheme cases, both in the Fifth
        Circuit and elsewhere.

**C.      The Troice Litigation**

14.     As this Court is aware, the Troice Litigation has been heavily litigated for close to 7

years. On July 2, 2009, counsel for the Stanford Investors filed the Troice Litigation as a putative

class action. [Troice Litigation, ECF No. 1]. The Willis Defendants filed motions to dismiss the

Troice Litigation on May 2, 2011. [Troice Litigation, ECF No. 123]. On October 27, 2011, this

Court granted the motion to dismiss, finding that the Securities Litigation Uniform Standards Act

of 1998 ("SLUSA") precluded the action. [Troice Litigation, ECF Nos. 155, 156]. The Investor

Plaintiffs appealed that decision to the Fifth Circuit. On March 19, 2012, the Fifth Circuit issued its

opinion reversing this Court's order of dismissal. *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012).

The Willis Defendants then petitioned for *certiorari* with the United States Supreme Court, which

granted the petition. On February 26, 2014, the Supreme Court issued its opinion affirming the

Fifth Circuit and concluding that SLUSA did not preclude the state law-based class action claims

brought against the Willis Defendants in the Troice Litigation. *Chadbourne & Parke, LLP v.

Troice*, 134 S. Ct. 1058 (2014).

15.     Defendants Baranoucky and WTW challenged the court's personal jurisdiction

over them, requiring the parties to engage in substantial jurisdictional discovery, including

extensive document production and depositions in Bermuda and London. Plaintiffs reviewed

hundreds of boxes of records in the Receiver's possession to locate documents supporting their

claims against the Willis Defendants.  After extensive briefing, the Court denied Baranoucky's

motion to dismiss for lack of personal jurisdiction.  After Plaintiffs filed their response to WTW's

motion to dismiss for lack of jurisdiction [Troice Litigation, ECF No. 268], WTW voluntarily

withdrew its motion [Troice Litigation, ECF No. 269].

16.     On September 16, 2014, this Court issued its Order denying the Investor Plaintiffs' request for entry of a scheduling order to permit merits discovery and granting the Willis Defendants' request to permit additional briefing on their motions to dismiss. [Troice Litigation, ECF No. 193]. On the same day, the Court issued its Class Certification Scheduling Order.  [Troice Litigation, ECF No. 192]. Thereafter, the parties engaged in extensive class certification discovery and fact and expert witness depositions. Plaintiffs defended the depositions of proposed class representatives Samuel Troice, Martha Diaz, Manuel Canabal, Daniel Gomez Ferreiro, and Punga Punga Financial Ltd.  Plaintiffs retained expert witnesses on class certification issues including proof of foreign law and the appropriateness of certification and presented those experts—Alejandro Garro and Edward Sherman—for deposition.  The parties filed their class certification evidence and briefing with this Court on April 20, 2015. [Troice Litigation, ECF Nos. 226-48].  With the Court's permission [Troice Litigation, ECF No. 252] the Willis Defendants filed a sur-reply in further opposition to class certification on June 3, 2015 [Troice Litigation, ECF 253].

17.     By Order dated December 15, 2014, the Court granted in part and denied in part the Willis Defendants' motion to dismiss the Troice Litigation, dismissing the claims against the Willis Defendants for primary violations of the TSA, co-conspirator liability under the TSA, and for civil conspiracy, and declining to dismiss the other claims against the Willis Defendants, including claims for aiding and abetting TSA violations, for aiding and abetting/participation in a fraudulent scheme, and individual claims for insurance code violations, common law fraud, negligent misrepresentation, gross negligence, negligent retention and negligent supervision. [Troice Litigation, ECF No. 208].

### D.    The Janvey Litigation

18.    On October 1, 2013, the Receiver and Committee, Troice and Canabal, individually and on behalf of the class, commenced the Janvey Litigation against Defendants Willis-Colorado, Willis Limited, WTW and Willis NA. [Janvey Litigation, ECF No. 1].

19.    The Willis Defendants then filed Motions to Dismiss the Janvey Litigation on February 28, 2014. [Janvey Litigation, ECF No. 19-27]. Plaintiffs filed a Response to the Willis Defendants' Motions to Dismiss on April 29, 2014. [Janvey Litigation, ECF No. 47], and the Willis Defendants filed their replies on May 29, 2014.  [Janvey Litigation, ECF Nos. 52, 54-56].

20.    On December 5, 2014, the Court granted in part and denied in part the Willis Defendants' motion to dismiss, dismissing claims for civil conspiracy, and primary liability under the TSA, but declining to dismiss the other claims against the Willis Defendants. [Janvey Litigation, ECF No. 64]. The Willis Defendants filed their Answers in the Janvey Litigation on January 16, 2015. [Janvey Litigation, ECF No. 73].

### E.    Other Willis Litigation

21.    Eleven other cases have been filed against the Willis Defendants by Stanford investors, including (i) *Ranni v. Willis of Colorado, Inc., et al.*, C.A. No. 1:09-CV-22085, filed on July 17, 2009 in the United States District Court for the Southern District of Florida; (ii) *Rupert v. Winter, et al.*, Case No. 2009CI15137, filed on September 14, 2009 in Texas state court (Bexar County), (iii) *Casanova v. Willis of Colorado, Inc., et al.,* C.A. No. 3:10-CV-1862-O, filed on September 16, 2010 in the United States District Court for the Northern District of Texas; (iv) *Rishmague v. Winter, et al.*, Case No. 2011CI12585, filed on March 11, 2011 in Texas state court (Bexar County); (v) *MacArthur v. Winter, et al.*, Case No. 2013-07840, filed on February 8, 2013 in Texas state court (Harris County); (vi) *Barbar v. Willis Group Holdings Public Limited Company, et al.*, Case No. 13-05666CA27, filed on February 14, 2013 in Florida state court

(Miami-Dade County); (vii) *de Gadala-Maria v. Willis Group Holdings Public Limited Company, et al.*, Case No. 13-05669CA30, filed on February 14, 2013 in Florida state court (Miami-Dade County); (viii) *Ranni v. Willis Group Holdings Public Limited Company, et al.*, Case No. 13-05673CA06, filed on February 14, 2013 in Florida state court (Miami-Dade County); (ix) *Tisminesky v. Willis Group Holdings Public Limited Company, et al.*, Case No. 13-05676CA09, filed on February 14, 2013 in Florida state court (Miami-Dade County); (x) *Zacarias v. Willis Group Holdings Public Limited Company, et al.*, Case No. 13-05678CA11, filed on February 14, 2013 in Florida state court (Miami-Dade County); and (xi) *Martin v. Willis of Colorado, Inc., et al.*, Case No. 2016-52115, filed on August 5, 2016 in Texas state court (Harris County) (collectively, the "Other Willis Litigation").

**F.    Mediation**

22.    Mediation was held with the Willis Defendants on two occasions. The first mediation was held in October 2015 before the Hon. Layn R. Phillips and Gregory Lindstrom, Esq., in California , and lasted a full day. However, the parties were unable to reach resolution at that time. The parties convened a second mediation with the Hon. Layn R. Phillips and Gregory Lindstrom, Esq., in California on March 31, 2016 and reached agreement resulting in the Willis Settlement. The parties finally executed the Willis Settlement Agreement on August 31, 2016.

23.    Without the tireless efforts of the Receiver, the Committee, Investor Plaintiffs, and their counsel in investigating and prosecuting these claims as part of the overall effort to recover money from third parties for the benefit of Stanford Investors, the Willis Settlement could never have been achieved, and the Troice and Janvey Litigations would likely have lasted for years with an uncertain outcome and at great expense to the parties.

24.    Since the Willis Settlement was reached in March 2016, the parties spent considerable time and effort drafting, revising, and negotiating the form and terms of the Willis

Settlement Agreement, the Bar Order, the Judgment and Bar Orders, the Notice, and the Scheduling Order, for which the Plaintiffs now seek approval.

### G.    Plaintiffs' and Examiner's Support of Settlement

25.    Plaintiffs are confident that the investigation of the Willis Defendants' activities related to Stanford performed by their counsel and the litigation of the Investor and Receivership Estate claims has been thorough. As a result, Plaintiffs are confident that they have sufficient information to enter into and endorse the Willis Settlement.  Plaintiffs are also confident that the Willis Settlement is fair and reasonable taking into consideration not only the merits of the claims, but also the risks, uncertainties, and expenses associated with litigation. Therefore, Plaintiffs believe that the Willis Settlement is in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court. The Chairman of the Committee, who oversaw the Janvey Litigation and participated in the settlement negotiations and mediation, is also the Court-appointed Examiner, and he supports this Motion in both capacities, as does the Receiver.

26.    The Investor Plaintiffs, who were each deposed as part of the class certification discovery process and who attended both mediations, also support the Willis Settlement and believe it is in the best interests of all Stanford Investors, and request that the Court approve it. All Stanford Investors have been given notice of the Receivership and the claims process, and the vast majority of them have filed claims and are participating in the Receivership distribution process. The Willis Settlement therefore "permits [Stanford Investors] to pursue their claims by 'participating in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'" *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013). The Willis Settlement, the Bar Order and the Judgment and Bar Orders protect both the Willis Released Parties and the Stanford Investors.

### H.    The Willis Settlement

27.    The proposed Willis Settlement is the result of many years and thousands of hours of work by the Receiver, the Committee, Investor Plaintiffs, and the undersigned counsel, and was negotiated and entered into as a result of arm's-length negotiation both during and following mediation facilitated by the Hon. Layn R. Phillips and Gregory Lindstrom, Esq.

28.    The essential terms of the Willis Settlement Agreement, attached as Exhibit 1 to the Appendix, are that:

    a.    Subject to certain conditions described below, Willis NA will pay a one-time lump sum payment of $120 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

    b.    Plaintiffs, and each of the Plaintiffs' respective past and present, direct and indirect, parent entities, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, in their capacities as such, and anyone who can claim through any of them, including, without limitation, the Receiver on behalf of the Receivership Estate, will fully, finally, and forever release, relinquish, and discharge, with prejudice, all Settled Claims against the Willis Defendants and the Willis Released Parties;

    c.    The Willis Defendants will fully, finally, and forever, release, relinquish, and discharge, with prejudice, all Settled Claims against the Plaintiff Released Parties;

    d.    Each of Plaintiffs will covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute, now or at any time in the future, against any of the Willis Defendants or any of the Willis Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning the Settled Claims, whether in a court or any other Forum;

    e.    Each of the Willis Defendants will covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute, now or at any time in the future, against any of the Plaintiffs or any of the Plaintiffs Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether

individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning the Settled Claims, whether in a court or any other Forum;

f.    The Willis Settlement requires entry of a Bar Order in the SEC Action, entry of a Judgment and Bar Order in the Janvey Litigation, and entry of a Judgment and Bar Order in each of the Other Willis Litigation cases pending before this Court, each of which permanently enjoins any Person, including, but not limited to, Interested Parties, including all Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against any of the Willis Defendants or any of the Willis Released Parties, the Troice Litigation, the Janvey Litigation, the Other Willis Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature concerning the Settled Claims. In addition, the Bar Order in the SEC Action, among other things, requires the Willis Defendants to file motions to dismiss with prejudice in all of the Other Willis Litigation not pending before this Court and prohibits the plaintiffs in those actions from opposing such motions. Entry of the Bar Order and the Judgment and Bar Orders is an essential term of the Willis Settlement and a condition precedent to Willis NA's payment of $120 million to the Receiver for distribution to Claimants. In the event the Bar Order and the Judgment and Bar Orders are not approved by the Court, the Willis Settlement becomes null and void, and no payment will be made to the Receivership Estate;

g.    The Receiver will disseminate notice of the Willis Settlement to Claimants, through one or more of the following as set forth in the Willis Settlement Agreement, ¶¶ 29-30: mail, email, international delivery, CM/ECF notification, facsimile transmission, and/or publication on the Examiner (www.lpf-law.com/examiner-stanford-financial-group/) and Receiver (http:// www.stanford financialreceivership.com) websites;

h.    The Receiver will develop and submit to the Court for approval a plan for disseminating the Settlement Amount ("Distribution Plan");

i.    Under the Distribution Plan, once approved, the Net Settlement Amount will be distributed by the Receiver, under the supervision of the Court, to Stanford Investors who have submitted claims that have been allowed by the Receiver;

j.    The Troice Litigation will be dismissed with prejudice as to the Willis Defendants, with each party bearing its own costs and attorneys' fees; and

k.    Each of the Other Willis Litigation cases pending before the Court will be disposed of by entry of a Judgment and Bar Order.

Copies of the Willis Settlement Agreement, this Motion, and other supporting papers may be obtained from the Court's docket, and will also be available on the websites of the Receiver (http://www.stanfordfinancialreceivership.com) and the Examiner (www.lpf-law.com/examiner-stanford-financial-group/). Copies of these documents may also be requested by email to Margaret Hagelman, at margaret.hagelman@strasburger.com, or by calling Margaret Hagelman at 210-250-6001.

29.     For the reasons described herein, the Willis Settlement is fair, equitable, reasonable, and in the best interests of the Receivership Estate and all those who would claim substantive rights to distribution of its assets. Plaintiffs urge the Court to approve it.

### III.  REQUEST FOR APPROVAL OF THE WILLIS SETTLEMENT

A.      **Legal Standards**

30.     "'[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *Kaleta*, 530 F. App'x at 362 (quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982)). "These powers include the court's 'inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.'" *Id.* (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). "Such 'ancillary relief' includes injunctions to stay proceedings by non-parties to the receivership." *Id.* (citing *Wencke and SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011)). "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *SEC v. Kaleta*, No. CIV.A. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (quoting *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009), aff'd, 530 F. App'x 360 (5th Cir. 2013). Congress enacted a "loose scheme" for federal equity receivers "on purpose" and "wished to expand the reach and power of federal equity receivers, especially in the

context of consolidation." *Janvey v. Alguire*, No. 3:09-cv- 00724, slip op. at 31, 34 (N.D. Tex. July 30, 2014).

31.     Moreover, "courts have consistently held that Congress intended for federal equity receivers to be utilized in situations involving federal securities laws, like the present receivership," and in such cases for the court to act as a court in equity for the benefit of defrauded investors. *See id.* at 35 (internal quotation marks omitted); *see also* 15 U.S.C. § 80a-41(d). "Now . . . the corporations created and initially controlled by [Stanford] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors." *Janvey v. Alguire*, slip op. at 44 (quoting *Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 191 (5th Cir. 2013) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995)).

32.     The Receivership Order in the SEC Action closely reflects and furthers all of the above objectives, directing the Receiver to prosecute, defend, and compromise actions in order to maximize timely distributions to Claimants. Second Order ¶ 5; *see supra* ¶¶ 2-3.

33.     The ability to compromise claims is critical to this Receivership. Courts have long emphasized that public policy favors settlement. *See, e.g., Lydondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 n.43 (5th Cir. 2010). That is especially true here, where the victims of Stanford's Ponzi scheme await recovery, further costs would come directly out of the Receivership Estate, and the Willis Settlement would allow the Receiver to make a significant distribution.  Consistent with all of the foregoing purposes, this Court has the authority to enter a bar order prohibiting litigation against settling third parties in receivership cases. *Kaleta*, 530 F. App'x. at 362-63 (approving bar order).

34.     Bar orders are commonly used in receivership cases to achieve these purposes. Every Circuit to consider the question has upheld blanket anti-litigation orders against non-parties

in circumstances affecting the assets of a receivership estate as part of a court of equity's inherent power to fashion effective relief. *SEC v. Byers*, 609 F.3d 87, 91 (2d Cir. 2010) (district courts may issue anti-litigation injunctions as part of their broad equitable powers in the context of an SEC receivership); *SEC v. Kaleta*, 530 Fed. Appx. 360 (5th Cir. 2013) (inherent equitable authority to issue ancillary relief includes injunctions to stay proceedings by non-parties to the receivership); *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011) ("It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions"); *Liberte Capital Grp, LLC v. Capwill,* 462 F.3d 543, 551-52 (6th Cir. 2006) (receivership court may issue a blanket injunction staying litigation); *SEC v. Wencke*, 662 F.2d 1363, 1369 (9th Cir. 1980) (authority of district court to issue an order staying a non-party from bringing litigation derives from the inherent power of a court of equity to fashion effective relief); *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (upholding the validity of settlement bar order).   Settlements in receiverships routinely incorporate bar orders such as the one at issue in this case. *SEC v. Temme*, No. 4:11-CV-655, 2014 U.S. Dist. LEXIS 53545 (E.D. Tex. 2014) *adopted by SEC v. Temme*, 2014 U.S. Dist. LEXIS 52815 (E.D. Tex. Apr. 16, 2014) (recommending entry of bar order to prevent duplicative and piecemeal litigation that would only dissipate the limited assets of the receivership estate and thus reduce the amounts ultimately distributed by the receiver to the claimants); *SEC v. Kaleta,* No. H-09-3674; 2013 U.S. Dist. LEXIS 77171 (S.D. Tex. ) *aff'd* 2013 U.S. App. LEXIS 12471 (5th Cir. June 19, 2013) (affirming entry of a bar order enjoining other investors from commencing or continuing any legal action against settling defendants arising from underlying fraud); *Stern v. Legent Clearing LLC*, No. 09-C-794, 2011 U.S. Dist. LEXIS 103156 (N.D. Ill. 2011) (holding that entry of a bar order that is required by a proposed settlement is within a court's authority and discretion); *SEC v.*

*Parrish*, No. 2:07-CV-00919-DCN, 2008 U.S. Dist. LEXIS 113241 (D.S.C. May 12, 2008) (holding the court has the power to issue a bar order precluding third-party claims under the All Writs Act); *Harmelin v. Man Financial, Inc.*; No. 06-1944, 05-2973, 2007 U.S. Dist. LEXIS 95022 (E.D. Pa. Dec. 28, 2007) (finding entry of bar order essential for success of settlement); *CFTC v. Equity Fin. Grp.*, No. 04-1512, 2007 U.S. Dist. LEXIS 53310 (D.N.J. July 23, 2007) (holding that federal law and public policy favor entry of a bar order to facilitate settlement); *State of Wisconsin Investment Board v. Ruttenberg*, 300 F.Supp.2d 1212, 1218 (N.D. Ala. 2004) (holding that bar order extinguishing any claims arising out of same facts as the settled action did not impermissibly divest objectors of valuable property rights).

35.     The Bar Order and the Judgment and Bar Orders will "prevent duplicative and piecemeal litigation that would only dissipate the limited assets of the Receivership Estate and thus reduce the amounts ultimately distributed by the Receiver to the claimants" and "protect the [settling parties] from re-litigation of potentially duplicative liabilities." *SEC v. Temme*, No. 4:11-cv-655, 2014 WL 1493399, at *2 (E.D. Tex. Apr. 16, 2014) (following *Kaleta* and approving bar order).

36.     In fact, the Fifth Circuit in *Kaleta* stated that a district court was within its discretion to enter a bar order, such as the ones requested here, if (i) the bar order is "necessary. . . for securing" the settlement payment; (ii) the settlement agreement "expressly permits" those affected by the bar order "to pursue their claims by 'participating in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate"; and (iii) the scope of the bar order is appropriately tailored to achieve these objectives. *See Kaleta*, 530 F. App'x at 362-63. The Willis Settlement satisfies each of these requirements.

37.    District courts in this Circuit have also looked to factors such as: (1) the value of the proposed settlement; (2) the value and merits of the receiver's potential claims; (3) the risk that litigation would dissipate the receivership assets; (4) the complexity and costs of future litigation; (5) the implications of any satisfaction of an award on other claimants; (6) the value and merits of any foreclosed parties' potential claims; and (7) other equities incident to the situation. *Kaleta*, 2012 WL 401069, at *4.

38.    In *Kaleta*, the court approved a receivership settlement and entered a bar order prohibiting litigation, including claims of investors, against the settling parties. *Id.* at *4. The Fifth Circuit's opinion noted that, like the Willis Settlement here, "the settlement expressly permits Appellants and other investors to pursue their claims by 'participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'" *Id*. at 362.

39.    Further, this Court also has the inherent power to order the plaintiffs in the Other Willis Litigation that is pending before other courts not to oppose motions to dismiss those actions filed by the Willis Defendants. *See, e.g., United States v. Hall*, 472 F.2d 261, 268, 266 (5th Cir. 1972) (upholding district court's imposition of sanctions against non-party in light of district court's inherent authority "to protect its ability to render a binding judgment between the original parties," and stating that "[a] court entering a decree binding on a particular piece of property is necessarily faced with the danger that its judgment may be disrupted in the future by members of an undefinable class—those who may come into contact with the property. The in rem injunction protects the court's judgment."); *see also United States v. Paccione*, 964 F.2d 1269, 1274-75 (2d Cir. 1992) ("A court may bind non-parties to the terms of an injunction or restraining order to preserve its ability to render a judgment in a case over which it has jurisdiction.").

**B.**      **The Willis Settlement Satisfies the Factors for Settlement Approval**

**(1)**      **Value of the Proposed Settlement**

40.      The $120 million payment contemplated by the Willis Settlement is substantial, representing by far the largest individual Stanford litigation settlement or recovery to date. "A proposed settlement need not obtain the largest conceivable recovery . . . to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). In the absence of evidence otherwise, a district court may conclude that a proposed settlement amount is sufficient. *Kaleta*, 2012 WL 401069, at *4. Moreover, no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate. *Gordon*, 336 F. App'x at 549.

**(2)**      **Value and Merits of the Receiver and Stanford Investors' Potential Claims**

41.      Plaintiffs of course believe that the claims filed against the Willis Defendants in the Troice Litigation and Janvey Litigation are meritorious and would likely be successful. However, they are not without substantial risk and uncertainty. Needless to say, the Willis Defendants vigorously dispute the validity of the claims asserted in the Janvey Litigation and the Troice Litigation.

42.      The Janvey Litigation alleges that the Willis Defendants (other than Willis-Texas) aided, abetted or participated in breaches of fiduciary duty, aided, abetted or participated in fraudulent transfers, were negligent and grossly negligent, negligently retained personnel, and negligently supervised personnel, and, in addition, that Willis NA aided and abetted violations of the TSA, and participated in a fraudulent scheme and a conspiracy. While the Receiver and the Committee believe strongly in the viability of the remaining claims, the Willis Defendants dispute liability on those claims and have further contended, among other things, that the Receiver and

Committee lack standing to sue for investor losses related to the insurance letters that are the subject of the Janvey Litigation.

43.     The Troice Litigation alleges, *inter alia*, that the Willis Defendants (other than Willis NA and Willis -Texas) aided and abetted violations of the Texas Securities Act, participated in a fraudulent scheme and a conspiracy, were negligent and grossly negligent, negligently retained personnel, and negligently supervised personnel.  As discussed above, at the time of settlement the parties had fully briefed complex issues of class certification.

44.     Among others, the following issues are hotly contested and promise years of uncertain litigation:

   a.     whether the Court would certify a class of Stanford Investors;

   b.     whether the Court would certify a class of *all* Stanford Investors or only those investors who received or saw copies of the insurance letters;

   c.     whether the Court would certify a class that included class members from foreign countries;

   d.     whether the Stanford Investors would be able to prove that the Willis Defendants had general awareness of Stanford's wrongful conduct and provided substantial assistance to Stanford;

   e.     whether the Stanford Investors could establish actionable misrepresentations and omissions by the Willis Defendants;

   f.     whether the Receiver and Committee would be able to prove that the Willis Defendants had sufficient knowledge to meet the standard for aiding-and-abetting a breach of fiduciary duty claim;

   g.     whether the Receiver and/or Committee have valid, supportable damage models;

   h.     whether the Receiver and Committee could prove that the Willis Defendants were negligent;

   i.     whether the Receiver and Committee  could establish causation; and

   j.     whether, after a successful judgment in any of the cases, Plaintiffs would be able to collect any more than the Willis Settlement already offers.

MOTION TO APPROVE PROPOSED SETTLEMENT WITH                                    Page 22
WILLIS DEFENDANTS

45.     For these and other reasons, but for the Willis Settlement, the Janvey and Troice Litigations would be vigorously defended by the Willis Defendants, their prosecution would be expensive and protracted, and the ultimate outcome of such litigation would be uncertain. In light of these issues, Plaintiffs believe that the Willis Settlement reflects a fair and reasonable compromise between the parties.

46.     While Plaintiffs believe they would likely prevail on both liability and damages in the Janvey and Troice Litigations, success is far from assured and would be possible only after years of litigation. The settlement payment represents a significant recovery for the Stanford Investors, while avoiding the burden, costs, delay, and risks incident to continued litigation.

### (3)     The Risk that Litigation Would Dissipate Receivership Assets

47.     Plaintiffs believe that litigation against the Willis Defendants would most likely go on for years, with no guarantee of a recovery. While Plaintiffs' counsel have entered into contingent fee arrangements with Plaintiffs to prosecute the claims, the Receiver and the Examiner are paid by the hour and are involved in overseeing the litigation and coordinating strategy with the overall Stanford Receivership case and other litigation. The Willis Settlement avoids further expense associated with the prosecution of the Janvey and Troice Litigations and continued monitoring and oversight of the cases by the Receiver and the Committee Chairman/Examiner.

48.     Furthermore, as part of their fee agreement with their counsel, the Committee has agreed with the Receiver that the Receiver would fund or reimburse all expenses associated with the Janvey Litigation, including, *inter alia*, expert fees and out of pocket litigation expenses (depositions, court reporters, videographers, travel, copy expenses, etc.). Without the Willis Settlement, the Receiver would incur substantial additional expenses to prosecute the claims against the Willis Defendants. Moreover, expert witness testimony as to the Willis Defendants would be a significant expense going forward if the Janvey and Troice Litigations are not settled

with respect to the Willis Defendants. Expert testimony would be needed to prove the details of the Stanford Ponzi scheme, as well as negligence, causation and damages. Absent the Willis Settlement, expert witness fees as to the Willis Defendants' alleged liability and damages could easily run into the hundreds of thousands of dollars, including costs for working with expert witnesses, taking and defending expert depositions, and examining expert witnesses at trial. Other out of pocket litigation costs could be substantial without the Willis Settlement, including costs of oral and video depositions of all fact and expert witnesses, production of voluminous records and emails and other electronically stored information, travel associated with depositions, preparation of expert witness reports, trial graphics, cost of reproduction of documents and trial exhibits, retrieval and storage of email and other electronically stored information, and attendance of experts at trial. Total out of pocket costs to prosecute the litigation would likely reach $1 million or more due to the complex nature of the claims, the need for expert testimony, and the voluminous nature of the records involved.

### (4)    The Complexity and Costs of Future Litigation

49.    The prosecution of the Janvey and Troice Litigations would undoubtedly be challenging and expensive, as discussed above. As the Court is aware, the facts and legal analysis of Stanford's Ponzi scheme are extraordinarily complex, as evidenced by the direct testimony of Karyl Van Tassel in the Chapter 15 proceeding, as well as all of the lengthy declarations with voluminous supporting exhibits that she has filed with this Court to prove the facts of the Stanford Ponzi scheme. There is no question that the Janvey and Troice Litigations involving billions of dollars in claimed damages, and an international Ponzi scheme operated through a complex web of interrelated international companies that spanned nearly 20 years, is extraordinarily complex, and would cause the Receivership Estate to incur substantial expense to litigate to final judgment.

### (5)      The Implications of the Willis Settlement Payment on Other Claimants

50.     As the Fifth Circuit stressed in *Kaleta*, "investors [can] pursue their claims by 'participating in the claims process for the Receiver[ship].'" 530 F. App'x at 362. The Receiver is collecting the Willis Settlement payment for the Stanford Investors. Thus, the relief Plaintiffs request will further "[t]he primary purpose of the equitable receivership [which] is the marshaling of the estate's assets for the benefit of all the aggrieved investors and other creditors of the receivership entities." *Parish*, 2010 WL 8347143, at *6 (approving settlement and bar order).

### (6)      The Value and Merits of Any Foreclosed Parties' Potential Claims

51.     Plaintiffs are conscious of the fact that the Bar Order and the Judgment and Bar Orders they are requesting, and the entry of which is a condition to the Willis Settlement, will preclude Stanford Investors and others from asserting claims against the Willis Defendants in connection with their involvement with the Stanford enterprise. However, any such investors asserting claims face the same legal and factual challenges faced by the Plaintiffs, as discussed above.

52.     As discussed above (see ¶ [21] supra), Plaintiffs are aware of eleven other cases that have been filed against the Willis Defendants by Stanford investors.  While the Bar Order and the Judgment and Bar Orders that Plaintiffs request the Court to enter (and that are a condition to the Willis Settlement) would bar those suits as to the Willis Defendants (but not as to BMB and Winter), equity favors the Court approving the Willis Settlement and entering the Bar Order and the Judgment and Bar Orders because the Willis Settlement will provide compensation to *all* Stanford victims and not just a few, including the plaintiffs from these eleven cases.  The Other Willis Litigation has been pending for years with little progress and would face years of further delay and uncertainty and could result in the plaintiff investors in those cases ending up with nothing, whereas, with the Willis Settlement, those plaintiff investors will (if the Willis Settlement

is approved in the near term) receive a benefit along with all Stanford Investors without awaiting the outcome of protracted litigation.

53.     Given that all Stanford Investors have been put on notice of the Receivership and afforded the opportunity to file claims in the Receivership, and that the vast majority of the Stanford Investors have filed claims and are already participating in the distribution process and will receive a distribution from the Willis Settlement, the Stanford Investors' rights are not being unduly prejudiced by the Willis Settlement. Stanford Investors have all had the opportunity to participate through the pre-existing receivership claims process and those whose claims have been approved will share in the proceeds of the Receiver's distribution that will result from the Willis Settlement.

54.     Plaintiffs believe that the Bar Order and the Judgment and Bar Orders should be approved because they are in the collective best interest of _all_ Stanford Investors. The Bar Order and the Judgment and Bar Orders should not be rejected based upon the possibility that some individual investor(s) or counsel might otherwise wish to pursue individual claims against the Willis Defendants now or in the future. *See Harmelin v. Man Fin. Inc.*, Nos. 06-1944, 05-2973, 2007 WL 4571021, at *4 (E.D. Pa. Dec. 28, 2007) (approving bar order).

55.     For all these reasons, "it is highly unlikely that any such investor could obtain a more favorable settlement than that proposed in the Settlement Agreement, nor one that could benefit *as many* aggrieved investors as stand to be benefited under the Settlement Agreement." *Parish*, 2010 WL 8347143, at *6 (approving settlement and bar order) (emphasis added).

56.     Importantly, the Anti-Injunction Act does not prohibit entry of the Bar Order and the Judgment and Bar Orders insofar as they will bar the pending state court actions against the Willis Defendants. The Anti-Injunction Act provides that "[a] court of the United States may not

grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Here, however, the Committee represents the interests of all Stanford Investors, including the individual plaintiffs in the Other Willis Litigation. Thus, the Willis Settlement will resolve the claims of those plaintiffs by preclusion. In this situation, the Anti-Injunction Act, which governs "injunction[s] to stay proceedings in a State court," does not apply. *See Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 157 (S.D. Ohio 1992) (approving settlement that would bar related state court action: because the court's order "would not stay" the state court action but rather "pre-empt" it, "the Anti-Injunction Act is not applicable."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1414 (D. Ariz. 1989) (the Anti-Injunction Act "is no more a barrier to the Court's approval of this agreement than it would be to any other where further litigation of claims in related actions pending in state courts are circumscribed, through collateral estoppel or res judicata, as an outcome of settlement. Such effects are common. The state court action would not be restrained by approval of this Agreement; it would be resolved. The Act is simply not implicated."), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).

57.     Even if the Anti-Injunction Act were implicated here, the Bar Order and the Judgment and Bar Orders would be proper under the Act's exception permitting injunctions "necessary in aid of [a federal court's] jurisdiction." 28 U.S.C. § 2283. As the Fifth Circuit and other courts have recognized, injunctions against related state court litigation may be necessary in aid of a federal court's jurisdiction in managing and settling complex multidistrict litigation such as this. *See, e.g., In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981) (upholding MDL transferee court's injunction preventing MDL class plaintiff from

pursuing a similar lawsuit in any other state court when "[t]his complicated . . . action has required a great deal of the district court's time and necessitates its ability to maintain a flexible approach in resolving the various claims of the many parties").[4] As the Third Circuit explained, in reasoning that applies here with full force:

> maintaining the federal court's flexibility and authority to decide such complex nationwide cases makes special demands on the court that may justify an injunction otherwise prohibited by the Anti–Injunction Act . . . . It is in the nature of complex litigation that the parties often seek complicated, comprehensive settlements to resolve as many claims as possible in one proceeding. These cases are especially vulnerable to parallel state actions that may frustrate the district court's efforts to craft a settlement in the multi-district litigation before it, thereby destroying the ability to achieve the benefits of consolidation. In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.

*In re Diet Drugs*, 282 F.3d 220, 235-36 (3d Cir. 2002) (quotations and citations omitted).

58.     Here, enjoining the existing and future state court litigation against the Willis Defendants and the Willis Released Parties is a necessary condition precedent to the Willis Settlement and, thus, the immediate recovery of $120 million by the Receivership Estate for the benefit of all Stanford Investors. Therefore, the Bar Order and the Judgment and Bar Orders are necessary to this Court's ability to manage the settlement of this litigation and to prevent the Receivership Estate from losing what would be, by far, its largest recovery to date. *See Parish*, 2010 WL 8347143 ("[T]he bar order is necessary to preserve and aid this court's jurisdiction over the receivership estate, such that the Anti–Injunction Act would not prohibit the bar order even if there were pending state court actions, which there are not.").

---

[4] *See also Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835, 848 (6th Cir. 2009) ("[T]he district court's injunction is necessary in aid of its jurisdiction because [plaintiff's] state-court claims threaten the district court's ability to administer the class settlement fund . . . .").

MOTION TO APPROVE PROPOSED SETTLEMENT WITH                                                  Page 28
WILLIS DEFENDANTS

59.     In sum, the proposed Willis Settlement is significant and fair and represents the best opportunity to provide funds quickly to Stanford's victims and to distribute those funds in an orderly fashion, without consumption of additional expenses. Against this backdrop, the Court should approve the Willis Settlement and enter the Bar Order and the Judgment and Bar Orders.

**(7)     Other Equities Attendant to the Situation**

60.     The requirement of entry of the Bar Order and the Judgment and Bar Orders is a material term under the Willis Settlement Agreement, and a necessary condition to the obligations set forth in the Willis Settlement Agreement. The bottom line is that there is no Willis Settlement without these bar orders. The Willis Defendants "would not otherwise secure 'peace' from other litigation if any investors were able to institute their own suit against [Defendants], potentially in other, including foreign, jurisdictions." *Harmelin*, 2007 WL 4571021, at *4 (approving settlement and bar order).

61.     The Willis Defendants have made clear that they would never have agreed to pay $120 million unless they and the Willis Released Parties achieve "peace", wholly and finally, with respect to all Stanford-related claims. The Willis Defendants have stated that they would not enter into the Willis Settlement without securing the avoidance of the expense and risk of such further litigation, particularly given what they believe are their strong factual and legal defenses.

62.     Thus, entry of the requested bar orders is a condition precedent to the infusion of $120 million dollars into the Receivership Estate—by far the Estate's largest recovery to date. This money will be used for equitable, pro rata distribution to Stanford Investors with approved Claims in accordance with the Receiver's Court-approved claims process. If the bar orders are not approved, then there will be no payment to the Receivership Estate, and instead the Receivership Estate will face years of additional litigation and appeals—the outcome of which is uncertain and which may, in the end, yield nothing for the Receivership Estate and Stanford Investors.

63. The Receiver and the Committee were appointed to protect the interests of *all* of the defrauded investors and other creditors of the Receivership Estate, and to act in a manner that will maximize the eventual distribution to Estate Claimants. The proposed Bar Order and Judgment and Bar Orders will help maximize the eventual distribution to Receivership Estate Claimants of the Willis Defendants' $120 million payment and provide the Willis Defendants the resolution of Stanford-related litigation that is a necessary condition for that settlement payment. Plaintiffs believe that the entry of the Bar Order and the Judgment and Bar Orders are fully justified by the Settlement Amount being paid by the Willis Defendants. The Court has already enjoined and barred all claims against the settling defendants and related parties pursuant to the settlements in the BDO lawsuit and the Adams & Reese lawsuit. [SEC Action, ECF Nos. 2230, 2248].[1] Movants ask the Court to similarly enjoin and bar all claims and potential claims against the Willis Released Parties in order to effectuate the Willis Settlement.

64. Plaintiffs and their counsel spent considerable time and effort to reach a settlement that is fair and equitable to the Receivership Estate and the defrauded Stanford Investors. Plaintiffs firmly believe that they could prosecute viable causes of action against the Willis Defendants, though the Willis Defendants vigorously deny any wrongdoing or liability, and have indicated that they firmly believe they would successfully defend any claims against them. The Willis Defendants also have the resources to defend themselves and to litigate the issues through a final trial court judgment, and appeal if necessary, which means the litigation would take years to be resolved without a settlement.

---

[1] More recently, the Court has enjoined and barred all claims in connection with the settlements with Kroll and Chadbourne & Parke, LLP. [SEC Action, ECF Nos. 2363, 2365.]

MOTION TO APPROVE PROPOSED SETTLEMENT WITH WILLIS DEFENDANTS

Page 30

65.     Plaintiffs believe that the terms of the Willis Settlement Agreement offer the highest net benefit to the Receivership Estate, in terms of maximizing Receivership assets and minimizing the expense to obtain them.

66.     The overall context of the MDL and Stanford Receivership also is relevant to the equities of the situation. The Stanford Ponzi scheme collapsed over seven and a half years ago. Further litigation means that the parties – on both sides – are confronted by uncertainty, risk, and delay. In this circumstance, the example of settlement is to be encouraged.

67.     It additionally bears on the equities that Stanford's victims, including a vast number of retirees, are aging. For many of Stanford's victims, recovery delayed is recovery denied. If possible, the time that Stanford's victims have waited to date should not be extended further.

68.     The equities of the Willis Settlement, including its necessary Bar Order and Judgment and Bar Orders, are also enhanced by the participation and endorsement of the various parties specially constituted to pursue recovery for Stanford's victims. The Receiver, the Examiner, the Committee, and the Investor Plaintiffs have cooperated and joined together in the Willis Settlement. This level of coordination and quality of resolution are eminently desirable. The roles and obligations of each of the foregoing parties enhance the equities attending this outstanding conclusion to many years of litigation. The result of this coordination will be the most orderly distribution to Stanford's victims that possibly can be achieved.

69.     The Court is well within its discretion to approve the Willis Settlement. In *Kaleta*, for example, the SEC filed suit against the defendants for violating federal securities laws and defrauding investors. 2012 WL 401069, at *1. The trial court appointed a receiver with similar rights and duties to the Stanford Receiver, including the duty "to preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursements to claimants." *Id.*

The *Kaleta* receiver settled with third parties, and agreed to a bar order precluding claims against them related to the receivership. The trial court approved the settlement and the bar order, and the Fifth Circuit affirmed. *Kaleta*, 530 F. App'x at 362-63.

70.     In approving the bar order, the district court noted the receiver's "goal of limiting litigation" related to the settling third parties and the Receivership Estate. *Kaleta*, 2012 WL 401069, at *7. "The Bar Order advances that goal by arranging for reasonably prompt collection of the maximum amount of funds possible from the [settling third parties] under the present litigation and financial circumstances." *Id.*

71.     In another recent case, a Texas federal district court approved a receivership settlement and entered a bar order preventing litigation against the settling parties. *SEC v. Temme*, No. 4:11-cv-655, 2014 WL 1493399 (E.D. Tex. Apr. 16, 2014). The bar order was intended to "prevent duplicative and piecemeal litigation that would only dissipate the limited assets of the Receivership Estate and thus reduce the amounts ultimately distributed by the Receiver to the claimants" and to "protect the [settling third parties] from re-litigation of potentially duplicative liabilities." *Id*. at *2.[5]

### IV.  CONCLUSION & PRAYER

72.     The Willis Settlement represents a substantial and important recovery for the Receivership Estate and the Stanford Investors. The large amount of the recovery, the time and costs involved in pursuing litigation against the Willis Defendants, and the uncertain prospects for obtaining and then recovering a judgment against the Willis Defendants, all weigh heavily toward approving the Willis Settlement, entering the Bar Order, and entering the Judgment and Bar Orders.

---

[5] The *Temme* court also approved a similar settlement agreement and bar order preventing litigation against another settling party. See SEC v. Temme, No. 4:11–cv–655, [ECF No. 162] (E.D. Tex. Nov. 21, 2012).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Court:

a.  Enter the proposed Scheduling Order providing for notice and a hearing on this Motion;

b.  Grant this Motion;

c.  Approve the Willis Settlement;

d.  Enter the Bar Order in the SEC Action;

e.  Enter the Judgment and Bar Order in the Janvey Litigation; and

f.  Enter the Judgment and Bar Orders in the Other Willis Litigation (to the extent pending in this Court).

Dated: September 7, 2016

Respectfully submitted,

**STRASBURGER & PRICE, LLP**
2301 Broadway
San Antonio, Texas 78215
Telephone:   (210) 250-6004
Facsimile:   (210) 258-2706

BY: /s/ Judith R. Blakeway
    JUDITH R. BLAKEWAY
    State Bar No. 02434400
    judith.blakeway@strasburger.com

**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:   (214) 651-4330
DAVID N. KITNER
State Bar No. 11541500
david.kitner@strasburger.com

**CASTILLO SNYDER, P.C.**
300 Convent Street, Suite 1020
San Antonio, Texas 78205
Telephone:   (210) 630-4200
Facsimile:   (210) 630-4210
EDWARD C. SNYDER
State Bar No. 00791699
esnyder@casnlaw.com
JESSE R. CASTILLO
State Bar No. 03986600
jcastillo@casnlaw.com

**NELIGAN FOLEY, LLP**
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:   (214) 840-5320
Facsimile:   (214) 840-5301
DOUGLAS J. BUNCHER
State Bar No. 03342700
dbuncher@neliganlaw.com

**COUNSEL FOR THE PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

I further certify that on 7th day of September, 2016, I served a true and correct copy of the foregoing document via United States Postal Certified Mail, Return Receipt required to the persons noticed below who are non-CM/ECF participants:

R. Allen Stanford, Pro Se     Certified Mail Return Receipt Req.
Inmate #35017183
Coleman II USP
Post Office Box 1034
Coleman, FL 33521

By: /s/ Judith R. Blakeway
    Judith R. Blakeway