IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § § | | |
| Plaintiff, § | | |
| v. § | Civil Action No. 3:09-CV-0298-N | |
| § | | |
| STANFORD INTERNATIONAL BANK, LTD. *et al.*, § § § | | |
| Defendants. § | | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, § § § § | | |
| Plaintiffs, § | | |
| v. § | Civil Action No. 3:09-CV-1736-N | |
| § | | |
| RALPH S. JANVEY, RECEIVER, *et al.*, § § § | | |
| Defendants. § | | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, § § § § | | |
| Plaintiffs, § | | |
| v. § | Civil Action No. 3:13-CV-2226-N | |
| § | | |
| PABLO M. ALVARADO, *et al.*, § § § | | |
| Defendants. § | | |

ORDER – PAGE 1

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, § § § § | | |
| Plaintiffs, § | | |
| v. § | Civil Action No. 3:15-CV-1997-N | |
| PAUL D. WINTER, *et al.*, § § § § | | |
| Defendants. § | | |
| CLAUDE F. REYNAUD, *et al.*, § § § | | |
| Plaintiffs, § § | | |
| v. § § | Civil Action No. 3:14-CV-3731-N | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, § § § | | |
| Defendants. § | | |

# ORDER

This Order addresses the objections[1] to the motion to approve the settlement between Plaintiffs Ralph S. Janvey (the "Receiver") and the Official Stanford Investors Committee ("OSIC") and Defendants Certain Underwriters at Lloyd's of London, Lexington Insurance Co., and Arch Specialty Insurance Co. (collectively, "Underwriters"). This Order also addresses the Objectors' motion to compel mediation related to the settlement. [2441] *in* the Receivership Action. Neither the objections nor the motion to compel justify rejecting the

---

[1] Docs. 2379, 2387, 2388, 2389, 2390, 2391, 2394, and 2397 *in SEC v. Stanford Int'l Bank, Ltd*, Case No. 3:09-CV-298-N (N.D. Tex.) (the "Receivership Action").

settlement or ordering additional mediation. Accordingly, the Court denies the objections and the motion to compel mediation.

## I. THE INSURANCE DISPUTE AND SETTLEMENT

R. Allen Stanford's Ponzi scheme spawned extensive civil litgation, including the dispute over insurance proceeds underlying this proposed settlement. The facts of Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013) ("*DSCC*"), and will not be recounted in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") from an offshore bank located in Antigua known as Stanford International Bank Limited ("SIBL"). Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality they were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

The Court appointed the Receiver to take control of the various entities Stanford used to carry out his scheme. Among other duties, the Court charged the Receiver with recovering assets and distributing them to Stanford's victims. Those assets include the proceeds of the insurance policies at issue in this dispute.

The dispute over these proceeds began within months of the Receiver's appointment to take charge of the numerous entities in Stanford's empire. Underwriters issued three policies providing four types of insurance for the Stanford entities: (1) D & O coverage, (2) fidelity coverage, (3) professional indemnity coverage, and (4) excess wrap coverage (the "Policies"). The Receiver, on behalf of the insured Stanford entities, made claims against

the Policies (the "Direct Claims"). Underwriters denied those claims on the basis of various coverage exclusions. Underwriters then sued the Receiver seeking a no-coverage declaratory judgment (the "Coverage Action"). The Receiver counterclaimed in the Coverage Action for breach of contract and other causes of action.

At the same time, the Receiver sued many of the Policies' insureds (the "Indirect Claims"). Some of the defendants in those cases have made or may make claims against the Policies. Underwriters resisted those claims as well, arguing that the Policies do not cover the defendants' losses or litigation costs. This has generated yet another set of lawsuits to resolve coverage issues between Underwriters and the putative insureds (the "Third-Party Coverage Actions"). To protect his claims to the Policies' proceeds, the Receiver has intervened or sought to intervene in the Third-Party Coverage Actions.

Attorney's fees and other costs began eroding the available proceeds as litigation progressed. The Receiver took the position that approximately $101 million remains under the policy limits; Underwriters say that only $46 million remains. After several years of combat and multiple mediation sessions, the Receiver, OSIC, the court-appointed Examiner, and Underwriters reached an agreement for a global settlement of the dispute over the amount of the policy limits and the extent of coverage for claims arising from Underwriters' relationship with Stanford.

The agreement resulting from these extended negotiations requires Underwriters to make a $65 million payment to the Receivership Estate, which would be distributed through the Receiver's claims and distribution process. In exchange for the $65 million payment,

Underwriters would obtain global peace related to Stanford claims by way of various releases, final judgments, and bar orders. These bar orders, which would enjoin all other Stanford-related claims against Underwriters, are at the heart of the objections to the settlement. The objections to the settlement all essentially posit that the Court cannot or should not bar the Objectors' claims in the proposed manner.

## II. THE LAW GOVERNING SETTLEMENT APPROVAL IN EQUITABLE RECEIVERSHIPS

"[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership." *S.E.C. v. Kaleta,* 2012 WL 401069, at *4 (S.D. Tex. 2012) ("*Kaleta I*") (quoting *Gordon v. Dadante*, 336 F. App'x 338, 340 (6th Cir. 2009)). Instead, the Court "has broad powers and wide discretion to determine the appropriate relief." *S.E.C. v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) ("*Kaleta II*") (quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372–73 (5th Cir. 1982)).

Among a district court's powers related to administering an equity receivership is the power to issue ancillary relief measures. *Id.* (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). Ancillary relief in SEC enforcement actions may include "injunctions to stay proceedings by nonparties against the receivership." *Id.* Courts use ancillary relief in the form of bar orders to secure settlements in receivership proceedings and to "preserve the property placed in receivership pursuant to SEC actions." *Kaleta I*, 2012 WL 401069, at *3 (citing *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010)). Courts have not limited the use of bar orders to barring claims against receiverships only; courts have also used bar orders to bar claims against third parties settling with receiverships. *See id.* at *8 (approving

settlement and bar order prohibiting third-party claims against nonreceivership entities) (*aff'd Kaleta II*, 530 F. App'x at 362–63); *S.E.C. v. Kaleta*, 2013 WL 2408017, at *6–8 (S.D. Tex. 2013) ("*Kaleta III*") (approving bar order prohibiting third-party claims by insureds against insurance company that issued policies to defendant in receivership proceeding).

Courts utilize bar orders if they are both necessary to effectuate a settlement and "fair, equitable, reasonable, and in the best interest of the Receivership Estate." *Kaleta III*, 2013 WL 2408017, at *6. To determine whether it is necessary to stay proceedings by nonparties to a receivership settlement, courts consider a variety of factors, including "(1) the value of the proposed settlement, (2) the value and merits of the Receiver's potential claims, (3) the value and merits of any foreclosed parties' potential claims, the complexity and costs of future litigation, (4) the risk that litigation costs would dissipate Receivership assets, (5) the implications of any satisfaction of an award on other claimants, (6) and any other equities attendant to the situation." *Kaleta I*, 2012 WL 401069, at *4 (citing *Liberté Capital Grp., LLP v. Capwill*, 462 F.3d 543, 553 (6th Cir. 2006); *Wencke*, 622 F.2d at 1371; *Gordon*, 336 F. App'x at 544, 549).

The power to bar nonsettling-party litigation against nonreceiver settling parties is not unlimited. Rather, "the exercise of this authority is always subject to other limitations, statutory and constitutional, which limit the jurisdiction of federal courts." *S.E.C. v. Parish*, 2010 WL 8347143, at * 5 (D.S.C. 2010). But the Court's jurisdiction does extend to all assets of the receivership estate, giving the Court "power under the All Writs Act to issue injunctions to protect the estate's choses of action . . . including any settlement reached in

connection with those claims." *Id.*

### III. THE OBJECTIONS TO THE INSURANCE SETTLEMENT ARE UNAVAILING

The Receiver and Underwriters invoke the authorities cited above to justify approval of the settlement and bar orders. The motion to approve the settlement drew objections from a number of individuals who fear the bar orders will cut off their claims to the Policies' proceeds. The Court denies the objections because the bar orders are necessary to effectuate a fair, reasonable, equitable settlement that is in the best interests of the Receivership Estate.

#### A. The Clawback Objections

The Clawback Objections[2] come from defendants in the Receiver's actions to recoup CD proceeds from former Stanford employees. The Clawback Objections argue that the Court lacks the power to bar their claims against Underwriters; that the settlement cannot be approved without the Court first holding an evidentiary hearing; and that the bar order is unfair to these defendants.

*1. The Court Can Issue the Bar Orders.* – A variety of authorities, noted above, allow the Court to issue bar orders as ancillary relief in administering a large and complex receivership such as this one. Some Objectors cite various distinctions between the present case and the cases relied upon to support the Court's authority to issue these bar orders. "However, receivership cases are highly fact-specific," and distinctions in precedent do not necessarily mandate different outcomes. *Kaleta I*, 2012 WL 401069, at *7.

The circumstances here justify these bar orders for the same reasons that courts have

---

[2]Docs. 2387, 2388, 2389, 2394, 2397.

used bar orders in similar circumstances. *See, e.g.*, *S.E.C. v. Parish*, 2010 WL 8347143, at *6–7 (D.S.C. 2010). The Receiver and the Objectors all claim entitlement to a limited pool of proceeds. Underwriters has resisted all of those claims as uninsurable or excluded from coverage under the Policies' terms. If the claims are excluded, then the Receivership Estate and the Objectors will both obtain nothing from the Policies. If the exclusions do not apply, many claims will still go unpaid because the dollar amount of claims against the Policies – in the billions of dollars – far exceeds the available amounts under the policy limits. The Receiver and Underwriters have reached this agreement to limit the risks to each of a litigated outcome. Both the Receiver and Underwriters have represented to the Court, and the Court accepts, that without the bar orders there is no settlement.

The settlement obtains a payment that represents at least a significant portion, if not more than, the available proceeds of the Policies. Distribution through the Receiver's claims process maximizes the recovery for the greatest number of injured parties. Some Objectors argue that the Stanford investors have no right to the proceeds, which should instead be distributed to the Policies' insureds. But the Court has previously held that the Policies and their proceeds are an asset of the Receivership Estate. Order 6 [926] *in* the Receivership Action. The Receivership Estate's claimants are entitled to their share of the Receivership Estate's assets, pursuant to Court-approved distribution plans. Thus, the injured Stanford investors, as Receivership Estate claimants, are entitled to the proceeds from these policies as distributions of Receivership Estate assets. This would be true whether the proceeds were consumed by the Receiver obtaining a judgment for the full amount of the proceeds or by

way of a settlement and bar order. Because the settlement advances the purpose of the Receivership and is the most fair and efficient way to distribute the Policies' proceeds to the broadest scope of claimants, and the bar orders are a necessary part of that settlement, the Court concludes that such orders are within its equity power.

*2. The Objectors Are Not Entitled to an Evidentiary Hearing.* – The authority the Clawback Objections rely upon for their claimed right to an evidentiary hearing is not applicable here. In *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562 (5th Cir. 2010), the Fifth Circuit reviewed a District Court's preliminary injunction barring an insurer from refusing to pay an insured's defense costs. 600 F.3d at 565. The insurer denied coverage based on its assertion that the policy's money laundering exception applied to bar coverage. *Id.* at 566. The District Court found that the exclusion "most likely would not preclude coverage" and thus enjoined the insurer from withholding payment. *Id.* at 568. The insurer appealed, arguing that the exclusion precluded coverage. *Id.* The Fifth Circuit held that before it could determine if the exclusion applied, it must decide (1) whether only a court, as opposed to the insurer, can determine if the exclusion applied; and (2) whether that determination must be based on only the complaint and the policy as opposed to all admissible evidence. *Id.* at 570, 573–74. The Fifth Circuit concluded that the policy language required a judicial determination before the exclusion allowed the insurer to withhold payment, and that a court making that determination may consider evidence beyond the "eight corners" of the policy and complaint. *Id.* at 574.

This authority has no bearing on whether the Court can approve the settlement and bar

orders here. The Court is not determining whether exclusions apply under the Policies; it is deciding whether the settlement is fair, reasonable, equitable, and in the best interests of the receivership and whether the bar orders are necessary to secure that settlement. Even assuming that the exclusions do not apply, the Objectors are unlikely to recover any of the proceeds because the exclusions would likewise not apply to the Receiver, who has already obtained judgments and made demands in excess of the policy limits. These judgments would exhaust the policies and leave nothing for the Objectors. Thus, there need not be an evidentiary hearing and judicial exclusion determination as a predicate to approving the settlement and bar order.

***3. Approving the Settlement and Bar Order is the Best Available Alternative.*** – The Court is not persuaded that the alleged harms suffered by the Clawback Objectors are sufficient to justify rejection of the settlement and bar orders. Resolving the Stanford receivership would undoubtedly be easier if there were sufficient assets to satisfy all of the claims resulting from Stanford's scheme. But that is not the reality in which the Court administers this receivership. Because on balance the unfairness alleged by the Objectors is either mitigated by other circumstances or simply outweighed by the benefit of the settlement in terms of fairness, equity, reasonableness, and the best interests of the receivership, the Court overrules the objections related to the fairness of the settlement and bar orders.

First, the practical value of the Objectors' foreclosed claims is not as great as they argue. As discussed above, these claims are unlikely to be realized regardless of whether the

Court approves this settlement because either an exclusion will bar coverage, the Court will find the claims uninsurable, or the Receiver's judgments will consume the remaining coverage. Thus, barring the claims does not prejudice the Objectors in a meaningful way. Additionally, the Objectors are not completely losing access to the Policies' proceeds as they had the opportunity, seized by many Objectors, to file claims in the receivership. Thus, in considering the value of the foreclosed claims, these circumstances weigh significantly against the alleged unfairness.

Second, to the extent that the Objectors are suffering an injury from this settlement and the bar orders, that injury is but one factor in the analysis of the settlement and bar order. *See Kaleta I*, 2012 WL 401069, at *4 (listing factors considered in determining necessity of bar orders as part of receivership settlement). Based on these factors, finding the overall settlement fair, reasonable, equitable, and in the best interests of the Receivership Estate does not necessarily require that the Court find the settlement to be a net benefit to every nonsettling party. Indeed, given the limited assets available for distribution and the costs involved in obtaining them, it is hard to envision a significant settlement in the Stanford cases that would be viewed favorably by all interested parties. As detailed in the orders approving the settlement, issued on this same date, these factors weigh in favor of settlement approval.

Finally, the Objectors argue that the settlement not only harms them but does so in a procedurally-deficient manner. But the Court is acting within its powers in administering an equity receivership. Those powers are cabined by various rules and statutes, and the Court

takes this action only after giving notice, a process for filing objections, and holding a hearing regarding the action under consideration. Additionally, the Objectors have long had notice that the Policies' proceeds were assets of the receivership estate and that the Receiver was actively pursuing recoveries in excess of the Policies coverage. Finally, the Objectors also had notice that if they thought they were entitled to a portion of the Receivership Estate, they could file a claim in the Receiver's claims and distribution process. Thus, the Court concludes that the Objectors had sufficient procedural protection in the determination of whether the bar orders are necessary to secure an equitable settlement.

### B. The Breach of Fiduciary Duty Objections

The Breach of Fiduciary Duty Objections[3] assert some of the same fairness arguments as the Clawback Objectors, along with additional objections related to their specific situations. To the extent that their arguments overlap with the Clawback Objections, the Court denies their objections. The Court also denies the Breach of Fiduciary Duty Objections on their individual grounds.

Objector Cordell Haymon argues that barring his claims against Underwriters is unfair because he relied on previous court orders concerning payment of defense costs when he decided to settle the Stanford-related claims against him. The order Haymon relies on does not justify rejecting this settlement. In October 2009 the Court allowed, but did not mandate, access to the Policies' proceeds for insured Stanford directors and officers if they were entitled to access those proceeds. Order 8–9 [831] *in* the Receivership Action. The Court

---

[3]Docs. 2379, 2394, and 2397.

noted that its holding did not itself entitle anyone to the Policies' proceeds. *Id.* at 8. Underwriters denied Haymon's claim for coverage years before he settled with the Receiver and OSIC. Thus, Haymon could not have reasonably expected reimbursement as a condition precedent to his settlement with the Receiver and OSIC. Haymon continued to press his claims by suing Underwriters. However, to treat his claim to the proceeds differently based on how he pursued the proceeds would give him an unfair priority over the other claimants to the Policies. This would encourage a "race to the courthouse," an outcome less fair in the full context of this receivership than distributing the proceeds through the Receiver's distribution process.

### C. The Louisiana Direct Action Objections

The Louisiana Direct Action Objections come from two groups of Stanford investors who are asserting direct claims against Underwriters in Louisiana state court through that state's direct action statute. These objections do not require that the Court reject the settlement and bar orders.

*1. The Anti-Injunction Act Does Not Preclude These Bar Orders.* – The Anti-Injunction Act prohibits a federal court from staying proceedings in a state court unless certain exceptions apply. 28 U.S.C. § 2283. The Louisiana objectors argue that the Bar Order would improperly enjoin their pending lawsuits in Louisiana state court without fitting into one of the statutory exceptions. The Movants dispute whether the Anti-Injunction Act applies at all. The Court need not determine whether the Anti-Injunction Act applies, however, because even if it does, so does one of its exceptions.

The Anti-Injunction Act allows federal courts to enter injunctions against pending state court proceedings if doing so is necessary to aid the court's jurisdiction or to protect or effectuate the court's judgments. 28 U.S.C. § 2283. Enjoining related state court litigation is an important part of the Court's ability to effectively manage complex nationwide cases like the Stanford MDL. *See, e.g.*, *Three J Farms, Inc. v. Plaintiffs' Steering Comm.* (*In re Corrugated Container Antitrust Litig.*) 659 F.2d 1332, 1334–35 (5th Cir. 1981); *In re Diet Drugs*, 282 F.2d 220, 235–35 (3d Cir. 2002). In managing this receivership, the Court has already enjoined state court litigants from using state court proceedings to attempt to take control of assets of the Receivership Estate. Likewise here, the Court has already assumed exclusive jurisdiction over the proceeds of these insurance policies and required the Receiver to pursue them as assets of the Receivership Estate. The possibility of state court judgments favoring individual litigants has the potential to interfere with this Court's judgments about Receivership assets. Thus, the bar order is necessary to "preserve and aid this court's jurisdiction over the receivership estate." *Parish*, 2010 WL 8347143, at *7.

***2. Louisiana World, DSCC, and* Troice *Do Not Apply.*** – The Louisiana Objectors argue that various mandatory authorities, Stanford-related and otherwise, prohibit the Court from entering the bar orders. First, they cite *Louisiana World Exposition, Inc. v. Federal Ins. Co.* (*In re Louisiana World*), 832 F.2d 1391 (5th Cir. 1987) for the proposition that a court may not enjoin an insured party from accessing a policy's proceeds based on the debtor merely owning the policy. *Louisiana World* does not apply here, however, because in that case the debtor entity was not covered by the policy it owned. *Id.* at 1398. In that case, the

ORDER – PAGE 14

policy "[did] not cover the liability exposure of the [entity] at all, but only of its directors and officers . . . ." *Id.* at 1401. Here, in contrast, the Receivership Estate has a right to the proceeds because the Policies insured the entities in receivership. As noted by the Fifth Circuit in *Louisiana World*, "[t]here are a great many bankruptcy cases holding that liability insurance policies that provide coverage for the bankrupt's liability belong to the bankrupt's estate." *Id.* at 1399. Because the proceeds are part of the Receivership Estate, *Louisiana World* does not prohibit the Court from entering the bar orders.

Second, the Louisiana Objectors cite *DSCC* for the proposition that the Receiver has standing to assert only the claims of the entities in receivership and not investor claims. *See DSCC*, 712 F.3d at 192. Because the investor claims do not belong to the Receiver, the Objectors argue, the Receiver has no standing to settle them. But that is not what is happening here. The bar orders are not settling claims, they are enjoining them. Based on the other authorities cited above, this is a permissible exercise of the Court's authority in administering a receivership. Thus, *DSCC* does not mandate rejection of the settlement and bar orders.

Finally, the Louisiana Objectors cite *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014) for the proposition that the Objectors' state law claims, which were remanded to Louisiana state court, are beyond the reach of this Court's jurisdiction. The Supreme Court in *Troice* was addressing whether the Securities Litigation Uniform Standards Act prohibited the Louisiana Objectors' state law claims. *Id.* at 1062. But the fact that a statute did not prohibit the assertion of state law claims has little bearing on the questions presented

here about whether the Court can or should enjoin related litigation as part of a receivership settlement. Accordingly, *Troice* does not require rejection of the settlement and bar orders.

### IV. THE COURT DENIES THE MOTION TO COMPEL

Some Objectors also filed a joint motion to compel mediation. The Receiver, Underwriters, OSIC, and the Examiner all oppose further mediation. Because ordering such mediation at this stage and on these issues is unlikely to resolve the Objectors' concerns while assuredly imposing significant additional costs on all parties involved, the Court denies the motion to compel mediation.

### CONCLUSION

The Court denies the objections to the Insurance Settlement and denies the Objectors' motion to compel.

Signed May 16, 2017.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 16