**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § | |

## <u>FINAL BAR ORDER</u>

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Certain Underwriters at Lloyd's of London,[1] Arch Specialty Insurance Company, and Lexington Insurance Company (collectively "Underwriters"), to Enter the Bar Order, to Enter the Final Judgments and Bar Orders, and for Attorneys' Fees (the "Motion"), filed by Ralph S. Janvey, in his capacity as court-appointed Receiver for Stanford International Bank, Ltd. et al. (the "Receiver").  Docket No. 2324.  The Motion concerns an Agreement (the "Agreement")[2] among and between Underwriters, the Official Stanford Investors Committee, and the Receiver.  Underwriters and the Receiver are parties to *Certain Underwriters at Lloyd's of London, et al. v. Ralph S. Janvey, et al.*, Civil Action No. 3:09-CV-01736 (the "Coverage Action").  The Court-appointed Examiner signed the Agreement as Examiner solely to evidence his support and approval of the Agreement and to confirm his obligations to post the

---

[1] "Certain Underwriters at Lloyd's of London" means Lloyd's of London Underwriting Members in Syndicates 2987, 2488, 1886, 1084, 4000, 1183, and 1274.

[2] The term "Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion.

Notice on his website, but is not otherwise individually a party to the Coverage Action or the Agreement.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I. INTRODUCTION

On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for the Stanford Entities. Docket No. 10, *Securities and Exchange Commission v. Stanford International Bank, Ltd.*, No. 3:09-cv-298 (N.D. Tex.) (the "SEC Action"). Following his appointment, the Receiver made claims for coverage (the "Direct Claims") under three insurance policies issued by Underwriters to the Stanford Entities: (1) Financial Institutions Crime and Professional Indemnity Policy, Policy Number 576/MNA851300 (the "PI Policy"); (2) Directors' and Officers' Liability and Company Indemnity Policy, Policy Number 576/MNK558900 (the "D&O Policy"); and (3) Excess Blended Wrap Policy, Policy   Number 576/MNA831400 (the "Excess Policy," and collectively with the PI Policy and the D&O Policy, the "Insurance Policies" or the "Policies").

The Insurance Policies provide for certain limits of the amount of coverage available. The Parties dispute the available limits, the legal effect of the provisions governing the Policies' limits, and the amount of the Policies' remaining limits.

Underwriters dispute there is coverage for the Direct Claims and filed the Coverage Action, seeking a declaration of no coverage under the Insurance Policies. The Receiver counterclaimed, alleging, *inter alia*, breach of contract, breach of the duty of good faith and fair dealing, bad faith under the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices Act.

Underwriters filed a motion for judgment on the pleadings, (Doc. 50, Coverage Action), to which the Receiver responded, (Doc. 58, Coverage Action), and which the Court denied, (Doc. 93,

Coverage Action).  Underwriters and the Receiver engaged in written discovery and electronic discovery, reviewing and analyzing voluminous Stanford documents maintained by the Receivership.  Numerous depositions were taken in the United States, London, and Mexico.

In addition to the Coverage Action, the Insurance Policies are or may be implicated in numerous other disputes.  The Receiver and the Committee filed numerous lawsuits against Underwriters' Insureds (the "Indirect Claims"),[3] who in turn made or may make claims for coverage under the Policies. Stanford Investors[4] also made numerous claims against Underwriters Insureds (the "Stanford Investor Claims"),[5] who in turn made or may make claims for coverage under the Insurance Policies.  Underwriters contend that the Insurance Policies do not provide coverage for the Indirect Claims or the Stanford Investor Claims, and they are involved in numerous lawsuits relating to the various claims for coverage under the Policies (the "Third-Party Coverage Actions").[6]  Nonetheless, pursuant to the Policies and as permitted by this Court's prior order (Docket No. 831), Underwriters have paid approximately $30.3 million for the defense costs of various of Underwriters' Insureds. The Receiver has intervened or sought to intervene in the Third-Party Coverage Actions.

The litigated resolution of the Coverage Action and the Third-Party Coverage Actions would likely cost millions of dollars and the outcome is uncertain. Recognizing the uncertainties, risks, and costs of litigation, the Receiver and Underwriters entered into formal, mediated

---

[3] The term "Underwriters' Insureds" is defined in Paragraph 25 of the Agreement. The term "Indirect Claims" is defined on page 3 of the Agreement.

[4] The term "Stanford Investors" is defined on pages 4-5 of the Agreement.

[5] The term "Stanford Investor Claims" is defined in Paragraph 21 of the Agreement.

[6] The term "Third- Party Coverage Actions" is defined in Paragraph 23 of the Agreement and Exhibit J to the Agreement.

3

settlement negotiations beginning in June 2015.  In addition to the Receiver and Underwriters, the Examiner participated in the settlement discussions, ensuring that the perspective of the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL" (Docket No. 1149)—would be heard in connection with any proposed settlement involving the Insurance Policies. Following the last day of mediation, the parties continued their negotiations and arrived at a settlement which the Agreement documents.

Under the terms of the Agreement, Underwriters will pay $65 million to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors with allowed claims. In return, Underwriters seek global peace with respect to all claims that have been asserted, or could have been asserted, against Underwriters arising out of, in connection with, or relating to: the events leading to this Receivership, the Coverage Action, the Third-Party Coverage Actions, the Indirect Claims, and the Stanford Investor Claims; all matters that were or could have been asserted in the Coverage Action, the Third-Party Coverage Actions, the Indirect Claims, and the Stanford Investor Claims; the Insurance Policies; Underwriters' relationship with the Stanford Entities;[7] and any actual or potential claim of coverage under the Insurance Policies in connection with the SEC Action, the Receivership, the Indirect Claims, the Stanford Investor Claims, or any claim asserted against any person who has ever had any affiliation with any of the Stanford Entities. Accordingly, the Settlement is conditioned on the Court's approval and entry of this Final Bar Order.

---

[7] The term "Stanford Entities" is defined in Paragraph 20 of the Agreement and Exhibit H to the Agreement.

On June 27, 2016, the Receiver filed the Motion. [ECF No. 2324]. The Court thereafter entered a Scheduling Order on July 11, 2016 [ECF No. 2333], which, *inter alia*, authorized the Receiver to provide notice of the Agreement, established a briefing schedule on the Motion, and set the date for a hearing. On October 28, 2016, the Court held the scheduled hearing. For the reasons set forth herein, the Court finds that the terms of the Agreement are adequate, fair, reasonable, and equitable, and that it should be and is hereby **APPROVED**.  The Court further finds that entry of this Final Bar Order is appropriate.

## II.  ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Terms used in this Final Bar Order that are defined in the Agreement, unless expressly otherwise defined herein, have the same meaning as in the Agreement.

2.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Bar Order. *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and the Receiver is the proper party to seek entry of this Final Bar Order.

3.      The Court finds that the methodology, form, content and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all interested Persons of the Agreement, the releases therein, and the injunctions provided for in this Final Bar Order and in the Final Judgments and Bar Orders to be entered in the Coverage Action and the Third-Party Coverage Actions; (iv) were reasonably calculated, under the circumstances, to apprise all interested Persons of the right to object to the Agreement, this

Final Bar Order, and the Final Judgments and Bar Orders to be entered in the Coverage Action and the Third-Party Coverage Actions, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.      The Court finds that the Agreement was reached following substantial litigation and an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length, mediated negotiations involving experienced and competent counsel. The competing claims in the Coverage Action and the Third-Party Coverage Actions involve complex legal and factual issues that would require a substantial amount of time and expense to litigate, with uncertainty as to the outcome.  The range of possible outcomes includes that there may be no coverage of any kind under the Insurance Policies, that there may be less coverage than the amount provided for in the Agreement, or that there may be more coverage than the amount provided for in the Agreement. In any event, the proceeds of the Insurance Policies represent a finite pool of resources.  In the absence of the Agreement, the proceeds of the Insurance Policies, to whatever extent they are available, would be dissipated through mere happenstance, rather than through consideration of equity or fairness.

5.      Further, it is clear that Underwriters would never agree to the terms of the Agreement unless they were assured of "total peace" with respect to all claims that have been, or could be, asserted against Underwriters arising from, in connection with, or relating to the actual or alleged insurer-insured relationship between Underwriters, on the one hand, and Underwriters' Insureds, the Stanford Entities, and the Stanford Investors, on the other hand.

6

6.     The injunction against any such claims against Underwriters is therefore a necessary and appropriate order ancillary to the relief obtained for the Stanford Entities, and by extension, the victims of the Stanford Ponzi scheme, pursuant to the Agreement. *See Kaleta*, 530 F. App'x at 362 (entering bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding).

7.     Pursuant to the Agreement and upon motion by the Receiver, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement Amount (less attorneys' fees and expenses) to Stanford Investors who have claims approved by the Receiver.  The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their claims through the Receiver's claims process previously approved by the Court (ECF No. 1584).

8.     The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

9.     Accordingly, the Court finds that the Agreement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Underwriters, Underwriters' Insureds, the Stanford Entities, the Receiver, or the Receivership Estate.  The settlement, the terms of which are set forth in the Agreement, is hereby fully and finally approved.  The Parties are directed to implement and consummate the Agreement in accordance with its terms and provisions and this Final Bar Order.

10.     Based on the considerations outlined herein, the Court further finds that the Agreement and this Order are fair, just, and equitable, notwithstanding the fact that some individuals who may qualify as Underwriters' Insureds will no longer be in a position to seek

insurance coverage from Underwriters for Stanford-related claims against them that are not resolved by the Agreement.

11.     Pursuant to the provisions of Paragraph 39 of the Agreement, as of the Settlement Effective Date, Underwriters and the Underwriters Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by the Receiver or the Committee, including any action, cause of action, suit, liability, claim, right of action, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Receiver, the Receivership Estate, the Committee, the Claimants, Underwriters' Insureds, the Stanford Investors, and the Persons, entities and interests represented by those Persons ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Insurance Policies; (ii) the Stanford Entities; (iii) any certificate of deposit, CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iv) any one or more of Underwriters' relationships with any one or more of the Stanford Entities; (v) any actual or potential claim of coverage under the Insurance Policies in connection with the SEC Action, the Receivership, the Indirect Claims, the Stanford Investor Claims, or any claim asserted against any Stanford Defendant or any other Person who has ever had any affiliation with any Stanford Defendant; (vi) the Coverage Action; (vii) the Third-Party Coverage Actions; (viii) the Indirect Claims; and (ix) all matters that were or could have been asserted in SEC Action, the Coverage Action, the Indirect Claims, the Stanford

Investor Claims, and/or the Third-Party Coverage Actions, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

12.     Pursuant to the provisions of Paragraph 40 of the Agreement, as of the Settlement Effective Date, the Receivership's Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by Underwriters.

13.     Notwithstanding anything to the contrary in this Final Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Agreement or bar the Parties from enforcing or effectuating the terms of the Agreement.

14.     The Court hereby permanently bars, restrains and enjoins the Receiver, the Receivership Estate, the Committee, the Claimants, the Stanford Investors, Underwriters' Insureds, the Interested Parties, and all other Persons or entities, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against any of the Underwriters or any of the Underwriters Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including but not limited to litigation, arbitration, or other proceeding, in any Forum, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, related to, or is connected with (i) the Insurance Policies; (ii) the Stanford Entities; (iii) any certificate of deposit, CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iv) any one or more of Underwriters' relationships with any one or more of the Stanford Entities; (v) any actual or potential claim of coverage under the Insurance Policies in

connection with the SEC Action, the Receivership, the Indirect Claims, the Stanford Investor Claims, or any claim asserted against any Stanford Defendant or any other Person who has ever had any affiliation with any Stanford Defendant; (vi) the Coverage Action; (vii) the Third-Party Coverage Actions; (viii) the Indirect Claims; (ix) the Stanford Investor Claims; and (x) all matters that were or could have been asserted in SEC Action, the Coverage Action, the Indirect Claims, the Stanford Investor Claims, and/or the Third-Party Coverage Actions, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

15.     Underwriters and the Underwriters Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the management, investment, disbursement, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Agreement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Agreement or this Final Bar Order.

16.     The Court finds entry of the bar order in exchange for the payment of the Settlement Amount in accordance with the terms of the Agreement is fair and reasonable based on at least the following considerations:  (i) Underwriters are entitled to exhaust policy limits by settling with one but not all insureds; (ii) the insurance proceeds represent a finite pool of resources available to satisfy claims against Underwriters' Insureds; (iii) there is a substantial dispute over the amount

of the proceeds available under the Insurance Policies; (iv) the proceeds of the Insurance Policies may be less than the Settlement Amount, in which case the Agreement would result in the exhaustion of the proceeds under the Insurance Policies; (v) in the absence of a global settlement and bar order, Underwriters would be unwilling to pay the Settlement Amount and thus allowing any Person to retain the right to litigate the questions of coverage and available policy limits could work to the detriment of all persons interested in the Insurance Policies; (vi) in the absence of a settlement, the potential beneficiaries of the Insurance Policies might recover substantially less than is being made available pursuant to the Insurance Policies; (vii) the Settlement Amount is fair and equitable taking into account the merits of the claims and potential claims released and Underwriters' defenses to those claims and potential claims; and (viii) the Agreement represents a fair and reasonable balancing of the various interests implicated by the Insurance Policies and disputes and controversies related thereto.

17.     Nothing in this Final Bar Order or the Agreement and no aspect of the Agreement or negotiation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations or defenses in the Coverage Action, the Indirect Claims, the Stanford Investor Claims, the Third-Party Coverage Actions, or any other proceeding.

18.     Nothing in this Final Bar Order is intended to release the Receiver or the Committee's claims in the proceedings identified in Exhibit B to the Agreement, or prevent, bar, restrain, or enjoin the continuation of such proceedings by the Receiver or the Committee.

19.     Underwriters are hereby ordered to deliver the Settlement Amount ($65,000,000) as described in Paragraphs 19 and 26 of the Agreement.  Further, the Parties are ordered to act in conformity with all other provisions the Agreement.

20.     Without in any way affecting the finality of this Final Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the Agreement, the Scheduling Order, and this Final Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to the Receiver's counsel.

21.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Bar Order, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

22.     This Final Bar Order shall be served by counsel for the Receiver, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Agreement, or this Final Bar Order.

SIGNED on May 16, 2017.


DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE