UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | |
| Defendants. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:09-CV-01736-N |
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT APPOINTED RECEIVER FOR STANFORD INTERNATIONAL BANK, LTD., *et al.*, | |
| Defendants. | |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:13-CV-2226-N |
| PABLO M. ALVARADO, *et al.*, | |
| Defendants. | |

CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON, *et al.*,

        Plaintiffs,

        v.

PAUL D. WINTER, *et al.*,

        Defendants.

Civil Action No. 3:15-CV-1997-N

CLAUD F. REYNAUD, *et al.*,

        Plaintiffs,

        v.

CERTAIN UNDERWRITERS AND LLOYD'S OF
LONDON, *et al.*,

        Defendants.

Civil Action No. 3:14-CV-3731-N

## BRIEF IN SUPPORT OF MOTION FOR A NEW TRIAL OR

## TO ALTER AND AMEND FINAL BAR ORDER ENTERED

## MAY 16, 217 [DOCKET NO. 2519] GRANTING

## SETTLEMENT AND ORDER DENYING OBJECTIONS

## [DOCKET NO. 2518] PURSUANT TO FED. R. CIV. P. 59

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................................................... 1

I.      INTRODUCTION ............................................................................................. 2

II.     THE OFEs POSSESS INDEPENDENT BREACH OF CONTRACT
        AND FIDUCIARY DUTY CLAIMS FOR LOSSES AGAINST THE
        UNDERWRITERS, WHICH WERE NOT DERIVATIVE OF CLAIMS
        AGAINST THE RECEIVERSHIP ENTITIES AND ARE NOT
        PROPERTY OF THE ESTATE ......................................................................... 3

III.    THE COURT MAY NOT USE ITS BROAD EQUITABLE POWERS
        UNDER THE ALL WRITS ACT TO DEPRIVE THE OFEs OF
        INDEPENDENT CONTRACTUAL PROPERTY RIGHTS WITHOUT
        THE OFEs CONSENT OR JUST COMPENSATION ..................................... 6

IV.     MOST OF THE OFEs RECEIVED NO MATERIAL BENEFIT FROM
        THE SETTLEMENT AND BAR ORDER....................................................... 10

V.      THE BAR ORDER COULD BE MODIFIED TO ADDRESS MOST
        OF THE OFEs' OBJECTIONS WITHOUT DESTROYING THE
        SETTLEMENT.............................................................................................. 12

VI.     CONCLUSION............................................................................................... 13

## TABLE OF AUTHORITIES

### Cases

Page

*Application of U.S. in Matter of Order Authorizing Use of a Pen Register,*
538 F.2d 956 (2d Cir. 1976) ......................................................................... 7

*Atlas Life Ins. Co. v. W.I. Southern, Inc.,*
306 U.S. 563, 59 S. Ct. 675 (1939) .............................................................. 9

*Bryant v City of Memphis,*
2014 WL 11515523, at *1 (W.D. Tenn. Dec. 3, 2014) ............................... 1

*Certain Underwriters at Lloyd's of London, et al. v. Ralph Janvey, in his capacity as court
appointed receiver for Stanford International Bank, Ltd., et al.,*
Civil Action No. 3:09-cv-01736-N (N.D. Tex.) ...................................... 12

*Chemical & Indus. Corp. v. Druffel,*
301 F.2d 126 (6th Cir. 1962) ....................................................................... 7

*Commodity Futures Trading Comm'n v. Equity Fin. Grp.,*
2007 WL 2139399 (D.N.J. July 23, 2007) ................................................. 2

*Grupo Mexicano d Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
527 U.S. 308, 119 S. Ct. 1961 (1999) ......................................................... 8

*Harmelin v. Man Financial Inc.,*
2007 WL 4571021 (E.D. Pa. Dec. 28, 2007) ............................................. 2

*Henderson v. Walled Lake Consol. Sch.,*
469 F.3d 479 (6th Cir. 2006) ....................................................................... 1

*In re Apple, Inc.,*
149 F. Supp. 3d 341 (E.D.N.Y. 2016) .................................................. 7, 12

*In re SportsStuff,*
430 B.R. 170 (B.A.P. 8th Cir. 2010) ........................................................... 6

*In re Sunrise Sec. Litig.,*
698 F. Supp. 1256 (E.D.Pa.1988) ............................................................... 8

*Intera Corp. v. Henderson,*
428 F.3d 605 (6th Cir. 2005) ....................................................................... 1

*Janvey v. Alguire,*
Civil Action No. 3:09-cv-00724-N (N.D. Tex.) ...................................... 11

*Janvey v. Democratic Senatorial Campaign Comm.*,
  712 F.3d 185 (5th Cir. 2013) ............................................................ 5

*Janvey v. Golf Channel, Inc.*,
  487 S.W.3d 560 (Tex. 2016) ...................................................... 11, 13

*Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*,
  272 F.3d 908 (6th Cir. 2001) ............................................................ 4

*Matter of Vitek, Inc.*,
  51 F.3d 530 (5th Cir. 1995) ............................................................. 4

*Matter of Zale Corp.*,
  62 F.3d 746 (5th Cir. 1995) .......................................................... 5, 8

*Morrow v. District of Columbia*,
  417 F.2d 728 (D.C. Cir. 1969) ......................................................... 7

*Paramount Film Distributing Corp. v. Civic Center Theatre, Inc.*,
  333 F.2d 358 (10th Cir. 1964) ......................................................... 7

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
  600 F.3d 562 (5th Cir. 2010) ........................................................... 4

*S.E.C. v. Kaleta*,
  2012 WL 401069 (S.D. Tex. Feb. 7, 2012) ..................................... 2

*S.E.C. v. Kaleta*,
  530 F. App'x 360 (5th Cir. 2013) ............................................ 2, 3, 10

*S.E.C. v. Parish*,
  2010 WL 8347143, at *5 (D.S.C. 2010) ..................................... 6, 10

*S.E.C. v. Wencke*,
  742 F.2d 1230 (9th Cir. 1984) ......................................................... 8

*S.E.C. v. Capital Consultants, LLC*,
  2002 WL 31470399 (D. Or. Mar. 8, 2002) ...................................... 2

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
  2015 WL 10845785 (N.D. Tex Sept. 23, 2015) ............................... 2

*Sec. & Exch. Comm'n v. Alleca*,
  2015 WL 11199076, at *3 (N.D. Ga. Oct. 15, 2015) ....................... 2

*Sec. & Exch. Comm'n v. DeYoung*,
  850 F.3d 1172 (10th Cir. 2017) ....................................................... 2

*Starkville Mun. Separate Sch. Dist. v. Cont'l Cas. Co.*,
   772 F.2d 168 (5th Cir. 1985) ............................................................... 4

*Taylor v. Allstate Ins. Co.*,
   356 S.W.3d 92 (Tex. App. 2011) ......................................................... 4

*TBG, Inc. v. Bendis*,
   36 F. 3d 916 (10th Cir. 1994) ......................................................... 7, 8

*Texas Farmers Ins. Co. v. Soriano*,
   844 S.W.2d 808 (Tex. App.–San Antonio 1992), *rev'd*, 81 S.W.2d 312 (Tex. 1994) ............... 4

*Transport Ins. Co. v. Faircloth*,
   898 S.W.2d 269 (Tex. 1995) ............................................................... 3

*United States Fidelity & Guar. v. Patriot's Point Dev. Auth.*,
   772 F. Supp. 1565 (D.S.C.1991) ......................................................... 8

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159, 98 S. Ct. 364, 54 L.Ed.2d 376 (1977) ............................. 7

*United States v. Reliable Transfer Co.*,
   421 U.S. 397, 95 S. Ct. 1708, 44 L.Ed.2d 251 (1975) ............................. 8

*Wuliger v. Mfr's Life Ins. Co.*,
   567 F.3d 787 (6th Cir. 2009) ......................................................... 5, 6

## Statutes

28 U.S.C.A. § 1651 .............................................................................. 6

Fed. R. Civ. P. 59 .............................................................................. 1, 13

Tex. Bus. & Com. Code Ann. § 24.013 ......................................................... 11

## Treatises

Joseph Story, 1 Commentaries on Equity Jurisprudence § 19 ...................................... 9

## SUMMARY OF ARGUMENT

The Objecting Former Employees[1] ("OFEs"), pursuant to F.R.C.P. 59, move the Court to reconsider and alter or amend, or to order a new trial on, the Final Bar Order [Docket No. 2519] granting the Receiver's Motion to Approve Proposed Settlement with Certain Underwriters at Lloyd's of London, Arch Specialty Insurance Company, and Lexington Insurance Company (the "Underwriters"), to Enter the Bar Order, to Enter the Final Judgments and Bar Orders, and for Attorneys' Fees, filed by Ralph S. Janvey, in his capacity as court-appointed Receiver for Stanford International Bank, Ltd., et al. [Docket No. 2324] and the Order addressing the Objections to the Motion [Docket No. 2518] (the "Lloyd's Settlement Order"), in order to avoid clear error of law and prevent manifest injustice to the OFEs.[2] In submitting this Motion, the OFEs rely upon and adopt the evidence in the record and the legal arguments already set forth in all of the Objecting Parties' Briefs which are incorporated in this Motion, but will not rehash them here. Instead, the OFEs will focus on key issues they respectfully believe the Court overlooked or failed to sufficiently consider. The OFEs respectfully submit that the Lloyd's Settlement Order is based on clear error of law and is manifestly unjust to the OFEs for the following reasons:

1.    The Lloyd's Settlement Order summarily and without due process bars and finally adjudicates independent breach of contract and fiduciary duty claims between the Underwriters and the OFEs, as independent insureds, under the Policies, which they claim are co-equal to the Receiver's interest and not property of the Receivership Estate. While the Court has the power to temporarily stay third party litigation, it does not have the power to permanently bar, effectively

---

[1] Individual OFEs by name identified on Exhibit A, attached hereto.
[2] *See Bryant v City of Memphis*, No. 2:14-cv-02122-JTF-cgc, 2014 WL 11515523, at *1 (W.D. Tenn. Dec. 3, 2014) ("A district court may grant a motion for reconsideration or a motion to alter or amend a judgment only when there is: " '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (3) a need to prevent manifest injustice.' " *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479 (6th Cir. 2006) quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).")

finally adjudicate, and destroy independent rights between non-Receivership third parties, especially without just compensation.

2.      The Lloyd's Settlement Order deprives the OFEs of independent contract and fiduciary rights and does not provide a meaningful benefit to the OFEs for their independent contract and fiduciary claims for general damages and payment of attorneys' fees and costs. The Lloyd's Settlement Order specifically applies the proceeds to the payment of claims of Stanford Investors for loss of their investments in the SIBL CDs. The OFEs will derive no benefit from those payments.

3.      The Lloyd's Settlement Order is unfair and unnecessarily burdensome on the OFEs and could be remedied by simply requiring the settlement to be conditioned on releasing and discharging the Receiver's claims against the OFEs.

## ARGUMENT AND CITATION OF AUTHORITY

## I.      INTRODUCTION

The Lloyd's Settlement Order should be withdrawn or reconsidered and altered to avoid clear error of law and manifest injustice to the OFEs, because the Court has overstepped the scope of its power under the All Writs Act, ignored the undisputed contractual rights of the OFEs in the Policies, and failed to properly consider and apply the key factors deemed essential by the Fifth Circuit in *S.E.C. v. Kaleta*, 530 F. App'x 360, 362-63 (5th Cir. 2013), and its progeny,[3] in determining whether the proposed settlement should be approved. Unlike the Bar Order entered in

---

[3] *See Sec. & Exch. Comm'n v. DeYoung*, 850 F.3d 1172, 1183 (10th Cir. 2017); *Sec. & Exch. Comm'n v. Alleca*, No. 1:12-CV-3261-WSD, 2015 WL 11199076, at *3 (N.D. Ga. Oct. 15, 2015). *See also, S.E.C. v. Stanford Int'l Bank, Ltd.*, No. 3:09-CV-0298-N, 2015 WL 10845785 (N.D. Tex. Sept. 23, 2015); *S.E.C. v. Kaleta*, No. 4:09-3674, 2012 WL 401069 (S.D. Tex. Feb. 7, 2012); *Harmelin v. Man Fin. Inc.*, Nos. 06-1944, 05-2973, 2007 WL 4571021 (E.D. Pa. Dec. 28, 2007); *Commodity Futures Trading Comm'n v. Equity Fin. Grp.*, No. 04-1512 (RBK), 2007 WL 2139399 (D.N.J. July 23, 2007); *S.E.C. v. Capital Consultants, LLC*, No. 00-1290-KL, 2002 WL 31470399 (D. Or. Mar. 8, 2002).

this case, both in *Kaleta* and the cases following *Kaleta*, each of the federal equity courts entered orders barring direct or derivative third party claims against third parties <u>only</u> if the claimants' claims were <u>not</u> extinguished and the claimants were allowed to pursue their claims against a fund provided by the receivership or no interested party objected to the bar order.[4] Unlike *Kaleta* and its progeny, the Settlement Agreement and Bar Order approved in this case improperly, and in contradiction to the usage and principles of law, deprive the OFEs of independent contractual and tort claims against the Underwriters, without just compensation or even due process evidentiary hearings. <u>Federal courts cannot apply their equity power under the All Writs Act to deprive third parties of independent non-derivative contract and tort claims without due process and just compensation.</u>

## II.   THE OFEs POSSESS INDEPENDENT BREACH OF CONTRACT AND FIDUCIARY DUTY CLAIMS FOR LOSSES AGAINST THE UNDERWRITERS, WHICH WERE NOT DERIVATIVE OF CLAIMS AGAINST THE RECEIVERSHIP ENTITIES AND ARE NOT PROPERTY OF THE ESTATE

It is undisputed that the Receiver and the OFEs are equal co-insureds under the Policies and proper notification has been sent to the Underwriters of the OEFs' claims for coverage under the Policies. Under Texas insurance law, both OFEs and the Receiver have an equal and independent right and claim to enforce both the contractual and fiduciary obligations under, as well as in the proceeds of, those Policies. Therefore, until the Underwriters have paid out policy limits under the Policies, the Underwriters have a good faith obligation, equal to any obligation they may have to the Receiver, to pay the OFEs losses, including defense costs covered under the Policies. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279 (Tex. 1995) (the duty of good faith and fair dealing arises from the special relationship between the insured and the insurer).[5]

---

[4] *See* cases cited in note 2.

[5] The cases cited by the Receiver that allegedly authorized the Underwriters to ignore the OFEs' claims under the Policies and obtain a release from liability without tendering policy limits are not on point. In those cases no claims

While attorneys for various parties have made conclusory and contradictory statements, there have been no evidentiary findings that policy limits have been exhausted.[6] In fact, the Receiver admits that at least $35,000,000 in coverage remains. Therefore the OFEs have a claim to the remaining proceeds independent of the Receiver and the Receivership Entities.

It is true that under certain circumstances insurance companies have the right to settle claims in a manner that would exhaust policy limits before all claims are paid, but those claims must be paid in good faith without collusion to defeat the interest of other insureds in bad faith. If the insurer breaches that duty of good faith to the detriment of the co-insured, then the co-insured has an undisputed claim against the insurer, separate and apart from the claim on the insurance proceeds ("Bad Faith Claims"). *See Matter of Vitek, Inc.*, 51 F.3d 530, 536-37 (5th Cir. 1995) (co-insured has potential claim for damages against insured under a breach of good faith cause of action if he believes an unfair settlement has been effected); *Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92, 102 (Tex. App. 2011) (co-insured not barred to assert statutory based claims against insurer related to settlement with third party). Here, the Underwriters are tendering less than policy limits to a handful of insureds upon the condition that the claims of other insureds are permanently

---

of bad faith were found when an insurer settled one third party claim in good faith, reducing the policy limit to an amount less than the settlement demand of the third party claimant. The interest of an equal co-insured under the policy was not involved and there was no evidence of collusion and bad faith by settling co-insured and the insurance companies. *See Texas Farmers Ins. Co. v. Soriano*, 844 S.W.2d 808 (Tex. App.–San Antonio 1992), *rev'd*, 81 S.W.2d 312 (Tex. 1994).

[6] Nor has there been any finding that attorney fees and costs claimed by the OFEs as losses are not covered. *See Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 570, 574 (5th Cir. 2010); *see also Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 911 (6th Cir. 2001) (noting that even if "loss" did not include disgorgement or restitution, an insured may suffer loss from incurring legal expenses to defend against a suit seeking restitution or disgorgement; "Those expenses would be a loss to the company not offset by any benefit to it, unlike the 'expense' that consists simply of the value of the stolen property, a wash."); *Starkville Mun. Separate Sch. Dist. v. Cont'l Cas. Co.*, 772 F.2d 168, 170 (5th Cir. 1985) (for a policy that defined "loss" to not include "matters which shall be deemed uninsurable under the law," costs and attorney's fees to defend against a plea for punitive damages were covered even though under Mississippi law punitive damages were uninsurable for reasons of public policy; reasoning that if the insurer "intended to exclude these other costs from the policy's coverage, it needed to do so more explicitly").

barred. Under these facts, the OFEs have ample grounds to asset bad faith claims directly against the Underwriters. *See Matter of Zale Corp.*, 62 F.3d 746, 755-56 (5th Cir. 1995).

The Bad Faith Claims are not connected to or derivative of any right or interest in the proceeds or the policy held by the Receivership on behalf of a Receivership interest. They remain, even if, and perhaps especially if, the Underwriters exhaust the limits of the Policies. *Id.*[7] The OFEs separate contractual and fiduciary rights in the Policies are independent from and do not belong to the Receivership Entities, and are therefore not Receivership property subject to the jurisdiction of this Court to marshal as an asset of the Receivership Estate. Because the Receiver stands in the shoes of the Receivership Entities, any property interest the Receiver (and consequently the Receivership Estate) may claim in the policies and the proceeds are subject to and cannot nullify or subsume the co-equal interests of the OFEs. *See Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 185-89 (5th Cir. 2013).

As a result, the Receivership Entities themselves lack standing to waive, release, or discharge the OFEs independent contract and fiduciary duty claims under the Policies. Since the Receiver's rights are limited to those of the Receivership Entities, the Receiver also lacks standing to waive, release, or discharge those claims. Thus, the Receiver and the Receivership Entities lack standing to enforce discharge or compromise the OFEs' rights in those Policies. *See Wuliger v. Mfr's Life Ins. Co.*, 567 F.3d 787, 794 (6th Cir. 2009) (receivership lacked standing to litigate investor fraud claims because none of the entities would have been able to claim any tangible

---

[7] The OFEs bad faith claims against the Underwriters under the Policies do not affect any property interest of the Receivership. As the Fifth Circuit noted in discussing similar third party bad faith insurance claims, "[i]f either Feld or NUFIC were to prevail on a bad faith claim against CIGNA, compensation would derive not from the Zale D & O policy proceeds, but from CIGNA's other assets. Because CIGNA proposes only to contribute the $10 million policy limit to the estate and the maximum amount that the estate could claim from CIGNA with respect to the policy is that same $10 million, any outlays outside of that fund to not affect the estate." *Matter of Zale Corp.*, 62 F.3d 746, 755-56 (5th Cir. 1995) (bad faith and contractual claims between third party insured and third party insured were not property estate and the bankruptcy court lacks jurisdiction to bar the third party claims).

injury traceable to the brokers' misrepresentations to the investors). Therefore, the Receiver had no right or standing to waive, compromise or discharge those rights absent the OFEs' consent, which the Receiver has pointedly not even attempted to obtain. *See Wuliger, id. See also In re SportsStuff,* 430 B.R. 170, 177-79 (B.A.P. 8th Cir. 2010).

## III.   THE COURT MAY NOT USE ITS BROAD EQUITABLE POWERS UNDER THE ALL WRITS ACT TO DEPRIVE THE OFEs OF INDEPENDENT CONTRACTUAL PROPERTY RIGHTS WITHOUT THE OFEs CONSENT OR JUST COMPENSATION

As this Court recognized in its order: "The power to bar nonsettling-party litigation against nonreceiver settling parties is not unlimited. Rather, 'the exercise of this authority is always subject to other limitations, statutory and constitutional, which limit the jurisdiction of federal courts.' *S.E.C. v. Parish*, 2010 WL 8347143, at *5 (D.S.C. 2010). But the Court's jurisdiction does extend to all assets of the receivership estate giving the Court 'power under the All Writs Act to issue injunctions to protect the estate's choses of actions . . . including any settlement reached in connection with those claims.' "*Id.* [Docket No. 2518 at pp. 6-7.] Thus, as the court did in *Parish*, this Court has based its authority to issue the Final Bar Order on 28 U.S.C.A. § 1651 ("All Writs Act").

The All Writs Act specifically provides:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and <u>agreeable to the usages and principles of law</u>.
>
> (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C.A. § 1651 (emphasis added).

The plain text of the statute thus confers on all federal courts the authority to issue orders where three requirements are satisfied:

1.      issuance of the writ must be "in aid of" the issuing court's jurisdiction;

2.      the type of writ requested must be "necessary or appropriate" to provide such aid to the issuing court's jurisdiction; and

3.      the issuance of the writ must be "agreeable to the usages and principles of law."

See In re Apple, Inc., 149 F. Supp. 3d 341, 350-51 (E.D.N.Y. 2016) (emphasis added). If an application under the All Writs Act meets all three of those requirements, the court "may" issue the requested writ in the exercise of its discretion—but it is never required to do so. See, e.g., Application of U.S. in Matter of Order Authorizing Use of a Pen Register, 538 F.2d 956, 961 (2d Cir. 1976), rev'd on other grounds, United States v. N.Y. Tel. Co., 434 U.S. 159, 98 S. Ct. 364, 54 L.Ed.2d 376 (1977); Morrow v. District of Columbia, 417 F.2d 728, 736 (D.C. Cir. 1969); Paramount Film Distributing Corp. v. Civic Center Theatre, Inc., 333 F.2d 358, 360 (10th Cir. 1964); Chemical & Indus. Corp. v. Druffel, 301 F.2d 126, 129 (6th Cir. 1962).

The Bar Order issued by the Court in this case exceeds the scope of the All Writs Act, because, as shown above, it is not "agreeable with usages and principals of law" and constitutes an unjust taking without due process or just compensation in violation of Article V of the United States Constitution and general equity principals. See also TBG, Inc. v. Bendis, 36 F. 3d 916, 928-29 (10th Cir. 1994) (bar order issued under All Writs Act reversed because the district court "did not order adequate compensation for this barred claim" . . . and did not consider whether settlement credit compensated [claimant] "for the loss of potential claims when it found settlement to be fair.").[8]

---

[8] The OFEs respectfully submit that the Court has failed to recognize the difference between the issuance of a temporary injunction, staying third parties from proceeding with litigation while the Receiver or trustee organizes the estate and marshals assets, which is perfectly appropriate, and the issuance of a permanent injunction, which acts as a final adjudication with res judicata effect and which is not appropriate and constitutes an unjust impairment of contract rights without due process or just compensation. See S.E.C. v. Wencke, 742 F.2d 1230, 1231-32 (9th Cir. 1984) ("Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the

The Court stated that, in part, it approved the Lloyd's Settlement Order, including the Bar Order, "[b]ecause on balance the unfairness alleged <u>by the Objectors is either mitigated by other</u> <u>circumstances or simply outweighed by the benefit of the settlement in terms of fairness, equity,</u> <u>reasonableness, and the best interests of the receivership . . . .</u>" (emphasis added). Order, Docket No. 2518, p. 10. But that is the wrong standard to apply in deciding whether to permanently bar the OFEs' independent contract rights and Bad Faith Claims. As stated in *TBG, Inc. v. Bendis*, 36 F. 3d 916, 926-27 (10th Cir. 1994):

> Nevertheless, the interest in settlement does not justify depriving third parties of their statutory rights. *See United States Fidelity & Guar. v. Patriot's Point Dev. Auth.*, 772 F. Supp. 1565, 1575 (D.S.C.1991) ("To the extent there is tension between the goal of promoting settlements and fundamental fairness to litigants, the latter must prevail."); *In re Sunrise Sec. Litig.*, 698 F. Supp. 1256, 1261 (E.D.Pa.1988); *cf. United States v. Reliable Transfer Co.*, 421 U.S. 397, 408, 95 S. Ct. 1708, 1714, 44 L.Ed.2d 251 (1975) ("Congestion in the courts cannot justify a legal rule that produces unjust results in litigation simply to encourage speedy out-of-court accommodations.").

Neither the All Writs Act nor traditional equity authorize a court to deprive a person of his or her contractual property rights without due process and just compensation. The U.S. Supreme Court has held that federal courts sitting in equity have only those powers that were exercised by the English Court of Chancery when the Judiciary Act of 1789 was adopted. *Grupo Mexicano d Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 1968 (1999) ("We have long held that '[t]he "jurisdiction" thus conferred [by the Judiciary Act of 1789] … is an authority to administer in equity suits the principles of the system of judicial remedies which had

---

receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance."); *see also Matter of Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995); *see also Benedis, supra* at 928-29.

been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries.'" (quoting *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568, 59 S. Ct. 675 (1939))).

The Court firmly embraced that the remedies available to equity courts are thus limited. *Id.* An equity court not only does not have unbounded discretion,[9] but the court cannot create or order remedies that were unknown to English equity courts in 1789: "[T]he equity powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence." *Id.*, 119 S. Ct. at 1974. "Even when sitting as a court in equity, we have no authority to craft a 'nuclear option' of the law like the one advocated here." *Id.*, 119 S. Ct. at 1975 (holding that the remedy sought there – a preliminary injunction to prevent defendants from disposing of assets pending adjudication of plaintiffs' contract claim for money damages – was historically unavailable in equity).

Similarly, this Court cannot create a new equitable remedy such as the Bar Order that the Court has approved here. There has been no showing that bar orders of this nature were within the repertoire of English equity courts in 1789. And it is highly unlikely that such remedies existed at that time. Even if equity courts recognized the availability of receivership, it boggles the mind to speculate that English equity courts as of 1789 had entered bar orders in receiverships to collect money for the estate of a Ponzi scheme, thereby immunizing liability insurers and barring hundreds of insureds from pursing their liability coverage. The "nuclear option" of summarily barring

---

[9] *See id.*, 119 S. Ct. at 1974 ("If, indeed, a Court of Equity in England did possess … unbounded jurisdiction … it would be the most gigantic in its sway, and the most formidable instrument of arbitrary power, that could well be devised. It would literally place the whole rights and property of the community under the sway of the Judge, … according to his own notions and conscience; but still acting with a despotic and sovereign authority." (quoting Joseph Story, 1 Commentaries on Equity Jurisprudence § 19, at 21).)

independent third party contract rights the Court has created is simply not within this Court's power to order.

Neither of the cases cited by the Court[10] violate the principals of equity stated above and deprive an objecting party of his or her contract rights without providing a mechanism for just compensation. In *Kaleta*, the objecting parties by their own pleadings established they lack standing to assert their claims, and in *Parish*, the settlement agreement and bar order specifically "channeled" the objecting parties' claims against the receivership entity (not a third party) into the claims resolution process.

Based on the foregoing, the OFEs respectfully submit that the Bar Order is "not agreeable with the usage and principals of law." It wrongfully interferes with the OFEs contract rights and is manifestly unjust to their interests and should not be allowed to stand.

## IV.   MOST OF THE OFEs RECEIVED NO MATERIAL BENEFIT FROM THE SETTLEMENT AND BAR ORDER

The Court also based its approval of the settlement agreement on the erroneous assumption that payment of the insurance proceeds would somehow benefit the OFEs. For the vast majority of the OFEs, this is simply not true. The settlement provides for the payment of $14,000,000 and $100,000 to the Receiver's counsel, and the remaining $51.9 million to "customers of Stanford International Bank." First, a large number of the OFEs did not invest in the SIBL CDs, are not customers of the bank, and thus did not file investor claims.[11] Second, a significant number of the OFEs neither sold the SIBL CDs[12] to their customers nor received any commissions from the sale

---

[10] *S.E.C. v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013), and *S.E.C. v. Parish*, 2010 WL 8347143, at *5 (D.S.C. 2010).

[11] There is no provision in the plan to compensate the OFEs for attorneys' fees and costs of litigation arising out of the Receiver's lawsuits against them. The pool is limited to investors in the SIBL CDs.

[12] *See* Appendix filed herewith, pp. 6 – 59 (Declarations of Stephen Barber, Frank Carpin, Greg Day, William Decker, Evan Farrell, Ward Good, John Mark Holliday, Robert Lenoir, Deems May, Trent Miller, Peter Montalbano, Jonathan Mote, Randall Pickett, Chris Prindle, Stephen Robinson, and William Stone) Case No. 3:09-cv-00298-N, originally filed November 4, 2016, Document Number 2432.

of the SIBL CDs. Any tiny reduction in investors' claims resulting from the insurance payout would not affect or reduce the OFEs' alleged liability for the sale of the CDs, because no liability exists.[13]

Nor would such payments reduce the meritless fraudulent transfer claims alleged by the Receiver against the OFEs. These alleged claw back claims are based on the amount of funds received by the OFEs from the Receivership Entities and not on any amount allegedly owed to or claimed by the investors. Thus, a reduction in the investor alleged claims by application of the insurance proceeds would have no effect on the amount the Receiver seeks from the OFEs.

Finally, because the OFEs have numerous defenses to the Receiver's meritless fraudulent transfer claims including, but not limited to, "good faith exchange of equivalent value,"[14] the losses the OFEs will seek to claim under the Policies will include attorneys' fees and costs for defending against the meritless fraudulent transfer claims. The Receivership Entities could not be held liable for the OFEs' attorneys' fees and costs, unless the Court specifically found them to be liable under Tex. Bus. & Com. Code Ann. § 24.013 (West) ("In any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just."). As of this date, only the Underwriters are obligated to reimburse the OFEs for these defenses costs.

As a result, unlike every other case cited by the Court and the Receiver, the Lloyd's Settlement Order allows the Underwriters to collude with the Receiver to deprive the OFEs of their independent contract rights and Bad Faith Claims without due process in the form of an evidentiary hearing or just compensation or even a mechanism to provide just compensation. This result is not

---

[13] *See* Ex. B to the Receiver's Amended Complaint, filed Dec. 18, 2009, in *Janvey v. Alguire*, C.A. No. 3:09-cv-00724-N, Dkt. #157, PageID 15571566.
[14] *See Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562-63, 567-73 (Tex. 2016).

only unfair, but is inconsistent with established precedent and limits on the scope of power provided a federal equity court under the All Writs Act.

## V.      THE BAR ORDER COULD BE MODIFIED TO ADDRESS MOST OF THE OFEs OBJECTIONS WITHOUT DESTROYING THE SETTLEMENT

In addition, the effective permanent adjudication and barring of the OFEs' independent Bad Faith claims without benefit or compensation is unnecessary.[15] As the record shows, the Receiver and the Underwriters reached a settlement agreement releasing and discharging the Receiver's claims against the OFEs (the "Original Settlement Agreement"). As admitted in a Brief filed by the Underwriters,[16] "[f]or the past three years, Underwriters have sought a global settlement with the Receiver that would resolve his direct claims to the Policies, as well as any existing or future claims against individual insureds" (emphasis added). The Underwriters claim that the Receiver and Underwriters entered into an agreement for "global peace" under which the Underwriters would pay the Receiver a total of $65,000,000 ("Mediation Settlement Offer"). In return, "the Settlement Payment shall fully release any and all insureds under the relevant policies" ("Mediation Settlement Agreement"). The settlement was contingent upon the Court granting a "broad statutory bar order." (See, Underwriters' Action, Dkt. 135, p. 8.) According to the Underwriters, the Underwriters were willing to pay, and the Receiver was willing to accept, $65 million to obtain a release and a bar order not only of the Receiver's claims, but the co-insureds' (including the OFEs') claims for coverage and related claims under the Policies. [Dkt. 135.] Because of its good faith obligation to all of the co-insureds, the release of all the co-insureds claims was so important to the Underwriters that when the Receiver reneged on its agreement to

---

[15] See In re Apple, supra, at 350-52 (under the All Writs Act, "the type of writ requested must be necessary and appropriate").
[16] Certain Underwriters at Lloyd's of London, et al. v. Ralph Janvey, in his capacity as court appointed receiver for Stanford International Bank, Ltd., et al., Civil Action No. 3:09-cv-01736-N (the "Underwriters' Action") [Dkt. 135, p. 4].

dismiss its complaint against them, the Underwriters filed an emergency motion to enforce the Mediation Settlement with the Court. *Id.*

The Original Settlement Agreement, while not providing complete compensation to the OFEs for their independent claims for attorneys' fees and costs already expended, would have provided sufficient benefit to be acceptable to the OFEs by enabling them to forego any additional costs and expenses defending against the Receiver's actions. The Underwriters have already established the terms of that agreement would be acceptable to them. The only party who found it objectionable, after the fact, was the Receiver.[17] The OFEs respectfully submit that the Lloyd's Settlement Order should be withdrawn and, at the very least, the Lloyd's Settlement Order should be amended or modified to require the inclusion of a release, discharge, and dismissal <u>with prejudice</u>, of all claims that were asserted or could have been asserted by the Released Parties, including the Receiver against the OFEs. With that modification, the OFEs' basic objections to a Bar Order with no benefit to them disappears, and the manifest injustice to the OFEs is substantially diminished.

## VI.   CONCLUSION

For the reasons stated above, the OFEs respectfully submit that the OFEs Motion to Alter or Amend the Lloyd's Settlement Order or, in the alternative, for a new trial, under Fed. R. Civ. P. 59, should be granted, and the Order should be altered and amended accordingly or, in the alternative, withdrawn entirely and the Receiver's Motion should be denied.

---

[17] Yet the Receiver would be giving up claims of only marginal value among other reasons, because of the availability of numerous defenses available to the OFEs to the Receiver's alleged fraudulent transfer claim, including the *Golf Channel's* "good faith reasonably equivalent value defense."

Dated:  June 12, 2017

        *s/ John C. Porter, Jr.*

John C. Porter, Jr.
Georgia Bar No. 584800
*Pro Hac Vice*
jporter@sbpllplaw.com
**SMILEY BISHOP & PORTER LLP**
1355 Peachtree Street N.E.
Suite 1150
Atlanta, GA  30309
Telephone:  (770) 829-3850
Facsimile:   (770) 673-0270

ATTORNEYS FOR: PABLO MAURICIO ALVARADO, TIFFANY ANGELLE, STEPHEN R. BARBER, LORI S. BENSING, FRANK CARPIN, MICHAEL CONRAD, GREG R. DAY, WILLIAM S. DECKER, EVAN FARRELL, JAMES FONTENOT, STEVE GLASGOW, RUSSELL WARDEN GOOD, MARK GROESBECK, DIRK HARRIS, JOHN HOLLIDAY, ALLEN JOHNSON, BRUCE LANG, ROBERT LENOIR, TREVOR LING, CLAUDIA MARTINEZ, JANIE MARTINEZ, AYMERIC MARTINOIA, BERT DEEMS MAY, JR., CAROL MCCANN, GERADO MEAVE, TRENTON MILLER, PETER MONTALBANO, JONATHAN MOTE, SPENCER MURCHISON, LUPE NORTHAM, TIM PARSONS, WILLIAM PEERMAN, JAMES D. PERRY, RANDALL PICKETT, CHRISTOPHER PRINDLE, A.J. RINCON, STEVE ROBINSON, JOHN SCHWAB, DOUG SHAW, WILLIAM O. STONE, JR., YOLANDA SUAREZ, PAULA S. SUTTON, CHARLES VOLLMER

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

                                         */s/ John C. Porter, Jr.*
                                   John C. Porter, Jr.
                                   **SMILEY BISHOP & PORTER LLP**
                                   1355 Peachtree Street N.E.
                                   Suite 1150
                                   Atlanta, GA  30309
                                   Telephone:  (770) 829-3850
                                   Facsimile:   (770) 673-0270

**EXHIBIT A**
**OBJECTING FORMER EMPLOYEES**

1   Alvarado, Pablo Mauricio
2   Angelle, Tiffany
3   Barber, Stephen R.
4   Bensing, Lori S.
5   Carpin, Frank
6   Conrad, Michael
7   Day, Greg R.
8   Decker, William S.
9   Farrell, Evan
10   Fontenot, James
11   Glasgow, Steve
12   Good, Russell Warden
13   Groesbeck, Mark
14   Harris, Dirk
15   Holliday, John
16   Johnson, Allen
17   Lang, Bruce
18   Lenoir, Robert
19   Ling, Trevor
20   Martinez, Claudia
21   Martinez, Janie
22   Martinoia, Aymeric
23   May, Jr., Bert Deems
24   McCann, Carol
25   Meave, Gerado
26   Miller, Trenton
27   Montalbano, Peter
28   Mote, Jonathan
29   Murchison, Spencer
30   Northam, Lupe
31   Parsons, Tim
32   Peerman, William
33   Perry, James D.
34   Pickett, Randall
35   Prindle, Christopher
36   Rincon, A.J.
37   Robinson, Steve
38   Schwab, John
39   Shaw, Doug
40   Stone, Jr., William
41   Suarez, Yolanda
42   Sutton, Paula S.
43   Vollmer, Charles