# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION, *et al.*, §
§
     Plaintiffs, §
§
v. §          Civil Action No. 3:09-CV-00298-N
§
STANFORD INTERNATIONAL BANK §
LTD., *et al.*, §
§
     Defendants. §

## ORDER

This Order addresses the objections[1] to the settlement between Plaintiffs Ralph S. Janvey (the "Receiver"), the Official Stanford Investors Committee ("OSIC"), and Samuel Troice, Martha Diaz, Paula Gilly Flores, Punga Punga Financial, Ltd., Manuel Canabal, Daniel Gomez Ferreiro, and Promotora Villa Marina, CA (collectively, the "Investor Plaintiffs") and Defendants Willis Towers Watson Public Limited Company f/k/a Willis Group Holdings Limited ("WTW"), Willis Limited, Willis North America, Inc. ("Willis NA"), Willis of Colorado, Inc. ("Willis-Colorado"), Willis of Texas, Inc. ("Willis-Texas"), and Amy S. Baranoucky (collectively, the "Willis Defendants"), and Bowen, Miclette & Britt, Inc. ("BMB") and Paul D. Winter, Dependent Executor of the Estate of Robert S. Winter ("Winter") (collectively, the "BMB Defendants"). [2369], [2383].    The Court

---

[1] Docs. 2464, 2466, 2467, 2468, 2469, 2470, and 2475.

ORDER – PAGE 1

overrules the objections and, by separate documents, approves the Settlements and enters the Bar Orders.

## I. THE INSURANCE LETTER LITIGATION AND SETTLEMENT

This Order arises from the long-running litigation between the Receiver, OSIC, and the Investor Plaintiffs, and the Willis and BMB Defendants. This litigation stems from the Willis Defendants' and BMB's business relationships with the entities R. Allen Stanford used to carry out his far-reaching Ponzi scheme. The facts of Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013) ("*DSCC*"), and are not recounted in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") by Stanford International Bank, Ltd. ("SIBL"), an offshore bank located in Antigua. Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality they were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

The Willis and BMB Defendants allegedly aided Stanford's fraud by misrepresenting the safety and security of the SIBL CDs. In particular, they allegedly allowed Stanford employees to draft insurance endorsement letters that the Willis and BMB Defendants then placed on their own letterhead. Prospective Stanford investors received these letters as marketing tools designed to generate more investments in SIBL CDs. The Willis and BMB Defendants provided these letters despite allegedly knowing that Stanford was defrauding those investors. *Id.* at ¶ 117.

After Stanford's scheme came to light, the SEC brought a securities fraud action against SIBL. As part of that action, the Court appointed the Receiver to take control of the various entities Stanford used to carry out his scheme. Among other duties, the Court charged the Receiver with recovering assets and distributing them to Stanford's victims. To do so, the Receiver sued various individuals and entities for losses suffered by the Stanford entities and allegedly caused by those individuals or entities. The Court also appointed OSIC to represent the interests of Stanford investors and to bring claims on their behalf as assigned by the Receiver. The Receiver and OSIC sued the Willis and BMB Defendants for aiding, abetting, or participating in breaches of fiduciary duty; aiding, abetting, or participating in fraudulent transfers; negligence or gross negligence; negligent retention or supervision of personnel; and participation in a fraudulent scheme and a conspiracy.

Apart from the Receiver and OSIC, various Stanford investors sued numerous entities that they allege played a role in the success of Stanford's fraud. Among those lawsuits is the Investor Plaintiffs' action against the Willis and BMB Defendants. The Investor Plaintiffs sued the Willis and BMB Defendants on behalf of a putative class of similarly situated Stanford investors, alleging that the Willis and BMB Defendants aided and abetted Stanford's violations of the Texas Securities Act, participated in a fraudulent scheme or conspiracy, were negligent or grossly negligent, and negligently retained or supervised personnel.

Not all of the Stanford investors chose to pursue their potential claims against the Willis and BMB Defendants through the Investor Plaintiffs' litigation. Instead, some opted

to sue the Willis or BMB Defendants in different courts, asserting different claims.  After extensive litigation over the proper forum for adjudicating those actions, this Court stayed the pending cases in other courts related to the Willis and BMB Defendants.

The settlements for which the Receiver, OSIC, the Investor Plaintiffs, and the Willis and BMB Defendants seek approval would provide a global resolution to all claims arising from the Willis and BMB Defendants' relationships with Stanford.  In exchange for a $120 million payment from the Willis Defendants and a $12.5 million payment from the BMB Defendants – money that would be distributed through the Receiver's claims distribution process – the Receiver, OSIC, and Investor Plaintiffs would release all their claims against the Willis and BMB Defendants.  More controversially, the Receiver also agreed to seek orders permanently enjoining any other pending or future claims against the Willis and BMB Defendants arising from their relationship with Stanford (the "Bar Orders").  If the Court does not enter the Bar Orders, the Settlements allow the Willis and BMB Defendants to terminate the agreements.  The court-appointed Examiner supports the Settlements, and the SEC does not object.  However, parties who asserted their own claims against the Willis and BMB Defendants in other courts – claims that the Bar Orders would permanently enjoin – filed several objections arguing that the Bar Orders are improper.

## II. THE LAW GOVERNING BAR ORDERS IN EQUITABLE RECEIVERSHIPS

"[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership." *SEC v. Kaleta,* 2012 WL 401069, at *4 (S.D. Tex. 2012) ("*Kaleta I")* (quoting *Gordon v. Dadante*, 336 F. App'x 338, 340 (6th Cir. 2009)).  Instead,

the Court "has broad powers and wide discretion to determine the appropriate relief." *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) ("*Kaleta II*") (quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372–73 (5th Cir. 1982)).

Among a district court's powers related to administering an equity receivership is the power to issue ancillary relief measures. *Id.* (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). Ancillary relief in SEC enforcement actions may include "injunctions to stay proceedings by nonparties against the receivership." *Id.* Courts use ancillary relief in the form of bar orders to secure settlements in receivership proceedings and to "preserve the property placed in receivership pursuant to SEC actions." *Kaleta I*, 2012 WL 401069, at *3 (citing *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010)). Courts have not limited the use of bar orders to barring claims against receiverships only; courts have also used bar orders to bar claims against third parties settling with receiverships. *See id.* at *8 (approving settlement and bar order prohibiting third-party claims against nonreceivership entities), *aff'd*, *Kaleta II*, 530 F. App'x at 362–63; *SEC v. Kaleta*, 2013 WL 2408017, at *6–8 (S.D. Tex. 2013) ("*Kaleta III*") (approving bar order prohibiting third-party claims by insureds against insurance company that issued policies to defendant in receivership proceeding).

Courts utilize bar orders if they are both necessary to effectuate a settlement and "fair, equitable, reasonable, and in the best interest of the Receivership Estate." *Kaleta III*, 2013 WL 2408017, at *6. To determine whether it is necessary to stay proceedings by nonparties to a receivership settlement, courts consider a variety of factors, including "the value of the proposed settlement, the value and merits of the Receiver's potential claims, the value and

ORDER – PAGE 5

merits of any foreclosed parties' potential claims, the complexity and costs of future litigation, the risk that litigation costs would dissipate Receivership assets, the implications of any satisfaction of an award on other claimants, and any other equities attendant to the situation." *Kaleta I*, 2012 WL 401069, at *4 (citing *Liberté Capital Grp., LLP v. Capwill*, 462 F.3d 543, 553 (6th Cir. 2006); *Wencke*, 622 F.2d at 1371; *Gordon*, 336 F. App'x at 544, 549).

The power to bar nonsettling-party litigation against nonreceiver settling parties is not unlimited. Rather, "the exercise of this authority is always subject to other limitations, statutory and constitutional, which limit the jurisdiction of federal courts." *SEC v. Parish*, 2010 WL 8347143, at *5 (D.S.C. 2010). But the Court's jurisdiction does extend to all assets of the receivership estate, giving the Court "power under the All Writs Act to issue injunctions in order to protect the estate's choses of action . . . including any settlement reached in connection with those claims." *Id.*

The Tenth Circuit recently addressed objections to a claims bar order that was sought as part of a settlement between a receiver and a defendant. *SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017). There, the receiver settled with a third party and sought a bar order that would prohibit any claims against the settling defendant. *Id.* at 1175. The settling defendant allegedly played a part in the misappropriation of millions of dollars of investor money. *Id.* Some investors objected to the settlement and sought the right to pursue their own causes of action against the settling defendant. *Id.* The district court denied their objections, styled as motions to intervene, and approved the settlement. *Id.* Citing the Fifth Circuit's decision in

ORDER – PAGE 6

*Kaleta II*, the Tenth Circuit affirmed the district court's ruling that the settlement maximized the potential recovery for the receivership and that the bar order was necessary to that settlement. *Id.* at 1182–83. Moreover, the Tenth Circuit rejected the argument that the claims bar was improper because the Receiver lacked standing to assert investor claims that the bar order would enjoin. *Id.* at 1180–82. Noting that the Receiver had standing to bring his own claims, and that the bar order analysis was distinct from the standing question, the Tenth Circuit affirmed the district court's entry of the bar order. *Id.* at 1182.

### III. THE OBJECTIONS TO THE WILLIS SETTLEMENT ARE UNAVAILING

Four groups of Stanford investors object to the Willis Settlement, arguing that the Court cannot or should not issue the Bar Orders that the Settlement requires. For the reasons explained below, the Court overrules the objections.

### A. The Receiver and OSIC Can Settle Their Claims Against the Willis Defendants

The Objectors argue that the Receiver and OSIC have no standing to settle the universe of claims that the Bar Orders would enjoin. But the Receiver and OSIC need standing to assert and settle only the claims that they are releasing, not every possible barred claim arising out of the Willis Defendants' involvement in the Stanford scheme. In an equitable receivership, Courts have the power to bar those other claims in certain circumstances. By seeking a bar order the Receiver is not "settling" the barred claims but rather relying on the Court's equitable authority to reach an otherwise unobtainable settlement by enjoining other claims that would interfere with the receivership's ability to achieve its purpose. Thus, the Receiver need not have standing to assert the universe of

barred claims as long as he has standing to assert the claims he is settling and the settlement satisfies the requirements for barring other claims.

The Receiver and OSIC have standing to assert their claims against the Willis Defendants. The Receivership Estate has standing to bring only the claims of the entities in receivership. *DSCC*, 712 F.3d at 192. Here, the Stanford entities, through the Receiver, are asserting a variety of claims for losses allegedly caused by the Willis Defendants' participation in Stanford's scheme. OSIC is asserting Receivership Estate claims assigned to it by the Receiver, consistent with the Court's direction in the order forming OSIC and the Receiver's practice to date. The Investor Plaintiffs are settling their own individual claims based on losses they suffered from the same conduct. No party to the settlement lacks standing to assert and settle the claims that the settlement would release. Accordingly, the Objectors' standing argument presents no obstacle to settlement approval.

### B. The Court Can Bar Individual Investor Claims as Part of This Settlement

The Objectors also raise several objections about the Court's authority to enter the Bar Orders as part of the Settlement based on the nature of the Objectors' claims and litigation posture. These objections do not affect the Court's power to bar claims where necessary to secure a fair, reasonable, and adequate settlement for the receivership estate.

### 1. Objectors' Claims and the Settled Claims Are Similar. – The Objectors pose the question of whether, if the Court can bar their claims, there is any meaningful limit on the Court's ability to bar claims as part of a receivership settlement. Their claims, however, are sufficiently similar to the settled claims that it is not unfair to bar them assuming the

settlement as a whole is fair and the Bar Orders are necessary to the Settlement. Analyzing the fairness of the settlement and bar order in *DeYoung*, the district court noted that "the complex claims and the rights and obligations of the parties . . . are so inextricably intertwined that resolution of the claims independently . . . would be difficult and inefficient, would substantially increase the costs to the Receivership Estate, and would likely reduce the ultimate recovery" to investors. *DeYoung*, 850 F.3d at 1178–79 (quoting *SEC v. Am. Pension Svcs., Inc.*, 2015 WL 12860498, at *9 (D. Utah 2015)). The Court went on to note that "the claims involve the same parties, the same conduct, the same actors, [and] the same transactions and occurrences, . . . and the claims are all from the same loss." *Id.* So too here.

The claims of the Objectors and those of the Receiver, OSIC, and the Investor Plaintiffs all involve "the same parties, the same conduct, the same actors, [and] the same transactions and occurrences, . . . and the claims are all from the same loss." *Id.* As the Receiver and the Willis Defendants note, even assuming that the Willis Defendants are liable, they will pursue contribution claims against Stanford. This will embroil the Receiver in continued litigation at the expense of the Receivership Estate, which will expend resources that could otherwise go to investors. Accordingly, the Bar Orders here are not a blank check to run roughshod over any and all independent rights as the Objectors depict.

    **2. *The Anti-Injunction Act Does Not Prohibit the Bar Orders*.** – The Anti-Injunction Act prohibits a federal court from staying proceedings in a state court unless certain exceptions apply. 28 U.S.C. § 2283. The Rupert Parties argue that the Bar Order would improperly enjoin their pending lawsuits in Texas state court without fitting into one of the

statutory exceptions.  The Movants dispute whether the Anti-Injunction Act applies at all.
The Court need not determine whether the Anti-Injunction Act applies, however, because
even if it does, so does one of its exceptions.

The Anti-Injunction Act allows federal courts to enter injunctions against pending
state court proceedings if doing so is necessary to aid the court's jurisdiction or to protect or
effectuate the court's judgments.  28 U.S.C. § 2283.  Enjoining related state court litigation
is an important part of the Court's ability to effectively manage complex nationwide cases
like the Stanford matter.  *See, e.g.*, *Three J Farms, Inc. v. Plaintiffs' Steering Comm.* (*In re
Corrugated Container Antitrust Litig.*), 659 F.2d 1332, 1334–35 (5th Cir. 1981); *In re Diet
Drugs*, 282 F.3d 220, 235 (3d Cir. 2002).  In managing the Receivership, the Court has
already enjoined state court litigants from using state court proceedings to attempt to take
control of assets of the Receivership Estate.  The possibility of state court judgments in favor
of individual litigants or adverse to the Receivership Estate has the potential to interfere with
this Court's judgments about Receivership assets.  Thus, the Bar Order is necessary to
"preserve and aid this court's jurisdiction over the receivership estate."  *Parish*, 2010 WL
8347143, at *7.

**3. The Bar Orders Are Constitutional.** – The Objectors argue that enjoining their
claims amounts to an unconstitutional taking and a violation of their constitutional right to
a jury trial.  The Court disagrees on both counts.  First, "the Fifth Amendment is triggered
by governmental action, not the actions of a private receiver marshaling private assets to pay
private parties."  *SEC v. Nadel*, 2016 U.S. Dist. LEXIS 12240 (M.D. Fla. 2016), *rev'd on*

ORDER – PAGE 10

*other grounds*, *SEC v. Wells Fargo Bank, NA*, 848 F.3d 1339 (11th Cir. 2017) (citing *United States v. Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994)). Second, the Court is not adjudicating the foreclosed claims. Thus, no jury trial is necessary.

### C. Rule 23 Does Not Apply

The Objectors also argue that because the Investor Plaintiffs, who were putative class representatives, asserted their claims on behalf of themselves and a putative class, the Court cannot bar claims of the absent class members without first certifying an opt-out class under Rule 23(b)(3). The Objectors further argue that because the Investor Plaintiffs cannot satisfy Rule 23(b)(3)'s certification requirements, the Court cannot certify such a class. The Objectors conclude that because class certification is impossible, barring claims by absent class members – including the Objectors – is also impossible. The Court disagrees.

*1. OSIC and Investor Plaintiffs Can Settle Individually Without Rule 23.* – It is uncontroversial that named plaintiffs bringing putative class action lawsuits can settle their claims individually without class certification. The question of whether the circumstances justify a claims bar is a distinct inquiry that turns on a standard unrelated to Rule 23. The value of foreclosed claims and fairness to nonsettling parties can be factors in that analysis, and Rule 23 can impact those factors; however, that does not require the Court to graft Rule 23's requirements onto the claims bar analysis.

*2. Investor Plaintiffs' Settlement Does Not Breach Their Duty to the Class.* – The Investor Plaintiffs' decision to settle their individual claims concurrent with the Receiver and OSIC in exchange for a claims bar does not render the settlement illegal. Objectors argue

ORDER – PAGE 11

that doing so constitutes a breach of the Investor Plaintiffs' duty to act in the best interests of the class because some class members will lose the ability to pursue their claims individually.  But the settlement obtains a final resolution and substantial payment for the class as they sought to define it, including most of the Objectors.  That the Objectors are losing their ability to seek a greater payout for themselves through individual litigation does not render improper the settling Investor Plaintiffs' decision to participate in a settlement that includes a bar order.

   ***3. This is Not An Improper Aggregate Settlement.*** – The Able Parties urge the Court to reject this settlement as an improper aggregate settlement because it groups distinct claims into one settlement with no allocation between different groups.  They argue that the Receiver is being paid for the Investor Plaintiffs' claims, claims for which they have no right to payment.  This argument mischaracterizes the settlement based on an incorrect premise about the interests of the Receiver and the Investor Plaintiffs.  As noted below, the Receiver and the Investor Plaintiffs are acting for the benefit of the same group of Stanford victims. There is no basis for the Court to conclude that this Settlement is an improper means to wrongfully capture value for the Receiver that belongs to the investors.  The Receiver exists to maximize the value of the Receivership Estate and to distribute that value fairly among Stanford's defrauded investors.

   ***D. The Settlement is Fair, Reasonable, and Adequate***

   Finally, the Objectors contend that the Court should reject the Settlement and Bar Orders because they do not satisfy the factors that would justify barring nonsettled claims.

The Court's orders approving the Settlement and Bar Orders address the fairness of the Settlement in greater depth. The Court notes, however, that it finds no basis to conclude that the Settlement is the product of fraud or collusion. The Court credits the declarations of the settling parties and its own experience regarding the hard-fought nature of this litigation. The Court also agrees with the Movants that the settlement they have reached is consistent with interests of both the Receivership and the investors. Each has acted to obtain the maximum recovery for the broadest class of injured Stanford victims in the most efficient way possible. Accordingly, the Court does not find any conflict that would hinder settlement approval.

## CONCLUSION

The Court denies the objections and, by separate documents, approves the Settlements and enters the Bar Orders.


Signed August 23, 2017.


David C. Godbey
United States District Judge

ORDER – PAGE 13