IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *et al.*, § § § Plaintiffs, § v. § STANFORD INTERNATIONAL BANK, LTD., *et al.*, § § § Defendants. § § § § § § | Civil Action No. 3:09-CV-0298-N |

## FINAL BAR ORDER

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement of Claims Against the BMB Defendants,[1] to Enter the Bar Order, and to Enter the Final Judgments and Bar Orders (the "Motion") of Ralph S. Janvey, the Receiver for the Receivership Estate (the "Receiver") and a plaintiff in *Janvey, et al. v. Willis of Colorado Inc., et al.*, Civil Action No. 3:13-cv-03980-N-BG (the "Janvey Litigation"); the Court-appointed Official Stanford Investors Committee (the "Committee"), as a party to this action and a plaintiff in the Janvey Litigation; and Samuel Troice, Martha Diaz, Paula Gilly-Flores, Punga Punga Financial, Ltd., Manuel Canabal, Daniel Gomez Ferreiro and Promotora Villa Marino, C.A. (collectively, the "Investor Plaintiffs"), plaintiffs in the Janvey Litigation (Messrs. Troice and Canabal only) and in *Troice, et al. v. Willis of Colorado Inc., et al.*, Civil Action No. 3:09-cv-01274-L (the "Troice Litigation") (collectively, the Receiver, the Committee and the Investor Plaintiffs are the "Plaintiffs"). [ECF No. 2383]. The Motion concerns a proposed settlement (the "BMB Settlement") involving the Plaintiffs and the BMB Defendants.

---

[1] The "BMB Defendants" refers, collectively, to Bowen, Miclette & Britt, Inc. ("BMB") and Paul D. Winter, Dependent Executor of the Estate of Robert S. Winter, Deceased ("Winter").

The Court-appointed Examiner signed the BMB Settlement Agreement[2] as Chairperson of the Committee and as Examiner solely to evidence his support and approval of the BMB Settlement and to confirm his obligations to post the Notice on his website, but is not otherwise individually a party to the BMB Settlement, the Janvey Litigation, or the Troice Litigation.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

**I.    INTRODUCTION**

The Troice Litigation, the Janvey Litigation, and this case all arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities"). [ECF No. 10]. After years of diligent investigation, the Plaintiffs believe that they have identified claims against a number of third parties, including the BMB Defendants, that Plaintiffs claim enabled the Stanford Ponzi scheme. In the Troice Litigation and the Janvey Litigation, the Investor Plaintiffs allege, *inter alia*, that the BMB Defendants aided and abetted violations of the Texas Securities Act and aided, abetted or participated in a fraudulent scheme and a conspiracy. In addition, in the Janvey Litigation, the Receiver and the Committee allege, *inter alia*, that the BMB Defendants aided, abetted or participated in breaches of fiduciary duty, aided, abetted or participated in a fraudulent scheme, and aided, abetted or participated in fraudulent transfers. The BMB Defendants have denied and continue to deny any and all allegations of wrongdoing.

Lengthy, multiparty negotiations led to the BMB Settlement. In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented. The Investor Plaintiffs,

---

[2] The "BMB Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion.

the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" [ECF No. 1149]—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" [ECF No. 322]—all participated in the extensive, arm's-length negotiations that ultimately resulted in the BMB Settlement and the BMB Settlement Agreement. The parties reached an agreement-in-principle in May 2016 and subsequently executed the BMB Settlement Agreement.

Under the terms of the BMB Settlement, BMB will pay or cause to be paid $12,850,000 to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors. In return, the BMB Defendants seek global peace with respect to all claims that have been, could have been, or could be asserted against any of the BMB Defendants and any of the BMB Released Parties by any Person arising out of or related to the events leading to these proceedings, and with respect to all claims that have been, could have been, or could be asserted against any of the BMB Defendants and the BMB Released Parties by any Person arising from or related to any of the BMB Defendants' relationship with the Stanford Entities (subject to certain exceptions applicable to Winter as set forth in paragraphs 38 and 41 of the Settlement Agreement). Obtaining such global peace is a critical and material component of the Settlement. Accordingly, the BMB Settlement is conditioned, among other things, on the Court's approval and entry of this Final Bar Order enjoining any Person from asserting, maintaining or prosecuting claims against any of the BMB Defendants or any of the BMB Released Parties (subject to the aforementioned exceptions applicable to Winter), as set forth more fully herein.

On September 28, 2016, the Plaintiffs filed the Motion. [ECF No. 2383]. The Court thereafter entered a Scheduling Order on October 19, 2016 [ECF No. 2410], which, *inter alia*, authorized the Receiver to provide notice of the BMB Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On January 20, 2017, the Court held the scheduled hearing. For the reasons set forth herein, the Court finds that the terms of the BMB Settlement Agreement are adequate, fair, reasonable, and equitable, and that the BMB Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Bar Order is appropriate.

## II.     ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.     Terms used in this Final Bar Order that are defined in the BMB Settlement Agreement, unless expressly otherwise defined herein, have the same meaning as in the BMB Settlement Agreement.

2.     The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Bar Order. *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted); *see also SEC v. Parish*, No. 2:07-cv-00919-DCN, 2010 WL 8347143 (D.S.C. Feb. 10, 2010). Moreover, the Court has jurisdiction over the subject matter of this action, and the Plaintiffs are proper parties to seek entry of this Final Bar Order.

3.     The Court finds that the methodology, form, content and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties, including the plaintiffs in the Other BMB

Litigation[3], of the BMB Settlement, the BMB Settlement Agreement, the releases therein, and the injunctions provided for in this Final Bar Order and in the Final Judgments and Bar Orders to be entered in the Janvey Litigation and the Casanova Litigation; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the BMB Settlement, this Final Bar Order, the Final Judgments and Bar Orders to be entered in the Janvey Litigation and the Casanova Litigation, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.     The Court finds that the BMB Settlement was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length negotiations involving experienced and competent counsel. The claims asserted against the BMB Defendants contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with a significant risk that Plaintiffs may not ultimately prevail on their claims. By the same token, it is clear that the BMB Defendants would never agree to the terms of the BMB Settlement unless they were assured of global peace with respect to all claims that have been, could have been, or could be asserted against any of the BMB Defendants and any of the BMB Released Parties by any Person arising out of or related to the events leading to these proceedings, and with respect to all claims that have been, could have been, or could be asserted

---

[3] The "Other BMB Litigation" is defined in the BMB Settlement Agreement to include the following additional actions relating to the same subject matter as the Troice Litigation and the Janvey Litigation: (i) *Rupert v. Winter, et al.*, Case No. 20090C116137, filed on September 14, 2009 in Texas state court (Bexar County); (ii) *Casanova v. Willis of Colorado, Inc., et al.*, C.A. No. 3:10-CV-1862-O, filed on September 16, 2010 in the United States District Court for the Northern District of Texas (the "Casanova Litigation"); (iii) *Rishmague v. Winter, et al.*, Case No. 2011C12585, filed on March 11, 2011 in Texas state court (Bexar County); and (iv) *MacArthur v. Winter, et al.*, Case No. 2013-07840, filed on February 8, 2013 in Texas state court (Harris County).

against any of the BMB Defendants and any of the BMB Released Parties by any Person arising from or related to the BMB Defendants' relationship with the Stanford Entities (subject only to the aforementioned exceptions applicable to Winter). The injunction against such claims is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme pursuant to the BMB Settlement. *See Kaleta*, 530 F. App'x at 362 (entering bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding); *Parish*, 2010 WL 8347143 (similar).

5. Pursuant to the BMB Settlement Agreement and upon motion by the Receiver, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the BMB Settlement to Stanford Investors who have Claims approved by the Receiver. The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the BMB Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their claims through the Receiver's claims process previously approved by the Court. [ECF No. 1584].

6. The Court further finds that the Parties and their counsel have at all times complied with the requirements of Federal Rule of Civil Procedure 11.

7. Accordingly, the Court finds that the BMB Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against any of the BMB Defendants and any of the BMB Released Parties, the Stanford Entities or the Receivership Estate, including but not limited to the Plaintiffs, the Claimants, and all other Interested Parties. The BMB Settlement, the terms of which are set forth in the BMB Settlement Agreement, is hereby fully and finally approved. The


Parties are directed to implement and consummate the BMB Settlement in accordance with the terms and provisions of the BMB Settlement Agreement and this Final Bar Order.

8. Pursuant to the provisions of Paragraph 38 of the BMB Settlement Agreement, as of the Settlement Effective Date, the BMB Defendants and the BMB Released Parties are hereby completely released, relinquished, acquitted, and forever discharged, with prejudice, from all Settled Claims by the Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate and each of the Plaintiffs' respective past and present, direct and indirect, parent entities, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, in their capacities as such and anyone who can claim through any of them, except that this release does not extend to, shall not include, and shall not alter, limit, or otherwise affect, the final judgment entered in favor of the Receiver against Winter in *Janvey v. Hamric*, Case No. 3:13-cv-00775-N-BG, Doc. No. 257 (the "Winter Final Judgment"). Notwithstanding anything to the contrary in this Bar Order, the Receiver reserves all rights to pursue recovery of the Winter Final Judgment to the maximum extent permitted by the Order Granting Application for Turnover Order, *In re Robert S. Winter, deceased*, Case No. 435,100 in the Probate Court No. 4 of Harris County, Texas (the "Turnover Order"), and nothing in this Bar Order or the BMB Settlement Agreement or the BMB Settlement shall be construed to impair or limit the Receiver's rights to collect the full amount of the Winter Final Judgment or make any recovery pursuant thereto in accordance with the terms of the Turnover Order.

9. As of the Settlement Effective Date, the Plaintiffs Released Parties are hereby completely released, acquitted, and forever discharged from all Settled Claims by the BMB Defendants, and each of the BMB Defendants' respective parent entities, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, in their capacities as such.

10. Notwithstanding anything to the contrary in this Final Bar Order, the foregoing releases do not release the Parties' rights and obligations under the BMB Settlement or the BMB Settlement Agreement or bar the Parties from seeking to enforce or effectuate the terms of the BMB Settlement or the BMB Settlement Agreement.

11. The Court hereby permanently bars, restrains and enjoins the Receiver, the Plaintiffs, the Claimants, all other Interested Parties[4], and all other Persons or entities, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, proceeding, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against any of the BMB Defendants or any of the BMB Released Parties, now or at any time in the future, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including but not limited to litigation, arbitration, or other proceeding, in any Forum, whether individually, representatively, directly, derivatively, on behalf of a class or putative class, as a member of a class or putative class, or in any other capacity whatsoever, that, in whole or in part, in any way concerns, relates to, is based upon, arises from, or is in any manner connected with (i) the Stanford Entities, (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities, (iii) any one or more of the BMB Defendants' relationship(s) with any one of the Stanford Entities, (iv) the BMB Defendants' provision of services to any of the Stanford Entities, and any other acts, errors

---

[4] "Interested Parties," as defined herein and in the BMB Settlement Agreement, means "the Receiver, the Receivership Estate, the Committee, the members of the Committee, Plaintiffs, the plaintiffs in the Other BMB Litigation, the Stanford Investors, the Claimants, the Examiner, the Joint Liquidators, or any other Person or Persons who have or may have claims against the BMB Released Parties or the Receivership Estate, or who are alleged by the Receiver, the Committee, or any other Person or entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated."

or omissions by the BMB Defendants for or related to the Stanford Entities, (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of this case, the Troice Litigation, the Janvey Litigation, the Other BMB Litigation, or any other proceeding concerning the Stanford Entities pending or commenced in any Forum, or (vi) any Settled Claim. The foregoing specifically includes, but is not limited to, any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise. Notwithstanding the foregoing, this bar order does not extend to, shall not include, and shall not alter, limit, or otherwise affect the Receiver's right or ability to pursue and collect the full amount of the Winter Final Judgment or make any recovery pursuant thereto in accordance with and to the maximum extent permitted by the Turnover Order.

12. The BMB Defendants shall file motions to dismiss with prejudice, motions for summary judgment, or similar dispositive motions in all of the Other BMB Litigation not pending before this Court[5], which motions shall include this Final Bar Order as an exhibit. The plaintiffs in the Other BMB Litigation shall not oppose such dispositive motions, and are hereby permanently enjoined and barred from continuing to prosecute the Other BMB Litigation.

---

[5] *Rupert v. Winter, et al.*, Case No. 20090C116137, filed on September 14, 2009 in Texas state court (Bexar County); *Rishmague v. Winter, et al*., Case No. 2011C12585, filed on March 11, 2011 in Texas state court (Bexar County); and *MacArthur v. Winter*, et al., Case No. 2013-07840, filed on February 8, 2013 in Texas state court (Harris County).

13. Nothing in this Final Bar Order shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person, entity, or Interested Party to (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the BMB Settlement or payment of the Settlement Amount by or on behalf of the BMB Defendants and the BMB Released Parties; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in other litigation; provided, however, for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize (x) any action or claim seeking to recover any monetary or other relief from any of the BMB Defendants or the BMB Released Parties, or (y) the commencement, assertion or continuation of any action or claim against any of the BMB Defendants or the BMB Released Parties, including any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon any of the BMB Defendants or BMB Released Parties.

14. The BMB Defendants and the BMB Released Parties have no responsibility, obligation, or liability whatsoever with respect to the cost associated with or the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the BMB Settlement; the management, investment, disbursement, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the BMB Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the BMB Settlement or the BMB Settlement Agreement; or any losses,

attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters. No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate, cancel or modify the BMB Settlement, the BMB Settlement Agreement or this Final Bar Order.

15. Nothing in this Final Bar Order or the BMB Settlement Agreement and no aspect of the BMB Settlement or negotiation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations or defenses in the Troice Litigation, the Janvey Litigation, the Other BMB Litigation, or any other proceeding. The BMB Defendants expressly deny any liability or wrongdoing with respect to the matters alleged in the complaints in the Troice Litigation, the Janvey Litigation, the Other BMB Litigation and any other claims related to the Stanford Entities.

16. BMB is hereby ordered to deliver or cause to be delivered the Settlement Amount in accordance with the terms of Paragraphs 20 and 25 of the BMB Settlement Agreement. Further, the Parties are ordered to act in conformity with all other provisions of the BMB Settlement Agreement.

17. Without in any way affecting the finality of this Final Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the BMB Settlement, the BMB Settlement Agreement, the Scheduling Order, and this Final Bar Order, including, without limitation, the injunctions, bar orders, and releases described herein, and to enter orders concerning implementation of the BMB Settlement, the BMB Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

18.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Bar Order, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

19.     This Final Bar Order shall be served by counsel for the Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the BMB Settlement, the BMB Settlement Agreement, or this Final Bar Order.

Signed on August 23, 2017.

_____
David C. Godbey
United States District Judge