**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | Case No. 3-09-CV-0298-N |
| v. | § | |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § | |
| Defendants. | | |

---

**RECEIVER'S 15TH INTERIM REPORT REGARDING STATUS OF
RECEIVERSHIP, ASSET COLLECTION, AND ONGOING ACTIVITIES**

---

The Receiver hereby submits for the Court's consideration the following information regarding the status of the Receivership, asset collection efforts, and other ongoing activities. Unless otherwise stated herein, the information in this report is current as of April 30, 2018.[1] The Receiver will supplement this report as circumstances dictate.

## I.   CASH INFLOWS & MAJOR RECEIVERSHIP ASSETS

The total amount of cash collected by the Receiver — including, but not limited to, remaining operating income streams, asset liquidation, and recovery of assets and funds from third parties — was $431.3 million[2] as of April 30, 2018. After subtracting the fees and

---

[1]    A summary of the data regarding the Receivership's cash flow is contained in the concurrently filed Appendix.

[2]    All figures in this report are approximate unless otherwise noted.

expenses discussed in more detail below in Section II of this report, the net cash inflows totaled **$226.7 million**. Of this amount, $1.8 million*[3] is not available for payment of claims or expenses of the Estate,[4] leaving $224.9 million in net cash inflows prior to distribution. The Receiver has thus far distributed $136.9 million to claimants who filed claims with the Receivership, leaving the Estate with $88.0 million in cash on-hand.[5]

The Receiver estimates that up to $17.2 million of the $88.0 million cash on-hand remains to be distributed pursuant to the First, Second, Third, and Fourth Interim Distribution Plans (discussed further below), with the actual amount remaining to be distributed pursuant to those plans dependent on several variables, including receipt and review of claims-related paperwork from claimants. Other current cash commitments include up to $10.9 million* in distributions to investor CD claimants who submitted claims to the Antiguan Joint Liquidators and $22.3 million in professional fees and expenses held back through November 30, 2017. Further, Trustmark Bank alleges that it holds a secured $2.2 million* claim on assets that the Court ordered Trustmark to turn over to the Receiver. Thus, of the $88.0 million cash on hand, the Receivership has cash commitments or potential commitments totaling $52.6 million.

***Cash Balances & Trailing Revenue:*** The cash balances recovered by the Receiver shortly following his appointment on February 17, 2009 totaled $63.1 million*. In addition, the Receivership has collected $6.4 million in cash associated with income earned prior to the inception of the Receivership.

---

[3]    Amounts marked with an asterisk "*" indicate that the figure is unchanged from the prior interim report.

[4]    This cash includes, *inter alia*, the following: amounts related to the controversy between the Receiver and Dillon Gage; funds held in relation to the Bank of Antigua; and amounts subject to potential liens.

[5]    This amount includes cash and cash equivalents.

*Private Equity:*   The Receiver has recovered $37.6 million* in net cash proceeds from the liquidation of private equity investments (other than recoveries related to Stanford's private equity investments where such recoveries resulted from litigation or threatened litigation).

*Real Estate:*   As of April 30, 2018, the Receiver has recovered $17.7 million* in net cash proceeds from the liquidation of real estate (other than recoveries of real estate or proceeds from the sale thereof where such recoveries resulted from litigation or threatened litigation).   On February 2, 2018, the district court entered an order confirming the proposed private sale of the remaining properties in Stanford's real estate portfolio (consisting of several contiguous parcels in St. Croix).   [*See* Doc. 2672.]   The parties to the sale agreement have been working to complete the sale transaction, and as of this date, the closing of the sale is anticipated to occur by May 22, 2018.

*Watercraft and Airplanes:*   The Receiver has recovered $8.0 million* from the disposition of airplanes owned or leased by Stanford and from the sales of the Sea Eagle yacht, the Little Eagle yacht, and the Robust Eagle tugboat.

*Latin American Assets:*   The Receiver has been able to liquidate assets in Panama, Ecuador, and Peru, resulting in a recovery of $12.9 million*.   The Receiver is continuing to pursue the recovery of additional Latin American assets.

*Miscellaneous Asset Sales:*   The Receiver has recovered $2.3 million* from the sale of miscellaneous assets — including, but not limited to, furniture, coins, vehicles, and assorted equipment.

*Litigation:*   The Receiver has fraudulent-transfer and unjust-enrichment claims pending against numerous defendants, through which the Receiver seeks the recovery of

hundreds of millions of dollars.   The Receiver is also pursuing (1) breach of fiduciary duty claims against former Stanford directors, officers, and other trusted insiders; (2) claims for the recovery of insurance proceeds owing to Stanford entities; and (3) a variety of claims against professionals and other service providers who provided assistance to the Stanford entities while the entities were perpetrating a massive fraud.   Asset recovery and other litigation is difficult, protracted, and expensive.   Nevertheless, litigation claims are the single largest potential source of recovery for the benefit of Stanford's victims.

As of April 30, 2018, the Receiver has received $185.9 million from settlements and other litigation efforts.   He expects to receive an additional $238.3 million pursuant to settlement agreements or term sheets that have been signed but for which the settlement funds were received or are expected to be received after April 30, 2018.[6]   In April 2017, the Fifth Circuit entered judgment in *Janvey v. Alguire*, Case No. 14-10857 (5th Cir.).   Through that litigation, the Receiver has executed settlements exceeding $23.7 million with former Stanford employee defendants.   As of April 30, 2018, he has received approximately $18.1 million from these settlements with former Stanford employee defendants.   The Receiver has secured injunctions to hold additional assets, the value of which is currently estimated at $23.0 million. The amount that the Receiver ultimately will be able to collect from defendants is uncertain and may be significantly less than the amounts claimed.   The Receiver will continue to work towards appropriate and reasonable settlements, where possible, to maximize the net recovery to the Receivership Estate.

---

[6]     Some of these settlements pertain to litigation being handled by lawyers working on a contingent fee basis. Thus, these additional receipts will result in an increase in attorneys' fees.

***Return of Political Contributions:***  The Receiver has identified $1.9 million* in political contributions made by Allen Stanford and related entities.  The Receiver has requested the return of these contributions from over 90 politicians, political action committees, and congressional committees.  Through April 30, 2018, $1.8 million* has been returned.[7]

***Coins and Bullion Inventory:***  The Receiver has utilized coins in SCB's inventory, when appropriate, to settle claims by SCB claimants.  The Receiver intends to liquidate remaining SCB coin inventory or use that inventory to settle additional claims.

***International Assets:***  Receivership entities and individuals held more than $300 million* in cash, investments, and other assets in foreign accounts as of the date the Receivership began, including assets held in accounts in Canada, the United Kingdom, and Switzerland.  The Receiver has entered into an agreement with the U.S. Department of Justice (DOJ) and the Antiguan Joint Liquidators to work towards the release and distribution of the international assets for the benefit of Stanford investors.  The completion of the agreement with the DOJ and the Joint Liquidators is only the first step to actually obtaining custody of the international assets for distribution.

As reported previously, the Receiver has received from the DOJ $17.8 million* in Stanford assets in Canada that have been the subject of criminal forfeiture proceedings. Approximately 89.6 percent of that amount has already been distributed to investors (discussed further below).  The Receiver expects that additional Canadian funds subject to criminal forfeiture proceedings may become available for distribution in the future.  The amount and

---

[7]      The bulk of this amount ($1.6 million*) represents a litigation recovery, which makes up part of the total sum of litigation recoveries reflected above.

timing of such release of funds remains to be determined.  The Receiver has also recovered $4.6 million* from a Stanford-related insolvency proceeding in Quebec.

The Receiver is also working closely with the DOJ, the Joint Liquidators, and Swiss criminal and civil authorities to obtain release of Stanford assets in Switzerland.  The Receiver cannot ascertain the exact current value of these assets, most of which are subject to forfeiture proceedings, because they are not currently subject to the Receiver's control or direct monitoring.  Based on information available to the Receiver, however, the Receiver estimates that there are $208 million* in Stanford assets in Switzerland.

On November 28, 2016, the United States Supreme Court denied Robert Allen Stanford's petition for writ of certiorari, thus upholding his 2012 conviction.  This is an important but not the final procedural step in repatriating the Swiss assets.  The Receiver will continue to work for the release of those assets through multiple channels, including criminal forfeiture and Swiss insolvency proceedings.  Because of the complexity and difficulty involved in the Swiss proceedings, the Receiver does not yet know when the assets in Switzerland will be released for distribution.  However, the Receiver is working to ensure that the release of Stanford funds held in Switzerland occurs as expeditiously as possible.  Assuming all $208 million* in Swiss Stanford assets are released for distribution, the Receiver anticipates that he will be responsible for distributing $143 million* of the Swiss Stanford assets, with the remaining Swiss Assets to be distributed by the Joint Liquidators.

Pursuant to the Receiver's agreement with the DOJ and the Joint Liquidators, the Joint Liquidators are responsible for collecting and distributing the Stanford assets held in the United Kingdom.  The Joint Liquidators have advised the Receiver that they have recovered the funds from the United Kingdom and are in the process of distributing those funds to investors.

***Other Inflows & Assets:***  The Receivership has collected $74.8 million* through the liquidation of other investment accounts held on behalf of Stanford, including $5.0 million* previously held as restricted with respect to Stanford Trust Company; $48.6 million* through the liquidation of Stanford accounts at Pershing and of various investment funds held on Stanford's behalf; $13.2 million* through the recovery of additional cash balances; and $8.0 million* received via other inflows, including, but not limited to, recoveries by the SEC, rental and interest income, cash flows from other liquidated bank accounts, and restricted funds and interest thereon.  The Receiver estimates that he may recover up to $29,000 in additional assets held in U.S. banks and brokerages.

## II.     CASH OUTFLOWS

From February 17, 2009 through April 30, 2018, the total amount of Receivership cash outflows — comprising professional fees and expenses of $143.6 million, other types of expenses of $61.0 million, and distributions of $136.9 million — was $341.5 million.

***Expenses Other than Professional Fees:*** The total amount of all payments made by the Receiver for expenses other than professional fees was $61.0 million.  This figure comprises the following amounts: $29.2 million in personnel expenses and other employee expenses; $3.9 million* in insurance expenses; $3.7 million* in taxes; $1.9 million in general and administrative expenses; $3.7 million in telecommunications expenses; $6.7 million in occupancy expenses; $2.5 million* in settled claims; and $9.4 million in other expenses.

*Professional Fees and Expenses:*[8] As of April 30, 2018, the professional fees and expenses paid to the Receiver and his professionals total $109.9 million.  More than twenty-eight percent of this amount was paid in the first year of the Receivership ($30.9 million from the first quarter of 2009 through the first quarter of 2010).

As directed by the Court, the Receivership Estate has paid the Examiner's expenses and legal fees totaling $3.8 million through April 30, 2018.  Consistent with the fee agreement approved by the Court and other orders entered by the Court, the Receivership Estate has paid a total of $29.9 million in attorneys' fees, expert fees, and expenses incurred by the Official Stanford Investors Committee (the "OSIC") through April 30, 2018.

*Distributions:*   As of the date of this filing, the Court has approved four interim distribution plans authorizing the distribution of approximately $154 million.  As of April 30, 2018, the Receiver has filed seventeen Schedules of Payments to be Made Pursuant to the First Interim Plan [*see* Doc. 1877], and the total amount distributed pursuant to those Schedules is $41.6 million.  The Receiver has filed eight Schedules of Payments to be Made Pursuant to the Second Interim Plan [*see* Doc. 2037], and the total amount distributed pursuant to those Schedules is $15.9 million.  The Receiver has filed four Schedules of Payments to be Made Pursuant to the Third Interim Plan [*see* Doc. 2288], and the total amount distributed pursuant to those Schedules is $39.8 million.  The Receiver has filed two Schedules of Payments to be Made Pursuant to the Fourth Interim Plan [*see* Doc. 2544], and the total amount distributed pursuant to

---

[8]     Details regarding all professional fees and expenses paid to the Receiver and Examiner, as well as amounts currently held back, are contained in the several fee applications submitted to and approved by this Court.

that Schedule is $39.5 million.   Additional schedules of payments for the four plans will be

submitted by the Receiver on a rolling basis.

Dated:  May 18, 2018                              Respectfully submitted,


                                          **BAKER BOTTS L.L.P.**

By: /s/ *Kevin M. Sadler*
      Kevin M. Sadler
      Texas Bar No. 17512450
      kevin.sadler@bakerbotts.com
      Scott D. Powers
      Texas Bar No. 24027746
      scott.powers@bakerbotts.com
      David T. Arlington
      Texas Bar No. 00790238
      david.arlington@bakerbotts.com
      98 San Jacinto Blvd., Suite 1500
      Austin, Texas 78701-4039
      (512) 322-2500
      (512) 322-2501 (Facsimile)

      Timothy S. Durst
      Texas Bar No. 00786924
      tim.durst@bakerbotts.com
      2001 Ross Avenue
      Dallas, Texas 75201
      (214) 953-6500
      (214) 953-6503 (Facsimile)

      **ATTORNEYS FOR RECEIVER**
      **RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On May 18, 2018, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served the Court-appointed Examiner, all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

/s/ *Kevin M. Sadler*
Kevin M. Sadler