## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:13-CV-0477-N-BG |
| v. | § § § | |
| PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM, | § § § § | |
| Defendants. | § § | |

1

**APPENDIX TO EXPEDITED REQUEST FOR ENTRY OF
SCHEDULING ORDER[1]AND MOTION TO APPROVE PROPOSED
SETTLEMENT WITH PROSKAUER ROSE LLP, TO APPROVE THE
PROPOSED NOTICE OF SETTLEMENT WITH PROSKAUER ROSE
LLP, TO ENTER THE BAR ORDER, TO ENTER THE FINAL
JUDGMENT AND BAR ORDER,
AND FOR PLAINTIFFS' ATTORNEYS' FEES**

Ralph S. Janvey (the "Receiver"), the Official Stanford Investors Committee (the

"Committee"), and Sandra Dorrell and Philip Wilkinson, individually and on behalf of a

putative class of Stanford investors (collectively, the "Investor Plaintiffs," and with the Receiver

and the Committee, and the State Court Plaintiffs, file this appendix (the "Appendix") in support

of the *Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed

Settlement with Proskauer Rose, LLP, to Approve the Proposed Notice of Settlement with

Proskauer Rose, LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and

for Plaintiffs' Attorney Fees* (the "Motion").

---

[1]     Movants request that the Court promptly enter the Scheduling Order, without waiting the twenty-
one (21) days contemplated by Local Rule 7.1(e) for interested parties to respond to this Motion, because
such Scheduling Order merely approves the notice and objection procedure and sets a final hearing, and
does not constitute a final approval of the Settlement Agreement.

| Exhibit | Description |
|---------|-------------|
| **APPENDIX MATERIALS** | |
| 1. | Settlement Agreement |
| 2. | Declaration of Edward C. Snyder |
| 3. | Declaration of Judith Blakeway |
| 4. | Declaration of Doug J. Buncher |
| 5. | Declaration of Scott Powers |
| 6. | Declaration of John J. Little |

Date:    August 24, 2018

Respectfully submitted,

**CASTILLO SNYDER PC**
By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: (210) 630-4200
Facsimile: (210) 630-4210

**NELIGAN LLP**
By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5320
Facsimile: (214) 840-5301

**BAKER BOTTS LLP**
By: */s/ David T. Arlington*
Kevin M. Sadler
kevin.sadler@bakerbotts.com
Scott D. Powers
scott.powers@bakerbotts.com
David T. Arlington
david.arlington@bakerbotts.com
98 San Jacinto Blvd., Suite 1500

**CLARK HILL STRASBURGER**
By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clarkhillstrasburger.com
2301 Broadway
San Antonio, Texas 78215
Telephone: (210) 250-6004
Facsimile: (210) 258-2706

Austin, Texas 78701
Telephone: (512) 322-2500
Facsimile: (512) 322-2501

By: */s/ David N. Kitner*
David N. Kitner
david.kitner@clarkhillstrasburger.com
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2018, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Edward C. Snyder*
Edward C. Snyder

# EXHIBIT 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made and entered into by and between, on the one hand, (i) Ralph S. Janvey, solely in his capacity as the court-appointed receiver for the Stanford Receivership Estate (the "Receiver"); (ii) the Official Stanford Investors Committee (the "Committee"); (iii) Sandra Dorrell and Phillip A. Wilkinson, individually and on behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs"); and (iv) each of the plaintiffs in the actions listed in **Exhibit E** (collectively, the "State Court Plaintiffs") (the Receiver, the Committee, the Investor Plaintiffs, and the State Court Plaintiffs are collectively referred to as the "Plaintiffs"); and, on the other hand, Proskauer Rose LLP ("Proskauer") (Plaintiffs, on the one hand, and Proskauer, on the other hand, are referred to in this Agreement individually as a "Party" and together as the "Parties");

**WHEREAS**, on February 16, 2009, the U.S. Securities and Exchange Commission (the "SEC") filed *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"), alleging that Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford International Bank, Ltd. ("SIB"), Stanford Group Company, Stanford Capital Management, LLC, and Stanford Financial Group (the "Defendants") had engaged in a fraudulent scheme affecting tens of thousands of customers from over one hundred countries;

**WHEREAS**, in an order dated February 16, 2009, in the SEC Action (ECF No. 10), the United States District Court for the Northern District of Texas (the "Court") assumed exclusive jurisdiction and took possession of the assets, and other tangible and intangible monies and property, as further set forth in that order, of the Defendants and all entities they owned or controlled (the "Receivership Assets"), and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer

1

disks, internet exchange servers, telephones, personal digital devices and other informational resources of or in possession of the Defendants, or issued by Defendants and in possession of any agent or employee of the Defendants (the "<u>Receivership Records</u>");

WHEREAS, in that same order (ECF No. 10), Ralph S. Janvey was appointed Receiver for the Receivership Assets and the Receivership Records (collectively, the "<u>Receivership Estate</u>") with the full power of an equity receiver under common law as well as such powers as are enumerated in that order, as amended by an order in that same matter, dated March 12, 2009 (ECF No. 157), and as further amended by an order entered in that same matter, dated July 19, 2010 (ECF No. 1130);

WHEREAS, Ralph S. Janvey has served as Receiver continuously since his appointment and continues to so serve;

WHEREAS, John J. Little was appointed to serve as examiner (the "<u>Examiner</u>") by an order entered in the SEC Action, dated April 20, 2009 (ECF No. 322), to assist the Court in considering the interests of the worldwide investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any defendants in the SEC Action;

WHEREAS, John J. Little has served as Examiner continuously since his appointment and continues to so serve;

WHEREAS, the Committee was created pursuant to an order entered in the SEC Action, dated August 10, 2010 (ECF No. 1149) (the "<u>Committee Order</u>"), to represent the customers of SIB, who, as of February 16, 2009, had funds on deposit at SIB, and/or were holding certificates of deposit ("<u>CDs</u>") issued by SIB (the "<u>Stanford Investors</u>");

WHEREAS, by the Committee Order, the Examiner was named as the initial Chairperson of the Committee;

**WHEREAS**, the Examiner has served as Chairperson of the Committee continuously since his appointment and continues to so serve;

**WHEREAS**, on October 9, 2009, Samuel Troice, Horacio Mendez, Annalisa Mendez, and Punga Punga Financial, Ltd. filed their Second Amended Class Action Complaint, naming Proskauer, Chadbourne & Parke LLP and P. Mauricio Alvarado as defendants and alleging claims for aiding and abetting violations of the Texas Securities Act; aiding and abetting/participation in a fraudulent scheme; civil conspiracy; and negligent retention/negligent supervision (the "*Troice* Action");

**WHEREAS**, on April 1, 2016, the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") dismissed the *Troice* Action with prejudice;

**WHEREAS**, on April 28, 2016, Sandra Dorrell and Phillip A. Wilkinson filed their Original Complaint (the "*Dorrell* Complaint") captioned *Dorrell et al. v. Proskauer Rose, LLP, et al.*, Case No. 3:16-cv-1152-N (N.D. Tex.) (the "Investor Litigation") naming Proskauer and Thomas V. Sjoblom ("Sjoblom") as defendants;

**WHEREAS**, the *Dorrell* Complaint alleges claims against Proskauer for aiding and abetting violations of the Texas Securities Act, aiding and abetting and participating in breaches of fiduciary duties, aiding and abetting and participating in a fraudulent scheme, and civil conspiracy;

**WHEREAS**, on November 2, 2017 the Court dismissed the Investor Litigation with prejudice;

**WHEREAS**, on November 6, 2017 the Investor Plaintiffs filed a Notice of Appeal of the Order dated November 2, 2017 dismissing the Investor Litigation;

3

**WHEREAS**, the Investor Litigation is currently on appeal to the Fifth Circuit in *Dorrell, et al. v. Proskauer Rose, L.L.P.*, No. 17-11313 (the "*Dorrell* Appeal");

**WHEREAS**, between 2011 and 2012, the State Court Plaintiffs filed actions against Proskauer in Texas state court, which are identified in **Exhibit E** (together, the "State Court Litigations");

**WHEREAS**, on January 27, 2012, Proskauer removed the State Court Litigations to federal court;

**WHEREAS**, Proskauer subsequently sought to transfer the State Court Litigations to this Court;

**WHEREAS**, five of the State Court Litigations were transferred to the Court;[1]

**WHEREAS**, on October 3, 2014, the Court stayed the five State Court Litigations;

**WHEREAS**, on January 12, 2012, the Receiver and the Committee filed *Janvey, et al. v. Proskauer Rose, LLP, et al.*, No. 1:12-cv-00155-CKK (D.D.C) (the "D.C. Action") in the United States District Court for the District of Columbia (the "D.C. District Court");

**WHEREAS**, on July 24, 2014, the D.C. District Court dismissed the D.C. Action for lack of subject matter jurisdiction;

**WHEREAS**, on January 31, 2013, the Receiver and the Committee filed a complaint (the "Original Complaint") in *Janvey v. Proskauer Rose, LLP*, Civil Action No. 3:13-cv-00477-N (N.D. Tex.) (the "Receiver Litigation"), alleging claims against Proskauer and other defendants

---

[1] *Gale v. Proskauer Rose LLP*, No. 3:12-cv-1803 (N.D. Tex.) (pending), removed from No. 2011-CI-20427 (Tex., Bexar Cnty. [285th Dist.]); *Green v. Proskauer Rose LLP*, No. 3:12-cv-1808 (N.D. Tex.) (pending), removed from No. 2011-77805 (Tex., Harris Cnty. [189th Dist.]); *Ibarra v. Proskauer Rose LLP*, No. 3:12-cv-1805 (N.D. Tex.) (pending), removed from No. 2011-CI-20425 (Tex., Bexar Cnty. [224th Dist.]); *Martin v. Proskauer Rose LLP*, No. 3:12-cv-1809 (N.D. Tex.) (pending), removed from No. 2011-77800 (Tex., Harris Cnty. [11th Dist.]); *Reed v. Proskauer Rose LLP*, No. 3:12-cv-1806 (N.D. Tex.) (pending), removed from No. 2011-CI-20426 (Tex., Bexar Cnty. [225th Dist.]).

in the Receiver Litigation, for professional negligence; aiding, abetting, or participation in breach of fiduciary duty; aiding, abetting, or participation in a fraudulent scheme; aiding, abetting, or participation in fraudulent transfers; aiding, abetting, or participation in conversion; civil conspiracy; and negligent retention/negligent supervision;

**WHEREAS**, on October 4, 2014, Proskauer moved to dismiss the Original Complaint in the Receiver Litigation;

**WHEREAS**, by Order dated June 23, 2015, the Court granted in part and denied in part Proskauer's motion to dismiss the Original Complaint in the Receiver Litigation, dismissing the claim for aiding and abetting fraudulent transfers but declining to dismiss the other claims against Proskauer;

**WHEREAS**, on May 12, 2016, Proskauer filed a motion for judgment on the pleadings in the Receiver Litigation;

**WHEREAS**, on June 2, 2016, the Receiver and the Committee filed a motion for leave to amend the Original Complaint in the Receiver Litigation;

**WHEREAS**, on April 27, 2017, the Court so-ordered a stipulation in which the Receiver and the Committee agreed to voluntarily dismiss with prejudice certain claims and allegations;

**WHEREAS**, by Order dated April 10, 2018, the Court granted the Receiver and the Committee's motion for leave to file an amended complaint and denied Proskauer's motion for judgment on the pleadings;

**WHEREAS**, on April 10, 2018, the Receiver and the Committee filed a First Amended Complaint, alleging claims for aiding and abetting a fraudulent scheme and aiding and abetting breaches of fiduciary duty;

**WHEREAS**, on April 16, 2018, Proskauer filed a notice of appeal to the Fifth Circuit from the Order entered on April 10, 2018;

**WHEREAS**, on May 1, 2018, Proskauer's appeal was processed and officially docketed by the Office of the Clerk for the Fifth Circuit as *Janvey, et al. v. Proskauer Rose, L.L.P.*, No. 18-10463;

**WHEREAS,** on June 27, 2018, the Parties filed a Joint Motion to Stay the Appeal;

**WHEREAS**, on June 28, 2018, the Fifth Circuit mooted the Joint Motion to Stay the Appeal by entering an order dismissing the appeal without prejudice to the right of either Party to reinstate the appeal within 180 days, and the right to request an extension of that 180 day time period;

**WHEREAS**, Proskauer expressly denies any and all allegations of wrongdoing, fault, liability, or damages whatsoever and is entering into this Agreement solely to avoid the burden, very substantial expense, and risks of litigation;

**WHEREAS**, Plaintiffs have conducted an investigation into the facts and the law relating to the Receiver Litigation, the Investor Litigation, and the State Court Litigations (collectively, the "Litigation") and after considering the results of that investigation and the benefits of this Settlement (as defined in Paragraph 18), as well as the burden, expense, and risks of litigation, have concluded that a settlement with Proskauer under the terms set forth below is fair, reasonable, adequate, and in the best interests of the Plaintiffs, the Interested Parties (as defined in Paragraph 10), and all Persons affected by the Stanford Entities, and have agreed to enter into the Settlement and this Agreement, and to use their best efforts to effectuate the Settlement and this Agreement;

**WHEREAS**, the Parties desire to fully, finally, and forever compromise and effect a global settlement and discharge of all claims, disputes, and issues between them;

**WHEREAS**, the Parties have engaged in extensive, good-faith, and arm's-length negotiations, including participation in mediation by representatives of the Parties on April 12, 2018 with Professor Eric D. Green (the "Mediator") in New York, New York, and in further discussions following the conclusion of the aforementioned mediation, leading to this Agreement;

**WHEREAS**, absent approval of this Settlement, the Litigation will likely take many more years and cost the Parties millions of dollars to litigate to final judgment and through appeals, and the outcome of all such litigation would have been uncertain;

**WHEREAS**, the Examiner, both in his capacity as Chairperson of the Committee and in his capacity as the Court-appointed Examiner, participated in the negotiation of the Settlement;

**WHEREAS**, the Committee has approved this Agreement and the terms of the Settlement, as evidenced by the signature hereon of the Examiner in his capacity as Chairperson of the Committee;

**WHEREAS**, the Examiner, in his capacity as Examiner, has reviewed this Agreement and the terms of the Settlement and, as evidenced by his signature hereon, has approved this Agreement and the terms of the Settlement and will recommend that this Agreement, and the terms of the Settlement, be approved by the Court and implemented;[2] and

**WHEREAS**, the Receiver has reviewed and approved this Agreement and the terms of the Settlement, as evidenced by his signature hereon;

---

[2] The Examiner has also executed this Agreement to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement or the Litigation.

**NOW, THEREFORE**, in consideration of the agreements, covenants, and releases set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.      Agreement Date

1.      This Agreement shall take effect once all Parties have signed the Agreement and as of the date of the execution by the last Party to sign the Agreement (the "Agreement Date").

## II.     Terms Used in this Agreement

The following terms, as used in this Agreement, the Bar Order (defined in Paragraph 20), and the Judgment and Bar Order (defined in Paragraph 20), have the following meanings:

2.      "Attorneys' Fees" means those fees awarded by the Court to Plaintiffs' counsel from the Settlement Amount pursuant to the terms of the applicable engagement agreements.

3.      "Claim" means a Person's potential or asserted right to receive funds from the Receivership Estate or the funds and assets subject to the authority of the Joint Liquidators (defined below).

4.      "Claimant" means any Person who has submitted a Claim to the Receiver or to the Joint Liquidators (defined below).  Where a Claim has been transferred to a third party and such transfer has been acknowledged by the Receiver or the Joint Liquidators, the transferee is a Claimant, and the transferor is not a Claimant unless the transferor has retained a Claim that has not been transferred.  Where the Receiver or the Joint Liquidators have disallowed a Claim and the disallowance has become Final, then the submission of the disallowed Claim does not make the Person who submitted it a Claimant.

5.      "Confidential Information" means the communications and discussions in connection with the negotiations and mediation that led to the Settlement and this Agreement.

8

Confidential Information also includes the existence and terms of the Settlement and this Agreement, but only until the filing of this Agreement and related documents with the Court.

6.      "Distribution Plan" means the plan hereafter approved by the Court for the distribution of the Settlement Amount (net of any Attorneys' Fees or costs that are awarded by the Court) to Stanford Investors who have had their Claims allowed by the Receiver ("Allowed Claims").

7.      "Final" means unmodified after the conclusion of, or expiration of any right of any Person to pursue, any and all possible forms and levels of appeal, reconsideration, or review, judicial or otherwise, including by a court or Forum of last resort, wherever located, whether automatic or discretionary, whether by appeal or otherwise.  The Bar Order shall include findings under Federal Rule of Civil Procedure 54(b) and will become Final as set forth in this paragraph as though such orders were entered as judgments at the end of a case, and the continuing pendency of the SEC Action shall not be construed as preventing such Bar Order from becoming Final.

8.      "Forum" means any court, adjudicative body, tribunal, or jurisdiction, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise.

9.      "Hearing" means a formal proceeding in open court before the United States District Judge having jurisdiction over the SEC Action, the Investor Litigation, and the Receiver Litigation.

10.      "Interested Parties" means the Receiver; the Receivership Estate; the Committee; the members of the Committee; the Plaintiffs; the Stanford Investors; the Claimants; the Examiner; or any Person or Persons alleged by the Receiver, the Committee, or other Person or

entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

11.     "Joint Liquidators" means Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators appointed by the Eastern Caribbean Supreme Court in Antigua and Barbuda to take control of and manage the affairs and assets of SIB or any of their successors or predecessors.

12.     "Notice" means a communication, in substantially the form attached hereto as **Exhibit A**, describing (a) the material terms of the Settlement; (b) the material terms of this Agreement; (c) the rights and obligations of the Interested Parties with regard to the Settlement and this Agreement; (d) the deadline for the filing of objections to the Settlement, the Agreement, the Bar Order, and the Judgment and Bar Order; and (e) the date, time, and location of the Hearing to consider final approval of the Settlement, this Agreement, the Bar Order, and the Judgment and Bar Order.

13.     "Person" means any individual, entity, governmental authority, agency or quasi-governmental person or entity, worldwide, of any type, including, without limitation, any individual, partnership, corporation, limited liability company, estate, trust, committee, fiduciary, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

14.     "Plaintiffs Released Parties" means the Investor Plaintiffs, the Receiver, the Examiner, the Committee, the State Court Plaintiffs, and each of their counsel.  Plaintiffs Released Parties also includes each of the foregoing persons' respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and

limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.

15.    "Proskauer Released Parties" means Proskauer, and all of its predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity.  Without limiting the generality of the foregoing, "Proskauer Released Parties" shall include Sjoblom.  Notwithstanding the foregoing, "Proskauer Released Parties" shall not include (x) any Person, other than Proskauer and Sjoblom, who is a party to one or more of the actions or proceedings listed in Exhibit H (i) against whom, on the Agreement Date, the Receiver or the Committee is asserting claims or causes of action in any such action or proceeding, or (ii) with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending; or (y) any Person, other than Proskauer and Sjoblom, who is a party to one or more of the actions or proceedings listed in Exhibit I with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending, provided,

11

however, that to the extent that any such Persons are insurers or reinsurers of Proskauer, such Persons shall nonetheless be included in the definition of "Proskauer Released Parties" in their capacity, but only in their capacity, as insurers or reinsurers of Proskauer.

16.   "Releasor" means any Person granting a release of any Stanford Claim.

17.   "Stanford Claims" means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Person ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Proskauer's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Proskauer's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.  "Stanford Claims" specifically includes, without limitation, the claims filed against Proskauer and Sjoblom in *ARCA Investments v. Proskauer Rose LLP*, Civil Action No. 3:15-CV-02423-N (N.D. Tex.) (the "*ARCA Investments* Litigation"). "Stanford Claims" also specifically includes, without limitation, all claims a Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement

12

("Unknown Claims"). Each Releasor expressly waives, releases, and relinquishes any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which governs or limits the release of unknown or unsuspected claims, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Releasor acknowledges that he, she, or it may hereafter discover facts different from, or in addition to, those which such Releasor now knows or believes to be true with respect to the Stanford Claims, but nonetheless agrees that this Agreement, including the releases granted herein, will remain binding and effective in all respects notwithstanding such discovery. Unknown Claims include contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts. These provisions concerning unknown and unsuspected claims and the inclusion of Unknown Claims in the definition of Stanford Claims were separately bargained for and are an essential element of this Agreement and the Settlement.

18.     "Settlement" means the agreed resolution of the Stanford Claims in the manner set forth in this Agreement.

19.     "Settlement Amount" means Sixty-Three Million Dollars ($63,000,000.00) in United States currency.

20.     "Settlement Effective Date" means the date on which the last of all of the following have occurred:

a.      entry in the SEC Action of a bar order including findings under Federal Rule of Civil Procedure 54(b) and in substantially the form attached hereto as **Exhibit B** (the "Bar Order");

b.      entry in the Receiver Litigation of a judgment and bar order in substantially the form attached hereto as **Exhibit C** (the "Judgment and Bar Order");

c.      the Bar Order and the Judgment and Bar Order have both become Final;

d.      the Investor Litigation has been dismissed with prejudice; and

e.      the State Court Litigations pending in the Court have been dismissed with prejudice.

21.     "Stanford Entities" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg Inc.; the entities listed in **Exhibit D** to this Agreement; and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

22.     "Taxes" means any and all taxes, whether federal, state, local, or other taxes related to the Settlement or the Settlement Amount, and costs incurred in connection with such taxation including, without limitation, the fees and expenses of tax attorneys and accountants.

**III.     Delivery of Settlement Amount**

23.     Dismissal of Receiver Litigation:  The Receiver Litigation shall be fully and finally resolved and concluded and considered dismissed as to Proskauer by the Judgment and Bar Order being entered in the Receiver Litigation and becoming Final.

14

24.     Stay of Investor Litigation: On or before the filing of the motion for entry of the Scheduling Order (as defined in Paragraph 30), the Investor Plaintiffs shall file a motion to vacate the consolidation of the *Dorrell* Appeal with the appeal involving Greenberg Traurig[3] and to stay the *Dorrell* Appeal pending a final determination concerning approval of the Settlement and the Bar Order and Judgment and Bar Order described in Paragraph 20.

25.     Dismissal of Investor Litigation:   Within five (5) business days after the Bar Order is entered and becomes Final, the Investor Plaintiffs shall file a motion in the Fifth Circuit pursuant to Federal Rule of Appellate Procedure 42(b) to dismiss with prejudice, and without costs or attorneys' fees, the Investor Litigation.

26.     Dismissal of State Court Litigations:   Within five (5) business days after the Bar Order is entered and becomes Final, the State Court Plaintiffs and Proskauer shall file agreed motions to dismiss with prejudice, and without costs or attorneys' fees, each of the State Court Litigations pending in the Court.

27.     Delivery of Settlement Amount: By the later of (a) thirty (30) days after the Settlement Effective Date, or (b) December 1, 2018, Proskauer shall deliver or cause to be delivered the Settlement Amount to the Receiver by wire transfer in accordance with wire transfer instructions provided by the Receiver for purposes of receiving the payment.

**IV.     Use and Management of Settlement Amount**

28.     Management and Distribution of Settlement Amount: If and when the Settlement Amount is delivered to the Receiver pursuant to the terms of this Agreement, the Receiver shall receive and take custody of the Settlement Amount and shall maintain, manage, and distribute the Settlement Amount in accordance with the Distribution Plan and under the supervision and

---

[3] *Troice v. Greenberg Traurig, L.L.P., et al.*, No. 17-11464 (5th Cir.).  This action is captioned in the Northern District of Texas as *Troice v. Greenberg Traurig, LLP*, No. 3:12-cv-04641 (N.D. Tex.).

direction and with the approval of the Court. The Receiver shall be responsible for all Taxes, fees, and expenses that may be due with respect to the Settlement Amount or the management, use, administration, or distribution of the Settlement Amount.

29.    No Liability: Proskauer and the Proskauer Released Parties shall have no liability, obligation, or responsibility whatsoever with respect to the investment, management, use, administration, or distribution of the Settlement Amount or any portion thereof, including, but not limited to, the costs and expenses of such investment, management, use, administration, or distribution of the Settlement Amount, and any Taxes arising therefrom or relating thereto. Nothing in this Paragraph 29 shall alter Proskauer's obligations to deliver the Settlement Amount to the Receiver pursuant to the terms of this Agreement.

## V.    Motion for Scheduling Order, Bar Order, and Judgment and Bar Order and Form and Procedure for Notice

30.    Motion: On a date mutually acceptable to the Parties that is not more than ninety (90) days from the Agreement Date, unless otherwise agreed by the Parties in writing, via e-mail or otherwise, Plaintiffs shall submit to the Court a motion requesting entry of an order substantially in the form attached hereto as **Exhibit F** (the "Scheduling Order") (a) preliminarily approving the Settlement; (b) approving the content and plan for publication and dissemination of Notice; (c) setting the date by which any objection to the Settlement or this Agreement must be filed; and (d) scheduling a Hearing to consider final approval of the Settlement and entry of the orders required by Paragraph 20 of this Agreement.  With respect to the content and plan for publication and dissemination of Notice, Plaintiffs will propose that Notice in substantially the form attached hereto as **Exhibit A**, be sent via electronic mail, first-class mail or international delivery service to all Interested Parties; sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities*

*Securities Litigation*, MDL No. 2099 (N.D. Tex.) (the "MDL"), including but not limited to the parties to the *ARCA Investments* Litigation, the SEC Action, or the Litigation who are deemed to have consented to electronic service through the Court's CM/ECF System under Local Rule CV-5.1(d); sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action, or the Litigation; and posted on the websites of the Receiver and the Examiner along with complete copies of this Agreement and all filings with the Court relating to the Settlement, this Agreement, and approval of the Settlement.  Plaintiffs will further propose that Notice in substantially the form attached hereto as **Exhibit G** be published once in the national edition of *The Wall Street Journal* and once in the international edition of *The New York Times*.  In advance of filing the motion papers to accomplish the foregoing, Plaintiffs shall provide Proskauer with a reasonable opportunity to review and comment on such motion papers.

31.    Notice Preparation and Dissemination: The Receiver shall be responsible for the preparation and dissemination of the Notice pursuant to this Agreement and as directed by the Court. In the absence of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, no Interested Party or any other Person shall have any recourse against the Receiver with respect to any claims that may arise from or relate to the Notice process. In the case of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, Proskauer shall not have any claim against the Receiver other than the ability to seek specific performance.  The Parties do not intend to give any other Person any right or recourse against the Receiver in connection with the Notice process.

32.     <u>No Recourse Against Proskauer</u>: No Interested Party or any other Person shall have any recourse against Proskauer or the Proskauer Released Parties with respect to any claims that may arise from or relate to the Notice process.

33.     <u>Motion Contents</u>: In the motion papers referenced in Paragraph 30 above, Plaintiffs shall request that the Court, *inter alia*:

      a.     approve the Settlement and its terms as set out in this Agreement;

      b.     enter an order finding that this Agreement and the releases set forth herein are final and binding on the Parties;

      c.     enter in the SEC Action a Bar Order in the form attached hereto as **Exhibit B**; and

      d.     enter in the Receiver Litigation a Judgment and Bar Order in the form attached hereto as **Exhibit C**.

34.     <u>Parties to Advocate</u>:  The Parties shall take all reasonable steps to advocate for and encourage the Court to approve the terms of this Agreement.

35.     <u>No Challenge</u>:  No Party shall challenge the approval of the Settlement or this Agreement, and no Party will encourage or assist any Interested Party in challenging the Settlement or this Agreement.

## VI.     <u>Rescission if the Settlement Is Not Finally Approved or the Bar Order and Judgment and Bar Order Are Not Entered</u>

36.     <u>Right to Withdraw</u>: The Parties represent and acknowledge that the following were necessary to the Parties' agreement to this Settlement, are each an essential term of the Settlement and this Agreement, and that the Settlement would not have been reached in the absence of these terms: (a) Court approval of the Settlement and the terms of this Agreement without amendment or revision; (b) entry by the Court of the Bar Order in the SEC Action in

18

substantially the form attached hereto as **Exhibit B**; (c) entry by the Court of the Judgment and

Bar Order in the Receiver Litigation in substantially the form attached hereto as **Exhibit C**; and

(d) all such approvals and orders becoming Final, pursuant to Paragraphs 7 and 20 of this

Agreement.  If the Court refuses to provide the approvals described in (a); if the Court refuses to

enter the bar orders described in (b) or (c) without material modification or limitation; or if the

final result of any appeal from the approvals and orders described in (a), (b), or (c) is that any of

the approvals or orders are not affirmed, in their entirety and without material modification or

limitation, then any Party has the right to withdraw its agreement to the Settlement and to this

Agreement by providing to all other Parties written notice of such withdrawal within fourteen

(14) days of notice of the event giving rise to the right to withdraw.  For purposes of this Section

VI, the Party making the election to withdraw has the sole and absolute discretion to determine

whether a modification or limitation to the approvals or bar orders described in (a), (b) or (c) is

material.  In addition, Proskauer, in its sole and absolute discretion, may, but is not required to,

withdraw from this Agreement if between August 10, 2018 and the Settlement Effective Date,

the Court, the Fifth Circuit, or the Supreme Court of the United States issues a ruling that a bar

order, judgment and bar order, and/or release used in other litigation related to the Stanford

Entities that is similar to the Bar Order and Judgment and Bar Order and releases contemplated

between the Parties (such as the Bar Order and releases in the matter styled *Janvey et al. v. Willis*

*of Colorado*, Case No. 3:13-cv-003980-N (N.D. Tex.)) are invalid or unenforceable to bar claims

of Stanford Investors or those who are putative class members.  Such withdrawal must be by

written notice to all Parties within ten (10) days of notice of the occurrence of the event giving

rise to the right to withdraw.  If Proskauer elects to exercise its right to withdraw from this

Settlement Agreement, as set forth in this paragraph, after the Bar Order is entered but before the

Bar Order becomes Final, then the Parties agree to jointly move to vacate the Bar Order, to jointly move to vacate the stay of the Investor Litigation described in Paragraph 24 so that the proceedings in the Fifth Circuit can continue, and to jointly move to vacate the Judgment and Bar Order in the Receiver Litigation so that proceedings in this Court can continue.  The Parties further agree that any and all applicable statutes of limitation will have been tolled from the Agreement Date through the date written notice is given, as required by this paragraph, and for thirty (30) days thereafter.  In the event that any Party withdraws its agreement to the Settlement or this Agreement as allowed in this paragraph, this Agreement (except for the provisions identified in Paragraph 38, which shall survive) will be null and void and of no further effect whatsoever, shall not be admissible in any ongoing or future proceedings for any purpose whatsoever, and shall not be the subject or basis for any claims by any Party against any other Party.  If any Party withdraws from this Agreement pursuant to the terms of this paragraph, then each Party shall be returned to such Party's respective position immediately prior to such Party's execution of the Agreement, which shall include the right of each Party to seek reinstatement of the appeal in the Receiver Litigation pursuant to Fifth Circuit Rule 42.4.

37.     If the Settlement Effective Date has not occurred before the expiry of 170 days from June 28, 2018, the Parties shall jointly file a letter with the Clerk of the Fifth Circuit Court of Appeals seeking an extension of time for a Party to reinstate the appeal in the Receiver Litigation, or, if such extension is not granted, reinstatement of such appeal.

38.     The Parties do not have the right to withdraw from, or otherwise terminate, the Agreement for any reason other than the reasons identified in Paragraph 36.  The following Paragraphs of this Agreement shall survive termination of the Agreement: 36, 37, 38, 48, and 49.

## VII.    **Distribution Plan**

39.    <u>Duties</u>: The Receiver, with the approval and guidance of the Court, shall be solely responsible for preparing, filing a motion seeking approval of, and implementing the Distribution Plan including, without limitation, receiving, managing and disbursing the Settlement Amount. The Receiver owes no duties to Proskauer or the Proskauer Released Parties in connection with the distribution of the Settlement Amount or the Distribution Plan, and if the Receiver complies with all orders issued by the Court relating to the Distribution Plan neither Proskauer nor the Proskauer Released Parties may assert any claim or cause of action against the Receiver in connection with the distribution of the Settlement Amount or the Distribution Plan. In no event will the Receiver or the Receivership Estate be liable for damages or the payment or re-payment of funds of any kind as a result of any deficiency associated with the distribution of the Settlement Amount or the Distribution Plan.

40.    <u>Distribution by Check</u>: The Receiver must include the following statement, without alteration (except that additional releasees may be included if the Receiver includes in the distribution check funds from settlements with such other releasees), on the reverse of all checks sent to Claimants pursuant to the Distribution Plan, above where the endorser will sign:

> BY ENDORSING THIS CHECK, I RELEASE ALL CLAIMS, KNOWN OR NOT, AGAINST PROSKAUER ROSE LLP, ITS PARTNERS, AND EMPLOYEES (WHETHER CURRENT OR PAST), INCLUDING FORMER PARTNER THOMAS V. SJOBLOM, ARISING FROM OR RELATING TO STANFORD INTERNATIONAL BANK, LTD. OR ANY OF ITS RELATED ENTITIES AND ACCEPT THIS PAYMENT IN FULL SATISFACTION THEREOF.

41.    <u>No Responsibility</u>: Proskauer and the Proskauer Released Parties shall have no responsibility, obligation, or liability whatsoever with respect to the terms, interpretation, or implementation of the Distribution Plan; the administration of the Settlement; the management,

investment, or distribution of the Settlement Amount or any other funds paid or received in connection with the Settlement; the payment or withholding of Taxes that may be due or owing by the Receiver or any recipient of funds from the Settlement Amount; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or this Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters. As of the Settlement Effective Date, the Plaintiffs, the Plaintiffs Released Parties, the Interested Parties, and all other individuals, persons or entities Plaintiffs represent or on whose behalf Plaintiffs have been empowered to act by any court fully, finally, and forever release, relinquish, and discharge Proskauer and the Proskauer Released Parties from any and all such responsibility, obligation, and liability.

**VIII.   <u>Releases, Covenant Not to Sue, and Permanent Injunction</u>**

42.   <u>Release of Proskauer Released Parties</u>: As of the Settlement Effective Date, each of the Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate (including the Stanford Entities but not including the natural persons listed in Paragraph 21 of this Agreement), fully, finally, and forever release, relinquish, and discharge, with prejudice, all Stanford Claims against Proskauer and the Proskauer Released Parties, including, without limitation, Sjoblom.

43.   <u>Release of Plaintiffs Released Parties</u>: As of the Settlement Effective Date, Proskauer fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Stanford Claims against Plaintiffs Released Parties. Notwithstanding the foregoing, the foregoing release does not bar or release any claims, including but not limited to the Stanford Claims, that

22

Proskauer may have against any Proskauer Released Party, including but not limited to Proskauer's insurers and reinsurers.

44.     <u>No Release of Obligations Under Agreement</u>: Notwithstanding anything to the contrary in this Agreement, the releases and covenants contained in this Agreement do not release the Parties' rights and obligations under this Agreement or the Settlement, nor do they bar the Parties from enforcing or effectuating this Agreement or the Settlement.

45.     <u>Covenant Not to Sue</u>: Effective as of the Agreement Date, Plaintiffs covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Proskauer Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Stanford Claims, whether in a court or any other Forum.  Effective as of the Agreement Date, Proskauer covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Plaintiffs Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Stanford Claims, whether in a court or any other Forum.  Notwithstanding the foregoing, however, the Parties retain the right to sue for alleged breaches of this Agreement.

## IX.    Representations and Warranties

46.    No Assignment, Encumbrance, or Transfer: Plaintiffs represent and warrant that they are the owners of the Stanford Claims that they are releasing under this Agreement and that they have not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred any of the Stanford Claims that they are releasing under this Agreement.

47.    Authority: Each person executing this Agreement or any related documents represents and warrants that he or she has the full authority to execute the documents on behalf of the entities and/or persons each represents and that each has the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms. The Committee represents and warrants that the Committee has approved this Agreement in accordance with the by-laws of the Committee.

## X.    No Admission of Fault or Wrongdoing

48.    The Settlement, this Agreement, and the negotiation and mediation thereof shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in the Litigation or any other proceeding relating to any Stanford Claim, or any other proceeding in any Forum. The Settlement and this Agreement are a resolution of disputed claims in order to avoid the risk and very substantial expense of protracted litigation. The Settlement, this Agreement, and evidence thereof shall not be used, directly or indirectly, in any way, in the Litigation, the SEC Action, or in any other proceeding, other than to enforce the terms of the Settlement and this Agreement.

24

## XI.    **Confidentiality**

49.    <u>Confidentiality</u>: Except as necessary to obtain Court approval of this Agreement, to provide the Notices as required by this Agreement, or to enforce the terms of the Settlement and this Agreement, the Parties will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to any Person except that (i) a Party may disclose Confidential Information to a person or entity to whom disclosure is required pursuant to law or regulation, but only after providing prompt notice to the other Parties; (ii) as to the Fifth Circuit, the Parties may disclose the fact that the Parties have agreed to resolve the Litigation but that the Settlement Agreement will be subject to a number of contingencies until it is Final; (iii) Proskauer shall be permitted to disclose to its partners and senior staff, and current and potential insurers, reinsurers, auditors and lenders, on a confidential or attorney-client basis, the Settlement, the Agreement, its terms, the amount of the Settlement, and information about the Settlement negotiations; and (iv) a Party may disclose Confidential Information to a person or entity if the Party has obtained prior written consent from all other Parties.  Notwithstanding anything else in this Agreement or otherwise, such consent may be transmitted by e-mail.

## XII.    **Non-Disparagement**

50.    In connection with the Settlement and this Agreement, Plaintiffs shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, that would denigrate or embarrass Proskauer, or that is otherwise negative or derogatory towards Proskauer.  Nothing in this paragraph shall prevent Plaintiffs from making any statement in Court regarding Proskauer.  Nothing in this paragraph shall prevent the Receiver from reporting his activities to the Court, the Examiner, or the SEC, or from responding as necessary to

inquiries from the Court or other governmental authorities, or from carrying out any of his duties under any order addressing the scope of the Receiver's duties, including but not limited to the Second Amended Receivership Order [SEC Action, ECF No. 1130] or other order addressing the scope of the Receiver's duties.  Nothing in this paragraph shall prevent the Examiner from reporting his activities to the Court or the SEC, or from responding as necessary to inquiries from the Court or other governmental authorities, or from carrying out any of his duties under any order addressing the scope of the Examiner's duties, including but not limited to the order appointing the Examiner [SEC Action, ECF No. 322] or other order addressing the scope of the Examiner's duties.

51.     In connection with the Settlement and this Agreement, Proskauer shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, which would denigrate or embarrass Plaintiffs.  Nothing in this paragraph shall prevent Proskauer from making any statement in Court regarding Plaintiffs, nor shall this paragraph prevent Proskauer from taking any step it believes, in its sole and absolute discretion, is necessary to enforce the Settlement or this Agreement, or in response to any request by Plaintiffs or any other person for discovery from Proskauer in any other litigation related to the Stanford Entities.

## XIII.  **Miscellaneous**

52.     <u>Final and Complete Resolution</u>: The Parties intend this Agreement and the Settlement to be and constitute a final, complete, and worldwide resolution of all matters and disputes between (1) the Plaintiffs Released Parties and the Interested Parties, on the one hand, and (2) the Proskauer Released Parties, on the other hand, and this Agreement, including its exhibits, shall be interpreted to effectuate this purpose.

53.     Binding Agreement: As of the Agreement Date, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. No Party may assign any of its rights or obligations under this Agreement without the express written consent of the other Parties.

54.     Incorporation of Recitals: The Recitals contained in this Agreement are essential terms of this Agreement and are incorporated herein for all purposes.

55.     Disclaimer of Reliance: The Parties represent and acknowledge that in negotiating and entering into the Settlement and this Agreement they have not relied on, and have not been induced by, any representation, warranty, statement, estimate, communication, or information, of any nature whatsoever, whether written or oral, by, on behalf of, or concerning any Party, any agent of any Party, or otherwise, except as expressly set forth in this Agreement. To the contrary, each of the Parties affirmatively represents and acknowledges that the Party is relying solely on the express terms contained within this Agreement. The Parties have each consulted with legal counsel and advisors, have considered the advantages and disadvantages of entering into the Settlement and this Agreement, and have relied solely on their own judgment and the advice of their respective legal counsel in negotiating and entering into the Settlement and this Agreement.

56.     Third-Party Beneficiaries: This Agreement is not intended to and does not create rights enforceable by any Person other than the Parties (or their respective heirs, executors, administrators, successors, and assigns, as provided in Paragraph 53 of this Agreement), except that if this Agreement provides that a Person is released or should not be sued as a consequence of a covenant not to sue, then such Person may enforce the release or covenant not to sue as it relates to said Person.

57.    <u>Negotiation, Drafting, and Construction</u>: The Parties agree and acknowledge that they each have reviewed and cooperated in the preparation of this Agreement, that no Party should or shall be deemed the drafter of this Agreement or any provision hereof, and that any rule, presumption, or burden of proof that would construe this Agreement, any ambiguity, or any other matter, against the drafter shall not apply and is waived. The Parties are entering into this Agreement freely, after good-faith, arm's-length negotiation, with the advice of counsel, and in the absence of coercion, duress, and undue influence. The titles and headings in this Agreement are for convenience only, are not part of this Agreement, and shall not bear on the meaning of this Agreement. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation." The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense. Words in the masculine, feminine, or neuter gender shall include any gender. The singular shall include the plural and vice versa. "Any" shall be understood to include and encompass "all," and "all" shall be understood to include and encompass "any."

58.    <u>Cooperation</u>: The Parties agree to execute any additional documents reasonably necessary to finalize and carry out the terms of this Agreement. In the event a third party or any Person other than a Party at any time challenges any term of this Agreement or the Settlement, including the Bar Order and the Judgment and Bar Order, the Parties agree to cooperate with each other, including using reasonable efforts to make documents or personnel available as needed to defend any such challenge. Further, the Parties shall reasonably cooperate to defend and enforce each of the orders required under Paragraph 20 of this Agreement.

59.    <u>Notice</u>: Any notices, documents, or correspondence of any nature required to be sent pursuant to this Agreement shall be transmitted by both e-mail and overnight delivery to the

following recipients, and will be deemed transmitted upon receipt by the overnight delivery service.

If to Proskauer:

Steven E. Obus
Partner and General Counsel
Proskauer Rose LLP
Eleven Times Square
(Eighth Avenue & 41st Street)
New York, New York 10036-8299
Telephone: 212.969.3000
Email: sobus@proskauer.com

and

James P. Rouhandeh
Daniel J. Schwartz
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Fax:  (212) 701-5800
E-mail:  rouhandeh@davispolk.com
E-mail:  daniel.schwartz@davispolk.com

and

Bruce W. Collins
Neil R. Burger
Carrington, Coleman, Sloman
& Blumenthal, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: 214.855.3000
Facsimile: 214.855.1333
Email: bcollins@ccsb.com
Email: nburger@ccsb.com

If to Plaintiffs:

Edward C. Snyder
Castillo Snyder, PC
One Riverwalk Place
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205

29

Telephone: 210.630.4200
Fax: 210.630.4210
E-mail: esnyder@casnlaw.com

and

Douglas J. Buncher
Neligan LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214.840.5320
Fax: 214.840.5301
E-mail: dbuncher@neliganlaw.com

and

Patrick J. Neligan, Jr.
Neligan LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5320
Fax: 214-840-5301
E-mail: pneligan@neliganlaw.com

and

Judith R. Blakeway
Clark Hill Strasburger
2301 Broadway
San Antonio, Texas 78215
Telephone: 210.250.6004
Fax: 210.250.6100
E-mail: judith.blakeway@clarkhillstrasburger.com

and

David N. Kitner
Clark Hill Strasburger
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone: (214) 651-4300
Facsimile: (214) 651-4330
E-mail: david.kitner@clarkhillstrasburger.com

and

Ralph S. Janvey

30

2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Each Party shall provide notice of any change to the service information set forth above to all other Parties by the means set forth in this paragraph.

60.     Choice of Law: This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without regard to the choice-of-law principles of Texas or any other jurisdiction.

61.     Mandatory, Exclusive Forum Selection Clause: Any dispute, controversy, or claim arising out of or related to the Settlement or this Agreement, including breach, interpretation, effect, or validity of this Agreement, whether arising in contract, tort, or otherwise, shall be brought exclusively in the United States District Court for the Northern District of Texas.  With respect to any such action, the Parties irrevocably stipulate and consent to personal and subject matter jurisdiction and venue in such court, and waive any argument that such court is inconvenient, improper, or otherwise an inappropriate forum.

62.     United States Currency: All dollar amounts in this Agreement are expressed in United States dollars.

63.     Timing: If any deadline imposed by this Agreement falls on a non-business day, then the deadline is extended until the next business day.

31

64.     <u>Waiver</u>: The waiver by a Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

65.     <u>Exhibits</u>: The exhibits annexed to this Agreement are incorporated by reference as though fully set forth in this Agreement.

66.     <u>Integration and Modification</u>: This Agreement sets forth the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations, and communications, whether oral or written, with respect to such subject matter. Neither this Agreement, nor any provision or term of this Agreement, may be amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by all of the Parties.

67.     <u>Counterparts and Signatures</u>: This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument.  A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph S. Janvey, in his capacity as the Receiver for the Stanford Receivership Estate

Date: 8 / 13 / 18

John J. Little, in his capacity as Examiner

Date: 8 / 15 / 18

Official Stanford Investors Committee

Date: 8 / 15 / 18

By:     John J. Little, Chairperson

Sandra Dorrell
by Edward C. Snyder, attorney-in-fact   by ECS w/ permission

Date: 8 / 13 / 18

Phillip A. Wilkinson   by ECS w/ permission
by Edward C. Snyder, attorney-in-fact

Date: 8 /13 /18

The State Court Plaintiffs (as defined in the Agreement)
by Edward C. Snyder, attorney-in-fact

Date: 8 /13 /18

33

Proskauer Rose LLP

By: _____      Date: _____8/14/18_____
      Steven E. Obus
Title:  Partner and General Counsel

34

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY | § | |
| AS COURT-APPOINTED RECEIVER | § | |
| FOR THE STANFORD RECEIVERSHIP | § | |
| ESTATE, AND THE OFFICIAL | § | |
| STANFORD INVESTORS COMMITTEE, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:13-CV-0477-N-BG |
| | § | |
| v. | § | |
| | § | |
| PROSKAUER ROSE, LLP, | § | |
| CHADBOURNE & PARKE, LLP, AND | § | |
| THOMAS V. SJOBLOM, | § | |
| | § | |
| Defendants. | § | |

## <u>NOTICE OF SETTLEMENT AND BAR ORDER PROCEEDINGS</u>

PLEASE TAKE NOTICE that Ralph S. Janvey, in his capacity as the Court-appointed

Receiver for the Stanford Receivership Estate (the "Receiver"), the Official Stanford Investors

Committee (the "Committee"), Sandra Dorrell and Phillip A. Wilkinson, individually and on

behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs"), and each

of the plaintiffs in the actions listed in Exhibit E to the Settlement Agreement (defined below)

(collectively, the "State Court Plaintiffs," and with the Receiver, the Committee,  and the

Investor Plaintiffs, the "Plaintiffs"), have reached an agreement (the "Settlement Agreement") to

settle all claims asserted or that could have been asserted against Proskauer Rose LLP

("Proskauer") by the Receiver and the Committee in *Janvey, et al. v. Proskauer Rose LLP et al.*,

No. 3:13-cv-00477-N (N.D. Tex.) (the "Receiver Litigation"), by the Investor Plaintiffs in

*Dorrell, et al. v. Proskauer Rose LLP, et al.*, No. 3:16-cv-1152-N (the "Investor Litigation"), and

by the State Court Plaintiffs in the actions listed in Exhibit E to the Settlement Agreement (the

**EXHIBIT A**

"State Court Litigations").  All capitalized terms used in this Notice of Settlement and Bar Order

Proceedings that are defined in the Settlement Agreement, which is attached as Exhibit 1 of the

Appendix to the Motion (described below), have the same meaning as in the Settlement

Agreement (which is deemed incorporated herein by reference), unless expressly otherwise

defined herein.

PLEASE TAKE FURTHER NOTICE that the Plaintiffs have filed an Expedited Request

for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Proskauer Rose

LLP, to Approve the Proposed Notice of Settlement with Proskauer Rose LLP, to Enter the Bar

Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the

"Motion"), in *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC

Action").  Copies of the Settlement Agreement, the Motion, and other supporting papers may be

obtained from the Court's docket in the SEC Action [ECF No. ____], and are also available on

the websites of the Receiver (http://www.stanfordfinancialreceivership.com) and the Examiner

(www.lpf-law.com/examiner-stanford-financial-group/).  Copies of these documents may also be

requested by email, by sending the request to legalassistant@casnlaw.com; or by telephone, by

calling Nadia Ramon (210) 630-4200.

PLEASE TAKE FURTHER NOTICE that the Motion requests that the Court approve the

Settlement and enter a bar order permanently enjoining, among others, Interested Parties,[1]

---

[1]   "Interested Parties" means the Receiver; the Receivership Estate; the Committee; the members of the
Committee; the Plaintiffs; the Stanford Investors; the Claimants; the Examiner; or any Person or Persons
alleged by the Receiver, the Committee, or other Person or entity on behalf of the Receivership Estate to be
liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

2

**EXHIBIT A**

including Stanford Investors[2] and Claimants,[3] from pursuing Stanford Claims,[4] including claims you may possess, against Proskauer.

PLEASE TAKE FURTHER NOTICE that the settlement amount is sixty-three million U.S. dollars ($63,000,000.00) (the "Settlement Amount").  The Settlement Amount, less any fees and costs awarded by the Court to the attorneys for Plaintiffs and expenses paid by the Receiver (the "Net Settlement Amount"), will be deposited with and distributed by the Receiver pursuant to a Distribution Plan hereafter to be approved by the Court in the SEC Action (*see* subparagraph e below).

**This matter may affect your rights and you may wish to consult an attorney.**

The material terms of the Settlement Agreement are as follows:

---

[2]   "Stanford Investors" means customers of Stanford International Bank, Ltd., who, as of February 16, 2009, had funds on deposit at Stanford International Bank, Ltd., and/or were holding certificates of deposit issued by Stanford International Bank, Ltd.

[3]   "Claimants" means any Persons who have submitted a Claim to the Receiver or to the Joint Liquidators.  Where a Claim has been transferred to a third party and such transfer has been acknowledged by the Receiver or the Joint Liquidators, the transferee is a Claimant, and the transferor is not a Claimant unless the transferor has retained a Claim that has not been transferred.  Where the Receiver or the Joint Liquidators have disallowed a Claim and the disallowance has become Final, then the submission of the disallowed Claim does not make the Person who submitted it a Claimant.

[4]   "Stanford Claims" generally means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Person ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Proskauer's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Proskauer's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum. "Stanford Claims" specifically includes, without limitation, the claims filed against Proskauer and Thomas V. Sjoblom ("Sjoblom") in *ARCA Investments v. Proskauer Rose LLP*, Civil Action No. 3:15-CV-02423-N (N.D. Tex.) (the "*ARCA Investments* Litigation").  "Stanford Claims" also specifically includes, without limitation, all claims a Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to the Settlement Agreement and the Settlement.  *See* Paragraph 17 of the Settlement Agreement for a complete definition of Stanford Claims.  [ECF No. ___.]

**EXHIBIT A**

a) Proskauer will pay $63 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

b) Plaintiffs will fully release the Proskauer Released Parties[5] from Stanford Claims, *e.g.*, claims arising from or relating to Robert Allen Stanford, the Stanford Entities,[6] or any conduct by the Proskauer Released Parties relating to Robert Allen Stanford or the Stanford Entities, with prejudice;

c) The Settlement Agreement requires entry of a Final Judgment and Bar Order in the Receiver Litigation, and entry of a Final Bar Order in the SEC Action, each of which permanently enjoins, among others, Interested Parties, including all Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Proskauer or any of the

---

[5]   "Proskauer Released Parties" means Proskauer, and all of its predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity.   Without limiting the generality of the foregoing, "Proskauer Released Parties" shall include Sjoblom.  Notwithstanding the foregoing, "Proskauer Released Parties" shall not include (x) any Person, other than Proskauer and Sjoblom, who is a party to one or more of the actions or proceedings listed in Exhibit H to the Settlement Agreement (i) against whom, on the Agreement Date, the Receiver or the Committee is asserting claims or causes of action in any such action or proceeding, or (ii) with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending; or (y) any Person, other than Proskauer and Sjoblom, who is a party to one or more of the actions or proceedings listed in Exhibit I to the Settlement Agreement with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending, provided, however, that to the extent that any such Persons are insurers or reinsurers of Proskauer, such Persons shall nonetheless be included in the definition of "Proskauer Released Parties" in their capacity, but only in their capacity, as insurers or reinsurers of Proskauer.

[6]   "Stanford Entities" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg. Inc.; the entities listed in Exhibit D to the Settlement Agreement [ECF No. __]; and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

4

**EXHIBIT A**

Proskauer Released Parties, the Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or proceeding of any nature arising from or relating to any Stanford Claim, including, without limitation, contribution or indemnity claims, and the claims filed against Proskauer and Sjoblom in the *ARCA Investments* Litigation;

d)   The Receiver will disseminate notice of the Settlement Agreement to Interested Parties, through one or more of the following:  mail, email, international delivery, CM/ECF notification, facsimile transmission, and/or publication, including on the websites maintained by the Examiner (www.lpf-law.com/examiner-stanford-financial-group/) and the Receiver (http://www.stanfordfinancialreceivership.com);

e)   The Receiver will develop and submit to the Court for approval a plan for distributing the Net Settlement Amount (the "Distribution Plan");

f)   Under the Distribution Plan, once approved, the Net Settlement Amount will be distributed by the Receiver, under the supervision of the Court, to Stanford Investors who have submitted Claims that have been allowed by the Receiver;

g)   Persons who accept funds from the Settlement Amount will, upon accepting the funds, fully release the Proskauer Released Parties from any and all Stanford Claims;

h)   The Receiver Litigation will be fully and finally resolved and concluded and considered dismissed as to Proskauer, with each party bearing its own costs and attorneys' fees, by the Judgment and Bar Order being entered in the Receiver Litigation and becoming Final;

5

**EXHIBIT A**

      i)   The Investor Litigation will be dismissed with prejudice, with each party bearing its own costs and attorneys' fees; and

      j)   The State Court Litigations pending in this Court will be dismissed with prejudice as to Proskauer, with each party bearing its own costs and attorneys' fees.

Attorneys for the Plaintiffs seek a fee award based upon 25% of the Settlement Amount, pursuant to 25% contingency fee agreements with the Plaintiffs. Twenty-five percent of the net recovery from the Settlement is to be calculated but shall not exceed $15,750,000.00.

The final hearing on the Motion is set for [_____] (the "Final Approval Hearing"). Any objection to the Settlement Agreement or its terms, the Motion, the Final Judgment and Bar Order, the Final Bar Order, or the request for approval of the Plaintiffs' attorneys' fees must be filed, in writing, with the Court in the SEC Action no later than [insert date of 21st day before Final Approval Hearing]. Any objections not filed by this date will be deemed waived and will not be considered by the Court. Those wishing to appear and to orally present their written objections at the Final Approval Hearing must include a request to so appear within their written objections.

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § § § § § § | |

## **FINAL BAR ORDER**

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Proskauer Rose LLP, to Approve the Proposed Notice of Settlement with Proskauer Rose LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver"), the Court-appointed Official Stanford Investors Committee (the "Committee"), as parties to this action and as the plaintiffs in *Janvey v. Proskauer Rose, LLP*, Civil Action No. 3:13-cv-00477-N (N.D. Tex.) (the "Receiver Litigation"), Sandra Dorrell and Phillip A. Wilkinson individually and on behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs"), the plaintiffs in *Dorrell et al. v. Proskauer Rose LLP et al.*, Civil Action No. 3:16-cv-1152-N (N.D. Tex.) (the "Investor Litigation"), and each of the plaintiffs listed in Exhibit E to the Settlement

**EXHIBIT B**

Agreement[1] (the "State Court Plaintiffs" in the "State Court Litigations") (collectively, the Receiver, the Committee, the Investor Plaintiffs, and the State Court Plaintiffs are referred to as "Plaintiffs" and collectively, the Receiver Litigation, the Investor Litigation, and the State Court Litigations are referred to as the "Litigation"). [ECF No. ____.] The Motion concerns a proposed settlement (the "Settlement") among and between Plaintiffs and Proskauer Rose LLP ("Proskauer"), one of the defendants in the Litigation. Plaintiffs and Proskauer are referred to together as the "Parties." John J. Little, the Court-appointed Examiner (the "Examiner") signed the Settlement Agreement as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or the Litigation. All capitalized terms used in this Final Bar Order that are defined in the Settlement Agreement have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference) unless expressly otherwise defined herein.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I. INTRODUCTION

The Litigation arises from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities"). [ECF No. 10]. After years of diligent investigation, Plaintiffs believe that they have identified claims against a

---

[1] The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion [ECF No. ___].

**EXHIBIT B**

number of third parties, including Proskauer, that Plaintiffs allege enabled the Stanford Ponzi scheme.  In the Receiver Litigation, the Investor Litigation, and the State Court Litigations, Plaintiffs assert a number of different claims against Proskauer.  Proskauer denies that it is liable for any of those claims and asserts numerous defenses to each of those claims.  The relevant history of the claims in the Receiver Litigation, the Investor Litigation, and the State Court Litigations is included in the Settlement Agreement.

Multiparty settlement negotiations occurred in late 2017, and at a mediation in New York on April 12, 2018.  In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented.  The Investor Plaintiffs, the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" [ECF No. 1149]—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" [ECF No. 322]—and the State Court Plaintiffs (by counsel) all participated in these extensive, arm's-length negotiations. On April 25, 2018, the Parties reached agreement resulting in the Settlement.  For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement. The Parties executed the Settlement Agreement on _____, 2018.

Under the terms of the Settlement, Proskauer will pay $63 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors.  In return, Proskauer seeks total peace with respect to all claims that have been, or could have been, asserted against Proskauer or any of the Proskauer Released

**EXHIBIT B**

Parties, arising out of the events leading to these proceedings. Accordingly, the Settlement is conditioned on the Court's approval and entry of this Final Bar Order enjoining Interested Parties from asserting or prosecuting claims against Proskauer or any of the Proskauer Released Parties.

On ____ __, 2018, Plaintiffs filed the Motion. [ECF No. ____]. The Court thereafter entered a Scheduling Order on ____ __, 2018 [ECF No. ____], which, *inter alia*, authorized the Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing. For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Bar Order is appropriate and necessary.

## II. ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Bar Order. *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and Plaintiffs are proper parties to seek entry of this Final Bar Order.

2.      The Court finds that the methodology, form, content, and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Bar Order and in the Final Judgment and Bar Order to be

**EXHIBIT B**

entered in the Receiver Litigation; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Bar Order, and the Final Judgment and Bar Order to be entered in the Receiver Litigation, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

3.      The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length, mediated negotiations involving experienced and competent counsel.  The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Proskauer by Plaintiffs and by others whose potential claims are foreclosed by this Final Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate Receivership Assets and that Plaintiffs and other Claimants may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Proskauer would not have agreed to the terms of the Settlement in the absence of this Final Bar Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Stanford Entities.  *See SEC v. Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012),

**EXHIBIT B**

*aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary).  The injunction against such claims, including but not limited to Stanford Claims, as set forth herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme pursuant to the Settlement.  *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding).  After careful consideration of the record and applicable law, the Court concludes that the Settlement is the best option for maximizing the net amount recovered from Proskauer for the Receivership Estate, Plaintiffs, and the Claimants.

4.      Pursuant to the Settlement Agreement and upon motion by the Receiver, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement to Stanford Investors who have Claims approved by the Receiver.  The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their Claims through the Receiver's claims process previously approved by the Court [ECF No. 1584].

5.      The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

6.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Proskauer, the Stanford Entities, or the Receivership Estate, including but not limited to Plaintiffs and the Interested Parties. The Court also finds that

FINAL BAR ORDER                                6

**EXHIBIT B**

this Final Bar Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally approved. The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Bar Order.

7.     Pursuant to the provisions of Paragraph 42 of the Settlement Agreement, as of the Settlement Effective Date, Proskauer and all of the other Proskauer Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Investor Plaintiffs; the Receiver; the Receivership Estate; the Committee; the State Court Plaintiffs; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Proskauer's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Proskauer's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of this action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.  The foregoing specifically includes, without

**EXHIBIT B**

limitation, all Plaintiffs' Stanford Claims against Proskauer and the Proskauer Released Parties, including, without limitation, Sjoblom.

8.      Pursuant to the provisions of Paragraph 43 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Stanford Claims by Proskauer.

9.      Notwithstanding anything to the contrary in this Final Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the Settlement Agreement.   Further, the foregoing releases do not bar or release any claims, including but not limited to Stanford Claims, that Proskauer may have against any Proskauer Released Party, including but not limited to Proskauer's insurers, reinsurers, employees and agents.

10.     The Court hereby permanently bars, restrains, and enjoins Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Proskauer or any of the Proskauer Released Parties, the Litigation or any action, lawsuit, cause of action, liability, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any

**EXHIBIT B**

other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; Proskauer's relationship with the Stanford Entities; the Litigation; the SEC Action; the subject matter of the Litigation or the SEC Action; or any Stanford Claim.  The foregoing specifically includes, without limitation, all claims filed against Proskauer and Sjoblom in *ARCA Investments v. Proskauer Rose LLP*, Civil Action No. 3:15-CV-02423-N (N.D. Tex.) (the "*ARCA Investments* Litigation").  The foregoing also specifically includes any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the foregoing, there shall be no bar of any claims, including but not limited to the Stanford Claims, that Proskauer may have against any Proskauer Released Party, including but not limited to Proskauer's insurers, reinsurers, employees and agents.  Further, the Parties retain the right to sue for alleged breaches of the Settlement Agreement.

11.     Nothing in this Final Bar Order shall affect or be construed to affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter

**EXHIBIT B**

33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in litigation; provided for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon Proskauer or any Proskauer Released Party, including, but not limited to, the *ARCA Investments* Litigation as to Proskauer and Sjoblom.

12.     Proskauer and the Proskauer Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Bar Order.

13.     Nothing in this Final Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any

EXHIBIT B

infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in the Litigation, or any other proceeding.

14.     Proskauer is hereby ordered to deliver or cause to be delivered the Settlement Amount ($63 million) as described in Paragraph 27 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

15.     Without in any way affecting the finality of this Final Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, the Scheduling Order, and this Final Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

16.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Bar Order, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

17.     This Final Bar Order shall be served by counsel for Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Bar Order.

**EXHIBIT B**

Signed on _____

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:13-CV-0477-N-BG |
| v. | § § | |
| PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM, | § § § § | |
| Defendants. | § § | |

**FINAL JUDGMENT AND BAR ORDER**

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Proskauer Rose LLP, to Approve the Proposed Notice of Settlement with Proskauer Rose LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver") in *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-CV-0928-N (the "SEC Action"), and as a plaintiff in this action (the "Receiver Litigation"), the Court-appointed Official Stanford Investors Committee (the "Committee"), as a plaintiff in the Receiver Litigation, Sandra Dorrell and Phillip A. Wilkinson individually and on behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs"), as plaintiffs in *Dorrell et al. v. Proskauer Rose LLP et al.*, Civil Action No. 3:16-cv-1152-N (N.D. Tex.) (the "Investor Litigation"), and each of the

**EXHIBIT C**

plaintiffs listed in Exhibit E to the Settlement Agreement[1] (the "State Court Plaintiffs" in the "State Court Litigations") (collectively, the Receiver, the Committee, the Investor Plaintiffs, and the State Court Plaintiffs are referred to as "Plaintiffs" and collectively, the Receiver Litigation, the Investor Litigation, and the State Court Litigations are referred to as the "Litigation").   [ECF No. ____.]  The Motion concerns a proposed settlement (the "Settlement") among and between Plaintiffs and Proskauer Rose LLP ("Proskauer"), one of the defendants in the Litigation. Plaintiffs and Proskauer are referred to together as the "Parties."   John J. Little, the Court-appointed Examiner (the "Examiner") signed the Settlement Agreement as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or this action.  All capitalized terms used in this Final Judgment and Bar Order that are defined in the Settlement Agreement have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference) unless expressly otherwise defined herein.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I.    INTRODUCTION

The SEC Action and the Litigation both arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities").  [SEC Action, ECF No. 10].  After years of diligent investigation, Plaintiffs believe

---

[1] The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion [ECF No. __].

**EXHIBIT C**

that they have identified claims against a number of third parties, including Proskauer, that Plaintiffs allege enabled the Stanford Ponzi scheme. In the Receiver Litigation, the Investor Litigation, and the State Court Litigations, Plaintiffs assert a number of different claims against Proskauer. Proskauer denies that it is liable for any of those claims and asserts numerous defenses to each of those claims. The relevant history of the claims in the Receiver Litigation, the Investor Litigation, and the State Court Litigations is included in the Settlement Agreement.

Multiparty settlement negotiations occurred in late 2017 and at a mediation in New York on April 12, 2018. In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented. The Investor Plaintiffs, the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" [SEC Action, ECF No. 1149]—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" [SEC Action, ECF No. 322]—and the State Court Plaintiffs (by counsel) all participated in these extensive, arm's-length negotiations. On April 25, 2018, the Parties reached agreement resulting in the Settlement. For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement. The Parties executed the Settlement Agreement on _____, 2018.

Under the terms of the Settlement, Proskauer will pay $63 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors. In return, Proskauer seeks total peace with respect to all claims that have been, or could have been, asserted against Proskauer or any of the Proskauer Released

**EXHIBIT C**

Parties arising out of the events leading to these proceedings. Accordingly, the Settlement is conditioned on the Court's approval and entry of this Final Judgment and Bar Order enjoining Interested Parties from asserting or prosecuting claims against Proskauer or any of the Proskauer Released Parties.

On _____ __, 2018, Plaintiffs filed the Motion. [ECF No. ____]. The Court thereafter entered a Scheduling Order on_____ __, 2018 [ECF No. ____], which, *inter alia*, authorized the Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing.  For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**.  The Court further finds that entry of this Final Judgment and Bar Order is appropriate and necessary.

## II.     ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Judgment and Bar Order.  *SEC* v. *Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and the Receiver and the Committee are proper parties to seek entry of this Final Judgment and Bar Order.

2.      The Court finds that the methodology, form, content and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Judgment and Bar Order and in the Final Bar Order to be

4

**EXHIBIT C**

entered in the SEC Action; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Judgment and Bar Order, and the Final Bar Order to be entered in the SEC Action, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

3.      The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good-faith, arm's-length, mediated negotiations involving experienced and competent counsel.  The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Proskauer by Plaintiffs and by others whose potential claims are foreclosed by this Final Judgment and Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate receivership assets and that Plaintiffs and other Claimants may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Proskauer would not have agreed to the terms of the Settlement in the absence of this Final Judgment and Bar Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Stanford Entities.  *See SEC* v. *Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for

**EXHIBIT C**

consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary).

The injunction against such claims, including but not limited to Stanford Claims, as set forth

herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of

the Stanford Ponzi scheme pursuant to the Settlement.  *See Kaleta*, 530 F. App'x at 362

(affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement

in an SEC receivership proceeding).  After careful consideration of the record and applicable

law, the Court concludes that the Settlement is the best option for maximizing the net amount

recovered from Proskauer for the Receivership Estate, Plaintiffs, and the Claimants.

4.      Pursuant to the Settlement Agreement and upon motion by the Receiver in the

SEC Action, this Court will approve a Distribution Plan that will fairly and reasonably distribute

the net proceeds of the Settlement to Stanford Investors who have Claims approved by the

Receiver.  The Court finds that the Receiver's claims process and the Distribution Plan

contemplated in the Settlement Agreement have been designed to ensure that all Stanford

Investors have received an opportunity to pursue their Claims through the Receiver's claims

process previously approved by the Court [SEC Action, ECF No. 1584].

5.      The Court further finds that the Parties and their counsel have at all times

complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

6.      Accordingly, the Court finds that the Settlement is, in all respects, fair,

reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having

authority over, or asserting a claim against Proskauer, the Stanford Entities, or the Receivership

Estate, including but not limited to Plaintiffs and the Interested Parties.  The Court also finds that

this Final Judgment and Bar Order is a necessary component to achieve the Settlement. The

Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and

**EXHIBIT C**

finally approved.  The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Judgment and Bar Order.

7.     Pursuant to the provisions of Paragraph 42 of the Settlement Agreement, as of the Settlement Effective Date, Proskauer and all of the other Proskauer Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Investor Plaintiffs; the Receiver; the Receivership Estate; the Committee; the State Court Plaintiffs; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Proskauer's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Proskauer's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the Litigation, the SEC Action, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.  The foregoing specifically includes, without limitation, all Plaintiffs' Stanford Claims against Proskauer and the Proskauer Released Parties, including, without limitation, Sjoblom.

7

**EXHIBIT C**

8.      Pursuant to the provisions of Paragraph 43 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Stanford Claims by Proskauer.

9.      Notwithstanding anything to the contrary in this Final Judgment and Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the Settlement Agreement.  Further, the foregoing releases do not bar or release any claims, including but not limited to Stanford Claims, that Proskauer may have against any Proskauer Released Party, including but not limited to Proskauer's insurers, reinsurers, employees and agents.

10.     The Court hereby permanently bars, restrains, and enjoins Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Proskauer or any of the Proskauer Released Parties, the Litigation or any action, lawsuit, cause of action, liability, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; Proskauer's relationship with the Stanford Entities; the Litigation; the SEC Action; the subject matter of the Litigation or the SEC Action; or any Stanford Claim.  The

8

**EXHIBIT C**

foregoing specifically includes, without limitation, all claims filed against Proskauer and

Sjoblom in *ARCA Investments v. Proskauer Rose LLP*, Civil Action No. 3:15-CV-02423-N

(N.D. Tex.) (the "*ARCA Investments* Litigation").  The foregoing also specifically includes any

claim, however denominated, seeking contribution, indemnity, damages, or other remedy where

the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such

Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's

liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in

whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or

required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether

pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the

foregoing, there shall be no bar of any claims, including but not limited to the Stanford Claims,

that Proskauer may have against any Proskauer Released Party, including but not limited to

Proskauer's insurers, reinsurers, employees and agents.  Further, the Parties retain the right to sue

for alleged breaches of the Settlement Agreement.

      11.     Nothing in this Final Judgment and Bar Order shall affect or be construed to

affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a

credit or offset, however determined or quantified, if and to the extent provided by any

applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement

or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling

person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery

under applicable rules in litigation; provided for the avoidance of doubt that nothing in this

paragraph shall be interpreted to permit or authorize any action or claim seeking to impose any

liability of any kind (including but not limited to liability for contribution, indemnification or

**EXHIBIT C**

otherwise) upon Proskauer or any Proskauer Released Party, including, but not limited to, the *ARCA Investments* Litigation as to Proskauer and Sjoblom.

12.     Proskauer and the Proskauer Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

13.     Nothing in this Final Judgment and Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in the Litigation, or any other proceeding.

14.     Proskauer is hereby ordered to deliver or cause to be delivered the Settlement Amount ($63 million) as described in Paragraph 27 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

10

**EXHIBIT C**

15.     Without in any way affecting the finality of this Final Judgment and Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, the Scheduling Order, and this Final Judgment and Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

16.     To the extent Plaintiffs continue to maintain claims against any other Defendant in this civil action, the Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Judgment and Bar Order as to Proskauer, which is both final and appealable as to Proskauer, and immediate entry of final judgment as to Proskauer by the Clerk of the Court is expressly directed.

17.     This Final Judgment and Bar Order shall be served by counsel for Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

18.     All relief as to or against Proskauer not expressly granted herein, other than Plaintiffs' request for approval of Plaintiffs' attorneys' fees, which will be addressed by a separate order, is denied. This is a final judgment.  The Clerk of the Court is directed to enter Judgment as to Proskauer in conformity herewith.

11

**EXHIBIT C**

Signed on _____

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT C**

**Receivership Entities**

| | |
|---|---|
| 16NE Huntington, LLC | International Fixed Income Stanford Fund, Ltd. |
| 20/20 Ltd. | The Island Club, LLC |
| Antigua Athletic Club Limited | The Islands Club, Ltd. |
| The Antigua Sun Limited | JS Development, LLC |
| Apartment Household, Inc. | Maiden Island Holdings Ltd. |
| Asian Village Antigua Limited | Miller Golf Company, L.L.C. |
| Bank of Antigua Limited | Parque Cristal Ltd. |
| Boardwalk Revitalization, LLC | Pelican Island Properties Limited |
| Buckingham Investments A.V.V. | Pershore Investments S.A. |
| Caribbean Aircraft Leasing (BVI) Limited | Polygon Commodities A.V.V. |
| Caribbean Airlines Services Limited | Porpoise Industries Limited |
| Caribbean Airlines Services, Inc. | Productos y Servicios Stanford, C.A. |
| Caribbean Star Airlines Holdings Limited | R. Allen Stanford, LLC |
| Caribbean Star Airlines Limited | Robust Eagle Limited |
| Caribbean Sun Airlines Holdings, Inc. | Sea Eagle Limited |
| Casuarina 20 LLC | Sea Hare Limited |
| Christiansted Downtown Holdings, LLC | SFG Majestic Holdings, LLC |
| Crayford Limited | SG Ltd. |
| Cuckfield Investments Limited | SGV Asesores C.A. |
| Datcom Resources, Inc. | SGV Ltd. |
| Devinhouse, Ltd. | Stanford 20*20, LLC |
| Deygart Holdings Limited | Stanford 20/20 Inc. |
| Foreign Corporate Holdings Limited | Stanford Acquisition Corporation |

**EXHIBIT D**

| | |
|---|---|
| Guardian International Investment Services No. One, Inc. | Stanford Aerospace Limited |
| Guardian International Investment Services No. Three, Inc. | Stanford Agency, Ltd. [Louisiana][i] |
| Guardian International Investment Services No. Two, Inc. | Stanford Agency, Inc. [Texas] |
| Guardian One, Ltd. | Stanford Agresiva S.A. de C.V. |
| Guardian Three, Ltd. | Stanford Aircraft, LLC |
| Guardian Two, Ltd. | Stanford American Samoa Holding Limited |
| Guiana Island Holdings Limited | Stanford Aviation 5555, LLC |
| Harbor Key Corp. | Stanford Aviation II, LLC |
| Harbor Key Corp. II | Stanford Aviation III, LLC |
| Idea Advertising Group, Inc. | Stanford Aviation Limited |
| Stanford Bank Holdings Limited | Stanford Aviation LLC |
| Stanford Bank, S.A. Banco Comercial | Stanford Bank (Panama), S.A.[ii] |
| Stanford Capital Management, LLC | Stanford Galleria Buildings Management, LLC |
| Stanford Caribbean Investments, LLC | Stanford Gallows Bay Holdings, LLC |
| Stanford Caribbean Regional Management Holdings, LLC | Stanford Global Advisory, LLC |
| Stanford Caribbean, LLC | Stanford Group (Antigua) Limited |
| Stanford Casa de Valores, S.A. | Stanford Group (Suisse) AG |
| Stanford Cobertura, S.A. de C.V. | Stanford Group Aruba, N.V. |
| Stanford Coins & Bullion, Inc. | Stanford Group Bolivia |
| The Stanford Condominium Owners' Association, Inc. | Stanford Group Casa de Valores, S.A. |
| Stanford Corporate Holdings International, Inc. | Stanford Group Company |
| Stanford Corporate Services (BVI) Limited | Stanford Group Company Limited |

**EXHIBIT D**

| | |
|---|---|
| Stanford Corporate Services (Venezuela), C.A. | Stanford Group Holdings, Inc. |
| Stanford Corporate Services, Inc. | Stanford Group Mexico, S.A. de C.V. |
| Stanford Corporate Ventures (BVI) Limited | Stanford Group Peru, S.A., Sociedad Agente de Bolsa |
| Stanford Corporate Ventures, LLC | Stanford Group Venezuela Asesores de Inversion, C.A. |
| Stanford Crecimiento Balanceado, S.A. de C.V. | Stanford Group Venezuela, C.A. |
| Stanford Crecimiento, S.A. de C.V. | Stanford Holdings Venezuela, C.A. |
| Stanford Development Company (Grenada) Ltd. | Stanford International Bank Holdings Limited |
| Stanford Development Company Limited | Stanford International Bank Limited |
| Stanford Development Corporation | Stanford International Holdings (Panama) S.A. |
| Stanford Eagle, LLC | Stanford International Management Ltd. |
| Stanford Family Office, LLC | Stanford International Resort Holdings, LLC |
| The Stanford Financial Group Building, Inc. | Stanford Investment Advisory Services, Inc. |
| Stanford Financial Group Company | Stanford Leasing Company, Inc. |
| Stanford Financial Group Global Management, LLC | Stanford Management Holdings, Ltd. |
| Stanford Financial Group (Holdings) Limited | Stanford Real Estate Acquisition, LLC |
| Stanford Financial Group Limited | Stanford S.A. Comisionista de Bolsa |
| Stanford Financial Group Ltd. | Stanford Services Ecuador, S.A. |
| Stanford Financial Partners Advisors, LLC | Stanford South Shore Holdings, LLC |
| Stanford Financial Partners Holdings, LLC | Stanford Sports & Entertainment Holdings, LLC |
| Stanford Financial Partners Securities, LLC | Stanford St. Croix Marina Operations, LLC |
| Stanford Financial Partners, Inc. | Stanford St. Croix Resort Holdings, LLC |

**EXHIBIT D**

| | |
|---|---|
| Stanford Fondos, S.A. de C.V. | Stanford St. Croix Security, LLC |
| The Stanford Galleria Buildings, LP | Stanford Trust Company |
| Stanford Trust Holdings Limited | Stanford Trust Company Administradora de Fondos y Fideicomisos S.A. |
| Stanford Venture Capital Holdings, Inc. | Stanford Trust Company Limited |
| The Sticky Wicket Limited | Torre Oeste Ltd. |
| Sun Printing & Publishing Limited | Torre Senza Nome Venezuela, C.A. |
| Sun Printing Limited | Trail Partners, LLC |
| Stanford Puerto Rico, Inc | Two Islands One Club (Grenada) Ltd. |
| | Two Islands One Club Holdings Ltd. |
| Stanford Latin America LLC | |
| Stanford Casa de Valores Panama | Stanford Financial Group Services, LLC |
| Stanford Group Venezuela a/k/a Stanford Group Venezuela C.A. | Stanford Group Columbia a/k/a Stanford Bolsa Y Banca |
| Stanford Bank Venezuela | Guardian International Bank Ltd. |
| Stanford Trust Company Limited d/b/a Stanford Fiduciary Investment Services | Guardian Trust Company |
| Stanford Advisory Board | Guardian Development Corporation |
| | Guardian International Investment Services |
| Two Islands One Club (Antigua) Ltd. | |
| Stanford Caribbean Investment Partners, LP | Casuarina Holdings, Inc. |
| Stanford Caribbean Advisors | Stanford Caribbean Investment Fund |
| | Stanford Caribbean Investment Fund I, LP |
| Stanford Group Panama a/k/a Stanford Bank Panama | |

---

i Locations in brackets are included to differentiate between legal entities with the same name but different locations or other identifying information.

ii Locations in parentheses are included in the legal name of an entity or other identifying information.

**EXHIBIT D**

**List of Other Actions**

1. *Gale v. Proskauer Rose LLP*, No. 3:12-cv-1803 (N.D. Tex.) (pending), removed from No. 2011-CI-20427 (Tex., Bexar Cnty. [285th Dist.])

2. *Green v. Proskauer Rose LLP*, No. 3:12-cv-1808 (N.D. Tex.) (pending), removed from No. 2011-77805 (Tex., Harris Cnty. [189th Dist.[)

3. *Ibarra v. Proskauer Rose LLP*, No. 3:12-cv-1805 (N.D. Tex.) (pending), removed from No. 2011-CI-20425 (Tex., Bexar Cnty. [224th Dist.])

4. *Martin v. Proskauer Rose LLP*, No. 3:12-cv-1809 (N.D. Tex.) (pending), removed from No. 2011-77800 (Tex., Harris Cnty. [11th Dist.])

5. *Reed v. Proskauer Rose LLP*, No. 3:12-cv-1806 (N.D. Tex.) (pending), removed from No. 2011-CI-20426 (Tex., Bexar Cnty. [225th])

6. *Arista Trust v. Proskauer Rose LLP*, No. 2012-CI-02423 (Tex., Bexar Cnty. [131st Dist.]) (dismissed without prejudice for want of prosecution on July 28, 2015)

7. *Canuta Trust v. Proskauer Rose LLP*, No. 212-CI-02422 (Tex., Bexar Cnty. [73rd Dist.]) (dismissed without prejudice for want of prosecution on March 18, 2015)

8. *CS Tecnologia, S.A. v. Proskauer Rose LLP*, No. 2012-09838 (Tex., Harris Cnty. [152nd Dist.]) (dismissed without prejudice for want of prosecution on January 16, 2015)

9. *Garza v. Proskauer Rose LLP*, No. 2011-77793 (Tex., Harris Cnty. [281st Dist.]) (dismissed without prejudice as non-suited on March 12, 2014)

10. *MFR Inversiones, C.A. v. Proskauer Rose LLP*, No. 2012-09824 (Tex., Harris Cnty. [113th Dist.]) (dismissed without prejudice for want of prosecution on August 15, 2014)

11. *Rubiano v. Proskauer Rose LLP*, No. 2012-CI-02425 (Tex., Bexar Cnty. [166th Dist.]) (dismissed without prejudice for want of prosecution on May 20, 2014)

12. *Valenzuela de Jimenez v. Proskauer Rose LLP*, No. 212-CI-02424 (Tex., Bexar Cnty. [150th dist.]) (dismissed without prejudice for want of prosecution on December 17, 2014)

**EXHIBIT E**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § | |
| Defendants. | § § § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:13-CV-0477-N-BG |
| v. | § § | |
| PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM, | § § § § | |
| Defendants. | § § | |

## <u>SCHEDULING ORDER</u>

This matter is before the Court on the Expedited Request for Entry of Scheduling Order

and Motion to Approve Proposed Settlement with Proskauer Rose LLP, to Approve the Proposed

Notice of Settlement with Proskauer Rose LLP, to Enter the Bar Order, to Enter the Final

Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey

(the "Receiver"), as Receiver for the Receivership Estate in *SEC v. Stanford International Bank,*

*Ltd.*, No. 3:09-CV-0298-N (N.D. Tex.) (the "SEC Action"), the Official Stanford Investors

**EXHIBIT F**

Committee (the "Committee"), as a party to the SEC Action and, along with the Receiver, as a plaintiff in *Janvey v. Proskauer Rose LLP et al.*, No. 3:13-cv-00477-N (N.D. Tex.) (the "Receiver Litigation"), Sandra Dorrell and Phillip A. Wilkinson, individually and, on behalf of a putative class of Stanford investors, as plaintiffs in *Dorrell v. Proskauer Rose LLP*, No. 3:16-cv-1152-N (N.D. Tex.) (the "Investor Plaintiffs" in the "Investor Litigation"), each of the plaintiffs listed in Exhibit E to the Settlement Agreement[1] (the "State Court Plaintiffs" in the "State Court Litigations") (collectively, the Receiver, the Committee, the Investor Plaintiffs, and the State Court Plaintiffs are referred to as "Plaintiffs," and collectively, the Receiver Litigation, the Investor Litigation, and the State Court Litigations are referred to as the "Litigation").  The Motion concerns a proposed settlement (the "Settlement") among and between, on the one hand, Plaintiffs and the Court-appointed Examiner, John J. Little (the "Examiner");[2] and, on the other hand, Proskauer Rose LLP ("Proskauer"), as a defendant in the Litigation.  All capitalized terms used in this Scheduling Order that are defined in the Settlement Agreement have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference) unless expressly otherwise defined herein.

In the Motion, the Plaintiffs seek the Court's approval of the terms of the Settlement, including entry of a bar order in the SEC Action (the "Bar Order") and a final judgment and bar order in the Receiver Litigation (the "Judgment and Bar Order").  After reviewing the terms of the Settlement and considering the arguments presented in the Motion, the Court preliminarily approves the Settlement as adequate, fair, reasonable, and equitable.  Accordingly, the Court

---

[1] The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion [ECF No. _].

[2] The Examiner executed the Settlement Agreement to indicate his approval of the terms of the Settlement and to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement Agreement, the SEC Action, the Receiver Litigation, or the Investor Litigation.

**EXHIBIT F**

enters this scheduling order to:  (i) provide for notice of the terms of the Settlement, including

the proposed Bar Order in the SEC Action and the proposed Judgment and Bar Order in the

Receiver Litigation; (ii) set the deadline for filing objections to the Settlement, the Bar Order, the

Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; (iii) set

the deadline for responding to any objection so filed; and (iv) set the date of the final approval

hearing regarding the Settlement, the Bar Order in the SEC Action, the Judgment and Bar Order

in the Receiver Litigation, and Plaintiffs' request for approval of Plaintiffs' attorneys' fees (the

"Final Approval Hearing"), as follows:

1.      <u>Preliminary Findings on Potential Approval of the Settlement</u>:  Based upon the

Court's review of the terms of the Settlement Agreement, the arguments presented in the Motion,

and the Motion's accompanying appendices and exhibits, the Court preliminarily finds that the

Settlement is fair, reasonable, and equitable; has no obvious deficiencies; and is the product of

serious, informed, good-faith, and arm's-length negotiations.  The Court, however, reserves a

final ruling with respect to the terms of the Settlement until after the Final Approval Hearing

referenced below in Paragraph 2.

2.      <u>Final Approval Hearing</u>:  The Final Approval Hearing will be held before the

Honorable David C. Godbey of the United States District Court for the Northern District of

Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242, in Courtroom

1505, at __:__ _.m. on _____, which is a date at least ninety (90) calendar days after entry

of this Scheduling Order.  The purposes of the Final Approval Hearing will be to:  (i) determine

whether the terms of the Settlement should be approved by the Court; (ii) determine whether the

Bar Order attached as Exhibit B to the Settlement Agreement should be entered by the Court in

the SEC Action; (iii) determine whether the Judgment and Bar Order attached as Exhibit C to the

3

**EXHIBIT F**

Settlement Agreement should be entered by the Court in the Litigation; (iv) rule upon any objections to the Settlement, Bar Order, or the Judgment and Bar Order; (v) rule upon Plaintiffs' request for approval of Plaintiffs' attorneys' fees; and (vi) rule upon such other matters as the Court may deem appropriate.

3.      <u>Notice</u>:  The Court approves the form of Notice attached as Exhibit A to the Settlement Agreement and finds that the methodology, distribution, and dissemination of Notice described in the Motion:  (i) constitute the best practicable notice; (ii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in the Bar Order and Judgment and Bar Order; (iii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, the Bar Order, or the Judgment and Bar Order, and to appear at the Final Approval Hearing; (iv) constitute due, adequate, and sufficient notice; (v) meet all requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vi) will provide to all Persons a full and fair opportunity to be heard on these matters.  The Court further approves the form of the publication Notice attached as Exhibit G to the Settlement Agreement.  Therefore:

a.      The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the Notice in substantially the same form attached as Exhibit A to the Settlement Agreement to be sent via electronic mail, first class mail, or international delivery service to all Interested Parties; to be sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities Securities Litigation*, MDL No. 2099 (N.D. Tex.) (the "MDL"), the SEC Action or the Litigation, who are deemed to have consented to electronic service through the

4

**EXHIBIT F**

Court's CM/ECF System under Local Rule CV-5.1(d); and to be sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action or the Litigation.

    b.  The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the notice in substantially the same form attached as Exhibit G to the Settlement Agreement to be published once in the national edition of *The Wall Street Journal* and once in the international edition of *The New York Times*.

    c.  The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Receiver's website (http://stanfordfinancialreceivership.com).  The Examiner is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Examiner's website (http://lpf-law.com/examiner-stanford-financial-group).

    d.  The Receiver is hereby directed promptly to provide the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to any Person who requests such documents via email to legalassistant@casnlaw.com, or via telephone by calling Nadia Ramon (210) 630-4200.  The Receiver may provide such materials in the form and manner that the Receiver deems most appropriate under the circumstances of the request.

    e.  No less than ten (10) days before the Final Approval Hearing, the Receiver shall cause to be filed with the Clerk of this Court written evidence of compliance with

**EXHIBIT F**

subparts (a) through (d) of this Paragraph, which may be in the form of an affidavit or declaration.

       4.    <u>Objections and Appearances at the Final Approval Hearing</u>:  Any Person who wishes to object to the terms of the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees, or who wishes to appear at the Final Approval Hearing, must do so by filing an objection, in writing, with the Court in the SEC Action (3:09-CV-0298-N), by ECF or by mailing the objection to the Clerk of the United States District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242, no later than [insert date of 21st day before Final Approval Hearing], 2018.  All objections filed with the Court must:

       a.    contain the name, address, telephone number, and (if applicable) an email address of the Person filing the objection;

       b.    contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

       c.    be signed by the Person filing the objection, or his or her attorney;

       d.    state, in detail, the basis for any objection;

       e.    attach any document the Court should consider in ruling on the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; and

       f.    if the Person filing the objection wishes to appear at the Final Approval Hearing, make a request to do so.

       No Person will be permitted to appear at the Final Approval Hearing without filing a written objection and request to appear at the Final Approval Hearing as set forth in subparts (a)

**EXHIBIT F**

through (f) of this Paragraph.  Copies of any objections filed must be served by ECF, or by email

or first class mail, upon each of the following:

> James P. Rouhandeh
> Daniel J. Schwartz
> Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, New York 10017
> Telephone: 212.450.4000
> Facsimile: 212.701.5800
> Email: rouhandeh@davispolk.com
> Email: daniel.schwartz@davispolk.com
>
> and
>
> Bruce W. Collins
> Neil R. Burger
> Carrington, Coleman, Sloman
> & Blumenthal, L.L.P.
> 901 Main Street, Suite 5500
> Dallas, Texas 75202
> Telephone: 214.855.3000
> Facsimile: 214.855.1333
> Email: bcollins@ccsb.com
> Email: nburger@ccsb.com
>
> and
>
> Edward C. Snyder
> Castillo Snyder, PC
> One Riverwalk Place
> 700 N. St. Mary's, Suite 405
> San Antonio, Texas 78205
> Telephone: 210-630-4200
> Fax: 210-630-4210
> E-mail: esnyder@casnlaw.com
>
> and
>
> Douglas J. Buncher
> Neligan LLP
> 325 N. St. Paul, Suite 3600
> Dallas, Texas 75201
> Telephone: 214-840-5320

**EXHIBIT F**

Fax: 214-840-5301
E-mail: dbuncher@neliganlaw.com

and

Patrick J. Neligan, Jr.
Neligan LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5320
Fax: 214-840-5301
E-mail: pneligan@neliganlaw.com

and

Judith R. Blakeway
Clark Hill Strasburger
2301 Broadway
San Antonio, Texas  78215
Telephone: 210.250.6004
Fax: 210.250.6100
E-mail: judith.blakeway@clarkhillstrasburger.com

and

John J. Little
Little Pedersen Fankhauser LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone:  214.573.2307
Fax: 214.573.2323
E-mail: jlittle@lpf-law.com

and

Ralph Janvey
2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts

8

**EXHIBIT F**

1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Any Person filing an objection shall be deemed to have submitted to the jurisdiction of this Court for all purposes of that objection, the Settlement, the Bar Order, and the Judgment and Bar Order.  Potential objectors who do not present opposition by the time and in the manner set forth above shall be deemed to have waived the right to object (including any right to appeal) and to appear at the Final Approval Hearing and shall be forever barred from raising such objections in this action or any other action or proceeding.  Persons do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

5.      Responses to Objections:  Any Party to the Settlement may respond to an objection filed pursuant to Paragraph 4 by filing a response in the SEC Action no later than [insert date of 7th day before the Final Approval Hearing].  To the extent any Person filing an objection cannot be served by action of the Court's CM/ECF system, a response must be served to the email and/or mailing address provided by that Person.

6.      Adjustments Concerning Hearing and Deadlines:  The date, time, and place for the Final Approval Hearing, and the deadlines and date requirements in this Scheduling Order, shall be subject to adjournment or change by this Court without further notice other than that which may be posted by means of ECF in the MDL, the SEC Action, and the Litigation.

7.      Retention of Jurisdiction:  The Court shall retain jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

8.      Entry of Injunction:  If the Settlement is approved by the Court, the Court will enter the Bar Order in the SEC Action and, following remand of the Receiver Litigation by the

**EXHIBIT F**

Fifth Circuit, the Judgment and Bar Order in the Receiver Litigation.  If entered, the Bar Order

and the Judgment and Bar Order will permanently enjoin, among others, Interested Parties,

including Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or

prosecuting, against Proskauer or any of the Proskauer Released Parties, the Litigation, or any

other action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or

proceeding of any nature arising from or relating to any Stanford Claim, including without

limitation, contribution or indemnity claims, and the claims filed against Proskauer and Sjoblom

in *ARCA Investments v. Proskauer Rose LLP*, Civil Action No. 3:15-CV-02423-N (N.D. Tex.).

       9.     <u>Stay of Proceedings</u>:  The Receiver Litigation is hereby stayed, except to the

extent necessary to give effect to the Settlement.

       10.    <u>Use of Order</u>:  Under no circumstances shall this Scheduling Order be construed,

deemed, or used as an admission, concession, or declaration by or against Proskauer of any fault,

wrongdoing, breach or liability.  Nor shall the Order be construed, deemed, or used as an

admission, concession, or declaration by or against Plaintiffs that their claims lack merit or that

the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any

defenses or claims he, she or it may have.  Neither this Scheduling Order, nor the proposed

Settlement Agreement, or any other settlement document, shall be filed, offered, received in

evidence, or otherwise used in these or any other actions or proceedings or in any arbitration,

except to give effect to or enforce the Settlement or the terms of this Scheduling Order.

       11.    <u>Entry of This Order</u>:  This Scheduling Order shall be entered separately on the

dockets in the SEC Action, the Receiver Litigation, the Investor Litigation, and each of the State

Court Litigations that is pending before this Court.

       **IT IS SO ORDERED.**

**EXHIBIT F**

Signed on _____, 2018

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT F**

## Publication Notice

To be published once in the national edition of *The Wall Street Journal* and once in the

international edition of *The New York Times*:

> PLEASE TAKE NOTICE that the Court-appointed Receiver for Stanford International Bank, Ltd. ("SIB") and related entities ("Stanford Entities"), and certain Plaintiffs, have reached an agreement to settle all claims asserted or that could have been asserted against Proskauer Rose LLP relating to or in any way concerning SIB and the Stanford Entities (the "Settlement Agreement"). As part of the Settlement Agreement, the Receiver and Plaintiffs have requested orders that permanently enjoin, among others, all Interested Parties, including Stanford Investors (i.e., customers of SIB, who, as of February 16, 2009, had funds on deposit at SIB and/or were holding certificates of deposit issued by SIB), from bringing any legal proceeding or cause of action arising from or relating to the Stanford Entities against Proskauer Rose LLP or the Proskauer Released Parties (as defined in the Settlement Agreement).

> Complete copies of the Settlement Agreement, the proposed bar orders, and settlement documents are available on the Receiver's website http://www.stanfordfinancialreceivership.com. All capitalized terms not defined in this Notice are defined in the Settlement Agreement.

> Interested Parties may file written objections with the United States District Court for the Northern District of Texas on or before [insert date of 21st day before Final Approval Hearing].

**EXHIBIT G**

## EXHIBIT H

## CASES AGAINST FORMER OFFICERS/DIRECTORS/EMPLOYEES

1.      *Janvey v. Alguire, et al.*, No. 3:09-cv-0724-N (N.D. Tex.)

2.      *Janvey v. Wieselberg, et al.*, No. 3:10-cv-1394 (N.D. Tex.)

3.      *Janvey v. Suarez*, No. 3:10-cv-02581-N (N.D. Tex.)

4.      *Janvey & OSIC v. Alvarado, et al.*, No. 3:10-cv-2584-N (N.D. Tex.)

5.      *Janvey & OSIC v. Giusti*, No. 3:11-cv-292 (N.D. Tex.)

6.      *Janvey v. Stanford*, No. 3:11-cv-1199 (N.D. Tex.)

7.      *Janvey v. Rincon*, No. 3:11-cv-1659 (N.D. Tex.)

8.      *Janvey v. Conzelman and Johnson*, No. 3:11-cv-2788 (N.D. Tex.)

9.      *Janvey v. Hamric, et al.*, No. 3:13-cv-775-N (N.D. Tex.)

10.      *Janvey v. Comeaux,* No. 3:13-cv-04700-N-BQ (N.D. Tex.)

11.      *Janvey v. Hamm,* No. 3:14-cv-03213-N-BQ (N.D. Tex.)

12.      *Janvey v. Staley,* No. 3:14-cv-03559-N-BQ (N.D. Tex.)

13.      *Janvey v. Amadio et al,* No. 3:14-cv-03560-N-BQ (N.D. Tex.)

14.      *Janvey & OSIC v. Bogar, et al.*, No. 3:14-cv-3635-N (N.D. Tex.)

15.      *In re: Charles Brickey*, No. 11-26722 (Bankr. W.D. Tenn.)

16.      *Janvey v. Hughes*, No. 1:15-ap-90312 (Bankr. M.D. Tenn.)

17.      *In re: Charles Hughes*, No. 1:15-bk-02164 (Bankr. M.D. Tenn.)

18.      *In re: Daniel Hernandez,* No. 1:15-bk-27311 (Bankr. S.D. Fla.)

19.      *In re: Jeffrey Mark Ricks,* No. 2:17-bk-11469 (Bankr. W. TX)

20.      *Janvey v. Ricks,* No. 1:18-ap-01061 (Bankr. W. TX)

21.      *Janvey v. Ralby,* No. 9:18-ap-01230 (Bankr. S.D. Fla.)

22.      *In re: Michael Ralby,* No. 9:18-bk-11784 (Bankr. S.D. Fla.)

23.      *In re: Edward Prieto,* No. 17-24641-PGH (Bankr. S.D. Fla.)

**EXHIBIT H**

24.     *In re: Timothy Dale Rogers*, No. 18-03498-5 (Bankr. E.D. N.C.)


**CASES AGAINST STANFORD INVESTORS**

1.      *Janvey v. Alguire, et al.*, No. 3:09-cv-0724-N (N.D. Tex.)

2.      *Janvey v. Letsos,* No. 3:09-cv-01329-N (N.D. Tex)

3.      *Janvey v. Venger et al,* No. 3:10-cv-00366-N-BQ (N.D. Tex.)

4.      *Janvey v. Rodriguez Posada, et al.,* No. 3:10-cv-00415-N (N.D. Tex.)

5.      *Janvey v. Gilbe Corp., et al., ,* No. 3:10-cv-00478-N-BQ (N.D. Tex.)

6.      *Janvey v. Buck's Bits Service, Inc., et al.,* No. 10-cv-00528-N (N.D. Tex.)

7.      *Janvey v. Johnson*, *et al.,* No. 10-cv-00617-N (N.D. Tex)

8.      *Janvey v. Barr*, et al., No. 10-cv-00725-N (N.D. Tex.)

9.      *Janvey v. Indigo Trust, et al,* No. 3:10-cv-00844-N-BQ (N.D. Tex.)

10.     *Janvey v. Dokken, et al.,* No. 3:10-cv-00931-N (N.D. Tex.)

11.     *Janvey v. Fernandez et al,* No. 3:10-cv-01002-N-BQ (N.D. Tex.)

12.     *Janvey v. GMAG LLC et al,* No. 3:15-cv-00401-N-BQ (N.D. Tex.)

13.     *Janvey v. GMAG LLC et al,* No. 17-11526 (5th Cir.)

14.     *In re: Michael Ross Hicks,* No. 5:16-bk-52344 (Bankr. W.D. Tex.)


**FRAUDULENT TRANSFER CASES**

1.      *Janvey v. Barnes et al,* No. 3:10-cv-00527-N-BQ (N.D. Tex.)

2.      *Janvey et al v. The University of Miami,* No. 3:11-cv-00041-N-BQ (N.D. Tex.)


**THIRD PARTY LIABILITY CASES**

1.      *Rotstain v. Trustmark National Bank, et al*., No. 3:09-cv-02384-N (N.D. Tex.)

2.      *Troice v. Willis of Colorado, Inc., et al.*, No. 09-1274-N (N.D. Tex.)


**EXHIBIT H**

3.  *Official Stanford Investors Committee et al. v. Willis of Colorado, Inc., et al.*, No. 3:13-cv-03980-N (N.D. Tex.)

4.  *Official Stanford Investors Committee et al v. Willis of Colorado, Inc. et al,* No. 17-11114 (5th Cir.)

5.  *Janvey & OSIC v. Breazeale, Sachse, & Wilson, et al.*, No. 3:11-cv-329-N (N.D. Tex.)

6.  *Janvey v. Adams & Reese et al,* No.3:12-cv-00495-N-BQ (N.D. Tex.)

7.  *Janvey, et al. v. Greenberg Traurig, LLP, et al.*, No. 3:12-cv-4641-N (N.D. Tex.)

8.  *The Official Stanford Investors Committee v. Antigua and Barbuda,* No. 3:13-cv-00760-N (N.D. Tex.)

9.  *Official Stanford Investors Committee v. Antigua & Barbuda,* No. 15-10788 (5th Cir.)

10. *The Official Stanford Investors Committee v. Bank of Antigua et al,* No. 3:13-cv-00762-N-BQ (N.D. Tex.)

**EXHIBIT H**

## **EXHIBIT I**

1.   *Certain Underwriters at Lloyd's of London v. Ralph S. Janvey*, No. 3:09-cv-01736-N-BQ (N.D. Tex.)

2.   *SEC v. Stanford International Bank, Ltd., et al.*, No. 17-10663 (5th Cir.)

**EXHIBIT I**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0298-N |
| | § | |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| RALPH S. JANVEY, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-cv-00477 |
| v. | § | |
| | § | |
| PROSKAUER ROSE, LLP, LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF EDWARD C. SNYDER IN SUPPORT OF**
**RECEIVER, OSIC AND INVESTOR PLAINTIFFS' EXPEDITED REQUEST FOR**
**ENTRY OF SCHEDULING ORDER AND MOTION TO APPROVE PROPOSED**
**SETTLEMENT WITH PROSKAUER ROSE LLP TO APPROVE THE PROPOSED**
**NOTICE OF SETTLEMENT WITH PROSKAUER ROSE, LLP, TO ENTER THE BAR**
**ORDER, TO ENTER THE FINAL JUDGMENT AND BAR ORDER, AND FOR**
**PLAINTIFFS' ATTORNEYS' FEES**

Pursuant to 28 U.S.C. § 1746, I, Edward C. Snyder, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

## I.      OVERVIEW

I submit this Declaration in support of the Receiver, Official Stanford Investors Committee ("OSIC") and Investor Plaintiffs' (as hereinafter defined) (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed

Settlement with PROSKAUER ROSE LLP, to Approve the Proposed Notice of Settlement with PROSKAUER ROSE LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion").[1]

**A.     Proskauer Rose LLP Settlement**

1.     The settlement for which approval is sought in the Motion settles all claims asserted against PROSKAUER ROSE LLP ("Proskauer") in Civil Action Nos. 3:13-cv-00477-N (the "Receiver Action") and 3:16-cv-1152-N (the "Dorrell Action") (collectively, the for **$63 million** (the "Proskauer Settlement").[2]

2.     My law firm along with co-counsel Clark Hill Strasburger f/k/a Strasburger & Price, LLP ("Strasburger"), and Neligan Foley LLP ("Neligan") (together with my firm Castillo Snyder P.C., "Plaintiffs' Counsel"), have been litigating claims against Proskauer on behalf of a putative class of Stanford investors since August 2009, and on behalf of the Receiver and OSIC since January 2012.   My firm was retained by OSIC in January 2012 to pursue claims against Proskauer.

**B.     Curriculum Vitae**

3.     I am a named shareholder of the law firm Castillo Snyder P.C., based in San Antonio, Texas, and have been practicing law for close to twenty four (24) years.  I presently serve as lead counsel for OSIC and the putative class of Stanford investors with respect to claims against Proskauer.  I have actively participated in all material aspects of the Proskauer Actions.

4.     I received my law degree from the University of Texas School of Law in 1994 and my law license also in 1994.  After law school, I served as Legal Advisor to the former Chairman

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] The Troice Action (herein defined) and Dorrell Action are collectively referred to in this Declaration as the "Investor Action."   The Receiver Action and the Investor Actions are collectively referred to as the "Proskauer Actions."

of the U.S. International Trade Commission in Washington, D.C.  Since entering private practice in 1996, I have been involved principally in commercial litigation and trial work, and have handled major cases for both corporate and individual clients, as both plaintiff's and defendant's counsel.  I am admitted to practice in the Western, Eastern, Northern and Southern federal districts of the State of Texas as well as the Fifth and Ninth Circuit courts of appeal and the United States Supreme Court.

5.      Castillo Snyder, P.C., is a commercial litigation "boutique" firm based in San Antonio.  My partner Jesse Castillo (who is a 30+ year trial lawyer and previously was a partner at Cox & Smith) and I concentrate our practice on complex commercial litigation, including everything from contract, corporate and partnership disputes, securities litigation, real estate litigation, oil and gas litigation and other commercial and business cases.  We have tried dozens of complex commercial matters to verdict and judgment, including commercial cases tried in U.S. courts under foreign laws.

6.      Since the 1990s, my partner and I have been involved on the plaintiffs' side in numerous class action lawsuits involving allegations of fraud and securities fraud and aider and abettor liability.  In the late 1990s, while an associate and, later, a partner at the San Antonio-based law firm Martin, Drought & Torres, I (along with my current partner Jesse Castillo and other lawyers from that firm) served as lead or co-lead or second chair class counsel in roughly a dozen or more state-wide and nationwide class actions against life insurance companies based on allegations of fraud in the marketing and sale of "vanishing premium" life insurance products.  In that capacity we litigated class action cases and certified various class actions, typically for settlement purposes although some were litigated to class certification hearings, and also handled class action administrative issues including class claims administration via settlement

distribution procedures with class action administration agents we employed.   Some of the defendant life insurance companies we brought (and resolved) class action litigation against include:  Metlife, CrownLife, First Life Assurance, Manufacturers Life, Equitable Life, Sun Life, College Life, Jackson National Life, Great American Life, and John Hancock.

7.      One of my specialized practice areas over the last 18 years has been in the area of pursuing third parties such as banks, accounting firms, law firms and others accused of aiding and abetting complex international (typically offshore) securities fraud schemes.  From 1998 through 2006 I served as lead class counsel for Mexican investors who had been defrauded by a Dallas-based Investment Adviser firm named Sharp Capital Inc. ("Sharp") that operated what amounted to an illegal offshore "fund" in the Bahamas but that was run from Dallas.  The SEC intervened and filed suit against Sharp and appointed Ralph Janvey as the receiver for Sharp. Sharp lost over $50 million of Mexican investor funds.  Through various lawsuits we brought under the Texas Securities Act ("TSA"), we were able to eventually recover millions of dollars for the Sharp investors. See *Melo v. Gardere Wynne*, 2007 WL 92388 (N.D. Tex. 2007).  I also represented Ralph Janvey, as receiver for Sharp, in litigation arising from the Sharp case, which was also settled.  See *Janvey v. Thompson & Knight*, 2004 WL 51323 (N.D. Tex. 2004).

8.      Beginning in late 1999, my prior law firm and I also served as lead and/or co-lead class counsel (along with the Diamond McCarthy law firm) for a class of primarily Mexican investors of the InverWorld group of companies, which was an investment group based in San Antonio that operated what amounted to an offshore fund in the Cayman Islands.  We filed class action lawsuits against several Defendants, including a French bank, New York law firm Curtis Mallet-Prevost, and accounting firm Deloitte & Touche.  See *Nocando Mem Holdings v. Credit Comercial de France*, 2004 WL 2603739 (W.D. Tex. 2004); *Gutierrez v. the Cayman Islands*

*Firm of Deloitte & Touche*, 100 S.W.3d 261 (Tex. App. – San Antonio 2002). Those class cases proceeded in tandem with estate litigation filed by the bankruptcy trustee for InverWorld, who was principally represented by the Neligan firm. All of those class cases were premised on TSA aider and abettor claims and all of them eventually settled, each for eight figure sums.

9.       In 2003 I was retained by a group of Mexican investors who had been defrauded in yet another $400 million offshore investment fraud committed by a Houston-based investment firm called InterAmericas that, like Stanford, ran an offshore bank (in Curacao, Netherlands Antilles) through which primarily Mexican investors invested. While not a class action, myself and my former law firm filed litigation under the TSA aider and abettor provisions against Deloitte & Touche and a few other Defendants, resulting in seven figure settlements. See *Deloitte & Touche Netherlands Antilles and Aruba v. Ulrich,* 172 S.W.3d 255 (Tex. App. – Beaumont 2005).

10.       Besides the Stanford cases, I have recently been involved in two other SEC Ponzi scheme cases. I served as a Special Litigation Counsel to an SEC Receiver in the Central District of California in a Ponzi scheme case styled *Securities and Exchange Commission v. Westmoore Management LLC et al,* Case No. 08:10-CV-00849-AG-MLG. In that capacity I represented the Receiver with respect to all litigation activities. I also represented several foreign investors in an alleged Ponzi scheme case in McAllen, Texas styled *Securities & Exchange Commission v. Marco A. Ramirez, Bebe Ramirez, USA Now, LLC., USA Now Energy Capital Group, LLC., and Now. Co. Loan Services, LLC;* in the United States District Court for the Southern District of Texas – McAllen Division; Case No. 7:13-cv-00531.

11.       Based on my experience in SEC receivership and offshore fraud cases generally, as well as my experience in the Stanford cases, I am often invited to speak at seminars on

securities litigation issues (including liability under the TSA) by the Texas State Bar.

**C.      Involvement with the Stanford Cases Since 2009**

12.      I and my law firm have been heavily involved with the Stanford cases since February 2009.

13.      As soon as Stanford collapsed in February 2009, I was retained by hundreds of investors from Mexico.  I immediately began investigating claims against various third party potential defendants connected with the collapse of Stanford.

14.      After the OSIC was created, I was asked to be a member of the Committee and continue to serve on said Committee today, without compensation.  My service on OSIC has consumed hundreds if not thousands of hours of my time over the last 7 years including time spent communicating with other OSIC members on weekends and late at night.

15.      My investigations and efforts eventually led myself and the other Plaintiffs' Counsel to file multiple class action lawsuits on behalf of Stanford investors, as well as companion litigation on behalf of OSIC, including the following cases:  *Troice v. Willis of Colorado et al*, Case No. 3:09-cv-01274; *Janvey v. Willis of Colorado, Inc.*, Case No. 3:13-cv-03980; *Troice v. Proskauer Rose et a*l., Case No. 3:09-cv-01600; *Janvey v. Proskauer Rose, LLP*, Case No. 3:13-cv-477; *Janvey v. Greenberg Traurig, LLP*, Case No. 3:12-cv-04641; *Philip Wilkinson, et al v. BDO USA, LLP, et al,* Case No. 3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al,* Case No. 3:12-cv-01447; *Turk v. Pershing, LLC*, Case No. 3:09-cv-02199; *Wilkinson, et al. v. Breazeale, Sachse, & Wilson, LLP*, Case No. 3:11-cv-00329; and *Janvey v. Adams & Reese, LLP, et al*., Case No. 3:12-cv-00495 (the "Stanford Cases").

16.      I am either lead counsel or co-lead counsel with the other Plaintiffs' Counsel in all of the Stanford Cases and I have been actively involved in every facet of the cases, including the

investigation of the facts and legal theories that form the bases for the suits, responding to motions to dismiss and litigating class certification. I served as co-lead counsel in the successful appeals of the dismissal of the related *Troice* class action cases under SLUSA to the Fifth Circuit and the U.S. Supreme Court ("SLUSA Appeal").

17.     It is my opinion that my and my law firm's involvement in all of the related Stanford Cases has proven invaluable to the successful resolution of the Proskauer Actions. Given the inherent overlap of factual and legal issues in third party litigation arising from the Stanford fraud, much of the work performed by Plaintiffs' Counsel in related Stanford litigation since 2009 helped lay the groundwork for the successful resolution of the Proskauer Actions.

## II.      THE CLAIMS AGAINST PROSKAUER AND SETTLEMENT

18.     Plaintiffs' Counsel have zealously prosecuted and pursued claims against Proskauer on behalf of a class of Stanford investors since 2009, and on behalf of the Receiver and OSIC since 2012.

## A.      The Investor Actions

19.     On August 27, 2009 Plaintiffs' Counsel filed the first putative class action Complaint against Proskauer and Thomas Sjoblom ("Sjoblom") on behalf of Samuel Troice, Punga Punga Financial, Ltd., Horacio Mendez, and Annalisa Mendez (the "Troice Plaintiffs"), individually and on behalf of a putative class of Stanford investors, in the case styled *Troice v. Proskauer Rose et al.*, Civil Action No. 3:09-cv-01600 (the "Troice Action") [ECF No. 1]. The Defendants filed Motions to dismiss the Troice Action in December 2009. [ECF No. 36]. On October 21, 2011, this Court granted the various Motions to dismiss, finding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precluded the action. [ECF No. 96]. The Troice Plaintiffs appealed that decision to the Fifth Circuit. On March 19, 2012, the Fifth Circuit

issued its opinion reversing this Court's order of dismissal.  *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012).  The Defendants then petitioned for *certiorari* to the United States Supreme Court, which granted the petition.  On February 26, 2014, the Supreme Court issued its opinion affirming the Fifth Circuit and concluding that SLUSA did not preclude the state law-based class action lawsuits brought against defendants in the investor litigations, including the Troice Action.  *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014).  The litigation involving SLUSA took over 4 years to resolve.

20.     On September 16, 2014, this Court issued its Order denying the Troice Plaintiffs' request for entry of a scheduling order to permit merits discovery and granting Defendants' request to permit additional briefing on their attorney immunity defense, which Defendants had addressed in their Motions to dismiss.  [ECF No. 141].  On the same day the court issued its Class Action Scheduling Order. [ECF No. 142]. The parties thereafter engaged in roughly six months of extensive class certification discovery and fact and expert witness depositions.  The Troice parties filed all of their class certification evidence and voluminous briefing with this Court on April 20, 2015.  [ECF Nos. 192-99].

21.     By Order dated March 4, 2015, the Court granted in part and denied in part Proskauer's Motion to dismiss theTroice Action, dismissing the Troice Plaintiffs' claim against Proskauer for negligent retention/negligent supervision, and declining to dismiss the other claims against Proskauer, including other claims for aiding and abetting TSA violations, for aiding and abetting/participation in a fraudulent scheme, and for civil conspiracy.   [ECF No. 176]. Thereafter, on April 1, 2015, Defendants filed Rule 59(3) Motions for reconsideration of the Court's denial of their Motions to dismiss under the attorney immunity doctrine.  [ECF No. 187]. On May 15, 2015 the Court denied those Motions.  [ECF No. 217].

22.     The Troice Defendants then appealed the Court's denial of their Motions for reconsideration to the Fifth Circuit in June 2015.  A month later the Texas Supreme Court issued its decision in the unrelated case *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015).  On March 10, 2016, based on *Cantey Hanger* and finding that the Troice Plaintiffs had waived certain arguments, the Fifth Circuit reversed this Court's ruling and rendered judgment in favor of the Defendants, dismissing the Troice Action based on attorney immunity.   *Troice v. Proskauer Rose LLP*, No. 15-10500, 2016 WL 929476 (5th Cir. Mar. 10, 2016).

23.     On April 28, 2016, on behalf of Sandra Dorrell and Phillip A. Wilkinson, individually and on behalf of all others similarly situated (the "Investor Plaintiffs"), I filed a second putative class action styled *Dorrell v. Proskauer Rose LLP, et al.*, Civil Action No. 3:16-cv-1152 (the "Dorrell Action") [ECF No. 1] against Proskauer and Sjoblom to litigate the three exceptions to attorney immunity not considered by the Fifth Circuit in *Troice*.  By Order dated November 2, 2017 [ECF No. 52] the Court dismissed with prejudice theDorrell Action.  On November 6, 2017, Plaintiffs filed a notice of appeal from the Order dismissing the Dorrell Action.  [ECF No. 54].  The appeal was docketed under Cause No. 17-11313 styled *Dorrell v. Proskauer Rose LLP* (the "Dorrell Appeal").  The Investor Plaintiffs filed their main appellate brief on March 5, 2018 and also filed a Motion to certify the attorney immunity question to the Texas Supreme Court.  Proskauer filed its appellate Response brief and opposition to the Motion to certify on April 4, 2018.  The Investor Plaintiffs filed their Reply brief on May 14, 2018.  The Dorrell Appeal is fully briefed and awaiting the scheduling of oral argument.

## B.     <u>The Receiver Action</u>

24.     On January 27, 2012, the Receiver and OSIC commenced an action against Defendants Proskauer, Chadbourne & Parke, LLP ("Chadbourne"), and Sjoblom in the United

States District Court for the District of Columbia (the "D.C. Court"), based on Sjoblom's long-time residence in that district. *See Janvey v. Proskauer Rose LLP*, No. 1:12-cv-00155, (D.D.C. Jan. 27, 2012) [ECF No. 1] (*"Janvey I"*). Defendants requested that the case be transferred to this Court by the Judicial Panel on Multidistrict Litigation (the "JPML"). On March 1, 2012, the JPML transferred *Janvey I* from the D.C. Court to this Court. *See Janvey I*, No. 3:12-cv-00644-N, (N.D. Tex. Mar. 2, 2012) [ECF No. 13]. On October 24, 2012, Defendants asserted that neither this Court nor the D.C. Court had jurisdiction over the case. *See id.* at ECF Nos. 49-50.

25.     Plaintiffs then moved this Court to recommend that the JPML remand *Janvey I* back to the D.C. Court so that Plaintiffs could ask the D.C. Court to transfer *Janvey I* back to this Court under 28 U.S.C. § 1631. [ECF No. 55]. In an abundance of caution, Plaintiffs also filed the Receiver Action in this Court as a "back up" action to be prosecuted in the event *Janvey I* was dismissed rather than transferred by the D.C. Court. *See Janvey v. Proskauer Rose LLP*, 313-cv-00477-N (N.D. Tex. Jan. 31, 2013) [ECF No. 1].

26.     By Order dated August 21, 2013, the Court granted Plaintiffs' Motion and recommended that *Janvey I* be remanded back to the D.C. Court. Order at 6, *Janvey I*, No. 3:12-cv-0644 (N.D. Tex. Aug. 21, 2013) [ECF No. 71]. Upon remand of *Janvey I* back to the D.C. Court, the Receiver and OSIC filed a Motion to transfer the case back to this Court under 28 U.S.C. § 1631. *See Janvey I*, No. 1:12-cv-00155, (D.D.C. Feb. 5, 2014) [ECF No. 15]. Defendants Proskauer, Chadbourne, and Sjoblom opposed the Motion to transfer on the ground that the D.C. Court lacked jurisdiction over the case in the first instance. On July 24, 2014, the D.C. Court denied the Motion to transfer and dismissed *Janvey I*. *Janvey v. Proskauer Rose, LLP*, Civil Action No. 12-155 (CKK), 2014 WL 3668578, at *5 (D.D.C. July 24, 2014).

27.     Defendants Proskauer and Chadbourne then filed Motions to dismiss the Receiver

Action on October 3, 2014.  [ECF Nos. 22, 58].  Defendant Sjoblom filed a Motion to dismiss on November 13, 2014.  [ECF No. 61].  The Receiver and Committee filed a Joint Response to Defendants' Motions to dismiss on December 2, 2014.  [ECF No. 63].

28.     On June 23, 2015, the Court granted in part and denied in part Defendants' Motion to dismiss the Original Complaint in the Receiver Action, dismissing the claim for aiding and abetting fraudulent transfers but declining to dismiss the other claims against Proskauer.  [ECF No. 79].  Defendants filed their Answers in the Receiver Action in August 2015.  [ECF Nos. 83, 85, 87].  In May 2016, Defendants filed a Motion for judgment on the pleadings.  [ECF No. 99].  On June 2, 2016, Plaintiffs filed an opposed Motion for leave to file an amended complaint.  [ECF No. 106].

29.     On June 10, 2016, the Court entered a scheduling order setting the case for trial on October 14, 2017.  [ECF No. 109].  The parties then engaged in written discovery, including disclosures, requests for production, interrogatories and requests for admission.  On December 22, 2016, the Court entered an agreed order dismissing claims against Sjoblom.  [ECF No. 140]. On April 5, 2017, the Court granted the Receiver's, OSIC's and Mauricio Alvarado's ("Alvarado") Joint Motion to consolidate the Receiver's claims against Alvarado[3] with the Receiver Action and Proskauer's Motion for continuance [ECF No. 153].  On April 6, 2017, the Court entered a new scheduling order setting the case for trial on February 26, 2018.  [ECF No. 166].  On April 27, 2017, the parties, pursuant to Rule 41, stipulated that Plaintiffs voluntarily dismissed all claims against Proskauer asserted in Counts 1, 4, 5, 6 and 7 of the Complaint but expressly reserved claims in Count 2 (aiding, abetting or participating in breaches of fiduciary duties) and Count 3 (aiding, abetting, or participating in a fraudulent scheme) [ECF No. 171].

30.     On July 7, 2017, the Court entered an amended scheduling order resetting the trial

_____

[3] The Receiver's claims against Alvarado were pending in Janvey v. Alvarado, Civil Action No.3:10-cv-2584,

for April 30, 2018.  [ECF No. 177].  Plaintiffs' Counsel took the depositions of former Proskauer partner Sjoblom, along with fact witnesses Lena Stinson, Jennifer Brandt, Jane Bates, Stephen Korotash, James Davis, Rebecca Hamric, Bernerd Young, and Proskauer expert witnesses Linda Eades, Anne Flannery, Andrew Richmond, and Paul Gompers.  Plaintiffs' Counsel presented and defended the depositions of Ralph Janvey, John Little, Karyl Van Tassel, James Spindler, Charles Herring, Jeffrey Marcus and Douglas Henderson.  On February 12, 2018 Proskauer filed its Motion for summary judgment and brief in support.  [ECF Nos. 219, 220].  On March 13, 2018, Plaintiffs filed their response to Proskauer's Motion for summary judgment.  [ECF Nos. 235, 236].  On February 20, 2018, Proskauer moved to exclude expert witnesses Jeffrey Marcus and Karyl Van Tassel.  [ECF Nos. 224, 226].  On March 1, 2018, Proskauer filed a Motion to designate responsible third parties.  [ECF No. 228].  On March 22, 2018, Plaintiffs' Counsel responded to Proskauer's Motions to exclude the expert testimony of Jeffrey Marcus and Karyl Van Tassel.  [ECF Nos. 246, 248].

31.    On March 30, 2018, thirty days before trial as per the Scheduling Order in place in the Receiver Action, the Receiver and OSIC filed their opposition to Proskauer's Motion to designate responsible third parties [ECF No. 327] and the parties filed requested voir dire questions [ECF Nos. 265, 279], proposed jury charges [ECF Nos. 266, 288], Motions in limine [ECF Nos. 268, 286], Motions to limit expert testimony [ECF Nos. 269, 280, 281, 282, 284], witness lists [ECF Nos. 271, 277], designations of deposition testimony [ECF Nos. 222, 278], exhibit lists [ECF Nos. 274, 289], notice of intent to offer business records [ECF No. 275] and a joint pretrial order [ECF No. 276].  On April 9, 2018, the parties informed the Court that Receiver's claims against Alvarado had been settled.  [ECF No. 297].  On April 10, 2018, the Court granted the Receiver's and OSIC's Motion to file an amended complaint and denied

Proskauer's Motion for judgment on the pleadings.  [ECF No. 301].  On the same day, Plaintiffs' Counsel filed their amended complaint. [ECF No. 368].

32.     On April 16, 2018, Proskauer appealed the Court's denial of its Motion for judgment on the pleadings.  [ECF No. 374].  On April 18, 2018, the parties filed their objections to the proposed charges [ECF Nos. 314, 323], responses to Motions to limit the testimony of expert witnesses [ECF Nos. 315, 316, 318, 321], objections to deposition designations [ECF Nos, 319, 327], and objections to trial exhibits [ECF Nos. 320, 324].  On April 20, 2018, the parties filed an agreed Motion to stay the claims against Alvarado to allow him to perform his obligations under the settlement agreement.  [ECF No. 330].

33.     As the jury trial approached, on April 23, 2018, Proskauer advised the Court that Proskauer's notice of appeal divested the Court of jurisdiction to proceed with the trial.  [ECF No. 310].  On April 23, 2018, Plaintiffs' Counsel responded to Proskauer's advisory and Proskauer replied that same day.  [ECF Nos. 331, 332].  The same day the Court denied Proskauer's Motion to stay the case as to the Receiver.  [ECF No. 334].  The next day, the Court stayed the action filed by the Receiver against Alvarado.  [ECF No. 335].  On April 24, 2018, Proskauer answered the First Amended Complaint.  [ECF No. 337].  On April 25, 2018, five days before trial was to begin, the parties reached an agreement in principle to settle the case.

## C.     Mediation

34.     Mediation was held with Proskauer on April 12, 2018 in New York.  The parties were unable to reach resolution at that time.  Following the Court's decisions on conflict of laws and denying Proskauer's Motion for stay, the parties reached an agreement on the eve of trial, resulting in the Proskauer Settlement.  The parties executed the Proskauer Settlement Agreement on August 15, 2018.

**D.      Plaintiffs' Counsel Have Sufficient Basis to Evaluate and Recommend this Settlement**

35.      Plaintiffs' Counsel have spent substantial time and energy since 2009 investigating Stanford's business operations and relationships with third parties, including Proskauer, which involved the review of hundreds of thousands if not millions of pages of documents (including spending literally weeks at the Receiver's document warehouse in Houston), interviews and depositions of dozens of witnesses across the globe, coordination of efforts between the Receiver, Examiner, OSIC, the investor class plaintiffs, the SEC and the Department of Justice, and researching case law to establish viable theories of liability and damages and then defending those theories through dispositive motion practice before this Court in over a dozen separate lawsuits.  All of that work paved the way for the proposed settlement with Proskauer, and, in my view, the proposed Settlement could not have been achieved without the substantial amount of time and effort expended by Plaintiffs' Counsel and their tireless efforts in the Stanford Cases over all.

36.      Plaintiffs' Counsel collectively have spent more than 8 years and thousands of hours investigating and zealously pursuing claims against Proskauer on behalf of the Stanford Receivership Estate and the Stanford Investors prior to reaching the proposed settlement on the eve of trial in the Receiver Action.     Plaintiffs' Counsel briefed and largely prevailed on Defendants' Motions to dismiss, won a major victory in the U.S. Supreme Court on SLUSA, and engaged in extensive class certification discovery and voluminous briefing of class certification issues in the Troice Action that included numerous complex and novel issues regarding foreign law, only to have the Troice Action dismissed in the Fifth Circuit based on a change in Texas law of the attorney immunity doctrine.    Plaintiffs' Counsel re-filed a new class action, the Dorrell Action, to challenge the scope of the attorney immunity doctrine and were in the process

of litigating the appeal of that issue in the Fifth Circuit, while simultaneously seeking certification of the question in the Texas Supreme Court, when the settlement was reached.

37.    In the meantime, and as discussed in detail above, Plaintiffs' Counsel vigorously prosecuted the Receiver Action to the brink of trial, including depositions around the country, and engaged in a two day mock trial of that case, and therefore Plaintiffs' Counsel are uniquely qualified to evaluate the overall merits of the claims against Proskauer and the value of this proposed settlement, and have acquired unparalleled knowledge and expertise regarding Proskauer's involvement with Stanford sufficient to provide a sound basis for their recommendation of approval of the instant settlement.

**E.    The Settlement is Fair and Reasonable and Should be Approved**

38.    It is my opinion based upon years of experience prosecuting and settling complex investor and receiver actions and my extensive involvement as lead counsel in the Troice Action, Dorrell Action, and the Receiver Action, that the Proskauer Settlement is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court.

39.    More importantly, I believe that the Proskauer Settlement represents the best result that could be achieved given all of the circumstances.  Indeed, and as evidenced by the Fifth Circuit's dismissal of the Troice Action and this Court's dismissal of the Dorrell Action, and in view of the challenges that confronted the Receiver Action at trial and in any subsequent appeal, these are by no means "easy" cases.  As a consequence, the result obtained is simply outstanding.  In light of all of the factors outlined in the Motion, the Proskauer Settlement represents an extremely good result for the Stanford Receivership Estate and the Stanford Investors.  Therefore, I believe the Proskauer Settlement is in the best interests of the Stanford

Receivership Estate and the Stanford Investors and should be approved.

## III.   ATTORNEYS' FEES

### A.   The Contingency Fee Agreement

40.    Plaintiffs' Counsel have been jointly handling all of the Stanford Cases referenced above, including the Proskauer Actions, pursuant to twenty-five percent (25%) contingency fee agreements with the Receiver, OSIC (in cases in which OSIC is a named Plaintiff) and the investor plaintiffs (in investor class action lawsuits).   With specific reference to the Proskauer Actions, Plaintiffs' Counsel were collectively retained by the various Plaintiffs in all three of the cases, the Troice Action, Dorrell Action and the Receiver Action, pursuant to contingency fee contracts that provide for a consistent fee equivalent to 25% of any net recovery from Proskauer.

41.    As stated in the Motion, the Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery (*i.e*., the settlement amount less allowable expense disbursements) in the Proskauer Settlement.   This is the fee agreed to be paid to Plaintiffs' Counsel by the Receiver, OSIC, the Troice Plaintiffs and the Investor Plaintiffs, and this is the amount of the fee for which approval is sought in the Motion.

### B.   The 25% Contingency Fee is Fair and Reasonable

42.    It is my opinion that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford Investors.   The twenty-five percent (25%) contingency fee was heavily negotiated between the Receiver, OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.   In certain instances, OSIC interviewed other potential counsel who refused to handle

Stanford-related lawsuits without a higher percentage fee.  The claims against Proskauer and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial.

43.    In particular, as described above, the litigation against Proskauer has been hard fought for over 8½ years and included various levels of appeals all the way to the U.S. Supreme Court, and only settled on the eve of trial of the Receiver Action.  As a result Plaintiffs' Counsel have collectively invested thousands of hours of time worth in excess of $8 million over an 8½ year period working on the Proskauer Actions.

44.    When Plaintiffs' Counsel negotiated the settlement with Proskauer's former co-Defendant Chadbourne in 2016, Plaintiffs' Counsel had incurred a total of roughly $3.4 million in combined time for the Troice Action and the Receiver Action.   See Motion for Approval, Doc. # 2300, at pps. 35-36.   My law firm's total time invested in the Troice Action and the Receiver Action at that time in April 2016 was over $1.7 million.   See Motion for Approval, at p. 35.  Plaintiffs' Counsel were awarded attorneys' fees from the Chadbourne settlement totaling roughly $8.7 million, rendering a **2.5x** multiple of the total time incurred collectively by Plaintiffs' Counsel at that time.   And from those attorneys' fees, Plaintiffs' Counsel were required to, and did, pay $334,000 to their U.S. Supreme Court counsel Tom Goldstein.

45.    At the present time, my law firm's total time invested in <u>all</u> of the Proskauer Actions is **$3,635,573.00**, such that my firm has incurred over $1.8 million in additional time over the course of the last two years since we filed for approval of the Chadbourne settlement.  I personally have worked on virtually nothing else but the Receiver Action against Proskauer over the last two years.   As such, a twenty-five percent (25%) contingency fee is reasonable given the

time and effort that was actually expended, the complexity of the matter and the risks involved.

C.      **Time and Effort of Plaintiffs' Counsel**

46.     Since February 2009, myself and my law firm have dedicated thousands of hours of time to the prosecution of the Stanford Cases on a contingent fee basis.  This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities and the defendants we have sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-party defendants in the Stanford Cases with Stanford.  Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them successfully.

47.     Even a cursory review of the Court's docket in all the Stanford Cases reveals the immense amount of work that Plaintiffs' Counsel have put into the prosecution of these Cases since 2009.  However, the docket and pleadings only reveal the work that is filed with the Court.  As discussed further herein, and as the Court is aware, the prosecution of lawsuits of this magnitude and complexity has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial.  Plaintiffs' Counsel have collectively spent thousands of hours since 2009 in their investigation and prosecution of Stanford-related claims, including the claims against Proskauer.

48.     Over the last 8½ years, myself and other attorneys and paralegals from my law

firm have spent thousands of hours in time worth millions of dollars investigating and prosecuting the Stanford Cases, including the Proskauer Actions. On average, well in excess of 70% of my practice over the last 6 years (and more typically 80-100% of my time in any given week) has been dedicated to these Stanford Cases. I personally have worked many late nights and virtually every weekend for the last 8½ years on the Stanford Cases or Stanford-related matters on a pure contingency fee basis. Basically, my law practice over the last 8½ years has been dedicated almost exclusively to the Stanford Cases, to the exclusion of other clients and work.

49.    This is particularly true for the Receiver Case against Proskauer. I worked virtually full time on the Receiver over the last 18 months, particularly during the first quarter of 2018 where I averaged 300 hour months. I recorded my own as well other attorneys and paralegals from my firm's time for work on the Proskauer Actions separately from other Stanford Cases. Given the length of time involved working on the Proskauer Actions since August 2009 (when we filed theTroice Action) through today's date, my firm has invested over $3.6 million worth of time on the Proskauer/Chabourne matter alone, with over $1.8 million of that occurring in the last 2 years and virtually all of which was incurred in the prosecution to trial of the Receiver Action against Proskauer. Specifically, as of May 29, 2018, my firm has spent over **6,000 hours** of attorney and paralegal time worth approximately **$3,635,573.00** at our applicable hourly rates for complex cases of this nature consisting of time that was dedicated directly to the Proskauer/Chadbourne cases, with over $1.8 million of that time having been incurred since April 2016.

50.    The total time my firm has invested in working on the Proskauer Actions is broken down by case as follows:

| Case | Hours Billed | Total |
|------|-------------|-------|
| Receiver Action | 3,517.70 | $2,184,453.50 |

| Dorrell Action | 208.25 | $123,200.00 |
|---|---|---|
| Troice Action | 2,286 | $1,327,920.00 |
| **TOTAL** | **6,011.95** | **$3,635,573.50** |

51.    I have spent additional un-billed time negotiating and working on the settlement documents with Proskauer's counsel since May 2018, and I anticipate investing even more time dedicated to the finalization of the Proskauer Settlement, including monitoring and responding to any objections where applicable, and attending and arguing at the approval hearing.

52.    The proposed Proskauer Settlement is the result of many years of effort and thousands of hours of work by Plaintiffs' Counsel as described herein.  But for the efforts of myself and my law firm and the other Plaintiffs' Counsel described herein, there would be no Proskauer Settlement, which will net the Receivership Estate and the Stanford Investors approximately $48 million (should the Court approve the attorneys' fee request) they would not have otherwise had.

53.    In light of the tremendous time and effort myself and my law firm and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the Stanford Investors, all of which was necessary to the successful prosecution and resolution of the Proskauer Actions, it is my opinion that the twenty-five percent (25%) fee to be paid to Plaintiffs' Counsel is very reasonable.  Myself and my law firm and the other Plaintiffs' Counsel have worked tirelessly for over 8 years to recover significant sums of money for the benefit of Stanford's Investors.

Dated:  August 16, 2018

Edward C. Snyder

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § § | |
| Defendants. | § § § | |
| | | |
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:13-CV-0477-N-BG |
| v. | § § | |
| PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS V. SJOBLOM, | § § § § | |
| Defendants. | § | |

**DECLARATION OF JUDITH R. BLAKEWAY
IN SUPPORT OF RECEIVER, OSIC AND INVESTOR PLAINTIFFS' EXPEDITED
REQUEST FOR ENTRY OF SCHEDULING ORDER AND MOTION TO APPROVE
PROPOSED SETTLEMENT WITH PROSKAUER ROSE LLP TO APPROVE THE
PROPOSED NOTICE OF SETTLEMENT WITH PROSKAUER ROSE, LLP, TO
ENTER THE BAR ORDER, TO ENTER THE FINAL JUDGMENT AND BAR ORDER,
AND FOR PLAINTIFFS' ATTORNEYS' FEES**

Pursuant to 28 U.S.C. § 1746, I, Judith R. Blakeway, declare under penalty of perjury that

I have personal knowledge of the following facts:

## BACKGROUND

1.      I submit this Declaration in support of the Receiver, Official Stanford Investors
Committee ("OSIC") and Investor Plaintiffs' (as hereinafter defined) (collectively, the
"Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed
Settlement with PROSKAUER ROSE LLP, to Approve the Proposed Notice of Settlement with
PROSKAUER ROSE LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order,
and for Plaintiffs' Attorneys' Fees (the "Motion").

2.      The settlement for which approval is sought in the Motion settles all claims
asserted against PROSKAUER ROSE LLP ("Proskauer") in Civil Action Nos. 3:13-cv-00477-N
(the "Receiver Action") and 3:16-cv-1152-N (the "Dorrell Action") for $63 million (the
"Proskauer Settlement").[1]

3.      I am a partner in the Litigation Section of Clark Hill Strasburger.  I was formerly
a partner in Strasburger & Price, LLP which combined its practice with Clark Hill in April, 2018.
I and my law firm serve as Plaintiffs' co-counsel in the Proskauer Actions and are responsible for
the prosecution of the Proskauer Actions.  I actively participated in all material aspects of the
Proskauer Actions from February 2016.  Prior to my taking over the Stanford litigation docket,
the docket was handled by Edward Valdespino.  In addition to Strasburger, other firms that have
been involved in the investigation and prosecution of the Proskauer Actions include Neligan LLP
("Neligan"), and Castillo Snyder P.C. ("Castillo Snyder") (collectively "Plaintiffs' Counsel").

## CURRICULUM VITAE

4.      I was admitted to practice law in the State of Texas in 1977.  I am also admitted to
practice before the United States District Courts for the Northern, Southern, Eastern and Western

---

[1]      The Troice Action (herein defined) and Dorrell Actions are collectively referred to in this Declaration as
the "Investor Actions."  The Receiver Action and the Investor Actions are collectively referred to as the "Proskauer
Actions."

Districts of Texas, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court. Throughout my career, I have handled complex commercial litigation for both corporate and individual clients, acting as both defendants' and plaintiffs' counsel

5.     Strasburger & Price LLP ("Strasburger") was founded in 1939 and had approximately 200 attorneys with offices in Austin, Dallas, Frisco, Houston and San Antonio, Texas. Strasburger also maintained offices in New York, Washington, D.C. and Mexico City. Clark Hill has about 450 lawyers. The combined firm has about 650 lawyers.

6.     I have experience in the following relevant areas of law:

    a.     securities litigation;

    b.     fiduciary litigation; and

    c.     class action litigation.

7.     Strasburger's appellate group, of which I am a member, has been actively involved in the Proskauer lawsuits and other Stanford lawsuits. A detailed description of the background and experience of attorneys involved in the Proskauer Actions is set forth on Clark Hill Strasburger's website, www.clarkhillstrasburger.com.

8.     In February of 2009, shortly after the collapse of Stanford, Strasburger was retained by approximately 2300 Stanford victims who lost approximately $570,000,000. The firm then began investigating potential claims against third party defendants.

9.     After the Official Stanford Investor's Committee ("OSIC") was formed, Edward Valdespino became a member and served on that committee until January of 2016, without compensation. After Mr. Valdespino resigned I was elected to serve on the OSIC, without compensation, and continue to serve.

10.     Strasburger (n/k/a Clark Hill Strasburger) has participated as co-counsel in every facet of these cases, including the investigation of the facts and legal theories that form the bases for the lawsuits.  I served as co-counsel in the successful appeal of the dismissal of the Troice under SLUSA to the Fifth Circuit and the U.S. Supreme Court ("SLUSA Appeal").  My partner, Michael Jung, and I were heavily involved in preparing and presenting the briefs to the Fifth Circuit and to the Supreme Court of the United States.  In addition, Michael Jung successfully argued the case before the Fifth Circuit.

11.     Throughout this process, I have coordinated my activities with the Receiver and his counsel, the Examiner, and other members of the OSIC.  I have interviewed numerous witnesses and reviewed thousands of documents.  I have reviewed the databases maintained by the Receiver, and the trial transcripts of the Stanford criminal trial as well as SEC administrative proceedings.

12.     In my opinion, my involvement and the involvement of other Clark Hill Strasburger lawyers contributed to the successful prosecution and resolution of the Proskauer Actions.  The Proskauer Settlement could not have been accomplished without the substantial time and effort expended by all Plaintiffs' Counsel and their efforts in all the Stanford-related cases.

A.     **The Investor Actions**

13.     On October 9, 2009 Plaintiffs' Counsel filed the putative class action Amended Complaint against Proskauer and Thomas Sjoblom ("Sjoblom") on behalf of Samuel Troice, Punga Punga Financial, Ltd., Horacio Mendez, and Annalisa Mendez (the "Troice Plaintiffs"), individually and on behalf of a putative class of Stanford investors, in the case styled *Troice v. Proskauer Rose et al.*, Civil Action No. 3:09-cv-01600 (the "Troice Action") [ECF No. 1].  The

Defendants filed Motions to dismiss the Troice Action in December 2009. [ECF No. 36]. On October 21, 2011, this Court granted the various motions to dismiss, finding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precluded the action. [ECF No. 96]. The Troice Plaintiffs appealed that decision to the Fifth Circuit. On March 19, 2012, the Fifth Circuit issued its opinion reversing this Court's order of dismissal. *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012). The Troice Defendants then petitioned for *certiorari* to the United States Supreme Court, which granted the petition. On February 26, 2014, the Supreme Court issued its opinion affirming the Fifth Circuit and concluding that SLUSA did not preclude the state law-based class action lawsuits brought in the Troice Action. *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014). The litigation involving SLUSA took over four years to resolve.

14.     On September 16, 2014, this Court issued its order denying the Troice Plaintiffs' request for entry of a scheduling order to permit merits discovery and granting the Troice Defendants' request to permit additional briefing on their attorney immunity defense, which Defendants had addressed in their Motions to dismiss. [ECF No. 141]. On the same day the court issued its Class Action Scheduling Order. The Troice Parties thereafter engaged in roughly six months of extensive class certification discovery and fact and expert witness depositions. [ECF No. 142]. The Troice Parties filed all of their class certification evidence and voluminous briefing with this Court on April 20, 2015. [ECF Nos. 192-99].

15.     By Order dated March 4, 2015, the Court granted in part and denied in part Proskauer's Motion to dismiss the Troice Action, dismissing the Troice Plaintiffs' claim against Proskauer for negligent retention/negligent supervision, and declining to dismiss the other claims against Proskauer, including other claims for aiding and abetting Texas Securities Act violations, for aiding and abetting/participation in a fraudulent scheme, and for civil conspiracy. [ECF No.

176]. Thereafter, on April 1, 2015, the Troice Defendants filed Rule 59(3) motions for reconsideration of the Court's denial of their Motions to dismiss under the attorney immunity doctrine. [ECF No. 187]. On May 15, 2015, the Court denied those Motions. [ECF No. 217].

16.     Defendants then appealed the Court's denial of their Motions for reconsideration to the Fifth Circuit in June 2015. A month later the Texas Supreme Court issued its decision in *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015). On March 10, 2016, and based on *Cantey Hanger* and finding that the Investor Plaintiffs had waived certain arguments, the Fifth Circuit reversed this Court's ruling and rendered judgment in favor of the Troice Defendants, dismissing the Troice Action. *Troice v. Proskauer Rose LLP*, No. 15-10500, 2016 WL 929476 (5th Cir. Mar. 10, 2016).

17.     On April 28, 2016, Sandra Dorrell and Phillip A. Wilkinson, individually and on behalf of all others similarly situated (the "Investor Plaintiffs"), filed a second putative class action styled *Dorrell v. Proskauer Rose LLP, et al.*, Civil Action No. 3:16-cv-1152 (the Dorrell Action) [ECF No. 1] against Proskauer and Sjoblom to raise three exceptions to attorney immunity not considered by the Fifth Circuit in *Troice*. By order dated November 2, 2017 [ECF No. 52] the Court dismissed with prejudice the Dorrell Action. On November 6, 2017, the Investor Plaintiffs filed a notice of appeal from the order dismissing the Dorrell Action. [ECF No. 54]. The appeal was docketed under Cause No. 17-11313 styled *Dorrell v. Proskauer Rose LLP*.

**B.     The Receiver Litigation**

18.     On January 27, 2012, the Receiver and OSIC commenced an action against Defendants Proskauer, Chadbourne & Parke, LLP ("Chadbourne"), and Sjoblom in the United States District Court for the District of Columbia (the "D.C. Court") based on Sjoblom's long-

time residence in that district. *See Janvey v. Proskauer Rose LLP*, No. 1:12-cv-00155, (D.D.C. Jan. 27, 2012) [ECF No. 1] (*"Janvey I"*). Defendants requested that the case be transferred to this Court by the Judicial Panel on Multidistrict Litigation (the "JPML"). On March 1, 2012, the JPML transferred *Janvey I* from the D.C. Court to this Court. *See Janvey I*, No. 3:12-cv-00644-N, (N.D. Tex. Mar. 2, 2012) [ECF No. 13]. On October 24, 2012, Defendants asserted that neither this Court nor the D.C. Court had jurisdiction over *Janvey I. See id.* at ECF Nos. 49-50.

19.     The Receiver and OSIC then moved this Court to recommend that the JPML remand *Janvey I* to the D.C. Court so that they could ask the D.C. Court to transfer *Janvey I* back to this Court under 28 U.S.C. § 1631. [ECF No. 55]. In an abundance of caution, the Receiver and OSIC also filed the Receiver Action in this Court as a "back up" action to be prosecuted in the event *Janvey I* was dismissed rather than transferred by the D.C. Court. *See Janvey v. Proskauer Rose LLP*, 313-cv-00477-N (N.D. Tex. Jan. 31, 2013) [ECF No. 1].

20.     By order dated August 21, 2013, the Court granted the Receiver's and OSIC's Motion and recommended that *Janvey I* be remanded back to the D.C. Court. Order at 6, *Janvey I*, No. 3:12-cv-0644 (N.D. Tex. Aug. 21, 2013) [ECF No. 71]. Upon remand of *Janvey I* back to the D.C. Court, the Receiver and OSIC filed a Motion to transfer the case back to this Court under 28 U.S.C. § 1631. *See Janvey I*, No. 1:12-cv-00155, (D.D.C. Feb. 5, 2014) [ECF No. 15]. Defendants Proskauer, Chadbourne, and Sjoblom opposed the Motion to transfer on the ground that the D.C. Court lacked jurisdiction over *Janvey I* in the first instance. On July 24, 2014, the D.C. Court denied the Motion to transfer and dismissed *Janvey I. Janvey v. Proskauer Rose, LLP*, Civil Action No. 12-155 (CKK), 2014 WL 3668578, at *5 (D.D.C. July 24, 2014).

21.     Defendants Proskauer and Chadbourne then filed Motions to dismiss the Receiver Action on October 3, 2014. [ECF Nos. 22, 58]. Defendant Sjoblom filed a Motion to dismiss on

November 13, 2014. [ECF No. 61]. The Receiver and Committee filed a Joint Response to Defendants' Motions to dismiss on December 2, 2014. [ECF No. 63].

22.     On or about July 1, 2013, Neligan Foley was retained to prosecute claims against Proskauer on behalf of the Receiver, and replaced the Hohman Taube & Summers firm that the Receiver had retained in January 2012. Certain Defendants tried to disqualify Neligan Foley. [ECF No. 34]. The Court permitted limited discovery regarding the disqualification issue in October 2014. [ECF No. 60]. [JL1] On June 23, 2015, the Court granted in part and denied in part Proskauer's Motion to dismiss the original complaint in the Receiver Action, dismissing the claim for aiding and abetting fraudulent transfers but declining to dismiss the other claims against Proskauer. [ECF No. 79]. Defendants filed their answers in the Receiver Action in August 2015. [ECF Nos. 83, 85, 87]. In May 2016, Defendants filed a Motion for judgment on the pleadings. [ECF No. 99]. On June 2, 2016, the Receiver and OSIC filed an opposed Motion for leave to file an amended complaint. [ECF No. 106].

23.     On June 10, 2016, the Court entered a scheduling order setting the case for trial on October 14, 2017. [ECF No. 109]. The parties then engaged in written discovery, including disclosures, requests for production, interrogatories and requests for admission. On December 22, 2016, the Court entered an order dismissing claims against Sjoblom. [ECF No. 140]. On April 5, 2017, the Court granted the Receiver's, OSIC's and Mauricio Alvarado's ("Alvarado") Joint Motion to Consolidate the Receiver's claims against Alvarado[2] with the Receiver Action and Proskauer's Motion for continuance [ECF No. 153].

24.     On April 6, 2017, the Court entered a new scheduling order setting the case for trial on February 26, 2018. [ECF No. 166]. On April 27, 2017, the parties, pursuant to Rule 41,

---

[2]     The Receiver's claims against Alvarado were pending in *Janvey v. Alvarado*, Civil Action No. 3:10-cv-2584-N.

stipulated that the Receiver and OSIC voluntarily dismissed all claims against Proskauer asserted in Counts 1, 4, 5, 6 and 7 of the Complaint but expressly reserved claims in Count 2 (aiding, abetting or participating in breaches of fiduciary duties) and Count 3 (aiding, abetting, or participating in a fraudulent scheme) [ECF No. 171].

26. On July 7, 2017, the Court entered an amended scheduling order resetting the trial for April 30, 2018. [ECF No. 177]. Plaintiffs' Counsel took the depositions of Sjoblom, Lena Stinson, Jennifer Brandt, Jane Bates, Stephen Korotash, James Davis, Rebecca Hamric, Bernerd Young, Linda Eades, Anne Flannery, Andrew Richmond, and Paul Gompers. Plaintiffs' Counsel defended the depositions of Ralph Janvey, John Little, Karyl Van Tassel, James Spindler, Charles Herring, Jeffrey Marcus and Douglas Henderson.

26. On February 12, 2018 Proskauer filed its Motion for summary judgment and brief in support. [ECF Nos. 219, 220]. On March 13, 2018, the Receiver and OSIC filed their response to Proskauer's Motion for summary judgment. [ECF Nos. 235, 236]. On February 20, 2018, Proskauer moved to exclude expert witnesses Jeffrey Marcus and Karyl Van Tassel. [ECF Nos. 224, 226]. On March 1, 2018, Proskauer filed a Motion to designate responsible third parties. [ECF No. 228]. On March 22, 2018, Plaintiffs' Counsel responded to Proskauer's Motions to exclude the expert testimony of Jeffrey Marcus and Karyl Van Tassel. [ECF Nos. 246, 248]. On March 30, 2018, the Receiver and OSIC filed their opposition to Proskauer's Motion to designate responsible third parties [ECF No. 327] and the parties filed requested voir dire questions [ECF Nos. 265, 279], proposed jury charges [ECF Nos. 266, 288], Motions in limine [ECF Nos. 268, 286], Motions to limit expert testimony [ECF Nos. 269, 280, 281, 282, 284], witness lists [ECF Nos. 271, 277], designations of deposition testimony [ECF Nos. 222, 278], exhibit lists [ECF Nos. 274, 289], notice of intent to offer business records [ECF No. 275]

and a joint pretrial order [ECF No. 276].

27.     On April 9, 2018, the parties informed the Court that the Receiver's claims against Alvarado had been settled.  [ECF No. 297].  On April 10, 2018, the Court granted the Receiver's and OSIC's Motion to file an amended complaint and denied Proskauer's Motion for judgment on the pleadings.  [ECF No. 301].  On the same day, Plaintiffs' Counsel filed their amended complaint. [ECF No. 368].  On April 11, 2018, the Receiver filed a notice that Plaintiffs' claims against Chadbourne had been settled and released.  [ECF No. 304].  On April 16, 2018, Proskauer appealed the Court's denial of its Motion for judgment on the pleadings. [ECF No. 374].  On April 18, 2018, the parties filed their objections to the proposed charges [ECF Nos. 314, 323], responses to Motions to limit the testimony of expert witnesses [ECF Nos. 315, 316, 318, 321], objections to deposition designations [ECF Nos, 319, 327], and objections to trial exhibits [ECF Nos. 320, 324].  On April 20, 2018, the parties filed an agreed Motion to stay the claims against Alvarado to allow Alvarado to perform his obligations under the settlement agreement.  [ECF No. 330].

28.     On April 23, 2018, Proskauer advised the Court that Proskauer's notice of appeal divested the Court of jurisdiction to proceed with the trial.  [ECF No. 310].  On April 23, 2018, Plaintiffs' Counsel responded to Proskauer's advisory and Proskauer replied that same day. [ECF Nos. 331, 332].  The same day the Court denied Proskauer's Motion to stay the case as to the Receiver.  [ECF No. 334].  The next day, the Court stayed the action filed by the Receiver against Alvarado.  [ECF No. 335].  On April 24, 2018, Proskauer answered Plaintiffs' First Amended Complaint.  [ECF No. 337].  On April 25, 2018, the parties reached an agreement in principle to settle the case.

C.    **Mediation**

29.    Mediation was held with Proskauer on April 12, 2018 in New York.  The parties were unable to reach resolution at that time.  Following the Court's decisions on conflict of laws and denying Proskauer's motion for stay, the parties reached an agreement resulting in the Proskauer Settlement.    The parties executed the Proskauer Settlement Agreement on

_____ .

D.    **Plaintiffs' Counsel Have Sufficient Basis to Evaluate and Recommend this Settlement**

30.    Plaintiffs' Counsel have spent substantial time and energy since 2009 investigating Stanford's business operations and relationships with third parties, including Proskauer, reviewing hundreds of thousands of pages of documents (including spending literally weeks at the Receiver's document warehouse in Houston), interviewing dozens of witnesses across the globe, coordinating efforts with the Receiver, Examiner, SEC and Department of Justice, and researching case law to establish viable theories of liability and damages and then defending those theories through dispositive motion practice before this Court, including the SLUSA Appeal of the Troice Action all the way to the U.S. Supreme Court.

31.    Plaintiffs' Counsel collectively have spent roughly 9 years and thousands of hours zealously pursuing claims against Proskauer on behalf of the Stanford Receivership Estate and the Stanford Investors prior to reaching settlement.  As part of the investigation of claims against Proskauer for the Receiver and OSIC, Plaintiffs' Counsel reviewed thousands of pages of documents detailing Proskauer's relationship with and services provide to Stanford.    The documents reviewed included documents from the Receivership and documents obtained from Proskauer and other law firms.  Plaintiffs' Counsel interviewed dozens of witnesses.  Plaintiffs' Counsel researched relevant case law to develop claims against Proskauer, including claims

under the Texas Securities Act and other common law claims belonging to the Stanford Investors, as well as claims that could be asserted by the Receiver and OSIC, to determine how the facts surrounding Proskauer's conduct supported such claims. The investigation of claims further required formulation of viable damage models and causation theories for both the Receivership Estate claims and the Investor claims, and Plaintiffs' Counsel spent considerable time researching and working up damage models for these cases.

**REQUEST FOR APPROVAL OF THE SETTLEMENT**

32.    I respectfully submit that, based upon 40 years of experience in prosecuting, defending,  and settling complex commercial litigation, the Proskauer Settlement is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court.

**REQUEST FOR APPROVAL OF ATTORNEYS' FEES**

33.    Plaintiffs' Counsel have been jointly handling all of the Stanford-related cases referenced above, including the Proskauer Actions, pursuant to twenty-five percent (25%) contingency fee agreements. The Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery in the Proskauer Actions.

34.    I respectfully submit the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford Investors. The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. In certain instances, OSIC interviewed other potential counsel who refused to handle Stanford-related

lawsuits without a higher fee. The Proskauer Actions and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial.

35. Moreover, the Proskauer Actions and the other Stanford-related cases, many of which were filed over 9 years ago, involve significant financial outlay and risk by Plaintiffs' Counsel. Several investor class actions were dismissed following the Court's SLUSA ruling, and were appealed all the way to the United States Supreme Court. The Investor Actions were twice dismissed under the attorney-immunity doctrine and appealed to the Fifth Circuit. Plaintiffs' Counsel therefore has, for many years now, borne significant risk of loss through dispositive motions or at trial after years of work for no compensation, and an almost certain appeal following any victory at trial. A twenty-five percent (25%) contingency fee is reasonable given the time and effort required to litigate these case, their complexity and the risks involved.

36. Since February 2009, Clark Hill Strasburger attorneys have dedicated thousands of hours to the prosecution of Stanford litigation on a contingent fee basis. This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities and the defendants sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-party defendants in the foregoing cases with Stanford. Without a comprehensive investigation and understanding of this background and the requisite legal skill, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them successfully.

37. A review of the Court's docket in all of these cases reveals only a portion of the

immense amount of work that Plaintiffs' Counsel have put into the prosecution of all of these lawsuits since 2009.  As the Court is aware, the prosecution of lawsuits of this magnitude, complexity and novelty has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, negotiate settlements, and prepare cases for summary judgment and trial.  Plaintiffs' Counsel have collectively spent thousands of hours since 2009 in their investigation and prosecution of the Proskauer Actions.  Because of the amount of time dedicated to those cases, Plaintiffs' Counsel were precluded from performing other legal work.

38.     Over the last 9 years, I and other attorneys and paralegals from Clark Hill Strasburger have spent thousands of hours in uncompensated time worth millions of dollars investigating and prosecuting the Stanford-related cases, including the Proskauer Actions.

**E.      Time and Effort of Clark Hill Strasburger Related to Proskauer Actions**

39.     The Motion seeks approval and payment of the agreed upon twenty-five-percent (25%) contingency fee to Plaintiffs' Counsel.  Through my experience as a trial attorney in commercial litigation, I am familiar with the reasonable and necessary work required by attorneys at various experience levels to prosecute cases such as these.  I am familiar with the customary and reasonable attorney's fees charged in the federal courts in Texas for cases of this type.  Further, I am familiar with the work that has been done on these files.  Based on my personal knowledge of the work done in these cases, I have an opinion as to reasonable attorney's fees in this matter.  In my opinion a 25% contingency fee is reasonable to prosecute the lawsuits, considering the factors identified in *Johnson v. Georgia Hwy Express, Inc.*, 448 F.2d 714, 717-19 (5th Cir. 1974).  Those factors include:

(1)     the time and labor required;

(2)    the novelty and difficulty of the questions involved;

(3)    the skill required to perform the legal service properly;

(4)    the likelihood that acceptance of this particular employment and its time requirements would preclude the lawyers from accepting employment on other matters;

(5)    the fees customarily charged for similar services;

(6)    whether the fee is fixed or contingent;

(7)    time limitations imposed by the client or by the circumstances;

(8)    the amount of money involved and the results obtained;

(9)    the experience, reputation and abilities of the lawyers performing the services in question;

(10)   the "undesirability" of the case;

(11)   the nature and length of the professional relationship; and

(12)   awards in similar cases.

In my opinion, the attorneys' fees and paralegal fees incurred in connection with the referenced tasks performed are consistent with the fees customarily charged in federal court in Texas for similar legal services.   The fees incurred are reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.   The fees incurred are reasonable given that the time required precluded Plaintiffs' Counsel from accepting other employment.   The fees incurred were reasonable given Plaintiffs' Counsel's firms' experience, reputation and ability.   The lawyers and paralegals are qualified by training, experience, and reputation to charge the hourly rates charged in connection with the Proskauer Litigation.   The fees incurred were reasonable given the amount involved and the results obtained.

40.    In determining reasonable attorney's fees in this case, I considered the $2,765,532 of time actually incurred by my firm.   Based on my experience as a trial lawyer handling

commercial litigation such as this, it is my opinion that attorney's fees of this magnitude are usual and customary for the handling of cases of this type in federal court in Texas, and the time incurred in prosecuting this case was both reasonable and necessary.  Each member of Clark Hill Strasburger's legal team performed the tasks commensurate with his or her skill set and level of experience, and the hours each person expended were necessary and non-duplicative.   The hourly rates that would typically have been charged for each member of Clark Hill Strasburger's legal team are similarly reasonable and reflect each person's level of experience.  In my opinion, all of the hours spent by the attorneys and paralegals on this matter were reasonable and necessary.  In my opinion, the rates that would typically have been charged by the attorneys and paralegals involved in this matter constitute normal, customary and reasonable charges for the services rendered.

41.     In connection with the Proskauer Actions, members of the Clark Hill Strasburger legal team reviewed documents, interviewed witnesses, drafted pleadings, responded to a motion to transfer, handled document production, reviewed transcripts of witnesses' testimony in criminal cases and administrative proceedings, responded to subpoenas to the law firm, responded to motions for continuance, prepared privilege logs, prepared witness files, and selected trial exhibits.  They also briefed legal issues such as choice of law, attorney immunity, obstruction of justice, Proskauer's *in pari delicto* defense, aiding and abetting and participating breach of fiduciary duties and fraudulent schemes, damages and causation, willful ignorance, sham affidavits, standing, trial court jurisdiction, ability to certify an appeal as frivolous and dilatory, willful ignorance, joint and several liability, proportionate responsibility, and settlement credits.

42.     They briefed expert witnesses, reviewed expert reports of Karyl Van Tassel,

James Spindler, Jeffrey Marcus, Charles Herring and Douglas Henderson. They drafted and responded to requests for documents, interrogatories, and requests for admission. They researched and briefed judicial notice, admissibility of exhibits, admissibility of expert testimony on various subjects, and permissible testimony of non-retained experts.

43.     They drafted the jury charge, pretrial order, voir dire, motions in limine and briefs in support, and requests for admission.

44.     They took the depositions of Jane Bates, Lena Stinson, and Linda Eades. They participated in depositions of Ralph Janvey, Karyl Van Tassel, John Little, Rebecca Hamric, Charles Herring, Douglas Henderson, James Spindler, Carlos Ancira. They reviewed depositions of Thomas Sjoblom Jennifer Brandt, Steve Korotash, James Davis, Bernerd Young, Anne Flannery and Paul Gompers.

45.     They participated in strategy sessions with co-counsel, conferences with a jury consultant and prepared for and attended a mock trial. They drafted witness outlines for direct and cross examination for trial, *Daubert* motions to exclude or limit expert testimony, a response to a motion to designate responsible third parties, a response to a motion for summary judgment, objections to summary judgment evidence and motion to strike, and responded to motions to strike testimony of Plaintiffs' experts.

46.     They participated in settlement negotiations and mediation. They prepared demonstratives for trial, drafted objections to Proskauer's proposed charge, trial exhibits, and deposition designations, prepared for a pretrial conference, and responded to a motion to stay. They prepared briefs in the United States Court of Appeals for the Fifth Circuit. I have reviewed Clark Hill Strasburger time records, which record time on a daily basis, and identified the time attributable to the Receiver Action, the Troice Action and the Dorrell Action.

47.     As of May 16, 2018, Clark Hill Strasburger attorneys and paralegals had worked over 4,529.1 hours, worth over $2,765,532 at our standard hourly rates in the Prokauer Actions. From April 21, 2016, Clark Hill Strasburger spent 2,399.82 hours of attorney and paralegal time, worth $1,466,892 at our standard hourly rates in the Proskauer Actions.  I am familiar with the legal practice in federal courts in Texas and have knowledge of the usual and customary rates charged for legal services required in this and similar cases.  I am also familiar with the type and amount of legal services reasonably necessary and the nature of the work required to prosecute this type of matter.

48.     The proposed Proskauer Settlement is the direct result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein.  But for the efforts of these parties, and the efforts of myself and my law firm described herein, there would be no Proskauer Settlement, which will net the Receivership Estate and the Stanford Investors approximately $48 million they would not otherwise have received.

49.     In light of the time and expense Clark Hill Strasburger and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the Stanford Investors, all of which was necessary to the successful prosecution and resolution of the Proskauer Actions, I respectfully submit that the twenty-five percent (25%) fee to be paid to Plaintiffs' Counsel for the settlement of the Proskauer Actions is reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _August 20_ , 2018

_Judith R. Blakeway_
JUDITH R. BLAKEWAY

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE,<br><br>    Plaintiffs,<br><br>v.<br><br>PROSKAUER ROSE, LLP, CHADBOURNE & PARKE, LLP, AND THOMAS S. SJOBLOM,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:13-CV-0477-N |

## DECLARATION OF DOUGLAS J. BUNCHER

Pursuant to 28 U.S.C. § 1746, I, Douglas J. Buncher, hereby declare under penalty of perjury that I have personal knowledge of the following facts, and they are true and correct.

### A.     Purpose of Declaration

1.     I am submitting this Declaration in support of the Receiver, Official Stanford Investors Committee ("OSIC") and Investor Class Plaintiffs' (the "Investor Plaintiffs") (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Proskauer Rose LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion").

2.    The settlement for which approval is sought in the Motion settles all claims asserted against Proskauer Rose LLP ("Proskauer") in the Proskauer Actions[1] for $63 million (the "Proskauer Settlement").

**B.    Curriculum Vitae**

3.    I am an attorney admitted to practice law in the State of Texas since 1989.  I am also admitted to practice before the United States District Courts for the Northern, Southern, Western and Eastern Districts of Texas, and the United States Court of Appeals for the Fifth Circuit.  I am a partner in Neligan LLP ("Neligan"), a Dallas law firm which concentrates its practice in complex bankruptcy, insolvency and receivership proceedings and related litigation.  I have concentrated my practice in complex, commercial litigation since my career began in 1989, and since joining Neligan in 2000 have concentrated my practice in handling complex receivership and bankruptcy litigation.

4.    Neligan has handled numerous complex bankruptcy and receivership cases, and litigation associated with those cases, since the firm was formed in 1995.  Neligan and I have handled many receivership and bankruptcy-related lawsuits seeking to recover hundreds of millions, and in some cases, billions of dollars in damages from third parties for the benefit of bankruptcy and receivership estates, as well as the investors and creditors of those estates.  A detailed description of Neligan, its areas of practice, case studies, and representative engagements, as well as my personal biography, background and experience, are set forth on Neligan's website, www.neliganlaw.com.

5.    As an example of Neligan's prior experience in complex bankruptcy and receivership proceedings before the Stanford receivership, in 1999 Neligan was retained as

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

counsel to the SEC receiver, joint official liquidators and Chapter 11 bankruptcy trustee in the InverWorld insolvency proceeding, a cross-border SEC receivership and bankruptcy case pending in the United States Bankruptcy for the Western District of Texas, San Antonio Division, with a simultaneous Cayman liquidation proceeding in the Cayman Islands. InverWorld, Inc., one of the InverWorld companies, was a San Antonio-based SEC registered investment adviser and broker-dealer that took in over $300 million of primarily Latin American investors' funds on the promise of liquid, low risk investments and above-market rate returns, much like Stanford on a smaller scale. Neligan was the lead counsel for the SEC receiver in the InverWorld case, serving in essentially the same role as Baker Botts in the Stanford case. In the InverWorld case, Neligan also coordinated and participated in the prosecution of several hundred-plus million-dollar lawsuits brought by the receiver/trustee and investors, individually and as class representatives, against third parties who were alleged to have aided and abetted the InverWorld Ponzi scheme, including the auditor Deloitte & Touche, law firm Curtis Mallet, and French, Bahama and Swiss financial institutions affiliated with Credit Commercial de France. All of that litigation was successfully resolved, resulting in significant recoveries to the InverWorld estate and investors.

6.       Neligan also served as counsel to an ad hoc committee of bondholders, the litigation trustee, and a group of individual bondholders in litigation arising out of the Global Crossing bankruptcy in 2001 involving hundreds of millions of dollars in alleged damages. At the time, Global Crossing, a company that was laying fiber optic cable around the world in anticipation of the expanding usage of the internet, was one of the largest bankruptcies in U.S. history.

## B.   Neligan Role in Stanford-Related Litigation

7.   Shortly after the Stanford Receivership was commenced in early 2009, Neligan was approached by Edward Snyder of Castillo Snyder P.C. ("Castillo Snyder") and Edward Valdespino of Strasburger & Price, LLP, now Clark Hill Strasburger ("Strasburger") to serve as co-counsel to their clients who had invested hundreds of millions of dollars into Stanford International Bank, Ltd. CDs ("SIBL CDs").  Due to Neligan's prior experience in major bankruptcy and receivership proceedings and third-party litigation associated with those proceedings, Neligan was hired to assist counsel at Castillo Snyder and Strasburger with the investigation and prosecution of litigation against third parties and to assist with the Stanford Receivership and potential bankruptcy issues.

8.   Since 2009, Neligan has been actively involved in many aspects of the Stanford Receivership, including representation of the Receiver and OSIC in many of the large third-party lawsuits.  In 2009, Castillo Snyder, Strasburger, and Neligan jointly initiated class action lawsuits in this Court on behalf of certain Stanford Investors, individually and on behalf of a class of similarly situated investors, styled *Troice v. Willis of Colorado, Inc.*, Case No. 3:09-cv-01274, and *Troice v. Proskauer Rose, LLP*, Case No. 3:09-cv-01600.

9.   Since that time, in addition to the aforementioned *Proskauer* and *Willis* investor cases, Neligan, along with Castillo Snyder, Strasburger and Butzel Long, have investigated, filed and prosecuted virtually all of the other major Stanford-related litigation against third-parties on behalf of OSIC and Stanford Investor plaintiffs, including the following lawsuits in this Court:

      (a)    *Official Stanford Investors Committee, et al. v. Breazeale, Sachse, & Wilson, LLP, et al.*, Case No. 3:11-cv-00329;

      (b)    *Janvey, et al. v. Adams & Reese, LLP, et al.*, Case No. 3:12-cv-00495;

4

(c)    *Janvey, et al. v. Greenberg Traurig, LLP, et al.,* Case No. 3:12-cv-04641;

(d)    *Janvey, et al. v. Proskauer Rose, LLP, et al.,* Case No. 3:13-cv-477; and

(e)    *Janvey, et al. v. Willis of Colorado, Inc.*, *et al.,* Case No. 3:13-cv-03980.[2]

In addition to representing OSIC and the Stanford Investor plaintiffs in the cases listed above, Neligan has also been engaged to represent the Receiver in those cases in which the Receiver is a named plaintiff. Neligan was also lead counsel for the plaintiffs in the two BDO lawsuits that were successfully resolved: *Philip Wilkinson, et al v. BDO USA, LLP, et al,* Case No. 3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al,* Case No. 3:12-cv-01447. Thus, Neligan has been actively involved in the major Stanford-related litigation against third parties since 2009.

## C.    Neligan Role in Litigation Against Proskauer

10.    Neligan has been involved with the investigation and prosecution of the claims asserted against Proskauer since 2009, when the Troice Action was filed. Neligan has been involved in all aspects of the Proskauer Actions since that time, including the SLUSA appeal in the Troice Action, the subsequent attorney immunity appeal in the Troice Action, the Dorrell Action, the appeal of the Dorrell Action, and the filing and prosecution of the Receiver Action to the brink of a jury trial.

11.    I along with other lawyers and paralegals at Neligan who assisted me have spent thousands of hours, and been involved in every aspect of the Proskauer Actions from 2009 until the present, including research and investigation of the potential claims, review of thousands of

---

[2] Peter Morgenstern of Butzel Long is co-counsel for the Investor Plaintiffs and Committee in all these cases except the cases against Willis of Colorado, Inc. and Proskauer Rose, LLP. Strasburger was not involved in the cases against Adams & Reese, LLP and Breazeale, Sachse & Wilson LLP.

documents and electronic data in the Receiver's possession, preparation and filing of the lawsuits, interviewing witnesses, researching and drafting responses to Proskauer's motion to dismiss, motion for summary judgment and other dispositive motions, assisting with the SLUSA and attorney immunity appeals, drafting, serving and responding to voluminous written discovery requests, taking and defending depositions, preparation of pre-trial materials and the jury charge required by the Court's scheduling order, objecting and responding to pre-trial materials and motions filed by Proskauer, participating in a mock trial, and preparing the Receiver Action for trial. The last year has been particularly intense in terms of time commitment and involvement by Neligan, as the activity in the Receiver Action became more intense, all of the depositions were taken and the case was prepared for trial. I spent the vast majority of my time on the Receiver Action for the past year until the case settled, which was the Wednesday before the case was set to go to trial. All of the work necessary to try the case had already been done before the case settled.

### D.    Reasonableness of Settlement

12.    The amount of time I spent on this case, together with my involvement in the mock trial of the case and the preparation for trial, and my background and experience in the Stanford Receivership and other similar litigation, makes me well-qualified to render an opinion on the reasonableness of the Proskauer Settlement.

13.    It is my opinion based upon my involvement in this case, the years of experience I have had prosecuting, trying and settling complex receivership and bankruptcy litigation, my prior involvement in the Stanford Receivership settlements with BDO, Kroll, Chadbourne, Willis, BMB, Hunton and certain Defendants in the Adams & Reese litigation, and my assessment of the relative merits of the claims and defenses in the Receiver Action, that the Proskauer Settlement is

6

fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court. Similarly, it is my opinion that the bar orders that are part of the Proskauer Settlement are the only effective means of resolving this case in order to give Proskauer the protection it needs to end the litigation. Without the bar orders required by the Proskauer Settlement and sought in the Motion, there would be no settlement with Proskauer, because Proskauer would continue to face potential claims related to Stanford.

### E.   Time and Effort of Neligan Related to the Proskauer Actions and Other Stanford Litigation

14.    The Motion seeks approval and payment of the agreed upon twenty-five percent (25%) contingent fee to Plaintiffs' Counsel. This fee is quite reasonable and below market given the amount of work Neligan and the other law firms have invested in the Proskauer Actions. From August 2009 to the present, Neligan attorneys and paralegals have spent 4,120 hours, or a total of $2,162,828.50 of professional time at Neligan's standard hourly rates, on the Proskauer Actions. From April 20, 2016 (the date that the motion to approve the Chadbourne settlement was filed) to the present, Neligan attorneys and paralegals have spent 3,024.80 hours, or a total of $1,589,860.50 of professional time at Neligan's standard hourly rates, on the Proskauer Actions, virtually all of which time was spent on the Receiver Action.

15.    Neligan will continue to incur additional time in connection with obtaining court approval of the Proskauer Settlement.

16.    In addition to the time invested by Neligan in the Proskauer Actions, since 2009, Neligan has put an immense amount of time and effort into the Stanford Receivership generally and into litigation against third parties to attempt to recover money for the benefit of the Stanford Investors. Neligan has devoted thousands of hours and millions of dollars of time investigating and prosecuting the Stanford litigation referenced above and monitoring the Stanford Receivership

7

generally since its inception. It is not possible to properly handle any of the major Stanford lawsuits against third parties, including the Proskauer Actions, without monitoring and staying abreast of all the related cases. It is also not possible to properly handle any of the major Stanford lawsuits against third parties, including the Proskauer Actions, without coordinating efforts with the Receiver's counsel at Baker Botts LLP, as well as other counsel to the Committee. Neligan and the other Plaintiffs' Counsel have done an immense amount of work investigating and analyzing the Stanford Ponzi scheme and the potential claims that could be brought against third party aiders and abettors of the Stanford Ponzi scheme since the commencement of this Receivership case, all of which allowed Plaintiffs' Counsel to successfully and efficiently formulate, prosecute and settle the claims against Proskauer. But for the diligent efforts of Plaintiffs' Counsel since the commencement of the Receivership Action, the settlement with Proskauer would never have been achieved.

### F. Reasonableness of Attorneys' Fees

17. In light of the tremendous time and effort Neligan and the other Plaintiffs' Counsel have put into the effort to recover monies for the Stanford Receivership Estate and the Stanford Investors, including but not limited to the time related to the Receivership Action against Proskauer, the Court's approval of the 25% contingency fee in connection with prior settlements, as well as applicable case law in the Fifth Circuit concerning the range of reasonable contingency fees for litigation of this nature, it is my opinion that the twenty-five percent (25%) fee to be paid to Plaintiffs' Counsel for the Proskauer Settlement is reasonable and should be approved.

18. In further support of the award of attorneys' fees, I adopt and incorporate by reference herein all of the factual allegations set forth in Section IV of the Motion, which are true and correct, and further support the reasonableness of the 25% contingency fee.

8

Dated:  August 16, 2018.


Douglas J. Buncher

# EXHIBIT 5

## DECLARATION OF SCOTT D. POWERS

Pursuant to 28 U.S.C. § 1746, I, Scott D. Powers, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.       My name is Scott D. Powers.   I am over the age of eighteen (18) and am competent to make this Declaration.

2.       I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the U.S. Court of Appeals for the Fifth Circuit and the U.S. District Court for the Northern District of Texas.  I have been licensed to practice law since 2000, and I am a partner in the law firm of Baker Botts LLP ("Baker Botts").

3.       Baker Botts has served as lead counsel to Ralph S. Janvey, in his capacity as the Court-appointed Receiver in the Stanford Financial Group SEC receivership proceedings, since said proceedings were initiated in 2009 in the case styled *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N.   In its role as lead counsel, Baker Botts has reviewed expert witness fees and litigation-related expenses incurred by the Receiver, counsel for the Receiver, and counsel for the Official Stanford Investors Committee, including expenses related to lawsuits such as *Janvey et al. v. Proskauer Rose, LP, et al.*, Civil Action No. 3:13-CV-0477-N-BG (the "Proskauer Litigation").

4.       I have reviewed records of the Receivership related to the expert witness fees and litigation-related expenses incurred by the Receiver, counsel for the Receiver, and counsel for the Official Stanford Investors Committee in the Proskauer Litigation.   The following table summarizes expert witness fees and litigation-related expenses that have been incurred by Plaintiffs in connection with the Proskauer Litigation:

| | Amount | Notes |
|---|---|---|
| | $188.28 | **Castillo Snyder expenses – April 2012 - October 2014 (Invoice No. 2255)** |
| | $1,080.15 | **Castillo Snyder expenses – November - December 2015 invoice (Invoice No. 2328)** |
| | $690.79 | **Castillo Snyder expenses – April - June 2016 (Invoice No. 2417)** |
| | $3,314.17 | **Castillo Snyder expenses – August - October 2016 (Invoice No. 2441)** |
| | $2,479.78 | **Castillo Snyder expenses – November - December 2016 (Invoice No. 2458)** |
| | $1,690.05 | **Castillo Snyder expenses – December 2016 - February 2017 (Invoice No. 2470)** |
| | $4,767.27 | **Castillo Snyder expenses – February - March 2017 (Invoice No. 2486)** |
| | $414.80 | **Castillo Snyder expenses – April 2017 - (Invoice No. 2493)** |
| | $1.13 | **Castillo Snyder expenses – March - April 2017 (Invoice No. 2510)** |
| | $2,032.90 | **Castillo Snyder – May - October 2017 invoice (Invoice No. 2581)** |
| | $2,314.15 | **Castillo Snyder expenses – November 2017 (Invoice No. 2623)** |
| | $11,085.93 | **Castillo Snyder expenses – November 2017 - January 2018 (Invoice No. 2644)** |
| | $16,660.51 | **Castillo Snyder expenses – January - February 2018 (Invoice No. 2663)** |
| | $418.61 | **Castillo Snyder expenses – March 2018 (Invoice No. 2667)** |
| | $11,192.86 | **Castillo Snyder expenses – April - May 2018 (Invoice No. 2670)** |
| | $2,293.17 | **Castillo Snyder expenses – November 2017 - February 2018 (Invoice No. 2687)** |
| | $781.08 | **Strasburger expenses – December 2015 (April 19, 2016 invoice)** |
| | $1,032.46 | **Strasburger expenses – December 2015 (July 1, 2016 invoice)** |

| | | |
|---|---|---|
| | $4,713.67 | **Strasburger expenses – November 2017 (December 11, 2017 invoice)** |
| | $1,967.00 | **Strasburger expenses – November 2017 (December 15, 2017 invoice)** |
| | $1,105.92 | **Strasburger expenses – October 2017 (December 19, 2017 invoice)** |
| | $7,281.51 | **Strasburger expenses – December 2017 (Invoice dated January 24, 2018)** |
| | $4,412.01 | **Strasburger expenses – January 2018 (Invoice dated May 8, 2018)** |
| | $524.98 | **Strasburger expenses – March 2018 (Invoice dated April 30, 2018)** |
| | $4,419.88 | **Strasburger expenses – March 2018 (Invoice dated May 9, 2018)** |
| | $1,591.17 | **Strasburger expenses – April 2018 (Invoice dated May 9, 2018)** |
| | $100.72 | **Neligan Foley expenses – May - August 2014 (Invoice No. 23746)** |
| | $6.69 | **Neligan Foley expenses – December 2014 (Invoice No. 23970)** |
| | $3,539.56 | **Neligan Foley expenses – October - December 2015 (Invoice No. 24046)** |
| | $898.04 | **Neligan Foley expenses – January - March 2016 (Invoice No. 24103)** |
| | $79.60 | **Neligan Foley expenses April - May 2016 (Invoice No. 24126)** |
| | $768.20 | **Neligan Foley expenses – June - November 2016 (Invoice No. 24191)** |
| | $591.50 | **Neligan Foley expenses – November 2016 - January 2017 (Invoice No. 24216)** |
| | $13,123.25 | **Neligan Foley expenses – January – May 2017 (Invoice No. 24299)** |
| | $6,474.59 | **Neligan Foley expenses – June - July 2017 (Invoice No. 24303)** |
| | $16,412.18 | **Neligan Foley expenses - August - September 2017 (Invoice No. 24322)** |
| | $11,883.15 | **Neligan Foley expenses - September - October 2017 (Invoice No. 24336)** |
| | $16,249.87 | **Neligan Foley expenses - September 2017 - January 2018 (Invoice No. 24377)** |
| | $6,488.58 | **Neligan Foley expenses – January - February 2018 (Invoice No. 24383)** |

| | | |
|---|---|---|
| | $10,379.31 | **Neligan Foley expenses – March 2018 (Invoice No. 24394)** |
| | $7,373.17 | **Neligan Foley expenses – April 2018 (Invoice No. 24419)** |
| | $2,915.17 | **Neligan Foley expenses – May 2018 (Invoice No. 24445)** |
| | $2,267.20 | **FTI fees – April 2015 (Invoice No. 7381071)** |
| | $3,558.00 | **FTI fees – July 2015 (Invoice No. 7388536)** |
| | $1,259.20 | **FTI fees – April 2016 (Invoice No. 7413391)** |
| | $10,993.20 | **FTI fees – May 2016 (Invoice No. 7415841)** |
| | $392.40 | **FTI fees – September 2016 (Invoice No. 7426729)** |
| | $625.20 | **FTI fees – November 2016 (Invoice No. 7432302)** |
| | $12,310.00 | **FTI fees – December 2016 (Invoice No. 7434499)** |
| | $9,081.60 | **FTI fees – January 2017 (Invoice No. 7437774)** |
| | $9,492.00 | **FTI fees – February 2017 (Invoice No. 7440402)** |
| | $9,604.00 | **FTI fees – March 2017 (Invoice No. 7442705)** |
| | $11,042.00 | **FTI fees – April 2017 (Invoice No. 7445639)** |
| | $18,359.00 | **FTI fees – May 2017 (Invoice No. 7448418)** |
| | $13,192.80 | **FTI fees – June 2017 (Invoice No. 7451623)** |
| | $4,031.00 | **FTI fees – July 2017 (Invoice No. 7453288)** |
| | $9,980.40 | **FTI fees – August 2017 (Invoice No. 7456564)** |
| | $4,554.00 | **FTI fees – September 2017 (Invoice No. 7458616)** |
| | $2,027.20 | **FTI fees – October 2017 (Invoice No. 7461454)** |
| | $7,898.00 | **FTI fees – November 2017 (Invoice No. 7464503)** |

| | | |
|---|---|---|
| | $3,273.20 | **FTI fees – December 2017 (Invoice No. 7467133)** |
| | $9,538.40 | **FTI fees – January 2018 (Invoice No. 7469947)** |
| | $654.00 | **FTI fees – February 2018 (Invoice No. 7472495)** |
| | $176.00 | **FTI fees – April 2018 (Invoice No. 7478511)** |
| | $520.00 | **Navigant fees – April 2017 (Invoice No. 522277)** |
| | $27,300.00 | **Navigant fees – May 2017 (Invoice No. 2400000008)** |
| | $21,700.00 | **Navigant fees – June 2017 (Invoice No. 2400000067)** |
| | $12,035.00 | **Navigant fees – July 2017 (Invoice No. 2400000066)** |
| | $52,107.00 | **Navigant fees – August 2017 (Invoice No. 2400000123)** |
| | $3,595.00 | **Navigant fees – September 2017 (Invoice No. 2400000122)** |
| | $1,604.00 | **Navigant fees – October 2017 (Invoice No. 2400000135)** |
| | $66,858.00 | **Navigant fees – November 2017 (Invoice No. 2400000176)** |
| | $19,324.10 | **Navigant fees and expenses – December 2017 (Invoice No. 2400000238)** |
| | $52,413.59 | **Navigant fees and expenses – January 2018 (Invoice No. 2400000339)** |
| | $4,108.00 | **Navigant fees – February 2018 (Invoice No. 2400000350)** |
| | $120.00 | **Navigant fees – March 2018 (Invoice No. 2400000418)** |
| | $1,137.50 | **James Spindler fees – December 2016 (January 2, 2017 Invoice)** |
| | $812.50 | **James Spindler fees – February 2017 (March 20, 2017 Invoice)** |
| | $9,912.50 | **James Spindler fees – March 2017 (April 7, 2017 Invoice)** |
| | $4,062.50 | **James Spindler fees – April 2017 (May 8, 2017 Invoice)** |
| | $34,612.50 | **James Spindler fees – May 2017 (June 8, 2017 Invoice)** |

| | | |
|---|---|---|
| | $36,400.00 | **James Spindler fees – June 2017 (July 2, 2017 Invoice)** |
| | $16,250.00 | **James Spindler fees – July 2017 (August 6, 2017 Invoice)** |
| | $35,536.71 | **James Spindler fees and expenses – August 2017 (September 1, 2017 Invoice)** |
| | $650.00 | **James Spindler fees – September 2017 (October 25, 2017 Invoice)** |
| | $26,812.50 | **James Spindler fees – October - November 2017 (December 12, 2017 Invoice)** |
| | $5,687.50 | **James Spindler fees – December 2017 (January 15, 2018 Invoice)** |
| | $25,350.00 | **James Spindler fees – January 2018 (February 14, 2018 Invoice)** |
| | $6,337.50 | **James Spindler fees – February 2018 (March 10, 2018 Invoice)** |
| | $2,437.50 | **James Spindler fees – March 2018 (April 4, 2018 Invoice)** |
| | $14,462.50 | **James Spindler fees – April 2018 (May 1, 2018 Invoice)** |
| | $6,625.00 | **Douglas Henderson fees – May 2017** |
| | $19,375.00 | **Douglas Henderson fees – June 2017** |
| | $8,625.00 | **Douglas Henderson fees – July 2017** |
| | $2,750.00 | **Douglas Henderson fees – August 2017** |
| | $6,500.00 | **Douglas Henderson fees – November 2017 (December 2, 2017 Invoice)** |
| | $19,824.40 | **Douglas Henderson fees and expenses – December 2017 - January 2018** |
| | $9,625.00 | **Douglas Henderson fees – April 2018** |
| | $565.00 | **Herring & Panzer fees – May 2017 (Invoice No. 15653)** |
| | $32,499.65 | **Herring & Panzer fees and expenses – June - July 2017 (Invoice No. 15698)** |
| | $22,519.69 | **Herring & Panzer fees and expenses – August 2017 (Invoice No. 15723)** |

| | | |
|---|---|---|
| | $3,360.00 | **Herring & Panzer fees – November 2017 (Invoice No. 15778)** |
| | $48,755.00 | **Herring & Panzer fees – January 2018 (Invoice No. 15808)** |
| | $1,235.00 | **Herring & Panzer fees – February 2018 (Invoice No. 15823)** |
| | $2,201.00 | **Herring & Panzer fees – April 2018 (Invoice No. 15835)** |
| | $74,847.50 | **Marcus Neiman & Rashbaum fees – May - August 2017 (Invoice No. 2285)** |
| | $26,260.00 | **Marcus Neiman & Rashbaum fees – November 2017 (Invoice No. 2411)** |
| | $34,580.00 | **Marcus Neiman & Rashbaum fees – December 2017 - January 2018 (Invoice No. 2455)** |
| | $50,830.00 | **Marcus Neiman & Rashbaum fees – April 2018 (Invoice No. 2607)** |
| **Total** | **$1,207,462.25** | |

Executed on August 24, 2018.

_____
Scott D. Powers

# EXHIBIT 6

## <u>DECLARATION OF EXAMINER JOHN J. LITTLE</u>

Pursuant to 28 U.S.C. § 1746, I, John J. Little, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.      My name is John J. Little.  I am over the age of eighteen (18) and am competent to make this Declaration.

2.      I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the United States Supreme Court, the U.S. Courts of Appeal for the Fifth and Eleventh Circuits, the United States Tax Court and the U.S. District Courts for the Northern, Eastern and Southern Districts of Texas.  I have been practicing law in Dallas, Texas since 1983, and have been a partner in the Dallas law firm Little Pedersen Fankhauser, LLP, since 1994.

3.      By Order dated April 20, 2009, I was appointed by Judge David C. Godbey (the "Court") to serve as the Examiner in the Stanford Financial Group receivership proceedings.  *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N (the "SEC Action"), ECF No. 322 (the "Examiner Order").  Pursuant to the Examiner Order, I was directed to "convey to the Court such information as the Examiner, in his sole discretion, shall determine would be useful to the Court in considering the interests of the investors in any financial products, accounts, vehicles or

ventures sponsored, promoted or sold by any Defendants[1] in this action (the "Investors")."

4.      By Order dated August 10, 2010, the Court created the Official Stanford Investors Committee ("OSIC") to represent Stanford Investors in the Stanford Financial Receivership proceedings and all related matters.   SEC Action, ECF No. 1149 (the "OSIC Order").   The OSIC Order defined "Stanford Investors" as "the customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL."   OSIC Order at 2.   The OSIC Order conferred upon the OSIC "rights and responsibilities similar to those of a committee appointed to serve in a bankruptcy case."   The OSIC Order appointed me, as Examiner, to serve as a member of the OSIC and as its initial Chair.   I have served as the Chair of the OSIC since its formation and continue to so serve.

5.      The OSIC Order specifically authorized the OSIC to pursue claims on a contingency fee basis against (a) Stanford's pre-receivership professionals, and (b) the officers, directors and employees of any Stanford entity.[2]  OSIC Order at 8.

## A.      The Receiver and OSIC Retain Counsel

6.      In my capacity as Chair of the OSIC, I negotiated and executed an engagement agreement dated January 27, 2012, pursuant to which the OSIC retained

---

[1]      The Defendants include Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford Financial Group, The Stanford Financial Group Bldg. Inc.   The Receivership encompasses Defendants and all entities they own or control.

[2]      This authority was limited in that the OSIC could not pursue claims that were duplicative of claims already being prosecuted by the Receiver.  OSIC Order at 8.

Castillo Snyder, P.C. ("CS"), Neligan Foley, LLP ("NF") and Strasburger & Price, LLP ("SP")[3] to represent the OSIC in connection with the prosecution of claims against the Proskauer Rose, LLP ("Proskauer"), Chadbourne & Parke, LLP ("Chadbourne") and Thomas V. Sjoblom ("Sjoblom") (the "Proskauer Claims").   The January 27, 2012 engagement agreement contemplated that the three law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Proskauer Claims.

7.      The Receiver similarly executed an engagement letter with NF to represent the Receiver with respect to the Proskauer Claims; that engagement also contemplated the payment of a contingent fee of twenty-five (25%) of the Net Recovery realized in respect of the Proskauer Claims.

8.      In my capacity as Chair of the OSIC, I negotiated and executed a Revised Fee Agreement with CS, NF and SP with respect to the Proskauer Claims dated as of April 10, 2014.  The April 10, 2014 Revised Fee Agreement provided that the three law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Proskauer Claims.  The

---

[3]      Neligan Foley is now known as Neligan.  As of April 11, 2018, Strasburger & Price became known as Clark Hill Strasbuger.

**DECLARATION OF EXAMINER JOHN J. LITTLE**                                             3

Revised Fee Agreement defined Net Recovery as the "Recovery[4] in connection with the Proskauer Claims, after deducting allowable expenses and disbursements." In connection with the execution of the April 10, 2014 Revised Fee Agreement, the three law firms entered into an agreement that addressed how those firms would divide the work to be done in prosecuting the Proskauer Claims and any fees paid with respect to the Proskauer Claims.

### B.    The Investor Actions

9.    On August 27, 2009, Samuel Troice, Horacio Mendez, Annalisa Mendez and Punga Punga Financial, Ltd., each an individual Stanford Investor (as putative representatives of a class of similarly situated plaintiffs)(the "Troice Plaintiffs"), filed an action against Proskauer and Sjoblom. *Troice v. Proskauer Rose, LLP, et al.*, Civil Action No. 3:09-CV-1600-N in the Northern District of Texas, Dallas Division (the "Troice Action"). The action was filed by CS. A second amended complaint was filed in the Troice Action on October 9, 2009, that added Chadbourne and P. Mauricio Alvarado ("Alvarado") as Defendants. The second amended complaint was filed by CS, NF and SP.

10.    The Defendants (Chadbourne, Proskauer, Sjoblom, Alvarado) filed Motions to dismiss the Troice Action in December 2009. [Troice Action, ECF Nos. 31, 36, 44].

---

[4]    "Recovery" was defined as "anything of value directly or indirectly received by the Stanford Receivership Estate as a result of the Proskauer Claims, including but not limited to the proceeds of any settlement or other disposition, a direct monetary payment or award, restitution awarded through any criminal proceeding, a fine assessed by the United States or other local or state Government, or forfeiture of any of the Proskauer Defendants' assets, regardless of whether such Recovery received by the Stanford Receivership Estate arguably results from the claims asserted by the Receiver or the Committee against the Proskauer Defendants."

On October 21, 2011, this Court granted the various Motions to dismiss, finding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precluded the action. [Troice Action, ECF No. 96].  The Troice Plaintiffs appealed that decision to the Fifth Circuit.  On March 19, 2012, the Fifth Circuit issued its opinion reversing the Court's order of dismissal.  *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012).  The Defendants then petitioned for certiorari with the United States Supreme Court, which granted the petition. On February 26, 2014, the Supreme Court issued its opinion affirming the Fifth Circuit and concluding that SLUSA did not preclude the state law-based class action lawsuits brought against Defendants in the Investor Action.  *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014).

11.     On September 16, 2014, the Court denied the Troice Plaintiffs' request for entry of a scheduling order and granted Defendants' request to permit additional briefing on their attorney immunity defense.  [Troice Action, ECF No. 141].  On the same day the Court issued its Class Action Scheduling Order; the parties then engaged in six months of class certification discovery and fact and expert witness depositions.  [Troice Action, ECF No. 142].  The parties filed their class certification evidence and briefing on April 20, 2015.  [Troice Action, ECF Nos. 192-99].

12.     On March 4, 2015, the Court granted in part and denied in part Proskauer's Motion to dismiss the Troice Action, dismissing the claim against Proskauer for negligent retention/negligent supervision, and declining to dismiss the other claims against Proskauer, including claims for aiding and abetting TSA violations, for aiding and

abetting/participation in a fraudulent scheme, and for civil conspiracy. [Troice Action, ECF No. 176].

13.     Defendants Proskauer, Chadbourne, and Sjoblom filed Rule 59(e) Motions for reconsideration of the Court's denial of their Motions to dismiss under the attorney immunity doctrine on April 1, 2015. [Troice Action, ECF No. 187]. The Court denied those Motions on May 15, 2015. [Troice Action, ECF No. 217].

14.     Defendants Proskauer, Chadbourne, and Sjoblom appealed the Court's denial of their Motions for reconsideration to the Fifth Circuit in June 2015. A month later, the Texas Supreme Court issued its decision in *Cantey Hanger LLP v. Byrd*, 467 S.W. 3d 477 (Tex. 2015). Based on *Cantey Hanger* and a finding that the Troice Plaintiffs had waived certain arguments, the Fifth Circuit reversed the Court's ruling and rendered judgment in favor of the Defendants. *Troice v. Proskauer Rose LLP*, 816 F.3d 341 (5th Cir. 2016).

15.     On April 28, 2016, Sandra Dorrell and Phillip A. Wilkinson, individually and on behalf of a class of all others similarly situated (the "Investor Plaintiffs"), filed an action against Proskauer and Sjoblom. *Dorrell v. Proskauer Rose, LLP, et al.*, Civil Action No. 3:16-CV-01152-N in the Northern District of Texas, Dallas Division (the "Dorrell Action").[5] The action was filed by CS, SP and NF.

16.     Proskauer filed a Motion to dismiss the Dorrell Action on the basis of attorney immunity on June 17, 2016. [Dorrell Action, ECF No. 12.] The Court entered

---

[5]     The Troice Action and the Dorrell Action are collectively referred to as the "Investor Actions."

its order granting the Motion to dismiss on November 2, 2017.  [Dorrell Action, ECF No. 52.]

17.     The Investor Plaintiffs filed a notice of appeal from that order.  The appeal is pending before the Fifth Circuit as Case No. 17-11313, *Dorrell v. Proskauer Rose, LLP*.

### C.     The Receiver Action[6]

18.     On January 27, 2012, the Receiver and OSIC commenced an action against Defendants Proskauer, Chadbourne, and Sjoblom in the United States District Court for the District of Columbia (the "D.C. Court") based on Sjoblom's long-time connection with that district. *See Janvey v. Proskauer Rose LLP*, No. 1:12-cv-00155, (D.D.C. Jan. 27, 2012) [ECF No. 1] ("*Janvey I*").  Defendants requested that the case be transferred to the Northern District of Texas, and to the Court, by the Judicial Panel on Multidistrict Litigation (the "JPML").  On March 1, 2012, the JPML transferred *Janvey I* from the D.C. Court to the Court.  *See Janvey I*, No. 3:12-cv-00644-N, (N.D. Tex. Mar. 2, 2012) [ECF No. 13].

19.     On October 24, 2012, Defendants asserted that neither the Court nor the D.C. Court had jurisdiction over the case.  *See Janvey I* at ECF Nos. 49-50, 53.  The Receiver and OSIC then moved the Court to recommend that the JPML remand *Janvey I* to the D.C. Court so that the Receiver and OSIC could move the D.C. Court to transfer *Janvey I* back to the Court under 28 U.S.C. § 1631.  *See id.* at ECF No. 55.

---

[6]     The Receiver Action and the Investor Actions are collectively referred to as the "Proskauer Actions."

20.     In an abundance of caution, the Receiver and OSIC also filed a second action as a "back up" action to be prosecuted in the event *Janvey I* was dismissed rather than transferred by the D.C. Court.  *See Janvey v. Proskauer Rose LLP*, 3:13-cv-00477-N (N.D. Tex. Jan. 31, 2013) [ECF No. 1](the "Receiver Action").  The Receiver Action was stayed pending a determination of the issues relating to *Janvey I*.  Receiver Action, ECF No. 13.

21.     By order dated August 21, 2013, the Court granted the Receiver's and OSIC's Motion and recommended that *Janvey I* be remanded back to the D.C. Court. Order at 6, *Janvey I*, No. 3:12-cv-0644 (N.D. Tex. Aug. 21, 2013) [ECF No. 71].  Upon remand of *Janvey I* back to the D.C. Court, the Receiver and OSIC filed a Motion to transfer the case back to the Court under 28 U.S.C. § 1631.  *See Janvey I*, No. 1:12-cv-00155, (D.D.C. Feb. 5, 2014) [ECF No. 15].  Defendants Proskauer, Chadbourne, and Sjoblom opposed the Motion to transfer on the ground that the D.C. Court lacked jurisdiction over the case in the first instance.  On July 24, 2014, the D.C. Court denied the Motion to transfer and dismissed the case.  *Janvey v. Proskauer Rose, LLP*, Civil Action No. 12-155 (CKK), 2014 WL 3668578, at *5 (D.D.C. July 24, 2014).

22.     Defendants Proskauer and Chadbourne then filed Motions to dismiss the Receiver Action on October 3, 2014.  [Receiver Action, ECF No. 22, 58].  Defendant Sjoblom filed a Motion to Dismiss on November 13, 2014.  [Receiver Action, ECF No. 61].  The Receiver and OSIC filed a Joint Response to Defendants' Motions to dismiss on December 2, 2014.  [Receiver Action, ECF No. 63].

23. On June 23, 2015, the Court granted in part and denied in part Defendants' Motions to dismiss the Original Complaint in the Receiver Action, dismissing the claim for aiding and abetting fraudulent transfers but declining to dismiss the other claims against Defendants. [Receiver Action, ECF No. 79]. Defendants filed their Answers in the Receiver Action in August 2015. [Receiver Action, ECF Nos. 83, 85, 87].

### D.    Settlements with Chadbourne & Sjoblom

24. The Receiver, OSIC, the Troice Plaintiffs and the Investor Plaintiffs entered into a settlement agreement with Chadbourne on or about February 25, 2016. This Court entered its Final Judgment and Bar Order approving that settlement on August 30, 2016. [Receiver Action, ECF No. 127].

25. The Receiver and OSIC subsequently entered into an agreement with Sjoblom and moved to dismiss their claims against him on December 21, 2016. [Receiver Action, ECF No. 139]. This Court entered its Order dismissing Sjoblom on December 22, 2016. [Receiver Action, ECF No. 140].

### E.    The Claims Against Proskauer Move Toward Trial

26. Proskauer filed a Motion for judgment on the pleadings in the Receiver Action on May 12, 2016, asserting that the attorney immunity doctrine barred OSIC's claims. [Receiver Action, ECF No. 99]. The Receiver and OSIC filed a Motion for leave to amend the complaint on June 2, 2016 [Receiver Action, ECF No. 106], largely to address the issues raised in Proskauer's Motion for judgment on the pleadings. On June 10, 2016, the Court entered a Scheduling Order in the Receiver Action setting the case for trial on October 16, 2017. [Receiver Action, ECF No. 109].

DECLARATION OF EXAMINER JOHN J. LITTLE                                      9

27.     Proskauer filed a Motion for continuance on February 20, 2017 [Receiver Action, ECF No. 141].   On March 15, 2017, the Receiver and OSIC filed a Motion to consolidate the Receiver's claims against Alvarado in *Janvey v. Alvarado*, Civil Action No. 3:10-cv-2584 (the "Alvarado Action") into the Receiver Action [Alvarado Action, ECF No. 132].   The Court entered its Order consolidating the Alvarado Action and the Receiver Action on April 5, 2017 [Receiver Action, ECF No. 153], and entered an Order on April 6, 2017, rescheduling trial in the Receiver Action for February 26, 2018 [Receiver Action, ECF No. 166].

28.     On March 31, 2017, Proskauer filed a Motion asking the Court to determine that New York law governed the claims asserted in the Receiver Action [Receiver Action, ECF No. 151].

29.     On April 27, 2017, the parties entered into a stipulation and order of dismissal pursuant to which Counts 1, 4, 5, 6 and 7 of the Original Complaint were dismissed with prejudice.  [Receiver Action, ECF Nos. 171, 172].

30.     The parties filed a joint Motion to amend the trial schedule on June 30, 2017 [Receiver Action, No. 176].   The Court granted that Motion and entered a new scheduling order on July, 7, 2017 [Receiver Action, No. 177], resetting the trial for April 30, 2018.

31.     Between July 1, 2017 and February 28, 2018, the Receiver and OSIC took the depositions of Sjoblom and seven fact witnesses (Lena Stinson, Jennifer Brandt, Jane Bates, Stephen Korotash, James Davis, Rebecca Hamric, and Bernerd Young) and four expert witnesses (Linda Eades, Anne Flannery, Andrew Richmond and Paul Gompers).

The Receiver and OSIC also defended the depositions of the Receiver and the Examiner, along with five expert witnesses (James Spindler, Charles Herring, Jeffrey Marcus, Karyl Van Tassel, and Douglas Henderson).

32.     On February 12, 2018, both Proskauer and Alvarado filed Motions for summary judgment [Receiver Action, ECF Nos. 216-218 (Alvarado), 219-221 (Proskauer)].  The Receiver and OSIC responded to those Motions on March 13 and 14, 2018 [ECF Nos. 235-239 (response to Proskauer motion), 240-242 (response to Alvarado motion)].  Proskauer filed its reply in support of its Motion for summary judgment on March 27, 2018 [Receiver Action, ECF Nos. 252-53].  Alvarado filed his reply on March 29, 2018 [Receiver Action, ECF No. 256].

33.     Proskauer filed Motions to exclude certain of the Receiver's and OSIC's experts on February 20, 2018 [Receiver Action, ECF Nos. 224-25 (Marcus), 226-27 (Van Tassel)].  The Receiver and OSIC responded to those Motions on March 22, 2018 [Receiver Action, ECF Nos. 246-47 (Marcus), 248-249 (Van Tassel)].

34.     On March 30, 2018, the parties filed the various pretrial materials required by the Court:  requested voir dire questions [Receiver Action, ECF Nos. 265, 279], proposed jury charges [Receiver Action, ECF Nos. 266, 288], Motions in limine [Receiver Action, ECF Nos. 268, 286-87], Motions to limit expert testimony [Receiver Action, ECF Nos. 269, 280-85], witness lists [Receiver Action, ECF Nos. 271, 277], exhibit lists [Receiver Action, ECF Nos. 274, 289], deposition designations [Receiver Action, ECF Nos. 272, 278], and a joint pretrial order [Receiver Action, ECF No. 276].

35.     On April 18, 2018, the parties filed their respective objections to the proposed jury charge [Receiver Action, ECF Nos. 314, 323], responses to Motions to limit expert testimony [Receiver Action, ECF Nos. 315, 316-17, 318, 321-22], objections to deposition designations [Receiver Action, ECF Nos. 319, 327], and objections to exhibit lists [ECF Nos. 320, 324].

36.     On April 9, 2018, the parties informed the Court that the Receiver's claims against Alvarado had been resolved.  On April 20, 2018, the Receiver and Alvarado filed a Motion seeking to stay the claims against Alvarado so that Alvarado could perform certain obligations pursuant to his settlement agreement with the Receiver [Receiver Action, ECF No. 330].  The Receiver filed his Motion to dismiss his claims against Alvarado on May 11, 2018 [Receiver Action, ECF No. 340]; the Court entered a dismissal order as to Alvarado on May 18, 2018 [Receiver Action, ECF No. 341].

37.     On April 10, 2018, the Court granted the Receiver's and OSIC's Motion for leave to file an amended complaint and denied Proskauer's Motion for judgment on the pleadings [Receiver Action, ECF No. 301].  The amended complaint was filed that day [Receiver Action, ECF No. 302].  Proskauer filed its answer to that complaint on April 24, 2018 [Receiver Action, ECF No. 337

38.     Proskauer filed a notice of appeal from the Court's order denying its Motion for judgment on the pleadings on April 16, 2018 [Receiver Action, ECF No. 308].  That appeal was docketed in the Fifth Circuit as Case No. 18-10463.

39.     On April 17, 2018, the Court entered its Order denying Proskauer's motion seeking a determination that New York law applied [Receiver Action, ECF No. 309].

40.     Also on April 17, 2018, Proskauer filed an "Advisory to the Court" suggesting that its filing of a notice of appeal on April 16, 2018, deprived the Court of all jurisdiction as to the Receiver Action [Receiver Action, ECF No. 310].   The Receiver and OSIC responded to that "Advisory" on April 23, 2018 [Receiver Action, ECF No. 331], and Proskauer filed a reply on that same date [Receiver Action, ECF No. 332].   Later that day, the Court held a telephonic hearing concerning the "Advisory" and issued its Order concluding that Proskauer's interlocutory appeal was "frivolous and dilatory" and declining to stay the Receiver's claims asserted against Proskauer  [Receiver Action, ECF No. 334].

### F.     Examiner Involvement in Proskauer Actions

41.     In my capacity as the OSIC Chair, I have worked closely with the Receiver, his counsel, the OSIC's counsel, and putative class counsel to coordinate the prosecution of claims against third parties for the benefit of the Receivership Estate and Stanford Investors, including the claims asserted in the Proskauer Actions.

42.     In that regard, I have been involved, as Chair of OSIC, in the OSIC's prosecution of the Proskauer Claims in the Receiver Action.   I have conferred regularly with the OSIC's counsel concerning every aspect of the Receiver Action.

43.     OSIC's counsel at NF, CS, and SP have spent several years and thousands of hours investigating and pursuing the claims asserted in the Receiver Action.   The materials reviewed by OSIC's counsel included, among other materials, thousands of pages of SEC and other investigation materials, thousands of pages of deposition and trial testimony from the prosecution of Allen Stanford and others, thousands of emails of

Stanford and Proskauer personnel, and hundreds of boxes of materials, including Proskauer materials and files, that the Receiver secured from Stanford's various offices and law firms.

44.     For the last year, OSIC's counsel at NF, CS, and SP have worked full time, or nearly so, to prepare the Receiver Action for trial.  That work has included, among other things: (a) propounding written discovery to Proskauer and responding to written discovery from Proskauer; (b) working with experts to prepare expert reports; (c) preparing and presenting seven (7) witnesses for depositions; (d) preparing for and taking the depositions of eight (8) fact witnesses and four (4) expert witnesses; (e) responding to Proskauer's Motions for judgment on the pleadings, for a determination that New York law applied, and for summary judgment; (f) preparing Motions to limit the testimony of Proskauer's experts and responding to Proskauer's Motions to exclude and/or limit the testimony of the Receiver's and OSIC's experts; (g) preparing the various pretrial filings required by this Court and responding to Proskauer's pretrial filings; and (h) preparing for and participating in a two-day mock trial exercise.

### G.     Settlement Efforts

45.     A mediation session was held with Proskauer in New York City on April 12, 2018.  Eric D. Green, of Resolutions, LLC, served as the mediator.  As OSIC's Chair, I participated in that mediation session.   In addition to myself, participants in that mediation included the Receiver and his counsel, David Arlington, and OSIC counsel: Ed Snyder and Jesse Castillo (from CS), Pat Neligan and Doug Buncher (from NF), and Judith Blakeway (from SP).

46.     Despite a full day mediation, the parties were unable to reach a resolution. Negotiations continued between and among the parties following the mediation session. Mere days before trial was to begin, Proskauer, the Receiver, the OSIC and the Investor Plaintiffs reached agreement resulting in the Proskauer Settlement.

47.     In my capacity as Chair of the OSIC, I was involved in the negotiations that followed the mediation session and in the negotiations that led to the drafting and execution of the Proskauer Settlement Agreement.   The parties fully executed the Proskauer Settlement Agreement as of August 15, 2018.   The Proskauer Settlement Agreement calls for Proskauer to pay $63 million to settle the Proskauer Actions.

### H.     Examiner's Opinion Concerning the Proskauer Settlement and The Payment of Attorneys' Fees

48.     It is my opinion that the settlement the Receiver, the OSIC and the Investor Plaintiffs reached with Proskauer is fair and reasonable, in the best interests of the Stanford Receivership Estate and the Stanford Investors, and should be approved by the Court.   My opinion is based upon my involvement in the investigation and prosecution of the claims asserted in the Proskauer Actions, the risks and uncertainty inherent in any jury trial, and the length of time it would likely take to resolve the appeals that would inevitably follow any jury verdict and judgment.

49.     The Receiver and the OSIC have agreed with the Investor Plaintiffs that any proceeds recovered from the Proskauer Actions will be distributed through the Receiver's existing (and already approved and operating) mechanism for identifying and

approving claims and making distributions.  Using the Receiver's existing process will be far more efficient, and likely result in larger distributions to Stanford Investors.

50.     As noted above, the OSIC entered into a Revised Fee Agreement with CS, NF, and SP that provided for the payment of a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Proskauer Claims.

51.     The Court has previously approved a contingent fee arrangement between OSIC and its counsel that provides for the payment of a 25% contingent fee on net recoveries from certain lawsuits prosecuted by OSIC.[7]  SEC Action, ECF No. 1267.  The Court has also approved 25% contingent fees in connection with the settlements of other Stanford-related lawsuits prosecuted by the OSIC.  *See, e.g., Official Stanford Investor Committee v. BDO USA, LLP*, Civil Action No. 3:12-cv-01447-N, ECF No. 80 (N.D. Tex. Sept. 23, 2015) (approving fees in BDO settlement); SEC Action, ECF No. 2364 (N.D. Tex. Aug. 30, 2016), (approving fees in Kroll settlement); SEC Action, ECF No. 2366 (approving fees in Chadbourne settlement); *Janvey v. Greenberg Traurig, LLP*, Civil Action No. 3:12-cv-04641-N, ECF No. 264 (N.D. Tex. March 26, 2018)(approving attorneys' fees in Hunton settlement).   It is worth noting that none of the above-referenced matters had gotten as close to trial as did the Receiver Action, which settled less than a week before trial was to begin.

---

[7]     The referenced Order addressed the OSIC's prosecution of certain fraudulent transfer and unjust enrichment actions.

52.     The Revised Fee Agreement entered between OSIC and its counsel here (NF, CS, and SP) was modeled after the contingency fee agreement already approved by the Court in the SEC Action.  SEC Action, ECF No. 1267.

53.     For the same reasons the Court previously found the twenty-five percent (25%) contingent fee agreement between the OSIC and its counsel to be reasonable, *see id.*, p. 2, the Court should find the twenty-five percent (25%) contingent fee applicable to the settlement with Proskauer to be reasonable and approve it for payment.

54.     It is my opinion that the attorneys' fee requested is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford Investors.  The twenty-five percent (25%) contingent fee was heavily negotiated between OSIC and its Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.

55.     I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the Net Recovery from the settlement with Proskauer is reasonable and appropriate considering the significant time, effort, and resources which OSIC's counsel have invested in investigating the Stanford fraud, prosecuting and resolving the Proskauer Actions with respect to Proskauer, and prosecuting the other Stanford-related litigation.

Executed on August 16, 2018.

_____

John J. Little