# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

# DALLAS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff

v.

Case No. 3:09-cv-00298-N

STANFORD INTERNATIONAL BANK, LTD., ET AL,

Defendant

## SECOND MOTION TO DISMISS

## PURSUANT TO FEDERAL RULES OF PROCEDURE

## 12 (b)(1) AND 12 (h)(3)

Defendant Robert Allen Stanford, proceeding pro se, hereby moves in this court with his Second Motion To Dismiss the above entitled action of the Securities and Exchange Commission (SEC),

which was brought against him and the global group of Stanford companies he owned, without any legitimate cause, statutory authority or jurisdiction.

This court has federal-question jurisdiction under 28 U.S.C. 1331 to hear this motion, and there is no statutory limitation on 'Motions to Dismiss' filed under Fed. R. Civ. Pro. 12(b)(1) and 12(h)(3). See, Arbaugh v. Y & H Corporation, 546 U.S. 500 (2006)("When Congress did not rank a statutory limitation on coverage as jurisdictional, courts ought to treat the restriction as non-jurisdictional")

Motions To Dismiss (for lack of subject-matter jurisdiction) under 12(b)(1) and 12(h)(3) may be brought at any time. Because it involves the court's power to hear a case, subject-matter jurisdiction can never be forfeited or waived. And when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety. Arbaugh, citing Ruhrgas AG v. Marathon Oil Company, 526 U.S. 574 (1999)

As Stanford has repeatedly shown this court - through correct legislative readings of 15 U.S.C. 78c(a)(10), multiple judicial decisions, and constitutional law - and this court has repeatedly denied with dicta, doubletalk and despotic citings to its own deception (Doc. 1483) - the Certificates of Deposit (CDs) sold by Stanford International Bank, Ltd. (SIBL) in Antigua were not securities under the federal securities laws of the United States.

That is because the SIBL CDs ... were never used as collateral in exchange for a security, never grouped or indexed for the purpose of offering an option or privilege, never traded on any exchange, and never sold in connection with the purchase or sale of any security.

Instead, as the Fifth Circuit Court held in Roland v. Green, 675 F.3d 503, 514 (5th Cir. 2012), the SIBL CDs were traditional "debt obligations"; in essence, loans made to SIBL, by the individual CD depositors, whereby the Bank agreed to repayment at a fixed maturity date, fixed rate of interest, and fixed rate of return.

Specifically, the Fifth Circuit Court held that..."The CDs were debt assets...[and]...plaintiffs could not claim they deposited their money in the bank for the purpose of purchasing covered securities...[and]...there are multiple layers of separation between the CDs and any security purchased by SIB." Id. at 30.

Accordingly, as neither of the unambiguously-written and legislatively-intended circumstances defining when a CD becomes a security apply to the SIBL CDs, they very clearly were not securities as defined by Section 3(a)(1) of the Securities Exchange Act (the Act) of 1934. Therefore, the required subject-matter jurisdiction was never conveyed to this court, and the court's creative departure from governing law to overcome - and disregard these clearly defined circumstances - was an affront to our Constitution of separated powers.

3

Simply put...

No matter this court's "judicial legislation" of Section 3(a)(10) of the Act ..."Even the most formidable argument concerning the statute's purpose could not overcome the clarity of the statute's text." Kloeckner v. Solis, 568 U.S. 133 S.Ct. 596 (2012) More specifically..."We do not interpret statutes by gerrymandering them with a list of exceptions that happen to describe a party's case." United States v. Apel, 134 S.Ct. 1144 (2013); Michigan v. Bay Mills Indian Community, 572 U.S. 134 S.Ct. 2024 (2014) ("This Court has no roving license to disregard clear language [in a statute] simply on the view that Congress must have intended something broader"); King v. Burwell, U.S. 135 S.Ct. 2480 (2015) ("Sound interpretation requires paying attention to the whole law, not homing in and isolating words, or even isolated sections. Context always matters. Let us not forget, however, why context matters: it is a tool for understanding the terms of law, not an excuse for rewriting them.")

In sum, because the SIBL CDs were not subject to the federal securities laws, and because this court's "gerrymandering" of Section 3(a)(10) of the Act did not, and could not, provide the court with the required subject-matter jurisdiction in this case, and because Article III of the Constitution imposes on a court the "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party" See, Arbaugh, supra... this court, for the past ten years, has engaged [and continues to engage] in conduct prejudicial to the effective administration of business of the courts." See, Judicial Conduct and Disability Act of 1980, 28 U.S.C. 351-64

4

And worse, in the clearest of terms...

What this court has done, and for the past ten-plus years has continued to do, is criminal. Nothing less. While perpetrating its "fraud on the court", mining the depths of disgrace, all the while regurgitating the SEC's 'Ponzi scheme' propaganda, it has approved hundreds of millions of dollars in fee applications (from the Receiver, Ralph S. Janvey) as..."reasonable"... remuneration for his efforts to return to the SIBL depositors..."pennies on their dollars".

In this ongoing court-approved plundering of the Stanford Receivership Estate - where ten years running the Receiver is still finding and selling multi-million dollar assets from the supposedly insolvent Stanford International Bank - this court has considered "reasonable" the Receivers' phalanx of thousand-dollar-an-hour attorneys; attorneys who for the past decade have lavished themselves with outrageously expensive steak and wine "working dinners", thousand-dollar-a-night hotel rooms with in-room movies, mini-bar liquors and manicures, and daily specialty coffees from Starbucks Cafe...and the Receiver's lead attorney (with the law firm Baker Botts) has even purchased for himself a new private jet.

More specifically, while annihilating the justice it was supposed to maintain, destroying the rights it was supposed to respect - ignoring as nuisances the countless pleas from those "pennies on their dollars" depositor/interveners, imploring the court to end this obscene plundering, at their expense - it has approved, without compunction, the Receiver's every fee request without

5

review, unjustly enriching him and his so called "team of professionals" with so much money that they neither need, nor have sought to undertake, any other job...repeatedly converting their unscrupulous plundering into "righteous reward".

Ten long years of this obscenity...and counting.

---

## Conclusion

---

Several years ago, in Doc. 1858, this court stated that..."The fraud perpetrated was obviously egregious, was done with a high degree of scienter, caused billions of dollars in losses, and occurred over a decade."

Mr. Stanford actually agrees with this assessment...and asks the court to now move away from the mirror...and respect, finally, our 230 year-old Constitution of separated powers.

Robert Allen Stanford, pro se

Reg.# 35017-183

*R. Allen Stanford* (signature)

FCC Coleman USP II

P.O. Box 1034

Coleman, Florida 33521

R. Allen Stanford
Reg. # 35017-183
CC Coleman USP II
PO Box 1034
Coleman, FL 33521

Clerk of the Court
Earle Cabell Federal Bldg
1100 Commerce St., Rm 1452
Dallas, TX 75242

RECEIVED
MAY 22 2019
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

US Parcel Mailing
Anna Stevens
41 W. Lee Hwy Ste 59
WARRENTON VA 20186

US POSTAGE AND FEES PAID
PRIORITY MAIL
May 20 2019
Mailed from ZIP 20186
8 oz PM Zone 6
CID: 240947
CommercialPlusPrice

PRIORITY MAIL 2-DAY

SHIP TO:
THE UNITED STATES DISTRICT COURT
THE CLERK OF THE COURT
1100 COMMERCE ST STE 1452
DALLAS TX 75242-1310

USPS SIGNATURE TRACKING #
9410 8102 0088 1042 8836 10